ROBERT E. OPERA – State Bar No. 101182
ropera@winthropcouchot.com
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

Proposed General Insolvency Counsel for
Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br><br>TRADE UNION INTERNATIONAL INC., a California corporation,<br><br>    Debtor. | Case No. 6:11-bk-13071-DS<br><br>Jointly Administered with<br>Case No. 6:11-bk-13072-DS<br><br>Chapter 11 |
| In re:<br><br>DUCK HOUSE, INC., a California corporation,<br><br>    Debtor. | **OFFICIAL COMMITTEE OF UNSECURED CREDITORS'S OBJECTION TO DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTORS' FIRST AMENDED CHAPTER 11 REORGANIZATION PLAN**<br><br>DATE:     August 2, 2011<br>TIME:     11:00 a.m.<br>PLACE:   Courtroom 304<br>            United States Bankruptcy Court<br>            3420 Twelfth Street<br>            Riverside, CA 92501 |

# TABLE OF CONTENTS

**PAGE**

I. FACTUAL BACKGROUND ................................................................................. 2

II. THIS COURT SHOULD DENY APPROVAL OF THE AMENDED
DISCLOSURE STATEMENT BECAUSE THE UNDERLYING
PLAN IS PATENTLY UNCONFIRMABLE ..................................................... 3
    A. The Plan Cannot Be Confirmed Because It Provides for
        Impermissible Releases of Claims Against Insiders of
        the Debtors ................................................................................. 4
    B. The Plan Implements a Substantive Consolidation of the
        Debtors in Violation of 11 U.S.C. § 1129(a)(1) .......................... 5
    C. The Plan Lacks Good Faith by Reason of Improper Treatment
        of Insiders and Affiliates of the Debtors ..................................... 6
        1. The Plan Prevents Creditors from Objecting to Claims
            of Insiders and Affiliates ................................................ 9
        2. The Plan Prevents the Committee and Any Creditors
            from Filing on Behalf of the Estates Any Litigation
            Against the Debtors' Insiders or Affiliates ..................... 9
        3. The Plan Provides to the Debtors' Insiders Very Broad
            Releases of Any Claims Held Against Them by the
            Debtors and by the Debtors' Creditors, Preventing
            Creditors from Pursuing Any Claims Against the
            Debtors' Insiders ............................................................ 9
    D. The Plan Provides Impermissibly That the Plan Will Be
        Deemed Substantially Consummated Upon the Effective
        Date of the Plan .......................................................................... 10

III. THE AMENDED DISCLOSURE STATEMENT DOES NOT
CONTAINS ADEQUATE INFORMATION ...................................................... 10
    A. The Applicable Disclosure Burden ............................................. 10
    B. The Specific Disclosure Deficiencies with Respect to the
        Amended Disclosure Statement ................................................... 12
        1. The Amended Disclosure Statement Is Inconsistent
            with the Plan .................................................................. 12
        2. Inadequate Information Regarding Substantive
            Consolidation of the Debtors .......................................... 12
        3. Inadequate Information Regarding "Conditional
            Approval" of the Amended Disclosure Statement ........... 13
        4. Inadequate Service of Any Objection to the
            Confirmation of the Plan ................................................ 13
        5. Inadequate Information Regarding Objections to
            Disputed Claims ............................................................. 13

## TABLE OF CONTENTS

### (Continued)

|  |  | PAGE |
|---|---|---|
| 6. | Inadequate Information Regarding Debtors' Interests in Affiliates and Regarding Debtors' Transactions with Insiders and Affiliates | 13 |
|  | a.   Debtors' Interests in Affiliates | 14 |
|  | b.   Debtors' Transactions with Affiliates | 14 |
|  | c.   Nantong Wheel Company Transaction | 15 |
|  | d.   Debtors' Transactions with Insiders | 16 |
|  | e.   Value and Disposition of China Land | 16 |
| 7. | Inadequate Information Regarding Transactions Among the Debtors | 17 |
| 8. | Inadequate Information Regarding Valuation of State Street Property/Crystal Ridge Property | 17 |
| 9. | Inadequate Information Regarding Post-Confirmation Compensation of the Changs | 17 |
| 10. | Inadequate Information Regarding Claims Against Insiders or Affiliates | 18 |
| 11. | Inadequate Information Regarding Treatment of Secured Claims of the Bank Group | 18 |
| 12. | Inadequate Information Regarding Claims Related to Debtors' Equipment (Classes 1-B, 1-C, 1-D, 1-E) | 19 |
| 13. | Inadequate Information Regarding Treatment of General Unsecured Claims of Affiliates | 19 |
| 14. | Inadequate Information Regarding Interest Holders' Retention of Equity Interests | 19 |
| 15. | Inadequate Information Regarding the Effect of Any Failure to Consummate the Nantong Wheel Company Transaction or Sales of Non-Estate Property on the Implementation of the Plan | 20 |
| 16. | Inadequate Information Regarding Risk Factors | 20 |
| 17. | Inadequate Information Regarding the Disposition of Any Claims Against Insiders and Affiliates | 20 |
| 18. | Inadequate Information Regarding Settlement with the Bank Group | 21 |
| 19. | Inadequate Information Regarding Claims of Insiders and Affiliates of the Debtors | 21 |
| 20. | Inadequate Information Regarding Assumption of Leases | 21 |
| 21. | Inadequate Information Regarding Tax Consequences of the Plan | 21 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

### (Continued)

|  |  |  | PAGE |
|---|---|---|---|
| 22. | Inadequate Information Regarding the Results of Any Liquidation of the Debtors | | 21 |
| | (a) | Date of Valuation and Estimate of Liabilities | 22 |
| | (b) | Consolidation | 22 |
| | (c) | Claims Against Changs | 22 |
| | (d) | Interests in Affiliates | 22 |
| | (e) | Product Brands | 22 |
| | (v) | Inventory | 23 |
| 23. | Inadequate Information Regarding Feasibility of the Plan | | 23 |
| | (a) | Inconsistency between the Amended Disclosure Statement and the Purported Amended Plan | 23 |
| | (b) | Reasonableness of Assumptions | 24 |
| | (c) | Nantong Wheel Company Transaction | 24 |
| 24. | Inadequate Information Regarding Merits of Releases for Debtors' Insiders | | 24 |
| IV. | CONCLUSION | | 24 |

MAINDOCS-#164869-v1-TradeUnionCommitteeObj1stAmDisc1Smt.DOC

1

# TABLE OF AUTHORITIES

2

**PAGE**

3

**CASES**

4

American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.),

5
 885 F.2d 621 (9th Cir. 1989) ........................................................................................ 5

6

Commercial Wholesalers, Inc. v. Investors Commercial Corp.,

7
 172 F.2d 800 (9th Cir. 1949) ........................................................................................ 5

8

In re Adana Mortgage Bankers, Inc.,
 14 B.R. 29 (Bankr. N.D.Ga. 1981) ............................................................................. 12

9

In re Beyond.com Corp.,

10
 289 B.R. 138 (Bankr. N.D.Cal. 2003) .......................................................................... 3

11

In re Cardinal Congregate I,

12
 121 B.R. 760 (Bankr. S.D. Ohio 1990) ...................................................................... 11

13

In re La Guardia Associates L.P.,
 2006 WL 6601650, *60 (Bankr. E.D.Pa. 2006) ........................................................... 3

14

In re Lowenschuss,

15
 67 F.3d 1394 (9th Cir. 1995) ........................................................................................ 4

16

In re Main Street AC, Inc.,

17
 234 B.R. 771 (Bankr. N.D.Cal. 1999) ........................................................................ 11

18

In re Maxitile, Inc.,
 237 Fed.Appx. 274, 2007 WL 1814280, *2 (9th Cir. 2007) ........................................ 5

19

In re McGrew,

20
 60 B.R. 276 (Bankr. W.D.Ark. 1986) ......................................................................... 12

21

In re Metrocraft Publishing Services, Inc.,

22
 39 B.R. 567 (Bankr. N.D.Ga. 1984) ........................................................................... 11

23

In re New Haven Radio, Inc.,

24
 18 B.R. 977 (Bankr. D.Conn. 1982) ........................................................................... 12

25

In re Quigley Co., Inc.,
 377 B.R. 110 (Bankr. S.D.N.Y. 2007) ......................................................................... 3

26

Oneida Motor Freight, Inc. v. United Jersey Bank,

27
 848 F.2d 414 (3rd Cir. 1988) ...................................................................................... 11

28

**TABLE OF AUTHORITIES**

**(Continued)**

PAGE

Seaport Automotive Warehouse, Inc. v. Rohnert Park Auto Parts, Inc.
(In re Rohnert Park Auto Parts, Inc.),
113 B.R. 610 (9th Cir. BAP 1990) ........................................................................ 5

Stratosphere Litigation L.L.C. v. Grand Casinos, Inc.,
298 F.3d 1137 (9th Cir. 2002) ............................................................................... 4

Sun Valley Newspapers, Inc. v. Sun World Corp. (In re Sun Valley Newspapers, Inc.),
171 B.R. 71 (9th Cir. BAP 1994) .......................................................................... 5

Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.),
844 F.2d 1142 (5th Cir. 1988) ............................................................................. 11

Underhill v. Royal,
769 F.2d 1426 (9th Cir. 1985) ............................................................................... 5

**STATUTES**

11 U.S.C. § 101(31) ........................................................................................................ 8
11 U.S.C. § 101(51C) ................................................................................................... 13
11 U.S.C. § 101(51D) ................................................................................................... 13
11 U.S.C. § 341 ............................................................................................................. 14
11 U.S.C. § 506 ...................................................................................................... 18, 19
11 U.S.C. § 524(e) ..................................................................................................... 4, 5
11 U.S.C. § 547(b)(4)(B) ............................................................................................... 8
11 U.S.C. § 1101(2)(C) ............................................................................................... 10
11 U.S.C. § 1107 ............................................................................................................ 2
11 U.S.C. § 1108 ............................................................................................................ 2
11 U.S.C. § 1122 ............................................................................................................ 5
11 U.S.C. § 1122(a) ....................................................................................................... 5
11 U.S.C. § 1123(a) ....................................................................................................... 5
11 U.S.C. § 1125 ............................................................................................................ 3
11 U.S.C. § 1125(a)(1) ..................................................................................... 10, 11, 22
11 U.S.C. § 1123(a)(5) ................................................................................................... 5
11 U.S.C. § 1125(b) ..................................................................................................... 10
11 U.S.C. § 1125(e) ....................................................................................................... 4
11 U.S.C. § 1125(f) ...................................................................................................... 13
11 U.S.C. § 1129(a)(1) ................................................................................................... 5
11 U.S.C. § 1129(a)(3) ................................................................................................. 10
11 U.S.C. § 1129(a)(7) ................................................................................................. 22
11 U.S.C. § 1129(a)(11) ............................................................................................... 23
11 U.S.C. § 1129(b)(2)(B)(ii) ...................................................................................... 19

## TABLE OF AUTHORITIES

### (Continued)

**PAGE**

**RULES**

Fed.R.Bankr.P. 2015.3 .......................................................................................... 14

**OTHER AUTHORITIES**

H.R. Rep. No. 595, 95th Cong., 1st Sess. 408 (1977) ............................................ 11

MAINDOCS-#164869-v1-TradeUnionCommitteeObj1stAmDisclSmt.DOC

1     The Official Committee of Unsecured Creditors ("Committee") appointed in the Chapter 11

2   cases filed by Debtors Trade Union International, Inc. ("Trade Union") and Duck House, Inc.

3   ("Duck House") (together, "Debtors") hereby submits the following Objection ("Objection") to the

4   First Amended Disclosure Statement Describing Debtors' First Amended Chapter 11

5   Reorganization Plan ("Amended Disclosure Statement") filed by the Debtors.[1]

6                                              **I.**

7                            **FACTUAL BACKGROUND**

8     On January 31, 2011 ("Petition Date"), the Debtors filed their respective voluntary petitions

9   for relief under Chapter 11 of the Bankruptcy Code.  On or about February 10, 2011, the Court

10   entered an order jointly administering the Debtors' Chapter 11 cases [Docket No. 22].  Since the

11   Petition Date, the Debtors have acted as debtors-in-possession in their cases pursuant to

12   sections 1107 and 1108 of the Bankruptcy Code.[2]

13     On April 15, 2011, the Debtors filed the Debtors' Disclosure Statement Describing

14   Debtors' Chapter 11 Reorganization Plan ("Initial Disclosure Statement") [Docket No. 94] and

15   filed concurrently with the Initial Disclosure Statement the Debtors' Chapter 11 Reorganization

16   Plan ("Plan") [Docket No. 95].

17     On June 22, 2011, the UST filed its Notice of Appointment and Appointment of Committee

18   of Unsecured Creditors, by which the Committee was appointed to serve as the duly-acting, official

19   committee of creditors holding general unsecured claims in the Debtors' cases [Docket No. 132].

20     On July 21, 2011, the Debtors filed their Notice of Filing of Redline Version of Debtors'

21   First Amended Disclosure Statement Describing Debtors' First Amended Chapter 11

22   Reorganization Plan ("Notice of Filing of Amended Disclosure Statement") [Docket No. 142], by

23   which the Debtors filed a redlined version of the Amended Disclosure Statement, reflecting

24   changes made to the Initial Disclosure Statement.

25

26

27   _____
[1] While the Debtors' Amended Disclosure Statement purports to describe the Debtors' "First Amended Chapter 11
Reorganization Plan," the Court's dockets with respect to the Debtors' cases indicate that no such plan had been filed
28   by the Debtors by the time of the filing of this Objection.
[2] Unless otherwise defined herein, the definitions of the capitalized terms contained herein are as set forth in the
Amended Disclosure Statement.

MAINDOCS-#164369-v1-TradeUnionCommitteeObj1stAmDisclStmt.DOC

1    By this Objection, the Committee objects to the approval of the Amended Disclosure

2  Statement. As will be demonstrated hereinbelow, this Court should deny approval of the Amended

3  Disclosure Statement because (i) the underlying Plan to which the Amended Disclosure Statement

4  applies is patently unconfirmable, and, therefore, the Amended Disclosure Statement should not be

5  approved; and (ii) the Amended Disclosure Statement does not contain "adequate information" as

6  required by section 1125 of the Bankruptcy Code.

7                                   **II.**

8              **THIS COURT SHOULD DENY APPROVAL OF**

9            **THE AMENDED DISCLOSURE STATEMENT BECAUSE**

10          **THE UNDERLYING PLAN IS PATENTLY UNCONFIRMABLE**

11    The law is clear that a disclosure statement cannot be approved if the underlying plan to

12  which the disclosure statement applies is patently unconfirmable. See, In re Beyond.com Corp.,

13  289 B.R. 138, 140 (Bankr. N.D.Cal. 2003) ("Because the underlying plan is patently

14  unconfirmable, the disclosure statement may not be approved"). If the plan to which a disclosure

15  statement applies is unconfirmable on its face, approval of the disclosure statement must be

16  denied since solicitation of voting on the plan would be futile. See, In re Quigley Co., Inc., 377

17  B.R. 110, 115-116 (Bankr. S.D.N.Y. 2007) ("if the plan is patently unconfirmable on its face, the

18  application to approve the disclosure statement must be denied, as solicitation of the vote would

19  be futile."). The purpose of denying approval of a disclosure statement which applies to a

20  patently unconfirmable plan is to avoid the wasteful exercise of soliciting votes on a plan which

21  cannot be confirmed as a matter of law. In re La Guardia Associates L.P., 2006 WL 6601650,

22  *60 (Bankr. E.D.Pa. 2006) ("the purpose for this rule of law is to eliminate the wasteful and

23  fruitless exercise of sending the disclosure statement to creditors and soliciting votes on a

24  proposed plan, which cannot be confirmed.")

25    In this case, approval of the Amended Disclosure Statement should be denied because the

26  Plan is unconfirmable on its face.

27

28

1  **A.    The Plan Cannot Be Confirmed Because It Provides for Impermissible**

2  **Releases of Claims Against Insiders of the Debtors.**

3      Section IV(B) of the Plan, entitled "Exculpation," provides exculpatory provisions for the

4  benefit of the Debtors' insiders.  While Section IV(B) of the Plan contains language comparable to

5  the "safe harbor" provisions of section 1125(e) of the Bankruptcy Code, the provisions of

6  Section IV(B) go far beyond the section 1125(e) safe harbor provisions, stating, in part, as follows:

7      As of the Effective Date, and without the necessity of any further act, the Debtors,
       the Estates, and all holders of Claims against the Debtors that receive a
8      Distribution under the Plan, on behalf of themselves and their respective
       successors, assigns, employees, agents, officers, directions [sic], attorneys and
9      representatives (collectively the "Releasors") shall be deemed to release and
10     waive any and all Claims, liabilities, and causes of action, of any kind, nature or
       description, whether matured or unmatured, contingent or absolute, liquidated or
11     unliquidated, relating to the Debtors or their Estates, that any of the Releasors had
       or through the Effective Date has against Wen Pin Chang, Mei Lien Chang, Gary
12     Chang, and/or Howard Chang (collectively the "Releasees") including, those
       arising under the Bankruptcy Code and non-bankruptcy law, and any
13     subordination, alter ego, indemnification or contribution theories of recovery, and
14     interest or other costs, penalties, legal, accounting and other professional fees and
       expenses, and incidental, consequential and punitive damages payable to third
15     parties.

16     Section IV(B) of the Plan purports to implement, therefore, very broad, general releases of

17  claims against insiders of the Debtors.  The scope of the claims that Section IV(B) purports to

18  release is very broad ("any and all Claims . . . of any kind, nature or description").  Moreover, the

19  "Releasors" who are required to provide releases in favor of the Debtors' insiders include not only

20  the Debtors but **all Creditors** and their respective "successors, assigns, employees, agents, officers,

21  [directors], attorneys and representatives."

22     The broad releases provided by the Plan are improper and render the Plan legally

23  unconfirmable.  Section 524(e) of the Bankruptcy Code states specifically that a "discharge of a

24  debt of the debtor does not affect the liability of any other entity on, or the property of any other

25  entity for, such debt."  11 U.S.C. § 524(e).  The Ninth Circuit Court of Appeals has held repeatedly

26  that section 524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors.  In

27  re Lowenschuss, 67 F.3d 1394, 1401-1402 (9th Cir. 1995).  See also, Stratosphere Litigation

28  L.L.C. v. Grand Casinos, Inc., 298 F.3d 1137, 1143 (9th Cir. 2002) ("a bankruptcy court cannot

1    confirm a reorganization plan that discharges the liabilities of a third party"); In re Maxitile, Inc.,

2    237 Fed.Appx. 274, 276, 2007 WL 1814280, *2 (9th Cir. 2007); American Hardwoods, Inc. v.

3    Deutsche Credit Corp. (In re American Hardwoods, Inc.), 885 F.2d 621, 626 (9th Cir. 1989);

4    Underhill v. Royal, 769 F.2d 1426, 1432 (9th Cir. 1985); Commercial Wholesalers, Inc. v.

5    Investors Commercial Corp., 172 F.2d 800, 801 (9th Cir. 1949); Sun Valley Newspapers, Inc. v.

6    Sun World Corp. (In re Sun Valley Newspapers, Inc.), 171 B.R. 71, 77 (9th Cir. BAP 1994)

7    (holding that reorganization plans which propose to release non-debtor guarantors violate § 524(e)

8    and therefore are unconfirmable); Seaport Automotive Warehouse, Inc. v. Rohnert Park Auto

9    Parts, Inc. (In re Rohnert Park Auto Parts, Inc.), 113 B.R. 610, 614-17 (9th Cir. BAP 1990)

10    (finding that a reorganization plan provision which enjoined creditors from proceeding against co-

11    debtors violated § 524(e)).

12        These improper releases render the Plan unconfirmable and, therefore, the Amended

13    Disclosure Statement cannot be approved.

14        **B.    The Plan Implements a Substantive Consolidation of the Debtors in Violation**

15            **of 11 U.S.C. § 1129(a)(1).**

16        Pursuant to the Plan, the claims of the creditors of Trade Union and the creditors of Duck

17    House are treated the same and the pre-confirmation assets and liabilities and post-confirmation

18    assets and liabilities of Trade Union and Duck House are consolidated. The Plan implements,

19    therefore, a substantive consolidation of the Debtors. However, no order of the Court has been

20    entered substantively consolidating the Debtors, and no provision of the Plan implements a

21    substantive consolidation of the Debtors or even refers to a substantive consolidation of the

22    Debtors. This sub rosa substantive consolidation of the Debtors is improper. See, 11 U.S.C.

23    § 1129(a)(1).[3]

24

25    [3] Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with the applicable provisions of Chapter 11.
The most important of these provisions are set forth in sections 1122 and 1123(a) of the Bankruptcy Code.

26    Section 1122(a) permits a plan to place a claim in a particular class only if such claim is substantially similar to the
other claims in such class. Here, the Plan fails to satisfy this requirement in that the classes established by the Plan

27    (including Class 3, the class of general unsecured claims under the Plan) include claims asserted against both Debtors,
without any substantive consolidation of the Debtors being implemented under the Plan.

28    Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide adequate means for its implementation. Here,
the Plan fails to satisfy this requirement in that, while the Plan effectively implements a substantive consolidation of the

**C.**   **The Plan Lacks Good Faith by Reason of Improper Treatment of Insiders and Affiliates of the Debtors.**

It is clear that there have been, and continue to be, a very substantial number of very significant transactions among the Debtors and the Debtors' insiders and affiliates. These transactions include the following:

- Wen Pin Chang is the president of both Debtors and his wife, Mei Lien Chang (together, the "Changs"), is the vice president of both Debtors. Their sons, Gary Chang and Howard Chang, are, respectively, the Marketing Manager and Sales Executive for Trade Union. Each of these insiders receives, and will receive under the Plan, compensation from the Debtors.

- The Debtors lease their business premises, the State Street Property, from a family trust owned by the Changs. Pursuant to the Plan, the Debtors propose to assume such lease.

- According to the Amended Disclosure Statement, the Debtors hold almost $10.0 million in claims against the Changs.

- According to the Amended Disclosure Statement, Trade Union is the owner of an interest in a non-debtor entity located in Taiwan, Trade Union International (Taiwan) Limited ("TUI Taiwan"). The Debtors conduct extensive business transactions with TUI Taiwan. According to Exhibit "2" attached to the Amended Disclosure Statement, within the 90-day period prior to Trade Union's Chapter 11 filing, Trade Union paid to TUI Taiwan a total amount of $2,428,698.38. Exhibit "2" indicates that, within 90 days prior to Duck House's Chapter 11 filing, Duck House paid to TUI Taiwan a total amount of almost $1.0 million.

- According to the Amended Disclosure Statement, Trade Union (through TUI Taiwan) owns 100% of the stock interests in Nantong Trade Union Aluminum Company and Nantong Trade Union Chrome Plating Company (together, "Nantong

Debtors, the provisions of the Plan addressing the means of effectuating the Plan do not provide for, and, in fact, are silent regarding, any substantive consolidation of the Debtors.

MAINDOCS-#164869-v1-TradeUnionCommitteeObj1stAmDisclStmt.DOC

1    Wheel Company") and an interest in Ju Rong Company, which, according to the

2    Amended Disclosure Statement, owns certain vacant land located in China ("China

3    Land").[4]  According to the Amended Disclosure Statement, Trade Union intends to

4    enter into a transaction to sell 70% of its stock interest in the Nantong Wheel

5    Company pursuant to which approximately $9,070,795 of Trade Union's

6    obligations to Nantong Wheel Company (according to the Debtors, "through TUI

7    Taiwan") will be satisfied and a balance of approximately $1,458,590 will be

8    realized by Trade Union ("Nantong Wheel Company Transaction").  According to

9    the Debtors, the China Land will be retained by Trade Union through its Ju Rong

10   Company subsidiary.

11   • Exhibit "3" to the Amended Disclosure Statement provides a statement of general

12   unsecured claims asserted against Trade Union, as set forth in Trade Union's

13   Schedules.  Exhibit "3" indicates that the following insiders or affiliates of the

14   Debtors assert claims against Trade Union:  TUI Taiwan, in the amount of

15   $7,428,570.89; Nantong Trade Union Aluminum, in the amount of $183,634.15;

16   and the Changs' trust, in an aggregate amount of $39,372.67.  These claims asserted

17   by insiders or affiliates of the Debtors constitute approximately 95% of the general

18   unsecured claims against Trade Union.  The Plan does not provide for a

19   subordination of the claims of these insiders or affiliates, and, consequently, the

20   Debtors presumably propose pursuant to the Plan to treat these claims the same as

21   the claims of all other general unsecured creditors.[5]

22   • Exhibit "3" to the Amended Disclosure Statement also provides a statement of the

23   general unsecured claims asserted against Duck House, as set forth in Duck House's

24   Schedules.  Exhibit "3" indicates that TUI Taiwan asserts against Duck House a

25   general unsecured claim in the amount of $656,365.34, and that Mei Lien Chang

26

27   _____

[4] TUI Taiwan, Nantong Wheel Company and Ju Rong Company are referred to herein, collectively, as the "Foreign
Affiliates."

28   [5] The Amended Disclosure Statement does indicate that, if the Nantong Wheel Company Transaction is consummated,
the claims of TUI Taiwan against Trade Union will be satisfied.

-7-

1    asserts against Duck House a general unsecured claim in the amount of $10,000.

2    These claims constitute almost 75% of the general unsecured claims against Duck

3    House. The Plan does not provide for a subordination of these claims, and,

4    consequently, the Debtors presumably propose to treat these claims the same as the

5    claims of all other general unsecured creditors.

6    • Exhibit "2" to the Amended Disclosure Statement discloses that there were

7    numerous payments made to or on behalf of the Debtors' insiders or affiliates

8    within 90 days prior to the Petition Date.[6] Exhibit "2" indicates that Trade Union

9    paid to the Changs the following "rent" payments within 90 days prior to the

10    Petition Date: $25,500.00 (11/10/10); $15,709.00 (11/10/10); $10,536.00

11    (11/16/10); $20,500.00 (11/16/10); $20,500.00 (12/1/10); $20,506.00 (12/1/10);

12    $20,000.00 (12/9/10); $60,000.00 (12/13/10); $10,000.00 (12/16/10); and

13    $22,250.00 (12/28/10). In addition, it appears that numerous personal expenses of

14    the Debtors' insiders were paid by the Debtors: pool expenses; utility expenses that

15    appear to be for the Changs' residence; and possibly other personal expenses, such

16    as credit card expenses and cellular telephone expenses.

17    There have been and continue to be, then, numerous, very significant transactions between

18    the Debtors and the Foreign Affiliates which have not been subject to the scrutiny of this Court.

19    Moreover, there have been, and continue to be, numerous transactions between the Debtors and the

20    Debtors' insiders, including transactions by which the Debtors' insiders appear to have been using

21    the assets of the Debtors' estates to fund their personal expenses -- in effect, using the Debtors as

22    their personal "piggy bank."

23    The Debtors' Plan does not ignore these insider or affiliated transactions. **Rather, the Plan**

24    **proposes to insulate these insider and affiliated transactions from challenge, and to eliminate**

25

26

27    ───────────

[6] The Changs and their sons, Gary Chang and Howard Chang, are "insiders" of the Debtors, as such term is defined in section 101(31) of the Bankruptcy Code. Notwithstanding that fact, the Debtors disclose in the Amended Disclosure

28    Statement payments made to them only within the 90-day period prior to the Petition Date, rather than payments made within the one-year period provided by section 547(b)(4)(B) of the Bankruptcy Code.

MAINDOCS-#164869-v1-TradeUnionCommitteeObj1stAmDiscIStmt.DOC

any opportunity for creditors to investigate and, if appropriate, to pursue any recovery or other remedies on account of these transactions. In this regard, the following should be noted:

1. **The Plan Prevents Creditors from Objecting to Claims of Insiders and Affiliates.** Pursuant to Section III(H) of the Plan, the right to object to claims is vested solely in the Disbursing Agent under the Plan (i.e., the Debtors acting through Wen Pin Chang). Accordingly, pursuant to the Plan, creditors are precluded from filing any objections to any claims asserted by insiders or affiliates of the Debtors.

2. **The Plan Prevents the Committee and Any Creditors from Filing on Behalf of the Estates Any Litigation Against the Debtors' Insiders or Affiliates.** Pursuant to Section III(G) of the Plan, the right to litigate and settle any claims and causes of action of the Estates, including any Avoidance Actions, is vested solely in the Disbursing Agent (i.e., the Debtors acting through Wen Pin Chang). Accordingly, pursuant to the Plan, the Committee and any creditors are precluded from investigating, filing and pursuing on behalf of the Estates any viable claims against the Debtors' insiders or affiliates, including any Avoidance Actions.

3. **The Plan Provides to the Debtors' Insiders Very Broad Releases of Any Claims Held Against Them by the Debtors and by the Debtors' Creditors, Preventing Creditors from Pursuing Any Claims Against the Debtors' Insiders.** As stated hereinabove, pursuant to Section IV(B) of the Plan, the Debtors' insiders obtain from the Debtors and from the Debtors' creditors releases of "any and all claims, including any claims that arise under the Bankruptcy Code and non-bankruptcy law," that may exist against the Debtors' insiders. Pursuant to the Plan, then, the Debtors' principals are immunized from any appropriate claims that could be asserted against them by the Debtors and by the Debtors' creditors.

Accordingly, the Plan contains extraordinarily broad -- and legally impermissible -- provisions designed to prevent, absolutely and unconditionally, the Debtors and the Debtors' creditors from investigating and pursuing any appropriate bankruptcy or non-bankruptcy claims or causes of action against the Debtors' insiders or affiliates, and from pursuing any objection to the

1    substantial claims asserted by the Debtors' insiders and affiliates.  In effect, the Plan is designed to

2    immunize the Changs, the Changs' children and affiliates of the Debtors from any scrutiny in this

3    case, to their benefit and to the detriment of the Debtors' creditors.  These self-serving provisions

4    of the Plan cast strong doubts whether the Plan, as presently drafted, has been proposed in good

5    faith by fiduciaries of the Debtors.  The Committee respectfully submits that, in light of these

6    provisions, the Plan violates the provisions of section 1129(a)(3) of the Bankruptcy Code.

7            **D.      The Plan Provides Impermissibly That the Plan Will Be Deemed**

8                    **Substantially Consummated Upon the Effective Date of the Plan**.

9            Section IV(H) of the Plan provides that the Plan will be deemed to be substantially

10   consummated upon the Effective Date of the Plan.  In effect, the Plan provides that the Plan will

11   be deemed to be substantially consummated without the Debtors having to make <u>any</u>

12   distributions to creditors under the Plan.  Substantial consummation requires the commencement

13   of distributions under a plan.  11 U.S.C. § 1101(2)(C).  Accordingly, these provisions of the Plan

14   violate the Bankruptcy Code and render the Plan legally unconfirmable.

15           Thus, since the Plan to which the Amended Disclosure Statement applies is legally

16   unconfirmable, this Court should deny approval of the Amended Disclosure Statement.

17                                       **III.**

18                    **THE AMENDED DISCLOSURE STATEMENT**

19                    **DOES NOT CONTAIN ADEQUATE INFORMATION**

20           The Amended Disclosure Statement does not contain "adequate information" as required

21   by section 1125(a)(1) of the Bankruptcy Code.  Therefore, this Court should not approve the

22   Amended Disclosure Statement.

23           **A.      The Applicable Disclosure Burden.**

24           A disclosure statement must be approved by a bankruptcy court before any party may use it

25   to solicit votes to accept or reject a plan of reorganization.  11 U.S.C. § 1125(b).  A court may not

26   approve a disclosure statement unless it finds that the disclosure statement contains adequate

27   information.  <u>Id</u>.  Section 1125(a)(1) states that "adequate information" means:

28

                                       -10-

...information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan...

11 U.S.C. § 1125(a)(1).

Although Congress did not provide in section 1125(a)(1) any more detailed description of what constitutes "adequate information," Congress intended that "precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis." H.R. Rep. No. 595, 95th Cong., 1st Sess. 408 (1977). See also, Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.), 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court."). Full and adequate disclosure is critical to the legitimacy of the reorganization process. See, Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3rd Cir. 1988) ("The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, [the Court] cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information'"). As a general rule, a disclosure statement should contain all pertinent information bearing upon the success or failure of the proposals contained in the plan of reorganization and should set forth all material information relating to the risks posed to creditors. See, e.g., In re Cardinal Congregate I, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990).

Where a disclosure statement fails to provide information material to the proffered plan, courts will deny approval of the disclosure statement. See, e.g., In re Main Street AC, Inc., 234 B.R. 771 (Bankr. N.D.Cal. 1999) (disclosure statement denied as inadequate for failure to provide sufficient information concerning financial information of debtor's acquisition); In re Metrocraft Publishing Services, Inc., 39 B.R. 567, 569-81 (Bankr. N.D.Ga. 1984) (approval of a disclosure statement denied where disclosure statement omitted information relating to value of assets of the debtor, amount of unsecured claims, ability to collect accounts receivable and estimated return to creditors in chapter 7 liquidation); In re New Haven Radio, Inc., 18 B.R. 977 (Bankr. D.Conn.

1  1982) (disclosure statement inadequate because of failure to provide sufficient information

2  concerning debtor's assets and liabilities, specifically to identify creditors, to identify or indicate

3  amount of or to classify claims, and to disclose status of debtor's FCC license); In re Adana

4  Mortgage Bankers, Inc., 14 B.R. 29 (Bankr. N.D.Ga. 1981) (failure to disclose financial and other

5  information relating to risks to creditors under the plan is inadequate); In re McGrew, 60 B.R. 276

6  (Bankr. W.D.Ark. 1986) (disclosure statement inadequate for failure to account for value of certain

7  assets).

8  **B.    The Specific Disclosure Deficiencies with Respect to the Amended Disclosure**

9  **Statement.**

10  The Debtors' Amended Disclosure Statement does not contain adequate information

11  regarding the merits of the Plan. The following are certain of the material deficiencies in

12  disclosure with respect to the Amended Disclosure Statement:

13  **1.    The Amended Disclosure Statement Is Inconsistent with the Plan.** By

14  the Notice of Filing of Amended Disclosure Statement, the Debtors state that a "First

15  Amended Chapter 11 Reorganization Plan will be filed and served under separate cover."

16  As of the date of the filing of this Objection (July 28, 2011), however, no First Amended

17  Chapter 11 Reorganization Plan had been filed by the Debtors. The Amended Disclosure

18  Statement refers, then, to provisions of a Chapter 11 plan which has not yet been filed by

19  the Debtors, and contains provisions which are inconsistent with the provisions of the Plan

20  now on file with the Court (e.g., the provisions of Section IV(C)(1) of the Amended

21  Disclosure Statement addressing an apparently revised treatment of the secured claims of

22  the Bank Group). The Amended Disclosure Statement cannot be approved unless and

23  until an amended Chapter 11 plan has been filed by the Debtors and a determination is

24  made by the Court that the Amended Disclosure Statement describes accurately the

25  provisions of the Chapter 11 plan to which it applies.

26  **2.    Inadequate Information Regarding Substantive Consolidation of the**

27  **Debtors.** As set forth hereinabove, the Plan effectively provides for a substantive

28  consolidation of the Debtors. However, there is no disclosure contained in the Amended

-12-

Disclosure Statement regarding the Debtors' intended substantive consolidation of the Debtors, the merits of substantive consolidation in these cases, and the effect of substantive consolidation on the rights of the creditors of the respective Debtors.

3. **Inadequate Information Regarding "Conditional Approval" of the Amended Disclosure Statement.** Section I(A) of the Amended Disclosure Statement refers to the Court's having "conditionally" approved the Amended Disclosure Statement, and states that the accuracy of the Amended Disclosure Statement may be determined at the hearing on the confirmation of the Debtors' plan. It appears that these provisions of the Amended Disclosure Statement refer to procedures more applicable to a small business case. See, 11 U.S.C. § 1125(f). However, the Debtors' cases do not qualify as small business cases under sections 101(51C) and (51D) of the Bankruptcy Code and, by the Amended Disclosure Statement, the Debtors state that the Debtors' cases are not small business cases. These provisions should be corrected or clarified by the Debtors.

4. **Inadequate Service of Any Objection to the Confirmation of the Plan.** Section I(B)(3) of the Amended Disclosure Statement provides that any objection to the confirmation of the Plan must be served upon the Debtors' counsel. Any such objection also should be served upon the Committee's counsel.

5. **Inadequate Information Regarding Objections to Disputed Claims.** Section II(A)(35) of the Amended Disclosure Statement, which provides the definition of "Disputed Claim," states that a claim will be considered a disputed claim in its entirety if an objection is filed timely to any portion of such claim. In other words, a creditor will not obtain pursuant to the Plan any distributions on account of its claim even if a portion of its claim is not disputed by the Debtors. This is an important issue for creditors and, accordingly, the import of these provisions should be prominently and clearly disclosed by the Debtors.

6. **Inadequate Information Regarding Debtors' Interests in Affiliates and Regarding Debtors' Transactions with Insiders and Affiliates.** By the Amended Disclosure Statement, the Debtors fail to provide adequate information regarding the

Debtors' interests in their affiliates and regarding the Debtors' transactions with their insiders and affiliates.

        **a.**    **Debtors' Interests in Affiliates.**  By the Amended Disclosure Statement, the Debtors disclose that they have interests in the Foreign Affiliates. The Debtors fail to provide, however, <u>any</u> meaningful disclosure regarding the financial affairs of the Foreign Affiliates.  Creditors are left to speculate regarding the assets and liabilities of each of the Foreign Affiliates and the value of the Debtors' interests in the Foreign Affiliates.  The Debtors should be required to provide adequate information regarding the background, financial affairs and financial operations of each of the Foreign Affiliates and regarding the value of the Debtors' interests in the Foreign Affiliates.  Moreover, the Debtors should be required to disclose whether the Debtors have interests in any other affiliates.

        Pursuant to Rule 2015.3 of the Federal Rules of Bankruptcy Procedure, the Debtors were required to have filed, not later than seven days before the first date set in these cases for the meeting of creditors under section 341 of the Bankruptcy Code (March 4, 2011) and no less frequently than every six months thereafter, periodic financial reports regarding the "value, operations and profitability" of the Debtors' Foreign Affiliates.  The Debtors have failed to do so.  **This Court should condition the approval of any disclosure statement of the Debtors upon the Debtors' filing of such reports in accordance with the requirements of Rule 2015.3.**

        **b.**    **Debtors' Transactions with Affiliates.**  By the Amended Disclosure Statement, the Debtors state that Trade Union and Nantong Wheel Company conduct transactions through a trading company, TUI Taiwan.  The Debtors do not provide, however, any meaningful information regarding the nature of such transactions or whether such transactions are on terms fair to the Debtors.  For example, there is no information upon which creditors can evaluate whether the transactions among Trade Union/TUI Taiwan/Nantong Wheel Company are on fair

market terms or are even valid, good faith transactions (or, for example, provide to the Debtors' insiders an opportunity to divert funds of the Estates to foreign companies which are not within the jurisdiction of the Court and the operations of which have not been subject to the scrutiny of the Court, the UST or creditors). In light of the fact that the Debtors paid to TUI Taiwan an aggregate amount of more than $3.0 million within 90 days prior to the Petition Date, this disclosure is of vital importance for the Debtors' creditors.

   **c.   Nantong Wheel Company Transaction.** By the Amended Disclosure Statement, the Debtors disclose their proposed sale of 70% of Trade Union's stock in the Nantong Wheel Company ("Nantong Stock"). With respect to the proposed Nantong Wheel Company Transaction, the Debtors fail to provide adequate information regarding, among other things, the following:

- The status of the Buyer's offer for the Nantong Stock, and, since the offer was made prior to the Petition Date (almost six months ago), the reason for the delay in consummating this transaction.

- The fairness of the proposed consideration to be provided by the Buyer in connection with the Nantong Wheel Company Transaction.

- The value of the 30% stock interest in the Nantong Wheel Company that will be retained by Trade Union, and the right and likely ability of Trade Union to dispose of such interest.

- Whether the Debtors, or any of the Debtors' insiders or affiliates, have any interest in the Buyer.

- The nature and amount of Nantong Wheel Company's obligations to "certain Chinese banks" and other creditors.

- The claims asserted against the Debtors which will be satisfied in connection with any consummation of the proposed Nantong Wheel Company Transaction.

MAINDOCS-#164869-v1-TradeUnionCommitteeObj1stAmDisclStmt.DOC

**d.    <u>Debtors' Transactions with Insiders</u>.** The Debtors fail to provide adequate information regarding their transactions with insiders of the Debtors.

- The Debtors disclose that they rent the State Street Property from a trust owned by the Changs. The Debtors should disclose the terms of that lease and provide information regarding the fairness of the rent provided by that lease and the other material terms of that lease.

- The Debtors should disclose more fully the nature of the Debtors' claims against the Changs (stated to be almost $10.0 million).

- The Debtors disclose that the Changs have provided to the Bank Group, in connection with the Changs' guarantees of the Debtors' obligations to the Bank Group, certain real property collateral. The Debtors should provide additional information regarding such guarantees and regarding the nature and value of the collateral that the Changs have provided to the Bank Group. Also, the Debtors should provide information regarding any additional assets that the Debtors or the Changs intend to pledge in favor of the Bank Group or to sell in order to raise funds to pay to the Bank Group or to otherwise fund the Plan (including the disposition of a commercial real property located in Los Angeles owned by the Changs or by an entity affiliated with the Changs).

- The Debtors should disclose whether the Debtors have conducted and now conduct any other transactions with insiders of the Debtors.

Adequate disclosure of the Debtors' transactions with the Debtors' insiders is of vital interest to the Debtors' creditors.

**e.    <u>Value and Disposition of China Land</u>.** By the Amended Disclosure Statement, the Debtors disclose that Trade Union, through its Ju Rong Company subsidiary, owns the China Land and that, after any consummation of the Nantong Wheel Company Transaction, the Ju Rong Company subsidiary will retain

the China Land.  The Debtors should provide additional information regarding the value of the China Land, Trade Union's intentions with respect to the disposition of the China Land, and Trade Union's ability to realize value from the China Land for the benefit of creditors.

Adequate disclosure regarding the Debtors' interests in the Affiliates and regarding the Debtors' transactions with insiders and affiliates is absolutely essential to creditors' evaluation of the merits of the Plan.  Without such disclosure, it is impossible for creditors to be able to determine the fairness of the Plan.

**7.**     **Inadequate Information Regarding Transactions Among the Debtors.**
Section III(A) of the Amended Disclosure Statement states that the Debtors jointly lease the State Street Property.  The Debtors should disclose how lease payments are allocated between the Debtors.

Section III(A) of the Amended Disclosure Statement states also that Duck House's employees are employed and paid by Trade Union.  The Debtors should disclose the allocation of payroll expense between the Debtors and the basis therefor.

**8.**     **Inadequate Information Regarding Valuation of State Street Property/Crystal Ridge Property.**  Section III(B) of the Amended Disclosure Statement states that, based upon "recent purchase offers," the value of the State Street Property "is believed to be" between $5.8 million to $6.2 million.  The Debtors should provide additional information regarding the basis for such valuation of the State Street Property.

Section III(B) of the Amended Disclosure Statement states that the value of the Crystal Ridge Property "is believed to be" in excess of $3.0 million.  The Debtors should disclose the basis for such valuation of the Crystal Ridge Property.

**9.**     **Inadequate Information Regarding Post-Confirmation Compensation of the Changs.**  Pursuant to Section III(C) of the Amended Disclosure Statement, the Debtors disclose that the Changs will receive post-confirmation their regular monthly salary, but reserve the right to increase their compensation based upon the "Debtors' performance under the Plan and overall financial strength of the Debtors."  The Debtors

-17-

should provide additional information regarding the terms under which the Changs may obtain increased post-confirmation compensation.

10.    **Inadequate Information Regarding Claims Against Insiders or Affiliates.** Pursuant to Section III(E) of the Amended Disclosure Statement, the Debtors refer to potential recoveries from Avoidance Actions. The Debtors do not disclose, however, whether they have investigated whether any Avoidance Actions or other causes of action should be pursued against insiders or affiliates of the Debtors and the amount of any potential recoveries that could be obtained against insiders or affiliates of the Debtors. Also, the Debtors should amend Exhibit "2" to the Amended Disclosure Statement in order to list payments made to the Debtors' insiders within one year prior to the Petition Date, and not just within 90 days prior to the Petition Date.

11.    **Inadequate Information Regarding Treatment of Secured Claims of the Bank Group.** Section IV(C)(1) of the Amended Disclosure Statement states the Debtors' proposed treatment of the secured claims of the Bank Group. Section IV(C)(1) states that the Debtors' proposed loan and security agreements with the Bank Group will be attached as exhibits to the Amended Disclosure Statement, but the version of the Amended Disclosure Statement filed with the Court does not contain such exhibits. These exhibits are necessary for creditors to have an adequate opportunity to evaluate the proposed treatment of the secured claims of the Bank Group and the effect thereof on the Debtors' ability to meet their obligations to the Bank Group and to general unsecured creditors under the Plan.

The Debtors state in the Amended Disclosure Statement that the estimated value of the Bank Group's collateral is approximately $11,500,000. The Debtors should disclose the basis for their valuation of such collateral, and, specifically, the basis for a determination of the amount of the allowed secured claims of the Bank Group pursuant to section 506 of the Bankruptcy Code.

-18-

12.    **Inadequate Information Regarding Claims Related to Debtors'**
**Equipment (Classes 1-B, 1-C, 1-D, 1-E).**  By Section IV(C)(1) of the Amended Disclosure
Statement, the Debtors provide inconsistent information regarding the treatment of the
claims with respect to equipment of Trade Union.  On one hand, the Debtors treat these
claims as secured claims.  On the other hand, the Debtors' statements regarding the
treatment of these claims refer to the applicable contracts as "leases" to be assumed by
Trade Union on the Effective Date of the Plan.  The nature of these claims should be
clarified.  Moreover, if these claims are to be treated as secured claims, the Debtors should
disclose the basis for the Debtors' valuation of such claims under section 506 of the
Bankruptcy Code.

13.    **Inadequate Information Regarding Treatment of General Unsecured**
**Claims of Affiliates.**  By Section IV(C)(3) of the Amended Disclosure Statement, the
Debtors state that approximately $9,070,795 of claims will be resolved in the event that
the proposed Nantong Wheel Company Transaction is consummated.  The Amended
Disclosure Statement does not disclose, however, the disposition of these claims in the
event that the Nantong Wheel Company Transaction is not consummated.  This is a
critical issue for general unsecured creditors, and, therefore, the Debtors should provide
additional disclosure in this regard.

14.    **Inadequate Information Regarding Interest Holders' Retention of**
**Equity Interests.**  Pursuant to the Plan, the Interest Holders (i.e., the Changs) propose to
retain their equity interests in the Debtors.  Section IV(C)(4) of the Amended Disclosure
Statement should disclose the provisions of the "absolute priority rule" (11 U.S.C.
§1129(b)(2)(B)(ii)) and that, if the class of general unsecured claims established by the
Plan does not vote in favor of the Plan, the Interest Holders may not retain their equity
interests in the Debtors, absent an appropriate "new value" contribution by them.[7]

---

[7] Section V(A)(9) of the Amended Disclosure Statement purports to describe the absolute priority rule, but the Debtors'
description of the absolute priority rule in that section is fairly murky.  The Debtors should provide additional
disclosure, in plain language, regarding the absolute priority rule and the effect of any failure by the class of general
unsecured claims established by the Plan to vote against the confirmation of the Plan.

-19-

15.     **Inadequate Information Regarding the Effect of Any Failure to Consummate the Nantong Wheel Company Transaction or Sales of Non-Estate Property on the Implementation of the Plan.** By Section IV(D) of the Amended Disclosure Statement, the Debtors state that payments to the Bank Group and to other creditors may be funded from proceeds that the Debtors will receive from the Nantong Wheel Company Transaction and from sales of assets that are not property of the Debtors' Estates. The Debtors should disclose the effect of any failure to consummate any such transactions on the Debtors' ability to implement the Plan.

16.     **Inadequate Information Regarding Risk Factors.** Pursuant to Section IV(G) of the Amended Disclosure Statement, the Debtors list various risks associated with the Plan. This list should be expanded to include, among other things, the following:

(a)     The risks associated with any inability to consummate the Nantong Wheel Company Transaction.

(b)     The risks associated with any failure to consummate any contemplated sale of non-estate assets.

(c)     The risks associated with any failure by the class of general unsecured claims established by the Plan to vote in favor of the Plan.

17.     **Inadequate Information Regarding the Disposition of Any Claims Against Insiders and Affiliates.** Pursuant to the Plan, the Disbursing Agent (i.e., the Debtors acting through Wei Pin Chang) retains the sole right to prosecute any Avoidance Actions and any other Post-Confirmation Estate Claims. Section IV(H), which describes Post-Confirmation Estate Claims, should disclose the investigation, if any, that the Debtors have made to determine whether any claims exist against the Debtors' insiders and affiliates. Moreover, Section IV(H) should disclose that, pursuant to the Plan, the Debtors, controlled by the Changs, have the sole right to pursue any claims against the Changs, other insiders of the Debtors and affiliates of the Debtors.

MAINDOCS-#164869-v1-TradeUnionCommitteeObj1stAmDisclStmt.DOC

18.    **Inadequate Information Regarding Settlement with the Bank Group.**
Pursuant to Section IV(H)(1) of the Amended Disclosure Statement, the Debtors disclose
that they are investigating the Bank Group's secured claims and whether the Debtors hold
any claims against the Bank Group. By the Amended Disclosure Statement, however, the
Debtors have deleted language contained in the Initial Disclosure Statement regarding
potentially pursuing claims against the Bank Group, and have added language that any
such claims will be resolved by a proposed settlement reached between the Debtors and
the Bank Group. The Amended Disclosure Statement contains virtually no information
regarding the Debtors' proposed settlement with the Bank Group. The Amended
Disclosure Statement should provide additional information regarding the terms and the
merits of the Debtors' proposed settlement with the Bank Group.

19.    **Inadequate Information Regarding Claims of Insiders and Affiliates of
the Debtors.** Pursuant to the Plan, the Disbursing Agent (i.e., the Debtors acting through
Wei Pin Chang) is granted the sole right to prosecute objections to any disputed claims.
Section IV(I) of the Amended Disclosure Statement, which describes objections to
disputed claims, should disclose the claims asserted against the Debtors by the Debtors'
insiders and affiliates. Section IV(I) should disclose also that, pursuant to the Plan, the
Debtors, controlled by the Changs, will have the sole right to file objections to any claims
asserted by the Changs, other insiders of the Debtors and by affiliates of the Debtors,
including the very substantial claims asserted by the Foreign Affiliates.

20.    **Inadequate Information Regarding Assumption of Leases.** Pursuant to
the Plan, the Debtors propose to assume their lease of the State Street Property, which is
owned by a family trust of the Changs. Section IV(L)(1) of the Amended Disclosure
Statement, which describes the Debtors' assumption of leases and executory contracts,
should disclose that the lease of the State Street Property effectively is with the Changs,
and should set forth the merits of the assumption of that lease.

21.    **Inadequate Information Regarding Tax Consequences of the Plan.**
Section IV(M) of the Amended Disclosure Statement purports to address the tax

consequences of the Plan. Section IV(M), however, contains no meaningful disclosure of the tax consequences of the Plan. In accordance with the requirements of section 1125(a)(1) of the Bankruptcy Code, the Debtors should provide adequate information regarding the tax consequences of the Plan for the Debtors and creditors.

22.    **Inadequate Information Regarding the Results of Any Liquidation of the Debtors.** By Section V(B) of the Amended Disclosure Statement, the Debtors provide a "Liquidation Analysis" for the purpose of seeking to demonstrate that the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The Debtors' Liquidation Analysis does not provide adequate information regarding the results of any liquidation of the Debtors for, in part, the following reasons:

(a)    **Date of Valuation and Estimate of Liabilities.** The valuation of the Debtors' assets and the amount of the Debtors' debts is listed as of March 31, 2011 -- almost four months ago. The Liquidation Analysis should be revised to reflect more current financial information for the Debtors.

(b)    **Consolidation.** The Liquidation Analysis should disclose that the assets of the Debtors and the liabilities of the Debtors have been consolidated for the purpose of the Liquidation Analysis.

(c)    **Claims Against Changs.** The Debtors disclose, in a cursory manner, that they hold claims against the Changs in the aggregate amount of approximately $10.0 million. Given the large amount of these claims, significantly greater information should be provided regarding the nature of these claims.

(d)    **Interests in Affiliates.** The Liquidation Analysis does not provide any disclosure regarding the value of the Debtors' interests in the Affiliates. The Debtors should be required to provide adequate information regarding the value of these assets.

(e)    **Product Brands.** The Debtors provide only a cursory statement regarding the value of Trade Union's product brands. The Debtors should provide additional information regarding these assets.

MAINDOCS-#164869-v1-TradeUnionCommitteeObj1stAmDisclStmt.DOC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**(f)**    **Inventory.**  The Debtors state that, as of March 31, 2011, the Debtors had approximately $4.5 million in inventory.  For the purpose of the Liquidation Analysis, the Debtors have assumed a 70% reduction in value of the inventory in the event of a liquidation of the Debtors.  The Debtors should provide adequate information regarding the basis for such assumption.

Without such additional information, creditors will not be able to determine the merits of any liquidation alternative versus the reorganization of the Debtors contemplated by the Plan.

**23.**    **Inadequate Information Regarding Feasibility of the Plan.**  By Section V(C) of the Amended Disclosure Statement, the Debtors provide a "Feasibility Analysis" for the purpose of seeking to demonstrate that the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.  The Debtors' Feasibility Analysis does not provide adequate information regarding the feasibility of the Plan, in part, for the following reasons:

**(a)**    **Inconsistency between the Amended Disclosure Statement and the Purported Amended Plan.**  The Debtors' Feasibility Analysis is contained primarily in Exhibit "1" to the Disclosure Statement.  The Debtors have not amended Exhibit "1" for the purpose of addressing changes contained in the Amended Disclosure Statement and in the "First Amended Chapter 11 Reorganization Plan" that the Debtors purportedly intend to file.  For example, it appears that the Debtors and the Bank Group have reached an agreement by which the Debtors will amend the Plan to provide that the Debtors will satisfy the Bank Group's secured claims within three years, rather than within five years, as now provided by the Plan.  This is a very material change to the treatment of the Bank Group's secured claims.  The Feasibility Analysis must be amended in order to demonstrate that it is feasible for the Debtors to satisfy the Bank Group's secured claims within that significantly reduced time period.

**(b)** **Reasonableness of Assumptions.** The Debtors should provide additional information in order to demonstrate that the assumptions underlying the Debtors' financial projections (Exhibit "1" to the Amended Disclosure Statement) are reasonable. By such financial projections, the Debtors assume significantly increased revenues and significantly increased gross profit margins during the term of the Plan; additional information should be provided to explain the reasonableness of such assumptions. Moreover, to attempt to demonstrate the reasonableness of the Debtors' assumptions underlying the financial projections, the Debtors compare a projection of their 2011 financial results with the Debtors' 2003 financial results. The Debtors' current business operations and the current economic environment presumably are very different from the Debtors' business operations and the economic environment eight years ago. The Debtors should provide additional information to explain why a comparison of the Debtors' 2003 financial performance to the Debtors' projected 2011 financial performance is relevant.

**(c)** **Nantong Wheel Company Transaction.** By the Feasibility Analysis, the Debtors assume that they will use $1.5 million cash projected to be realized from a consummation of the Nantong Wheel Company Transaction in order to fund the Plan. The Debtors should provide additional information to disclose the effect on the feasibility of the Plan if that transaction is not consummated.

**24.** **Inadequate Information Regarding Merits of Releases for Debtors' Insiders.** Pursuant to the Plan, the Debtors propose to release, and to require that the Debtors' creditors release, any and all claims that they may have against the Debtors' insiders. Section VI(B) of the Amended Disclosure Statement, which addresses these releases, should provide additional information to disclose the basis for such releases.

## IV.

## CONCLUSION

The Committee desires to negotiate with the Debtors and with the Bank Group the terms of a fair plan of reorganization and is prepared to work with the Debtors and with the Bank Group to

MAINDOCS-#164869-v1-TradeUnionCommitteeObj1stAmDisclStmt.DOC

1  achieve a consensual plan. The Debtors' Plan, as presently drafted, however, contains provisions

2  which are extremely unfair to creditors and which render the Plan fatally defective, and the

3  Debtors' Amended Disclosure Statement fails to provide information adequate to enable creditors

4  to evaluate the merits of the Plan. Based thereon, and for all of the reasons set forth hereinabove,

5  the Committee requests that the Court deny approval of the Debtors' Amended Disclosure

6  Statement.

7  Dated: July 28, 2011

**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**

By: _____

Robert E. Opera
Proposed General Insolvency Counsel for the
Official Committee of Unsecured Creditors

-25-

MAINDOCS-#164869-v1-TradeUnionCommitteeObj1stAmDisclStmt.DOC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: **OFFICIAL COMMITTEE OF UNSECURED CREDITORS'S OBJECTION TO DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTORS' FIRST AMENDED CHAPTER 11 REORGANIZATION PLAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 28, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On July 28, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**VIA OVERNITE EXPRESS**
Honorable Deborah Saltzman
3420 Twelfth Street #384
Riverside, CA 92501

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 28, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Committee Members: 'thandeland@rrts.com'; 'Clark Longhurst'; 'mackieassc@aol.com'; 'normmeidl@aol.com'
Financial Consultant to Committee: 'Richard Feferman, CIRA' – richard@crarecovery.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 28, 2011 | Gretchen Crumpacker | |
|---|---|---|
| Date | Type Name | Signature |

NEF SERVICE LIST

- James C Bastian    jbastian@shbllp.com
- Michael G Fletcher    mfletcher@frandzel.com, efiling@frandzel.com;shom@frandzel.com
- Barry V Freeman    bvf@jmbm.com, bvf@jmbm.com
- Allan P Leguay    leguay@pacbell.net
- Elizabeth A Lossing    elizabeth.lossing@usdoj.gov
- Nicholas A Merkin    nmerkin@frandzel.com, efiling@frandzel.com;bwilson@frandzel.com  - **Counsel to Secured Creditor**
- Ramesh Singh    claims@recoverycorp.com
- James M Sullivan    jsullivan@mosessinger.com, ccaruso@mosessinger.com;dkick@mosessinger.com
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov
- Andrew F Whatnall    awhatnall@daca4.com

MAINDOCS-#164869-v1-TradeUnionCommitteeObj1stAmDiscStmt.DOC