1 | James C. Bastian, Jr. - Bar No. 175415
**SHULMAN HODGES & BASTIAN LLP**
2 | 8105 Irvine Center Drive, Suite 600
Irvine, California 92618
3 | Telephone:     (949) 340-3400
Facsimile:      (949) 340-3000
4 | Email: jbastian@shbllp.com

5

Insolvency Counsel for the Debtors and
6 | Debtors in Possession, Trade Union International, Inc. and
Duck House, Inc.

7

8

9

**UNITED STATES BANKRUPTCY COURT**

10

**CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION**

11

12

| | |
|---|---|
| In re | Case No.  6:11-bk-13071-DS |
| **TRADE UNION INTERNATIONAL, INC.,** **a California corporation,** | Chapter  11 |
| | Jointly Administered With Case No.  6:11-bk-13072-DS |
| Debtor. | |
| | **DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTORS' FIRST AMENDED CHAPTER 11 REORGANIZATION PLAN** |
| In re | |
| **DUCK HOUSE, INC.,** **a California corporation,** | |
| Debtor. | Plan Confirmation Hearing [See Disclosure Statement for Voting and Objection Procedures] Date:   September 2, 2011 Time:   10:00 A.M. Place:  Courtroom 304         United States Bankruptcy Court         3420 Twelfth Street         Riverside, CA 92501 |

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

1

Page 1

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...........................................................................................................5

    A.      Purpose of this Document.........................................................................................7

    B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing.............8

        1.      Time and Place of the Confirmation Hearing ...............................................9

        2.      Deadline for Voting for or Against the Plan .................................................9

        3.      Deadline for Objecting to the Confirmation of the Plan..............................9

        4.      Identity of Person to Contact for More Information Regarding the
            Plan ...........................................................................................................10

    C.      Disclaimer .............................................................................................................10

II.     DEFINITIONS, INTERPRETATIONS, AND RULES OF CONSTRUCTION ..............14

    A.      Definitions.............................................................................................................14

    B.      Interpretations, Computation of Time and Governing Law...................................22

        1.      Undefined Terms .........................................................................................22

        2.      Rules of Interpretation ................................................................................22

        3.      Computing Time Periods .............................................................................23

        4.      Notices and Delivery of Documents ...........................................................23

III.    BACKGROUND ...........................................................................................................24

    A.      Description of the Debtors' Business ....................................................................24

    B.      Events Leading to the Bankruptcy Filings.............................................................25

    C.      Management of the Debtors Before and After the Petition Date............................28

    D.      Significant Events During the Bankruptcy Case ...................................................29

        1.      Bankruptcy Proceedings ..............................................................................29

        2.      Other Legal Proceedings..............................................................................36

    E.      Actual and Projected Recovery of Preferential Transfers.....................................36

    F.      Procedures Implemented to Resolve Financial Problems......................................38

    G.      Debtors' Current Financial Condition ..................................................................39

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

2

IV.    SUMMARY OF THE PLAN ........................................................................... 39

    A.    Overview ................................................................................................ 39

    B.    Unclassified Claims ............................................................................. 39

        1.    Administrative Expenses .................................................... 39

        2.    Priority Tax Claims ............................................................. 41

    C.    Classified Claims ................................................................................. 42

        1.    Classes of Secured Claims .................................................. 42

        2.    Classes of Priority Unsecured Claims ............................... 46

        3.    Class of General Unsecured Claims ................................... 46

        4.    Class of Interest Holders .................................................... 47

    D.    Means of Effectuating the Plan .......................................................... 48

    E.    Post-Confirmation Management ........................................................ 49

    F.    Employment and Compensation of Professionals ........................... 51

    G.    Risk Factors ......................................................................................... 51

    H.    Post-Confirmation Estate Claims ...................................................... 53

        1.    Potential Claims Regarding Bank Group and its Allowed Secured
           Claim Amount (Resolved Under the Plan) ....................... 55

    I.    Objections to Claims ........................................................................... 55

    J.    Pending Disputed General Unsecured Claims as of the Date of
       Distribution .......................................................................................... 56

    K.    Unclaimed Distributions .................................................................... 56

    L.    Other Provisions of the Plan .............................................................. 58

        1.    Executory Contracts and Unexpired Leases ..................... 58

        2.    Rejections ............................................................................. 60

        3.    Changes In Rates Subject To Regulatory Commission Approval ............ 61

        4.    Retention of Jurisdiction .................................................... 61

        5.    Injunction With Respect to Proceeds of Sale of Berendo Property .......... 63

    M.    Tax Consequences of the Plan ........................................................... 63

V.    CONFIRMATION REQUIREMENTS AND PROCEDURES ....................................... 64

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

3

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

|   |   |   |   |   |
|---|---|---|---|---|
| A. | | Who May Vote Or Object | | 65 |
| | 1. | Who May Object To Confirmation Of The Plan | | 65 |
| | 2. | Who May Vote To Accept The Plan | | 65 |
| | 3. | What Is An Allowed Claim | | 65 |
| | 4. | What Is An Impaired Claim | | 66 |
| | 5. | Who Is Not Entitled To Vote | | 66 |
| | 6. | Who Can Vote In More Than One Class | | 67 |
| | 7. | Votes Necessary To Confirm The Plan | | 67 |
| | 8. | Votes Necessary For A Class To Accept The Plan | | 67 |
| | 9. | Treatment Of Non-Accepting Classes | | 67 |
| | 10. | Request For Confirmation Despite Nonacceptance by Impaired Class(es) | | 68 |
| B. | | Liquidation Analysis | | 68 |
| C. | | Feasibility | | 73 |

**VI. EFFECT OF CONFIRMATION OF THE PLAN** .......................................... 75

| A. | Discharge | 75 |
|---|---|---|
| B. | Exculpation | 75 |
| C. | Revesting of Property in the Debtors | 76 |
| D. | Conditions Precedent to Confirmation | 76 |
| E. | Modification of the Plan | 77 |
| F. | Post-Confirmation Status Reports | 77 |
| G. | Post-Confirmation Conversion/Dismissal | 77 |
| H. | Substantial Consummation | 78 |

**DECLARATION OF WEN PIN CHANG** ....................................................... 79

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

4

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

# I.    __INTRODUCTION__

Trade Union International, Inc., a California corporation and Duck House, Inc., a California corporation, the Debtors[1] in these jointly administered bankruptcy cases, provide this Disclosure Statement to all of their Creditors and other parties in interest.   The Debtors commenced their respective bankruptcy cases by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code on January 31, 2011.   Trade Union and Duck House are each continuing in possession of their property, and operating and managing their respective business, as debtors-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108.

The Bankruptcy Code requires that, at the time when the Plan is delivered to Creditors, the Plan be accompanied by this Disclosure Statement.   The purpose of this Disclosure Statement is to provide information of a kind, and in sufficient detail, so far as is reasonably practicable in light of the nature and history of the Debtors and the condition of the Debtors' books and records, to enable a typical Creditor to make an informed judgment about the Plan and to enable such Creditor to determine whether it is in his best interest to vote for (accept) or against (reject) the Plan.

THE DOCUMENT YOU ARE READING IS THE

DISCLOSURE STATEMENT FOR THE PLAN

Chapter 11 of the Bankruptcy Code allows the Debtors, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization.   The plan may provide for the Debtors to reorganize by continuing to operate, to liquidate by selling assets of the Estate, or a combination of both.   The Debtors are proposing the Plan sent to you in the same envelope as this document.

This Disclosure Statement contains a description of the Plan and other information relevant to the decision whether to vote to accept the Plan.   The Debtors encourage you to read this Disclosure Statement because it contains important information concerning the history of the

---

[1] The definitions of the capitalized terms used in this Disclosure Statement are contained in Section II. of this Disclosure Statement.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

5

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

1  Debtors' business operations, their financial affairs, their assets and liabilities, and sets forth a

2  summary of the Plan.

3          This Disclosure Statement, including the schedules and exhibits attached hereto, is the

4  only document authorized by the Court to solicit votes for or against the Plan. Most statements

5  and financial information herein about the Debtors have been obtained from documents and

6  information prepared by or on behalf of the Debtors.

7          The statements contained in this Disclosure Statement are made as of the date this

8  Disclosure Statement is signed by the Debtors below unless another time is specified.  The

9  delivery or filing of this Disclosure Statement does not constitute a representation that there has

10  been no change in the information set forth in this Disclosure Statement and the materials relied

11  upon in preparation of this Disclosure Statement after the date signed below.

12          Nothing contained in this Disclosure Statement shall constitute an admission of any fact

13  or liability by any party.   THE DEBTORS RESERVES THE RIGHT TO AMEND OR

14  UPDATE ANY PORTION OF THIS DISCLOSURE STATEMENT PRIOR TO THE

15  HEARING ON ITS APPROVAL.

16          The Debtors' Plan is a reorganization plan.   The Debtors' cases are being jointly

17  administered.  The Plan and Disclosure Statement do not represent an attempt by the Debtors to

18  implement a substantive consolidation of the Debtors' assets and liabilities.  The restructuring to

19  be effectuated through the Plan is designed to enable the Debtors to continue operations and

20  afford them sufficient time to repay prepetition debts as detailed in the Plan. The Debtors will

21  make payments under the Plan primarily from continued business operations.  The Plan may also

22  be funded from Net Avoidance Action Proceeds, if any, and any proceeds derived from Post-

23  Confirmation Estate Claims.  Payments to the Bank Group may also be funded from the sale of

24  assets that are not property of the Estates but which such property currently serve as collateral

25  under the Bank Group's Secured Claim.

26          The terms of the Plan are fully set forth in the Plan.  The following is an outline of the

27  Plan:

28

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

6

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 6

1    1.    Allowed Administrative Claims will be paid in full on the Effective Date unless

2  the holder of an Allowed Administrative Claim agrees to a different treatment.

3    2.    Allowed Priority Tax Claims will be paid in full within five years of the Petition

4  Date.

5    3.    Allowed Secured Claims are impaired under the Plan and are separately classified

6  in accordance with the Code.  Certain Secured Creditors shall have their debt obligations

7  modified with respect to repayment terms and interest rates as provided in the Plan and are

8  entitled to vote on the Plan.  Other Secured Creditors shall retain, unaltered, all of their legal,

9  equitable and contractual rights and consequently, shall be deemed to vote in favor of the Plan.

10  Creditors with Allowed Secured Claims should review the treatment section herein to see the

11  repayment terms for their specific debts.

12    4.    Allowed General Unsecured Claims are impaired under the Plan.  Depending on

13  the Creditor's election for treatment, Allowed General Unsecured Claims will be paid either (i)

14  20% of their Allowed Claim within thirty days of the Effective Date, or (ii) 50% of their

15  Allowed Claim  payable in annual installments of 10% each over a five year period from the

16  Effective Date, with the first 10% installment payment to be made within thirty days of the

17  Effective Date.

18    **A MORE COMPLETE DESCRIPTION OF THE PROVISIONS OF THE PLAN**

19  **AND THE MEANS OF EFFECTUATING THE PLAN ARE LOCATED AT SECTION**

20  **IV.D. BELOW.**

21  **A.    Purpose of this Document**

22    This Disclosure Statement summarizes what is in the Plan and tells you certain

23  information relating to the Plan and the process the Court follows in determining whether or not

24  to confirm the Plan.  This Disclosure Statement does not purport to be a complete description of

25  the Plan, the financial data pertaining to the Debtors' businesses and financial affairs, the

26  applicable provisions of the Bankruptcy Code, or any other matter which may be deemed

27  significant by Creditors.  Out of practical necessity, this Disclosure Statement represents an

28

**SHULMAN HODGES &**
**BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

7

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

**Page 7**

1  attempt to summarize extensive overall data, legal documents and legal principles, including

2  provisions of the Bankruptcy Code, and to set them forth in understandable, readable form.

3  **READ THIS DISCLOSURE STATEMENT CAREFULLY TO LEARN ABOUT:**

4  1.  **WHO CAN VOTE OR OBJECT;**

5  2.  **THE TREATMENT OF YOUR CLAIM (i.e., what your claim will receive if the**

6  **Plan is confirmed) AND HOW THIS TREATMENT COMPARES TO WHAT YOUR**

7  **CLAIM WOULD RECEIVE IN A LIQUIDATION;**

8  3.  **THE HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING**

9  **THE BANKRUPTCY CASES;**

10  4.  **WHAT THE COURT WILL LOOK AT TO DECIDE WHETHER TO**

11  **CONFIRM THE PLAN;**

12  5.  **THE EFFECT OF CONFIRMATION; AND**

13  6.  **WHETHER THE PLAN IS FEASIBLE.**

14  This Disclosure Statement cannot tell you everything about your rights.  You should

15  consider consulting your own attorney and accountant to obtain advice on how the Plan will

16  affect you and what is the best course of action for you.  Be sure to read the Plan as well as all of

17  this Disclosure Statement.

18  The Code requires a Disclosure Statement to contain "adequate information" concerning

19  the Plan.  The Bankruptcy Court has approved this document as an adequate Disclosure

20  Statement, containing enough information to enable parties affected by the Plan to make an

21  informed judgment about the Plan.  Any party can now solicit votes for or against the Plan.

22  However, the statements and conclusions set forth in this document are, unless otherwise noted,

23  those of the Debtors.  The accuracy has not yet been determined by the Court and the Court may

24  determine such accuracy at the hearing regarding whether to confirm the Plan.

25  **B.**  **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

26  **THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS**

27  **DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE**

28  **NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS**

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

8

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

THE PLAN, THEN THE PLAN WILL BE BINDING ON ALL CREDITORS IN THE CASES.

1.      **Time and Place of the Confirmation Hearing**

> September 2, 2011, at 10:00 A.M.
> United States Bankruptcy Court
> Courtroom 304
> 3420 Twelfth Street
> Riverside, California 92501

2.      **Deadline for Voting for or Against the Plan**

If you are entitled to vote, it is in your best interest to vote timely on the enclosed Ballot and return the Ballot in the enclosed envelope to:

> James. C. Bastian, Jr.
> Shulman Hodges & Bastian LLP
> 8105 Irvine Center Drive, Suite 600
> Irvine, California 92618
> Telephone: (949) 340-3400
> Facsimile: (949 340-3000

Ballots may be submitted by mail or personal delivery at the address above, by faxing the ballot to (949) 340-3000, attn: James C. Bastian, Esq., or by emailing the ballot to jbastian@shbllp.com.   Your Ballot must be received by the Voting Deadline (5:00 P.M., California time on August 19, 2011) or it will not be counted.  Since mail delays may occur, and because time is of the essence, it is important that Ballots be mailed well in advance of the Voting Deadline.  Failure to deliver a properly completed ballot by the Voting Deadline will result in the Ballot not be counted as an acceptance or a rejection.  Any improperly completed or late Ballot will not be counted.

3.      **Deadline for Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon the following by August 19, 2011, at 5:00 P.M. California time:

////

////

/////

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

9

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 9

<u>Attorneys for the Debtors:</u>
James. C. Bastian, Jr.
Shulman  Hodges & Bastian  LLP
8105 Irvine Center Drive, Suite 600
Irvine, California 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000
Email: jbastian@shbllp.com

<u>Proposed Attorneys for the Committee:</u>
Robert Opera
Winthrop Couchot Professional Corporation
660 Newport Center Drive Suite 400
Newport Beach, California 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111
Email: ropera@winthropcouchot.com

At the Confirmation Hearing, the Bankruptcy Court will determine, pursuant to Section 1129 of the Bankruptcy Code, whether the Plan has been accepted by the necessary Classes of Claims created under the Plan, and if not, whether the Bankruptcy Court should nevertheless confirm the Plan.  If at the Confirmation Hearing the Bankruptcy Court determines that the Plan meets all of the requirements for confirmation prescribed by the Bankruptcy Code, the Bankruptcy Court will enter a Confirmation Order.  Pursuant to Section 1141 of the Bankruptcy Code, the effect of the Confirmation Order will be to make the provisions of the Plan binding upon the Debtors and each of their Creditors, regardless of whether each Creditor voted to accept the Plan.

**4.**     **<u>Identity of Person to Contact for More Information Regarding the Plan</u>**

Any interested party desiring further information about the Plan may contact James. C. Bastian, Jr. at Shulman  Hodges & Bastian  LLP,  8105 Irvine Center Drive, Suite 600, Irvine, California 92618, Telephone: (949) 340-3400, or email to <u>jbastian@shbllp.com</u>.

**C.**     **<u>Disclaimer</u>**

The Court has not yet determined whether the Plan can be confirmed and makes no recommendation as to whether Creditors should support the Plan.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

10

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 10

1    The financial data relied upon in formulating the Plan are based on the Debtors' records

2 during the prepetition period, including their balance sheets and financial statements, the

3 Debtors' Bankruptcy Schedules, the projected recovery from Avoidance Actions and Post-

4 Confirmation Estate Claims and the financial information contained in pleadings filed with the

5 Bankruptcy Court. This information was not audited or reviewed by an independent accountant

6 and the Debtors are unable to warrant or represent that such financial information is without any

7 inaccuracies. The Debtors have made reasonable efforts under the circumstances to present

8 financial information fairly and accurately. The Debtors represent that everything stated in the

9 Disclosure Statement is true to the best of their knowledge.

10    The financial transactions contained in this Disclosure Statement represent the Debtors'

11 best estimates and projections of future events based on certain assumptions. With the passage

12 of time, some or all of these estimates and projections may not occur. None of the financial

13 analyses contained in this Disclosure Statement, upon which this Disclosure Statement is based,

14 is considered to be a "forecast" or "projection" as technically defined by the American Institute

15 of Certified Public Accountants. The use of the words "forecast," "project," or "projection"

16 within this Disclosure Statement relate to the Debtors' broad expectations of future events or

17 market conditions and qualifications of the potential results of operations under those conditions.

18    The financial projections attached to the Disclosure Statement as **Exhibit 1** were

19 prepared by the Debtors with the assistance of their reorganization consultant, Tatum LLC, a

20 division of SFN Professional Services. The financial projections set forth the cash available for

21 the purpose of funding the payments required by the terms of the Plan. The Debtors project that

22 there will be sufficient funds available to make the payments called for under the Plan.

23    The Plan will be funded by primarily from the Debtors' respective continued business

24 operations. The Plan may also be funded from Net Avoidance Action Proceeds, if any, and any

25 proceeds derived from Post-Confirmation Estate Claims Payments to the Bank Group may also

26 be funded from the sale of assets that are not property of the Estates but which such property

27 currently serve as collateral under the Bank Group's Secured Claim.

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

11

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

1    The Debtors' estimates as to the value of their assets set forth in the Disclosure Statement

2 are based in part on the Debtors' opinion as to the estimated fair market value of the assets.

3 Given the nature and extent of the assets and their familiarity with the assets, the Debtors believe

4 their opinions as to value are reasonable.

5    The discussion in the Disclosure Statement regarding the Debtors and the Reorganized

6 Debtors may contain "forward looking statements" within the meaning of the Private Securities

7 Litigation Reform Act of 1995.  Such statements consist of any statement other than a recitation

8 of historical fact and can be identified by the use of forward-looking terminology such as "may,"

9 "expect," "anticipate," "estimate," or "continue," or the negative thereof or other variations

10 thereon or comparable terminology.  The reader is cautioned that all forward looking statements

11 are necessarily speculative and there are certain risks and uncertainties that could cause actual

12 events or results to differ materially from those referred to in such forward looking statements.

13 The liquidation analysis, financial projections, and other information are estimates only, and the

14 timing and amount of actual distributions to Creditors may be affected by many factors that

15 cannot be predicted.  Therefore, any analysis, estimates, or projections may or may not turn out

16 to be accurate.

17    **THIS IS A SOLICITATION BY THE DEBTORS.   THE REPRESENTATIONS**

18 **HEREIN ARE THOSE OF THE DEBTORS AND NOT OF ITS ATTORNEYS OR**

19 **CONSULTANTS.    NO REPRESENTATIONS CONCERNING THE DEBTORS OR**

20 **POST-CONFIRMATION DEBTORS, INCLUDING, BUT NOT LIMITED TO,**

21 **REPRESENTATIONS AS TO THE POST-CONFIRMATION DEBTORS' FUTURE**

22 **ACTIVITIES, THE VALUE OF THEIR PROPERTY, THE AMOUNT OF CLAIMS**

23 **AGAINST THE ESTATES, OR ANY TAX EFFECT OF THE TRANSACTIONS**

24 **PROPOSED UNDER THE PLAN, ARE AUTHORIZED BY THE DEBTORS, OTHER**

25 **THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.    ANY**

26 **REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF**

27 **THE PLAN THAT ARE IN ADDITION TO OR DIFFERENT FROM THE**

28 **STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE**

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

12

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

**Page 12**

1  RELIED UPON BY ANY PARTY IN INTEREST.    ANY SUCH ADDITIONAL

2  REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO THE

3  DEBTORS' ATTORNEYS WHO, IN TURN, WILL DELIVER THE INFORMATION TO

4  THE BANKRUPTCY COURT FOR SUCH ACTION AS THE BANKRUPTCY COURT

5  MAY DEEM TO BE APPROPRIATE.

6       UNLESS SPECIFICALLY SET FORTH HEREIN TO THE CONTRARY, THE

7  INFORMATION CONTAINED OR REFERRED TO IN THIS DISCLOSURE

8  STATEMENT REGARDING THE DEBTORS HAVE NOT BEEN SUBJECT TO A

9  CERTIFIED AUDIT.    COUNSEL FOR THE DEBTORS HAS NOT INDEPENDENTLY

10  VERIFIED THE INFORMATION CONTAINED HEREIN AND MAKES NO

11  REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE ACCURACY

12  THEREOF.

13       ALL PARTIES ENTITLED TO VOTE ON THE PLAN ARE URGED TO

14  REVIEW CAREFULLY THE PLAN AND THIS DISCLOSURE STATEMENT PRIOR

15  TO VOTING ON THE PLAN.    THE CONTENTS OF THIS DISCLOSURE

16  STATEMENT SHOULD NOT BE CONSTRUED IN ANY MANNER TO BE LEGAL,

17  BUSINESS, OR TAX ADVICE.    EACH CREDITOR AND OTHER PARTY IN

18  INTEREST SHOULD CONSULT WITH HIS OWN LEGAL COUNSEL, BUSINESS

19  ADVISOR, CONSULTANT, AND/OR ACCOUNTANT PRIOR TO VOTING TO

20  ENSURE A COMPLETE UNDERSTANDING OF THE TERMS OF THE PLAN.  THIS

21  DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF THE

22  CREDITORS TO ENABLE THEM TO MAKE AN INFORMED DECISION

23  REGARDING THE PLAN.

24       THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE

25  STATEMENT INDICATES ONLY THAT THE DISCLOSURE STATEMENT

26  CONTAINS ADEQUATE INFORMATION FOR THE PURPOSE OF SOLICITATION

27  OF ACCEPTANCES TO THE PLAN BY THE DEBTORS, ASSUMING IT IS

28  ACCURATE.    HOWEVER, THE BANKRUPTCY COURT HAS NOT YET

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

13

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

1  DETERMINED THE ACCURACY OF SUCH INFORMATION. IT MAY DO SO AT

2  THE CONFIRMATION HEARING.

3  **II.    DEFINITIONS, INTERPRETATIONS, AND RULES OF CONSTRUCTION**

4  **A.    Definitions**

5      1.    "Administrative Claim" means a Claim for costs and expenses of the administration

6  of the bankruptcy case under Sections 503(b) or 507(b) of the Bankruptcy Code, including,

7  without limitation: (a) the actual and necessary costs and expenses incurred after the Petition

8  Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries,

9  or commissions for services); (b) all Claims of professionals employed at the expense of the

10  Estate; and (c) any fees or charges assessed against the Estate under 28 U.S.C. § 1930.

11      2.    "Allowed Administrative Claim" means an Administrative Claim allowed pursuant

12  to Sections 503(b) or 507(b) of the Bankruptcy Code.

13      3.    "Allowed Claim" means a Claim: (a) with respect to which a Proof of Claim has not

14  been filed but the Claim has been listed in the Schedules filed with the Bankruptcy Court by the

15  Debtors and not listed as disputed, contingent, or unliquidated as to amount and as to which no

16  objection is filed within the time period fixed by the Bankruptcy Court, or as to which any such

17  objection has been determined by a Final Order; or (b) with respect to which a Proof of Claim

18  has been filed within the time period fixed by the Bankruptcy Court, and as to which no

19  objection is filed within the time period fixed by the Bankruptcy Court, or as to which any such

20  objection has been determined by a Final Order.

21      4.    "Allowed General Unsecured Claim" means an unsecured Allowed Claim against

22  the Debtors, however arising, not entitled to priority under Section 507(a) of the Bankruptcy

23  Code, including, without limitation, an Allowed Claim based on the rejection of an executory

24  contract or unexpired lease.

25      5.    "Allowed Priority Claim" means an Allowed Administrative Claim, Allowed

26  Priority Tax Claim, or Allowed Priority Unsecured Claim.

27      6.    "Allowed Priority Tax Claim" means an Allowed Claim entitled to priority pursuant

28  to Section 507(a)(8) of the Bankruptcy Code.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

14

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

7.    "<u>Allowed Priority Unsecured Claim</u>" means an Allowed Claim entitled to priority pursuant to Sections 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6)or 507(a)(7) of the Bankruptcy Code.

8.    "<u>Allowed Secured Claim</u>" means an Allowed Claim secured by a lien, security interest or other charge against property in which the Estates have an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the interest of the holder of such Allowed Secured Claim in the Estates' interest in such property, or to the extent of the amount subject to any setoff, as the case may be, excluding any and all non-pecuniary loss penalty claims (and related interest) as defined in Section 726(a)(4) of the Bankruptcy Code.

9.    "<u>Assume Licenses Order</u>" means that certain order entered on April 7, 2011 (docket number 86) authorizing Duck House to assume its various prepetition license agreements whereby Duck House is licensed to sell in the United States products which utilize certain specified names, trademarks, service marks, trade dress, copyrights, including word mark, logos, uniform designs, mascots, images, colors and color combinations, characters, symbols designs, likenesses and visual representations associated with and/or related to various professionals sports agencies such as NFL Properties, LLC, Major League Baseball Properties, Inc., NBA Properties Inc. and associated with various colleges and universities including an entities known as the License Resource Group and The Collegiate License Company.

10.    "<u>Avoidance Action</u>" means any action which is filed or which may be filed pursuant to the provisions of Sections 510, 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code, any actions based on applicable nonbankruptcy law that may be incorporated or brought under the foregoing sections of the Bankruptcy Code, or any other similar action or proceeding filed to recover property for or on behalf of the Estate or to avoid a lien or transfer.

11.    "<u>Bank Group</u>" means collectively Cathay Bank and China Trust Bank. Cathay Bank is the agent for the Bank Group

12.    "<u>Bank Group Loan Documents</u>" means the Amended and Restated Credit Agreement and Amended and Restated Security Agreement, by and among the Debtors and the

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

15

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 15

1  Cathay Bank as agent for the Bank Group each dated as of June 29, 2007, and all related security

2  agreements and loan documents, including the Line A Note dated as of June 29, 2007, in the

3  original amount of $10,400,000; Line A Note dated as of June 29, 2007 in the original amount of

4  $5,600,000; Line B Note dated as of June 29, 2007 in the original amount of $3,380,000; and the

5  Line B Note dated as of June 29, 2077 in the original amount of $1,820,000, as such Loan

6  Documents have been amended and modified, and all related documents, schedules and exhibits.

7      13.    "Berendo Property" means the undeveloped land located in Los Angeles,

8  California, zoned for a multi-unit residential development and commonly referred to as the

9  Berendo Property which is owned separately by the Changs.  Under the Settlement Agreement

10  with the Bank Group attached as Exhibit 4 to the Disclosure Statement, the Changs will be

11  contributing 100% of the net sale proceeds generated from the sale of the Berendo Property to

12  make Plan payments to the Bank Group.

13      14.    "Ballot" means the form distributed to each holder of a Claim that is entitled to

14  vote on the Plan and on which is to be indicated an acceptance or rejection of the Plan.

15      15.    "Bankruptcy Code" or "Code" means Title 11 of the United States Code, as now

16  in effect or hereafter amended.  All citations in the Plan to section numbers are to the Bankruptcy

17  Code unless otherwise expressly indicated.

18      16.    "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the

19  Central District of California, Riverside Division, which has jurisdiction over this bankruptcy

20  case and the Estate of the Debtor, or such successor court or tribunal as may hereafter be

21  confirmed or created by lawful authority with power to confirm reorganization plans under

22  Chapter 11 of the Bankruptcy Code and all applicable statutes, rules, and regulations pertaining

23  thereto.

24      17.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the

25  Local Bankruptcy Rules for use in the Bankruptcy Court, as now in effect or hereafter amended.

26      18.    "Bar Date" means the last date for filing Proofs of Claim other than

27  Administrative Claims or Claims based upon the rejection of any executory contracts or

28  unexpired leases.  The Bar Date for filing Proofs of Claim is June 14, 2011.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

16

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 16

1    19.    "Business Day" means any day other than a Saturday, Sunday, or "legal holiday"

2    as defined in Bankruptcy Rule 9006(a).

3    20.    "Cash" means cash and cash equivalents, including, but not limited to, checks or

4    similar forms of payment or exchange.

5    21.    "Changs" means collectively the Debtors' shareholders Wen Pin Chang and Mei

6    Lien Chang (each owning one-half of each corporate Debtor).  Mr. Chang is the president of both

7    corporate Debtors and Mrs. Chang is the vice president of both corporate Debtors.

8    22.    "Claim" means: (a) a right to payment from the Debtors, whether or not such

9    right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

10    disputed, undisputed, legal, equitable, secured, or unsecured, or (b) a right to an equitable

11    remedy for breach of performance if such breach gives rise to a right to payment from the

12    Debtor, whether or not such right to an equitable remedy is reduced to judgment, liquidated,

13    unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or

14    unsecured.

15    23.    "Claimant" means the holder of a Claim.

16    24.    "Class" means a grouping into which Claims which are substantially similar to

17    other Claims have been classified pursuant to Article IV of the Plan.

18    25.    "Committee" means the Official Committee of Unsecured Creditors formed in

19    this case by the UST.

20    26.    "Confirmation" means the entry of the Confirmation Order by the Bankruptcy

21    Court.

22    27.    "Confirmation Date" means the date on which the Confirmation Order is entered

23    by the Bankruptcy Court.

24    28.    "Confirmation Hearing" means the hearing, including any continued or postponed

25    session thereof, at which time the Bankruptcy Court will consider and determine whether to

26    confirm the Plan.

27    29.    "Confirmation Order" means the order, as entered, of the Bankruptcy Court

28    confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

17

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

30.    "Creditor" means the holder of an Allowed Claim.

31.    "Crystal Ridge Property" means the Changs' personal residence located 2819 Crystal Ridge Road, Diamond Bar, California which is encumbered by a second deed of trust in favor of the Bank Group as additional collateral for the obligations owed by the Debtors to the Bank Group.

32.    "Debtors" means collectively Trade Union and Duck House, the Debtors and Debtors in possession in these jointly administered bankruptcy cases.

33.    "Disallowed Claim" means a Claim against the Debtors, which Claim is disallowed pursuant to an order of the Bankruptcy Court as to which fourteen calendar days have passed following entry of such order and no stay pending an appeal of such order is obtained during such period.

34.    "Disbursing Agent" means the person charged with making Distributions pursuant to the terms of the Plan.  The Debtors through their president, Wen Pin Chang, will serve as the Disbursing Agent under the Plan until such time as Mr. Chang is unable or unwilling to serve at which point the Reorganized Debtors will appoint a successor Disbursing Agent.

35.    "Disclosure Statement" means this Disclosure Statement (and all exhibits or schedules annexed thereto or referenced therein) which accompanies the Plan, as the Disclosure Statement may be amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

36.    "Disputed Claim" means any Claim: (a) listed on the Debtors' respective Schedules as unliquidated, disputed, or contingent; or (b) as to which the Debtors, or any other party in interest, has interposed a timely objection or request for estimation or subordination in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation or subordination has not been withdrawn or determined by a Final Order.  A Claim will be considered a Disputed Claim in its entirety if an objection is timely filed to any portion of such Claim.  A Creditor will not obtain any Distributions on account of its entire Claim even if only a portion of the Claim is a Disputed Claim.  See Sections IV. I. and J. of the Disclosure

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

1   Statement or Sections III.I. and J. of the Plan for the procedures regarding resolution of Disputed

2   Claims.

3        37.    "Disputed Claims Reserve Fund" means the fund created upon the Effective Date

4   consisting of funds available for Distribution on account of Disputed Claims.

5        38.    "Distribution" means the Cash which is required to be distributed under the Plan

6   to the holders of Allowed Claims.

7        39.    "Duck House" means Duck House, Inc. a California corporation, along with

8   Trade Union, the Debtors herein.

9        40.    "Effective Date" means the date not later than thirty days following the date upon

10  which the Confirmation Order becomes a Final Order; provided, however, that, if an appeal of

11  the Confirmation Order is timely filed, the Debtors may elect to cause the Plan to become

12  effective, notwithstanding the pendency of such appeal, so long as no stay of the Confirmation

13  Order is in effect, by filing with the Bankruptcy Court a notice of such election, in which event

14  the Plan will become effective as provided herein.

15       41.    "Estates" means the bankruptcy estates created under Section 541 of the

16  Bankruptcy Code in these jointly administered bankruptcy cases.

17       42.    "File," "Filed," or "Filing" means filed with the Bankruptcy Court having

18  jurisdiction over this bankruptcy case.

19       43.    "Final Distribution" means, for each Class, the last Distribution to be made to

20  holders of Allowed Claims in that Class.

21       44.    "Final Order" means an order or judgment of the Bankruptcy Court, or of any

22  court of competent jurisdiction where there is pending an action in which the Debtors are a party,

23  which has not been reversed, stayed, modified, or amended, and as to which: (a) the time to

24  appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which

25  no appeal, petition for certiorari, or other proceeding for reargument or rehearing shall then be

26  pending; or (b) any right to appeal, petition for certiorari, reargument, or rehearing shall have

27  been waived in writing in form and substance satisfactory to the Debtors; or (c) any appeal,

28  petition for certiorari, reargument or rehearing has been resolved by the highest court to which

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

19

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 19

1    the order or judgment was appealed timely or from which certiorari, reargument, or rehearing

2    was sought.

3         45.    "General Unsecured Claim" means an unsecured Claim against the Debtors that

4    is not entitled to priority under Section 507(a) of the Bankruptcy Code, including, without

5    limitation, a Claim based on the rejection of an executory contract or unexpired lease.

6         46.    "Nantong Wheel Company"  means collectively the following foreign companies

7    (1) Nantong Trade Union Aluminum Company (sometimes referred to as Mao Lien Aluminum)

8    and (2) Nantong Trade Union Chrome Plating Company.  Trade Union is the 100% owner of the

9    stock of two companies that comprise Nantong Wheel Company.  .

10        47.    "Net Avoidance Action Proceeds" means all of the Cash proceeds recovered

11   from Avoidance Actions, minus all costs of the Avoidance Actions and administrative expenses

12   of the Estate including, but not limited to, the fees and expenses of the Disbursing Agent and

13   Professionals employed by the Estates, income taxes and payments pursuant to the Plan to

14   creditors holding Allowed Administrative Claims, Allowed Priority Claims and/or Allowed

15   Secured Claims.

16        48.    "Petition Date" means January 31, 2011, the date on which the Debtors filed their

17   respective voluntary petitions under Chapter 11 of the Bankruptcy Code.

18        49.    "Plan" means the Debtors' Chapter 11 Plan, as the Plan may be amended,

19   modified, or supplemented from time to time in accordance with the Bankruptcy Code and

20   Bankruptcy Rules.

21        50.    "Post-Confirmation Estate Claims" means any and all claims and causes of action

22   which constitute property of the Estates including, but not limited to, any Avoidance Actions,

23   whether or not such claims or causes of action are the subject of litigation pending as of the

24   Effective Date.

25        51.   "Priority Claim" means an Administrative Claim, Priority Tax Claim, or Priority

26   Unsecured Claim.

27        52.   "Priority Tax Claim" means a Claim asserted to have priority under Section

28   507(a)(8) of the Bankruptcy Code.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

20

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 20

53. "<u>Priority Unsecured Claim</u>" means a Claim asserted to have priority under Sections 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of the Bankruptcy Code.

54. "<u>Professionals</u>" means professionals such as attorneys, consultants or accountants employed by the Disbursing Agent in this case after the confirmation of the Plan, including but not limited to, Shulman Hodges & Bastian LLP.

55. "<u>Proof of Claim</u>" means a statement under oath filed in this bankruptcy case by a Claimant in which the Claimant sets forth the amount claimed to be owed to it and sufficient detail to identify the basis for the Claim, in accordance with Federal Rule of Bankruptcy Procedure 3001.

56. "<u>Reorganized Debtors</u>" means the Debtors herein, on or after the Effective Date.

57. "<u>Schedules</u>" means the respective Schedules of Assets and Liabilities and Statement of Financial Affairs filed by each the Debtors, as amended, modified, or supplemented from time to time.

58. "<u>Secured Claim</u>" means a Claim secured by a lien, security interest or other charge against property in which the Estate has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the interest of the holder of such Secured Claim in the Estates' interest in such property, or to the extent of the amount subject to any setoff, as the case may be.

59. "<u>SHB Firm</u>" means Shulman Hodges & Bastian LLP, the Debtors insolvency counsel herein.

60. "<u>State Street Property</u>" means the real property located at #1 Topline Plaza, 4651 State Street, in Montclair, California. The State Street Property is where the Debtors' businesses are located and is owned separately by the Changs' family trust.

61. "<u>Trade Union</u>" means Trade Union International, Inc. a California corporation, along with Duck House, the Debtors herein.

62. "<u>Unclaimed Distribution</u>" means any Distribution which is unclaimed as a result of any of the following: (a) checks which have been returned as undeliverable without a proper

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

21

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

**Page 21**

1    forwarding address; (b) checks which were not mailed or delivered because of the absence of a

2    proper address to which to mail or deliver the same; (c) checks which remain unnegotiated for a

3    period of ninety days after the date of issuance.

4          63.   "<u>UST</u>" means The Office of the United States Trustee.

5          64.   "<u>Voting Deadline</u>" means 5:00 p.m. (California time) on August 19, 2011, which is

6    the deadline for holders of impaired Claims to submit a Ballot.

7    **B.**      **<u>Interpretations, Computation of Time and Governing Law</u>**

8          **1.**      **<u>Undefined Terms</u>**

9          Any term used in the Disclosure Statement that is not defined in the Disclosure

10   Statement, either in Section II.A (Definitions) or elsewhere, but that is used in the Bankruptcy

11   Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or

12   the Bankruptcy Rules.

13         **2.**      **<u>Rules of Interpretation</u>**

14         For the purposes of the Disclosure Statement:

15         a.   Whenever, from the context, it is appropriate, each term, whether stated in the

16   singular or the plural, shall include both the singular and the plural.

17         b.   Any reference in the Plan to a contract, instrument, release or other agreement

18   or document being in a particular form or on particular terms and conditions means that such

19   document shall be substantially in such form or substantially on such terms and conditions.

20         c.   Any reference in the Plan to an existing document or Exhibit Filed or to be

21   Filed means such document or Exhibit, as it may have been or may be amended, modified, or

22   supplemented as of the Confirmation Date.

23         d.   Unless otherwise specified in a particular reference in the Plan, all references

24   in the Plan to Sections, Articles or Exhibits are references to Sections, Articles and Exhibits of or

25   to the Plan.

26         e.   Unless otherwise specified in a particular reference in the Plan, the words

27   "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan in its

28   entirety rather than only to a particular paragraph, subparagraph, or clause contained in the Plan.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

22

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

**Page 22**

1    f.   Captions and headings to Articles and Sections are inserted for convenience of

2  reference only and are not intended to be a part of or to affect the interpretation of the Plan.

3    g.   The provisions of the Plan will control over any description thereof contained

4  in the Disclosure Statement.

5    h.   Any term used in the Plan that is not defined in the Plan, but that is used in the

6  Bankruptcy Code or in the Bankruptcy Rules shall have the meaning assigned to that term in

7  (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code

8  or the Bankruptcy Rules.  Without limiting the foregoing, the rules of construction set forth in

9  Section 102 of the Bankruptcy Code shall apply hereto.  The definitions and rules of construction

10  contained herein do not apply to the Disclosure Statement or to the exhibits to the Plan except to

11  the extent expressly so stated in the Disclosure Statement or in each exhibit to the Plan.

12    i.   Except to the extent that federal law, including the Bankruptcy Code or the

13  Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be

14  governed by, and construed and enforced for all purposes in accordance with, the laws of the

15  State of California, without giving effect to any principles of conflict of laws thereof.

16    j.   All exhibits to the Plan are incorporated into the Plan and will be deemed to

17  be included in the Plan, regardless of when they are filed.

18    **3.    Computing Time Periods**

19    In computing any period of time prescribed  or allowed by the Plan, the provisions of

20  Bankruptcy Rule 9006(a) shall apply.

21    **4.    Notices and Delivery of Documents**

22    All notices, correspondence, and other deliveries under this Disclosure Statement must be

23  directed as follows:

24

25

| To the Debtors, Disbursing Agent, or Reorganized Debtors: | Trade Union International, Inc. Duck House, Inc., Attn:  Wen Pin Chang, President 4651 State Street Montclair, CA 91763 Telephone: 909-628-7500 Facsimile: 909-628-0382 |
|---|---|

26

27

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

23

| With a Copy to: | James. C. Bastian, Jr., Esq<br>SHULMAN HODGES & BASTIAN LLP<br>8105 Irvine Center Drive, Suite 600<br>Irvine, California 92618<br>Telephone: 949-340-3400<br>Facsimile: 949-340-3000 |
|---|---|

### III.  BACKGROUND

The Plan provides for the reorganization of the Debtors pursuant to the terms and conditions set forth in the Plan.  Prior to and since the Petition Date, the Debtors' primary focus has been directed toward implementing a program to become more profitable, stabilize operations and improve sales.  Following these efforts, the Debtors' reorganization strategy consists of continuing operations.  The Debtors will also investigate and may pursue Avoidance Actions and other Post-Confirmation Estate Claims.  The following is a description of the nature and the history of the Debtors' business and financial affairs, and of its financial difficulties.

**A.    Description of the Debtors' Business**

The Debtors are each California corporations. Trade Union and Duck House are each owned one-half by Wen Pin Chang and one-half by Mei Lien Chang.    Mr. Chang is the president of both corporate Debtors.  Mrs. Chang is the vice president of both corporate Debtors.

Other insiders of the corporate Debtors are Gary Chang, the Marketing Manager for Trade Union and Howard Chang, Sales Executive for Trade Union.  Gary Chang and Howard Chang are the sons of the Changs.

Mr. Chang formed Trade Union in 1981 and officially incorporated it in 1984 in order to supply top quality aftermarket aluminum alloy wheels and wheel and truck accessories.  Trade Union's products are manufactured in Taiwan and China and are shipped to the United States for distribution to wholesalers and retailers.  Trade Union is known for product lines which include Verde Custom Wheels, Black Ice Alloys, and Topline Products.

Duck House was established in 1981 and officially incorporated in 1986.  Duck House specializes in designing products for sports enthusiasts.  In order to offer the most competitive

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

24

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 24

1   prices, the products are manufactured in factories in China and in Taiwan and then distributed by

2   Duck House in the United States.

3         The Debtors' corporate office is located in Montclair and this facility includes more than

4   100,000 square feet of warehouse space.  The workers of both Trade Union and Duck House are

5   employed and paid by Trade Union.  Duck House reimburses Trade Union for payments

6   allocated to Duck House.

7         The Debtors' assets are encumbered by liens in favor of a bank group consisting of

8   Cathay Bank and China Trust Bank.

9         The Debtors are the joint tenants under the lease for their business premises located at

10  4651 State Street, Montclair, California.  The lease is for a five year period ending

11  January 31, 2013.  The landlord for the business premises is the Debtors' principals and sole

12  shareholders, the Changs.  The Debtors intend to enter into a stipulation with the landlords to

13  assume this lease.  The Debtors are current on their payments under this lease.  The assumption

14  of the lease will serve the bests interests of the Estates and creditors.  If the Debtors rejected the

15  lease, they would incur a substantial lease rejection damages claims and incur costs to locate a

16  new business premises and undertake the move.  The costs for such a move of the Debtors'

17  business operations could be astronomical.  Furthermore, prior to the Petition Date, the monthly

18  lease payment was reduced to reflect lower rental rates throughout the area.  As such, based on

19  good business judgment, the Debtors believe that the lease should be assumed under the Plan.

20        The Debtors are not small business debtors as defined in the Bankruptcy Code and

21  neither of the cases are single asset real estate cases.

22  **B.**    **Events Leading to the Bankruptcy Filings**

23        Cathay Bank is the agent for the Bank Group.  After a series of payments and

24  transactions described in more detail below, the Bank Group has a loan balance in the amount of

25  approximately $11.5 million and asserts a security interest over all the assets of the Debtors.  The

26  loan is personally guaranteed by the Changs, the principals of the Debtors.

27        To preserve its collateral, the Bank Group maintained a lockbox account into which all of

28  the Debtors' receivables were placed.

**SHULMAN HODGES &**
**BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

25

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

**Page 25**

1    In addition to the liens against the Debtors' assets, the Bank Group was provided with the

2    following additional collateral:

3    •    A second priority deed of trust against the real property located at #1 Topline

4    Plaza, 4651 State Street, in Montclair, California.   The State Street Property is where the

5    Debtors' businesses are located and is owned separately by the Changs family trust. Based on

6    recent purchase offers, the value of the State Street Property is believed to be $5.8  to $6.2

7    million.  Prior to the Petition Date, the State Street Property was in escrow to a buyer whose

8    offer was contingent on the Debtors entering into a long term lease of the State Street Property,

9    which would have required the Debtors to reach some restructuring of the debt obligations to the

10    Bank Group.  The Bank Group was made aware of this but refused to provide any assurance to

11    the buyer of such an extension. As such, escrow was canceled and the buyer was lost. A sale of

12    the State Street Property was estimated to have netted the Bank Group in excess of $2 million

13    toward the principal of its outstanding loan, which was lost when the buyer withdrew its offer.

14    •    A second priority deed of trust against the Changs' personal residence located

15    2819 Crystal Ridge Road, Diamond Bar, California.  The value of the Crystal Ridge Property is

16    believed to be in excess of $3 million, which provides the Bank Group with over $2 million in

17    collateral protection.

18    In May 2010, the Debtors began discussions with the Bank Group relating to a

19    forbearance agreement and restructuring of the loan.  Through this period up until December

20    2010, the Debtors paid more than $3.5 million of principal on the loan while also keeping current

21    on the interest payments.

22    On October 27, 2010, in consideration of assurances by the Bank Group that it would

23    agree to a restructuring of the Bank Group loan, the Changs granted the Bank Group a deed of

24    trust on a previously unencumbered unimproved parcel zoned for residential real estate located at

25    22840 Ridgeline Road, Diamond Bar, CA ("Ridgeline Property").   Rather than agree to any

26    restructure, the Bank Group only extended the forbearance agreement four days (from October

27    27, 2010 to October 31, 2010).  A sale of the Ridgeline Property closed on January 28, 2011 at

28    which time the Bank Group was paid in excess of $1.1 million which was applied toward the

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

26

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 26

1    principal balance of the outstanding loan balance.

2    Negotiations between the Debtors and the Bank Group broke down in early January.  On

3    January 4, 2011, the Bank Group terminated all discussions and terminated all Debtors' access to

4    their cash, yet made it clear to the Debtors that they were not enforcing its legal remedies.  As a

5    direct result of the Bank Group's actions, the Debtors were unable to operate.  The Debtors had

6    no access to funds with which to pay necessary operating expenses, including payroll.  In

7    addition, the Debtors had almost $300,000 in outstanding checks that bounced because of the

8    Bank Group's actions.

9    As a result of the Bank Group's actions, Debtors had no choice but to open a new bank

10   account and direct their customers to make payments to that bank account to try and cover issued

11   checks, payroll and other necessary expenses of the business.  As such, on January 10, 2011, the

12   Debtors contacted their customers and directed them to forward any payments to a new account

13   at U.S. Bank. The Bank Group asserted that these actions were improper.

14   On January 10, 2011, the Bank Group notified the Debtors that the Bank Group applied

15   $463,271 from the accounts maintained at Cathay Bank toward the Debtors' outstanding

16   revolving loans.  This action caused forty-five checks to bounce for non-sufficient funds.  The

17   Bank Group also shut down all on-line banking for both Trade Union and Duck House.  The

18   Debtors were unable to access funds in their checking accounts and the lock box accounts and

19   there was no visibility regarding banking activities in the Debtors' accounts held at the Bank

20   Group.   The Debtors are advised that the Bank Group continued to sweep the Debtors' lockbox

21   accounts and applied the additional cash towards the principal of the Debtors' outstanding loan

22   balance.  At this time, the Debtors have not agreed with the accounting provided by the Bank

23   Group with respect to the current unsettled balance and do not agree to the  total amount by

24   which the principal loan balance has been reduced on account of the Bank Group's sweeping of

25   the Debtors' accounts.

26   On January 12, 2011, the Bank Group and the Debtors, along with their counsel, met to

27   discuss a possible resolution.  The Bank Group informed the Debtors that it would be seeking the

28   appointment of a receiver to liquidate the Debtors.  After further negotiations did not result in a

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

27

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 27

1  resolution, the Bank Group provided ex parte notice of its motion to have a receiver appointed

2  and scheduled a hearing in state court for the morning of January 28, 2011, which was continued

3  to January 31, 2011.  The Debtors' believed that the appointment of a receiver would be to the

4  detriment of the unsecured creditors and equity holders, and result in a possibly huge deficiency

5  claim to the Bank Group.  As a  result, the Debtors commenced these Chapter 11 cases.

6  **C.    Management of the Debtors Before and After the Petition Date**

7        Largely through the relationships developed over twenty-five years in the respective

8  industries by the Changs, the Debtors enjoys great respect among their customers.  Despite their

9  recent financial difficulties, the Debtors have continually been supported by their customers who

10  have advised that notwithstanding financial difficulties and this bankruptcy filing, customers

11  intend to and will be placing orders with the Debtors going forward based on the high quality

12  products the Debtors manufacturer and distribute.  Indeed, the Debtors are optimistic about the

13  future and believe that throughout 2011 and beyond they will receive substantial orders from

14  some of their best customers relating to significant projects around the world.

15        Prior to and since the commencement this bankruptcy case, the Debtors have remained in

16  the possession of their property and the management of their affairs under the direction of the

17  Debtors' president, Wen Pin Chang and the Debtors' vice president Mei Lien Chang.  Pursuant

18  to Notices of Insider Compensation served on Creditors pursuant to the requirements of the UST

19  and at a hearing held on March 29, 2011, with regards to the compensation of Wen Pin Chang

20  and Mei Lien Chang, the following Insiders are being compensated for their services in the

21  following amounts:

22

| Name | Compensation |
|---|---|
| Wen Pin Chang<br>President | $4,294.81 each bi-weekly pay period plus medical insurance and reimbursements as incurred |
| Mei Lien Chang<br>Vice President | $1,872.31 for each bi-weekly pay period plus medical insurance and reimbursements as incurred |
| Gary Chang<br>Marketing Manager for Trade Union | $2,000 for each bi-weekly pay period plus medical insurance and reimbursements as incurred |
| Howard Chang<br>Sales Executive for Trade Union | $1,200 for each bi-weekly pay period plus medical insurance and reimbursements as incurred |

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

28

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

1    After confirmation of the Plan, the Disbursing Agent will be responsible for ensuring that

2    Distributions are made under the Plan, will ensure that the Reorganized Debtors are in

3    compliance with UST requirements, will investigate and prosecute Avoidance Actions and other

4    Post-Confirmation Estate Claims, and will otherwise ensure that the provisions of the Plan are

5    implemented timely and fully.  The Debtors, under the direction of its president Wen Pin Chang

6    and its vice president Mei Lien Chang, shall serve as the Disbursing Agent at no additional cost

7    to the Estate.  The Changs shall receive their regular monthly salary as set forth in the chart

8    above, however, they reserve the right to increase their compensation based on the Debtors'

9    performance under the Plan and overall financial strength of the Debtors.

10   **D.    Significant Events During the Bankruptcy Case**

11   The following significant events have occurred during the bankruptcy case:

12   **1.    Bankruptcy Proceedings**

13   **Filing of Schedules**

14   On February 23, 2022, the Debtors filed their Schedules of Assets and Liabilities and

15   Statement of Financial Affairs.

16   Appointment of a Committee

17   On or about June 21, 2011, the UST appointed the Committee.

18   **Employment of Professionals**

19   The Debtors have applied to the Bankruptcy Court for authorization to employ the

20   following professionals:

21   **Employment of Professionals**

22   The Debtors have employed the following professionals:

23   • Shulman Hodges & Bastian LLP as the Debtors' general insolvency counsel.

24   • Tatum, LLC, a division of SFN Professional Services LLC as the Debtors'

25   reorganization consultant.

26   • J. Lan CPA, Inc., as the Debtors' accountant.

27   Subject to approval of the Court, the Committee has employed Winthrop Couchot PC as

28   their general counsel and Corporate Recovery Associates as their financial advisor.

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

29

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

**Page 29**

**Bar Date To File Proofs of Claim**

Pursuant to the Court order entered on April 7, 2011,  the Bar Date for filing Proofs of Claim was set by the Court as sixty days after the service of the Notice of Claims Deadline.  The Notice of Claims deadline was served on April 15, 2011, and therefore the Bar Date for filing Proofs of Claim is June 14, 2011.

**Cash Collateral Motion**

On February 2, 2011, the Debtors filed their Emergency Motion to Authorize use of Cash Collateral to Operate the Debtors' Businesses ("Cash Collateral Motion") (docket number 7). On February 10, 2011, the Court entered that certain Interim Order Authorizing Use of Cash Collateral to Operate Debtors' Businesses and Setting Final Hearing on Cash Collateral Issues entered by the Court on February 10, 2011 (docket number 21).  On March 3, 2011, the Court entered that certain Second Interim Order Authorizing Use of Cash Collateral to Operate Debtors' Businesses and Setting Final Hearing on Cash Collateral Issues (docket number 55).  At hearing held on March 29, 2011, the Court authorized the continued use of the Bank Group's cash collateral and an Order following the hearing has been lodged with the Court.   The Debtors are current on their payment obligations to the Bank Group under the Court orders for use of cash collateral.  The current authority to use the Bank Group's cash collateral is through and including July 2, 2011.

**Utility Motion**

February 2, 2011, the Debtors filed their Emergency Motion to (1) Approve Adequate Assurance of Performance to Utilities; (2) Establish Procedures for Resolving Objections by Utilities; and (3) Prohibit Utilities from Altering, Refusing or Discontinuing Service ("Utility Motion") (docket number 9).  The Utility Motion was granted pursuant to orders entered on February 10, 2011 (docket number 19) and March 3, 2011 (docket number 56).

**Employee Wage Motion**

On February 23, 2011, the Debtors filed their Motion for Retroactive Order Approving Payment of Prepetition Employee Wages and Benefits ("Wage Motion") (docket number 43). No opposition to the Wage Motion was filed and a Court approving the Wage Motion was

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

30

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 30

1  lodged with the Court on April 7, 2011.  The order granting the Wage Motion authorized the

2  Debtors to honor and pay prepetition wages and benefits to employees not to exceed the cap set

3  forth in Bankruptcy Code section 507(a)(4).

4       **Meeting of Creditors**

5       The meeting of creditors pursuant to Bankruptcy Code section 341(a) was held and

6  concluded on March 4, 2011.

7       **Assume License Agreements Motion (Duck House)**

8       On March 8, 2022, the Debtors filed their Motion for Order Approving Assumption of

9  Certain License Agreements and Granting Related Relief ("Assume Licenses Motion") (docket

10  number 65).  Duck House is a party to the various prepetition license agreements whereby Duck

11  House is licensed to sell in the United States products which utilize certain specified names,

12  trademarks, service marks, trade dress, copyrights, including word mark, logos, uniform designs,

13  mascots, images, colors and color combinations, characters, symbols designs, likenesses and

14  visual representations associated with and/or related to various professionals sports agencies

15  such as NFL Properties, LLC, Major League Baseball Properties, Inc., NBA Properties Inc. and

16  associated with various colleges and universities including an entities known as the License

17  Resource Group and The Collegiate License Company.  The various license agreements benefit

18  the Duck House Estate in that they have generated consistent revenue for Duck House at

19  substantial profit margins.  The Assume Licenses Order authorizing the Duck House to assume

20  its various license agreements was entered on April 7, 2011 (docket number 86) and will allow

21  Duck House to generate significant monthly operating income and is a part of the Debtors'

22  overall reorganization strategy.

23       **Denial of the Bank Group's Motion for Appointment of Chapter 11 Trustee**

24       On February 15, 2011, the Cathay Bank as the agent for the Bank Group filed an

25  Emergency Application for Appointment of Chapter 11 Trustee ("Emergency Trustee

26  Application") (docket number 29).   The alleged basis for the Emergency Trustee Application

27  rested on (1) unauthorized use of cash collateral involving the payments of $144,403

28  immediately post-petition, mostly for wages, and (2) an alleged misstatement (which in fact did

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

31

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 31

1   not exist) with respect to the so-called "PDK" receivable.  The Debtors opposed the Emergency

2   Trustee Application arguing that they had had fully disclosed the nature and extent of the

3   $144,403 payments and more importantly how the Bank Group was not prejudiced by them.

4   With respect the PDK receivable, the Debtors' argued that the representations had been complete

5   and accurate.  At a hearing held on March 29, 2011, the Emergency Trustee Application was

6   denied.

7   **<u>Order Setting Insider Compensation for the Changs</u>**

8       On February 28, 2011, the Debtors served their Notices of Insider Compensation for Wen

9   Pin Chang and Mei Lien Chang.

10      On March 4, 2011, Cathay Bank as the agent for the Bank Group filed it Objection to the

11  Notices of Insider Compensation for the Changs ("Objection") (docket number 59) and requested

12  that the matter be set for hearing.  (The Bank did not object to the proposed Notices of Insider

13  Compensation of Gary Chang or Howard Chang.)  The Objection raised two issues as follows:

14  (1)  the compensation requested by the Changs was unreasonable and was not reduced from pre-

15  petition levels; and (2) certain statements made in connection with the Notices of Insider

16  Compensation were not consistent with disclosures made in the Debtors' Schedules and

17  Statement of Financial Affairs and with Financial statements provided to the Bank Group prior to

18  the Petition Date.

19      The Debtors respond to the Objection, in summary, as follows:  (1) due to a scribing

20  error, the Notices of Insider Compensation incorrectly stated the amount of compensation

21  requested by the Changs and the correct amount of compensation, as reflected in the cash

22  collateral budgets filed in these cases, was 50% less than paid to the Chang prior to the Petition

23  Date' and (2) the statements made in connection with the Notices of Insider Compensation were

24  consistent with the Debtors' Schedules and Statement of Financial Affairs which had been

25  amended.  The Debtors were not trying to hide anything, but due to complicated and unsettled

26  accounting issues related to certain "assets" on the Debtors' pre-petition balance sheets and

27  transactions entered into prior to the Petition Date related to those "assets", the Debtors were not

28  certain how to reflect such "assets" in the their Schedules.  Once these issues were brought to the

**SHULMAN HODGES &**
**BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

32

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

**Page 32**

1    attention of counsel, and better understood by counsel, amendments were promptly filed.  The

2    Bank Group had been fully aware of these "assets" for  years and there was nothing improper or

3    nefarious about these matters.

4         At a hearing held on March 29, 2011, the insider compensation for the Changs was

5    approved.  Specifically, the Debtors are authorized to use cash collateral of the Bank Group for

6    payment of the insider compensation for Mei Lien Chang in the amount of $1,872.31 for each bi-

7    weekly pay period; and Wen Pin Chang in the amount of $4,294.81 each bi-weekly pay period,

8    provided however, that payment of insider for the Changs for the month of March 2011 shall be

9    deferred and not paid until after entry of a Court order confirming the Debtors' Chapter 11

10   reorganization plan.

11   **China Plant Sale Transaction (Nantong Wheel Company)**

12        Trade Union is the 100% owner of the stock interest ("Nantong Stock") in the following

13   foreign companies (1) Nantong Trade Union Aluminum Company (sometimes referred to as

14   Mao Lien Aluminum) and (2) Nantong Trade Union Chrome Plating Company (collectively

15   defined herein as "Nantong Wheel Company").

16        Nantong Wheel Company manufactures aluminum alloy wheels operating out of a

17   modern factory which has a fully integrated production line, research and design, tooling,

18   casting, CNC, polish, chrome, paint, package and warehouse logistics capabilities.

19        Nantong Wheel Company is currently undergoing its own financial difficulties, which

20   has had a negative impact on the value of the Nantong Stock held by Trade Union.  Transactions

21   between Trade Union and Nantong Wheel Company go through a trading company, Trade Union

22   International, Inc. in Taiwan (TUI Taiwan).

23        Trade Union, through its Ju Rong Company, is also the owner of certain vacant land

24   consisting of approximately 20 acres located in Ju Rong, Jiang Su province China ("China

25   Land"), which was acquired originally to be the location for the Nantong Wheel Company plant.

26   Trade Union also made a capital contribution to the Ju Rong Company of 11.5 million RMB.

27   After the Chinese government provided a more attractive agreement to build the plant at another

28   location in Nantong, the China Land and the 11.5 million RMB were not needed for this purpose.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

33

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 33

Subsequently, Nantong Wheel Company borrowed approximately 11.5 million RMB (Chinese Yuan currency equal to approximately $1,766,024.76 based on an approximate exchange rate as of May 16, 2011, where 1 Chinese Yuan equals 0.1536 U.S. Dollar) from the Ju Rong Company.

Trade Union collectively owes Nantong Wheel Company (mostly through TUI Taiwan) a net amount of $7,612,205 (an intercompany payable of $9,070,795 net of a receivable through Ju Rong Company of $1,458,590 described above) as follows:

| Debtor | Creditor | Claim Amount |
|--------|----------|--------------|
| Trade Union | Nantong Trade Union Aluminum (merchandise payments) | $183,634 |
| Trade Union | Nantong Trade Union Aluminum through TUI Taiwan (merchandise payments, grossed up to exclude the Ju Rong Company receivable, split out below) | $8,887,151 |
| Nantong Wheel Company | Trade Union (through Ju Rong Company subsidiary) | ($1,458,590) |
| Total Net | | $7,612,205 |

.

Prior to the Petition Date, Trade Union received an offer from a third party, Jiang Su Ya Huey Investment Company ("Buyer"), to purchase 70% of Trade Union's Nantong Stock, subject to the terms and conditions set forth in a certain Stock Purchase Agreement. Prior to the Petition Date, in contemplation of consummating the Stock Purchase Agreement, and based on the dire financial circumstances facing the Nantong Wheel Company due to Trade Union's inability to provide payment of the Claims set forth above, Buyer assumed management control of Nantong Wheel Company and provided funds necessary to meet past due operating expenses and loan obligations. This transaction could not be consummated prior to the Petition Date due largely to the circumstances leading to the Debtors' Chapter 11 filing described above.

the Debtors will be filing a motion to seek Court approval of the transaction documented in the Stock Purchase Agreement to be heard at the same time as Plan confirmation , whereby Trade Union will sell 70% of its stock interest in the Nantong Wheel Company. Under the transaction, Trade Union will retain 30% of its stock interest in Nantong Wheel Company. Furthermore, as Nantong Wheel Company is becoming a separately controlled entity, Trade

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

34

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 34

1    Union negotiated for Nantong Wheel Company to repay the 11.5 million RMB loan from the Ju

2    Rong Company (and thus to Trade Union.) Because of the separation of entities and the newly

3    anticipated repayment of the obligations due and owing, the books of Trade Union will be

4    adjusted to split the current NET intercompany payable account from Trade Union to Nantong

5    Wheel Company (through TUI Taiwan) of $7,612,205 into two components, consisting of (1) a

6    receivable of approximately $1,458,590 (detailed below as the 11.5 million RMB loan less a

7    subsequent payroll loan from the Buyer) from Ju Rong Company, which is the net amount Trade

8    Union expects to collect to pay down its debt and which is described in detail below, and (2) a

9    payable of  approximately $9,070,795, which is approximately the full gross amount that Trade

10    Union owes Nantong Wheel Company (through TUI Taiwan) without the loan/receivable offset

11    from Ju Rong Company.  The sum of the two balances net to the same total as the previous net

12    intercompany payable account when the companies were all interrelated.

13        Under the Stock Purchase Agreement, (1) the Buyer will resolve or assume the debt of

14    Nantong Wheel Company owed to certain Chinese banks, thereby easing cash flow difficulties

15    and enhancing  the value of the 30% stock interest in the company that will be retained by Trade

16    Union, (2) all prepetition debts owed to Nantong Wheel Company by Trade Union (a gross total

17    of approximately  $9,070,795 as described above) will be resolved,  (3) the China Land be

18    retained by Trade Union through its Ju Rong Company subsidiary, and (4) a net cash benefit to

19    Trade Union is expected to be received in the amount approximately $1,458,890.  This amount is

20    computed as a repayment of the initial loan of 11.5 million RMB or approximately

21    $1,766,024.76, less $307,134 for a payroll loan made by the Buyer in November 2010 for a net

22    total of $1,458,890, based on the currency exchange rate as of May 16, 2011.  The net cash

23    benefit of this transaction  of approximately $1,458,890 will be used for regular business

24    operations and to fund obligations under the Debtors' reorganization plan.  Thus, through this

25    transaction, a substantial benefit for the Trade Union Estate and creditors will be generated.

26        Trade Union believes that the proposed consideration to be paid to the Trade Union

27    Estate is fair.  As described above, Nantong Wheel Company has had its own financial

28    difficulties which has had an negative impact on the value of the Nantong Stock owned by Trade

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

35

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 35

1  Union.  Without the proposed transaction and cash infusion by the Buyer, the Nantong Stock

2  holds little or no value for the Estate and creditors.  However, the proposed transaction will not

3  only enhance the value of the 30% Nantong Stock interest retained by Trade Union, claims

4  against the Estate of Trade Union totaling approximately $9,070,795 (as described above) will be

5  resolved, Trade Union through its Ju Rong Company subsidiary will retain the China Land, and

6  Trade Union will receive a cash benefit of approximately $1,458,890 based on the approximate

7  currency exchange rate as of May 16, 2011 for the Chinese RMB/Yuan.  Therefore it is believed

8  that the sale serves the best interest of Trade Union's Estate as well as the Duck House Estate

9  and their creditors.

10         2.      **Other Legal Proceedings**

11         As of the Petition Date, the Debtors were not involved other nonbankruptcy legal

12  proceedings.  In any event, the filing of the Debtors' Chapter 11 petition invoked an automatic

13  stay pursuant to Section 362 of the Bankruptcy Code which effectively would stay any litigation

14  pending against the Debtors on the Petition Date, and any litigation that could have been filed

15  against the Debtors prior to the Petition Date.  All Creditors have been stayed from enforcing any

16  pre-petition Claims they may have against the Debtors.

17         In certain circumstances and only with Court approval, creditors can obtain relief from

18  stay to proceed with their claims against the Debtors.  This could be done for example for the

19  purposes of liquidating the claim amount against the Debtors.

20  **E.    Actual and Projected Recovery of Preferential Transfers**

21         There have been no fraudulent conveyance or preference actions filed in this bankruptcy

22  case.  Transfers that were made within ninety days prior to the Petition Date, aggregating more

23  than $5,475, are subject to possible recovery as a preference under Bankruptcy Code Section

24  547.  Complete lists of parties that received payments from the Debtors within the ninety days

25  prior to the Petition Date and the insiders of the Debtor that received payments from the Debtors

26  during the one year period prior to the Petition Date are attached hereto as **Exhibit 2**.

27         Discussion regarding possible claims against the Debtor's insiders (shareholders).  As set

28  forth  in  the  Liquidation  Analysis  at  Section  V.B  of  the  Disclosure  Statement,  while

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

36

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

**Page 36**

1    approximately $10 million was invested through and by the Debtors' shareholders, cash amounts

2    greater than this were infused back into the Debtors through common stock infusions and

3    working capital infusions from the investment subsidiaries in different accounts.  While the asset

4    accounts remain on the books, in the event that the Debtors' cases are converted to a Chapter 7, it

5    is believed that this receivable will be uncollectable as the Debtors' shareholders' income is

6    dependent on the continued operations of the Debtors' businesses and the cash that left the

7    business was already returned in greater amounts.  For investment accounts, it is estimated that

8    approximately $1.7 million will be realized in the sale of the China plant, however under a

9    liquidation scenario the plant would not be viable without a customer and the sale would not

10   close. Further, the Debtors' shareholders have also provided personal guaranties to the Bank

11   Group and pledged virtually of their real estate assets to the Bank Group as collateral for the

12   obligations evidenced by Bank Group Loan Documents.  Any remaining assets they have either

13   have been or will be put into the Debtors to help fund the Plan.  As such, the Debtors do not

14   believe any material value will be realized from the pursuit of any Avoidance Actions against

15   insiders.

16        The parties appearing on **Exhibit 2** may be subject to a fraudulent conveyance and/or

17   preference actions in the event it is determined that the payment received was a fraudulent and/or

18   preferential transfer recoverable by the Debtors, the Disbursing Agent or a subsequent

19   bankruptcy trustee under Bankruptcy Code Sections  510, 542, 543, 544, 545, 547, 548, 549, or

20   550 or under applicable nonbankruptcy law that may be incorporated into or apply to the

21   foregoing sections of the Bankruptcy Code.

22        THE    DEBTORS    HAVE    NOT    FULLY    REVIEWED    WHETHER    POST-

23   CONFIRMATION ESTATE CLAIMS EXIST, INCLUDING, WITHOUT LIMITATION,

24   WHETHER OR NOT THERE ARE ANY AVOIDANCE ACTIONS WHICH MAY BE

25   BROUGHT BY THE REORGANIZED DEBTORS AFTER THE EFFECTIVE DATE.  THIS

26   INVESTIGATION IS ON-GOING AND WILL OCCUR IN LARGE PART AFTER THE

27   EFFECTIVE DATE, AS A RESULT, CREDITORS AND OTHER PARTIES-IN-INTEREST

28   SHOULD BE, AND ARE PURSUANT TO THE TERMS OF THE PLAN, SPECIFICALLY

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

37

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 37

1    ADVISED THAT, NOTWITHSTANDING THAT THE EXISTENCE OF ANY PARTICULAR

2    POST-CONFIRMATION ESTATE CLAIM MAY NOT BE LISTED, DISCLOSED, OR SET

3    FORTH IN THE PLAN OR THE DISCLOSURE STATEMENT, A POST-CONFIRMATION

4    ESTATE CLAIM MAY BE BROUGHT AGAINST ANY CLAIMANT AT ANY TIME,

5    SUBJECT TO THE BAR DATE LIMITATIONS SET FORTH IN THE PLAN.

6        The Debtors estimate that there will be no funds realized from the recovery of fraudulent

7    and/or preferential transfers.  However, the amount of such recovery is unknown at this time and

8    depends on many factors including the merits of each underlying claim, the ability to recover

9    against a particular defendant regardless of the merits, the fees and costs that the Disbursing

10   Agent may incur to prosecute such claims, and many other factors.

11   **F.**   **Procedures Implemented to Resolve Financial Problems**

12       Prior to and after the Petition Date the Debtors have worked to reduce their expenses and

13   increase profits.   Immediately prior to the commencement of the bankruptcy cases, the Debtors

14   dramatically reduced their work force in order to cut operating costs.

15       In addition, the Debtors imposed significant salary reductions for all employees,

16   including insiders.  Further, the Debtors eliminated a number of expenditures related to real

17   estate and business venture investments, including debt service payments required with respect

18   to such investments, which previously required significant cash outlays.  The Changs also sold

19   personally owned real estate to provide a substantial principal payment to the Bank Group.

20   Finally, the Debtors and the Changs entered into a transaction, subject to Court approval,  related

21   to the  Nantong Wheel Company which will result in substantial trade debt elimination and

22   approximately $1,500,000 (or more depending on the currency exchange rates) in available cash

23   to fund the Plan.

24       The Debtors will review Claims that have been filed in this bankruptcy case and where

25   sufficient cause exits, the Debtors will file objections to Disputed Claims.  The Debtors expect

26   that objections to claims will be resolved promptly such that Allowed General Unsecured Claims

27   can receive their initial payment within 120 days of the Effective Date.

28

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

38

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

**G.      Debtors' Current Financial Condition**

The Debtors' respective Bankruptcy Schedules disclose their respective assets and liabilities as of the Petition Date.  A copy of the Schedules and any amendments thereto is on file and may be reviewed at the Bankruptcy Court's Clerk's Office during normal business hours.  During the bankruptcy case, the Debtors' total current income and expenses has been detailed in monthly operating reports submitted to the Office of the United States Trustee and filed with the Court and may be reviewed at the Bankruptcy Court's Clerk's Office during normal business hours.

IV.      <u>SUMMARY OF THE PLAN</u>

The following is a summary of the Plan and is qualified in its entirety by the full text of the Plan.  The terms of the Plan will be controlling on the Creditors and all other parties in interest in the event that the Plan is confirmed.  Therefore, all Creditors are strongly urged to read the Plan carefully, in its entirety, rather than relying on this summary.

**A.      <u>Overview</u>**

As required by the Bankruptcy Code, the Plan classifies Claims in various classes according to their right to priority.  The Plan states whether each class of Claims is impaired or unimpaired.  The Plan provides the treatment each class will receive.  With respect to each class, the Debtors have not reviewed the proofs of claim, if any, filed by Creditors.  The Debtors reserve the right to object to any of the filed Claims on any reasonable grounds.

**B.      <u>Unclassified Claims</u>**

Certain types of Claims are not placed into voting classes; instead they are unclassified.  They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtors have <u>not</u> placed the following Claims in a class and the treatment of such claims is set forth below.

**1.      <u>Administrative Expenses</u>**

Administrative expenses are Claims for costs or expenses of administering the Debtors' Chapter 11 cases which are allowed under Code Section 507(a)(2).  The Code requires that all

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

39

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 39

Administrative Claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

Except to the extent that the holder of a particular Allowed Administrative Claim agrees to a different treatment thereof, each Allowed Administrative Claim will be paid in full, in Cash, on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. Any holder of an Administrative Claim (including, without limitation, any governmental unit holding an Administrative Claim for post-petition taxes and/or interest and penalties related to such taxes) is required to file a request for payment of its Administrative Claim. Requests for payment of Administrative Claims must be filed not later than thirty days after the Effective Date, and will be paid on or before the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. Any failure by the holder of an Administrative Claim to file a request for payment of its Administrative Claim within thirty days after the Effective Date will forever bar such holder of an Administrative Claim from asserting its Administrative Claim against the Estate.

The following chart lists all of Debtors' <u>estimated</u> Section 507(a)(2) Administrative Claims and their treatment under the Plan:

| Name | Total Estimated | Paid to Date | Total Estimated Required to Be Paid on the Effective Date | Treatment |
|------|------|------|------|------|
| Shulman Hodges & Bastian LLP Insolvency counsel for the Debtors | $290,000 | $140,000 | $150,000.00 | In the event that there are unpaid fees and expenses that are allowed by the Court, unless otherwise agreed, the unpaid amounts shall be paid in full, in Cash, on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. |
| Tatum LLC, a division of SFN Professional Services, Reorganization Consultant for the Debtors | $80,000 | $60,000 | $20,000.00 | Paid in full on the Effective Date |
| J. Lan, CPA, Inc. Accountant for the Debtors | $37,000 | $.00 | $37,000 | In the event that there are unpaid fees and expenses that are allowed by the Court, unless otherwise agreed, the unpaid amounts shall be paid in full, in Cash, on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. |

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

40

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 40

| Name | Total Estimated | Paid to Date | Total Estimated Required to Be Paid on the Effective Date | Treatment |
|---|---|---|---|---|
| Winthrop Couchot PC proposed Attorneys for the Committee and Corporate Recovery Associates, proposed Financial Advisor to the Committee | $50,000 | $.00 | $50,000 | In the event that there are unpaid fees and expenses that are allowed by the Court, unless otherwise agreed, the unpaid amounts shall be paid in full, in Cash, on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. |
| Clerk, Bankruptcy Court Fees | $200 | $.00 | $200 | Paid in full on the Effective Date |
| Unpaid United States Trustee Fees | $500 | $.00 | $500 | The United States Trustee Quarterly Fees as of the Effective Date are estimated and will be paid in full to the extent they are due and owing on the Effective Date. |
| Total | $367,700 | $200,000 | $257,700 | |

The above amounts are estimated and the final amounts required to be paid may vary. Further, the Court must rule on all professional fees listed in the chart above before the fees will be owed. For all fees except the Clerk's Office fees and the United States Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under the Plan.

The last day to file chapter 11 administrative claims (except for professional fees and expenses) is thirty days after the Effective Date. Unless otherwise agreed, allowed administrative expense claims will be paid on the later of the Effective Date or ten days after the entry of a non-appealable order allowing the administrative expense claim. As indicated above, it is anticipated that the Debtors will need to pay approximately $257,000, in administrative claims on the Effective Date of the Plan. As indicated elsewhere in the Disclosure Statement, the Debtors will have sufficient Cash on the Effective Date to make such payment. The source of this Cash will be from the Cash on hand.

## 2.     **Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). Except to the extent that the holder of a particular Allowed Priority

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

41

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 41

Tax Claim agrees to a different treatment thereof, the Code requires that each holder of an Allowed Priority Tax Claim receive on account of such Claim regular installment payments -

        i.      of a total value, as of the Effective Date of the Plan, equal to the allowed amount of such Claim;

        ii.      over a period ending not later than five years after the Petition Date under Section 301, 302 or 303; and

        iii.      in a manner not less favorable than the most favored nonpriority Unsecured Claim provided for by the Plan (other than Cash payments made to a class of creditors under Section 1122(b)).

The Debtors have no Section 507(a)(8) Priority Tax Claims.  If it is determined that there are allowed Section 507(a)(8) Priority Tax Claims, such Allowed Priority Tax Claims will be paid in monthly installment payments such that they are paid in full within five years of the Petition Date, with payments to commence within thirty days of the Effective Date, will include annual interest at the January 31, 2011 published rate for one-year Treasury constant maturities of (.26%), and will be fully amortized in 48 equal payments.  Alternatively, the Allowed Claim amount may be paid in full on the Effective Date.

## C.    **Classified Claims**

### 1.    **Classes of Secured Claims**

Secured Claims are Claims secured by liens on Estate property.  The following chart lists all classes containing Debtors' prepetition Secured Claims and their treatment under the Plan:

| Class No. | Description | Impaired (Y.N) | Treatment |
| --- | --- | --- | --- |

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

| Class No. | Description | Impaired (Y.N) | Treatment |
|---|---|---|---|
| 1-A | Secured Claim of the Bank Group<br>Against both Debtors<br><br>Schedule Claim on Petition Date:  $11,500,000<br><br>Nature of Lien and Collateral description:<br>Filing No. 067090643792 on 10/30/2006<br>Filing No. 9714260787 on 5/19/1997 and the latest continuation Filing No. 0771030454 on 2/13/2007covering substantially all assets of the Debtors.<br><br>Priority:<br>First<br><br>Insider of the Debtors:<br>No<br><br>Estimated Value of Collateral including Non-Estate Property:<br>$11,500,000<br><br>The Bank Group was provided with liens against the following non-Estate property owned by the Changs separately: State Street Property and the Crystal Ridge Property<br><br>The Claim of the Bank Group is disputed for the reasons set forth below in Section IV.H.1. | Yes<br><br>The Claimant in  this class is  entitled to vote on the Plan. | As of the Effective Date, the Reorganized Debtors' obligations to Bank Group under the Bank Group Loan Documents shall be modified such that the Bank Group Loan Documents will reflect the following terms:<br>Subject to Court approval under Federal Rule of Bankruptcy Procedure  9019 and Code Section 364,  the Debtors and the Bank Group have reached an agreement for a new loan/financing structure which will provide, among other things for a new revolving line of credit capped at $5,000,000 (with the initial advance to be determined in accordance with the new financing agreements) , and three term loans, Term A in the principal amount of $1,370,000, Term B in the amount of $1,620,000 and Term C in the amount of $5,900,000.  The line of credit will bear interest at the floating rate of prime plus 1.75% with a floor of 5% and a cap of 9% and the term loans will each bear interest at the rate of 5% per annum and mature on the third anniversary of the date of a Final Order approving the settlement and financing.  The settlement and financing agreement are reflected in three documents: Settlement and Release Agreement, the 10th Amended and Restated Loan Agreement and Annex.  The Settlement Agreement is attached to the Disclosure Statement as Exhibit 4 and the 10th Amended and Restated Loan Agreement and Annex are attached as Exhibit A to the Settlement Agreement.  A hearing on the Debtors' motion to approve the settlement and new financing is scheduled to be heard concurrent with the Plan Confirmation hearing.  The implementation of the Settlement Agreement and financing transaction contemplated thereby is NOT contingent in any way on confirmation or effectiveness of the Plan and may proceed even if the Plan is not confirmed.<br>Total payout:  100%<br>Treatment of lien:  Creditor shall retain its first priority lien on the collateral until its Claim has been paid. |

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

| Class No. | Description | Impaired (Y.N) | Treatment |
|---|---|---|---|
| 1-B | Secured Claim of Wells Fargo Financial Leasing Manufacturer Services Group against Trade Union<br><br>Nature of Lien and Collateral description:<br>UCC-1 Filing related to leased forklifts<br><br>Fililng No. 107220526732, on 1/21/2010<br><br>3 - Crown Forklifts Rc5535-35 S/N-S 1a354979, 1a354978, 1a354977; 3 - Douglas 36 Volt Battries 18-125-15 S/N-S 090000815, 090000814, 080019392; 3 - Crown Chargers 390865-336-01 S/N-S 183086508102207, 183086508102222, 183086508081405<br><br>Filing No. 097215401312 on 11/27/2009<br><br>3 - Crown Reach Trucks Rd5725-30 With Batteries And Chargers S/N-S 1A353697, 1A353696, 1A353740<br><br>Priority:<br>First<br><br>Insider of the Debtors:<br>No<br><br>Schedule Claim on Petition Date:  $.00<br>Trade Union is current on its payments under this lease. | No<br><br>The Claimant in this class is not entitled to vote on the Plan. | The underlying lease of this Claim shall be assumed by Trade Union on the Effective Date and arrearages, if any, will be paid in full on the Effective Date.   Trade Union is current on its payments related to this lease and it is estimated that there will be no arrearages due on this Claim.<br><br>Treatment of lien:  This Creditor shall retain its lien on the collateral in the same validity and priority as it held prior to the Petition Date until the Allowed Claim amount has been paid.<br><br>Payment:  This Creditor will receive payment on its Claim pursuant to the terms and conditions of the underlying lease documents between the Trade Union Debtor and the Creditor entered into prior to the Petition Date.  In no event shall the total payments received through the Plan exceed the amount of the Allowed Claim. |

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

44

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

| Class No. | Description | Impaired (Y.N) | Treatment |
|---|---|---|---|
| 1-C | Secured Claim of Michelin North America Inc. against Trade Union<br><br>Nature of Lien and Collateral description:<br>Filing No. 107219291143 on 1/27/2010<br><br>Priority:<br>First<br><br>Insider of the Debtors:<br>No<br><br>Schedule Claim on Petition Date: $.00<br>Trade Union is current on its payments under this lease. | No<br><br>The Claimant in this class is not entitled to vote on the Plan. | The underlying lease of this Claim shall be assumed by Trade Union on the Effective Date and arrearages, if any, will be paid in full on the Effective Date.  Trade Union is current on its payments related to this lease and it is estimated that there will be no arrearages due on this Claim.<br><br>Treatment of lien:  This Creditor shall retain its lien on the collateral in the same validity and priority as it held prior to the Petition Date until the Allowed Claim amount has been paid.<br><br>Payment:  This Creditor will receive payment on its Claim pursuant to the terms and conditions of the underlying lease documents between the Trade Union Debtor and the Creditor entered into prior to the Petition Date.  In no event shall the total payments received through the Plan exceed the amount of the Allowed Claim. |
| 1-D | Secured Claim of USBancorp against Trade Union<br><br>Nature of Lien and Collateral description:<br>Filing No. 097214827838 on 11/19/2009<br><br>1 Hunter Balancer, Model #GSP972415 ; 1 Hunter Kit - Hunterpro P, Model #2021541 ; 1 Hunter Tire Changer, Model TC3710EW ; 1 Miscellaneous Shipments<br><br>Filing No. 097193421379 on 4/13/2009<br><br>GSP97245120-2154-1TC3710EN<br><br>Priority:<br>First<br><br>Insider of the Debtors:<br>No<br><br>Schedule Claim on Petition Date: $.00<br>Trade Union is current on its payments under this lease. | No<br><br>The Claimant in this class is not entitled to vote on the Plan. | The underlying lease of this Claim shall be assumed by Trade Union on the Effective Date and arrearages, if any, will be paid in full on the Effective Date.  Trade Union is current on its payments related to this lease and it is estimated that there will be no arrearages due on this Claim.<br><br>Treatment of lien:  This Creditor shall retain its lien on the collateral in the same validity and priority as it held prior to the Petition Date until the Allowed Claim amount has been paid.<br><br>Payment:  This Creditor will receive payment on its Claim pursuant to the terms and conditions of the underlying lease documents between the Trade Union Debtor and the Creditor entered into prior to the Petition Date.  In no event shall the total payments received through the Plan exceed the amount of the Allowed Claim. |

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

| Class No. | Description | Impaired (Y.N) | Treatment |
|---|---|---|---|
| 1-E | Secured Claim of Key Equipment Finance against Trade Union<br><br>Nature of Lien and Collateral description:<br>Filing No. 077111569522 on 4/26/2007<br><br>2005 Caterpillar NRR30P Forklift S/N# 2GL07481, 2004 Caterpillar NPV60 Forklift S/N# 2HL11503<br><br>Priority:<br>First<br><br>Insider of the Debtors:<br>No<br><br>Schedule Claim on Petition Date: $.00<br>Trade Union is current on its payments under this lease. | No<br><br>The Claimant in this class is not entitled to vote on the Plan. | The underlying lease of this Claim shall be assumed by Trade Union on the Effective Date and arrearages, if any, will be paid in full on the Effective Date.  Trade Union is current on its payments related to this lease and it is estimated that there will be no arrearages due on this Claim.<br><br>Treatment of lien:  This Creditor shall retain its lien on the collateral in the same validity and priority as it held prior to the Petition Date until the Allowed Claim amount has been paid.<br><br>Payment:  This Creditor will receive payment on its Claim pursuant to the terms and conditions of the underlying lease documents between the Trade Union Debtor and the Creditor entered into prior to the Petition Date.  In no event shall the total payments received through the Plan exceed the amount of the Allowed Claim. |

2. **Classes of Priority Unsecured Claims**

Certain Priority Claims that are referred to in Code Sections 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), and 507(a)(7) are required to be placed in classes.  These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a Claim receive cash on the Effective Date equal to the allowed amount of such Claim.  However, a Class of unsecured Priority Claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such Claim.  There are no 507(a)(3), (a)(4), (a)(5), (a)(6) and (a)(7) unsecured Priority Claims.  Therefore, the Plan provides for no payments to holders of Allowed Priority Claims pursuant Sections 507(a)(3), (a)(4), (a)(5), (a)(6) and (a)(7) of the Bankruptcy Code.

3. **Class of General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).  The following chart identifies the Plan's treatment of the classes of Claims containing all of Debtors' General Unsecured Claims.  See **Exhibit 3** to the Disclosure Statement

SHULMAN HODGES & BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

46

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 46

1   for additional information about each General Unsecured Claim.  **Exhibit 3** indicates General

2   Unsecured Claims of approximately $8,370,833.63 against Trade Union and approximately

3   $977,883.25 against Duck House for a total of approximately $9,348,716.88.  Exhibit 3 does not

4   reflect payments that have been made on a certain Claims pursuant to prior Court orders in the

5   case.   In addition, the sale of the Nantong Stock will impact the total of Unsecured Claims

6   against the Estates.  Under the proposed sale of the Nantong Stock  described in Section III.D.1.,

7   of the Disclosure Statement, Unsecured Claims held by affiliates and/or insiders against the

8   Estates totaling approximately $9,070,795 will be resolved.   If the sale of the Nantong Stock

9   does not close for any reason and/or these insider or affiliate Claims are not resolved through

10  such transaction such that they will not remain against the Debtors' Estates, such Claims will be

11  subordinated to other Allowed General Unsecured Claims and shall not receive distributions as

12  part of Class 2. Thus, under the Plan, the Unsecured Claims are estimated to be approximately

13  $893,646 as follows: Unsecured Claims against Trade Union of approximately  $727,633 and

14  unsecured claims of Duck House of approximately $166,013, for a total of  approximately

15  $893,646.

16

| Class No. | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
|  |  |  |  |
| 2 | General Unsecured Claims | Yes<br><br>Impaired; claims in this class are entitled to vote on the Plan | Holders of Allowed General Unsecured Claims shall receive their pro rata share of $750,000 based on the amount of their Allowed Claim compared to the sums to be distributed,  payable as follows:<br><br>• Five annual payments each in the  amount of $150,000.<br>• The first annual payment to Class 2 shall be made on or before February 1, 2012<br>• The second annual payment to Class 2 shall be made on or before February 1, 2013<br>• The third annual payment to Class 2 shall be made on or before February 1, 2014<br>• The fourth annual payment to Class 2 shall be made on or before February 1, 2015<br>• The fifth annual payment to Class 2 shall be made on or before February 1, 2016 |

### 4.    Class of Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the

debtor.  If the debtor is a corporation, entities holding preferred or common stock in the debtor

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

47

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 47

are the interest holders.  If the debtor is a partnership, the interest holders include both general

and limited partners.  If the debtor is an individual, the debtor is the interest holder.  The

following chart identifies the Plan's treatment of the class of Interest Holders:

| Class | Description | | Impaired | Treatment |
|---|---|---|---|---|
| 3 | Interest Holder<br><br>Wen Pin Chang<br>Mei Lien Chang | Percentage<br>of Shares<br>50%<br>50% | No | The rights of Interest Holders are not modified by the Plan.  The Existing Stock will remain in effect.   Under the Settlement Agreement with the Bank Group attached to the Disclosure Statement as Exhibit 1, the Interest Holders are providing new value contribution under the Plan such they will be providing 100% of the net proceeds that are generated from the sale of their interest in the Berendo Property which shall be used to pay the Bank Group.  The sale of the Berendo Property is estimated to generate from $400,000 to $500,000 in net sale proceeds to be paid to the Bank Group.  As such, to the extent necessary, the Debtors assert that the Plan complies with the absolute priority rule under Code Section 1129(b)(2)(B)(ii)[2]. |

**Notwithstanding any other provision of the Plan, no payments or Distributions shall
be made on account of any Disputed Claim until such Claim becomes an Allowed Claim,
and then only to the extent it becomes an Allowed Claim.  Any Proof of Claim filed which
differs from the Scheduled amount is deemed to be a Disputed Claim.**

**D.    Means of Effectuating the Plan**

The Plan is a reorganization plan accomplished through the continuation of the Debtors'

respective business operations.  In other words, the Debtors anticipate that Plan payments to

creditors will be derived from the business revenues and available cash from the revolving credit

facility with the Bank Group under the Settlement Agreement with the Bank Group and as set

forth in the Debtors' projections attached to the Disclosure Statement as **Exhibit 1.**    The

Settlement Agreement and financing contemplated thereby, however, is not contingent upon the

---

[2]    Under 11 U.S.C. Section 1129(b)(2)(B), a plan is fair and equitable as to a class of unsecured claims if each holder of such class receives or retains property of a value, as of the effective date of the plan, equal to the allowed amount of such claim or that the holder of any junior claim or interest receive nothing under the plan.  The latter requirement is referred to as the "absolute priority rule."  See, Northern Pacific Railway Company v. Boyd, 22 S. Ct. 554 (1913).  The absolute priority rule applies only in cases when a class of unsecured claims or equity interests is impaired and does not accept the Plan.  In that event, the absolute priority rule does not apply to all classes of unsecured claims and equity interests, but only to the dissenting class and classes junior to the dissenting class.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

48

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

**Page 48**

1    confirmation or effectiveness of the Plan.  Payments to the Bank Group  may also be funded

2    from the Nantong Wheel Company transaction described above in Section III.D.1., from sale of

3    assets that are not property of the Estates, some of which such property currently serves as

4    collateral under the Bank Group's Secured Claim and from new value contribution by the

5    Changs whereby they will contribute 100% of the net sale proceeds generated from the sale of

6    the Berendo Property.

7       The Cash in the Estate as of the Confirmation Date and the Cash which will be obtained

8    by the Estate after the Confirmation Date will be distributed to Allowed Administrative Claims,

9    Allowed Priority Tax Claims, Allowed Secured Claims, and Allowed General Unsecured Claims

10   on account of their Allowed Claims amounts pursuant to the provisions of the Plan.

11      As discussed in the Disclosure Statement, the Debtors will be required to meet certain

12   obligations under the Plan with regard to payments due on or shortly after the Effective Date,

13   including Allowed Administrative Claims.  As set forth in the financial projections attached to

14   the Disclosure Statement as **Exhibit 1**, there will be sufficient funds available to make the

15   Effective Date payments.  The amount of Claims may be further reduced after Claims analysis

16   and objections are completed.  Therefore, the Debtors have sufficient resources to meet their

17   obligations based on its projected future income.

18      The Reorganized Debtors will have the right to pay any Allowed Claim of any Creditor at

19   any time on or after the Effective Date, without premium or penalty.  Thus,  if the Debtors'

20   operating projections improve, at the Debtors' sole discretion, Distributions under the Plan may

21   commence earlier than on the dates set forth in the Plan.

22      The Disbursing Agent will make all Distributions pursuant to the provisions of the Plan.

23   **E.**  **Post-Confirmation Management**

24      The Debtors will retain possession of their respective property and the management of

25   their respective financial affairs after the confirmation of the Plan as the Reorganized Debtors

26   under the following management:

27

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

49

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

**Page 49**

| Name | Compensation |
|------|--------------|
| Wen Pin Chang<br>President | $4,294.81 each bi-weekly pay period plus medical insurance and reimbursements as incurred |
| Mei Lien Chang<br>Vice President | $1,872.31 for each bi-weekly pay period plus medical insurance and reimbursements as incurred |
| Gary Chang<br>Marketing Manager for Trade Union | $2,000 for each bi-weekly pay period plus medical insurance and reimbursements as incurred |
| Howard Chang<br>Sales Executive for Trade Union | $1,200 for each bi-weekly pay period plus medical insurance and reimbursements as incurred |

Under the Settlement Agreement with the Bank Group, the above compensation may be increased depending on the Debtors' financial performance as set forth therein.  The Debtors under the direction of Wen Pin Chang and Mei Lien Chang shall serve as the Disbursing Agent and shall have exclusive right to investigate and prosecute any and all claims of the Estate, including but not limited to any Avoidance Actions and any Post-Confirmation Estate Claims and shall have exclusive authority to oversee the Disbursement of the Cash in accordance with the Plan.  The Disbursing Agent is personally familiar with and is custodian of the records of the Debtors and will be able to perform the Disbursing Agent duties more efficiently and less expensively than any other parties in interest that do not have the knowledge and familiarity of the Debtors' financial records.

The Debtors as the Disbursing Agent shall serve without bond and shall receive no compensation for Disbursing Agent services except through the compensation noted above.

The Disbursing Agent shall exercise reasonable business judgment in determining whether to prosecute, settle or take action regarding any claims of the Estate, including but not limited to Avoidance Actions and the Post-Confirmation Estate Claims.  The Disbursing Agent may compromise or settle any all claims of the Estate, including but not limited to Avoidance Actions and Post-Confirmation Estate Claims without further notice, hearing or Court order.

The Disbursing Agent shall be responsible for all actions necessary to maintain and maximize the affairs of the Reorganized Debtors.  The duties of the Disbursing Agent include preparing and filing the post-confirmation status reports with the Office of the United States

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

50

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 50

1    Trustee and paying all post-confirmation quarterly fees of the Office of the United States Trustee

2    until the bankruptcy case is dismissed or a final decree has been entered, whichever occurs first.

3    **F.    Employment and Compensation of Professionals**

4            In carrying out the duties under the Plan, the Disbursing Agent shall use the services of

5    professionals deemed to be appropriate.    Except as set forth herein to the contrary, any

6    professional employed by the Debtors or the Disbursing Agent in this bankruptcy case after the

7    confirmation of the Plan seeking payment of its post-confirmation fees and costs will be entitled

8    to seek payment of such fees and costs without the need for any further order of the Bankruptcy

9    Court.

10   **G.    Risk Factors**

11           The proposed Plan has the following risks:

12           1.    The financial projections contained in this Disclosure Statement are based on

13   assumptions described therein.    However, the Plan and the financial projections are subject to

14   certain risk factors which cannot reasonably be determined    at this time.    The risk factors

15   discussed below assume confirmation and consummation of the Plan and the transactions

16   contemplated by the Plan, and do not include matters, other than risks pertaining to the ability of

17   the Debtors to fund the Plan and to pay Creditors, that could prevent confirmation or

18   consummation.    Prior to voting on the Plan, each holder of an impaired Claim should carefully

19   consider the risk factors enumerated or referred to below as well as all of the information

20   contained in the Disclosure Statement, the Plan, and the exhibits hereto and thereto.

21           2.    If the Plan is not confirmed and consummated, there can be no assurance that the

22   holders of Secured Claims will not foreclose on the assets of the Estates, that the bankruptcy

23   cases will continue rather than be converted into a liquidation, or that any alternative plan of

24   reorganization would be on terms as favorable to the holders of the impaired Claims as the terms

25   of the Plan.    If a foreclosure, liquidation, or protracted reorganization were to occur, there is a

26   substantial risk that there would be little, if any, value available for distribution to the holders of

27   Claims (other than Secured Claims).

28

**SHULMAN HODGES &**
**BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

51

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

**Page 51**

3.      The estimate of the distributions which will be made to the holders of Allowed Claims represents a projection of future events based upon certain assumptions made by the Debtors regarding the sales from operation of the their businesses, which at time such sales may be seasonal, and which vary historically from year to year.   If sales are less than projected by the Debtors, the Distribution to Creditors could be impacted, perhaps substantially.   Further, given the difficult economic climate and uncertain pricing of supplies, materials, goods and other commodities, the projected figures could ultimately go down.

4.      The estimate of the distributions which will be made to the Bank Grouprepresents a projection of future events based upon certain assumptions made by the Debtors regarding closing on the sale of the Nantong Stock.  If the sale does not get approved by the Court or if the sale does not close for some unknown reason, the Distribution to the Bank Group could be impacted, perhaps substantially.

5.      The estimate of the distributions which will be made to the Bank Group represents a projection of future events based upon certain assumptions made by the Debtors regarding closing on the sale of the Berendo Property to be conducted separately by the Changs. Under the Settlement Agreement with the Bank Group attached to the Disclosure Statement as Exhibit 1, the Changs are providing a new value contribution under the Plan such they will be providing 100% of the net proceeds that are generated from the sale of their interest in the Berendo Property which shall be used to pay the Bank Group.  The sale of the Berendo Property is estimated to generate from $400,000 to $500,000 in net sale proceeds to be paid to the Bank Group.  If the sale does not close for some unknown reason, the Distribution to the Bank Group could be impacted, perhaps substantially.

6.      The Plan contemplates that the Debtors will obtain financing in a sufficient amount to assist in funding the Plan through the Settlement Agreement and ancillary loan documents attached as Exhibit A to the Settlement Agreement, which is subject to Court approval.  However, there is no guarantee that the Court will approve the Settlement Agreeennt and ancillary financing documents.  While the Plan may still be confirmed without the Debtor obtaining Court approval of the Settlement Agreement with the Bank Group, the Bank Group

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

52

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 52

1    would have to either agree to a consensual restructuring of its Claims or the Court would need to

2    confirm the Plan notwithstanding the Bank Group's rejecting vote .

3         7.    The amount due to some Claimants has not been liquidated and is disputed.  Some

4    of the amounts due are subject to pending litigation or are subject to payment by parties other

5    than the Debtors.   These factors could impact the pro rata distribution to Creditors.

6         8.    The amount that will be recovered from prosecution of Avoidance Actions is

7    unknown and speculative.  The Disbursing Agent has not commenced investigation of such

8    claims or any defenses to such claims.  There is also risk inherent in any litigation and potential

9    fees and costs that would be incurred to pursue such claims.

10        9.    By reason of the uncertainties inherent in the predictions of future events, the

11   actual Distributions which will be made to the holders of Allowed Claims may well be different

12   from those projected, and such difference may well be material and adverse to the interest of

13   Creditors.

14        The risk factors discussed herein assume confirmation and consummation of the Plan and

15   the transactions contemplated by the Plan, and do not include matters, other than risks pertaining

16   to the ability of the Debtors to fund the Plan and to pay Creditors, that could prevent

17   confirmation or consummation.  Prior to voting on the Plan, each holder of an impaired Claim

18   should carefully consider the risk factors enumerated or referred to below as well as all of the

19   information contained in this Disclosure Statement, the Plan, and the exhibits hereto and thereto.

20   **H.    Post-Confirmation Estate Claims**

21        The right to enforce, litigate, collect, and settle, on behalf of the Estate (at the expense of

22   the Estate), any and all Claims and causes of action which constitute property of the Estate

23   including, but not limited to, any Avoidance Actions, whether or not such Claims or causes of

24   action are the subject of litigation pending as of the Effective Date (collectively, the "Post-

25   Confirmation Estate Claims"), shall be vested solely in the Disbursing Agent as of the Effective

26   Date.  From and after the Effective Date, the Disbursing Agent shall have the sole right to

27   enforce, file, prosecute, collect, or settle, any Post-Confirmation Estate Claims.  The Disbursing

28   Agent is personally familiar with and is custodian of the records of the Debtors as they pertain

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

53

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

1    Post-Confirmation Estate Claims and will be able to enforce, collect and settle the Post-

2    Confirmation Estate Claims more efficiently and less expensively than any other parties in

3    interest that do not have the knowledge and familiarity of the Debtors' financial records.

4        Any litigation based upon Post-Confirmation Estate Claims will be filed no later than two

5    years year after the Effective Date, or within any applicable limitations period, or within such

6    additional period of time as the Bankruptcy Court may allow upon motion of the Disbursing

7    Agent, after such notice as the Bankruptcy Court may deem appropriate.   In the event that

8    litigation based upon any Post-Confirmation Estate Claim is not timely commenced, such Post-

9    Confirmation Estate Claim will be deemed forever waived by the Estate and neither the Debtors,

10   Disbursing Agent nor any other party-in-interest will have the right to pursue the same; provided,

11   however, that any such Post-Confirmation Estate Claim, may be utilized as a defense against or

12   offset to any Claim or cause of action which may be brought against the Estates.

13       Notwithstanding the rights of the Disbursing Agent with respect to Post-Confirmation

14   Estate Claims, nothing in the Plan will require the Disbursing Agent to prosecute or litigate any

15   such matters, all of which may be decided by the Disbursing Agent in his sole discretion.

16       THE   DEBTORS   HAVE   NOT   FULLY   REVIEWED   WHETHER   POST-

17   CONFIRMATION  ESTATE  CLAIMS  EXIST,  INCLUDING,  WITHOUT  LIMITATION,

18   WHETHER  OR  NOT  THERE  ARE  ANY  AVOIDANCE  ACTIONS  WHICH  MAY  BE

19   BROUGHT AFTER THE EFFECTIVE DATE.  THIS INVESTIGATION IS ON-GOING AND

20   WILL  OCCUR  IN  LARGE  PART  AFTER  THE  EFFECTIVE  DATE,  AS  A  RESULT,

21   CREDITORS AND OTHER PARTIES-IN-INTEREST SHOULD BE, AND ARE PURSUANT

22   TO THE TERMS OF THE PLAN, SPECIFICALLY ADVISED THAT, NOTWITHSTANDING

23   THAT  THE  EXISTENCE  OF  ANY  PARTICULAR  POST-CONFIRMATION  ESTATE

24   CLAIM MAY NOT BE LISTED, DISCLOSED, OR SET FORTH IN THE PLAN OR THE

25   DISCLOSURE  STATEMENT,  A  POST-CONFIRMATION  ESTATE  CLAIM  MAY  BE

26   BROUGHT AGAINST ANY CLAIMANT AT ANY TIME, SUBJECT TO THE BAR DATE

27   LIMITATIONS SET FORTH IN THE PLAN.

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

54

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 54

1.    **Potential Claims Regarding Bank Group and its Allowed Secured Claim**

     **Amount (Resolved Under the Plan)**

Debtors are investigating whether or not the Bank Group's claims are secured and to what extent.  As such, the Debtors hereby reserve their right to challenge the validity, amount and priority of any Secured Claim asserted by the Bank Group in these cases.

Debtors are also investigating whether or not the Bank Group is liable for, among other things, exercising excess control over Debtors, Debtors' financial structure and affairs and for directing Debtors and Debtors' principals to liquidate various assets to their great detriment through the false promise of (1) extensions of the then existing loan maturity and terms and (2) promises to work with Debtor to preserve its key business operations, while at all times intending to force the liquidation of the Debtor's business.

Based on the foregoing, the Debtors may have claims against the Bank Group for declaratory relief, accounting, lender liability, equitable subordination and other theories **which will be resolved through the compromise and settlement described above in Class 1A**.

## I.    Objections to Claims

The right to litigate, resolve, and settle objections to Claims (at the expense of the Estates), whether or not the subject of litigation as of the Effective Date, will be vested solely in the Disbursing Agent as of the Effective Date.  From and after the Effective Date, the Disbursing Agent shall have the sole right to file, prosecute, litigate, and settle any objections to Claims, whether or not any such objection is pending as of the Effective Date.  The Disbursing Agent is personally familiar with and is custodian of the records of the Debtors as they pertain Claims and will be able to litigate, resolve and settle objections to Claims more efficiently and less expensively than any other parties in interest that do not have the knowledge and familiarity of the Debtors' financial records.

Notwithstanding that the Disbursing Agent shall have the right to file, litigate, prosecute, and settle objections to Claims on behalf of the Estate, nothing contained herein will be deemed to obligate the Disbursing Agent to take any such actions, all of which will be determined in the Disbursing Agent's sole discretion.

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

55

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

**Page 55**

1    **Any Claims listed as Disputed in the Plan and Disclosure Statement and the**

2    **Exhibits attached thereto will be subject to claims objections proceedings.**   HOWEVER,

3    THE DEBTORS HAVE NOT FULLY REVIEWED THE CLAIMS OR DETERMINED

4    WHETHER OBJECTIONS TO CLAIMS EXIST.   THIS INVESTIGATION IS ONGOING

5    AND WILL OCCUR IN LARGE PART AFTER THE EFFECTIVE DATE.   CREDITORS

6    AND OTHER PARTIES-IN-INTEREST SHOULD BE, AND ARE PURSUANT TO THE

7    TERMS OF THE PLAN SPECIFICALLY ADVISED THAT, NOTWITHSTANDING THAT

8    THE EXISTENCE OF ANY PARTICULAR OBJECTION TO CLAIM MAY NOT BE

9    LISTED, DISCLOSED, OR SET FORTH IN THE PLAN OR DISCLOSURE STATEMENT,

10   AN OBJECTION TO CLAIM MAY BE BROUGHT AGAINST ANY CLAIMANT AFTER

11   THE EFFECTIVE DATE.

12   **J.      Pending Disputed General Unsecured Claims as of the Date of Distribution**

13          In the event that any objection to any General Unsecured Claim should be pending as of

14   the date on which a Distribution is owed to the holder of such General Unsecured Claim, no

15   Distribution will be made on account of such disputed General Unsecured Claim until such

16   Disputed Claim has been determined and allowed by a Final Order.  In the event that a Disputed

17   Claim is allowed by a Final Order, within five Business Days after such Disputed Claim is

18   allowed by such Final Order, such Allowed General Unsecured Claim will be paid to the extent

19   of the Distributions previously made on account of Allowed General Unsecured Claims in the

20   same Class.  Further Distributions, if any, on account of such Allowed General Unsecured Claim

21   will be paid directly to the holder of such Allowed General Unsecured Claim, in an aggregate

22   amount not to exceed the amount of the General Unsecured Claim allowed by the Final Order.

23   **K.      Unclaimed Distributions**

24          Distributions to holders of Allowed Claims will be made either:  (a) at the addresses set

25   forth in the Proof of Claim filed by the Creditor; or (b) at the address set forth in any written

26   notice of address change delivered to the Debtors or the Disbursing Agent after the date on

27   which any related Proof of Claim was filed; or (c) at the address reflected in the Schedules

28   relating to the applicable Allowed Claim if no Proof of Claim has been filed by the Creditor and

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

56

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 56

1  neither the Debtors nor the Reorganized Debtors have received a written notice of a change of

2  address.

3      The Disbursing Agent shall not be required to perform any investigation or inquiry as to

4  the proper address for such Creditor if the address stated in any Proof of Claim filed by the

5  Creditor, written notice of change of address filed by the Creditor, or in the Schedules is

6  incorrect.

7      Any Unclaimed Distribution provided for under the Plan (which will include: (a) checks

8  which have been returned as undeliverable without a proper forwarding address; (b) checks

9  which were not mailed or delivered because of the absence of a proper address to which to mail

10  or deliver the same; or (c) checks which remain un-negotiated for a period of ninety days, will be

11  retained and utilized by the Disbursing Agent.

12      Following the earlier to occur of: (a) two (2) years after a Distribution becomes an

13  Unclaimed Distribution, or (b) ninety days after the making of the Final Distribution under the

14  Plan (collectively, the "Unclaimed Distribution Holding Period"), such Unclaimed Distribution

15  will become property of the Disbursement Fund, free and clear of any restrictions thereon, and

16  the holders of Allowed Claims otherwise entitled to such Unclaimed Distributions will cease to

17  be entitled thereto and their Claims based thereon will be deemed discharged, waived, and

18  forever barred.

19      Pursuant to Bankruptcy Code Section 347, in the event that Unclaimed Distributions

20  remaining in the Disbursement Fund after five years from the date of entry of the Confirmation

21  Order are less than $5,000, such Unclaimed Distributions shall revert to the Disbursing Agent as

22  compensation for the Disbursing Agent.  In the event that Unclaimed Distributions remaining in

23  the Disbursement Fund after five years from the date of entry of the Confirmation Order are

24  $5,001 or more, after payment of all costs of administration of the Plan including payment of

25  Allowed Administrative Claims, Allowed Priority Claims and/or Allowed Secured Claims, such

26  Unclaimed Distributions shall be distributed on a pro rata basis to Allowed General Unsecured

27  Claims.

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

57

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 57

**L.    Other Provisions of the Plan**

**1.    Executory Contracts and Unexpired Leases**

**a.    Assumptions – Trade Union**

The following are the unexpired leases and executory contracts that are to be <u>assumed</u> as obligations of the Trade Union Reorganized Debtor under the Plan:

| Name of  Other Parties to Lease or Contract | Description of Lease  or Contract |
|---|---|
| Wen Pin Chang and Mei Lien Chang | Lease for the Debtors' business premises located at 4651 State Street, Montclair, CA 91763<br>Five year lease ending January 31, 2013 |
| Wells Fargo Financial Leasing Manufacturer | 3 - Crown Forklifts Rc5535-35  S/N-S 1a354979, 1a354978, 1a354977; 3 - Douglas 36 Volt Battries 18-125-15  S/N-S 090000815, 090000814, 080019392; 3 - Crown Chargers 390865-336-01  S/N-S 183086508102207, 183086508102222, 183086508081405<br>Lease Expires on 1/21/2013<br><br>3 - Crown Reach Trucks Rd5725-30 With Batteries And Chargers  S/N-S 1A353697, 1A353696, 1A353740<br>Lease expires on 11/27/2012 |
| Key Equipment Finance | Lease for 2005 Caterpillar NRR30P Forklift S/N# 2GL07481, 2004 Caterpillar NPV60 Forklift S/N# 2HL11503 |

**b.    Assumptions – Duck House**

Pursuant to the Assume Licenses Order, Duck House has assumed the various prepetition license agreements whereby Duck House is licensed to sell in the United States products which utilize certain specified names, trademarks, service marks, trade dress, copyrights, including word mark, logos, uniform designs, mascots, images, colors and color combinations, characters, symbols designs, likenesses and visual representations associated with and/or related to various professionals sports agencies such as NFL Properties, LLC, Major League Baseball Properties, Inc., NBA Properties Inc. and associated with various colleges and universities including an entity known as the License Resource Group.

The following are the additional unexpired leases and executory contracts that are to be <u>assumed</u> as obligations of the Duck House Reorganized Debtor under the Plan:

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

| Name of Other Parties to Lease or Contract | Description of Lease or Contract |
|---|---|
| Wen Pin Chang and Mei Lien Chang | Lease for the Debtors' business premises located at 4651 State Street, Montclair, CA 91763<br>Five year lease ending January 31, 2013 |

The assumption of the lease will serve the bests interests of the Estates and creditors. If the Debtors rejected the lease, they would incur a substantial lease rejection damages claims and incur costs to locate a new business premises and undertake such a move. The costs for such a move of the Debtors' business operations could be astronomical. Furthermore, prior to the Petition Date, the monthly lease payment was reduced to reflect lower rental rates throughout the area. As such, based on good business judgment, the Debtors believe that the lease should be assumed under the Plan.

### (1)  General Assumption Procedures

On the Effective Date, each of the unexpired leases and executory contracts listed above shall be assumed as obligations of the Reorganized Debtors. The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each lease and contract listed above. If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

Any monetary defaults under each executory contract or unexpired lease to be assumed under the Plan will be satisfied, pursuant to Section 365 of the Bankruptcy Code, in either of the following ways: (1) by payment of the default amount in quarterly cash installments commencing on the Effective Date and continuing for one year; or (2) by payment of the default amount on such other terms as agreed to by the Reorganized Debtors and the non-debtor parties to such executory contract or unexpired lease.

In the event of a dispute regarding (i) the amount or timing of any cure payments, (ii) the ability of the Reorganized Debtors to provide adequate assurance of future performance under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

59

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 59

1    assumption (or assumption and assignment) of the executory contract or unexpired lease to be

2    assumed, the Reorganized Debtors will pay any undisputed cure amount when such payments

3    otherwise are due under the Plan, and the disputed amounts will be paid following the entry of a

4    Final Order resolving the dispute and approving assumption.

5         **2.    Rejections**

6         On the Confirmation Date, except for any executory contract or unexpired lease

7    specifically assumed or rejected pursuant to a prior order of the Bankruptcy Court or assumed

8    pursuant to the Plan, each executory contract or unexpired lease entered into by the Debtors prior

9    to the Petition Date that has not previously expired or terminated pursuant to its own terms will

10   be deemed rejected pursuant to Section 365 of the Bankruptcy Code.    Therefore, rejections

11   include but are not limited to the following:  **None**

12        The order confirming the Plan shall constitute an Order approving the rejection of the

13   lease or contract.  If you are a party to a contract or lease to be rejected and you object to the

14   rejection of your contract or lease, you must file and serve your objection to the Plan within the

15   deadline for objecting to the confirmation of the Plan. <u>See</u> Section I.B.3. of the Disclosure

16   Statement for the specific date.

17        THE  BAR  DATE  FOR  FILING  A  PROOF  OF  CLAIM  BASED  ON  A  CLAIM

18   ARISING FROM THE REJECTION OF LEASE OR CONTRACT IS THIRTY DAYS FROM

19   THE CONFIRMATION DATE.  Any Claim based on the rejection of a contract or lease will be

20   barred if the proof of Claim is not timely filed, unless the Court later orders otherwise.

21        Proofs of Claim for any Claims arising by reason of any rejection of executory contracts

22   or unexpired leases pursuant to the Plan shall be filed and served upon the Disbursing Agent and

23   counsel for the Disbursing Agent within thirty days after the Confirmation Date.  In the event

24   that any such Proof of Claim is not filed and served as set forth herein, such Claim will be

25   deemed conclusively to be waived and will be forever barred in the Case, without further notice.

26   Any Claim timely asserted hereunder arising out of the rejection of an executory contract or

27   unexpired lease will be deemed to be a General Unsecured Claim under the Plan, but will not

28   automatically become an Allowed Claim.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

60

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

### 3.    Changes In Rates Subject To Regulatory Commission Approval

The Debtors are not subject to governmental regulatory commission approval of rates. The Debtors are not regulated by a governmental commission.

### 4.    Retention of Jurisdiction

Until this Plan has been fully consummated, the Bankruptcy Court shall retain jurisdiction to the extent provided by law, including, but not limited to, the following purposes:

1.    The classification, allowance, disallowance, or estimation of the Claim of any Claimant and the re-examination of Claims which have been allowed for the purposes of determining acceptance of the Plan at the time of the Confirmation Hearing and the determination of such objections as may be filed to Claims.  The failure by the Debtors to object to or to examine any Claim for the purpose of determining acceptance of this Plan shall not be deemed to be a waiver of the right of Debtors or the Disbursing Agent to object to or to re-examine the Claim, in whole or in part, at a later date.

2.    Except for as otherwise provided herein, the determination of all questions and disputes regarding title to the assets of Debtors, the Estates, or the Reorganized Debtors and the determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to any action pending as of the Confirmation Date, in which the Debtors or the Reorganized Debtors are a party.

3.    The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

4.    The resolution of any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving  the Debtors or the Reorganized Debtors that may be pending on the Effective Date.

5.    The modification of the Plan after confirmation pursuant to the Bankruptcy Code and the Bankruptcy Rules, or if in the best interests of the Estate and the Creditors, modification of this Plan even after the Plan has been substantially consummated.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

61

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 61

6.      The enforcement and interpretation of the terms and conditions of the Plan or the Confirmation Order, and the determination of such matters, and the making of such orders consistent with the Plan as may be necessary or desirable to effectuate the provisions of the Plan.

7.      The determination, either before or after the closing of this bankruptcy case, of any Claims concerning state, local, and federal taxes pursuant to Section 346, 505, 525, or 1146 of the Bankruptcy Code or other applicable law, and the Debtors', Reorganized Debtors', or the Estates' entitlement, if any, to tax attributes which may have been property of the Estates, either before or after the closing of these bankruptcy cases.

8.      The shortening or extending, for cause, of the time fixed for doing any act or thing under the Plan, on such notice, if any, as the Bankruptcy Court shall determine to be appropriate.

9.      The entry of any order, including, without limitation, any injunction, to enforce the title, rights, and powers of the Debtors or the Reorganized Debtors and such limitations, restrictions, terms, and conditions of such title, rights, and powers as the Bankruptcy Court may deem necessary.

10.      The determination of any disputes arising under or relating to any order entered by the Bankruptcy Court in the bankruptcy case.

11.      The determination of the validity, extent, or priority of any liens and security interests against property of Debtors, the Reorganized Debtors, or the Estates.

12.      The determination of all actions and proceedings which relate to pre-confirmation matters affecting the Debtors or the Estates whether such action or proceeding is brought before or after the Effective Date.

13.      The liquidation or allowance of any Claim as well as any objection or dispute concerning any Claim of the Estates.

14.      The determination of all questions and disputes regarding collection of assets of Debtors or the Estates as of the Confirmation Date.

15.      The entry of an order concluding and terminating the bankruptcy cases.

16.      Such other matters to the extent provided by law.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

62

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 62

5.    **Injunction With Respect to Proceeds of Sale of Berendo Property**

As the pledge and delivery of the net proceeds of the sale of the Berendo Property by the Changs to the Bank Group under the settlement with the Bank Group and the financing described in Class 1-A above is critical to the payments to the Bank Group contemplated  herein and the new value contribution to be made by the Interest Holders described herein, the Plan shall impose an injunction against any and all Creditors from seeking to attach the Changs' interest in the Berendo Property or any proceeds to be received by the Changs from any sale.

**M.    Tax Consequences of the Plan**

CREDITORS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS AND/OR ADVISORS.  The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues the Plan may present to the Debtors. The Debtors CANNOT and DO NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action on Debtors' tax liability.

The following are the tax consequences which the Plan will have on the Debtors' tax liability:

DUE TO THE UNSETTLED AND COMPLEX NATURE OF SOME OF THE TAX ISSUES, AS WELL AS THE POSSIBILITY THAT DEVELOPMENTS SUBSEQUENT TO THE DATE HEREOF COULD AFFECT THE TAX CONSEQUENCES OF THE PLAN, THE FOLLOWING DISCUSSION SHOULD NOT BE REGARDED AS DEFINITIVE OR AS COVERING ALL POSSIBLE TAX CONSEQUENCES.    ADDITIONALLY, THIS SUMMARY DOES NOT DISCUSS ALL ASPECTS OF FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR CREDITOR OR HOLDER OF AN EQUITY INTEREST IN LIGHT OF ITS INDIVIDUAL CIRCUMSTANCES OR TO CERTAIN CREDITORS AND HOLDERS OF EQUITY INTERESTS SUBJECT TO SPECIAL TREATMENT UNDER THE FEDERAL INCOME TAX LAWS (FOR EXAMPLE, LIFE

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

63

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

1   INSURANCE    COMPANIES,    TAX-EXEMPT    ORGANIZATIONS,    FOREIGN

2   CORPORATIONS AND INDIVIDUALS WHO ARE NOT CITIZENS OR RESIDENTS OF

3   THE UNITED STATES).

4        THIS SUMMARY DOES NOT DISCUSS ANY ASPECT OF STATE, LOCAL OR

5   FOREIGN TAXATION.  HOLDERS OF CLAIMS ARE STRONGLY URGED TO CONSULT

6   WITH THEIR OWN TAX ADVISORS AS TO THE SPECIFIC TAX CONSEQUENCES

7   (FEDERAL, STATE, LOCAL, AND FOREIGN) TO THEM OF THE PLAN.

8        This summary is based upon the laws, regulations, rulings, and decisions in effect on the

9   date hereof and upon certain proposed and temporary regulations, all of which are subject to

10  change (possibly with retroactive effect) by legislation, administrative action or judicial decision.

11  Moreover, due to a lack of definitive judicial or administrative authority and interpretation,

12  substantial uncertainties exist with respect to various tax consequences of the Plan as discussed

13  herein.  No rulings have been or are expected to be requested from the IRS or any state tax

14  agency concerning any of the tax matters described herein.  There can be no assurance that the

15  IRS or any state tax agency will not challenge the positions taken by the Debtors with respect to

16  any of the issues addressed herein or that a court of competent jurisdiction would not sustain

17  such a challenge.

18       The amount of tax liabilities, if any, will be affected by any deductions the Debtors will

19  be entitled to during the year.  Thus, at this time, the Debtors cannot estimate the amount of tax

20  liabilities that will be incurred but they expect that based on losses sustained in previous tax

21  years, they will be able to carry forward certain losses that will offset any potential income tax

22  liabilities for a period of time.  The Debtors believe that any tax liabilities going forward will be

23  paid in the ordinary course through the Debtors' cash flow.   The Debtors do not believe they

24  will  suffer  any  adverse  tax  consequences  resulting  from  their  bankruptcy  cases  or

25  implementation of the Plan.

26       **V.    CONFIRMATION REQUIREMENTS AND PROCEDURES**

27       PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN

28  SHOULD  CONSULT  WITH  THEIR  OWN  ATTORNEYS  BECAUSE  THE  LAW  ON

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

64

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 64

1  CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.   The following

2  discussion is intended solely for the purpose of alerting readers about basic confirmation issues,

3  which they may wish to consider, as well as certain deadlines for filing Claims.  The Debtors

4  CANNOT and DO NOT represent that the discussion contained below is a complete summary of

5  the law on this topic.

6  Many requirements must be met before the Court can confirm a Plan.  Some of the

7  requirements include that the Plan must be proposed in good faith, acceptance of the Plan,

8  whether the Plan pays Creditors at least as much as Creditors would receive in a Chapter 7

9  liquidation, and whether the Plan is feasible.  These requirements are <u>not</u> the only requirements

10  for confirmation.

11  **A.    Who May Vote Or Object**

12  **1.    Who May Object To Confirmation Of The Plan**

13  Any party in interest may object to the confirmation of the Plan, but as explained below

14  not everyone is entitled to vote to accept or reject the Plan.

15  **2.    Who May Vote To Accept The Plan**

16  A Creditor has a right to vote for or against the Plan if that Creditor has a Claim which is

17  both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

18  **3.    What Is An Allowed Claim**

19  As noted above, a Creditor or interest holder must first have an Allowed Claim or interest

20  to have the right to vote.  Generally, any proof of Claim or interest will be allowed, unless a

21  party in interest brings a motion objecting to the Claim.  When an objection to a Claim or interest

22  is filed, the Creditor or interest holder holding the Claim or interest cannot vote unless the Court,

23  after notice and hearing, either overrules the objection or allows the Claim for voting purposes.

24  **THE BAR DATE FOR FILING A PROOF CLAIM IN THESE BANKRUPTCY**

25  **CASES IS JUNE 14, 2011**.  A Creditor may have an Allowed Claim even if a proof of Claim

26  was not timely filed.  A Claim is deemed allowed if (1) it is scheduled on the Debtors' respective

27  Schedules and such Claim is not scheduled as disputed, contingent, or unliquidated, and (2) no

28  party in interest has objected to the Claim.

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

65

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

**Page 65**

**4.    What Is An Impaired Claim**

As noted above, an Allowed Claim only has the right to vote if it is in a class that is impaired under the Plan.  A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.  For example, a class comprised of general unsecured Creditors is impaired if the Plan fails to pay the members of that class 100% of what they are owed.  In this case, Class 1-A (Bank Group), Class 2(General Unsecured Claims) are impaired under the Plan.

Parties who dispute the Debtors' characterization of their Claim as being impaired or unimpaired may file an objection to the Plan contending that the Debtors have incorrectly characterized their Claim.

**5.    Who Is Not Entitled To Vote**

The following four types of Claims are not entitled to vote: (1) Claims that have been disallowed; (2) Claims in unimpaired classes; (3) Claims entitled to priority pursuant to Code Sections 507(a)(2), 507(a)(3), and 507(a)(8); and (4) Claims in classes that do not receive or retain any value under the Plan.

Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan.  Class 1-B (Secured Claim of Wells Fargo Financial Leasing Manufacturer Services Group against Trade Union, Class 1-C (Secured Claim of Michelin North America Inc. against Trade Union), Class 1-D (Secured Claim of USBancorp against Trade Union) and Class 1-E (Secured Claim of Key Equipment Finance against Trade Union) are each unimpaired and are not entitled to vote on the Plan.

Claims entitled to priority pursuant to Code Sections 507(a)(2), 507(a)(3), and (a)(8) are not entitled to vote because such Claims are not placed in classes and they are required to receive certain treatment specified by the Code.

Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.

EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

66

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

**Page 66**

### 6. <u>Who Can Vote In More Than One Class</u>

A Creditor whose Claim has been allowed in part as a secured Claim and in part as an General Unsecured Claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the Claim and another ballot for the unsecured Claim.

### 7. <u>Votes Necessary To Confirm The Plan</u>

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless that Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed below.

### 8. <u>Votes Necessary For A Class To Accept The Plan</u>

A class of Claims is considered to have accepted the Plan when more than one-half in number and at least two-thirds in dollar amount of the Claims which actually voted, voted in favor of the Plan.

### 9. <u>Treatment Of Non-Accepting Classes</u>

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required by the Code. The process by which non-accepting classes are forced to be bound by the terms of a Plan is commonly referred to as "cramdown." The Code allows the Plan to be "crammed down" on non-accepting classes of Claims if it meets all consensual requirements except the voting requirements of Section 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. Section 1129(b) and applicable case law.

If an impaired class votes against the Plan, confirmation of the Plan is still possible (cramdown) so long as the Plan is fair and equitable and the non-consenting class is afforded certain treatment defined by the Code. That certain treatment may be very broadly defined as giving a claimant the "full value" of his claim. Such value is determined by the Court and balanced against the treatment afforded the dissenting class of creditors. If the latter is equal to or greater than the former, the Plan may be confirmed despite the objection of that dissenting

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

67

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 67

class, depending upon the treatment of junior claims. In particular, senior claims must be satisfied in full prior to payment of junior claims, unless the holder of senior claims agree to different treatment. This principle, commonly known as the "absolute priority rule," applies only in cases when a class of unsecured claims is impaired and does not accept the Plan. In that event, the absolute priority rule does not apply to all classes of unsecured claims, but only to the dissenting class and classes junior to the dissenting class. In the event Class 2 does not consent to the treatment under the Plan, the Debtors believe that they can still confirm the Plan based on the new value contribution being provided by the Interest Holders described above.

**10.    Request For Confirmation Despite Nonacceptance by Impaired Class(es)**

The Debtors will ask the Court to confirm the Plan by cramdown on impaired Classes if such Classes do not vote to accept the Plan.

**B.    Liquidation Analysis**

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a Claimant is in an impaired class and that Claimant does not vote to accept the Plan, then that Claimant must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtors' assets were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, a debtor's assets are usually sold by a Chapter 7 trustee. Secured Creditors are paid first from the sales proceeds of properties on which the secured Creditor has a lien. Administrative Claims are paid next. Next, unsecured Creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured Creditors with the same priority share in proportion to the amount of their Allowed Claim in relationship to the amount of total allowed unsecured Claims.

For the Court to be able to confirm the Plan, the Court must find that all Creditors who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Debtors maintain that this requirement is met here for the following reasons:

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

68

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

1.     In a Chapter 7 case, a trustee is appointed and entitled to compensation from the bankruptcy estate in an amount not to exceed 25% on the first $5,000 of all moneys disbursed, 10% on any amount over $5,000 but less than $50,000, 5% on any amount over $50,000 but not in excess of $1 million, and 3% on all amounts over $1 million.  In this case the trustee's compensation and expenses is estimated to equal at least $450,000.  However, through the Plan, no trustee's compensation will be incurred.

2.     In addition, because the Chapter 7 Trustee will replace the Professionals currently employed by the Estate, the Chapter 7 Trustee's new professionals will burden the Estate with substantial fees to become familiar with the issues of this case. Although these fees are difficult to estimate, they could result in additional administrative expenses of approximately $100,000 more to assist the Trustee in pursuit of the litigation claims of the Estate.  Based upon the foregoing, the estimate for liquidation analysis for the Chapter 7 administrative expenses has been conservatively estimated at $550,000 (Trustee's compensation and expenses plus the compensation and expenses of his professionals).

3.     In a Chapter 7, the full amount of senior Secured Claims would have to be paid before payment to the junior Unsecured Claims.

Under the Best Interests Test, all that is required is for Creditors to receive as much as they would under Chapter 7 of the Bankruptcy Code.  Here, the Debtors believe the Best Interests Test has been met in that under the Plan, Creditors will receive as much as they would receive under a Chapter 7 liquidation.  Moreover, as set forth in the liquidation analysis below, under a Chapter 7 Liquidation, the funds available for Creditors would be less than under the Plan.

Below is a demonstration, in balance sheet format, that all Creditors will receive at least as much under the Plan as such Creditor would receive under a Chapter 7 liquidation.  The information regarding value of the assets has been provided by the Debtors based on their familiarity with the assets.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

69

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 69

# ASSETS VALUED AT LIQUIDATION VALUES

For the purposes of this liquidation analysis, the assets and liabilities of the Debtors have been consolidated.  However, the Plan and Disclosure Statement do not represent an attempt by the Debtors to implement a substantive consolidation of the Debtors' assets and liabilities.

| ASSETS AT LIQUIDATION VALUE | LIQUIDATION VALUE |
|---|---|
| Cash on Hand  (in DIP Accounts on June 30, 2011)<br>Trade Union: $2,808,340.32<br>Duck House: $$95,248.18<br>Total: $2,903,588.50 | $2,903,588.50 |
| Accounts Receivable (as of June 30, 2011)<br>Trade Union: $2,005,115.89<br>Duck House: $583,536.17<br>Total: $2,588,652.06<br>Liquidation Value reflects a 20% reduction due to the costs and difficulty of collection under a liquidation scenario. | $2,070,921.65 |
| Other Liquidated debts owed to the Debtors (as of March 31, 2011)<br>(Gross other accounts , short- and long-term investments made through and owed by Debtors' shareholders)<br>Trade Union: $9,733,454<br>Duck House: $243,783<br>Total: $9,977,237<br>While approximately $10 million was invested through and by the Debtors' shareholders, cash amounts greater than this were infused back into the company through common stock infusions and working capital infusions from the investment subsidiaries in different accounts.  While the asset accounts remain on the books, in the event that the Debtors' cases are converted to a Chapter 7, it is believed that this receivable will be uncollectable as the Debtors' shareholders' income is dependent on the continued operations of the Debtors' businesses and the cash that left the business was already returned in greater amounts.   For investment accounts, it is estimated that approximately $1.7 million will be realized in the sale of the China plant, however under a liquidation scenario the plant would not be viable without a customer and the sale would not close. | $.00 |
| Wheel Specialties, LTD dba Custom Wheels Note owed to Trade Union<br>Balance as of June 30, 2011: $215,448.72<br>Liquidation Value reflects a 20% reduction due to the costs and difficulty of collection under a liquidation scenario. | $172,359 |
| Trade Union Product Brands<br>(Verde Custom Wheels, Black Ice Alloys, Vrock and Topline products)<br>Estimated at $600,000<br>Liquidation Value reflects reduction of 30% due to the costs of a liquidation sale and the anticipated lack of ability to obtain fair market value for the assets under fire sale market conditions | $420,000 |

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

70

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

| ASSETS AT LIQUIDATION VALUE | LIQUIDATION VALUE |
|---|---|
| All fixed assets, office equipment, furnishings, equipment, computers and supplies net of depreciation as of June 30, 2011<br>Trade Union: $815,167.47<br>Duck House: $.00<br>Total: $815,167.47<br>Liquidation Value reflects a 40% reduction due to the costs of a liquidation sale and the anticipated lack of ability to obtain fair market value for the assets under fire sale market conditions. | $489,100.48 |
| Inventory as of June 30, 2011<br>Trade Union: $3,796,742.29<br>Duck House: $1,619,000.07<br>Total: $5,415,742.36<br>Liquidation Value reflects a 70% reduction for liquidation | $1,624,722.71 |
| Recovery From Avoidance Actions | $Unknown |
| Trade Union's stock in other companies:<br>Nantong Trade Union Aluminum Company  - value unknown<br>Nantong Trade Union Chrome Plating Company – value unknown<br>Ju Rong Trade Union Auto Parts Co., Ltd. – value unknown[3]<br><br>Liquidation Value is unknown because the Debtors are not certain that they will be able to sell the land owned by the Ju Ron Trade Union Auto Parts Co. Ltd or realize any value on account of the stock interest in other companies due to their current financial condition and uncertainty regarding the laws of the People's Republic of China..<br><br>A Rule 2015.3 Report (Form 26) on the Trade Union's interest in the foregoing corporations is attached to the Disclosure Statement as Exhibit 5 | $Unknown |
| **Total Assets At Liquidation Value** | $7,680,692.34 |
| **LESS LIABILITIES IN CHAPTER 7 CASE** | |
| Less recovery for Secured Creditors: | ($11,518,00) |
| Less Chapter 7 trustee's fees and expenses | ($550,000) |

---

[3]  Ju Rong Trade Union Auto Parts Co., Ltd. is the owner of the approximately 20 acres of raw land located in Ju Rong Jiang Su  Province China.   The value of the land is unknown.  Ju Rong Trade Union Auto Parts Co., Ltd. has an asset receivable of approximately $1,500,000.  The value of the Debtor's ownership in Ju Rong Co. is unknown.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

71

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

| ASSETS AT LIQUIDATION VALUE | LIQUIDATION VALUE |
|---|---|
| Less Chapter 11 Administrative Expenses | ($257,700) |

| | |
|---|---|
| Shulman Hodges & Bastian LLP | $150,000 |
| Tatum LLC, a division of SFN Professional Services | $20,000 |
| J. Lan, CPA, Inc. | $37,000 |
| Winthrop Couchot PC and Corporate Recovery Associates | $50,000 |
| Clerk, Bankruptcy Court Fees | $200 |
| Unpaid United States Trustee Fees | $500 |
| Total | $257,700 |

| ASSETS AT LIQUIDATION VALUE | LIQUIDATION VALUE |
|---|---|
| Less Priority Tax Claims | ($.00) |
| **(1) Balance for unsecured Claims** | $.00 |
| **(2) Total amount of Unsecured Claims** (estimated)<br>Trade Union: $8,370,833.63<br>Duck House:$977,883.25<br>Total: $9,348,716.88<br><br>Impact of the sale of the Nantong Stock on Unsecured Claims against the Estates:  Under the proposed sale of the Nantong Stock  described in Section III.D.1., of the Disclosure Statement, Unsecured Claims against the Estates totaling approximately $9,070,795 will be resolved and if not, then such Unsecured Claims of insiders and affiliates will be subordinated. Thus, under the Plan, after taking into consideration payments made on certain Claims during the case pursuant to prior Court orders, and the closing on the sale of  the Nantong Stock, the Unsecured Claims are estimated to be approximately $893,646 as follows:<br>Trade Union:  $727,633<br>Duck House:  $166,013<br>Total : $893,646 | $893,646 |
| **% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CHAPTER 7 LIQUIDATION:**[4] | 00% |
| **% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THIS PLAN:** | **Up to 84% depending on Allowed Claim amounts compared to total cash to be disbursed to Class 2** |

---

[4]    Note: If this percentage is greater than the amount to be paid to the unsecured Creditors on a "present value basis" under the Plan, the Plan is not confirmable unless the Debtor obtain acceptance by every Creditors in an impaired class.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

72

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Below is a demonstration, in tabular format, that all Creditors will receive at least as much under the Plan as such Creditor would receive under a Chapter 7 liquidation.

| Claims and Classes | Payout Percentage Under the Plan | Payout Percentage in a Chapter 7 Liquidation |
|---|---|---|
| Administrative Claims | 100% | 100% |
| Classes 1-A though 1-C Secured Claims | 100% | 100% |
| | | |
| Class2General Unsecured Claims | Up to 84% | 0% |

Creditors receive more favorable treatment under the Plan.  In a Chapter 7, the process of liquidating the assets would be prolonged due to the inherent nature of the Chapter 7 administrative procedures.  As such, no distribution on Allowed Claims could be made until all litigation claims of the Estate had been reduced to cash <u>and</u> the Allowed Unsecured Claim of Creditors have been determined.  Moreover, a Chapter 7 trustee could face difficulties in marketing and selling assets with which the Debtors are already familiar and in litigating against parties with which the Debtors are already familiar.  Payment to the holders of an Allowed General Unsecured Claims in Chapter 7 will likely take several years.

Under the Plan, holders of Allowed General Unsecured Claims will receive up to 50% of their Allowed Claim amount.  Thus, the holders of Allowed General Unsecured Claims are better off under the Plan than if this case is converted to one under Chapter 7.

**C.     <u>Feasibility</u>**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis.  The first aspect considers whether the Debtors will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses which are entitled to be paid on such date.  The Debtors maintain that this aspect of feasibility is satisfied as illustrated here:

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

73

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

**Page 73**

| Cash Debtors will have on hand by Effective Date | | $3,022,774.50 |
|---|---|---|
| To Pay: Chapter 11 Administrative Claims (estimated open amounts on the effective date) | | ($257,700) |

| Shulman Hodges & Bastian LLP | $150,000 |
|---|---|
| Tatum LLC, a division of SFN Professional Services | $20,000 |
| J. Lan,CPA, Inc. | $37,000 |
| Winthrop Couchot PC and Corporate Recovery Associates | $50,000 |
| Clerk, Bankruptcy Court Fees | $200 |
| Unpaid United States Trustee Fees | $500 |
| Total | $257,700 |

| To Pay: Effective Date Payment to the Bank Group | ($2,000,000) |
|---|---|
| To Pay: Priority Tax Claims | ($.00) |
| To Pay: Convenience Class Claims<br>To be Determined but Estimated herein at $20,000 | ($20,000) |
| Balance after paying these amounts | $745,074.50 |

The sources of the cash the Debtors will have on hand by the Effective Date, as shown above are:

| Cash in DIP Accounts as of June 30, 2011<br>Trade Union: $2,808,340.32<br>Duck House: $95,248.18<br>Total: $2,903,588.50 | $2,903,588.50 |
|---|---|
| Additional Cash to be accumulate through the Effective Date<br>From regular business operations<br>(estimated end of August after collections and normal expenses)<br>Trade Union: $111,348 (estimated)<br>Duck House: $7,838(estimated)<br>Total: $119,186 (estimated) | $119,186 |
| Total end of September (estimate) | $3,022,774.50 |

The second aspect considers whether the Debtors will have enough cash over the life of the Plan to make the required Plan payments. The Debtors contend they will have sufficient cash over the life of the Plan to make the required payments, and in support of this, has provided **Exhibit 1** the Disclosure Statement which include projected financial information for the life of the Plan.    YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

74

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

**Page 74**

1    FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE

2    FINANCIAL STATEMENTS.

3          In summary, the Plan provides for payment of all Allowed Secured Claims and provides

4    for a substantial Distribution on all Allowed Unsecured Claims.  As the financial projections

5    demonstrate, the Debtors will have sufficient cash flow for the life of the Plan.  The Debtors

6    contend the projections are feasible.

7                          VI.    **EFFECT OF CONFIRMATION OF THE PLAN**

8    **A.    Discharge**

9          To the extent specified in Bankruptcy Code Section 1141, the Debtors shall be discharged

10   of liability for payment of debts incurred before confirmation of the Plan.  However, the

11   discharge will not discharge any liability imposed by the Plan.

12   **B.    Exculpation**

13         Upon the occurrence of the Effective Date, the Debtors, the Reorganized Debtors, and

14   their agents and professionals (including counsel to the Debtors) shall be deemed to have no

15   liability for any act or omission in connection with, or arising out of, the pursuit of approval of

16   the Disclosure Statement, the solicitation of votes for confirmation of the Plan, for violation of

17   any applicable law, rule or regulation governing solicitation of acceptance or rejection of the

18   Plan or the offer, issuance, sale, or purchase of securities offered or sold under the Plan.  As of

19   the Effective Date, and without the necessity of any further act, the  holders of Claims against the

20   Debtors that receive a Distribution under the Plan (collectively the "Releasors") shall be deemed

21   to release and waive any and all Claims, liabilities, and causes of action, of any kind, nature or

22   description, whether matured or unmatured, contingent or absolute, liquidated or unliquidated,

23   relating to the Debtors or their Estates, that any of the Releasors had or through the Effective

24   Date against Debtors and their Estates (collectively the "Releasees") including, those arising

25   under the Bankruptcy Code and non-bankruptcy law, and any subordination, alter ego,

26   indemnification or contribution theories of recovery, and interest or other costs, penalties, legal,

27   accounting and other professional fees and expenses, and incidental, consequential and punitive

28   damages payable to third parties to the fullest extent permitted by applicable law.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

75

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

Page 75

1    Notwithstanding the foregoing, nothing herein shall release the Reorganized Debtors

2  from their duties under the Plan.

3  **C.    Revesting of Property in the Debtors**

4    Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the

5  property of the respective Estates in the respective Debtors subject to the Allowed Secured

6  Claims of the Bank Group. After the Confirmation Date, the sale of any property owned by the

7  Debtors shall not be subject to or require Court approval.

8    Except as set forth in the Plan and in the Bank Group settlement and financing documents

9  attached as Exhibit 4 to the contrary, on the Effective Date, the property of the Estate will vest in

10  the Reorganized Debtors, free and clear of any Claims, liens, encumbrances, or interests of

11  Creditors, Interest Holders, parties-in-interest, and other entities.

12    From and after the Effective Date, the Reorganized Debtors may acquire, and dispose of

13  property and settle and compromise claims without supervision by the Bankruptcy Court and

14  free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than restrictions

15  expressly imposed by the Plan, the Confirmation Order, and any document, agreement, or

16  instrument delivered in connection therewith including those attached as Exhibit 4.

17    Except as otherwise provided in the Plan or in the Confirmation Order, the rights

18  afforded in the Plan and the treatment of all Claims in the Plan will be in exchange for and in

19  complete satisfaction, discharge, and release of all Claims (including Administrative Claims and

20  any interest accrued on any Claim from and after the Petition Date) against the Debtors and any

21  of its assets and properties.

22  **D.    Conditions Precedent to Confirmation**

23    Unless otherwise waived by the Debtors, conditions to confirmation of the Plan include

24  entry of the Confirmation Order in a form acceptable to the Debtors that provides for, among

25  other things, the following:  (1) Approval of all transactions, agreements and documents to be

26  effected pursuant to the Plan; (2) Authorization of the Debtors to execute all documents

27  reasonably necessary to effectuate the transfers contemplated by the Plan; (3) Approval of the

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

76

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

**Page 76**

1    releases, injunctions, and exculpations granted in the Plan; (4) a finding that the Plan complies

2    with all applicable provisions of the Code including that the Plan was proposed in good faith.

3    **E.    Modification of the Plan**

4            The Debtors may modify the Plan at any time before confirmation.  However, the Court

5    may require a new disclosure statement and/or re-voting on the Plan.

6            The Debtors and/or the Disbursing Agent may also seek to modify the Plan at any time

7    after confirmation only if (1) the Plan has not been substantially consummated <u>and</u> (2) the

8    Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

9            If the Bankruptcy Court determines that a post-confirmation modification of the Plan is in

10   the best interest of the Estate and the Creditors, even after substantial consummation of the Plan,

11   then, notwithstanding the provisions of Section 1127(b) of the Bankruptcy Code, the Bankruptcy

12   Court may authorize such modification of the Plan, after notice and a hearing, in such manner

13   and under such conditions, as the Bankruptcy Court deems appropriate.

14   **F.    Post-Confirmation Status Reports**

15           Within 120 days of the entry of the order confirming the Plan, the Disbursing Agent shall

16   file a status report with the Bankruptcy Court explaining what progress has been made toward

17   consummation of the confirmed Plan.  The status report shall be served on the United States

18   Trustee, the twenty largest unsecured Creditors, and those parties who have requested special

19   notice.  Further status reports shall be filed every 120 days and served on the same entities.

20   **G.    Post-Confirmation Conversion/Dismissal**

21           A Creditor or party in interest may bring a motion to convert or dismiss the case under

22   Section 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the

23   Bankruptcy Court orders the case converted to Chapter 7 after the Plan is confirmed, then all

24   property that had been property of the Chapter 11 Estate, and that has not been disbursed

25   pursuant to the Plan, will revest in the Chapter 7 estate.  The automatic stay will be reimposed

26   upon the revested property, but only to the extent that relief from stay was not previously

27   authorized by the Court during this case.

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

77

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

**Page 77**

1    The order confirming the Plan may also be revoked under very limited circumstances.

2  The Court may revoke the order if the order of confirmation was procured by fraud and if a party

3  in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry

4  of the order of confirmation.

5  **H.**    **Substantial Consummation**

6    Upon the Effective Date and payment of the first Distribution to Allowed General

7  Unsecured Claims, the Plan will be deemed substantially consummated under Bankruptcy Code

8  sections 1101 and 1127(b).

9

10

11  Dated: August 4, 2011

12

13                                    **TRADE UNION INTERNATIONAL, INC.,**
                                      **a California corporation**

14                                    **DUCK HOUSE, INC.,**
                                      **a California corporation**

15

16    /s/ Wen Pin Chang

17    Wen Pin Chang, President

18

19  **SHULMAN HODGES & BASTIAN LLP**

20

21    /s/ James C. Bastian, Jr.

22    James. C. Bastian, Jr.
      Insolvency Counsel for
      Trade Union International, Inc., and
23    Duck House, Inc.,
      the Debtors and Debtors in Possession

24

25

26

27

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

78

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended -Trade and Duck Combined v3 cln.doc

# DECLARATION

## DECLARATION OF WEN PIN CHANG

I, Wen Pin Chang, declare as follows:

1.      I am the President of Trade Union International, Inc., a California corporation ("Trade Union"), and Duck House, Inc., a California corporation ("Duck House"), each a debtor and debtor in possession (collectively the "Debtors"), and am one of the persons responsible for the administration of the Debtors. I have personal knowledge of the facts set forth herein and could, if called as a witness, competently testify thereto. I am also personally familiar with, and am custodian of, the records of the Debtors as they pertain to the financial records set forth herein. The records of the Debtors are made by employees or agents of the Debtors who report to me and who have a business duty to enter the records of the Debtors accurately and at or near the time of the event which they record.

2.      I make this declaration in support of the a motion for approval of the Debtors' First Amended Disclosure Statement Describing Debtors' First Amended Chapter 11 Reorganization Plan ("Disclosure Statement"). I have personal knowledge of the matters set forth in this Declaration and if called upon to testify, I could and would testify competently thereto.

3.      I have read the Disclosure Statement and, to the best of my knowledge, all of the information contained therein is true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 4, 2011, at Chino, California.


/s/ Wen Pin Chang
_____
Wen Pin Chang

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

4265-000\16
Z:\S-T\Trade Union International\Plan and DS\DS First Amended - Trade and Duck Combined v3 cln.doc

# EXHIBIT 1

# Financial Projections

# Exhibit 1

# Trade Union Group
# 5-Year Business Plan / Projections
# **Restructured Bank Debt Plan**
# 2011 – 2016

## August 4, 2011

**EXHIBIT 1, PAGE 1**

# Contents

A.  5 Year Plan Summary

B.  5 Year Growth Feasibility

C.  2010 to 2011 Bridge

D.  2011 Feasibility vs. 2003

E.  2011 to 2016 5-Year Monthly P&L Projections

F.  Summary of Debt Restructuring

G.  2011 to 2016 5-Year Monthly Debt and Revolver Roll-Forward

**EXHIBIT 1, PAGE 2**

# A. 5 Year Plan Summary

## With 8 Years of History

| In $Millions | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales | 17.2 | 22.6 | 30.5 | 44.7 | 51.7 | 46.2 | 30.7 | 38.5 | 17.1 | 19.0 | 22.0 | 24.0 | 27.0 |
| COGS | 11.5 | 15.6 | 21.8 | 33.0 | 37.4 | 34.3 | 23.3 | 30.8 | 11.2 | 12.7 | 14.6 | 15.9 | 17.9 |
| Gross Profit | 5.7 | 7.0 | 8.7 | 11.7 | 14.3 | 11.9 | 7.4 | 7.7 | 5.8 | 6.3 | 7.4 | 8.1 | 9.1 |
| *GP%* | *33%* | *31%* | *29%* | *26%* | *28%* | *26%* | *24%* | *20%* | *34%* | *34%* | *34%* | *34%* | *34%* |
| Selling | 1.5 | 1.7 | 2.1 | 2.8 | 3.4 | 3.1 | 2.4 | 2.6 | 1.5 | 1.7 | 2.0 | 2.1 | 2.4 |
| Shipping | 0.5 | 0.7 | 0.8 | 1.0 | 2.0 | 0.9 | 0.7 | 0.7 | 0.7 | 0.7 | 0.9 | 1.0 | 1.1 |
| G&A w/o int. | 3.1 | 4.0 | 4.4 | 5.9 | 6.7 | 6.2 | 5.4 | 4.6 | 2.8 | 3.0 | 3.2 | 3.4 | 3.7 |
| Total Expense | 5.1 | 6.4 | 7.3 | 9.7 | 12.1 | 10.2 | 8.5 | 7.9 | 5.0 | 5.4 | 6.1 | 6.5 | 7.2 |
| **Ongoing EBIT** | **0.6** | **0.6** | **1.4** | **2.0** | **2.2** | **1.7** | **(1.1)** | **(0.2)** | **0.8** | **0.9** | **1.3** | **1.6** | **1.9** |
| | | | | | | | | | | | | | |
| **Bank Debt** | **5.4** | **6.8** | **11.2** | **17.7** | **18.8** | **19.5** | **16.8** | **13.3** | **9.0** | **7.0** | **6.9** | **6.3** | **5.7** |

Ongoing EBIT Excludes One-Time Charges and Restructuring for consistency

2003 – 2008 – Ongoing growth and profitability

2009 – 2010 – Global economic crisis impact

2011 – Rationalize product lines and cost reductions

Ongoing debt reduction with cash pay down, deals and operations

**EXHIBIT 1, PAGE 3**

# B. 5 Year Growth Feasibility

## With Comparison to Prior 8 Years

| In $Millions | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales | 17.2 | 22.6 | 30.5 | 44.7 | 51.7 | 46.2 | 30.7 | 38.5 | 17.0 | 19.0 | 22.0 | 24.0 | 27.0 |
| **Sales Growth** | | | | | | | | | | | | | |
| Year-over-Year Growth | | 31% | 35% | 47% | 16% | -11% | -34% | 25% | -56% | 12% | 16% | 9% | 13% |
| Average Growth | | | 32% | | | -6% | | | -56% | 12% | | | |

Product
Reduction

- 2003 to 2007 – Average 32% Growth
- 2008 to 2010 – Average 6% Decline – coming back in 2010
- 2011 (see 2010 to 2011 Bridge):
  - Exit $15.5 million contract product line
  - Supply chain working capital issues from rapid debt pay down
  - Cut all advertising and sales expenses
  - Sought bankruptcy protection to rebuild its supply chain and continue operations…supply chain interruptions had significant volume impact
- Mid-2011 to 2015:
  - Supply chain issues resolved
  - Growth rate at 1/3 levels of 2003 - 2007

## EXHIBIT 1, PAGE 4

# C. 2010 to 2011 Bridge

| In $Millions | 2010 | Exit Contract Products | All Other Impacts | 2011 |
|---|---|---|---|---|
| Sales | 38.5 | (15.5) | (5.9) | 17.1 |
| COGS | 30.8 | (14.6) | (5.0) | 11.2 |
| Gross Profit | 7.7 | (0.9) | (1.0) | 5.8 |
| *GP%* | *20%* | *6%* | *8%* | *34%* |
| Selling | 2.6 | (0.3) | (0.8) | 1.5 |
| Shipping | 0.7 | - | - | 0.7 |
| Gen & Admin. | 4.6 | - | (1.8) | 2.8 |
| Total Expense | 7.9 | (0.3) | (2.6) | 5.0 |
| **Ongoing EBIT (Cash)** | **(0.2)** | | *1.0* | **0.8** |
| Restructuring Chgs. | 1.9 | | (1.3) | 0.6 |
| Interest | 1.0 | | (0.5) | 0.5 |
| Operating Income | (3.1) | | *2.8* | (0.3) |

- Sales:
  - Company exited $15.5 million contract products business
  - All other impacts:
    - Supply chain interruptions
    - Additional product rationalizations
    - Reduction in advertising and sales
- Costs:
  - Elimination of contract selling expenses of $0.3 million
  - Decrease in advertising and volume related selling costs of $0.8 million
  - Decrease in salaries and personnel and reduction in real estate holdings driving most of $1.8 million decrease in general and administrative costs

## EXHIBIT 1, PAGE 5

# D. 2011 Feasibility vs. 2003

| In $Millions | 2003 | Change vs. 2003 | 2011 |
|---|---|---|---|
| Sales | 17.2 | (0.1) | 17.1 |
| COGS | 11.5 | (0.3) | 11.2 |
| Gross Profit | 5.7 | 0.1 | 5.8 |
| GP% | 33% | 1% | 34% |
| Selling | 1.5 | - | 1.5 |
| Shipping | 0.5 | 0.2 | 0.7 |
| Gen & Admin. | 3.1 | (0.3) | 2.8 |
| Total Expense | 5.1 | (0.1) | 5.0 |
| **Ongoing EBIT (Cash)** | **0.6** | 0.2 | **0.8** |
| Restructuring Chgs. | | 0.6 | 0.6 |
| Interest | 0.3 | 0.2 | 0.5 |
| Operating Income | 0.3 | (0.6) | (0.3) |

- Company also had $17 million in sales in 2003
  - In late 2010, there was a price increase, hence better margins
- Expenses projected for 2011 very similar, but:
  - Fuel and shipping expenses higher
  - Reduction in salaries for senior management
- EBIT or Cash Generation roughly the same
- Restructuring, legal, consulting and administrative temporary
- Interest in process of being reduced by further debt repayments

**EXHIBIT 1, PAGE 6**

# E1. 2011 P&L Projections

| Same P&L Forecast | | | | | | | | | | | | | | Post-Pet. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Operating P&L | Actual | Actual | Actual | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Feb - Dec |
| In $000s | January | February | March | April | May | June | July | Aug | Sept | Oct | Nov | Dec | 12 Months | 11 Months |
| Sales Fcst | 1,922 | 1,360 | 1,017 | 1,200 | 1,505 | 1,545 | 1,730 | 1,430 | 1,511 | 1,269 | 1,255 | 1,307 | 17,051 | 15,129 |
| Total COGs | (1,327) | (891) | (671) | (817) | (1,049) | (1,030) | (1,127) | (900) | (948) | (792) | (807) | (857) | (11,216) | (9,889) |
| GP B4 Selling & Shipping | 595 | 469 | 346 | 383 | 456 | 515 | 603 | 530 | 563 | 477 | 448 | 450 | 5,835 | 5,240 |
| Gross Profit % | 31% | 34% | 34% | 32% | 30% | 33% | 35% | 37% | 37% | 38% | 36% | 34% | 34.2% | 34.6% |
| Selling - Royalty, Com | 284 | 53 | 38 | 80 | 80 | 126 | 161 | 161 | 172 | 149 | 126 | 115 | 1,547 | 1,263 |
| Shipping | 97 | 21 | 32 | 52 | 66 | 55 | 70 | 57 | 60 | 48 | 50 | 51 | 660 | 562 |
| Profit after selling/shipping | 213 | 394 | 276 | 251 | 310 | 334 | 372 | 312 | 331 | 279 | 272 | 283 | 3,628 | 3,415 |
| General and Adm. Exp. | 424 | 133 | 241 | 228 | 228 | 228 | 228 | 228 | 253 | 228 | 228 | 228 | 2,872 | 2,448 |
| Ongoing EBIT | (211) | 261 | 35 | 23 | 82 | 106 | 145 | 85 | 79 | 51 | 45 | 56 | 757 | 968 |
| Legal, Consult, Trustee | - | 25 | 31 | 40 | 30 | 52 | 55 | 48 | 3 | - | - | 3 | 287 | 287 |
| Restructuring/One-time | 269 | - | - | - | - | - | - | - | - | - | - | - | 269 | - |
| Interest Service Est | 41 | 51 | 55 | 51 | 51 | 51 | 40 | 39 | 39 | 40 | 38 | 38 | 534 | 493 |
| Earnings Before Taxes | (521) | 185 | (51) | (68) | 1 | 3 | 50 | (2) | 37 | 11 | 6 | 15 | (333) | 188 |

- 11 Month post petition months profitable and able to cover interest and projected administrative expenses
- Supply chain issues drove temporary dip in sales largely in March, with replenishment of inventory in April and May taking sales back (note: March back-orders of $3 million)
- From January to February:
  - Drop in lower margin product sales
  - Significant reduction in selling, general and administrative expenses – drop in personnel, lower senior management salaries, sale of property with reduction in carrying costs
- February, March and April – Some impact of historic "cash" accounting system, recognizing certain expenses like payroll and insurance when actually paid
- Going forward, more accrual based accounting introduced for more even flow of ongoing expenses
- The new bank financing and a pay down was expected between July and September, with a payoff and resulting lower interest

**EXHIBIT 1, PAGE 7**

# E2. 2012 P&L Projections

| Operating P&L<br>In $000s | Fcst<br>Jan | Fcst<br>Feb | Fcst<br>Mar | Fcst<br>April | Fcst<br>May | Fcst<br>June | Fcst<br>July | Fcst<br>Aug | Fcst<br>Sept | Fcst<br>Oct | Fcst<br>Nov | Fcst<br>Dec | Fcst<br>12 Months |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales Fcst | 1,720 | 1,420 | 1,400 | 1,450 | 1,450 | 1,720 | 1,830 | 1,740 | 1,715 | 1,555 | 1,485 | 1,495 | 18,980 |
| Total COGs | (1,185) | (986) | (983) | (1,007) | (1,007) | (1,144) | (1,185) | (1,118) | (1,086) | (996) | (962) | (990) | (12,651) |
| GP B4 Selling & Shipping | 535 | 434 | 417 | 443 | 443 | 576 | 645 | 622 | 629 | 559 | 523 | 505 | 6,329 |
| Gross Profit % | 31% | 31% | 30% | 31% | 31% | 33% | 35% | 36% | 37% | 36% | 35% | 34% | 33.3% |
| Selling - Royalty, Com | 121 | 98 | 87 | 98 | 98 | 156 | 193 | 193 | 204 | 179 | 163 | 144 | 1,734 |
| Shipping | 65 | 54 | 53 | 55 | 55 | 65 | 70 | 66 | 65 | 59 | 56 | 57 | 721 |
| Profit after selling/shipping | 348 | 281 | 277 | 289 | 289 | 354 | 383 | 364 | 360 | 321 | 304 | 304 | 3,874 |
| General and Adm. Exp. | 248 | 248 | 248 | 248 | 248 | 248 | 248 | 248 | 248 | 248 | 248 | 248 | 2,980 |
| Ongoing EBIT | 100 | 33 | 29 | 41 | 41 | 106 | 134 | 115 | 111 | 73 | 56 | 55 | 894 |
| Legal, Consult, Trustee | - | - | 3 | - | - | 3 | - | - | 3 | - | - | 3 | 12 |
| Restructuring/One-time | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Interest Service Est | 38 | 39 | 33 | 34 | 33 | 31 | 32 | 32 | 32 | 32 | 32 | 31 | 399 |
| Earnings Before Taxes | 62 | (6) | (7) | 7 | 8 | 72 | 102 | 83 | 76 | 41 | 24 | 21 | 483 |

- 2012 Reflects a more normalized sales flow month by month
- Gross margins are lower in the first half of the year due to a lower mix of Duck House sales, which have higher gross margins
- Selling, Royalty and Commissions are largely from Duck House and are also lower in the first half of the year due to a lower mix of Duck House sales
- Shipping expenses (excluding the exited contract sales) is generally about 3 or 4% of sales, and the model assumes 4%
- During 2011, the company drastically reduced advertising, catalogue and other sales related expenses.  The increased expenses over 2011 is largely from printing up-to-date catalogues, a (reduced) presence in trade magazines and an additional sales person
- NOTE:  An additional $1.5 million (estimated) debt reduction is expected in February, thus reducing interest expense

**EXHIBIT 1, PAGE 8**

# E3. 2013 P&L Projections

| Operating P&L In $000s | Fcst Jan | Fcst Feb | Fcst Mar | Fcst April | Fcst May | Fcst June | Fcst July | Fcst Aug | Fcst Sept | Fcst Oct | Fcst Nov | Fcst Dec | Fcst 12 Months |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales Fcst | 1,992 | 1,644 | 1,621 | 1,679 | 1,679 | 1,992 | 2,119 | 2,015 | 1,986 | 1,801 | 1,719 | 1,731 | 21,977 |
| Total COGs | (1,366) | (1,136) | (1,136) | (1,162) | (1,160) | (1,318) | (1,368) | (1,289) | (1,255) | (1,152) | (1,111) | (1,139) | (14,594) |
| GP B4 Selling & Shipping | 625 | 508 | 485 | 517 | 519 | 673 | 751 | 725 | 731 | 648 | 609 | 592 | 7,383 |
| Gross Profit % | 31% | 31% | 30% | 31% | 31% | 34% | 35% | 36% | 37% | 36% | 35% | 34% | 33.6% |
| Selling - Royalty, Com | 141 | 114 | 101 | 114 | 114 | 180 | 223 | 223 | 236 | 207 | 188 | 167 | 2,008 |
| Shipping | 78 | 64 | 63 | 65 | 65 | 78 | 83 | 79 | 77 | 70 | 67 | 68 | 857 |
| Profit after selling/shipping | 407 | 330 | 321 | 338 | 339 | 415 | 446 | 424 | 417 | 371 | 353 | 357 | 4,518 |
| General and Adm. Exp. | 266 | 266 | 266 | 266 | 266 | 266 | 266 | 266 | 266 | 266 | 266 | 266 | 3,190 |
| Ongoing EBIT | 141 | 64 | 55 | 72 | 74 | 149 | 180 | 158 | 151 | 105 | 87 | 92 | 1,328 |
| Legal, Consult, Trustee | - | - | 3 | - | - | 3 | - | - | 3 | - | - | 3 | 12 |
| Restructuring/One-time | - | - | - | - | - | - | - | - | - | - | - | - | |
| Interest Service Est | 30 | 31 | 32 | 32 | 31 | 30 | 30 | 32 | 31 | 30 | 30 | 30 | 368 |
| Earnings Before Taxes | 111 | 33 | 20 | 40 | 42 | 116 | 149 | 126 | 118 | 75 | 58 | 59 | 948 |

- 2013 reflects an additional $0.2 million in general and administrative expenses over 2012 for inflation and increases in volume
- Other changes in selling and shipping, volume related
- In September of 2013, the cash generated from the business is expected to be consistent enough to begin amortization of remaining debt on a monthly basis

**EXHIBIT 1, PAGE 9**

# E4. 2014 P&L Projections

| Operating P&L<br>In $000s | Fcst<br>Jan | Fcst<br>Feb | Fcst<br>Mar | Fcst<br>April | Fcst<br>May | Fcst<br>June | Fcst<br>July | Fcst<br>Aug | Fcst<br>Sept | Fcst<br>Oct | Fcst<br>Nov | Fcst<br>Dec | Fcst<br>12 Months |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales Fcst | 2,173 | 1,794 | 1,768 | 1,832 | 1,832 | 2,173 | 2,312 | 2,198 | 2,166 | 1,964 | 1,876 | 1,888 | 23,975 |
| Total COGs | (1,477) | (1,236) | (1,236) | (1,264) | (1,266) | (1,434) | (1,486) | (1,407) | (1,369) | (1,257) | (1,212) | (1,243) | (15,886) |
| GP B4 Selling & Shipping | 695 | 558 | 532 | 568 | 566 | 739 | 825 | 791 | 797 | 707 | 664 | 646 | 8,088 |
| Gross Profit % | 32% | 31% | 30% | 31% | 31% | 34% | 36% | 36% | 37% | 36% | 35% | 34% | 33.7% |
| Selling - Royalty, Com | 153 | 124 | 110 | 124 | 124 | 197 | 243 | 243 | 258 | 226 | 206 | 182 | 2,190 |
| Shipping | 85 | 70 | 69 | 71 | 71 | 85 | 90 | 86 | 84 | 77 | 73 | 74 | 935 |
| Profit after selling/shipping | 457 | 364 | 354 | 372 | 370 | 457 | 492 | 462 | 455 | 405 | 385 | 390 | 4,963 |
| General and Adm. Exp. | 283 | 283 | 283 | 283 | 283 | 283 | 283 | 283 | 283 | 283 | 283 | 283 | 3,390 |
| Ongoing EBIT | 175 | 81 | 71 | 90 | 88 | 175 | 209 | 180 | 172 | 122 | 103 | 107 | 1,573 |
| Legal, Consult, Trustee | - | - | 3 | - | - | 3 | - | - | 3 | - | - | 3 | 12 |
| Restructuring/One-time | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Interest Service Est | 30 | 30 | 30 | 30 | 29 | 27 | 27 | 28 | 29 | 28 | 28 | 27 | 342 |
| Earnings Before Taxes | 145 | 51 | 38 | 59 | 59 | 145 | 183 | 152 | 140 | 94 | 75 | 78 | 1,219 |

**EXHIBIT 1, PAGE 10**

# E5. 2015 P&L Projections

| Operating P&L In $000s | Fcst Jan | Fcst Feb | Fcst Mar | Fcst April | Fcst May | Fcst June | Fcst July | Fcst Aug | Fcst Sept | Fcst Oct | Fcst Nov | Fcst Dec | Fcst 12 Months |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales Fcst | 2,444 | 2,018 | 1,989 | 2,061 | 2,061 | 2,444 | 2,601 | 2,473 | 2,437 | 2,210 | 2,110 | 2,124 | 26,972 |
| Total COGs | (1,662) | (1,390) | (1,391) | (1,422) | (1,424) | (1,613) | (1,672) | (1,582) | (1,540) | (1,414) | (1,363) | (1,398) | (17,872) |
| GP B4 Selling & Shipping | 782 | 628 | 599 | 639 | 637 | 831 | 928 | 890 | 897 | 796 | 747 | 727 | 9,100 |
| Gross Profit % | 32% | 31% | 30% | 31% | 31% | 34% | 36% | 36% | 37% | 36% | 35% | 34% | 33.7% |
| Selling - Royalty, Com | 172 | 140 | 123 | 140 | 140 | 221 | 274 | 274 | 290 | 254 | 231 | 205 | 2,464 |
| Shipping | 95 | 79 | 78 | 80 | 80 | 95 | 101 | 96 | 95 | 86 | 82 | 83 | 1,052 |
| Profit after selling/shipping | 514 | 409 | 398 | 419 | 417 | 514 | 553 | 520 | 512 | 455 | 434 | 439 | 5,583 |
| General and Adm. Exp. | 308 | 308 | 308 | 308 | 308 | 308 | 308 | 308 | 308 | 308 | 308 | 308 | 3,690 |
| Ongoing EBIT | 207 | 102 | 90 | 111 | 109 | 207 | 246 | 213 | 204 | 148 | 126 | 131 | 1,893 |
| Legal, Consult, Trustee | - | - | 3 | - | - | 3 | - | - | 3 | - | - | 3 | 12 |
| Restructuring/One-time | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Interest Service Est | 27 | 27 | 27 | 28 | 27 | 25 | 25 | 26 | 27 | 25 | 24 | 23 | 311 |
| Earnings Before Taxes | 180 | 75 | 60 | 83 | 82 | 179 | 221 | 186 | 175 | 123 | 102 | 105 | 1,571 |

# EXHIBIT 1, PAGE 11

# E6. 2016 P&L Projections

| Operating P&L<br>In $000s | Fcst<br>Jan | Fcst<br>Feb | Fcst<br>Mar | Fcst<br>April | Fcst<br>May | Fcst<br>June | Fcst<br>July | Fcst<br>Aug | Fcst<br>Sept | Fcst<br>Oct | Fcst<br>Nov | Fcst<br>Dec | Fcst<br>12 Months |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales Fcst | 2,444 | 2,018 | 1,989 | 2,061 | 2,061 | 2,444 | 2,601 | 2,473 | 2,437 | 2,210 | 2,110 | 2,124 | 26,972 |
| Total COGs | (1,662) | (1,390) | (1,391) | (1,422) | (1,424) | (1,613) | (1,672) | (1,582) | (1,540) | (1,414) | (1,363) | (1,398) | (17,872) |
| GP B4 Selling & Shipping | 782 | 628 | 599 | 639 | 637 | 831 | 928 | 890 | 897 | 796 | 747 | 727 | 9,100 |
| Gross Profit % | 32% | 31% | 30% | 31% | 31% | 34% | 36% | 36% | 37% | 36% | 35% | 34% | 33.7% |
| Selling - Royalty, Com | 172 | 140 | 123 | 140 | 140 | 221 | 274 | 274 | 290 | 254 | 231 | 205 | 2,464 |
| Shipping | 95 | 79 | 78 | 80 | 80 | 95 | 101 | 96 | 95 | 86 | 82 | 83 | 1,052 |
| Profit after selling/shipping | 514 | 409 | 398 | 419 | 417 | 514 | 553 | 520 | 512 | 455 | 434 | 439 | 5,583 |
| General and Adm. Exp. | 308 | 308 | 308 | 308 | 308 | 308 | 308 | 308 | 308 | 308 | 308 | 308 | 3,690 |
| Ongoing EBIT | 207 | 102 | 90 | 111 | 109 | 207 | 246 | 213 | 204 | 148 | 126 | 131 | 1,893 |
| Legal, Consult, Trustee | - | - | 3 | - | - | 3 | - | - | 3 | - | - | 3 | 12 |
| Restructuring/One-time | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Interest Service Est | 24 | 19 | 19 | 20 | 20 | 17 | 17 | 18 | 19 | 17 | 16 | 15 | 221 |
| Earnings Before Taxes | 183 | 82 | 68 | 91 | 89 | 187 | 229 | 194 | 183 | 131 | 110 | 113 | 1,660 |

- 2016 conservatively held flat to 2015 as it is the planned time-frame to arrange for a new financing and management expects to be focused on that effort.
- Cash generation in 2015 and 2016 is also expected to be large enough for another reduction in debt along with the refinancing.

**EXHIBIT 1, PAGE 12**

# F. Summary of Plan B Revised Debt Restructuring

- Current bank debt:
  - Negotiated charges, legal and interest increase to estimated $11.8 million
  - The debt will be split into 4 amounts (amounts based on closing May balances due to "moving target" on revolver portion of loan)
    - An Asset Based Loan Revolver with an estimated opening balance of $2.9 million ("Revolver")
    - Term A and B of $3 million to be secured by real property
    - Term C of approximately $5.9 million with an estimated $2.4 million pay down at close and other negotiated pay downs, including the China property
  - Cash balances will be swept daily to reduce the Revolver balance, with the exception of a $0.3 million cash reserve balance, which can be used for liquidity and be replenished
  - Interest payment of 5% fixed for 3 year term
  - See detail split-out using May numbers on following sheet F1. Debt Summary

- Unsecured liabilities
  - The plan allows for a maximum $150K per year for 5 years paid out to the unsecured, for a total maximum estimate of $750K
  - These payments can be seen starting in February of 2012

## EXHIBIT 1, PAGE 13

# F1. Debt Summary

| Key Collateral Assets | May Actual and after new Debt Structure | | | |
|---|---|---|---|---|
| | Actual May B/S | Restr. | Cash | Adj May |
| Cash in Bank | 2,727 | 2,727 | (2,427) | 300 |
| Accounts Receivable (Gross) | 2,710 | 2,710 | - | 2,710 |
| Inventory (excl. O/H & Prov) | 5,395 | 5,395 | - | 5,395 |
| Sub-total Liquid Assets | 10,832 | 10,832 | (2,427) | 8,405 |
| Debt Structure | | | | |
| Revolver Balance | - | 2,900 | - | 2,900 |
| Term Loan A | - | 1,370 | | 1,370 |
| Term Loan B | - | 1,620 | | 1,620 |
| Term Loan C +/- Estimated Legal/Int Adj | - | 5,952 | 2,427 | 3,525 |
| Plus: Estimated Legal fees, interest adjustments | 324 | | | |
| Initial Total | 11,518 | - | - | - |
| Total Bank Debt | 11,842 | 11,842 | 2,427 | 9,415 |
| Revolver Availability | | | | |
| Total ABL Borrowing Base | | | | 3,099 |
| Less: Revolver Balance -- Calculated Below | | | | (2,900) |
| Less: Outstanding LCs -- Estimate 2 or 3 days avg | | | | - |
| ABL Excess Availability | | | | 199 |

- Actual May Balance Sheet
  - Cash of $2.7 million
  - Debt of $11.5 million
  - Estimated net legal and charges of added $0.3 million

- Debt Restructuring:
  - Revolver of $2.9 million
  - Term A of $1.4 million
  - Term B of $1.6 million
  - Term C of $5.9 million

- Cash pay down of $2.4 million to apply to Term C
  - Leaves a remaining cash reserve of $0.3 million

## EXHIBIT 1, PAGE 14

# G1. 2011 Debt and Revolver Roll-Forward

| Key Collateral Assets | Actual May B/S | May Actual and after new Debt Structure Restr. | Cash | Adj May | June | July | Aug | Sept | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash in Bank | 2,727 | 2,727 | (2,427) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| Accounts Receivable (Gross) | 2,710 | 2,710 | - | 2,710 | 2,783 | 2,726 | 2,499 | 2,736 | 2,378 | 2,221 | 2,394 |
| Inventory (excl. O/H & Prov) | 5,395 | 5,395 | - | 5,395 | 5,241 | 5,168 | 5,314 | 5,380 | 5,398 | 5,406 | 5,407 |
| Sub-total Liquid Assets | 10,832 | 10,832 | (2,427) | 8,405 | 8,324 | 8,194 | 8,113 | 8,416 | 8,076 | 7,927 | 8,101 |
| Debt Structure | | | | | | | | | | | |
| Revolver Balance | - | 2,900 | - | 2,900 | 2,868 | 2,626 | 2,625 | 2,827 | 2,512 | 2,361 | 2,452 |
| Term Loan A | - | 1,370 | | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 |
| Term Loan B | - | 1,620 | | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 |
| Term Loan C +/- Estimated Legal/Int Adj | - | 5,952 | 2,427 | 3,525 | 3,525 | 3,525 | 3,525 | 3,525 | 3,525 | 3,525 | 3,525 |
| Plus: Estimated Legal fees, interest adjustments | 324 | | | | | | | | | | |
| Initial Total | 11,518 | - | - | - | - | - | - | - | - | - | - |
| Total Bank Debt | 11,842 | 11,842 | 2,427 | 9,415 | 9,383 | 9,141 | 9,140 | 9,342 | 9,027 | 8,876 | 8,967 |
| Revolver Availability | | | | | | | | | | | |
| Total ABL Borrowing Base | | | | 3,099 | 3,194 | 3,119 | 2,997 | 3,212 | 2,933 | 2,810 | 2,949 |
| Less: Revolver Balance -- Calculated Below | | | | (2,900) | (2,868) | (2,626) | (2,625) | (2,827) | (2,512) | (2,361) | (2,452) |
| Less: Outstanding LCs -- Estimate 2 or 3 days avg | | | | - | - | (250) | (250) | (250) | (250) | (250) | (250) |
| ABL Excess Availability | | | | 199 | 326 | 243 | 122 | 135 | 171 | 199 | 247 |

| Revolver Roll-Forward | May | June | July | Aug | Sept | Oct | Nov | Dec | 6 Months |
|---|---|---|---|---|---|---|---|---|---|
| Revolver Beginning Balance | | (2,900) | (2,868) | (2,626) | (2,625) | (2,827) | (2,512) | (2,361) | (2,900) |
| Profit and Loss | | 3 | 50 | (1) | 38 | 12 | 7 | 16 | 125 |
| Depreciation and Amortization | | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 70 |
| Receivables (Incr)/Decr | | (73) | 57 | 227 | (237) | 358 | 157 | (173) | 316 |
| Inventory (Incr)/Decrease | | 154 | 73 | (146) | (66) | (18) | (8) | (1) | (12) |
| Unsecured Payments | | - | - | - | - | - | - | - | - |
| Other, timing, accruals - In initial plan | | (62) | 51 | (89) | 54 | (47) | (15) | 57 | (51) |
| Revolver Ending Balance | (2,900) | (2,868) | (2,626) | (2,625) | (2,827) | (2,512) | (2,361) | (2,452) | (2,452) |

**EXHIBIT 1, PAGE 15**

# G2. 2012 Debt and Revolver Roll-Forward

| Key Collateral Assets | Dec PY | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash in Bank | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| Accounts Receivable (Gross) | 2,394 | 2,825 | 3,140 | 3,467 | 3,425 | 3,038 | 2,953 | 3,292 | 3,296 | 3,194 | 3,013 | 2,807 | 2,757 |
| Inventory (excl. O/H & Prov) | 5,407 | 5,200 | 4,900 | 4,750 | 4,650 | 4,800 | 5,250 | 5,050 | 5,000 | 5,200 | 5,300 | 5,375 | 5,325 |
| Sub-total Liquid Assets | 8,101 | 8,325 | 8,340 | 8,517 | 8,375 | 8,138 | 8,503 | 8,642 | 8,596 | 8,694 | 8,613 | 8,482 | 8,382 |
| Debt Structure | | | | | | | | | | | | | |
| Revolver Balance | 2,452 | 2,552 | 2,661 | 2,783 | 2,571 | 2,263 | 2,495 | 2,470 | 2,418 | 2,376 | 2,290 | 2,140 | 1,951 |
| Term Loan A | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 |
| Term Loan B | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 |
| Term Loan C +/- Legal/Int Adj | 3,525 | 3,525 | 2,075 | 2,075 | 2,075 | 2,075 | 2,075 | 2,075 | 2,075 | 2,075 | 2,075 | 2,075 | 2,075 |
| Plus: Legal fees, interest adjustments | | | | | | | | | | | | | |
| Initial Total | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Bank Debt | 8,967 | 9,067 | 7,726 | 7,848 | 7,636 | 7,328 | 7,560 | 7,535 | 7,483 | 7,441 | 7,355 | 7,205 | 7,016 |
| Revolver Availability | | | | | | | | | | | | | |
| Total ABL Borrowing Base | 2,949 | 3,211 | 3,343 | 3,545 | 3,471 | 3,221 | 3,333 | 3,525 | 3,507 | 3,506 | 3,401 | 3,266 | 3,207 |
| Less:  Revolver Balance -- Calcula | (2,452) | (2,552) | (2,661) | (2,783) | (2,571) | (2,263) | (2,495) | (2,470) | (2,418) | (2,376) | (2,290) | (2,140) | (1,951) |
| Less:  Outstanding LCs -- Estimate | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) |
| ABL Excess Availability | 247 | 409 | 432 | 512 | 650 | 708 | 588 | 805 | 839 | 880 | 861 | 877 | 1,006 |

| Revolver Roll-Forward | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov | Dec | 12 Months |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revolver Beginning Balance | (2,452) | (2,552) | (2,661) | (2,783) | (2,571) | (2,263) | (2,495) | (2,470) | (2,418) | (2,376) | (2,290) | (2,140) | (2,452) |
| Cash in From China Plant - Est | | 1,450 | | | | | | | | | | | 1,450 |
| Term C Paydown - Est | | (1,450) | | | | | | | | | | | (1,450) |
| Profit and Loss | 63 | (5) | (7) | 8 | 9 | 73 | 103 | 84 | 77 | 42 | 25 | 22 | 494 |
| Depreciation and Amortization | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 120 |
| Receivables (Incr)/Decr | (431) | (315) | (327) | 42 | 388 | 85 | (339) | (4) | 102 | 181 | 206 | 50 | (363) |
| Inventory (Incr)/Decrease | 207 | 300 | 150 | 100 | (150) | (450) | 200 | 50 | (200) | (100) | (75) | 50 | 82 |
| Unsecured Payments | - | (150) | | | | | | | | | | | (150) |
| Other, timing, accruals | 51 | 51 | 51 | 51 | 51 | 51 | 51 | (89) | 54 | (47) | (15) | 57 | 319 |
| Revolver Ending Balance | (2,552) | (2,661) | (2,783) | (2,571) | (2,263) | (2,495) | (2,470) | (2,418) | (2,376) | (2,290) | (2,140) | (1,951) | (1,951) |

- The cash from the China transaction is expected to be paid in and then passed through to pay down Term C by early 2012.  While timing is uncertain, it is included in February above

# EXHIBIT 1, PAGE 16

# G3. 2013 Debt and Revolver Roll-Forward

| Key Collateral Assets | Dec PY | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash in Bank | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| Accounts Receivable (Gross | 2,757 | 3,352 | 3,636 | 4,014 | 3,966 | 3,517 | 3,419 | 3,812 | 3,816 | 3,698 | 3,488 | 3,250 | 3,193 |
| Inventory (excl. O/H & Prov | 5,325 | 5,100 | 4,900 | 4,800 | 4,700 | 5,000 | 5,300 | 5,400 | 5,200 | 5,300 | 5,600 | 5,800 | 5,980 |
| Sub-total Liquid Assets | 8,382 | 8,752 | 8,836 | 9,114 | 8,966 | 8,817 | 9,019 | 9,512 | 9,316 | 9,298 | 9,388 | 9,350 | 9,473 |
| Debt Structure | | | | | | | | | | | | | |
| Revolver Balance | 1,951 | 2,146 | 2,285 | 2,481 | 2,231 | 1,977 | 2,001 | 2,282 | 2,038 | 1,838 | 1,889 | 1,797 | 1,792 |
| Term Loan A | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 |
| Term Loan B | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 |
| Term Loan C +/- Legal/Int A | 2,075 | 2,075 | 2,075 | 2,075 | 2,075 | 2,075 | 2,075 | 2,075 | 2,075 | 2,075 | 2,075 | 2,075 | 2,075 |
| Plus: Legal fees, interest adjustments | | | | | | | | | | | | | |
| Initial Total | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Bank Debt | 7,016 | 7,211 | 7,350 | 7,546 | 7,296 | 7,042 | 7,066 | 7,347 | 7,103 | 6,903 | 6,954 | 6,862 | 6,857 |
| Revolver Availability | | | | | | | | | | | | | |
| Total ABL Borrowing Base | 3,207 | 3,592 | 3,740 | 4,003 | 3,924 | 3,685 | 3,726 | 4,080 | 4,004 | 3,950 | 3,902 | 3,791 | 3,817 |
| Less: Revolver Balance -- | (1,951) | (2,146) | (2,285) | (2,481) | (2,231) | (1,977) | (2,001) | (2,282) | (2,038) | (1,838) | (1,889) | (1,797) | (1,792) |
| Less: Outstanding LCs -- Es | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) |
| ABL Excess Availability | 1,006 | 1,196 | 1,204 | 1,272 | 1,443 | 1,457 | 1,475 | 1,548 | 1,716 | 1,862 | 1,763 | 1,744 | 1,775 |

| Revolver Roll-Forward | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov | Dec | 12 Months |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revolver Beginning Balance | (1,951) | (2,146) | (2,285) | (2,481) | (2,231) | (1,977) | (2,001) | (2,282) | (2,038) | (1,838) | (1,889) | (1,797) | (1,951) |
| Profit and Loss | 112 | 34 | 21 | 40 | 43 | 117 | 150 | 127 | 119 | 76 | 58 | 60 | 959 |
| Depreciation and Amortization | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 120 |
| Receivables (Incr)/Decr | (594) | (284) | (379) | 49 | 449 | 98 | (393) | (4) | 118 | 210 | 239 | 57 | (435) |
| Inventory (Incr)/Decrease | 225 | 200 | 100 | 100 | (300) | (300) | (100) | 200 | (100) | (300) | (200) | (180) | (655) |
| Unsecured Payments | - | (150) | - | - | - | - | - | - | - | - | - | - | (150) |
| Other, timing, accruals | 51 | 51 | 51 | 51 | 51 | 51 | 51 | (89) | 54 | (47) | (15) | 57 | 319 |
| Revolver Ending Balance | (2,146) | (2,285) | (2,481) | (2,231) | (1,977) | (2,001) | (2,282) | (2,038) | (1,838) | (1,889) | (1,797) | (1,792) | (1,792) |

# EXHIBIT 1, PAGE 17

# G4. 2014 Debt and Revolver Roll-Forward

| Key Collateral Assets | Dec PY | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash in Bank | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| Accounts Receivable (Gross) | 3,193 | 3,788 | 3,966 | 4,379 | 4,326 | 3,837 | 3,729 | 4,158 | 4,163 | 4,035 | 3,806 | 3,545 | 3,483 |
| Inventory (excl. O/H & Prov) | 5,980 | 5,800 | 5,400 | 5,200 | 5,100 | 5,200 | 5,500 | 5,600 | 6,000 | 6,100 | 6,200 | 6,300 | 6,475 |
| Sub-total Liquid Assets | 9,473 | 9,888 | 9,666 | 9,879 | 9,726 | 9,337 | 9,529 | 10,058 | 10,463 | 10,435 | 10,306 | 10,145 | 10,258 |
| Debt Structure | | | | | | | | | | | | | |
| Revolver Balance | 1,792 | 2,000 | 1,816 | 1,928 | 1,653 | 3,417 | 3,404 | 3,688 | 4,020 | 3,788 | 3,602 | 3,371 | 3,339 |
| Term Loan A | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 |
| Term Loan B | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 |
| Term Loan C +/- Legal/Int A | 2,075 | 2,075 | 2,075 | 2,075 | 2,075 | - | - | - | - | - | - | - | - |
| Plus: Legal fees, interest adjustments | | | | | | | | | | | | | |
| Initial Total | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Bank Debt | 6,857 | 7,065 | 6,881 | 6,993 | 6,718 | 6,407 | 6,394 | 6,678 | 7,010 | 6,778 | 6,592 | 6,361 | 6,329 |
| Revolver Availability | | | | | | | | | | | | | |
| Total ABL Borrowing Base | 3,817 | 4,221 | 4,204 | 4,454 | 4,372 | 4,020 | 4,055 | 4,438 | 4,601 | 4,539 | 4,395 | 4,227 | 4,247 |
| Less: Revolver Balance -- | (1,792) | (2,000) | (1,816) | (1,928) | (1,653) | (3,417) | (3,404) | (3,688) | (4,020) | (3,788) | (3,602) | (3,371) | (3,339) |
| Less: Outstanding LCs -- E | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) |
| ABL Excess Availability | 1,775 | 1,971 | 2,139 | 2,277 | 2,469 | 353 | 401 | 499 | 332 | 501 | 544 | 606 | 659 |

| Revolver Roll-Forward | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov | Dec | 12 Months |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revolver Beginning Balance | (1,792) | (2,000) | (1,816) | (1,928) | (1,653) | (3,417) | (3,404) | (3,688) | (4,020) | (3,788) | (3,602) | (3,371) | (1,792) |
| Profit and Loss | 146 | 52 | 39 | 60 | 60 | 145 | 183 | 152 | 140 | 94 | 75 | 78 | 1,225 |
| Pay off Term C - New Loan | | | | | (2,275) | | | | | | | | (2,275) |
| Depreciation and Amortization | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 120 |
| Receivables (Incr)/Decr | (595) | (179) | (413) | 53 | 489 | 107 | (429) | (4) | 128 | 229 | 260 | 63 | (290) |
| Inventory (Incr)/Decrease | 180 | 400 | 200 | 100 | (100) | (300) | (100) | (400) | (100) | (100) | (100) | (175) | (495) |
| Unsecured Payments | - | (150) | - | - | - | - | - | - | - | - | - | - | (150) |
| Other, timing, accruals | 51 | 51 | 51 | 51 | 51 | 51 | 51 | (89) | 54 | (47) | (15) | 57 | 319 |
| Revolver Ending Balance | (2,000) | (1,816) | (1,928) | (1,653) | (3,417) | (3,404) | (3,688) | (4,020) | (3,788) | (3,602) | (3,371) | (3,339) | (3,339) |

- The company expects profitability to build excess ABL availability to a point where a new bank agreement and ABL cash completely pay off the Term C.

- While the company expects to refinance earlier, this refinancing is reflected in May of 2014.

## EXHIBIT 1, PAGE 18

# G5. 2015 Debt and Revolver Roll-Forward

| Key Collateral Assets | Dec PY | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash in Bank | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| Accounts Receivable (Gross | 3,483 | 4,059 | 4,462 | 4,927 | 4,867 | 4,316 | 4,196 | 4,678 | 4,683 | 4,539 | 4,281 | 3,989 | 3,918 |
| Inventory (excl. O/H & Prov | 6,475 | 6,250 | 5,900 | 5,750 | 5,800 | 5,900 | 6,300 | 6,400 | 6,600 | 6,500 | 6,600 | 6,800 | 7,275 |
| Sub-total Liquid Assets | 10,258 | 10,609 | 10,662 | 10,977 | 10,967 | 10,516 | 10,796 | 11,378 | 11,583 | 11,339 | 11,181 | 11,089 | 11,493 |
| Debt Structure | | | | | | | | | | | | | |
| Revolver Balance | 3,339 | 3,448 | 3,515 | 3,708 | 3,554 | 2,960 | 2,999 | 3,299 | 3,396 | 2,914 | 2,670 | 2,480 | 2,712 |
| Term Loan A | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 |
| Term Loan B | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 |
| Term Loan C +/- Legal/Int Ad | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Plus: Legal fees, interest adjustments | | | | | | | | | | | | | |
| Initial Total | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Bank Debt | 6,329 | 6,438 | 6,505 | 6,698 | 6,544 | 5,950 | 5,989 | 6,289 | 6,386 | 5,904 | 5,660 | 5,470 | 5,702 |
| Revolver Availability | | | | | | | | | | | | | |
| Total ABL Borrowing Base | 4,247 | 4,618 | 4,801 | 5,112 | 5,085 | 4,684 | 4,748 | 5,173 | 5,257 | 5,102 | 4,936 | 4,782 | 4,916 |
| Less: Revolver Balance -- | (3,339) | (3,448) | (3,515) | (3,708) | (3,554) | (2,960) | (2,999) | (3,299) | (3,396) | (2,914) | (2,670) | (2,480) | (2,712) |
| Less: Outstanding LCs -- Es | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) |
| ABL Excess Availability | 659 | 920 | 1,036 | 1,154 | 1,281 | 1,474 | 1,499 | 1,625 | 1,611 | 1,938 | 2,016 | 2,051 | 1,953 |

| Revolver Roll-Forward | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov | Dec | 12 Months |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revolver Beginning Balance | (3,339) | (3,448) | (3,515) | (3,708) | (3,554) | (2,960) | (2,999) | (3,299) | (3,396) | (2,914) | (2,670) | (2,480) | (3,339) |
| Profit and Loss | 181 | 75 | 60 | 83 | 82 | 179 | 221 | 186 | 175 | 123 | 102 | 105 | 1,572 |
| Depreciation and Amortization | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 120 |
| Receivables (Incr)/Decr | (576) | (403) | (465) | 60 | 551 | 121 | (482) | (5) | 144 | 258 | 293 | 70 | (435) |
| Inventory (Incr)/Decrease | 225 | 350 | 150 | (50) | (100) | (400) | (100) | (200) | 100 | (100) | (200) | (475) | (800) |
| Unsecured Payments | - | (150) | - | - | - | - | - | - | - | - | - | - | (150) |
| Other, timing, accruals | 51 | 51 | 51 | 51 | 51 | 51 | 51 | (89) | 54 | (47) | (15) | 57 | 319 |
| Revolver Ending Balance | (3,448) | (3,515) | (3,708) | (3,554) | (2,960) | (2,999) | (3,299) | (3,396) | (2,914) | (2,670) | (2,480) | (2,712) | (2,712) |

**EXHIBIT 1, PAGE 19**

# G6. 2016 Debt and Revolver Roll-Forward

| Key Collateral Assets | Dec PY | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash in Bank | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| Accounts Receivable (Gross | 3,918 | 4,059 | 4,462 | 4,927 | 4,867 | 4,316 | 4,196 | 4,678 | 4,683 | 4,539 | 4,281 | 3,989 | 3,918 |
| Inventory (excl. O/H & Prov | 7,275 | 6,250 | 5,900 | 5,750 | 5,800 | 5,900 | 6,300 | 6,400 | 6,600 | 6,500 | 6,600 | 6,800 | 7,275 |
| Sub-total Liquid Assets | 11,493 | 10,609 | 10,662 | 10,977 | 10,967 | 10,516 | 10,796 | 11,378 | 11,583 | 11,339 | 11,181 | 11,089 | 11,493 |
| Debt Structure | | | | | | | | | | | | | |
| Revolver Balance | 2,712 | 1,584 | 1,643 | 1,828 | 1,666 | 1,064 | 1,095 | 1,388 | 1,477 | 986 | 735 | 537 | 761 |
| Term Loan A | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 |
| Term Loan B | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 | 1,620 |
| Term Loan C +/- Legal/Int A | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Plus: Legal fees, interest adjustments | | | | | | | | | | | | | |
| Initial Total | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Bank Debt | 5,702 | 4,574 | 4,633 | 4,818 | 4,656 | 4,054 | 4,085 | 4,378 | 4,467 | 3,976 | 3,725 | 3,527 | 3,751 |
| Revolver Availability | | | | | | | | | | | | | |
| Total ABL Borrowing Base | 4,916 | 4,618 | 4,801 | 5,112 | 5,085 | 4,684 | 4,748 | 5,173 | 5,257 | 5,102 | 4,936 | 4,782 | 4,916 |
| Less: Revolver Balance -- | (2,712) | (1,584) | (1,643) | (1,828) | (1,666) | (1,064) | (1,095) | (1,388) | (1,477) | (986) | (735) | (537) | (761) |
| Less: Outstanding LCs -- Es | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) |
| ABL Excess Availability | 1,953 | 2,785 | 2,908 | 3,034 | 3,169 | 3,370 | 3,402 | 3,536 | 3,530 | 3,866 | 3,951 | 3,995 | 3,905 |

| Revolver Roll-Forward | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov | Dec | 12 Months |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revolver Beginning Balance | (2,712) | (1,584) | (1,643) | (1,828) | (1,666) | (1,064) | (1,095) | (1,388) | (1,477) | (986) | (735) | (537) | (2,712) |
| Profit and Loss | 183 | 83 | 68 | 91 | 90 | 187 | 229 | 194 | 183 | 131 | 111 | 113 | 1,662 |
| Depreciation and Amortization | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 120 |
| Receivables (Incr)/Decr | (141) | (403) | (465) | 60 | 551 | 121 | (482) | (5) | 144 | 258 | 293 | 70 | - |
| Inventory (Incr)/Decrease | 1,025 | 350 | 150 | (50) | (100) | (400) | (100) | (200) | 100 | (100) | (200) | (475) | - |
| Unsecured Payments | - | (150) | - | - | - | - | - | - | - | - | - | - | (150) |
| Other, timing, accruals | 51 | 51 | 51 | 51 | 51 | 51 | 51 | (89) | 54 | (47) | (15) | 57 | 319 |
| Revolver Ending Balance | (1,584) | (1,643) | (1,828) | (1,666) | (1,064) | (1,095) | (1,388) | (1,477) | (986) | (735) | (537) | (761) | (761) |

# EXHIBIT 1, PAGE 20

# EXHIBIT 2

## Payment Made 90 Days  Prior To The Petition Date
## Trade Union

<u>**ATTACHMENT TO STATEMENT OF AFFAIRS, ITEM NO. 3.b.**</u>


<u>**Payments to Creditors 90 Days Prior to the Petition Date**</u>

# EXHIBIT 2

| Sum of SumApplied | | | |
|---|---|---|---|
| Vendor Name | CardCode | DocDate | Total |
| AMERICAN EXPRESS | V1055 | 11/5/2010 | 47,330.65 |
| | | 12/9/2010 | 62,670.80 |
| | | 1/25/2011 | 32,532.93 |
| AMERICAN EXPRESS Total | | | 142,534.38 |
| Cathay Bank | ACCRUED G&A EXP | 11/2/2010 | 83,410.81 |
| | | 12/6/2010 | 79,171.93 |
| | ACCRUED OFFICER | 1/18/2011 | 13,160.30 |
| | LOAN PAYABLE-CA | 10/27/2010 | 30,000.00 |
| | | 10/29/2010 | 120,000.00 |
| | | 11/15/2010 | 50,000.00 |
| | | 12/14/2010 | 25,000.00 |
| Cathay Bank Total | | | 400,743.04 |
| Chicago Title Company | PROFESSIONAL FE | 11/19/2010 | 7,850.00 |
| | | 11/23/2010 | 9,738.50 |
| Chicago Title Company  Total | | | 17,588.50 |
| HOME DEPOT CREDIT SERVICES | V1399 | 12/1/2010 | 281.91 |
| | | 12/23/2010 | 208.68 |
| | | 1/31/2011 | 165.35 |
| HOME DEPOT CREDIT SERVICES Total | | | 655.94 |
| JIANGSU RUDONG GREASE GUN | V2078 | 11/16/2010 | 79,820.25 |
| | | 12/14/2010 | 20,000.00 |
| JIANGSU RUDONG GREASE GUN Total | | | 99,820.25 |
| JOE INTERRANTE | V2233 | 11/1/2010 | 4,659.36 |
| | | 11/16/2010 | 2,500.00 |
| | | 11/17/2010 | 3,975.18 |
| | | 12/1/2010 | 2,500.00 |
| | | 12/15/2010 | 2,500.00 |
| | | 12/31/2010 | 2,500.00 |
| | | 1/12/2011 | 2,233.44 |
| JOE INTERRANTE Total | | | 20,867.98 |
| John Hancock USA | V2197 | 11/1/2010 | 5,782.45 |
| | | 11/15/2010 | 5,731.04 |
| | | 11/29/2010 | 5,942.34 |
| | | 11/30/2010 | 292.89 |
| | | 12/1/2010 | 7,797.22 |
| | | 12/13/2010 | 5,030.75 |
| | | 12/23/2010 | 5,043.63 |
| | | 1/7/2011 | 5,816.49 |
| | | 1/24/2011 | 5,812.37 |
| John Hancock USA Total | | | 47,249.18 |
| JOSEPH C. HIGDON | V2356 | 11/19/2010 | 5,000.00 |
| | | 12/17/2010 | 5,000.00 |
| JOSEPH C. HIGDON Total | | | 10,000.00 |
| MARK BERGER SALES INC. | V1540 | 11/16/2010 | 17,091.67 |
| | | 12/14/2010 | 17,091.67 |
| MARK BERGER SALES INC. Total | | | 34,183.34 |
| OSIC SOFTWARE INNOVATION CENTER LTD. | V2378 | 11/16/2010 | 7,956.00 |
| OSIC SOFTWARE INNOVATION CENTER LTD. Total | | | 7,956.00 |
| Shanghai Bon Voyage International Trading Co., Ltd. | V2317 | 11/4/2010 | 60,032.12 |
| | | 12/1/2010 | 30,000.00 |
| | | 12/15/2010 | 35,536.56 |
| Shanghai Bon Voyage International Trading Co., Ltd. Total | | | 125,568.68 |
| STAPLES CREDIT PLAN | V1811 | 1/7/2011 | 208.43 |
| STAPLES CREDIT PLAN Total | | | 208.43 |
| THE GAS COMPANY | V2306 | 10/27/2010 | 9.53 |
| | | 12/1/2010 | 5.10 |
| | | 12/29/2010 | 5.10 |
| THE GAS COMPANY Total | | | 19.73 |
| TIME WARNER CABLE | V1455 | 10/27/2010 | 107.77 |
| | | 12/1/2010 | 105.68 |
| | | 12/28/2010 | 107.77 |
| TIME WARNER CABLE Total | | | 321.22 |
| TRADE UNION INT L (TAIWAN) LTD | V2068 | 10/27/2010 | 52,190.00 |
| | | 10/29/2010 | 83,587.00 |

# EXHIBIT 2
3b table

| Vendor Name | CardCode | DocDate | Total |
|---|---|---|---|
| TRADE UNION INT L (TAIWAN) LTD | V2068 | 11/1/2010 | 309,981.08 |
| | | 11/4/2010 | 199,472.56 |
| | | 11/9/2010 | 99,187.21 |
| | | 11/12/2010 | 75,000.00 |
| | | 11/16/2010 | 190,937.64 |
| | | 11/19/2010 | 61,028.00 |
| | | 11/23/2010 | 29,871.40 |
| | | 11/29/2010 | 121,421.00 |
| | | 12/1/2010 | 205,111.22 |
| | | 12/3/2010 | 57,879.08 |
| | | 12/6/2010 | 72,484.00 |
| | | 12/7/2010 | 50,356.83 |
| | | 12/9/2010 | 29,217.20 |
| | | 12/14/2010 | 93,177.40 |
| | | 12/16/2010 | 62,996.93 |
| | | 12/17/2010 | 89,077.00 |
| | | 12/20/2010 | 186,643.77 |
| | | 12/23/2010 | 48,000.00 |
| | | 1/6/2011 | 98,414.64 |
| | | 1/11/2011 | 56,000.31 |
| | | 1/12/2011 | 102,621.11 |
| | | 1/24/2011 | 54,043.00 |
| TRADE UNION INT L (TAIWAN) LTD Total | | | 2,428,698.38 |
| VERIZON CALIFORNIA | V1932 | 11/2/2010 | 68.24 |
| | | 12/3/2010 | 67.78 |
| | | 1/3/2011 | 69.80 |
| | V1934 | 11/5/2010 | 31.47 |
| | | 12/6/2010 | 31.47 |
| | | 1/5/2011 | 31.45 |
| | V1936 | 11/15/2010 | 64.40 |
| | | 12/15/2010 | 64.48 |
| | V1937 | 11/24/2010 | 215.44 |
| | | 12/20/2010 | 215.64 |
| | V1939 | 11/2/2010 | 44.08 |
| | | 12/3/2010 | 53.39 |
| | | 1/3/2011 | 43.17 |
| VERIZON CALIFORNIA Total | | | 1,000.81 |
| WALNUT VALLEY WATER DISTRICT | V1960 | 10/28/2010 | 22.29 |
| | | 11/26/2010 | 20.21 |
| | | 12/31/2010 | 20.21 |
| WALNUT VALLEY WATER DISTRICT Total | | | 62.71 |
| WELLS FARGO FINANCIAL LEASING MANUFACTURER SERVICES GROUP | V2341 | 11/2/2010 | 4,825.53 |
| | | 12/10/2010 | 2,617.18 |
| | | 1/4/2011 | 7,033.88 |
| WELLS FARGO FINANCIAL LEASING MANUFACTURER SERVICES GROUP Total | | | 14,476.59 |
| Grand Total | | | 3,351,955.16 |

|  |  |
|---|---|
| 3b-1 | 1,026,614.01 |
| 3b | 3,351,955.16 |
| Total | 4,378,569.17 |

# EXHIBIT 2
## 3b table

TUI STATEMENT OF AFFAIRS - 3b.xls

| DocNum | Type | DocDate | CardCode | Vendor Name | DocEntry | Source Type | SumApplied | GL Account | Pay Amount | Payment Type | Bill-to Street | Bill-to City | Bill-to State | Bill-to Zip Code | Bill-to Country |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

EXHIBIT 2

3b

TUI STATEMENT OF AFFAIRS - 3b.xls

| DocNum | Type | DocDate | CardCode | Vendor Name | DocEntry | Source Type | SumApplied | GL Account | Pay Amount | Payment Type | Bill-to Street | Bill-to City | Bill-to State | Bill-to Zip Code | Bill-to Country |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7890 | Vendor | 12/1/2010 | V1399 | HOME DEPOT CREDIT SERVICES | 15547 | A/P Invoice | 1185 | Cathay Bank - Regular Checking | 281.91 | Bank Transfer | P.O. BOX 6029 | THE LAKES | NV | 88901-6029 | USA |
| 7890 | Vendor | 12/1/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14056 | A/P Invoice | 78.73 | Cathay Bank - Regular Checking | 261.91 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | THE LAKES | NV | 88901-6029 | USA |
| 7893 | Vendor | 12/1/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14112 | A/P Invoice | 71,333.30 | Cathay Bank - Regular Checking | 205,111.22 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7893 | Vendor | 12/1/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14114 | A/P Invoice | 205,111.22 | Cathay Bank - Regular Checking | 205,111.22 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7893 | Vendor | 12/1/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14110 | A/P Invoice | 64,325.32 | Cathay Bank - Regular Checking | 205,111.22 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7893 | Vendor | 12/1/2010 | V23700 | Shanghai Bon Voyage International Trading Co., Ltd. | | Unknown | 30,000.00 | Cathay Bank - Regular Checking | 30,000.00 | Bank Transfer | 2N, NO.113, YANAN ROAD (E) | SHANGHAI | | | CHINA |
| 7901 | Vendor | 12/3/2010 | V2117 | VERIZON CALIFORNIA | 15960 | A/P Invoice | 5.10 | Cathay Bank - Regular Checking | 67.78 | Bank Transfer | P.O. BOX 30001 | INGLEWOOD | CA | 90313-0001 | USA |
| 7901 | Vendor | 12/3/2010 | V2117 | VERIZON CALIFORNIA | 15959 | A/P Invoice | 67.78 | Cathay Bank - Regular Checking | 67.78 | Bank Transfer | P.O. BOX 30001 | INGLEWOOD | CA | 90313-0001 | USA |
| 7903 | Vendor | 12/3/2010 | V1896 | THE LAKE COMPANY | 15886 | A/P Invoice | 5.10 | Cathay Bank - Regular Checking | 5.10 | Bank Transfer | | MONTEREY PARK | CA | 91756 | USA |
| 7905 | Vendor | 12/6/2010 | V1896 | TIME WARNER CABLE | 16623 | A/P Invoice | 9 | Cathay Bank - Regular Checking | 9 | Bank Transfer | P.O. BOX 60074 | CITY OF INDUSTRY | CA | 91716-0074 | USA |
| 7905 | Vendor | 12/6/2010 | V1704 | VERIZON CALIFORNIA | 15774 | A/P Invoice | 37.47 | Cathay Bank - Regular Checking | 37.47 | Bank Transfer | P.O. BOX 9688 | MISSION HILLS | CA | 91346-9688 | USA |
| 7907 | Account | 12/6/2010 | ACCRUED G&A EXP | Cathay Bank | | Account List | 48,236.93 | CATHAY BANK - REGULAR CHECKING | 48,236.93 | Bank Transfer | 9650 Flair Drive | El Monte | CA | | USA |
| 7908 | Account | 12/6/2010 | ACCRUED G&A EXP | Cathay Bank | | Account List | 30,675.00 | CATHAY BANK - REGULAR CHECKING | 30,675.00 | Bank Transfer | 9650 Flair Drive | El Monte | CA | | USA |
| 7909 | Vendor | 12/9/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14297 | A/P Invoice | 72,684.00 | Cathay Bank - Regular Checking | 72,684.00 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7913 | Vendor | 12/9/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 15243 | A/P Invoice | 20,055.60 | Cathay Bank - Regular Checking | 50,305.62 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7915 | Vendor | 12/9/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14225 | A/P Invoice | 29,937.22 | Cathay Bank - Regular Checking | 50,305.62 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7919 | Vendor | 12/9/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14224 | A/P Invoice | 57,957.00 | Cathay Bank - Regular Checking | 57,957.00 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7921 | Vendor | 12/9/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14369 | A/P Invoice | 26,622.00 | Cathay Bank - Regular Checking | 26,622.00 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7923 | Vendor | 12/9/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14422 | A/P Invoice | 29,217.20 | Cathay Bank - Regular Checking | 29,217.20 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7925 | Vendor | 12/9/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14407 | A/P Invoice | 63,289.00 | Cathay Bank - Regular Checking | 63,289.00 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7926 | Vendor | 12/13/2010 | V2197 | John Hancock USA | 16028 | A/P Invoice | 5,030.75 | Cathay Bank - Regular Checking | 5,030.75 | Bank Transfer | PO Box 600 | Buffalo | NY | 14201-0600 | USA |
| 7928 | Vendor | 12/13/2010 | V1450 | MARK BENSON, TRUSTEE | 15908 | A/P Invoice | 17,094.44 | Cathay Bank - Regular Checking | 17,094.44 | Bank Transfer | 1031 COLORADO BLVD | PASADENA | CA | 91740 | USA |
| 7931 | Vendor | 12/13/2010 | V1704 | VERIZON CALIFORNIA | 15960 | A/P Invoice | 55.48 | Cathay Bank - Regular Checking | 55.48 | Bank Transfer | P.O. BOX 9688 | MISSION HILLS | CA | 91346-9688 | USA |
| 7932 | Vendor | 12/15/2010 | V23300 | HWA MEIX INDUSTRIAL CO., | 16040 | A/P Invoice | 2,500.00 | Cathay Bank - Regular Checking | 2,500.00 | Bank Transfer | 185 PROVIDENCE PLANTATION DR | ALPHARETTA | GA | 30004 | USA |
| 7936 | Vendor | 12/15/2010 | V23500 | HENRY HAN AVAILABLE-CA | 15938 | A/P Invoice | 23,000.00 | Cathay Bank - Regular Checking | 23,000.00 | Bank Transfer | 9659 Flair Drive | San Francisco | CA | | USA |
| 7937 | Vendor | 12/16/2010 | V2241 | WELLS FARGO FINANCIAL LEASING MANUFACTURER SERVICES GROUP | 16639 | A/P Invoice | 2,397.25 | Cathay Bank - Regular Checking | 2,397.25 | Bank Transfer | P.O. BOX 7777 | SAN FRANCISCO | CA | 97120-7777 | USA |
| 7939 | Vendor | 12/16/2010 | V2241 | WELLS FARGO FINANCIAL LEASING MANUFACTURER SERVICES GROUP | 16638 | A/P Invoice | 219.93 | Cathay Bank - Regular Checking | 219.93 | Bank Transfer | P.O. BOX 7777 | SAN FRANCISCO | CA | 97120-7777 | USA |
| 7943 | Vendor | 12/20/2010 | V23500 | HENRY HAN AVAILABLE-CA | 15944 | A/P Invoice | 5,000.00 | Cathay Bank - Regular Checking | 5,000.00 | Bank Transfer | 9659 Flair Drive | San Francisco | CA | | USA |
| 7945 | Vendor | 12/20/2010 | V1937 | VERIZON CALIFORNIA | 15964 | A/P Invoice | 215.44 | Cathay Bank - Regular Checking | 215.44 | Bank Transfer | P.O. BOX 30001 | INGLEWOOD | CA | 90313-0001 | USA |
| 7953 | Vendor | 12/20/2010 | V23700 | Shanghai Bon Voyage International Trading Co., Ltd. | 15328 | A/P Invoice | 65,530.56 | Cathay Bank - Regular Checking | 65,530.56 | Bank Transfer | 2N, NO.113, YANAN ROAD (E) | SHANGHAI | | | CHINA |
| 7953 | Vendor | 12/20/2010 | V23700 | Shanghai Bon Voyage International Trading Co., Ltd. | 240000 | Payment Advice | 35,000.00 | Cathay Bank - Regular Checking | 35,000.00 | Bank Transfer | 2N, NO.113, YANAN ROAD (E) | SHANGHAI | | | CHINA |
| 7955 | Vendor | 12/20/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14344 | A/P Invoice | 53,177.60 | Cathay Bank - Regular Checking | 53,177.60 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7955 | Vendor | 12/20/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14468 | A/P Invoice | 22,326.40 | Cathay Bank - Regular Checking | 22,326.40 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7957 | Vendor | 12/20/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14428 | A/P Invoice | 93,177.40 | Cathay Bank - Regular Checking | 93,177.40 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7957 | Vendor | 12/20/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14377 | A/P Invoice | 34,515.00 | Cathay Bank - Regular Checking | 89,077.00 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7957 | Vendor | 12/20/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14297 | A/P Invoice | 54,562.00 | Cathay Bank - Regular Checking | 89,077.00 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7959 | Vendor | 12/20/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14386 | A/P Invoice | 166,843.77 | Cathay Bank - Regular Checking | 166,843.77 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7960 | Vendor | 12/20/2010 | V1799 | CITY OF INDUSTRY | 16052 | A/P Invoice | 132.80 | Cathay Bank - Regular Checking | 132.80 | Bank Transfer | P.O. BOX 3001 | CITY OF INDUSTRY | CA | | USA |
| 7963 | Vendor | 12/20/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14391 | A/P Invoice | 166,843.77 | Cathay Bank - Regular Checking | 166,843.77 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7963 | Vendor | 12/20/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14392 | A/P Invoice | 500.00 | Cathay Bank - Regular Checking | 166,843.77 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7965 | Vendor | 12/20/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14386 | A/P Invoice | 166,843.77 | Cathay Bank - Regular Checking | 166,843.77 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7967 | Vendor | 12/20/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14291 | A/P Invoice | 42,951.60 | Cathay Bank - Regular Checking | 166,843.77 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7967 | Vendor | 12/20/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14291 | A/P Invoice | 128.75 | Cathay Bank - Regular Checking | 166,843.77 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7969 | Vendor | 12/20/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14241 | A/P Invoice | 51,864.37 | Cathay Bank - Regular Checking | 166,843.77 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7971 | Vendor | 12/20/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14241 | A/P Invoice | 127.41 | Cathay Bank - Regular Checking | 166,843.77 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7973 | Vendor | 12/20/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14297 | A/P Invoice | 2,777.02 | Cathay Bank - Regular Checking | 166,843.77 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 7975 | Vendor | 12/20/2010 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14291 | A/P Invoice | 2,428.26 | Cathay Bank - Regular Checking | 166,843.77 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 8000 | Vendor | 12/23/2010 | V1455 | JOE INTERRANTE | 16052 | A/P Invoice | 107.77 | Cathay Bank - Regular Checking | 107.77 | Bank Transfer | MONTEREY PARK | WALNUT | CA | 91789-0508 | USA |
| 8004 | Vendor | 12/23/2010 | V1896 | TIME WARNER CABLE | 16114 | A/P Invoice | 20.21 | Cathay Bank - Regular Checking | 20.21 | Bank Transfer | P.O. BOX 60074 | CITY OF INDUSTRY | CA | 91716-0074 | USA |
| 8020 | Vendor | 1/3/2011 | V2094 | WALNUT VALLEY WATER DISTRICT | 16117 | A/P Invoice | 1,588.80 | US BANK - CHECKING | 1,588.80 | Bank Transfer | 271 S. BREA CANYON RD | WALNUT | CA | | USA |
| 8021 | Vendor | 1/3/2011 | V1455 | JOE INTERRANTE | 16242 | A/P Invoice | 113.26 | US BANK - CHECKING | 113.26 | Bank Transfer | 185 PROVIDENCE PLANTATION DR | WALNUT | CA | | USA |
| 8041 | Vendor | 1/6/2011 | V2241 | WELLS FARGO FINANCIAL LEASING MANUFACTURER SERVICES GROUP | 16650 | A/P Invoice | 2,777.02 | US BANK - CHECKING | 2,777.02 | Bank Transfer | P.O. BOX 7777 | SAN FRANCISCO | CA | 97120-7777 | USA |
| 8041 | Vendor | 1/6/2011 | V2241 | WELLS FARGO FINANCIAL LEASING MANUFACTURER SERVICES GROUP | 16321 | A/P Invoice | 2,717.20 | US BANK - CHECKING | 2,717.20 | Bank Transfer | P.O. BOX 7777 | SAN FRANCISCO | CA | 97120-7777 | USA |
| 8043 | Vendor | 1/6/2011 | V2241 | WELLS FARGO FINANCIAL LEASING MANUFACTURER SERVICES GROUP | 16658 | A/P Invoice | 96,000.00 | US BANK - CHECKING | 96,000.33 | Bank Transfer | P.O. BOX 7777 | SAN FRANCISCO | CA | 97120-7777 | USA |
| 8043 | Vendor | 1/6/2011 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14388 | A/P Invoice | 96,414.64 | US BANK - CHECKING | 96,414.64 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 8043 | Vendor | 1/6/2011 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14386 | A/P Invoice | 96,414.64 | US BANK - CHECKING | 96,414.64 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 8045 | Vendor | 1/6/2011 | V1937 | VERIZON CALIFORNIA | 16166 | A/P Invoice | 208.43 | US BANK - CHECKING | 208.43 | Bank Transfer | P.O. BOX 30001 | INGLEWOOD | CA | 90313-0001 | USA |
| 8049 | Vendor | 1/6/2011 | V1937 | VERIZON CALIFORNIA | 16166 | A/P Invoice | 208.43 | US BANK - CHECKING | 208.43 | Bank Transfer | P.O. BOX 30001 | INGLEWOOD | CA | 90313-0001 | USA |
| 8053 | Vendor | 1/7/2011 | V1811 | STAPLES CREDIT PLAN | 15546 | A/P Invoice | 14.63 | US BANK - CHECKING | 208.43 | Bank Transfer | P.O. BOX 689020 | DES MOINES | IA | 50368-9020 | USA |
| 8053 | Vendor | 1/7/2011 | V1811 | STAPLES CREDIT PLAN | 15546 | A/P Invoice | 37.28 | US BANK - CHECKING | 208.43 | Bank Transfer | P.O. BOX 689020 | DES MOINES | IA | 50368-9020 | USA |
| 8053 | Vendor | 1/7/2011 | V1811 | STAPLES CREDIT PLAN | 15546 | A/P Invoice | 9.99 | US BANK - CHECKING | 208.43 | Bank Transfer | P.O. BOX 689020 | DES MOINES | IA | 50368-9020 | USA |
| 8055 | Vendor | 1/7/2011 | V2223 | JOE INTERRANTE | 16177 | A/P Invoice | 2,233.44 | US BANK - CHECKING | 2,233.44 | Bank Transfer | 185 PROVIDENCE PLANTATION DR | ALPHARETTA | GA | 30004 | USA |
| 8070 | Account | 1/10/2011 | ACCRUED OFFICER | Cathay Bank | | Account List | 13,500.00 | CATHAY BANK - REGULAR CHECKING | 13,500.00 | Bank Transfer | 9659 Flair Drive | San Francisco | CA | | USA |
| 8074 | Vendor | 1/20/2011 | V1937 | AMERICAN EXPRESS | 16201 | A/P Invoice | 32,530.53 | US BANK - CHECKING | 32,530.53 | Bank Transfer | P.O. BOX 360002 | LOS ANGELES | CA | | USA |
| 8102 | Vendor | 1/24/2011 | V2088 | TRADE UNION INT'L (TAIWAN) LTD | 14530 | A/P Invoice | 54,049.00 | US BANK - CHECKING | 54,049.00 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 8104 | Vendor | 1/24/2011 | V1399 | HOME DEPOT CREDIT SERVICES | 9077 | A/P Invoice | 130.13 | US BANK - CHECKING | 165.35 | Bank Transfer | P.O. BOX 6029 | THE LAKES | NV | 88901-6029 | USA |
| 8104 | Vendor | 1/24/2011 | V1399 | HOME DEPOT CREDIT SERVICES | 16161 | A/P Invoice | 130.57 | US BANK - CHECKING | 165.35 | Bank Transfer | P.O. BOX 6029 | THE LAKES | NV | 88901-6029 | USA |
| 8156 | Vendor | 1/31/2011 | V1399 | HOME DEPOT CREDIT SERVICES | 16101 | A/P Invoice | 34.78 | US BANK - CHECKING | 165.35 | Bank Transfer | P.O. BOX 6029 | THE LAKES | NV | 88901-6029 | USA |

3b

EXHIBIT 2

**3b-1**

| Check No. | Payment No. | Vendor Code | Vendor Name | Vendor Category | Document Date | Creation Date | Check Amount | Bill-to Street | Bill-to City | Bill-to State | Bill-to Zip Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 28164 | 7675 | V2283 | RODOLFO RODRIGUEZ AGUILAR | FREIGHT OUT | 10/28/2010 | 10/28/2010 | 359.00 | 8430 MISSION BLVD. | RIVERSIDE | CA | 92509 |
| 28165 | 7683 | V1490 | KODAI (U.S.A.) INC. | INBOUND FREIGHT | 10/28/2010 | 10/28/2010 | 3,595.00 | 2440 S. HACIENDA BLVD | HACIENDA HEIGHT | CA | 91745 |
| 28166 | 7685 | V2390 | CLIFTON JONES | ADVERTISING & PROMOTION-WHEEL | 11/1/2010 | 11/1/2010 | 3,007.00 | 5877 WEST 88TH STREET | WESTCHESTER | CA | 90045 |
| 28167 | 7686 | V2392 | CHARLES ALSTON | ADVERTISING & PROMOTION-WHEEL | 11/1/2010 | 11/1/2010 | 3,000.00 | 115 EMERALD RIDGE DR. | BEAR | DE | 19701 |
| 28168 | 7690 | V1038 | ADP, INC. | PAYROLL SERVICES | 11/2/2010 | 11/2/2010 | 206.31 | P.O. BOX 78415 | PHOENIX | AZ | 85062-8415 |
| 28169 | 7691 | V1058 | AMC COLORGRAFIX | ADVERTISING & PROMOTION | 11/2/2010 | 11/2/2010 | 3,207.50 | 2085 PECK ROAD | SOUTH EL. MONTE | CA | 91733 |
| 28170 | 7692 | V1129 | BULLET TRANSPORTATION SERVICES | FREIGHT OUT | 11/2/2010 | 11/2/2010 | 7,166.05 | P.O. BOX 809066 | CHICAGO | IL | 60680-9066 |
| 28173 | 7693 | V1147 | ONTRAC | FREIGHT OUT | 11/2/2010 | 11/2/2010 | 205.15 | 274 WATTIS WAY | S. SAN FRANCISCO | CA | 94080 |
| 28174 | 7694 | V1163 | CENTURY COPY TECHNOLOGY | REPAIR & MAINTENANCE | 11/2/2010 | 11/2/2010 | 973.31 | 18301 E. VALLEY BLVD. | CITY OF INDUSTY | CA | 91744 |
| 28175 | 7695 | V1173 | CHASE AUTOMOTIVE FINANCE | AUTO AND GAS (OTHERS) | 11/2/2010 | 11/2/2010 | 2,912.11 | P.O. BOX 78067 | PHOENIX | AZ | 82062-8067 |
| 28176 | 7696 | V1201 | CONTINENTAL AGENCY | CUSTOMS DUTY AND SERVICES | 11/2/2010 | 11/2/2010 | 33,155.54 | 1400 MONTEFINO AVE. SUITE 200 | DIAMOND BAR | CA | 91765 |
| 28178 | 7697 | V1216 | CORE TRAVEL | TRAVEL EXPENSES | 11/2/2010 | 11/2/2010 | 436.00 | 18651 BOLD STREET | ROWLAND HEIGHTS | CA | 91748 |
| 28179 | 7698 | V1353 | GARY CHANG | FREIGHT OUT | 11/2/2010 | 11/2/2010 | 510.00 | 2819 CRYSTAL RIDGE ROAD | DIAMOND BAR | CA | 91765 |
| 28180 | 7699 | V1383 | HAWTHORNE LIFT SYSTEMS | REPAIR & MAINTENANCE | 11/2/2010 | 11/2/2010 | 537.60 | P.O. BOX 63093 | PHOENIX | AZ | 85082-3093 |
| 28181 | 7700 | V1406 | IMAGE DESIGN INC. | ADVERTISING & PROMOTION | 11/2/2010 | 11/2/2010 | 100.00 | 6141 CLOVER COURT | CHINO | CA | 91710 |
| 28182 | 7701 | V1413 | INDUSTRIAL FIRE PROTECTION CO. | REPAIR & MAINTENANCE | 11/2/2010 | 11/2/2010 | 1,541.00 | P.O. BOX 9045 | REDLANDS | CA | 92375 |
| 28 | 7702 | V1504 | L.A. MACHINERY MOVING INC | DRAYAGE & DEMURRAGE-WHEEL | 11/2/2010 | 11/2/2010 | 360.00 | 14901 DON JULIAN RD | CITY INDUSTRY | CA | 91746 |
| 28 | 7703 | V1749 | SOUTHERN CALIFORNIA EDISON | UTILITIES | 11/2/2010 | 11/2/2010 | 840.91 | P.O. BOX 600 | ROSEMEAD | CA | 91771-0001 |
| 28 | 7704 | V1749 | SOUTHERN CALIFORNIA EDISON | UTILITY | 11/2/2010 | 11/2/2010 | 3,633.65 | P.O. BOX 600 | ROSEMEAD | CA | 91771-0001 |
| 28 | 7705 | V1794 | SLIM'S KEY SHOP | REPAIR & MAINTENANCE | 11/2/2010 | 11/2/2010 | 141.76 | 5989 TROTTERS LANE | ALTA LOMA | CA | 91701 |
| 28 | 7706 | V1806 | SPRINT | TELECOMMUNICATIONS | 11/2/2010 | 11/2/2010 | 589.72 | P.O. BOX 219100 | KANSAS CITY | MO | 64121-9100 |
| 28 | 7707 | V1811 | STAPLES CREDIT PLAN | OFFICE EXPENSES | 11/2/2010 | 11/2/2010 | 19.02 | P.O. BOX 689020 | DES MOINES | IA | 50368-9020 |
| 28 | 7708 | V1884 | TRAVELERS | INSURANCE - WORKERS COMP | 11/2/2010 | 11/2/2010 | 17,334.93 | CL REMITTANCE CTR | HARTFORD | CT | 06183-1008 |
| 28 | 7709 | V1895 | AMERI MONITORING SERVICE | ALARM MONITORING SERVICE | 11/2/2010 | 11/2/2010 | 577.00 | 8767 LIMONITE AVE., SUITE 100 | RANCHO CUCAMONGA | CA | 91730 |
| 28 | 7710 | V1901 | WALNUT VALLEY WATER DISTRICT | UTILITIES (OTHERS) | 11/2/2010 | 11/2/2010 | 237.71 | 271 S. BREA CANYON ROAD | WALNUT | CA | 91789-0508 |
| 28 | 7711 | V2019 | CHADPAK CO, INC | PACKAGING SUPPLIES | 11/2/2010 | 11/2/2010 | 2,453.00 | 16141 COVELLO STREET | VAN NUYS | CA | 91406 |
| 28 | 7712 | V2044 | BANK OF AMERICA | Credit Cards Payable | 11/2/2010 | 11/2/2010 | 650.45 | P.O. BOX 53132 | LOS ANGELES | CA | 90030-1200 |
| 28 | 7713 | V2151 | MONTEREY LIGHTING SOLUTIONS, INC. | REPAIR & MAINTENANCE (WHEEL) | 11/2/2010 | 11/2/2010 | 580.47 | 2148 POMONA BLVD. | POMONA | CA | 91768 |
| 28195 | 7714 | V2222 | CF MANUFACTURING, INC. | COGS-WHEEL | 11/2/2010 | 11/2/2010 | 40.00 | 11867 SHELDON STREET | SUN VALLEY | CA | 91352 |
| 28197 | 7715 | V2249 | PRINCIPAL FINANCIAL GROUP | INSURANCE EXP-HEALTH & DENTAL | 11/2/2010 | 11/2/2010 | 1,768.59 | P.O. BOX 10372 | DES MOINES | IA | 50306-0372 |
| 28198 | 7716 | V2278 | TIRECO, INC | INVENTORY RECEIVED NOT BILLED | 11/2/2010 | 11/2/2010 | 714.20 | 500 W. 190TH ST 6TH FLOOR | GARDENA | CA | 90248-4265 |
| 28 | 7717 | V2297 | MOUNTAIN VIEW PACKAGING, INC. | PACKAGING SUPPLIES | 11/2/2010 | 11/2/2010 | 2,913.60 | 4773 BROOKS STREET UNIT G | MONTCLAIR | CA | 91763 |
| 28 | 7718 | V2330 | SOUTHERN CALIFORNIA EDISON | UTILITIES | 11/2/2010 | 11/2/2010 | 22.76 | P.O. BOX 300 | ROSEMEAD | CA | 92117-0001 |
| 28201 | 7720 | V2342 | EULER HERMES ACI | INVENTORY RECEIVED NOT BILLED | 11/2/2010 | 11/2/2010 | 184.21 | 800 RED BROOK BLVD. | OWINGS MILLS | MD | 21117 |
| 28202 | 7721 | V2344 | DE LAGE LANDEN | EQUIPMENT LEASE | 11/2/2010 | 11/2/2010 | 8,850.00 | P.O. BOX 41602 | PHILADELPHIA | PA | 19101-1602 |
| 28203 | 7722 | V2346 | GLOBE GAS CORPORATION | AUTO AND GAS | 11/2/2010 | 11/2/2010 | 59.10 | 5843 PARAMOUNT BLVD. | LONG BEACH | CA | 90805 |
| 28204 | 7723 | V2360 | CLARK DISTRIBUTION SYSTEMS, INC | FREIGHT OUT | 11/2/2010 | 11/2/2010 | 2,525.19 | P.O. BOX 85095 | CHICAGO | IL | 60680-0851 |
| 28205 | 7728 | V2223 | NEXEN TIRE | INVENTORY RECEIVED NOT BILLED | 11/2/2010 | 11/2/2010 | 1,998.44 | 21073 Pathfinder | Diamond Bar | CA | 94080 |
| 28206 | 7729 | V1147 | ONTRAC | FREIGHT OUT | 11/2/2010 | 11/2/2010 | 749.14 | 274 WATTIS WAY | S. SAN FRANCISCO | CA | 94080 |
| 28207 | 7738 | V1542 | MARIA VARGAS | REPAIR & MAINTENANCE | 11/3/2010 | 11/3/2010 | 800.00 | 1416 VIRGINIA AVENUE | ONTARIO | CA | 91764 |
| 28208 | 7739 | V1892 | SUMMIT LOGISTICS INTL. | INBOUND FREIGHT | 11/4/2010 | 11/4/2010 | 2,600.00 | 780 NOGALES STREET, BUILDING D | CITY OF INDUSTRY | CA | 91748 |
| 28209 | 7751 | V1912 | UNITED STATES POSTAL SERVICE | POSTAGE AND CURRIER SERVICES | 11/10/2010 | 11/10/2010 | 4,000.00 | CMRS-POC | LOS ANGELES | CA | 90189-4715 |
| 28210 | 7752 | V1968 | WEN PIN CHANG | RENT EXPENSE | 11/10/2010 | 11/10/2010 | 25,500.00 | 2819 CRYSTAL RIDGE ROAD | DIAMOND BAR | CA | 91765 |
| 28211 | 7753 | V1564 | MEI LIEN CHANG | RENT | 11/10/2010 | 11/10/2010 | 15,700.00 | 2819 CRYSTAL RIDGE ROAD | DIAMOND BAR | CA | 91765 |
| 28212 | 7754 | V2246 | TDWIL | INVENTORY RECEIVED NOT BILLED | 11/10/2010 | 11/10/2010 | 257.70 | 1714 Anaheim Ave. | Compton | CA | 90220 |
| 28213 | 7755 | V2222 | CREATIVE DOCUMENT SOLUTIONS | OFFICE EXPENSES | 11/10/2010 | 11/10/2010 | 257.70 | 1629 MARION WALDO ROAD | MARION | OH | 43302 |
| 28214 | 7756 | V2346 | GLOBE GAS CORPORATION | AUTO AND GAS | 11/10/2010 | 11/10/2010 | 49.96 | 5843 PARAMOUNT BLVD. | LONG BEACH | CA | 90805 |
| 28215 | 7757 | V1915 | UPS SUPPLY CHAIN SOLUTIONS, INC. | INBOUND FREIGHT | 11/10/2010 | 11/10/2010 | 867.53 | 28013 NETWORK PLACE | CHICAGO | IL | 60673-1280 |
| 28216 | 7758 | V1769 | CA STATE DISBURSEMENT UNIT | EMPLOYEE ADVANCE | 11/10/2010 | 11/10/2010 | 280.96 | PO BOX 989067 | WEST SACRAMENTO | CA | 95798-9067 |
| 28217 | 7759 | V1769 | CA STATE DISBURSEMENT UNIT | EMPLOYEE ADVANCE | 11/10/2010 | 11/10/2010 | 231.92 | PO BOX 989067 | WEST SACRAMENTO | CA | 95798-9067 |
| 28218 | 7760 | V1490 | KODAI (U.S.A.) INC. | INBOUND FREIGHT | 11/10/2010 | 11/10/2010 | 3,370.00 | 2440 S. HACIENDA BLVD | HACIENDA HEIGHT | CA | 91745 |
| 28219 | 7761 | V1892 | SUMMIT LOGISTICS INTL. | INBOUND FREIGHT | 11/10/2010 | 11/10/2010 | 9,668.73 | 780 NOGALES STREET, BUILDING D | CITY OF INDUSTRY | CA | 91748 |
| 28220 | 7762 | V2394 | RALPHS GROCERY COMPANY | EMPLOYEE BENEFIT | 11/11/2010 | 11/11/2010 | 910.80 | P.O. BOX 54143 | LOS ANGELES | CA | 90054 |

**EXHIBIT 2**

| Check No. | Payment No. Vendor Code | Vendor Name | Vendor Category | Document Date | Creation Date | Check Amount | Bill-to Street | Bill-to City | Bill-to State | Bill-to Zip Code |
|---|---|---|---|---|---|---|---|---|---|---|
| 28221 | V2251 | GRACE ROOTER & PLUMBING | REPAIR & MAINTENANCE | 11/15/2010 | 11/15/2010 | 75.00 | 461 W. MONTICELLO CT. | ONTARIO | CA | 91762 |
| 28222 | V2374 | ConDocS | PROFESSIONAL FEE | 11/16/2010 | 11/16/2010 | 14,779.70 | 31822 Village Center Road #202 | Westlake Village | CA | 91361 |
| 28223 | V2360 | CLARK DISTRIBUTION SYSTEMS, INC. | FREIGHT OUT | 11/16/2010 | 11/16/2010 | 574.60 | P.O. BOX 85045 | CHICAGO | IL | 60680-0851 |
| 28224 | V1564 | MEI LIEN CHANG | RENT | 11/16/2010 | 11/16/2010 | 10,536.00 | 2819 CRYSTAL RIDGE ROAD | DIAMOND BAR | CA | 91765 |
| 28225 | V1968 | WEN PIN CHANG | RENT EXPENSE | 11/16/2010 | 11/16/2010 | 20,500.00 | 2819 CRYSTAL RIDGE ROAD | DIAMOND BAR | CA | 91765 |
| 28226 | V1316 | FARGO ADVERTISING | ADVERTISING & PROMOTION-WHEEL | 11/16/2010 | 11/16/2010 | 2,675.71 | 2213 SASTRE AVE | S. EL MONTE | CA | 91733 |
| 28227 | C0632 | WHEEL COMPONENTS | INBOUND FREIGHT | 11/17/2010 | 11/17/2010 | 4,035.00 | 6920 SOUTH 400 WEST | MIDVALE | UT | 84047 |
| 28228 | V1892 | SUMMIT LOGISTICS INTL | LICENSES & PERMITS | 11/18/2010 | 11/18/2010 | 3,000.00 | 780 NOGALES STREET, BUILDING D | CITY OF INDUSTRY | CA | 91748 |
| 28229 | V2395 | SECRETARY OF STATE | LICENSES & PERMITS | 11/18/2010 | 11/18/2010 | 40.00 | | | | |
| 28230 | V2223 | DIAMOND BAR COUNTRY ESTATES | INVENTORY RECEIVED NOT BILLED | 11/19/2010 | 11/19/2010 | 135.60 | 21073 Pathfinder | Diamond Bar | CA | 91765 |
| 28231 | V2188 | LANDSBERG | PACKAGING SUPPLIES | 11/19/2010 | 11/19/2010 | 1,391.50 | DEPT. 6106 | LOS ANGELES | CA | 90084-6106 |
| 28232 | V2396 | FABIOLA BANALES | OUTSIDE LABOR | 11/22/2010 | 11/22/2010 | 437.25 | 146 N. VIRGINIA AVE. | ONTARIO | CA | 91764 |
| 28233 | V2397 | MARIA TEMORES | OUTSIDE LABOR | 11/22/2010 | 11/22/2010 | 433.31 | 1560 S. EUCLID AVE. | ONTARIO | CA | 91762 |
| 28234 | V1411 | OLD DOMINION FREIGHT LINE INC | FREIGHT OUT | 11/22/2010 | 11/22/2010 | 330.45 | File 030989 | SAN FRANCISCO | CA | 94161 |
| 28235 | V2383 | AT&T MOBILITY | TELECOMMUNICATIONS (OTHERS) | 11/22/2010 | 11/22/2010 | 445.62 | P.O. BOX 60017 | LOS ANGELES | CA | 90060-0017 |
| 28236 | V2289 | CITY OF CHINO HILLS | UTILITIES (OTHERS) | 11/22/2010 | 11/22/2010 | 178.64 | 1400 CITY CENTER DRIVE | CHINO HILLS | CA | 91709-5442 |
| 28237 | V1253 | DIAMOND BAR COUNTRY ESTATES | DUES & SUBSCRIPTION (OTHERS) | 11/22/2010 | 11/22/2010 | 485.00 | 22615 LAZY MEADOW DRIVE | DIAMOND BAR | CA | 91765 |
| 28238 | V1249 | DHL EXPRESS - USA | CUSTOMS DUTY AND SERVICES | 11/22/2010 | 11/22/2010 | 12.00 | 16592 COLLECTIONS CENTER DRIVE | CHICAGO | IL | 60693 |
| 28239 | V1472 | KAISER FOUNDATION HEALTH PLAN | INSURANCE EXP-HEALTH & DENTAL | 11/22/2010 | 11/22/2010 | 6,996.00 | FILE 5915 | LOS ANGELES | CA | 90074-5915 |
| 28240 | V1542 | KEY EQUIPMENT FINANCE | EQUIPMENT LEASE | 11/22/2010 | 11/22/2010 | 675.32 | PAYMENT PROCESSING | CLEVELAND | OH | 44194-0796 |
| 28241 | V1593 | MARIA VARGAS | REPAIR & MAINTENANCE | 11/22/2010 | 11/22/2010 | 200.00 | 1416 VIRGINIA AVENUE | ONTARIO | CA | 91764 |
| 28242 | V2151 | MONTE VISTA WATER DISTRICT | UTILITIES | 11/22/2010 | 11/22/2010 | 1,198.77 | 10575 CENTRAL AVENUE | MONTCLAIR | CA | 91763 |
| 28243 | V1376 | MONTEREY LIGHTING SOLUTIONS, INC. | REPAIR & MAINTENANCE (WHEEL) | 11/22/2010 | 11/22/2010 | 293.18 | 2148 POMONA BLVD. | POMONA | CA | 91768 |
| 28244 | V1884 | SUBURBAN LANDSCAPE & MNTNCE | REPAIR & MAINTENANCE | 11/22/2010 | 11/22/2010 | 8,418.00 | P.O. BOX 9045 | LOS ANGELES | CA | 90051 |
| 28245 | V2177 | H & L PRECISION GRINDING | INSURANCE EXP-HEALTH & DENTAL | 11/22/2010 | 11/22/2010 | 1,768.59 | P.O. BOX 10372 | DES MOINES | IA | 50306-1346 |
| 28246 | V2294 | PRINCIPAL FINANCIAL GROUP | INSURANCE EXP-HEALTH & DENTAL | 11/22/2010 | 11/22/2010 | 445.61 | 7231 BOULDER AVENUE #306 | HIGHLAND | CA | 92346 |
| 28247 | V1858 | RANCHO CUCAMONGA BUILDING OWNE | DUES & SUBSCRIPTION | 11/22/2010 | 11/22/2010 | 23.44 | P.O. BOX 526015 | ROSEMEAD | CA | 95852-6015 |
| 28248 | V1604 | SOUTHERN CALIFORNIA EDISON | UTILITIES | 11/22/2010 | 11/22/2010 | 1,804.08 | P.O. BOX 600 | SACRAMENTO | CA | 91756 |
| 28249 | V1763 | TELEPACIFIC COMMUNICATIONS | TELECOMMUNICATIONS (OTHERS) | 11/22/2010 | 11/22/2010 | 85.53 | P.O. BOX C | MONTEREY PARK | CA | 91765 |
| 28250 | V2245 | THE GAS COMPANY | UTILITIES (OTHERS) | 11/22/2010 | 11/22/2010 | 280.00 | 1819 TINTAH DR. | DIAMOND BAR | CA | 92840 |
| 28251 | V1947 | TRIPLE A POOL SERVICE | REPAIR & MAINTENANCE (OTHERS) | 11/22/2010 | 11/22/2010 | 345.00 | 12581 JANET LANE | GARDEN GROVE | AZ | 85062-9168 |
| 28252 | V1958 | VIDAL LANDA | UTILITIES (OTHERS) | 11/22/2010 | 11/22/2010 | 70.02 | P.O. BOX 79168 | PHOENIX | CA | 91708 |
| 28253 | V1216 | WASTE MANAGEMENT OF SAN GABRIEL | UTILITIES (OTHERS) | 11/22/2010 | 11/22/2010 | 563.00 | 18651 BOLD STREET | ROWLAND HEIGHTS | CA | 90670 |
| 28254 | V1376 | COME TRAVEL | TRAVEL EXPENSES | 11/22/2010 | 11/22/2010 | 475.00 | P.O. BOX 693 | CHINO | CA | 92375 |
| 28255 | V2376 | GREENLAND LANDSCAPE & MAINTENANCE | REPAIR & MAINTENANCE | 11/22/2010 | 11/22/2010 | 130.00 | P.O BOX 889067 | SANTA FE SPRINGS | CA | 92509 |
| 28256 | V1763 | INDUSTRIAL FIRE PROTECTION CO. | REPAIR & MAINTENANCE | 11/22/2010 | 11/22/2010 | 75.00 | P.O. BOX 9045 | REDLANDS | CA | 92509 |
| 28257 | V2283 | RODOLFO RODRIGUEZ AGUILAR | FREIGHT OUT (I) | 11/22/2010 | 11/22/2010 | 1,443.00 | 8430 MISSION BLVD. | RIVERSIDE | CA | 94145-0840 |
| 28258 | V1604 | MALFINANCE | POSTAGE AND CURRIER SERVICES | 11/23/2010 | 11/23/2010 | 78.48 | P.O. BOX 45840 | SAN FRANCISCO | CA | 91762 |
| 28259 | V1302 | ENVIROKLEEN | WAREHOUSE EXP | 11/23/2010 | 11/23/2010 | 1,117.67 | 5420 W. MISSION BLVD | ONTARIO | CA | 91001 |
| 28260 | V1493 | LARRY BROWN | PREPAID ROYALTY | 11/23/2010 | 11/23/2010 | 1,750.00 | 160 E LOMA ALTA DRIVE | ALTADENA | CA | 92253 |
| 28261 | V2369 | MGLLC | PROFESSIONAL FEE | 11/24/2010 | 11/24/2010 | 8,000.00 | 50855 WASHINGTON ST. 2C-SUITE 334 | LA QUINTA | PA | 19195-2330 |
| 28262 | V2325 | ANDERSON AIR CONDITIONING | REPAIR & MAINTENANCE | 11/29/2010 | 11/29/2010 | 1,058.00 | P.O. BOX 95000-2330 | PHILADELPHIA | CA | 91745 |
| 28263 | V1405 | ID TRAVEL | TRAVEL EXPENSES (INTL) | 11/29/2010 | 11/29/2010 | 1,160.00 | 16073 SIGMAN STREET | HACIENDA | CA | 95798-9067 |
| 28264 | V1769 | CA STATE DISBURSEMENT UNIT | EMPLOYEE ADVANCE | 11/29/2010 | 11/29/2010 | 280.96 | PO BOX 989067 | WEST SACRAMENTO | CA | 95798-9067 |
| 28265 | V1769 | CA STATE DISBURSEMENT UNIT | EMPLOYEE ADVANCE | 11/29/2010 | 11/29/2010 | 231.92 | PO BOX 989067 | WEST SACRAMENTO | CA | 92415 |
| 28266 | V2169 | Sheriff's Court Services Central | EMPLOYEE ADVANCE | 11/29/2010 | 11/29/2010 | 332.32 | 157 W. 5th Street | San Bernardino | CA | 91748 |
| 28267 | V1892 | SUMMIT LOGISTICS INTL | INBOUND FREIGHT | 11/29/2010 | 11/29/2010 | 1,753.12 | 780 NOGALES STREET, BUILDING D | CITY OF INDUSTRY | CA | 91765 |
| 28268 | V1968 | WEN PIN CHANG | RENT EXPENSE | 12/1/2010 | 12/1/2010 | 20,500.00 | 2819 CRYSTAL RIDGE ROAD | DIAMOND BAR | CA | 91765 |
| 28269 | V1564 | MEI LIEN CHANG | RENT | 12/1/2010 | 12/1/2010 | 20,506.00 | 2819 CRYSTAL RIDGE ROAD | DIAMOND BAR | CA | 92337-7153 |
| 28270 | V1027 | ABF FREIGHT SYSTEM INC. | FREIGHT OUT (G) | 12/1/2010 | 12/1/2010 | 2,084.65 | 10744 ALMOND AVENUE | FONTANA | CA | 91615-6843 |
| 28271 | V1038 | A-CO TEMPORARY POWER | UTILITIES (OTHERS) | 12/1/2010 | 12/1/2010 | 27.44 | P.O. BOX 16843 | NO.HOLLYWOOD | AZ | 85062-8415 |
| 28272 | V1038 | ADP, INC. | PAYROLL SERVICES | 12/1/2010 | 12/1/2010 | 1,203.86 | P.O. BOX 78415 | PHOENIX | AZ | 92585 |
| 28273 | V1041 | AFFORDABLE INTERNET SERVICES | PROFESSIONAL FEE | 12/1/2010 | 12/1/2010 | 540.00 | 26655 LOUISA LANE | ROMOLAND | CA | |

3b-1

EXHIBIT 2

**3b-1**

| Check No. | Payment No. | Vendor Code | Vendor Name | Vendor Category | Document Date | Creation Date | Check Amount | Bill-to Street | Bill-to City | Bill-to State | Bill-to Zip Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 28274 | 7843 | V1129 | BULLET TRANSPORTATION SERVICES | FREIGHT OUT | 12/1/2010 | 12/1/2010 | 14,820.02 | P.O. BOX 809066 | CHICAGO | IL | 60680-9066 |
| 28282 | 7844 | V1131 | BURRTEC WASTE INDUSTRIES INC. | UTILITIES | 12/1/2010 | 12/1/2010 | 578.10 | PAYMENT PROCESSING CENTER | BUENA PARK | CA | 90622-6520 |
| 28283 | 7845 | V1147 | ONTRAC | FREIGHT OUT | 12/1/2010 | 12/1/2010 | 556.03 | 274 WATTIS WAY | S. SAN FRANCISCO | CA | 94080 |
| 28284 | 7846 | V1163 | CENTURY COPY TECHNOLOGY | REPAIR & MAINTENANCE | 12/1/2010 | 12/1/2010 | 1,620.83 | 18301 E. VALLEY BLVD. | CITY OF INDUSTY | CA | 91744 |
| 28285 | 7847 | V1201 | CONTINENTAL AGENCY | CUSTOMS DUTY AND SERVICES | 12/1/2010 | 12/1/2010 | 13,411.74 | 1400 MONTEFINO AVE. SUITE 200 | DIAMOND BAR | CA | 91765 |
| 28287 | 7848 | V1224 | CROWN LIFT TRUCKS | EQUIPMENT LEASE | 12/1/2010 | 12/1/2010 | 3,443.90 | P.O. BOX 641173 | CINCINNATI | OH | 45264-1173 |
| 28288 | 7849 | V1280 | DUB PUBLISHING INC. | ADVERTISING & PROMOTION-WHEEL | 12/1/2010 | 12/1/2010 | 5,250.00 | 16815 JOHNSON DRIVE | CITY OF INDUSTRY | CA | 91745-1819 |
| 28289 | 7850 | V1383 | HAWTHORNE LIFT SYSTEMS | REPAIR & MAINTENANCE | 12/1/2010 | 12/1/2010 | 3,717.81 | P.O. BOX 83093 | PHOENIX | AZ | 85082-3093 |
| 28290 | 7851 | V1406 | IMAGE DESIGN INC. | ADVERTISING & PROMOTION | 12/1/2010 | 12/1/2010 | 3,440.00 | 6141 CLOVER COURT | CHINO | CA | 91710 |
| 28291 | 7852 | V1472 | KAISER FOUNDATION HEALTH PLAN | INSURANCE EXP-HEALTH & DENTAL | 12/1/2010 | 12/1/2010 | 7,142.00 | FILE 5915 | LOS ANGELES | CA | 90074-5915 |
| 28292 | 7853 | V1498 | LA HABRA PLATING CO. | COGS-TRUCK ACCESSORIES | 12/1/2010 | 12/1/2010 | 1,048.26 | 900 SO. CYPRESS STREET | LA HABRA | CA | 90631-6887 |
| 28293 | 7854 | V1542 | MARIA VARGAS | REPAIR & MAINTENANCE | 12/1/2010 | 12/1/2010 | 200.00 | 1416 VIRGINIA AVENUE | ONTARIO | CA | 91764 |
| 28295 | 7855 | V1566 | BROTHER MEZA'S PALLETS | PACKAGING SUPPLIES | 12/1/2010 | 12/1/2010 | 3,240.00 | P.O. BOX 310506 | FONTANA | CA | 92331 |
| 28296 | 7856 | V1567 | MEYERS DISTRIBUTING | ADVERTISING & PROMOTION-WHEEL | 12/1/2010 | 12/1/2010 | 680.00 | 799 CAMARILLO SPRINGS ROAD | CAMARILLO | CA | 93012-8111 |
| 28296 | 7857 | V1677 | TRANSWORLD SYSTEMS INC | PROFESSIONAL FEE-COLLECTION (WH | 12/1/2010 | 12/1/2010 | 784.65 | ATTN: TSI COMMERCIAL DIVISION | CHICAGO | IL | 60673-1248 |
| 28297 | 7858 | V1622 | OLD DOMINION FREIGHT LINE INC | FREIGHT OUT | 12/1/2010 | 12/1/2010 | 1,910.39 | File 030989 | SAN FRANCISCO | CA | 94160 |
| 28299 | 7859 | V1644 | PACIFICARE OF CALIFORNIA | INSURANCE EXP-HEALTH & DENTAL | 12/1/2010 | 12/1/2010 | 8,195.62 | DEPT NO. 1346 | LOS ANGELES | CA | 90088-1346 |
| 28300 | 7860 | V1686 | PRESTIGE INTERNATIONAL | INVENTORY RECEIVED NOT BILLED | 12/1/2010 | 12/1/2010 | 1,000.01 | 17150 NEWHOPE ST. | FOUNTAIN VALLEY | CA | 92708 |
| 28303 | 7861 | V1747 | SOUTHERN CALIFORNIA EDISON | UTILITIES | 12/1/2010 | 12/1/2010 | 645.87 | P.O. BOX 600 | ROSEMEAD | CA | 91771-0001 |
| 28304 | 7862 | V1749 | SOUTHERN CALIFORNIA EDISON | UTILITY | 12/1/2010 | 12/1/2010 | 2,603.36 | P.O. BOX 600 | ROSEMEAD | CA | 91771-0001 |
| 28306 | 7863 | V1811 | STAPLES CREDIT PLAN | OFFICE EXPENSES | 12/1/2010 | 12/1/2010 | 203.07 | P.O. BOX 689020 | DES MOINES | IA | 50368-9020 |
| 28307 | 7864 | V1858 | TELEPACIFIC COMMUNICATIONS | TELECOMMUNICATIONS | 12/1/2010 | 12/1/2010 | 1,802.89 | P.O. BOX 526015 | SACRAMENTO | CA | 95852-6015 |
| 28308 | 7865 | V1872 | TK SYSTEMS INC. | WAREHOUSE EXP | 12/1/2010 | 12/1/2010 | 703.30 | 6949 BUCKEYE ST | CHINO | CA | 91710-8249 |
| 28310 | 7866 | V1915 | UPS FREIGHT | FREIGHT OUT | 12/1/2010 | 12/1/2010 | 312.20 | ATTN: ACCTS RECEIVABLE | WAUKEGAN | IL | 60079 |
| 28311 | 7867 | V1916 | UPS FREIGHT | FREIGHT OUT | 12/1/2010 | 12/1/2010 | 813.48 | 28013 NETWORK PLACE | CHICAGO | IL | 60673-1280 |
| 28315 | 7868 | V1945 | VISION EXPRESS | FREIGHT OUT | 12/1/2010 | 12/1/2010 | 697.15 | P.O. BOX 29319 | PHOENIX | AZ | 85038-9319 |
| 28309 | 7869 | V1947 | VIDAL LANDA | REPAIR & MAINTENANCE (OTHERS) | 12/1/2010 | 12/1/2010 | 195.00 | 12581 JANET LANE | GARDEN GROVE | CA | 92841 |
| 28310 | 7870 | V1960 | WALNUT VALLEY WATER DISTRICT | UTILITIES (OTHERS) | 12/1/2010 | 12/1/2010 | 180.83 | 271 S. BREA CANYON ROAD | WALNUT | CA | 91788-0508 |
| 28310 | 7871 | V1988 | EXPOSITION PRODUCTIONS LLC | SHOW EXP-WHEEL | 12/1/2010 | 12/1/2010 | 1,001.90 | 555 EAST PAMALYN SUITE B | LAS VEGAS | NV | 89119 |
| 28312 | 7872 | V2151 | MONTEREY LIGHTING SOLUTIONS, INC. | REPAIR & MAINTENANCE (WHEEL) | 12/1/2010 | 12/1/2010 | 580.47 | 2148 POMONA BLVD. | POMONA | CA | 91768 |
| 28313 | 7873 | V2168 | LSY TRUCKING | FREIGHT OUT - WHEEL | 12/1/2010 | 12/1/2010 | 2,600.00 | 9420 NAPLE ST. | BELLFLOWER | CA | 90706 |
| 28314 | 7874 | V2211 | CF MANUFACTURING, INC. | COGS-WHEEL | 12/1/2010 | 12/1/2010 | 40.00 | 11867 SHELDON STREET | SUN VALLEY | CA | 91352 |
| 28315 | 7875 | V2219 | ADP, INC. | PAYROLL SERVICES | 12/1/2010 | 12/1/2010 | 248.40 | P.O. BOX 0500 | CAROL STREAM | IL | 60132-0500 |
| 28316 | 7876 | V2224 | TDW | FREIGHT OUT | 12/1/2010 | 12/1/2010 | 693.39 | 1434 Anderson Ave | Compton | CA | 90220 |
| 28317 | 7877 | V2246 | RODOLFO RODRIGUEZ AGUILAR | FREIGHT RECEIVED NOT BILLED | 12/1/2010 | 12/1/2010 | 336.00 | 8436 MISSION BLVD | RIVERSIDE | CA | 92509 |
| 28318 | 7878 | V2297 | MOUNTAIN VIEW PACKAGING, INC. | PACKAGING SUPPLIES | 12/1/2010 | 12/1/2010 | 1,837.60 | 4773 BROOKS STREET UNIT G | MONTCLAIR | CA | 91763 |
| 28319 | 7879 | V2330 | SOUTHERN CALIFORNIA EDISON | UTILITIES | 12/1/2010 | 12/1/2010 | 22.57 | P.O. BOX 300 | ROSEMEAD | CA | 91772-0001 |
| 28320 | 7880 | V2337 | ALLIED CONSULTANTS, INC | PENSION MANAGEMENT FEE | 12/1/2010 | 12/1/2010 | 1,725.00 | 190 E. ARROW HWY. UNIT D | SAN DIMAS | CA | 91773 |
| 28321 | 7881 | V2344 | DE LAGE LANDEN | EQUIPMENT LEASE | 12/1/2010 | 12/1/2010 | 489.43 | P.O. BOX 41602 | PHILADELPHIA | PA | 19101-1602 |
| 28322 | 7882 | V2346 | GLOBE GAS CORPORATION | AUTO AND GAS | 12/8/2010 | 12/8/2010 | 111.05 | 5843 PARAMOUNT BLVD. | LONG BEACH | CA | 90805 |
| 28323 | 7883 | V2352 | THE 3 AMIGOS | INVENTORY RECEIVED NOT BILLED (C) | 12/8/2010 | 12/8/2010 | 1,869.00 | 15406 E. ARROW HIGHWAY | BALDWIN PARK | CA | 91706 |
| 28324 | 7884 | V2388 | PERSONNEL CONCEPTS | OFFICE EXPENSES | 12/8/2010 | 12/8/2010 | 54.44 | P.O. BOX 5750 | CAROL STREAM | IL | 60197-5750 |
| 28325 | 7886 | V2390 | CLIFTON JONES | ADVERTISING & PROMOTION-WHEEL | 12/8/2010 | 12/8/2010 | 3,000.00 | 5877 WEST 88TH STREET | WESTCHESTER | CA | 90045 |
| 28326 | 7891 | V1542 | MARIA VARGAS | REPAIR & MAINTENANCE | 12/22/2010 | 12/22/2010 | 600.00 | 1416 VIRGINIA AVENUE | ONTARIO | CA | 91764 |
| 28327 | 7892 | V2398 | BANK OF AMERICA | Credit Cards Payable | 12/22/2010 | 12/22/2010 | 3,023.60 | P.O. BOX 301200 | LOS ANGELES | CA | 90030-1200 |
| 28327 | 7894 | V2393 | SHLIMAN HODGES & BASTIAN LLP | PROFESSIONAL-LEGAL | 12/3/2010 | 12/3/2010 | 10,000.00 | 26632 TOWNE CENTRE DRIVE | FOOTHILL RANCH | CA | 92610 |
| 28328 | 7902 | V1915 | UPS SUPPLY CHAIN SOLUTIONS, INC. | INBOUND FREIGHT | 12/3/2010 | 12/3/2010 | 141.80 | 28013 NETWORK PLACE | CHICAGO | IL | 60673-1280 |
| 28329 | 7906 | V2399 | ALLEGRA CONSULTING, INC. | ADVERTISING & PROMOTION-WHEEL | 12/7/2010 | 12/7/2010 | 4,265.22 | P.O. BOX 2506 | PASADENA | CA | 91102 |
| 28331 | 7910 | V1902 | SUMMIT LOGISTICS INTL. | INBOUND FREIGHT | 12/8/2010 | 12/8/2010 | 30,378.88 | 780 NOGALES STREET, BUILDING D | CITY OF INDUSTRY | CA | 91748 |
| 28331 | 7911 | V1490 | KODAI (U.S.A.) INC. | INBOUND FREIGHT | 12/8/2010 | 12/8/2010 | 5,770.00 | 2440 S. HACIENDA BLVD | HACIENDA HEIGHT | CA | 91745 |
| 28332 | 7912 | V2397 | MARIA TEMORES | OUTSIDE LABOR | 12/8/2010 | 12/8/2010 | 528.00 | 1560 S. EUCLID AVE. | ONTARIO | CA | 91762 |
| 28333 | 7913 | V2396 | FABIOLA BANALES | OUTSIDE LABOR | 12/8/2010 | 12/8/2010 | 528.00 | 146 N. VIRGINIA AVE. | ONTARIO | CA | 91764 |
| 28334 | 7914 | V2400 | CUNNING DENTAL GROUP | EMPLOYEE BENEFIT | 12/8/2010 | 12/8/2010 | 413.00 | 9595 CENTRAL AVENUE | MONTCLAIR | CA | 91763 |

**EXHIBIT 2**

| Check No. | Payment No. | Vendor Code | Vendor Name | Vendor Category | Document Date | Creation Date | Check Amount | Bill-to Street | Bill-to City | Bill-to State | Bill-to Zip Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 28335 | 7917 | V1564 | THE CHANG REVOCABLE TRUST | RENT | 12/9/2010 | 12/9/2010 | 20,000.00 | 2819 CRYSTAL RIDGE ROAD | DIAMOND BAR | CA | 91765 |
| 28336 | 7922 | V1769 | CA STATE DISBURSEMENT UNIT | EMPLOYEE ADVANCE | 12/10/2010 | 12/10/2010 | 280.96 | PO BOX 989067 | WEST SACRAMENTO | CA | 95798-9067 |
| 28337 | 7923 | V1769 | CA STATE DISBURSEMENT UNIT | EMPLOYEE ADVANCE | 12/10/2010 | 12/10/2010 | 231.92 | PO BOX 989067 | WEST SACRAMENTO | CA | 95798-9067 |
| 28338 | 7927 | V1564 | THE CHANG REVOCABLE TRUST c/o Me | RENT | 12/13/2010 | 12/13/2010 | 60,000.00 | 2819 CRYSTAL RIDGE ROAD | DIAMOND BAR | CA | 91765 |
| 28339 | 7930 | V2283 | RODOLFO RODRIGUEZ AGUILAR | FREIGHT OUT | 12/15/2010 | 12/15/2010 | 415.00 | 8430 MISSION BLVD. | RIVERSIDE | CA | 92509 |
| 28340 | 7935 | V1201 | CONTINENTAL AGENCY | CUSTOMS DUTY AND SERVICES | 12/15/2010 | 12/15/2010 | 19,874.65 | 1400 MONTEFINO AVE. SUITE 200 | DIAMOND BAR | CA | 91765 |
| 28343 | 7939 | V1564 | THE CHANG REVOCABLE TRUST c/o Me | RENT | 12/16/2010 | 12/16/2010 | 10,000.00 | 2819 CRYSTAL RIDGE ROAD | DIAMOND BAR | CA | 91765 |
| 28344 | 7940 | V1542 | MARIA VARGAS | REPAIR & MAINTENANCE | 12/16/2010 | 12/16/2010 | 200.00 | 1416 VIRGINIA AVENUE | ONTARIO | CA | 91764 |
| 28345 | 7943 | V1912 | UNITED STATES POSTAL SERVICE | POSTAGE AND CURRIER SERVICES | 12/17/2010 | 12/17/2010 | 4,000.00 | CMRS-POC | LOS ANGELES | CA | 90189-4715 |
| 28346 | 7944 | V2369 | MGLLC | PROFESSIONAL FEE | 12/20/2010 | 12/20/2010 | 4,000.00 | 50855 WASHINGTON ST. 2C-SUITE 334 | LA QUINTA | CA | 92253 |
| 28347 | 7947 | V2397 | MARIA TEMORES | OUTSIDE LABOR | 12/20/2010 | 12/20/2010 | 309.38 | 1560 S. EUCLID AVE. | ONTARIO | CA | 91763 |
| 28349 | 7949 | V1769 | CA STATE DISBURSEMENT UNIT | EMPLOYEE ADVANCE | 12/20/2010 | 12/20/2010 | 280.96 | PO BOX 989067 | WEST SACRAMENTO | CA | 95798-9067 |
| 28350 | 7950 | V1769 | CA STATE DISBURSEMENT UNIT | EMPLOYEE ADVANCE | 12/20/2010 | 12/20/2010 | 231.92 | PO BOX 989067 | WEST SACRAMENTO | CA | 95798-9067 |
| 28351 | 7951 | V2169 | Sheriff's Court Services Central | EMPLOYEE ADVANCE | 12/20/2010 | 12/20/2010 | 332.30 | 157 W. 5th Street | San Bernardino | CA | 92415 |
| 28352 | 7954 | V1892 | SUMMIT LOGISTICS INTL. | INBOUND FREIGHT | 12/21/2010 | 12/21/2010 | 32,980.00 | 780 NOGALES STREET, BUILDING D | CITY OF INDUSTRY | CA | 91748 |
| 28353 | 7956 | V1033 | A-CO TEMPORARY POWER | UTILITIES (OTHERS) | 12/21/2010 | 12/21/2010 | 27.85 | P.O. BOX 16843 | NO.HOLLYWOOD | CA | 91615-6843 |
| 28354 | 7959 | V1131 | BURRTEC WASTE INDUSTRIES INC. | UTILITIES | 12/21/2010 | 12/21/2010 | 578.10 | PAYMENT PROCESSING CENTER | BUENA PARK | CA | 90622-6520 |
| 28356 | 7961 | V1147 | ONTRAC | FREIGHT OUT | 12/21/2010 | 12/21/2010 | 802.98 | 274 WATTIS WAY | S. SAN FRANCISCO | CA | 94080 |
| 28357 | 7962 | V1188 | CITY OF MONTCLAIR | UTILITIES | 12/21/2010 | 12/21/2010 | 33.11 | 5111 Benito St./P.O. BOX 2308 | MONTCLAIR | CA | 91763 |
| 28358 | 7963 | V1198 | CLEAR PACK ENGINEERING | PACKAGING SUPPLIES | 12/21/2010 | 12/21/2010 | 3,562.50 | 245 BENJAMIN DRIVE | CORONA | CA | 92879-8509 |
| 28359 | 7964 | V1201 | CONTINENTAL AGENCY | CUSTOMS DUTY AND SERVICES | 12/21/2010 | 12/21/2010 | 34,758.83 | 1400 MONTEFINO AVE. SUITE 200 | DIAMOND BAR | CA | 91765 |
| 28361 | 7966 | V1216 | COME TRAVEL | TRAVEL EXPENSES | 12/21/2010 | 12/21/2010 | 149.00 | 18651 BOLD STREET | ROWLAND HEIGHTS | CA | 91748 |
| 28363 | 7967 | V1253 | DIAMOND BAR COUNTRY ESTATES | DUES & SUBSCRIPTION (OTHERS) | 12/21/2010 | 12/21/2010 | 485.00 | 22615 LAZY MEADOW DRIVE | DIAMOND BAR | CA | 91765 |
| 28364 | 7969 | V1379 | FABIANO LANDSCAPE & MNTNCE | REPAIR & MAINTENANCE | 12/21/2010 | 12/21/2010 | 475.00 | P.O. BOX 600 | CHINO | CA | 91708 |
| 28365 | 7970 | V1383 | HAWTHORNE LIFT SYSTEMS | REPAIR & MAINTENANCE | 12/21/2010 | 12/21/2010 | 1,817.63 | P.O. BOX 83093 | PHOENIX | AZ | 85082-3093 |
| 28369 | 7971 | V1406 | IMAGE DESIGN INC. | ADVERTISING & PROMOTION | 12/21/2010 | 12/21/2010 | 2,595.00 | 6141 CLOVER COURT | CHINO | CA | 91710 |
| 28370 | 7972 | V1472 | KAISER FOUNDATION HEALTH PLAN | INSURANCE EXP-HEALTH & DENTAL | 12/21/2010 | 12/21/2010 | 7,162.00 | FILE 5915 | LOS ANGELES | CA | 90074-5915 |
| 28372 | 7973 | V1481 | KEY EQUIPMENT FINANCE | EQUIPMENT LEASE | 12/21/2010 | 12/21/2010 | 675.32 | PAYMENT PROCESSING | CLEVELAND | OH | 44194-0796 |
| 28379 | 7974 | V1542 | MARIA VARGAS | REPAIR & MAINTENANCE | 12/21/2010 | 12/21/2010 | 200.00 | 1416 VIRGINIA AVENUE | ONTARIO | CA | 91764 |
| 28382 | 7976 | V1604 | MAUFINANCE | POSTAGE AND CURRIER SERVICES | 12/21/2010 | 12/21/2010 | 78.48 | P.O. BOX 45940 | SAN FRANCISCO | CA | 94145-0840 |
| 28382 | 7977 | V1622 | OLD DOMINION FREIGHT LINE INC | FREIGHT OUT | 12/21/2010 | 12/21/2010 | 624.55 | File 030989 | SAN FRANCISCO | CA | 94160 |
| 28378 | 7978 | V1747 | SOUTHERN CALIFORNIA EDISON | UTILITIES | 12/21/2010 | 12/21/2010 | 869.53 | P.O. BOX 600 | ROSEMEAD | CA | 91771-0001 |
| 28381 | 7979 | V1749 | SOUTHERN CALIFORNIA EDISON | UTILITY | 12/21/2010 | 12/21/2010 | 2,851.16 | P.O. BOX 600 | ROSEMEAD | CA | 91771-0001 |
| 28385 | 7980 | V1797 | THE GAS COMPANY | TELECOMMUNICATIONS | 12/21/2010 | 12/21/2010 | 120.78 | P.O. BOX 219100 | MONTEREY PARK | CA | 91756 |
| 28386 | 7981 | V1806 | SPRINT | TELECOMMUNICATIONS | 12/21/2010 | 12/21/2010 | 570.03 | P.O. BOX 219100 | KANSAS CITY | MO | 64121-9100 |
| 28387 | 7982 | V1856 | TELEPACIFIC COMMUNICATIONS | TELECOMMUNICATIONS | 12/21/2010 | 12/21/2010 | 1,805.29 | P.O. BOX 526015 | SACRAMENTO | CA | 95852-6015 |
| 28389 | 7984 | V1884 | TRAVELERS | INSURANCE - WORKERS COMP | 12/21/2010 | 12/21/2010 | 17,334.93 | CL REMITTANCE CTR | HARTFORD | CT | 06183-1008 |
| 28390 | 7985 | V1915 | UPS SUPPLY CHAIN SOLUTIONS, INC. | INBOUND FREIGHT | 12/21/2010 | 12/21/2010 | 56.23 | 28013 NETWORK PLACE | CHICAGO | IL | 60673-1280 |
| 28393 | 7988 | V2177 | RANCHO CUCAMONGA BUILDING OWNE | DUES & SUBSCRIPTION | 12/21/2010 | 12/21/2010 | 595.02 | 7231 BOULDER AVENUE #306 | HIGHLAND | CA | 92346 |
| 28395 | 7990 | V2223 | NEXEN TIRE | INVENTORY RECEIVED NOT BILLED | 12/21/2010 | 12/21/2010 | 361.80 | 21073 Pathfinder | DIAMOND Bar | CA | 91765 |
| 28397 | 7992 | V2245 | TRIPLE A POOL SERVICE | REPAIR & MAINTENANCE (OTHERS) | 12/21/2010 | 12/21/2010 | 165.00 | 1819 TINTAH DR. | DIAMOND BAR | CA | 91765 |
| 28398 | 7993 | V2249 | PRINCIPAL FINANCIAL GROUP | INSURANCE EXP-HEALTH & DENTAL | 12/21/2010 | 12/21/2010 | 2,099.36 | P.O. BOX 10372 | DES MOINES | IA | 50306-0372 |
| 28399 | 7994 | V2276 | COVERALL NORTH AMERICA, INC. | REPAIR & MAINTENANCE | 12/21/2010 | 12/21/2010 | 80.00 | P.O. BOX 802825 | CHICAGO | IL | 60680 |
| 28400 | 7995 | V2277 | NEOFUNDS BY NEOPOST | POSTAGE AND CURRIER SERVICES | 12/21/2010 | 12/21/2010 | 700.00 | P.O. BOX 31021 | TAMPA | FL | 33631-3021 |
| 28401 | 7996 | V2278 | TIREOU, INC. | INVENTORY RECEIVED NOT BILLED | 12/21/2010 | 12/21/2010 | 1,312.36 | 550 W. 190TH ST 6TH FLOOR | GARDENA | CA | 90248-4265 |
| 28402 | 7997 | V2288 | CITY OF CHINO HILLS | UTILITIES (OTHERS) | 12/21/2010 | 12/21/2010 | 200.65 | 1400 CITY CENTER DRIVE | CHINO HILLS | CA | 91709-5442 |
| 28403 | 7998 | V2294 | SOUTHERN CALIFORNIA EDISON | UTILITIES | 12/21/2010 | 12/21/2010 | 23.06 | P.O. BOX 600 | ROSEMEAD | CA | 91771-0001 |
| 28406 | 8001 | V2319 | HAMPTON TEDDER ELECTRIC CO., INC. | REPAIR & MAINTENANCE | 12/21/2010 | 12/21/2010 | 1,480.19 | P.O. BOX 2128 | MONTCLAIR | CA | 91763 |
| 28407 | 8002 | V2329 | MILLER MACHINERY | REPAIR & MAINTENANCE (WHEEL) | 12/21/2010 | 12/21/2010 | 168.02 | 8112 RIVER BLUFFS LN. | CORONA | CA | 92880-8585 |
| 28408 | 8003 | V2344 | DE LAGE LANDEN | EQUIPMENT LEASE | 12/21/2010 | 12/21/2010 | 489.43 | P.O. BOX 41602 | PHILADELPHIA | PA | 19101-1602 |
| 28411 | 8005 | V2383 | AT&T MOBILITY | TELECOMMUNICATIONS (OTHERS) | 12/21/2010 | 12/21/2010 | 297.49 | P.O. BOX 6017 | LOS ANGELES | CA | 90060-0017 |
| 28411 | 8009 | V2398 | QUARTZ LOGISTICS INC. | INBOUND FREIGHT-WHEEL | 12/22/2010 | 12/22/2010 | 21,595.00 | 731 S. GARFIELD AVE. | ALHAMBRA | CA | 91801 |
| 28412 | 8013 | V2401 | Law Office of Sam Wu | PROFESSIONAL-LEGAL | 12/23/2010 | 12/28/2010 | 22,000.00 | 23555 Golden Springs Dr. Suite I | Diamond Bar | CA | 91765 |

3b-1

# EXHIBIT 2

| Check No. | Payment No. | Vendor Code | Vendor Name | Vendor Category | Document Date | Creation Date | Check Amount | Bill-to Street | Bill-to City | Bill-to State | Bill-to Zip Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 28414 | 8016 | V1564 | THE CHANG REVOCABLE TRUST c/o Me | RENT | 12/28/2010 | 12/28/2010 | 22,250.00 | 2819 CRYSTAL RIDGE ROAD | DIAMOND BAR | CA | 91765 |
| 28415 | 8017 | V2390 | CLIFTON JONES | ADVERTISING & PROMOTION-WHEEL | 1/14/2011 | 1/14/2011 | 3,000.00 | 5877 WEST 88TH STREET | WESTCHESTER | CA | 90045 |
| 97 | 8053 | V1058 | AMC COLORGRAFIX | ADVERTISING & PROMOTION | 1/12/2011 | 1/12/2011 | 237.31 | 2085 PECK ROAD | SOUTH EL MONTE | CA | 91733 |
| 104 | 8056 | V2233 | JOE INTERRANTE | COMMISSION-WHEEL | 1/14/2011 | 1/14/2011 | 4,719.91 | 185 PROVIDENCE PLANTATION DR. | ALPHARETTA | GA | 30004 |
| 105 | 8057 | V1540 | MARK BERGER SALES INC. | COMMISSION | 1/14/2011 | 1/14/2011 | 17,091.67 | 1631 ROCK RIVER | PLACENTIA | CA | 92870 |
| 103 | 8059 | V2403 | INTERSTATE TIRE DIST., INC. | | 1/14/2011 | 1/14/2011 | 627.56 | 6737 E. WASHINGTON BLVD | COMMERCE | CA | 90040-1801 |
| 99 | 8062 | V1446 | JEFF SHERMAN | INBOUND FREIGHT-WHEEL | 1/13/2011 | 1/18/2011 | 13,684.73 | | | | |
| 10001 | 8065 | V2398 | QUARTZ LOGISTICS INC. | INVENTORY RECEIVED NOT BILLED | 1/18/2011 | 1/18/2011 | 26,830.00 | 731 S. GARFIELD AVE. | ALHAMBRA | CA | 91801 |
| 10002 | 8066 | V2223 | NEXEN TIRE | | 1/19/2011 | 1/19/2011 | 336.12 | 21073 Pathfinder | Diamond Bar | CA | 91765 |
| 10003 | 8067 | V1163 | CENTURY COPY TECHNOLOGY | REPAIR & MAINTENANCE | 1/19/2011 | 1/19/2011 | 954.75 | 18301 E. VALLEY BLVD. | CITY OF INDUSTRY | CA | 91744 |
| 10004 | 8068 | V1881 | TOTAL VUE ELECTRONICS | ALARM MONITORING SERVICE | 1/19/2011 | 1/19/2011 | 70.00 | 11349 AINSLEY AVE | RIVERSIDE | CA | 92505 |
| 10005 | 8069 | V2296 | H & L PRECISION GRINDING | REPAIR & MAINTENANCE | 1/19/2011 | 1/19/2011 | 940.00 | 13610 IMPERIAL HWY. UNIT# 5 | SANTA FE SPRINGS | CA | 90670 |
| 10006 | 8070 | V2346 | GLOBE GAS CORPORATION | AUTO AND GAS | 1/19/2011 | 1/19/2011 | 190.23 | 5843 PARAMOUNT BLVD. | LONG BEACH | CA | 90805 |
| 10007 | 8071 | V2211 | CF MANUFACTURING, INC. | COGS-WHEEL | 1/19/2011 | 1/19/2011 | 55.00 | 11867 SHELDON STREET | SUN VALLEY | CA | 91352 |
| 10008 | 8073 | V2398 | QUARTZ LOGISTICS INC. | INBOUND FREIGHT-WHEEL | 1/20/2011 | 1/20/2011 | 35,080.00 | 731 S. GARFIELD AVE. | ALHAMBRA | CA | 91801 |
| 10009 | 8074 | V1302 | ENVIROKLEEN | WAREHOUSE EXP | 1/20/2011 | 1/20/2011 | 396.54 | 5420 W. MISSION BLVD | ONTARIO | CA | 91762 |
| 10010 | 8075 | V1769 | CA STATE DISBURSEMENT UNIT | EMPLOYEE ADVANCE | 1/20/2011 | 1/20/2011 | 561.92 | PO BOX 989067 | WEST SACRAMENTO | CA | 95798-9067 |
| 10011 | 8076 | V1769 | CA STATE DISBURSEMENT UNIT | EMPLOYEE ADVANCE | 1/20/2011 | 1/20/2011 | 463.84 | PO BOX 989067 | WEST SACRAMENTO | CA | 95798-9067 |
| 10012 | 8077 | V2169 | Sheriff's Court Services Central | EMPLOYEE ADVANCE | 1/20/2011 | 1/20/2011 | 332.30 | 157 W. 5th Street | San Bernardino | CA | 92415 |
| 10014 | 8079 | V1542 | MARIA VARGAS | REPAIR & MAINTENANCE | 1/20/2011 | 1/20/2011 | 1,000.00 | 1416 VIRGINIA AVENUE | ONTARIO | CA | 91764 |
| 10015 | 8080 | V1353 | GARY CHANG | Credit Cards Payable | 1/20/2011 | 1/20/2011 | 825.07 | 2819 CRYSTAL RIDGE ROAD | DIAMOND BAR | CA | 91765 |
| 10016 | 8083 | V2240 | CON-WAY FREIGHT | FREIGHT OUT | 1/21/2011 | 1/21/2011 | 1,792.99 | P.O. BOX 5160 | PORTLAND | OR | 97208-5160 |
| 10017 | 8084 | V2403 | INTERSTATE TIRE DIST., INC. | FREIGHT OUT | 1/21/2011 | 1/21/2011 | 328.72 | 6737 E. WASHINGTON BLVD | COMMERCE | CA | 90040-1801 |
| 10018 | 8085 | V1224 | CROWN LIFT TRUCKS | EQUIPMENT LEASE | 1/24/2011 | 1/24/2011 | 2,030.24 | P.O. BOX 641173 | CINCINNATI | OH | 45264-1173 |
| 10019 | 8086 | V1916 | UPS FREIGHT | FREIGHT OUT | 1/24/2011 | 1/24/2011 | 2,931.83 | 28013 NETWORK PLACE | CHICAGO | IL | 60673-1280 |
| 10020 | 8087 | V2223 | NEXEN TIRE | INVENTORY RECEIVED NOT BILLED | 1/24/2011 | 1/24/2011 | 277.06 | 21073 Pathfinder | Diamond Bar | CA | 91765 |
| 10021 | 8088 | V1896 | ULINE | PACKAGING SUPPLIES | 1/24/2011 | 1/24/2011 | 1,021.59 | ATTN: ACCOUNTS RECEIVABLE | WAUKEGAN | IL | |
| 10022 | 8089 | V1884 | TRAVELERS | INSURANCE - WORKERS COMP | 1/24/2011 | 1/24/2011 | 17,334.93 | CL REMITTANCE CTR | HARTFORD | CT | 06183-1008 |
| 10023 | 8090 | V1472 | PRINCIPAL FINANCIAL GROUP | INSURANCE EXP-HEALTH & DENTAL | 1/24/2011 | 1/24/2011 | 2,089.93 | PO BOX 10372 | DES MOINES | IA | 50306-0372 |
| 10024 | 8091 | V1644 | PACIFICARE OF CALIFORNIA | INSURANCE EXP-HEALTH & DENTAL | 1/24/2011 | 1/24/2011 | 8,195.62 | DEPT NO. 1346 | LOS ANGELES | CA | 90088-1346 |
| 10025 | 8092 | V1472 | KAISER FOUNDATION HEALTH PLAN | INSURANCE EXP-HEALTH & DENTAL | 1/24/2011 | 1/24/2011 | 7,162.00 | FILE 5915 | LOS ANGELES | CA | 90084-5915 |
| 10026 | 8093 | V1406 | IMAGE DESIGN INC. | ADVERTISING & PROMOTION | 1/24/2011 | 1/24/2011 | 1,860.00 | 6141 CLOVER COURT | CHINO | CA | 91710 |
| 10027 | 8094 | V2356 | JOSEPH G. HIGDON | PROFESSIONAL FEE (OTHERS) | 1/24/2011 | 1/24/2011 | 5,000.00 | 18814 GREENWAY | OLATHE | KS | 66062 |
| 10028 | 8095 | V1152 | Bank SinoPac | PACKAGING SUPPLIES | 1/24/2011 | 1/24/2011 | 56,000.00 | 350 S. Grand Avenue Ste 1650 | Los Angeles | CA | 90071 |
| 10029 | 8096 | V1566 | BROTHER MEZA'S PALLETS | PACKAGING SUPPLIES | 1/25/2011 | 1/25/2011 | 2,500.00 | P.O. BOX 1 | FONTANA | CA | 92031 |
| 10030 | 8097 | V1201 | CONTINENTAL AGENCY | CUSTOMS DUTY AND SERVICES | 1/25/2011 | 1/25/2011 | 19,654.44 | 1400 MONTEFINO AVE. SUITE 200 | DIAMOND BAR | CA | |
| 10031 | 8098 | V1945 | VISION EXPRESS | FREIGHT OUT | 1/25/2011 | 1/25/2011 | 2,183.26 | P.O. BOX 29319 | PHOENIX | AZ | 85038-9319 |
| 10037 | 8099 | V1129 | BULLET TRANSPORTATION SERVICES | FREIGHT OUT | 1/25/2011 | 1/25/2011 | 15,408.13 | P.O. BOX 809066 | CHICAGO | IL | 60680-9066 |
| 10038 | 8102 | V2362 | MAXIMO MEDIA | PROFESSIONAL FEE-DESIGN (WHEEL) | 1/27/2011 | 1/27/2011 | 1,500.00 | 13006 E. PHILADELPHIA ST. | WHITTIER | CA | 90601 |
| 10039 | 8103 | V2223 | NEXEN TIRE | INVENTORY RECEIVED NOT BILLED | 1/28/2011 | 1/28/2011 | 68.30 | 21073 Pathfinder | Diamond Bar | CA | 91765 |
| | | | | | | | 1,026,614.01 | | | | |

3b-1

# EXHIBIT 2

### <u>Payments made to Morrison & Foerster, LLP on behalf of Cathay Bank</u>

|  | Dated | Amount |
|---|---|---|
| MORRISON & FOERSTER, LLP,  INVOICE NO.4919495 DT 04/22/10 | 7/21/2010 | 1,361.25 |
| MORRISON & FOERSTER, LLP,  INVOICE NO.4926955 DT 05/18/10 | 7/21/2010 | 4,245.00 |
| MORRISON & FOERSTER, LLP,  INVOICE NO.4936166 DT 06/24/10 | 7/21/2010 | 7,941.06 |
| MORRISON & FOERSTER, LLP,  INVOICE NO.4675405 DT 05/19/08 | 8/17/2010 | 2,000.00 |
| MORRISON & FOERSTER, LLP,  INVOICE NO.4715122 DT 05/19/08 | 8/17/2010 | 297.50 |
| MORRISON & FOERSTER, LLP,  INVOICE NO.4735402 DT 07/31/08 | 8/17/2010 | 297.50 |
| MORRISON & FOERSTER, LLP,  INVOICE NO.4759590 DT 09/23/08 | 8/17/2010 | 2,082.50 |
| MORRISON & FOERSTER, LLP,  INVOICE NO.4787824 DT 12/07/08 | 8/17/2010 | 446.25 |
| MORRISON & FOERSTER, LLP,  INVOICE NO.4807728 DT 02/28/09 | 8/17/2010 | 297.50 |
| MORRISON & FOERSTER, LLP,  INVOICE NO.4821753 DT 04/22/09 | 8/17/2010 | 2,537.50 |
| MORRISON & FOERSTER, LLP,  INVOICE NO.4846425 DT 07/22/09 | 8/17/2010 | 148.75 |
| MORRISON & FOERSTER, LLP,  INVOICE NO.4800722 DT 01/31/09 | 8/17/2010 | 297.50 |
| MORRISON & FOERSTER, LLP,  INVOICE NO.4864470 DT 09/29/09 | 8/17/2010 | 1,041.25 |
| MORRISON & FOERSTER, LLP,  INVOICE NO.4894960 DT 01/20/10 | 8/17/2010 | 1,190.00 |
| MORRISON & FOERSTER, LLP,  INVOICE NO.4942560 07/15/10 | 10/15/2010 | 5,876.25 |
| MORRISON & FOERSTER, LLP,  INVOICE NO.4949291 08/11/10 | 10/15/2010 | 8,456.25 |
| MORRISON & FOERSTER, LLP,   INVOICE NO.4968758 DT 10/13/10 | 11/23/2010 | 9,727.50 |
|  | Total | 48,243.56 |

# EXHIBIT 2

# EXHIBIT 2

# Payment Made 90 Days  Prior To The Petition Date
# Duck House

## ATTACHMENT TO STATEMENT OF AFFAIRS, ITEM NO. 3.b.


## Payments to Creditors 90 Days Prior to the Petition Date

G:\Wp\Cases\C-D\Duck House, Inc\Petition Docs\Statement Affairs.wpd
4265-000\EXP. 88

# EXHIBIT 2

Duck House, Inc.
Statement of Financial Affairs
Fund Transfer Register - 3b

| DocNum | Type | DocDate | CardCode | CardName | DocEntry | Source Type | G/L Account | SumApplied | Pay Amount | Payment Type | Bill-to Street | Bill-to City | Bill-to State | Bill-to Zip Cod | Bill-to Country |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5906 | Account | 11/9/2010 | LOAN PAYABLE-CA | CATHAY BANK | | Account List | CATHAY BANK - REGULAR CHECKING | 50,000.00 | 50,000.00 | Bank Transfer | 9650 Flair Drive | El Monte | CA | 91731 | USA |
| 5802 | Vendor | 11/23/2010 | V01018 | AMERICAN EXPRESS | 6979 | A/P Invoice | Cathay Bank - Regular Checking | 26,246.34 | 26,246.34 | Bank Transfer | P.O. BOX 0001 | LOS ANGELES | CA | 90096-0001 | USA |
| 5887 | Vendor | 12/3/2010 | V01018 | AMERICAN EXPRESS | 7105 | A/P Invoice | Cathay Bank - Regular Checking | 20,667.57 | 20,667.57 | Bank Transfer | P.O. BOX 0001 | LOS ANGELES | CA | 90096-0001 | USA |
| 6016 | Vendor | 1/24/2011 | V01018 | AMERICAN EXPRESS | 7247 | A/P Invoice | US Bank - Checking | 27,606.83 | 27,606.83 | Bank Transfer | P.O. BOX 0001 | LOS ANGELES | CA | 90096-0001 | USA |
| 5793 | Vendor | 10/29/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | 6648 | A/P Invoice | Cathay Bank - Regular Checking | 82,990.68 | 43,160.68 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5793 | Vendor | 10/29/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | 6551 | A/P Invoice | Cathay Bank - Regular Checking | 170.00 | 43,160.68 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5793 | Vendor | 10/29/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | 171918 | Payment Advice | Cathay Bank - Regular Checking | (40,000.00) | 43,160.68 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5820 | Vendor | 11/16/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | 6736 | A/P Invoice | Cathay Bank - Regular Checking | 96,858.96 | 96,858.96 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5876 | Vendor | 11/19/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | | Unknown | Cathay Bank - Regular Checking | 20,000.00 | 20,000.00 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5877 | Vendor | 11/23/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | 6738 | A/P Invoice | Cathay Bank - Regular Checking | 122,219.76 | 102,219.76 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5877 | Vendor | 11/23/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | 174970 | Payment Advice | Cathay Bank - Regular Checking | (20,000.00) | 102,219.76 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5886 | Vendor | 12/1/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | 6846 | A/P Invoice | Cathay Bank - Regular Checking | 46.08 | 60,535.80 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5886 | Vendor | 12/1/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | 6845 | A/P Invoice | Cathay Bank - Regular Checking | 60,489.72 | 60,535.80 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5890 | Vendor | 12/6/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | | Unknown | Cathay Bank - Checking | 40,000.00 | 40,000.00 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5892 | Vendor | 12/7/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | 6757 | A/P Invoice | Cathay Bank - Regular Checking | 72,635.16 | 32,579.00 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5892 | Vendor | 12/7/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | 568 | A/P Credit Note | Cathay Bank - Regular Checking | (56.16) | 32,579.00 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5892 | Vendor | 12/7/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | 176660 | Payment Advice | Cathay Bank - Regular Checking | (40,000.00) | 32,579.00 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5900 | Vendor | 12/9/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | | Unknown | Cathay Bank - Regular Checking | 40,000.00 | 40,000.00 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5901 | Vendor | 12/10/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | 6774 | A/P Invoice | Cathay Bank - Regular Checking | 71,104.62 | 31,104.62 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5901 | Vendor | 12/10/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | 177095 | Payment Advice | Cathay Bank - Regular Checking | (40,000.00) | 31,104.62 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5906 | Vendor | 12/14/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | 6859 | A/P Invoice | Cathay Bank - Regular Checking | 99,185.28 | 100,313.56 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5906 | Vendor | 12/14/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | 6860 | A/P Invoice | Cathay Bank - Regular Checking | 1,200.00 | 100,313.56 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5906 | Vendor | 12/14/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | 574 | A/P Credit Note | Cathay Bank - Regular Checking | (71.72) | 100,313.56 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5907 | Vendor | 12/17/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | 6966 | A/P Invoice | Cathay Bank - Regular Checking | 64,770.00 | 64,770.00 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5909 | Vendor | 12/20/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | 6828 | A/P Invoice | Cathay Bank - Regular Checking | 58,059.00 | 138,524.05 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5909 | Vendor | 12/20/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | 6976 | A/P Invoice | Cathay Bank - Regular Checking | 80,465.05 | 138,524.05 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5962 | Vendor | 12/29/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | 6879 | A/P Invoice | Cathay Bank - Regular Checking | 58,944.00 | 116,948.40 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5962 | Vendor | 12/29/2010 | V01451 | TRADE UNION NTL (TAIWAN) LTD | 6961 | A/P Invoice | Cathay Bank - Regular Checking | 58,004.40 | 116,948.40 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 6022 | Vendor | 1/29/2011 | V01451 | TRADE UNION NTL (TAIWAN) LTD | | Unknown | Cathay Bank - Regular Checking | 30,000.00 | 30,000.00 | Bank Transfer | 5/F-F, NO.58, SHING SHAN RD | TAIPEI | | | Taiwan |
| 5953 | Vendor | 12/28/2010 | V01468 | LIUZHOU WANTEX TRADING CO., LTD. | | Unknown | | 3,916.80 | 3,916.80 | Bank Transfer | NO.3, THE SECOND YANGHE IN LIUZHOU | LIUZHOU | | GUANGXI | CHINA |
| 596 | Vendor | 12/29/2010 | V01468 | LIUZHOU WANTEX TRADING CO., LTD. | | Unknown | | 8,822.20 | 8,822.20 | Bank Transfer | NO.3, THE SECOND YANGHE IN LIUZHOU | LIUZHOU | | GUANGXI | CHINA |
| | | | | | | | | 1,054,274.57 | | | | | | | |

| | | | Check Register | | 3b | | | 557,396.78 | | | | | | | |
| | | | Fund Transfer | | 3b-1 | | | 1,054,274.57 | | | | | | | |
| | | | | | | | | 1,611,671.35 | | | | | | | |

Page 1 of 3

EXHIBIT 2

Duck House, Inc.
Statement of Financial Affairs
Check Register - 3b

| Check No. | Payment No. | Vendor Code | Vendor Name | Vendor Category | Document Date | Creation Date | Confirm Printing | Bill-to Street | Check Amount | Bill-to City | Bill-to State | Bill-to Zip Code |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 23204 | 5781 | V01469 | LICENSING RESOURCE GROUP | Royty | 10/27/2010 | 10/27/2010 | Y | 442 CENTURY LANE, SUITE 100 | 3,715.33 | HOLLAND | MI | 49423 |
| 23205 | 5782 | V01557 | OHIO STATE UNIVERSITY | Royty | 10/27/2010 | 10/27/2010 | Y | | 6,485.90 | COLUMBUS | OH | 43271-1762 |
| 23206 | 5783 | V01263 | MICHIGAN STATE UNIVERSITY | Royty | 10/27/2010 | 10/27/2010 | Y | UNIVERSITY LICENSING PROGRAMS | 240.06 | EAST LANSING | MI | 48824-1029 |
| 23207 | 5784 | V01361 | SOUTHERN ILLINOIS UNIVERSITY | Royty | 10/27/2010 | 10/27/2010 | Y | ADMINISTRATION BLDG. 0234 | 2.25 | BROOKINGS | SD | 57007-2298 |
| 23208 | 5785 | V01556 | INDIANA UNIVERSITY | Royty | 10/27/2010 | 10/27/2010 | Y | P.O. BOX 6268 | 262.26 | INDIANAPOLIS | IN | 46206 |
| 23209 | 5786 | V01555 | UNIVERSITY OF IOWA | Royty | 10/27/2010 | 10/27/2010 | Y | KHF BLDG. 446 | 1,601.46 | IOWA CITY | IA | 52242 |
| 23211 | 5787 | V01398 | UNIVERSITY OF OREGON | Royty | 10/27/2010 | 10/27/2010 | Y | 5286 UNIVERSITY OF OREGON | 620.67 | EUGENE | OR | 97403-5286 |
| 23213 | 5788 | V01593 | RODOLFO RODRIGUEZ AGUILAR | frl-out | 10/28/2010 | 10/28/2010 | Y | 9430 MISSION BLVD. | 462.00 | RIVERSIDE | CA | 92509 |
| 23215 | 5789 | V01392 | SUMMIT LOGISTICS INTL | Frl-in | 11/22/2010 | 11/22/2010 | Y | 780 NOGALES STREET, BUILDING D | 3,845.00 | CITY OF INDUSTRY | CA | 91748 |
| 23213 | 5794 | V01053 | BULLET TRANSPORTATION SERVICES | frl-out | 11/22/2010 | 11/22/2010 | Y | P.O. BOX 809066 | 4,245.09 | CHICAGO | IL | 60680-9066 |
| 23215 | 5795 | V01076 | CONTINENTAL AGENCY | Frl-in | 11/22/2010 | 11/22/2010 | Y | 1400 MONTEFINO AVE. SUITE 200 | 14,589.58 | DIAMOND BAR | CA | 91765 |
| 23216 | 5796 | V01167 | IMAGE DESIGN | a&p | 11/22/2010 | 11/22/2010 | Y | 6141 COLONY COURT | 700.00 | CHINO | CA | 91710 |
| 23217 | 5797 | V01281 | OPSEC SECURITY, INC. | wip/a&p | 11/22/2010 | 11/22/2010 | Y | 1857 COLONIAL VILLAGE LANE | 2,129.00 | LANCASTER | PA | 17605-0155 |
| 23219 | 5798 | V01353 | UPS SUPPLY CHAIN SOLUTIONS, INC | utility | 11/22/2010 | 11/22/2010 | Y | P.O BOX 730900 | 165.69 | KANSAS CITY | MO | 64121-9100 |
| 23220 | 5799 | V01406 | UPS FREIGHT | frl-in | 11/22/2010 | 11/22/2010 | Y | 28013 NETWORK PLACE | 132.32 | CHICAGO | IL | 60673-1280 |
| 23222 | 5800 | V01470 | UPS FREIGHT | frl-out | 11/22/2010 | 11/22/2010 | Y | 28013 NETWORK PLACE | 284.23 | CHICAGO | IL | 60673-1280 |
| 23224 | 5801 | V01626 | PRINTING RESOURCES OF SOUTHERN CALIFORNIA | postage | 11/22/2010 | 11/22/2010 | Y | 893 WEST 9TH STREET | 509.85 | UPLAND | CA | 91786-4541 |
| 23225 | 5804 | V01392 | SUMMIT LOGISTICS INTL | Frl-in | 11/10/2010 | 11/10/2010 | Y | 780 NOGALES STREET, BUILDING D | 6,490.00 | CITY OF INDUSTRY | CA | 91748 |
| 23228 | 5807 | V01438 | NFL PROPERTIES LLC-LICENSING GPO | Royty | 11/10/2010 | 11/10/2010 | Y | P.O. BOX 605 | 57,678.91 | NEW YORK | NY | 10087-7278 |
| 23230 | 5809 | V01086 | HERITAGE CONTAINER | | 11/10/2010 | 11/10/2010 | Y | P.O. BOX 605 | 29,197.44 | MIRA LOMA | CA | 91752 |
| 23231 | 5810 | V01392 | CREATIVE DOCUMENT SOLUTIONS | officesupply | 11/10/2010 | 11/10/2010 | Y | 1623 MARION-WALDO ROAD | 201.21 | MARION | OH | 43302 |
| 23232 | 5818 | V01015 | SUMMIT LOGISTICS INTL | Frl-in | 11/16/2010 | 11/16/2010 | Y | 780 NOGALES STREET, BUILDING D | 3,420.00 | CITY OF INDUSTRY | CA | 91748 |
| 23233 | 5819 | V01015 | CLARK DISTRIBUTION SYSTEMS, INC | frl-out | 11/16/2010 | 11/16/2010 | Y | P.O BOX 65055 | 657.16 | CHICAGO | IL | 60660-0851 |
| 23234 | 5822 | V01079 | MAJOR LEAGUE BASEBALL PROPERTIES | Royty | 11/17/2010 | 11/17/2010 | Y | P.O. BOX 4180 | 8,616.85 | NEW YORK | NY | 10167 |
| 23235 | 5823 | V01079 | THE COLLEGIATE LICENSING CO | Royty | 11/17/2010 | 11/17/2010 | Y | 290 INTERSTATE NORTH, SUITE 200 | 12,981.38 | ATLANTA | GA | 30339 |
| 23237 | 5824 | V01549 | NBA PROPERTIES, INC. | Royty | 11/17/2010 | 11/17/2010 | Y | P.O. BOX 10602 | 7,231.38 | NEWARK | NJ | 07193 |
| 23238 | 5825 | V01008 | A TO Z MARKETING VENTURES, LLC. | comm | 11/17/2010 | 11/17/2010 | Y | 17 SEVER STREET | 4,969.84 | SIDNEY | NY | 13838 |
| 23239 | 5826 | V01012 | AL ARRANTS | comm | 11/17/2010 | 11/17/2010 | Y | | 87.90 | BRISTOL | TN | 37620 |
| 23240 | 5827 | V01148 | JOSEPH K. CLARK DBA ALL SEASONS MARKETING | comm | 11/17/2010 | 11/17/2010 | Y | 116 COUNTRY OAKS DRIVE | 2,457.33 | WEST ST LOUIS | MO | 63376 |
| 23241 | 5828 | V01111 | BOB KUNICK ASSOC. INC. | comm | 11/17/2010 | 11/17/2010 | Y | 12223 LEE HIGHWAY | 1,772.23 | FAIRFAX | VA | 22030-6341 |
| 23242 | 5829 | V01118 | DOUG STEWART | comm | 11/17/2010 | 11/17/2010 | Y | P.O. BOX 5016 | 362.98 | ANDERSON | SC | 29623 |
| 23243 | 5830 | V01133 | E.J.S. GROUP | comm | 11/17/2010 | 11/17/2010 | Y | 614 ROGERS ROAD | 494.43 | VILLA HILLS | KY | 41017 |
| 23244 | 5831 | V01159 | FLORIDA SPORTS NETWORK | comm | 11/17/2010 | 11/17/2010 | Y | 221 BLUE JUNIPER BLVD | 935.80 | VENICE | FL | 34292 |
| 23245 | 5832 | V01148 | FM OUTREACH | comm | 11/17/2010 | 11/17/2010 | Y | 6205 COCHRAN ROAD, UNIT 5 | 355.50 | SOLON | OH | 44139 |
| 23246 | 5837 | V01199 | GIFT SOURCE, LLC | comm | 11/17/2010 | 11/17/2010 | Y | 14040 HAYES STREET | 158.13 | OVERLAND PARK | KS | 66221 |
| 23247 | 5838 | V01211 | GARY GENE INGOLDSBY | comm | 11/17/2010 | 11/17/2010 | Y | 7521 NW 131ST | 172.44 | OKLAHOMA CITY | OK | 73142 |
| 23248 | 5839 | V01220 | JEANNE D. ROSEN | comm | 11/17/2010 | 11/17/2010 | Y | 7121 FISH POND ROAD | 6,252.40 | WACO | TX | 76710 |
| 23249 | 5840 | V01230 | THE J2 SALES GROUP | comm | 11/17/2010 | 11/17/2010 | Y | 22123 W. 83rd Street | 985.72 | SHAWNEE | KS | 66227 |
| 23250 | 5842 | V01230 | Jim & Sports Inc. | comm | 11/17/2010 | 11/17/2010 | Y | 2682 S. 451 E. 39TH AVENUE #1689 | 799.18 | DENVER | CO | 80216 |
| 23251 | 5843 | V01196 | JOHN COACH NADELL | comm | 11/17/2010 | 11/17/2010 | Y | | 8,776.23 | LIVONIA | MI | 48153 |
| 23252 | 5844 | V01240 | K.O. SALES, LLC | comm | 11/17/2010 | 11/17/2010 | Y | 2109 NO. SEPULVEDA BLVD. SUITE 18 | 680.90 | MANHATTAN BEACH | CA | 90266 |
| 23253 | 5845 | V01248 | L.B. WOOD MARKETING, INC. | comm | 11/18/2010 | 11/18/2010 | Y | 3710 COMMERCIAL AVENUE | 960.51 | NORTH BROOK | IL | 60062 |
| 23254 | 5846 | V01249 | LOGO AMERICA, LLC | comm | 11/18/2010 | 11/18/2010 | Y | 4640 Brookview Circle | 433.12 | NEW ALBANY | OH | 43054 |
| 23256 | 5847 | V01265 | MARK WILLIAMS AND COMPANY | comm | 11/18/2010 | 11/18/2010 | Y | 226 SPRING STREET | 1,422.78 | ATLANTA | GA | 33033 |
| 23257 | 5848 | V01267 | L & S Sports, Inc. | comm | 11/18/2010 | 11/18/2010 | Y | 9 MONTROSE LANE | 2,596.05 | MANCHESTER TOWNSHIP | NJ | 8759 |
| 23258 | 5849 | V01278 | MACKIE & ASSOCIATES | comm | 11/18/2010 | 11/18/2010 | Y | 37 PATRIOT WAY | 149.07 | PEMBROKE | MA | 2359 |
| 23259 | 5850 | V01305 | MARKET PLACE GIFTS INC. | comm | 11/18/2010 | 11/18/2010 | Y | 10 VAN BUREN, SUITE C | 477.20 | EUGENE | OR | 97402 |
| 23261 | 5852 | V01351 | MARK WILLIAMS AND COMPANY | comm | 11/17/2010 | 11/17/2010 | Y | P.O. BOX 6120 | 3,968.84 | STUART | FL | 34997 |
| 23262 | 5853 | V01365 | NATIONAL SPORTS ASSOCIATES | comm | 11/17/2010 | 11/17/2010 | Y | 14176 HWY 87 N | 1,743.30 | EDEN | NC | 27288 |
| 23263 | 5854 | V01460 | RON GRUBBS | comm | 11/17/2010 | 11/17/2010 | Y | 20 E. SUNRISE HIGHWAY STE 300 | 1,646.95 | VALLEY STREAM | NY | 11581 |
| 23264 | 5855 | V01506 | MERRIL H. MORRISON | comm | 11/17/2010 | 11/17/2010 | Y | 7014 59TH ST. CT. W | 93.53 | UNIV PLACE | WA | 98467 |
| 23266 | 5856 | V01559 | NANCY ANDERSEN | comm | 11/17/2010 | 11/17/2010 | Y | 606 BLUE OAK COURT | 137.64 | SKOKIE | CA | 95762 |
| 23267 | 5857 | V01565 | NORTHWEST REPS, INC. | comm | 11/17/2010 | 11/17/2010 | Y | 9150 KILDARE | 123.76 | SKOKIE | IL | 60076 |
| 23268 | 5858 | V01600 | P.T.L. SALES | comm | 11/17/2010 | 11/17/2010 | Y | 112 WONDER VALLEY ROAD | 81.00 | BRISTOL | TN | 37620 |
| 23269 | 5859 | V01607 | SDU LLC | comm | 11/17/2010 | 11/17/2010 | Y | P.O. Box 247 | 527.35 | SAN CLEMENTE | CA | 92673 |
| 23270 | 5860 | V01624 | SUPERMARKET REPRESENTATIVES | comm | 11/17/2010 | 11/17/2010 | Y | 535 WOOD VALLEY TRACE | 248.07 | ROSWELL | GA | 30076 |
| 23271 | 5862 | V01365 | DAVE MACMILLAN | comm | 11/17/2010 | 11/17/2010 | Y | 1235 KIMBERLIN ROAD | 860.41 | Factoryville | PA | 18419 |
| 23272 | 5863 | V01248 | CALIFORNIA CLUB | comm | 11/17/2010 | 11/17/2010 | Y | 11235 SIGN RD (NW) | 400.58 | OKLAHOMA CITY | OK | 73162 |
| 23272 | 5864 | V01392 | SUMMIT LOGISTICS INTL | Frl-in | 11/18/2010 | 11/18/2010 | Y | 28013 NETWORK PLACE | 185.07 | CHICAGO | IL | 60673-1280 |
| 23273 | 5865 | V01053 | MARKET PLACE GIFTS INC. | frl-out | 11/18/2010 | 11/18/2010 | Y | 3710 COMMERCIAL AVENUE | 700.00 | NORTH BROOK | IL | 60062 |
| 23274 | 5866 | V01053 | BULLET TRANSPORTATION SERVICES | frl-out | 11/18/2010 | 11/18/2010 | Y | 780 NOGALES STREET, BUILDING D | 6,375.00 | CITY OF INDUSTRY | CA | 91748 |
| 23274 | 5867 | V01076 | CONTINENTAL AGENCY | Frl-in | 11/18/2010 | 11/18/2010 | Y | P.O. BOX 809066 | 6,895.87 | CHICAGO | IL | 60680-9066 |
| 23276 | 5867 | V01076 | CONTINENTAL AGENCY | Frl-in | 11/18/2010 | 11/18/2010 | Y | 1400 MONTEFINO AVE. SUITE 200 | 10,440.90 | DIAMOND BAR | CA | 91765 |

# EXHIBIT 2

Duck House, Inc.
Statement of Financial Affairs
Check Register - 3b

| Check No. | Payment No. | Vendor Code | Vendor Name | Vendor Category | Document Date | Creation Date | Confirm Printing | Check Amount | Bill-to Street | Bill-to City | Bill-to State | Bill-to Zip Code |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 23277 | 5868 | V01281 | OPSEC SECURITY, INC. | whplkagusply | 11/18/2010 | 11/18/2010 | Y | 5,985.70 | 1857 COLONIAL VILLAGE LANE | LANCASTER | PA | 17605-0155 |
| 23278 | 5869 | V01452 | FEDEX NATIONAL LTL | frt-out | 11/18/2010 | 11/18/2010 | Y | 120.12 | P.O. BOX 95001 | LAKELAND | FL | 33804-5001 |
| 23279 | 5870 | V01470 | UPS FREIGHT | frt-out | 11/18/2010 | 11/18/2010 | Y | 303.06 | 28013 NETWORK PLACE | CHICAGO | IL | 60673-1280 |
| 23280 | 5871 | V01578 | CONWAY FREIGHT | frt-out | 11/18/2010 | 11/18/2010 | Y | 1,284.61 | P.O. BOX 5160 | PORTLAND | OR | 97208-5160 |
| 23281 | 5872 | V01562 | SAIA | frt-out | 11/18/2010 | 11/18/2010 | Y | 223.99 | P.O. BOX 100816 | PASADENA | CA | 91189-0816 |
| 23282 | 5873 | V01593 | RODOLFO RODRIGUEZ AGUILAR | frt-out | 11/18/2010 | 11/18/2010 | Y | 484.00 | 9430 MISSION BLVD. | RIVERSIDE | CA | 92509 |
| 23283 | 5875 | V01614 | BRIAN FITZGERALD | profession -design | 11/22/2010 | 11/22/2010 | Y | 6,666.66 | 1138 GARRETSON | CORONA | CA | 92879 |
| 23284 | 5878 | V01392 | SUMMIT LOGISTICS INTL | Frt-in | 11/29/2010 | 11/29/2010 | Y | 4,621.88 | 780 NOGALES STREET, BUILDING D | CITY OF INDUSTRY | CA | 91748 |
| 23285 | 5880 | V01053 | BULLET TRANSPORTATION SERVICES | frt-out | 12/1/2010 | 12/1/2010 | Y | 8,221.90 | P.O. BOX 800066 | CHICAGO | IL | 60680-0066 |
| 23289 | 5881 | V01076 | CONTINENTAL AGENCY | Frt-in | 12/1/2010 | 12/1/2010 | Y | 5,981.36 | 1400 N METRO AVE. SUITE 200 | DIAMOND BAR | CA | 91765 |
| 23290 | 5882 | V01406 | UPS SUPPLY CHAIN SOLUTIONS, INC | frt-in | 12/1/2010 | 12/1/2010 | Y | 85.41 | 28013 NETWORK PLACE | CHICAGO | IL | 60673-1280 |
| 23291 | 5883 | V01470 | UPS FREIGHT | frt-out | 12/1/2010 | 12/1/2010 | Y | 1,540.60 | 28013 NETWORK PLACE | CHICAGO | IL | 60673-1280 |
| 23292 | 5884 | V01578 | CONWAY FREIGHT | frt-out | 12/1/2010 | 12/1/2010 | Y | 2,017.58 | P.O. BOX 5160 | PORTLAND | OR | 97208-5160 |
| 23293 | 5885 | V01593 | RODOLFO RODRIGUEZ AGUILAR | frt-out | 12/1/2010 | 12/1/2010 | Y | 713.00 | 9430 MISSION BLVD. | RIVERSIDE | CA | 92509 |
| 23295 | 5889 | V01626 | PRINTING RESOURCES OF SOUTHERN CALIFORNIA | postage | 12/7/2010 | 12/7/2010 | Y | 1,200.00 | 893 WEST 9TH STREET | UPLAND | CA | 91786-4541 |
| 23296 | 5891 | V01392 | SUMMIT LOGISTICS INTL | Frt-in | 12/8/2010 | 12/8/2010 | Y | 9,074.65 | 780 NOGALES STREET, BUILDING D | CITY OF INDUSTRY | CA | 91748 |
| 23297 | 5894 | V01614 | BRIAN FITZGERALD | profession -design | 12/10/2010 | 12/10/2010 | Y | 6,666.66 | 1138 GARRETSON | CORONA | CA | 92879 |
| 23298 | 5903 | V01593 | RODOLFO RODRIGUEZ AGUILAR | frt-out | 12/15/2010 | 12/15/2010 | Y | 935.00 | 9430 MISSION BLVD. | RIVERSIDE | CA | 92509 |
| 23299 | 5904 | V01076 | CONTINENTAL AGENCY | Frt-in | 12/16/2010 | 12/16/2010 | Y | 3,171.31 | 1400 N METRO AVE. SUITE 200 | DIAMOND BAR | CA | 91765 |
| 23300 | 5905 | V01436 | NFL PROPERTIES LLC-LICENSING GPO | Rlyty | 12/16/2010 | 12/16/2010 | Y | 63,907.11 | P.O. BOX 27278 | NEW YORK | NY | 10087-7278 |
| 23337 | 5945 | C16306 | BOELTER BRANDS LLC | comm | 12/21/2010 | 12/21/2010 | Y | 2,160.00 | N22 W23685 RIDGEVIEW PARKWAY WEST | WAUKESHA | WI | 53188 |
| 23338 | 5947 | V01079 | THE COLLEGIATE LICENSING CO | Rlyty | 12/21/2010 | 12/21/2010 | Y | 11,184.92 | 290 INTERSTATE NORTH, SUITE 200 | ATLANTA | GA | 30339 |
| 23343 | 5950 | V01263 | MICHIGAN STATE UNIVERSITY | Rlyty | 12/21/2010 | 12/21/2010 | Y | 200.00 | UNIVERSITY LICENSING PROGRAMS | EAST LANSING | MI | 48824-1029 |
| 23344 | 5951 | V01161 | L & S Sports, Inc | utility | 12/21/2010 | 12/21/2010 | Y | 1.74 | P.O. BOX 31500 | KANSAS CITY | MO | 64121-0100 |
| 23345 | 5952 | V01406 | UPS SUPPLY CHAIN SOLUTIONS, INC. | Frt-in | 12/21/2010 | 12/21/2010 | Y | 123.91 | 28013 NETWORK PLACE | CHICAGO | IL | 60673-1280 |
| 23348 | 5960 | V01628 | QUARTZ LOGISTICS INC. | comm | 12/22/2010 | 12/22/2010 | Y | 3,135.00 | 731 S. GARFIELD AVE | ALHAMBRA | CA | 91801 |
| 23350 | 5963 | V01549 | NBA PROPERTIES INC. | Rlyty | 12/30/2010 | 12/30/2010 | Y | 4,412.72 | P.O. BOX 19302 | NEWARK | NJ | 7193 |
| 97 | 5967 | V01614 | BRIAN FITZGERALD | profession -design | 1/12/2011 | 1/12/2011 | Y | 7,999.99 | 1138 GARRETSON | CORONA | CA | 92879 |
| 00001 | 5959 | V01116 | E.I.S. GROUP GROUP | comm | 1/19/2011 | 1/19/2011 | Y | 986.57 | 614 ROGERS ROAD | VILLA HILLS | KY | 41017 |
| 00002 | 5981 | V01133 | FLORIDA SPORTS NETWORK | comm | 1/19/2011 | 1/19/2011 | Y | 2,721.60 | 221 BLUE JUNIPER BLVD | VENICE | FL | 34292 |
| 00003 | 5982 | V01197 | Jim & Candy David | comm | 1/19/2011 | 1/19/2011 | Y | 1,666.16 | P.O. BOX 548 | ZIONSVILLE | IN | 46077-0548 |
| 00004 | 5983 | V01220 | L.B. WOOD MARKETING, INC. | comm | 1/19/2011 | 1/19/2011 | Y | 7,636.87 | 7121 FISH POND ROAD | WACO | TX | 76710 |
| 00005 | 5984 | V01228 | L & S Sports, Inc | comm | 1/19/2011 | 1/19/2011 | Y | 756.35 | P.O. BOX 530056 | LIVONIA | MI | 48153 |
| 00006 | 5985 | V01276 | NORTHWEST REPS, INC. | comm | 1/19/2011 | 1/19/2011 | Y | 43.91 | 5802 RENO SUITE C | CRANBROOK | MO | 97402 |
| 00007 | 5986 | V01365 | SUPERMARKET REPRESENTATIVES | comm | 1/19/2011 | 1/19/2011 | Y | 221.26 | 20 E. SUNRISE HIGHWAY, STE 300 | VALLEY STREAM | NY | 11581 |
| 00008 | 5987 | V01460 | DAVE MACMILLAN | comm | 1/19/2011 | 1/19/2011 | Y | 620.78 | 7014 59TH ST, ST. W | UNIV PLACE | WA | 98467 |
| 00009 | 5988 | V01627 | LOUD & ASSOCIATES, LLC | comm | 1/19/2011 | 1/19/2011 | Y | 347.04 | 1319 SWAN DRIVE | ANNAPOLIS | MD | 21409 |
| 23010 | 5989 | V01626 | PRINTING RESOURCES OF SOUTHERN CALIFORNIA | postage | 1/19/2011 | 1/19/2011 | Y | 1,399.28 | 893 WEST 9TH STREET | UPLAND | CA | 91786-4541 |
| 00011 | 5990 | V01634 | A TO Z MARKETING VENTURES, LLC. | comm | 1/19/2011 | 1/19/2011 | Y | 1,895.02 | 16209 MEDLEY ROAD | OKLAHOMA CITY | OK | 73162 |
| 00012 | 5991 | V01635 | A TO Z MARKETING VENTURES, LLC. | comm | 1/19/2011 | 1/19/2011 | Y | 6,865.66 | 17 SIVER STREET | SIDNEY | NY | 13838 |
| 23319 | 5993 | V01240 | MACKIE & ASSOCIATES | comm | 12/21/2010 | 1/20/2011 | Y | 9,358.82 | 2100 NO. SEPULVEDA BLVD. SUITE 18 | MANHATTAN BEACH | CA | 90266 |
| 23014 | 6007 | V01246 | MAJOR LEAGUE BASEBALL PROPERTIES | Rlyty | 1/24/2011 | 1/24/2011 | Y | 9,502.30 | 245 PARK AVENUE | NEW YORK | NY | 10167 |
| 23015 | 6008 | V01199 | JOHN COACH NADELL | comm | 1/24/2011 | 1/24/2011 | Y | 265.05 | 2521 REDSTART LANE | BIRMINGHAM | AL | 35226 |
| 23016 | 6009 | V01246 | MAJOR LEAGUE BASEBALL PROPERTIES | comm | 1/24/2011 | 1/24/2011 | Y | 4,841.47 | 245 PARK AVENUE | NEW YORK | NY | 10167 |
| 23019 | 6010 | V01014 | JOSEPH K. CLARK DBA ALL SEASONS MARKETING | comm | 1/24/2011 | 1/24/2011 | Y | 4,505.52 | 237 SOUTH CURTIS RD SUITE 100 | WEST ALLIS | WI | 53214-1030 |
| 00030 | 6011 | V01111 | DOUG STEWART | comm | 1/24/2011 | 1/24/2011 | Y | 956.36 | P.O. BOX 5016 | ANDERSON | SC | 29623 |
| 23031 | 6012 | V01079 | THE COLLEGIATE LICENSING CO | Rlyty | 1/24/2011 | 1/24/2011 | Y | 10,223.32 | 290 INTERSTATE NORTH, SUITE 200 | ATLANTA | GA | 30339 |
| 23032 | 6013 | V01549 | NBA PROPERTIES INC. | Rlyty | 1/24/2011 | 1/24/2011 | Y | 5,777.37 | P.O. BOX 19302 | NEWARK | NJ | 7193 |
| 23033 | 6014 | V01076 | CONTINENTAL AGENCY | Frt-in | 1/25/2011 | 1/25/2011 | Y | 7,037.65 | 1400 N METRO AVE. SUITE 200 | DIAMOND BAR | CA | 91765 |
| 23034 | 6015 | V01248 | MARKET PLACE GIFTS INC. | comm | 1/25/2011 | 1/25/2011 | Y | 553.33 | 3710 COMMERCIAL AVENUE | NORTH BROOK | IL | 60062 |
| 23035 | 6016 | V01053 | BULLET TRANSPORTATION SERVICES | frt-out | 1/25/2011 | 1/25/2011 | Y | 7,034.42 | P.O. BOX 800066 | CHICAGO | IL | 60680-0066 |
| 23036 | 6017 | V01438 | NATIONAL PRODUCTS ASSOCIATES | comm | 1/25/2011 | 1/25/2011 | Y | 204.14 | 855 HILL DRIVE | HINSDALE | IL | 60076 |
| 23038 | 6020 | V01600 | RICK SALESE | comm | 1/27/2011 | 1/27/2011 | Y | 611.00 | 555 WOOD VALLEY TRACE | ROSWELL | GA | 30076 |

557,396.78

EXHIBIT 2

Page 3 of 3

**Page 118**

# EXHIBIT 2

## Insider Payments Made One Year Prior
## To The Petition Date
## Trade Union

**ATTACHMENT TO STATEMENT OF AFFAIRS, ITEM NO. 3.c.**

**Withdrawals or Distributions by Corporation to Insiders
During the One Year Prior to the Petition Date**

# EXHIBIT 2

| Sum of SumApplied | | Payment Type | | | |
|---|---|---|---|---|---|
| Note | CardName | Bank Transfer | Check | (blank) | Grand Total |
| Berendo St. properties | Bank SinoPac | 365,500.00 | 59,200.00 | | 424,700.00 |
| Berendo St. properties Total | | 365,500.00 | 59,200.00 | | 424,700.00 |
| loan | MEI LIEN CHANG | | 50,000.00 | | 50,000.00 |
| | THE CHANG REVOCABLE TRUST | 13,160.30 | 20,000.00 | | 33,160.30 |
| | THE CHANG REVOCABLE TRUST c/o Mei Lien Chang, Trustee | | 92,250.00 | | 92,250.00 |
| | WEN PIN CHANG | | 5,129.44 | | 5,129.44 |
| loan  Total | | 13,160.30 | 167,379.44 | | 180,539.74 |
| Rent | MEI LIEN CHANG | 96,545.00 | 83,751.00 | | 180,296.00 |
| | WEN PIN CHANG | 149,500.00 | 109,500.00 | | 259,000.00 |
| Rent Total | | 246,045.00 | 193,251.00 | | 439,296.00 |
| payroll | GARY CHANG | | | 52,000.00 | 52,000.00 |
| | HOWARD CHANG | | | 15,600.00 | 15,600.00 |
| | MEI LIEN CHANG | | | 125,633.11 | 125,633.11 |
| | WEN PIN CHANG | | | 267,176.23 | 267,176.23 |
| payroll Total | | | | 460,409.34 | 460,409.34 |
| Grand Total | | 624,705.30 | 419,830.44 | 460,409.34 | 1,504,945.08 |

# EXHIBIT 2

TUI STATEMENT OF AFFAIRS - 3c.xls

| DocNum | Type | DocDate | CardCode | CardName | DocEntry | Source Type | SumApplied | G/L Account | Pay Amount | Payment Type | Address | Note |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6646 | Vendor | 4/23/2010 | V1127 | Bank SinoPac | 13062 | A/P Invoice | 3,200.00 | Cathay Bank - Regular Checking | 3,200.00 | Check | 350 S. Grand Avenue Ste 1650 Los Angeles Branch Los Angeles CA  90071 USA | Berendo St. properties |
| 6667 | Account | 4/30/2010 | V1127 | OFFICERS ADVANC | | Account List | 56,000.00 | Cathay Bank - Regular Checking | 56,000.00 | Bank Transfer | 350 S. Grand Avenue Ste 1650 Los Angeles Branch Los Angeles CA  90071 USA | Berendo St. properties |
| 6750 | Account | 5/18/2010 | V1127 | OFFICERS ADVANC | | Account List | 141,500.00 | Cathay Bank - Regular Checking | 141,500.00 | Bank Transfer | 350 S. Grand Avenue Ste 1650 Los Angeles Branch Los Angeles CA  90071 USA | Berendo St. properties |
| 6849 | Account | 6/2/2010 | V1127 | OFFICERS ADVANC | | Account List | 56,000.00 | Cathay Bank - Regular Checking | 56,000.00 | Bank Transfer | 350 S. Grand Avenue Ste 1650 Los Angeles Branch Los Angeles CA  90071 USA | Berendo St. properties |
| 7024 | Account | 7/1/2010 | V1127 | OFFICERS ADVANC | | Account List | 56,000.00 | Cathay Bank - Regular Checking | 56,000.00 | Bank Transfer | 350 S. Grand Avenue Ste 1650 Los Angeles Branch Los Angeles CA  90071 USA | Berendo St. properties |
| 7204 | Account | 8/2/2010 | V1127 | OFFICERS ADVANC | | Account List | 56,000.00 | Cathay Bank - Regular Checking | 56,000.00 | Bank Transfer | 350 S. Grand Avenue Ste 1650 Los Angeles Branch Los Angeles CA  90071 USA | Berendo St. properties |
| 8095 | Vendor | 1/24/2011 | V1127 | Bank SinoPac | 16330 | A/P Invoice | 56,000.00 | Cathay Bank - Regular Checking | 56,000.00 | Check | 350 S. Grand Avenue Ste 1650 Los Angeles Branch Los Angeles CA  90071 USA | Berendo St. properties |
| 6252 | Vendor | 2/18/2010 | V1564 | MEI LIEN CHANG | 12132 | A/P Invoice | 19,000.00 | Cathay Bank - Regular Checking | 19,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 6400 | Vendor | 3/18/2010 | V1564 | MEI LIEN CHANG | 12522 | A/P Invoice | 18,000.00 | Cathay Bank - Regular Checking | 18,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 6533 | Vendor | 4/7/2010 | V1564 | MEI LIEN CHANG | 12815 | A/P Invoice | 18,000.00 | Cathay Bank - Regular Checking | 18,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 6800 | Vendor | 5/26/2010 | V1564 | MEI LIEN CHANG | 13351 | A/P Invoice | 15,709.00 | Cathay Bank - Regular Checking | 15,709.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 7013 | Vendor | 6/30/2010 | V1564 | MEI LIEN CHANG | 13672 | A/P Invoice | 15,709.00 | Cathay Bank - Regular Checking | 15,709.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 7262 | Vendor | 8/16/2010 | V1564 | MEI LIEN CHANG | 14414 | A/P Invoice | 15,709.00 | Cathay Bank - Regular Checking | 15,709.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 7379 | Vendor | 9/3/2010 | V1564 | MEI LIEN CHANG | 14894 | A/P Invoice | 50,000.00 | Cathay Bank - Regular Checking | 50,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 7523 | Vendor | 9/24/2010 | V1564 | MEI LIEN CHANG | 14519 | A/P Invoice | 15,709.00 | Cathay Bank - Regular Checking | 15,709.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 7545 | Vendor | 10/1/2010 | V1564 | MEI LIEN CHANG | 15056 | A/P Invoice | 15,709.00 | Cathay Bank - Regular Checking | 15,709.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 7753 | Vendor | 11/10/2010 | V1564 | MEI LIEN CHANG | 15164 | A/P Invoice | 15,709.00 | Cathay Bank - Regular Checking | 15,709.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 7774 | Vendor | 11/16/2010 | V1564 | MEI LIEN CHANG | 15607 | A/P Invoice | 10,536.00 | Cathay Bank - Regular Checking | 10,536.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 7838 | Vendor | 12/1/2010 | V1564 | MEI LIEN CHANG | 15812 | A/P Invoice | 20,506.00 | Cathay Bank - Regular Checking | 20,506.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 7917 | Vendor | 12/9/2010 | V1564 | THE CHANG REVOCABLE TRUST | 15922 | A/P Invoice | 20,000.00 | Cathay Bank - Regular Checking | 20,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | loan |
| 8079 | Account | 1/18/2011 | ACCRUED OFFICER | THE CHANG REVOCABLE TRUST | | Account List | 13,160.30 | US BANK - CHECKING | 13,160.30 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | loan |
| 7927 | Vendor | 12/13/2010 | V1564 | THE CHANG REVOCABLE TRUST c/o Mei Lien Chang, Trustee | 16019 | A/P Invoice | 60,000.00 | Cathay Bank - Regular Checking | 60,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | loan |
| 7939 | Vendor | 12/16/2010 | V1564 | THE CHANG REVOCABLE TRUST c/o Mei Lien Chang, Trustee | 16045 | A/P Invoice | 10,000.00 | Cathay Bank - Regular Checking | 10,000.00 | Check | 2820 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | loan |
| 8016 | Vendor | 12/31/2010 | V1564 | THE CHANG REVOCABLE TRUST c/o Mei Lien Chang, Trustee | 16127 | A/P Invoice | 22,250.00 | Cathay Bank - Regular Checking | 22,250.00 | Check | 2821 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | loan |
| 6253 | Vendor | 2/18/2010 | V1968 | WEN PIN CHANG | 12133 | A/P Invoice | 21,000.00 | Cathay Bank - Regular Checking | 21,000.00 | Check | 2822 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 6401 | Vendor | 3/18/2010 | V1968 | WEN PIN CHANG | 12523 | A/P Invoice | 22,000.00 | Cathay Bank - Regular Checking | 22,000.00 | Check | 2823 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 6531 | Vendor | 4/7/2010 | V1968 | WEN PIN CHANG | 28516 | A/P Invoice | 22,000.00 | Cathay Bank - Regular Checking | 20,000.00 | Bank Transfer | 2824 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 6531 | Vendor | 4/7/2010 | V1968 | WEN PIN CHANG | 25084 | Outgoing Payment | (2,000.00) | Cathay Bank - Regular Checking | 20,000.00 | Bank Transfer | 2825 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 6532 | Vendor | 4/7/2010 | V1968 | WEN PIN CHANG | | Unknown | | Cathay Bank - Regular Checking | | | | Rent |
| 6791 | Vendor | 5/21/2010 | V1968 | WEN PIN CHANG | 13352 | A/P Invoice | 25,500.00 | Cathay Bank - Regular Checking | 25,500.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 6795 | Vendor | 5/25/2010 | V1968 | WEN PIN CHANG | 13557 | A/P Invoice | 5,129.44 | Cathay Bank - Regular Checking | 5,129.44 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | loan |
| 6973 | Vendor | 6/25/2010 | V1968 | WEN PIN CHANG | 13671 | A/P Invoice | 25,500.00 | Cathay Bank - Regular Checking | 25,500.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 7317 | Vendor | 8/23/2010 | V1968 | WEN PIN CHANG | 14415 | A/P Invoice | 25,500.00 | Cathay Bank - Regular Checking | 25,500.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 7522 | Vendor | 9/23/2010 | V1968 | WEN PIN CHANG | 14518 | A/P Invoice | 25,500.00 | Cathay Bank - Regular Checking | 25,500.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 7592 | Vendor | 10/7/2010 | V1968 | WEN PIN CHANG | 15057 | A/P Invoice | 25,500.00 | Cathay Bank - Regular Checking | 25,500.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 7752 | Vendor | 11/10/2010 | V1968 | WEN PIN CHANG | 15163 | A/P Invoice | 25,500.00 | Cathay Bank - Regular Checking | 25,500.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 7775 | Vendor | 11/16/2010 | V1968 | WEN PIN CHANG | 15608 | A/P Invoice | 20,500.00 | Cathay Bank - Regular Checking | 20,500.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| 7837 | Vendor | 12/1/2010 | V1968 | WEN PIN CHANG | 15811 | A/P Invoice | 20,500.00 | Cathay Bank - Regular Checking | 20,500.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA | Rent |
| | | | | WEN PIN CHANG | | payroll | 267,179.23 | | | | | payroll |
| | | | | MEI LIEN CHANG | | payroll | 125,633.11 | | | | | payroll |
| | | | | GARY CHANG | | payroll | 52,000.00 | | | | | payroll |
| | | | | HOWARD CHANG | | payroll | 15,600.00 | | | | | payroll |
| | | | | | | TOTAL | 1,504,945.08 | | | | | |

# EXHIBIT 2

Page 1 of 1

| Sum of SumApplied | |
|---|---|
| CardName | Total |
| MEI LIEN CHANG | $      230,296.00 |
| THE CHANG REVOCABLE TRUST | $      125,410.30 |
| TRADE UNION INT L (TAIWAN) LTD | $ 16,738,437.88 |
| WEN PIN CHANG | $      264,129.44 |
| Grand Total | $ 17,358,273.62 |

**The payments made to Trade Union Int L (Taiwan) LTD are listed for informational purposes only.   Trade Union Int L (Taiwan) LTD is not an insider of the Debtor as that term is defined in the Bankruptcy Code but is an affiliate of the Debtor.**

# EXHIBIT 2

| DocNum | Type | DocDate | CardCode | CardName | DocEntry | Source Type | SumApplied | G/L Account | Pay Amount | Payment Type | Address |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6252 | Vendor | 2/18/2010 | V1564 | MEI LIEN CHANG | 12132 | A/P Invoice | 19,000.00 | Cathay Bank - Regular Checking | 19,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 6400 | Vendor | 3/18/2010 | V1564 | MEI LIEN CHANG | 12522 | A/P Invoice | 18,000.00 | Cathay Bank - Regular Checking | 18,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 6533 | Vendor | 4/7/2010 | V1564 | MEI LIEN CHANG | 12815 | A/P Invoice | 18,000.00 | Cathay Bank - Regular Checking | 18,000.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 6800 | Vendor | 5/26/2010 | V1564 | MEI LIEN CHANG | 13351 | A/P Invoice | 15,709.00 | Cathay Bank - Regular Checking | 15,709.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 7013 | Vendor | 6/30/2010 | V1564 | MEI LIEN CHANG | 13672 | A/P Invoice | 15,709.00 | Cathay Bank - Regular Checking | 15,709.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 7262 | Vendor | 8/16/2010 | V1564 | MEI LIEN CHANG | 14414 | A/P Invoice | 15,709.00 | Cathay Bank - Regular Checking | 15,709.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 7379 | Vendor | 9/3/2010 | V1564 | MEI LIEN CHANG | 14894 | A/P Invoice | 50,000.00 | Cathay Bank - Regular Checking | 50,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 7523 | Vendor | 9/24/2010 | V1564 | MEI LIEN CHANG | 14519 | A/P Invoice | 15,709.00 | Cathay Bank - Regular Checking | 15,709.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 7545 | Vendor | 10/1/2010 | V1564 | MEI LIEN CHANG | 15056 | A/P Invoice | 15,709.00 | Cathay Bank - Regular Checking | 15,709.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 7753 | Vendor | 11/10/2010 | V1564 | MEI LIEN CHANG | 15164 | A/P Invoice | 15,709.00 | Cathay Bank - Regular Checking | 15,709.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 7774 | Vendor | 11/16/2010 | V1564 | MEI LIEN CHANG | 15607 | A/P Invoice | 10,536.00 | Cathay Bank - Regular Checking | 10,536.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 7838 | Vendor | 12/1/2010 | V1564 | MEI LIEN CHANG | 15812 | A/P Invoice | 20,506.00 | Cathay Bank - Regular Checking | 20,506.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 7917 | Vendor | 12/9/2010 | V1564 | THE CHANG REVOCABLE TRUST | 15922 | A/P Invoice | 20,000.00 | Cathay Bank - Regular Checking | 20,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 8079 | Account | 1/18/2011 | ACCRUED ( | THE CHANG REVOCABLE TRUST | | Account List | 13,160.30 | US BANK - CHECKING | 13,160.30 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 7927 | Vendor | 12/13/2010 | V1564 | THE CHANG REVOCABLE TRUST | 16019 | A/P Invoice | 60,000.00 | Cathay Bank - Regular Checking | 60,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 7939 | Vendor | 12/16/2010 | V1564 | THE CHANG REVOCABLE TRUST | 16045 | A/P Invoice | 10,000.00 | Cathay Bank - Regular Checking | 10,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 8016 | Vendor | 12/28/2010 | V1564 | THE CHANG REVOCABLE TRUST | 16127 | A/P Invoice | 22,250.00 | Cathay Bank - Regular Checking | 22,250.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 6174 | Account | 2/4/2010 | PURCHASE | TRADE UNION INT L (TAIWAN) LTD | | Account List | 113,302.44 | Cathay Bank - Regular Checking | 113,302.44 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6179 | Account | 2/8/2010 | PURCHASE | TRADE UNION INT L (TAIWAN) LTD | | Account List | 202,400.75 | Cathay Bank - Regular Checking | 202,400.75 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6257 | Account | 2/23/2010 | PURCHASE | TRADE UNION INT L (TAIWAN) LTD | | Account List | 300,906.22 | Cathay Bank - Regular Checking | 300,906.22 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6294 | Account | 2/24/2010 | PURCHASE | TRADE UNION INT L (TAIWAN) LTD | | Account List | 261,908.63 | Cathay Bank - Regular Checking | 261,908.63 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6310 | Account | 3/1/2010 | PURCHASE | TRADE UNION INT L (TAIWAN) LTD | | Account List | 101,151.00 | Cathay Bank - Regular Checking | 101,151.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6328 | Account | 3/4/2010 | PURCHASE | TRADE UNION INT L (TAIWAN) LTD | | Account List | 86,713.50 | Cathay Bank - Regular Checking | 86,713.50 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6452 | Account | 3/22/2010 | PURCHASE | TRADE UNION INT L (TAIWAN) LTD | | Account List | 134,798.00 | Cathay Bank - Regular Checking | 134,798.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6459 | Account | 3/24/2010 | PURCHASE | TRADE UNION INT L (TAIWAN) LTD | | Account List | 128,674.26 | Cathay Bank - Regular Checking | 128,674.26 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6460 | Account | 3/24/2010 | PURCHASE | TRADE UNION INT L (TAIWAN) LTD | | Account List | 208,989.05 | Cathay Bank - Regular Checking | 208,989.05 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6515 | Account | 3/31/2010 | PURCHASE | TRADE UNION INT L (TAIWAN) LTD | | Account List | 224,625.40 | Cathay Bank - Regular Checking | 224,625.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6524 | Account | 4/5/2010 | PURCHASE | TRADE UNION INT L (TAIWAN) LTD | | Account List | 181,591.94 | Cathay Bank - Regular Checking | 181,591.94 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6577 | Vendor | 4/8/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12042 | A/P Invoice | 33,235.00 | Cathay Bank - Regular Checking | 201,405.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6577 | Vendor | 4/8/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12045 | A/P Invoice | 83,884.00 | Cathay Bank - Regular Checking | 201,405.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6577 | Vendor | 4/8/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12046 | A/P Invoice | 81,766.00 | Cathay Bank - Regular Checking | 201,405.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6577 | Vendor | 4/8/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12049 | A/P Invoice | 2,520.00 | Cathay Bank - Regular Checking | 201,405.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6578 | Vendor | 4/14/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12587 | A/P Invoice | 440.00 | Cathay Bank - Regular Checking | 99,302.30 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6578 | Vendor | 4/14/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12070 | A/P Invoice | 49,441.10 | Cathay Bank - Regular Checking | 99,302.30 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6578 | Vendor | 4/14/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12091 | A/P Invoice | 43,762.75 | Cathay Bank - Regular Checking | 99,302.30 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6578 | Vendor | 4/14/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12340 | A/P Invoice | 3,333.70 | Cathay Bank - Regular Checking | 99,302.30 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6578 | Vendor | 4/14/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12119 | A/P Invoice | 720.80 | Cathay Bank - Regular Checking | 99,302.30 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6578 | Vendor | 4/14/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12588 | A/P Invoice | 1,603.95 | Cathay Bank - Regular Checking | 99,302.30 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6606 | Vendor | 4/19/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12188 | A/P Invoice | 55,377.44 | Cathay Bank - Regular Checking | 203,986.57 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6606 | Vendor | 4/19/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12164 | A/P Invoice | 52,190.23 | Cathay Bank - Regular Checking | 203,986.57 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6606 | Vendor | 4/19/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12194 | A/P Invoice | 49,555.35 | Cathay Bank - Regular Checking | 203,986.57 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6606 | Vendor | 4/19/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12248 | A/P Invoice | 46,863.55 | Cathay Bank - Regular Checking | 203,986.57 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6607 | Vendor | 4/21/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 11983 | A/P Invoice | 28,175.14 | Cathay Bank - Regular Checking | 269,341.89 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6607 | Vendor | 4/21/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12065 | A/P Invoice | 74,033.75 | Cathay Bank - Regular Checking | 269,341.89 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6607 | Vendor | 4/21/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12241 | A/P Invoice | 84,176.00 | Cathay Bank - Regular Checking | 269,341.89 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6607 | Vendor | 4/21/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12240 | A/P Invoice | 82,957.00 | Cathay Bank - Regular Checking | 269,341.89 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6642 | Vendor | 4/22/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12100 | A/P Invoice | 38,200.00 | Cathay Bank - Regular Checking | 276,418.10 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6642 | Vendor | 4/22/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12101 | A/P Invoice | 57,439.00 | Cathay Bank - Regular Checking | 276,418.10 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6642 | Vendor | 4/22/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12147 | A/P Invoice | 59,359.80 | Cathay Bank - Regular Checking | 276,418.10 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6642 | Vendor | 4/22/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12087 | A/P Invoice | 60,702.55 | Cathay Bank - Regular Checking | 276,418.10 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6642 | Vendor | 4/22/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12088 | A/P Invoice | 60,716.75 | Cathay Bank - Regular Checking | 276,418.10 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6652 | Vendor | 4/28/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12163 | A/P Invoice | 65,387.60 | Cathay Bank - Regular Checking | 124,223.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6652 | Vendor | 4/28/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12196 | A/P Invoice | 1,676.20 | Cathay Bank - Regular Checking | 124,223.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6652 | Vendor | 4/28/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12195 | A/P Invoice | 57,159.60 | Cathay Bank - Regular Checking | 124,223.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6661 | Vendor | 4/29/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12382 | A/P Invoice | 49,233.44 | Cathay Bank - Regular Checking | 97,078.60 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6661 | Vendor | 4/29/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12386 | A/P Invoice | 47,845.16 | Cathay Bank - Regular Checking | 97,078.60 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6698 | Vendor | 5/4/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 11353 | A/P Invoice | 58,258.01 | Cathay Bank - Regular Checking | 214,506.27 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6698 | Vendor | 5/4/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 11497 | A/P Invoice | 71,556.92 | Cathay Bank - Regular Checking | 214,506.27 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6698 | Vendor | 5/4/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 1036 | A/P Credit Note | (146.50) | Cathay Bank - Regular Checking | 214,506.27 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6698 | Vendor | 5/4/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 1009 | A/P Credit Note | (410.00) | Cathay Bank - Regular Checking | 214,506.27 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6698 | Vendor | 5/4/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 11631 | A/P Invoice | 85,247.84 | Cathay Bank - Regular Checking | 214,506.27 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6699 | Vendor | 5/4/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12262 | A/P Invoice | 78,294.00 | Cathay Bank - Regular Checking | 219,810.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6699 | Vendor | 5/4/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12259 | A/P Invoice | 70,433.00 | Cathay Bank - Regular Checking | 219,810.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6699 | Vendor | 5/4/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12267 | A/P Invoice | 4,884.00 | Cathay Bank - Regular Checking | 219,810.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 6699 | Vendor | 5/4/2010 | V2068 | TRADE UNION INT L (TAIWAN) LTD | 12505 | A/P Invoice | 66,199.00 | Cathay Bank - Regular Checking | 219,810.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |

# EXHIBIT 2

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 6711 | Vendor | 5/10/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 11876 A/P Invoice | 69,659.19 | Cathay Bank - Regular Checking | 69,659.19 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6749 | Vendor | 5/14/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12242 A/P Invoice | 86,388.00 | Cathay Bank - Regular Checking | 169,845.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6749 | Vendor | 5/14/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12243 A/P Invoice | 83,457.00 | Cathay Bank - Regular Checking | 169,845.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6751 | Vendor | 5/18/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12292 A/P Invoice | 63,039.96 | Cathay Bank - Regular Checking | 229,361.66 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6751 | Vendor | 5/18/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12293 A/P Invoice | 58,099.00 | Cathay Bank - Regular Checking | 229,361.66 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6751 | Vendor | 5/18/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12202 A/P Invoice | 59,197.59 | Cathay Bank - Regular Checking | 229,361.66 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6751 | Vendor | 5/18/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12249 A/P Invoice | 49,025.11 | Cathay Bank - Regular Checking | 229,361.66 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6789 | Vendor | 5/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12125 A/P Invoice | 10,048.06 | Cathay Bank - Regular Checking | 155,062.76 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6789 | Vendor | 5/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12266 A/P Invoice | 70,649.52 | Cathay Bank - Regular Checking | 155,062.76 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6789 | Vendor | 5/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12792 A/P Invoice | 92.00 | Cathay Bank - Regular Checking | 155,062.76 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6789 | Vendor | 5/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12334 A/P Invoice | 2,970.00 | Cathay Bank - Regular Checking | 155,062.76 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6789 | Vendor | 5/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12300 A/P Invoice | 12,857.50 | Cathay Bank - Regular Checking | 155,062.76 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6789 | Vendor | 5/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12627 A/P Invoice | 58,445.68 | Cathay Bank - Regular Checking | 155,062.76 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6790 | Vendor | 5/21/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12438 A/P Invoice | 78,090.00 | Cathay Bank - Regular Checking | 151,754.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6790 | Vendor | 5/21/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12443 A/P Invoice | 73,664.00 | Cathay Bank - Regular Checking | 151,754.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6833 | Account | 5/25/2010 PURCHASE | TRADE UNION INT L (TAIWAN) LTD | Account List | 23,617.70 | Cathay Bank - Regular Checking | 23,617.70 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6832 | Vendor | 5/25/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 91308 Outgoing Payment | (219.00) | Cathay Bank - Regular Checking | 380,433.11 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6832 | Vendor | 5/25/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12314 A/P Invoice | 56,655.00 | Cathay Bank - Regular Checking | 380,433.11 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6832 | Vendor | 5/25/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12331 A/P Invoice | 9,490.84 | Cathay Bank - Regular Checking | 380,433.11 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6832 | Vendor | 5/25/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12457 A/P Invoice | 67,968.00 | Cathay Bank - Regular Checking | 380,433.11 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6832 | Vendor | 5/25/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12673 A/P Invoice | 63,258.00 | Cathay Bank - Regular Checking | 380,433.11 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6832 | Vendor | 5/25/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12410 A/P Invoice | 52,664.15 | Cathay Bank - Regular Checking | 380,433.11 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6832 | Vendor | 5/25/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12476 A/P Invoice | 59,508.67 | Cathay Bank - Regular Checking | 380,433.11 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6832 | Vendor | 5/25/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12519 A/P Invoice | 71,107.45 | Cathay Bank - Regular Checking | 380,433.11 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6839 | Vendor | 6/1/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12518 A/P Invoice | 54,784.00 | Cathay Bank - Regular Checking | 257,201.86 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6839 | Vendor | 6/1/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12495 A/P Invoice | 23,398.70 | Cathay Bank - Regular Checking | 257,201.86 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6839 | Vendor | 6/1/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12477 A/P Invoice | 54,075.95 | Cathay Bank - Regular Checking | 257,201.86 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6839 | Vendor | 6/1/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12478 A/P Invoice | 3,195.15 | Cathay Bank - Regular Checking | 257,201.86 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6839 | Vendor | 6/1/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12736 A/P Invoice | 145,365.76 | Cathay Bank - Regular Checking | 257,201.86 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6839 | Vendor | 6/1/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 91790 Outgoing Payment | (23,617.70) | Cathay Bank - Regular Checking | 257,201.86 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6887 | Account | 6/3/2010 PURCHASE | TRADE UNION INT L (TAIWAN) LTD | Account List | 3,588.75 | Cathay Bank - Regular Checking | 3,588.75 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6888 | Vendor | 6/3/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12261 A/P Invoice | 82,146.00 | Cathay Bank - Regular Checking | 82,146.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6886 | Vendor | 6/7/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12583 A/P Invoice | 70,679.16 | Cathay Bank - Regular Checking | 71,837.46 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6886 | Vendor | 6/7/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12584 A/P Invoice | 378.00 | Cathay Bank - Regular Checking | 71,837.46 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6886 | Vendor | 6/7/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12609 A/P Invoice | 780.30 | Cathay Bank - Regular Checking | 71,837.46 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6889 | Vendor | 6/7/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12294 A/P Invoice | 38,974.00 | Cathay Bank - Regular Checking | 103,331.30 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6889 | Vendor | 6/7/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12315 A/P Invoice | 14,669.00 | Cathay Bank - Regular Checking | 103,331.30 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6889 | Vendor | 6/7/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12794 A/P Invoice | 33.12 | Cathay Bank - Regular Checking | 103,331.30 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6889 | Vendor | 6/7/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12686 A/P Invoice | 35,425.93 | Cathay Bank - Regular Checking | 103,331.30 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6889 | Vendor | 6/7/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12717 A/P Invoice | 17,818.00 | Cathay Bank - Regular Checking | 103,331.30 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6889 | Vendor | 6/7/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 92185 Outgoing Payment | (3,588.75) | Cathay Bank - Regular Checking | 103,331.30 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6890 | Vendor | 6/8/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12520 A/P Invoice | 64,130.00 | Cathay Bank - Regular Checking | 504,522.27 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6890 | Vendor | 6/8/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12553 A/P Invoice | 68,529.55 | Cathay Bank - Regular Checking | 504,522.27 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6890 | Vendor | 6/8/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12598 A/P Invoice | 59,580.95 | Cathay Bank - Regular Checking | 504,522.27 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6890 | Vendor | 6/8/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12599 A/P Invoice | 62,645.06 | Cathay Bank - Regular Checking | 504,522.27 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6890 | Vendor | 6/8/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12601 A/P Invoice | 61,047.28 | Cathay Bank - Regular Checking | 504,522.27 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6890 | Vendor | 6/8/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12602 A/P Invoice | 66,442.60 | Cathay Bank - Regular Checking | 504,522.27 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6890 | Vendor | 6/8/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12636 A/P Invoice | 67,875.74 | Cathay Bank - Regular Checking | 504,522.27 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6890 | Vendor | 6/8/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12701 A/P Invoice | 3,928.15 | Cathay Bank - Regular Checking | 504,522.27 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6890 | Vendor | 6/8/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12703 A/P Invoice | 23,476.79 | Cathay Bank - Regular Checking | 504,522.27 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6890 | Vendor | 6/8/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12732 A/P Invoice | 780.30 | Cathay Bank - Regular Checking | 504,522.27 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6890 | Vendor | 6/8/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12704 A/P Invoice | 23,290.20 | Cathay Bank - Regular Checking | 504,522.27 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6890 | Vendor | 6/8/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12733 A/P Invoice | 428.40 | Cathay Bank - Regular Checking | 504,522.27 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6890 | Vendor | 6/8/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12702 A/P Invoice | 2,367.25 | Cathay Bank - Regular Checking | 504,522.27 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6890 | Vendor | 6/8/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 1119 A/P Credit Note | (1,208.70) | Cathay Bank - Regular Checking | 504,522.27 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6890 | Vendor | 6/8/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13081 A/P Invoice | 1,208.70 | Cathay Bank - Regular Checking | 504,522.27 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6920 | Account | 6/11/2010 PURCHASE | TRADE UNION INT L (TAIWAN) LTD | Account List | 13,432.84 | Cathay Bank - Regular Checking | 13,432.84 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6918 | Vendor | 6/11/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12589 A/P Invoice | 52,320.00 | Cathay Bank - Regular Checking | 52,320.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6919 | Vendor | 6/11/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12637 A/P Invoice | 66,917.91 | Cathay Bank - Regular Checking | 135,294.93 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6919 | Vendor | 6/11/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12638 A/P Invoice | 68,377.02 | Cathay Bank - Regular Checking | 135,294.93 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6936 | Vendor | 6/18/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12479 A/P Invoice | 525.00 | Cathay Bank - Regular Checking | 371,864.85 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6936 | Vendor | 6/18/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12480 A/P Invoice | 272.64 | Cathay Bank - Regular Checking | 371,864.85 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6936 | Vendor | 6/18/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12521 A/P Invoice | 1,422.96 | Cathay Bank - Regular Checking | 371,864.85 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6936 | Vendor | 6/18/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12661 A/P Invoice | 28,996.37 | Cathay Bank - Regular Checking | 371,864.85 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6936 | Vendor | 6/18/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12710 A/P Invoice | 81,900.00 | Cathay Bank - Regular Checking | 371,864.85 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6936 | Vendor | 6/18/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12711 A/P Invoice | 1,036.00 | Cathay Bank - Regular Checking | 371,864.85 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |

# EXHIBIT 2

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 6936 Vendor | 6/18/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12712 A/P Invoice | 1,440.00 | Cathay Bank - Regular Checking | 371,864.85 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6936 Vendor | 6/18/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12738 A/P Invoice | 1,080.00 | Cathay Bank - Regular Checking | 371,864.85 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6936 Vendor | 6/18/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12805 A/P Invoice | 56,642.00 | Cathay Bank - Regular Checking | 371,864.85 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6936 Vendor | 6/18/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12939 A/P Invoice | 36,190.24 | Cathay Bank - Regular Checking | 371,864.85 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6936 Vendor | 6/18/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 1130 A/P Credit Note | (222.00) | Cathay Bank - Regular Checking | 371,864.85 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6936 Vendor | 6/18/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12969 A/P Invoice | 222.00 | Cathay Bank - Regular Checking | 371,864.85 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6936 Vendor | 6/18/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12947 A/P Invoice | 77,962.00 | Cathay Bank - Regular Checking | 371,864.85 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6936 Vendor | 6/18/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12971 A/P Invoice | 84,397.64 | Cathay Bank - Regular Checking | 371,864.85 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6937 Vendor | 6/21/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13157 A/P Invoice | 734.00 | Cathay Bank - Regular Checking | 70,226.92 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6937 Vendor | 6/21/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13156 A/P Invoice | 43,791.00 | Cathay Bank - Regular Checking | 70,226.92 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6937 Vendor | 6/21/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13265 A/P Invoice | 12.28 | Cathay Bank - Regular Checking | 70,226.92 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6937 Vendor | 6/21/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13198 A/P Invoice | 16,660.79 | Cathay Bank - Regular Checking | 70,226.92 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6937 Vendor | 6/21/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13262 A/P Invoice | 806.05 | Cathay Bank - Regular Checking | 70,226.92 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6937 Vendor | 6/21/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13199 A/P Invoice | 1,222.68 | Cathay Bank - Regular Checking | 70,226.92 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6937 Vendor | 6/21/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13261 A/P Invoice | 5,270.94 | Cathay Bank - Regular Checking | 70,226.92 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6937 Vendor | 6/21/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13200 A/P Invoice | 1,129.18 | Cathay Bank - Regular Checking | 70,226.92 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6937 Vendor | 6/21/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13905 A/P Invoice | 600.00 | Cathay Bank - Regular Checking | 70,226.92 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6966 Vendor | 6/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13357 A/P Invoice | 10,779.60 | Cathay Bank - Regular Checking | 30,521.60 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6966 Vendor | 6/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13023 A/P Invoice | 19,650.00 | Cathay Bank - Regular Checking | 30,521.60 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6966 Vendor | 6/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13025 A/P Invoice | 92.00 | Cathay Bank - Regular Checking | 30,521.60 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6969 Vendor | 6/24/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13059 A/P Invoice | 80,197.00 | Cathay Bank - Regular Checking | 80,197.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6970 Vendor | 6/24/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | Unknown | 69,251.93 | Cathay Bank - Regular Checking | 69,251.93 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6971 Vendor | 6/24/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12941 A/P Invoice | 38,046.08 | Cathay Bank - Regular Checking | 180,400.65 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6971 Vendor | 6/24/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12975 A/P Invoice | 64,216.50 | Cathay Bank - Regular Checking | 180,400.65 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6971 Vendor | 6/24/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12972 A/P Invoice | 55,228.00 | Cathay Bank - Regular Checking | 180,400.65 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6971 Vendor | 6/24/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12970 A/P Invoice | 78,999.00 | Cathay Bank - Regular Checking | 180,400.65 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6971 Vendor | 6/24/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12976 A/P Invoice | 13,163.00 | Cathay Bank - Regular Checking | 180,400.65 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6971 Vendor | 6/24/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 216253 Payment Advice | (69,251.93) | Cathay Bank - Regular Checking | 180,400.65 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6972 Vendor | 6/24/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12684 A/P Invoice | 69,980.86 | Cathay Bank - Regular Checking | 450,832.07 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6972 Vendor | 6/24/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12685 A/P Invoice | 65,172.81 | Cathay Bank - Regular Checking | 450,832.07 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6972 Vendor | 6/24/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12690 A/P Invoice | 64,779.03 | Cathay Bank - Regular Checking | 450,832.07 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6972 Vendor | 6/24/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12734 A/P Invoice | 1,608.20 | Cathay Bank - Regular Checking | 450,832.07 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6972 Vendor | 6/24/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12687 A/P Invoice | 71,537.43 | Cathay Bank - Regular Checking | 450,832.07 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6972 Vendor | 6/24/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12688 A/P Invoice | 58,224.74 | Cathay Bank - Regular Checking | 450,832.07 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6972 Vendor | 6/24/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12689 A/P Invoice | 64,325.94 | Cathay Bank - Regular Checking | 450,832.07 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6972 Vendor | 6/24/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12693 A/P Invoice | 68,635.90 | Cathay Bank - Regular Checking | 450,832.07 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 6972 Vendor | 6/24/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 216282 Journal Entry | (13,432.84) | Cathay Bank - Regular Checking | 450,832.07 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7015 Vendor | 6/29/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12723 A/P Invoice | 27,696.95 | Cathay Bank - Regular Checking | 265,206.22 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7015 Vendor | 6/29/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12724 A/P Invoice | 5,729.88 | Cathay Bank - Regular Checking | 265,206.22 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7015 Vendor | 6/29/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12725 A/P Invoice | 6,512.60 | Cathay Bank - Regular Checking | 265,206.22 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7015 Vendor | 6/29/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12726 A/P Invoice | 15,859.34 | Cathay Bank - Regular Checking | 265,206.22 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7015 Vendor | 6/29/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12727 A/P Invoice | 13,897.03 | Cathay Bank - Regular Checking | 265,206.22 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7015 Vendor | 6/29/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13082 A/P Invoice | 0.57 | Cathay Bank - Regular Checking | 265,206.22 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7015 Vendor | 6/29/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12811 A/P Invoice | 71,496.37 | Cathay Bank - Regular Checking | 265,206.22 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7015 Vendor | 6/29/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12831 A/P Invoice | 1,040.40 | Cathay Bank - Regular Checking | 265,206.22 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7015 Vendor | 6/29/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12812 A/P Invoice | 63,833.02 | Cathay Bank - Regular Checking | 265,206.22 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7015 Vendor | 6/29/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13186 A/P Invoice | 275.54 | Cathay Bank - Regular Checking | 265,206.22 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7015 Vendor | 6/29/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12810 A/P Invoice | 58,846.22 | Cathay Bank - Regular Checking | 265,206.22 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7015 Vendor | 6/29/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13984 A/P Invoice | 18.30 | Cathay Bank - Regular Checking | 265,206.22 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7016 Vendor | 6/30/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12920 A/P Invoice | 46,574.00 | Cathay Bank - Regular Checking | 181,270.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7016 Vendor | 6/30/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12895 A/P Invoice | 1,811.13 | Cathay Bank - Regular Checking | 181,270.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7016 Vendor | 6/30/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12894 A/P Invoice | 31,620.00 | Cathay Bank - Regular Checking | 181,270.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7016 Vendor | 6/30/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13060 A/P Invoice | 40,768.00 | Cathay Bank - Regular Checking | 181,270.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7016 Vendor | 6/30/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12817 A/P Invoice | 60,497.27 | Cathay Bank - Regular Checking | 181,270.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7065 Vendor | 7/6/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13196 A/P Invoice | 81,783.00 | Cathay Bank - Regular Checking | 81,783.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7100 Vendor | 7/7/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | Unknown | 20,000.00 | Cathay Bank - Regular Checking | 20,000.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7102 Vendor | 7/8/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13503 A/P Invoice | 82,682.04 | Cathay Bank - Regular Checking | 71,561.64 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7102 Vendor | 7/8/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13615 A/P Invoice | 8,879.60 | Cathay Bank - Regular Checking | 71,561.64 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7102 Vendor | 7/8/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 219405 Payment Advice | (20,000.00) | Cathay Bank - Regular Checking | 71,561.64 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7101 Vendor | 7/9/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | Unknown | 54,000.00 | Cathay Bank - Regular Checking | 54,000.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7103 Vendor | 7/9/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | Unknown | 337,000.00 | Cathay Bank - Regular Checking | 337,000.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7121 Vendor | 7/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13180 A/P Invoice | 45,786.00 | Cathay Bank - Regular Checking | 343,508.39 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7121 Vendor | 7/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13197 A/P Invoice | 81,936.36 | Cathay Bank - Regular Checking | 343,508.39 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7121 Vendor | 7/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13302 A/P Invoice | 59,401.75 | Cathay Bank - Regular Checking | 343,508.39 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7121 Vendor | 7/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13328 A/P Invoice | 6,387.04 | Cathay Bank - Regular Checking | 343,508.39 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7121 Vendor | 7/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13341 A/P Invoice | 80,266.00 | Cathay Bank - Regular Checking | 343,508.39 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |

# EXHIBIT 2

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 7121 Vendor | 7/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13342 A/P Invoice | 321.00 Cathay Bank - Regular Checking | 343,508.39 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7121 Vendor | 7/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13452 A/P Invoice | 33,944.00 Cathay Bank - Regular Checking | 343,508.39 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7121 Vendor | 7/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13465 A/P Invoice | 55,465.00 Cathay Bank - Regular Checking | 343,508.39 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7121 Vendor | 7/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13473 A/P Invoice | 52,453.00 Cathay Bank - Regular Checking | 343,508.39 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7121 Vendor | 7/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13474 A/P Invoice | 54,009.00 Cathay Bank - Regular Checking | 343,508.39 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7121 Vendor | 7/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13489 A/P Invoice | 64,515.24 Cathay Bank - Regular Checking | 343,508.39 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7121 Vendor | 7/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13592 A/P Invoice | 83,287.00 Cathay Bank - Regular Checking | 343,508.39 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7121 Vendor | 7/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13590 A/P Invoice | 53,801.00 Cathay Bank - Regular Checking | 343,508.39 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7121 Vendor | 7/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13631 A/P Invoice | 735.00 Cathay Bank - Regular Checking | 343,508.39 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7121 Vendor | 7/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13629 A/P Invoice | 62,201.00 Cathay Bank - Regular Checking | 343,508.39 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7121 Vendor | 7/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 219406 Payment Advice | (54,000.00) Cathay Bank - Regular Checking | 343,508.39 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7121 Vendor | 7/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 219411 Payment Advice | (337,000.00) Cathay Bank - Regular Checking | 343,508.39 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7221 Vendor | 7/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13032 A/P Invoice | 71,831.60 Cathay Bank - Regular Checking | 204,622.95 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7221 Vendor | 7/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13033 A/P Invoice | 148.00 Cathay Bank - Regular Checking | 204,622.95 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7221 Vendor | 7/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12973 A/P Invoice | 61,545.20 Cathay Bank - Regular Checking | 204,622.95 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7221 Vendor | 7/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12934 A/P Invoice | 71,098.15 Cathay Bank - Regular Checking | 204,622.95 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7133 Vendor | 7/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12921 A/P Invoice | 58,890.72 Cathay Bank - Regular Checking | 237,214.62 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7133 Vendor | 7/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12923 A/P Invoice | 56,458.33 Cathay Bank - Regular Checking | 237,214.62 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7133 Vendor | 7/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12933 A/P Invoice | 56,117.85 Cathay Bank - Regular Checking | 237,214.62 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7133 Vendor | 7/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12936 A/P Invoice | 65,747.72 Cathay Bank - Regular Checking | 237,214.62 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7161 Vendor | 7/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12974 A/P Invoice | 61,949.00 Cathay Bank - Regular Checking | 479,244.07 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7161 Vendor | 7/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12983 A/P Invoice | 60,028.00 Cathay Bank - Regular Checking | 479,244.07 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7161 Vendor | 7/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13017 A/P Invoice | 65,323.84 Cathay Bank - Regular Checking | 479,244.07 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7161 Vendor | 7/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13069 A/P Invoice | 39,764.00 Cathay Bank - Regular Checking | 479,244.07 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7161 Vendor | 7/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13314 A/P Invoice | 215.14 Cathay Bank - Regular Checking | 479,244.07 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7161 Vendor | 7/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12935 A/P Invoice | 69,886.97 Cathay Bank - Regular Checking | 479,244.07 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7161 Vendor | 7/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14324 A/P Invoice | 8.84 Cathay Bank - Regular Checking | 479,244.07 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7161 Vendor | 7/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12940 A/P Invoice | 64,298.87 Cathay Bank - Regular Checking | 479,244.07 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7161 Vendor | 7/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13317 A/P Invoice | 71.40 Cathay Bank - Regular Checking | 479,244.07 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7161 Vendor | 7/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12937 A/P Invoice | 58,026.01 Cathay Bank - Regular Checking | 479,244.07 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7161 Vendor | 7/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13315 A/P Invoice | 131.80 Cathay Bank - Regular Checking | 479,244.07 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7161 Vendor | 7/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12938 A/P Invoice | 59,539.00 Cathay Bank - Regular Checking | 479,244.07 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7161 Vendor | 7/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14325 A/P Invoice | 1.20 Cathay Bank - Regular Checking | 479,244.07 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7167 Vendor | 7/26/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13046 A/P Invoice | 58,939.92 Cathay Bank - Regular Checking | 509,514.56 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7167 Vendor | 7/26/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12996 A/P Invoice | 59,379.33 Cathay Bank - Regular Checking | 509,514.56 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7167 Vendor | 7/26/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12997 A/P Invoice | 59,881.60 Cathay Bank - Regular Checking | 509,514.56 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7167 Vendor | 7/26/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13066 A/P Invoice | 61,640.00 Cathay Bank - Regular Checking | 509,514.56 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7167 Vendor | 7/26/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13065 A/P Invoice | 65,365.00 Cathay Bank - Regular Checking | 509,514.56 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7167 Vendor | 7/26/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13058 A/P Invoice | 65,760.00 Cathay Bank - Regular Checking | 509,514.56 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7167 Vendor | 7/26/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13035 A/P Invoice | 68,286.64 Cathay Bank - Regular Checking | 509,514.56 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7167 Vendor | 7/26/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13044 A/P Invoice | 70,262.07 Cathay Bank - Regular Checking | 509,514.56 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7170 Vendor | 7/27/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13118 A/P Invoice | 36,965.00 Cathay Bank - Regular Checking | 90,382.56 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7170 Vendor | 7/27/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13119 A/P Invoice | 53,417.56 Cathay Bank - Regular Checking | 90,382.56 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7243 Vendor | 8/9/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13533 A/P Invoice | 63,277.55 Cathay Bank - Regular Checking | 170,984.58 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7243 Vendor | 8/9/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 1268 A/P Credit Note | (917.70) Cathay Bank - Regular Checking | 170,984.58 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7243 Vendor | 8/9/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13479 A/P Invoice | 55,424.89 Cathay Bank - Regular Checking | 170,984.58 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7243 Vendor | 8/9/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 1208 A/P Credit Note | (794.92) Cathay Bank - Regular Checking | 170,984.58 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7243 Vendor | 8/9/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13953 A/P Invoice | 721.28 Cathay Bank - Regular Checking | 170,984.58 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7243 Vendor | 8/9/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14520 A/P Invoice | 73.64 Cathay Bank - Regular Checking | 170,984.58 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7243 Vendor | 8/9/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13477 A/P Invoice | 53,199.84 Cathay Bank - Regular Checking | 170,984.58 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7247 Vendor | 8/10/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | Unknown | 36,600.00 Cathay Bank - Regular Checking | 36,600.00 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7310 Vendor | 8/17/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13120 A/P Invoice | 67,227.64 Cathay Bank - Regular Checking | 155,676.43 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7310 Vendor | 8/17/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13151 A/P Invoice | 66,273.94 Cathay Bank - Regular Checking | 155,676.43 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7310 Vendor | 8/17/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13179 A/P Invoice | 58,774.85 Cathay Bank - Regular Checking | 155,676.43 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7310 Vendor | 8/17/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 225937 Payment Advice | (36,600.00) Cathay Bank - Regular Checking | 155,676.43 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7342 Vendor | 8/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | Unknown | 100,000.00 Cathay Bank - Regular Checking | 100,000.00 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7343 Vendor | 8/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13181 A/P Invoice | 64,745.44 Cathay Bank - Regular Checking | 203,394.72 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7343 Vendor | 8/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13182 A/P Invoice | 65,534.76 Cathay Bank - Regular Checking | 203,394.72 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7343 Vendor | 8/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13185 A/P Invoice | 56,002.15 Cathay Bank - Regular Checking | 203,394.72 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7343 Vendor | 8/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13184 A/P Invoice | 61,982.48 Cathay Bank - Regular Checking | 203,394.72 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7343 Vendor | 8/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13183 A/P Invoice | 55,129.89 Cathay Bank - Regular Checking | 203,394.72 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7343 Vendor | 8/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 229452 Payment Advice | (100,000.00) Cathay Bank - Regular Checking | 203,394.72 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7344 Vendor | 8/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 1125 A/P Credit Note | (41.52) Cathay Bank - Regular Checking | 152,872.67 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7344 Vendor | 8/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12881 A/P Invoice | 41.64 Cathay Bank - Regular Checking | 152,872.67 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7344 Vendor | 8/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 12880 A/P Invoice | 71,015.22 Cathay Bank - Regular Checking | 152,872.67 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |
| 7344 Vendor | 8/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13153 A/P Invoice | 68,327.34 Cathay Bank - Regular Checking | 152,872.67 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.   TAIPEI TAIWAN |

# EXHIBIT 2

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 7344 Vendor | 8/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 1141 A/P Credit Note | (272.01) Cathay Bank - Regular Checking | 152,872.67 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7344 Vendor | 8/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13288 A/P Invoice | 7,105.00 Cathay Bank - Regular Checking | 152,872.67 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7344 Vendor | 8/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13486 A/P Invoice | 92.00 Cathay Bank - Regular Checking | 152,872.67 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7344 Vendor | 8/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13485 A/P Invoice | 6,605.00 Cathay Bank - Regular Checking | 152,872.67 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7346 Vendor | 8/26/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13125 A/P Invoice | 889.76 Cathay Bank - Regular Checking | 99,484.34 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7346 Vendor | 8/26/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13126 A/P Invoice | 14,759.31 Cathay Bank - Regular Checking | 99,484.34 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7346 Vendor | 8/26/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13127 A/P Invoice | 3,381.87 Cathay Bank - Regular Checking | 99,484.34 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7346 Vendor | 8/26/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13616 A/P Invoice | 80,453.40 Cathay Bank - Regular Checking | 99,484.34 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7369 Vendor | 8/27/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13390 A/P Invoice | 46,061.00 Cathay Bank - Regular Checking | 151,189.08 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7369 Vendor | 8/27/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13391 A/P Invoice | 52,781.38 Cathay Bank - Regular Checking | 151,189.08 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7369 Vendor | 8/27/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13377 A/P Invoice | 52,346.70 Cathay Bank - Regular Checking | 151,189.08 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7370 Vendor | 8/30/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13229 A/P Invoice | 56,896.56 Cathay Bank - Regular Checking | 71,926.24 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7370 Vendor | 8/30/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13504 A/P Invoice | 15,029.68 Cathay Bank - Regular Checking | 71,926.24 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7383 Vendor | 9/1/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13321 A/P Invoice | 62,875.00 Cathay Bank - Regular Checking | 248,272.55 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7383 Vendor | 9/1/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13338 A/P Invoice | 64,099.55 Cathay Bank - Regular Checking | 248,272.55 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7383 Vendor | 9/1/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13386 A/P Invoice | 63,942.00 Cathay Bank - Regular Checking | 248,272.55 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7383 Vendor | 9/1/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13505 A/P Invoice | 57,356.00 Cathay Bank - Regular Checking | 248,272.55 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7430 Vendor | 9/7/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13522 A/P Invoice | 62,249.00 Cathay Bank - Regular Checking | 244,623.55 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7430 Vendor | 9/7/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13523 A/P Invoice | 16,083.00 Cathay Bank - Regular Checking | 244,623.55 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7430 Vendor | 9/7/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13537 A/P Invoice | 42,296.00 Cathay Bank - Regular Checking | 244,623.55 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7430 Vendor | 9/7/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 1301 A/P Credit Note | (9.00) Cathay Bank - Regular Checking | 244,623.55 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7430 Vendor | 9/7/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13390 A/P Invoice | 62,314.60 Cathay Bank - Regular Checking | 244,623.55 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7430 Vendor | 9/7/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13399 A/P Invoice | 61,689.95 Cathay Bank - Regular Checking | 244,623.55 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7441 Vendor | 9/9/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13374 A/P Invoice | 66,192.53 Cathay Bank - Regular Checking | 140,194.95 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7441 Vendor | 9/9/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13376 A/P Invoice | 70,141.38 Cathay Bank - Regular Checking | 140,194.95 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7441 Vendor | 9/9/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13375 A/P Invoice | 3,861.04 Cathay Bank - Regular Checking | 140,194.95 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7473 Vendor | 9/14/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13706 A/P Invoice | 84,860.00 Cathay Bank - Regular Checking | 84,860.00 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7476 Vendor | 9/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13550 A/P Invoice | 74,665.05 Cathay Bank - Regular Checking | 74,665.05 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7479 Vendor | 9/17/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13406 A/P Invoice | 58,276.70 Cathay Bank - Regular Checking | 124,134.40 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7479 Vendor | 9/17/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13584 A/P Invoice | 65,685.70 Cathay Bank - Regular Checking | 124,134.40 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7479 Vendor | 9/17/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13585 A/P Invoice | 172.00 Cathay Bank - Regular Checking | 124,134.40 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7511 Vendor | 9/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13378 A/P Invoice | 54,540.30 Cathay Bank - Regular Checking | 92,566.84 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7511 Vendor | 9/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13538 A/P Invoice | 1,183.20 Cathay Bank - Regular Checking | 92,566.84 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7511 Vendor | 9/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13541 A/P Invoice | 8,659.67 Cathay Bank - Regular Checking | 92,566.84 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7511 Vendor | 9/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13540 A/P Invoice | 13,652.07 Cathay Bank - Regular Checking | 92,566.84 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7511 Vendor | 9/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13539 A/P Invoice | 14,531.60 Cathay Bank - Regular Checking | 92,566.84 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7514 Vendor | 9/21/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13382 A/P Invoice | 48,845.07 Cathay Bank - Regular Checking | 107,143.03 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7514 Vendor | 9/21/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13545 A/P Invoice | 58,297.96 Cathay Bank - Regular Checking | 107,143.03 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7518 Vendor | 9/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13542 A/P Invoice | 16,408.92 Cathay Bank - Regular Checking | 99,202.89 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7518 Vendor | 9/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13619 A/P Invoice | 1,306.52 Cathay Bank - Regular Checking | 99,202.89 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7518 Vendor | 9/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13620 A/P Invoice | 6,457.88 Cathay Bank - Regular Checking | 99,202.89 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7518 Vendor | 9/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13626 A/P Invoice | 4,014.65 Cathay Bank - Regular Checking | 99,202.89 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7518 Vendor | 9/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13627 A/P Invoice | 14,251.22 Cathay Bank - Regular Checking | 99,202.89 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7518 Vendor | 9/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13628 A/P Invoice | 32,176.70 Cathay Bank - Regular Checking | 99,202.89 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7518 Vendor | 9/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13681 A/P Invoice | 24,587.00 Cathay Bank - Regular Checking | 99,202.89 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7541 Vendor | 9/27/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13798 A/P Invoice | 53,710.70 Cathay Bank - Regular Checking | 53,667.14 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7541 Vendor | 9/27/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 1322 A/P Credit Note | (43.56) Cathay Bank - Regular Checking | 53,667.14 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7542 Vendor | 9/27/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13621 A/P Invoice | 61,760.03 Cathay Bank - Regular Checking | 122,020.86 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7542 Vendor | 9/27/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13623 A/P Invoice | 59,798.27 Cathay Bank - Regular Checking | 122,020.86 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7542 Vendor | 9/27/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13630 A/P Invoice | 197.20 Cathay Bank - Regular Checking | 122,020.86 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7542 Vendor | 9/27/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13941 A/P Invoice | 246.64 Cathay Bank - Regular Checking | 122,020.86 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7542 Vendor | 9/27/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 15154 A/P Invoice | 18.72 Cathay Bank - Regular Checking | 122,020.86 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7624 Vendor | 10/6/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13703 A/P Invoice | 67,760.00 Cathay Bank - Regular Checking | 127,728.68 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7624 Vendor | 10/6/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13622 A/P Invoice | 59,968.68 Cathay Bank - Regular Checking | 127,728.68 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7625 Vendor | 10/8/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13669 A/P Invoice | 6,162.00 Cathay Bank - Regular Checking | 92,742.68 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7625 Vendor | 10/8/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13670 A/P Invoice | 86,580.68 Cathay Bank - Regular Checking | 92,742.68 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7626 Vendor | 10/12/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13707 A/P Invoice | 53,156.00 Cathay Bank - Regular Checking | 217,308.00 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7626 Vendor | 10/12/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13753 A/P Invoice | 38,379.00 Cathay Bank - Regular Checking | 217,308.00 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7626 Vendor | 10/12/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13752 A/P Invoice | 52,772.00 Cathay Bank - Regular Checking | 217,308.00 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7626 Vendor | 10/12/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13763 A/P Invoice | 63,403.00 Cathay Bank - Regular Checking | 217,308.00 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7626 Vendor | 10/12/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13762 A/P Invoice | 1,458.00 Cathay Bank - Regular Checking | 217,308.00 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7626 Vendor | 10/12/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13764 A/P Invoice | 8,140.00 Cathay Bank - Regular Checking | 217,308.00 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7628 Vendor | 10/12/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14095 A/P Invoice | 1,713.60 Cathay Bank - Regular Checking | 106,541.96 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7628 Vendor | 10/12/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13799 A/P Invoice | 4,940.00 Cathay Bank - Regular Checking | 106,541.96 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7628 Vendor | 10/12/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13857 A/P Invoice | 3,366.00 Cathay Bank - Regular Checking | 106,541.96 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |
| 7628 Vendor | 10/12/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13962 A/P Invoice | 55,120.34 Cathay Bank - Regular Checking | 106,541.96 Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST.  TAIPEI TAIWAN |

# EXHIBIT 2

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 7628 Vendor | 10/12/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14235 A/P Invoice | 40,982.02 | Cathay Bank - Regular Checking | 106,541.96 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7628 Vendor | 10/12/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14236 A/P Invoice | 420.00 | Cathay Bank - Regular Checking | 106,541.96 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7642 Vendor | 10/15/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | Unknown | 30,000.00 | Cathay Bank - Regular Checking | 30,000.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7643 Vendor | 10/15/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13705 A/P Invoice | 3,314.50 | Cathay Bank - Regular Checking | 109,580.64 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7643 Vendor | 10/15/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13708 A/P Invoice | 43,246.34 | Cathay Bank - Regular Checking | 109,580.64 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7643 Vendor | 10/15/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13709 A/P Invoice | 142.80 | Cathay Bank - Regular Checking | 109,580.64 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7643 Vendor | 10/15/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13716 A/P Invoice | 62,877.00 | Cathay Bank - Regular Checking | 109,580.64 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7648 Vendor | 10/18/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13801 A/P Invoice | 82,577.00 | Cathay Bank - Regular Checking | 97,872.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7648 Vendor | 10/18/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13897 A/P Invoice | 15,295.00 | Cathay Bank - Regular Checking | 97,872.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7649 Vendor | 10/19/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14270 A/P Invoice | 4,135.00 | Cathay Bank - Regular Checking | 183,500.77 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7649 Vendor | 10/19/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14347 A/P Invoice | 60,487.78 | Cathay Bank - Regular Checking | 183,500.77 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7649 Vendor | 10/19/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14425 A/P Invoice | 53,683.36 | Cathay Bank - Regular Checking | 183,500.77 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7649 Vendor | 10/19/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14533 A/P Invoice | 37,800.66 | Cathay Bank - Regular Checking | 183,500.77 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7649 Vendor | 10/19/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 15312 A/P Invoice | 78.47 | Cathay Bank - Regular Checking | 183,500.77 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7649 Vendor | 10/19/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14614 A/P Invoice | 58,656.50 | Cathay Bank - Regular Checking | 183,500.77 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7649 Vendor | 10/19/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 1351 A/P Credit Note | (1,341.00) | Cathay Bank - Regular Checking | 183,500.77 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7649 Vendor | 10/19/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 237490 Payment Advice | (30,000.00) | Cathay Bank - Regular Checking | 183,500.77 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7650 Vendor | 10/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13742 A/P Invoice | 52,389.00 | Cathay Bank - Regular Checking | 223,790.73 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7650 Vendor | 10/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13755 A/P Invoice | 630.70 | Cathay Bank - Regular Checking | 223,790.73 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7650 Vendor | 10/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13756 A/P Invoice | 6,192.68 | Cathay Bank - Regular Checking | 223,790.73 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7650 Vendor | 10/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13757 A/P Invoice | 59,977.57 | Cathay Bank - Regular Checking | 223,790.73 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7650 Vendor | 10/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13758 A/P Invoice | 1,422.82 | Cathay Bank - Regular Checking | 223,790.73 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7650 Vendor | 10/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13760 A/P Invoice | 13,769.47 | Cathay Bank - Regular Checking | 223,790.73 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7650 Vendor | 10/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13759 A/P Invoice | 21,253.37 | Cathay Bank - Regular Checking | 223,790.73 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7650 Vendor | 10/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13761 A/P Invoice | 14,696.12 | Cathay Bank - Regular Checking | 223,790.73 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7650 Vendor | 10/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13791 A/P Invoice | 9,172.00 | Cathay Bank - Regular Checking | 223,790.73 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7650 Vendor | 10/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13802 A/P Invoice | 44,287.00 | Cathay Bank - Regular Checking | 223,790.73 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7662 Vendor | 10/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13803 A/P Invoice | 63,368.82 | Cathay Bank - Regular Checking | 125,872.49 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7662 Vendor | 10/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13808 A/P Invoice | 56,168.63 | Cathay Bank - Regular Checking | 125,872.49 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7662 Vendor | 10/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13809 A/P Invoice | 6,335.04 | Cathay Bank - Regular Checking | 125,872.49 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7663 Vendor | 10/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13800 A/P Invoice | 12,438.00 | Cathay Bank - Regular Checking | 95,691.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7663 Vendor | 10/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 15347 A/P Invoice | 55.00 | Cathay Bank - Regular Checking | 95,691.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7663 Vendor | 10/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13770 A/P Invoice | 82,372.00 | Cathay Bank - Regular Checking | 95,691.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7663 Vendor | 10/22/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13765 A/P Invoice | 826.00 | Cathay Bank - Regular Checking | 95,691.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7673 Vendor | 10/26/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13856 A/P Invoice | 800.00 | Cathay Bank - Regular Checking | 182,485.65 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7673 Vendor | 10/26/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13855 A/P Invoice | 77,555.00 | Cathay Bank - Regular Checking | 182,485.65 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7673 Vendor | 10/26/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13963 A/P Invoice | 185.00 | Cathay Bank - Regular Checking | 182,485.65 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7673 Vendor | 10/26/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13958 A/P Invoice | 75,653.00 | Cathay Bank - Regular Checking | 182,485.65 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7673 Vendor | 10/26/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14505 A/P Invoice | 26,722.90 | Cathay Bank - Regular Checking | 182,485.65 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7673 Vendor | 10/26/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14510 A/P Invoice | 1,381.25 | Cathay Bank - Regular Checking | 182,485.65 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7673 Vendor | 10/26/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 15376 A/P Invoice | 188.50 | Cathay Bank - Regular Checking | 182,485.65 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7681 Vendor | 10/27/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14190 A/P Invoice | 52,190.00 | Cathay Bank - Regular Checking | 52,190.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7688 Vendor | 10/29/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14031 A/P Invoice | 83,587.00 | Cathay Bank - Regular Checking | 83,587.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7730 Vendor | 11/1/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13907 A/P Invoice | 64,119.60 | Cathay Bank - Regular Checking | 250,523.18 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7730 Vendor | 11/1/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13942 A/P Invoice | 59,823.00 | Cathay Bank - Regular Checking | 250,523.18 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7730 Vendor | 11/1/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13819 A/P Invoice | 60,131.09 | Cathay Bank - Regular Checking | 250,523.18 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7730 Vendor | 11/1/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13940 A/P Invoice | 66,449.49 | Cathay Bank - Regular Checking | 250,523.18 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7731 Vendor | 11/1/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 15054 A/P Invoice | 58,182.90 | Cathay Bank - Regular Checking | 59,457.90 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7731 Vendor | 11/1/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 15055 A/P Invoice | 1,275.00 | Cathay Bank - Regular Checking | 59,457.90 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7743 Vendor | 11/4/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14677 A/P Invoice | 48,213.76 | Cathay Bank - Regular Checking | 88,231.46 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7743 Vendor | 11/4/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14749 A/P Invoice | 40,017.70 | Cathay Bank - Regular Checking | 88,231.46 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7744 Vendor | 11/4/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13965 A/P Invoice | 21,745.10 | Cathay Bank - Regular Checking | 111,241.10 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7744 Vendor | 11/4/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14001 A/P Invoice | 4,052.00 | Cathay Bank - Regular Checking | 111,241.10 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7744 Vendor | 11/4/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 15497 A/P Invoice | 100.00 | Cathay Bank - Regular Checking | 111,241.10 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7744 Vendor | 11/4/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14016 A/P Invoice | 85,344.00 | Cathay Bank - Regular Checking | 111,241.10 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7749 Vendor | 11/9/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13913 A/P Invoice | 26,962.70 | Cathay Bank - Regular Checking | 27,312.70 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7749 Vendor | 11/9/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 15561 A/P Invoice | 350.00 | Cathay Bank - Regular Checking | 27,312.70 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7750 Vendor | 11/9/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 15375 A/P Invoice | 8.84 | Cathay Bank - Regular Checking | 71,874.51 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7750 Vendor | 11/9/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13957 A/P Invoice | 164.14 | Cathay Bank - Regular Checking | 71,874.51 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7750 Vendor | 11/9/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 1210 A/P Credit Note | (172.98) | Cathay Bank - Regular Checking | 71,874.51 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7750 Vendor | 11/9/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13950 A/P Invoice | 71,403.44 | Cathay Bank - Regular Checking | 71,874.51 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7750 Vendor | 11/9/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13807 A/P Invoice | 471.07 | Cathay Bank - Regular Checking | 71,874.51 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7772 Vendor | 11/12/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | Unknown | 75,000.00 | Cathay Bank - Regular Checking | 75,000.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7779 Vendor | 11/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13951 A/P Invoice | 65,416.56 | Cathay Bank - Regular Checking | 190,937.64 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7779 Vendor | 11/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13961 A/P Invoice | 80.65 | Cathay Bank - Regular Checking | 190,937.64 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |
| 7779 Vendor | 11/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13959 A/P Invoice | 69,233.63 | Cathay Bank - Regular Checking | 190,937.64 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. | TAIPEI TAIWAN |

# EXHIBIT 2

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 7779 Vendor | 11/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14188 A/P Invoice | 55,538.80 | Cathay Bank - Regular Checking | 190,937.64 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7779 Vendor | 11/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14393 A/P Invoice | 75,668.00 | Cathay Bank - Regular Checking | 190,937.64 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7779 Vendor | 11/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 242005 Payment Advice | (75,000.00) | Cathay Bank - Regular Checking | 190,937.64 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7817 Vendor | 11/19/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13964 A/P Invoice | 61,028.00 | Cathay Bank - Regular Checking | 61,028.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7821 Vendor | 11/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 13906 A/P Invoice | 12,466.00 | Cathay Bank - Regular Checking | 29,871.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7821 Vendor | 11/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14345 A/P Invoice | 20,932.76 | Cathay Bank - Regular Checking | 29,871.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7821 Vendor | 11/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14101 A/P Invoice | 10,101.00 | Cathay Bank - Regular Checking | 29,871.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7821 Vendor | 11/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14102 A/P Invoice | 21,321.05 | Cathay Bank - Regular Checking | 29,871.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7821 Vendor | 11/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14163 A/P Invoice | 1,739.31 | Cathay Bank - Regular Checking | 29,871.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7821 Vendor | 11/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14200 A/P Invoice | 89,202.40 | Cathay Bank - Regular Checking | 29,871.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7821 Vendor | 11/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14189 A/P Invoice | 46,536.00 | Cathay Bank - Regular Checking | 29,871.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7821 Vendor | 11/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14285 A/P Invoice | 34,455.54 | Cathay Bank - Regular Checking | 29,871.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7821 Vendor | 11/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 15719 A/P Invoice | 4,120.22 | Cathay Bank - Regular Checking | 29,871.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7821 Vendor | 11/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14604 A/P Invoice | 8,997.12 | Cathay Bank - Regular Checking | 29,871.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7821 Vendor | 11/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 243479 Journal Entry | (220,000.00) | Cathay Bank - Regular Checking | 29,871.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7835 Vendor | 11/29/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14030 A/P Invoice | 68,722.00 | Cathay Bank - Regular Checking | 121,421.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7835 Vendor | 11/29/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14032 A/P Invoice | 800.00 | Cathay Bank - Regular Checking | 121,421.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7835 Vendor | 11/29/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14104 A/P Invoice | 51,899.00 | Cathay Bank - Regular Checking | 121,421.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7893 Vendor | 12/1/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14112 A/P Invoice | 71,253.30 | Cathay Bank - Regular Checking | 205,111.22 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7893 Vendor | 12/1/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14135 A/P Invoice | 69,532.60 | Cathay Bank - Regular Checking | 205,111.22 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7893 Vendor | 12/1/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14103 A/P Invoice | 64,325.32 | Cathay Bank - Regular Checking | 205,111.22 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7916 Vendor | 12/3/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14318 A/P Invoice | 57,879.08 | Cathay Bank - Regular Checking | 57,879.08 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7909 Vendor | 12/6/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14297 A/P Invoice | 72,484.00 | Cathay Bank - Regular Checking | 72,484.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7915 Vendor | 12/7/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14422 A/P Invoice | 20,535.61 | Cathay Bank - Regular Checking | 50,356.83 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7915 Vendor | 12/7/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14423 A/P Invoice | 29,821.22 | Cathay Bank - Regular Checking | 50,356.83 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7921 Vendor | 12/9/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14369 A/P Invoice | 26,622.00 | Cathay Bank - Regular Checking | 29,217.20 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7921 Vendor | 12/9/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14421 A/P Invoice | 2,595.20 | Cathay Bank - Regular Checking | 29,217.20 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7955 Vendor | 12/14/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14308 A/P Invoice | 70,851.00 | Cathay Bank - Regular Checking | 93,177.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 7955 Vendor | 12/14/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14346 A/P Invoice | 22,326.40 | Cathay Bank - Regular Checking | 93,177.40 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8006 Vendor | 12/16/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14122 A/P Invoice | 62,996.93 | Cathay Bank - Regular Checking | 62,996.93 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8007 Vendor | 12/17/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14275 A/P Invoice | 34,515.00 | Cathay Bank - Regular Checking | 89,077.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8007 Vendor | 12/17/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14294 A/P Invoice | 54,562.00 | Cathay Bank - Regular Checking | 89,077.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8008 Vendor | 12/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14384 A/P Invoice | 59,850.00 | Cathay Bank - Regular Checking | 186,643.77 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8008 Vendor | 12/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14388 A/P Invoice | 132.60 | Cathay Bank - Regular Checking | 186,643.77 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8008 Vendor | 12/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14391 A/P Invoice | 500.00 | Cathay Bank - Regular Checking | 186,643.77 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8008 Vendor | 12/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 1421 A/P Credit Note | (28.00) | Cathay Bank - Regular Checking | 186,643.77 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8008 Vendor | 12/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14387 A/P Invoice | 67,960.65 | Cathay Bank - Regular Checking | 186,643.77 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8008 Vendor | 12/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14242 A/P Invoice | 6,237.50 | Cathay Bank - Regular Checking | 186,643.77 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8008 Vendor | 12/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14291 A/P Invoice | 126.75 | Cathay Bank - Regular Checking | 186,643.77 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8008 Vendor | 12/20/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14241 A/P Invoice | 51,864.27 | Cathay Bank - Regular Checking | 186,643.77 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8030 Vendor | 12/23/2010 V2068 | TRADE UNION INT L (TAIWAN) LTD | Unknown | 48,000.00 | Cathay Bank - Regular Checking | 48,000.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8041 Vendor | 1/6/2011 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14244 A/P Invoice | 1,588.80 | US BANK - CHECKING | 98,414.64 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8041 Vendor | 1/6/2011 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14246 A/P Invoice | 112.36 | US BANK - CHECKING | 98,414.64 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8041 Vendor | 1/6/2011 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14245 A/P Invoice | 56,229.28 | US BANK - CHECKING | 98,414.64 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8041 Vendor | 1/6/2011 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14293 A/P Invoice | 227.12 | US BANK - CHECKING | 98,414.64 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8041 Vendor | 1/6/2011 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14405 A/P Invoice | 1,068.00 | US BANK - CHECKING | 98,414.64 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8041 Vendor | 1/6/2011 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14368 A/P Invoice | 52,330.57 | US BANK - CHECKING | 98,414.64 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8041 Vendor | 1/6/2011 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14657 A/P Invoice | 34,858.51 | US BANK - CHECKING | 98,414.64 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8041 Vendor | 1/6/2011 V2068 | TRADE UNION INT L (TAIWAN) LTD | 249670 Payment Advice | (48,000.00) | US BANK - CHECKING | 98,414.64 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8052 Vendor | 1/11/2011 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14322 A/P Invoice | 50,350.36 | US BANK - CHECKING | 56,000.31 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8052 Vendor | 1/11/2011 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14361 A/P Invoice | 5,649.95 | US BANK - CHECKING | 56,000.31 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8054 Vendor | 1/12/2011 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14320 A/P Invoice | 51,022.52 | US BANK - CHECKING | 102,621.11 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8054 Vendor | 1/12/2011 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14752 A/P Invoice | 232.13 | US BANK - CHECKING | 102,621.11 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8054 Vendor | 1/12/2011 V2068 | TRADE UNION INT L (TAIWAN) LTD | 1289 A/P Credit Note | (241.98) | US BANK - CHECKING | 102,621.11 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8054 Vendor | 1/12/2011 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14559 A/P Invoice | 452.54 | US BANK - CHECKING | 102,621.11 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8054 Vendor | 1/12/2011 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14564 A/P Invoice | 1,709.35 | US BANK - CHECKING | 102,621.11 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8054 Vendor | 1/12/2011 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14567 A/P Invoice | 49,446.55 | US BANK - CHECKING | 102,621.11 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 8105 Vendor | 1/24/2011 V2068 | TRADE UNION INT L (TAIWAN) LTD | 14634 A/P Invoice | 54,043.00 | US BANK - CHECKING | 54,043.00 | Bank Transfer | 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI TAIWAN |
| 6253 Vendor | 2/18/2010 V1968 | WEN PIN CHANG | 12133 A/P Invoice | 21,000.00 | Cathay Bank - Regular Checking | 21,000.00 | Check | 2819 CRYSTAL RIDGE ROAD DIAMOND BAR CA 91765 USA |
| 6401 Vendor | 3/18/2010 V1968 | WEN PIN CHANG | 12523 A/P Invoice | 22,000.00 | Cathay Bank - Regular Checking | 22,000.00 | Check | 2819 CRYSTAL RIDGE ROAD DIAMOND BAR CA 91765 USA |
| 6531 Vendor | 4/7/2010 V1968 | WEN PIN CHANG | 12816 A/P Invoice | 22,000.00 | Cathay Bank - Regular Checking | 20,000.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD DIAMOND BAR CA 91765 USA |
| 6531 Vendor | 4/7/2010 V1968 | WEN PIN CHANG | 25084 Outgoing Payment | (2,000.00) | Cathay Bank - Regular Checking | 20,000.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD DIAMOND BAR CA 91765 USA |
| 6532 Vendor | 4/7/2010 V1968 | WEN PIN CHANG | Unknown | 2,000.00 | Cathay Bank - Regular Checking | 2,000.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD DIAMOND BAR CA 91765 USA |
| 6791 Vendor | 5/21/2010 V1968 | WEN PIN CHANG | 13352 A/P Invoice | 25,500.00 | Cathay Bank - Regular Checking | 25,500.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD DIAMOND BAR CA 91765 USA |
| 6795 Vendor | 5/25/2010 V1968 | WEN PIN CHANG | 13557 A/P Invoice | 5,129.44 | Cathay Bank - Regular Checking | 5,129.44 | Check | 2819 CRYSTAL RIDGE ROAD DIAMOND BAR CA 91765 USA |
| 6973 Vendor | 6/25/2010 V1968 | WEN PIN CHANG | 13671 A/P Invoice | 25,500.00 | Cathay Bank - Regular Checking | 25,500.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD DIAMOND BAR CA 91765 USA |

# EXHIBIT 2

| 7317 | Vendor | 8/23/2010 | V1968 | WEN PIN CHANG | 14415 | A/P Invoice | 25,500.00 | Cathay Bank - Regular Checking | 25,500.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD | DIAMOND BAR CA 91765 USA |
| 7522 | Vendor | 9/23/2010 | V1968 | WEN PIN CHANG | 14518 | A/P Invoice | 25,500.00 | Cathay Bank - Regular Checking | 25,500.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD | DIAMOND BAR CA 91765 USA |
| 7592 | Vendor | 10/7/2010 | V1968 | WEN PIN CHANG | 15057 | A/P Invoice | 25,500.00 | Cathay Bank - Regular Checking | 25,500.00 | Bank Transfer | 2819 CRYSTAL RIDGE ROAD | DIAMOND BAR CA 91765 USA |
| 7752 | Vendor | 11/10/2010 | V1968 | WEN PIN CHANG | 15163 | A/P Invoice | 25,500.00 | Cathay Bank - Regular Checking | 25,500.00 | Check | 2819 CRYSTAL RIDGE ROAD | DIAMOND BAR CA 91765 USA |
| 7775 | Vendor | 11/16/2010 | V1968 | WEN PIN CHANG | 15608 | A/P Invoice | 20,500.00 | Cathay Bank - Regular Checking | 20,500.00 | Check | 2819 CRYSTAL RIDGE ROAD | DIAMOND BAR CA 91765 USA |
| 7837 | Vendor | 12/1/2010 | V1968 | WEN PIN CHANG | 15811 | A/P Invoice | 20,500.00 | Cathay Bank - Regular Checking | 20,500.00 | Check | 2819 CRYSTAL RIDGE ROAD | DIAMOND BAR CA 91765 USA |

# EXHIBIT 2

# EXHIBIT 2

# Insider Payments Made One Year
# Prior To The Petition Date
# Duck House

## ATTACHMENT TO STATEMENT OF AFFAIRS, ITEM NO. 3.c.

### Withdrawals or Distributions by Corporation to Insiders
### During the One Year Prior to the Petition Date

# EXHIBIT 2

| Sum of SumApplied | |
|---|---|
| CardName | Total |
| MEI LIEN CHANG | 190,000.00 |
| TRADE UNION INT'L (TAIWAN) LTD | 3,163,631.25 |
| Grand Total | 3,353,631.25 |

# EXHIBIT 2

| DocNum | Type | DocDate | CardCode | CardName | DocEntry | Source Type | SumApplied | G/L Account | Pay Amount | Payment Type | Address |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5093 | Vendor | 2/18/2010 | V01257 | MEI LIEN CHANG | 5987 | A/P Invoice | 20,000.00 | Cathay Bank - Regular Checking | 20,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 5168 | Vendor | 3/18/2010 | V01257 | MEI LIEN CHANG | 6081 | A/P Invoice | 20,000.00 | Cathay Bank - Regular Checking | 20,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 5191 | Vendor | 4/6/2010 | V01257 | MEI LIEN CHANG | 6122 | A/P Invoice | 20,000.00 | Cathay Bank - Regular Checking | 20,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 5335 | Vendor | 5/25/2010 | V01257 | MEI LIEN CHANG | 6309 | A/P Invoice | 20,000.00 | Cathay Bank - Regular Checking | 20,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 5418 | Vendor | 6/22/2010 | V01257 | MEI LIEN CHANG | 6360 | A/P Invoice | 20,000.00 | Cathay Bank - Regular Checking | 20,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 5602 | Vendor | 8/23/2010 | V01257 | MEI LIEN CHANG | 6608 | A/P Invoice | 20,000.00 | Cathay Bank - Regular Checking | 20,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 5631 | Vendor | 9/9/2010 | V01257 | MEI LIEN CHANG | 6622 | A/P Invoice | 20,000.00 | Cathay Bank - Regular Checking | 20,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 5725 | Vendor | 10/13/2010 | V01257 | MEI LIEN CHANG | 6829 | A/P Invoice | 20,000.00 | Cathay Bank - Regular Checking | 20,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 5805 | Vendor | 11/9/2010 | V01257 | MEI LIEN CHANG | 6850 | A/P Invoice | 10,000.00 | Cathay Bank - Regular Checking | 10,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 5819 | Vendor | 11/16/2010 | V01257 | MEI LIEN CHANG | 7070 | A/P Invoice | 10,000.00 | Cathay Bank - Regular Checking | 10,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 5879 | Vendor | 12/1/2010 | V01257 | MEI LIEN CHANG | 7101 | A/P Invoice | 10,000.00 | Cathay Bank - Regular Checking | 10,000.00 | Check | 2819 CRYSTAL RIDGE ROAD  DIAMOND BAR CA  91765 USA |
| 5022 | Account | 2/1/2010 | PURCHASES ADVAN | TRADE UNION INT'L (TAIWAN) LTD | | Account List | 138,488.50 | CATHAY BANK - REGULAR CHECKING | 138,488.50 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5033 | Account | 2/8/2010 | PURCHASES ADVAN | TRADE UNION INT'L (TAIWAN) LTD | | Account List | 185,244.66 | CATHAY BANK - REGULAR CHECKING | 185,244.66 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5156 | Account | 3/8/2010 | PURCHASES ADVAN | TRADE UNION INT'L (TAIWAN) LTD | | Account List | 50,704.80 | CATHAY BANK - REGULAR CHECKING | 50,704.80 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5159 | Account | 3/9/2010 | PURCHASES ADVAN | TRADE UNION INT'L (TAIWAN) LTD | | Account List | 35,840.71 | CATHAY BANK - REGULAR CHECKING | 35,840.71 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5161 | Account | 3/12/2010 | PURCHASES ADVAN | TRADE UNION INT'L (TAIWAN) LTD | | Account List | 100,177.97 | CATHAY BANK - REGULAR CHECKING | 100,177.97 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5237 | Account | 4/14/2010 | PURCHASES ADVAN | TRADE UNION INT'L (TAIWAN) LTD | | Account List | 12,000.00 | CATHAY BANK - REGULAR CHECKING | 12,000.00 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5358 | Vendor | 6/7/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 5887 | A/P Invoice | 16,401.36 | Cathay Bank - Regular Checking | 54,500.40 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5358 | Vendor | 6/7/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6004 | A/P Invoice | 50,155.04 | Cathay Bank - Regular Checking | 54,500.40 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5358 | Vendor | 6/7/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 514 | A/P Credit Note | (56.00) | Cathay Bank - Regular Checking | 54,500.40 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5358 | Vendor | 6/7/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 92259 | Outgoing Payment | (12,000.00) | Cathay Bank - Regular Checking | 54,500.40 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5359 | Vendor | 6/8/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6009 | A/P Invoice | 29,541.84 | Cathay Bank - Regular Checking | 29,541.84 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5406 | Vendor | 6/11/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6114 | A/P Invoice | 55,791.60 | Cathay Bank - Regular Checking | 61,015.60 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5406 | Vendor | 6/11/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6211 | A/P Invoice | 5,280.00 | Cathay Bank - Regular Checking | 61,015.60 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5406 | Vendor | 6/11/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 541 | A/P Credit Note | (56.00) | Cathay Bank - Regular Checking | 61,015.60 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5420 | Vendor | 6/23/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6078 | A/P Invoice | 51,979.68 | Cathay Bank - Regular Checking | 51,979.68 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5442 | Vendor | 7/6/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6090 | A/P Invoice | 53,546.40 | Cathay Bank - Regular Checking | 100,456.80 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5442 | Vendor | 7/6/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6210 | A/P Invoice | 46,910.40 | Cathay Bank - Regular Checking | 100,456.80 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5449 | Vendor | 7/9/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | | Unknown | 21,000.00 | Cathay Bank - Regular Checking | 21,000.00 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5451 | Vendor | 7/7/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | | Unknown | 70,000.00 | Cathay Bank - Regular Checking | 70,000.00 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5492 | Vendor | 7/16/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | | Unknown | 101,183.76 | Cathay Bank - Regular Checking | 101,183.76 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5522 | Vendor | 7/27/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6337 | A/P Invoice | 1,033.92 | Cathay Bank - Regular Checking | 74,569.21 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5522 | Vendor | 7/27/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6419 | A/P Invoice | 73,535.29 | Cathay Bank - Regular Checking | 74,569.21 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5525 | Vendor | 7/30/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | | Unknown | 40,000.00 | Cathay Bank - Regular Checking | 40,000.00 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5536 | Vendor | 8/3/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | | Unknown | 25,000.00 | Cathay Bank - Regular Checking | 25,000.00 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5537 | Vendor | 8/5/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6213 | A/P Invoice | 964.80 | Cathay Bank - Regular Checking | 30,102.61 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5537 | Vendor | 8/5/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6227 | A/P Invoice | 52,168.80 | Cathay Bank - Regular Checking | 30,102.61 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5537 | Vendor | 8/5/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6278 | A/P Invoice | 48,112.80 | Cathay Bank - Regular Checking | 30,102.61 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5537 | Vendor | 8/5/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6204 | A/P Invoice | 17,151.36 | Cathay Bank - Regular Checking | 30,102.61 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5537 | Vendor | 8/5/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6205 | A/P Invoice | 190.00 | Cathay Bank - Regular Checking | 30,102.61 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5537 | Vendor | 8/5/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6315 | A/P Invoice | 83,607.97 | Cathay Bank - Regular Checking | 30,102.61 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5537 | Vendor | 8/5/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6332 | A/P Invoice | 20,797.44 | Cathay Bank - Regular Checking | 30,102.61 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5537 | Vendor | 8/5/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6334 | A/P Invoice | 110.00 | Cathay Bank - Regular Checking | 30,102.61 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5537 | Vendor | 8/5/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6212 | A/P Invoice | 52,596.00 | Cathay Bank - Regular Checking | 30,102.61 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5537 | Vendor | 8/5/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6455 | A/P Invoice | 11,587.20 | Cathay Bank - Regular Checking | 30,102.61 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5537 | Vendor | 8/5/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 159734 | Payment Advice | (70,000.00) | Cathay Bank - Regular Checking | 30,102.61 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5537 | Vendor | 8/5/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 159732 | Payment Advice | (21,000.00) | Cathay Bank - Regular Checking | 30,102.61 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5537 | Vendor | 8/5/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 160493 | Payment Advice | (101,183.76) | Cathay Bank - Regular Checking | 30,102.61 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5537 | Vendor | 8/5/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 161730 | Payment Advice | (40,000.00) | Cathay Bank - Regular Checking | 30,102.61 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5537 | Vendor | 8/5/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 162647 | Payment Advice | (25,000.00) | Cathay Bank - Regular Checking | 30,102.61 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5599 | Vendor | 8/13/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6336 | A/P Invoice | 56,779.60 | Cathay Bank - Regular Checking | 114,032.00 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5599 | Vendor | 8/13/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6421 | A/P Invoice | 57,350.40 | Cathay Bank - Regular Checking | 114,032.00 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5599 | Vendor | 8/13/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 558 | A/P Credit Note | (98.00) | Cathay Bank - Regular Checking | 114,032.00 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5600 | Vendor | 8/17/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6435 | A/P Invoice | 57,696.00 | Cathay Bank - Regular Checking | 148,823.74 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5600 | Vendor | 8/17/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6547 | A/P Invoice | 91,225.74 | Cathay Bank - Regular Checking | 148,823.74 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5600 | Vendor | 8/17/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 559 | A/P Credit Note | (98.00) | Cathay Bank - Regular Checking | 148,823.74 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5618 | Vendor | 8/26/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | | Unknown | 50,000.00 | Cathay Bank - Regular Checking | 50,000.00 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5628 | Vendor | 9/2/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6432 | A/P Invoice | 78,938.40 | Cathay Bank - Regular Checking | 150,625.60 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5628 | Vendor | 9/2/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6456 | A/P Invoice | 60,381.60 | Cathay Bank - Regular Checking | 150,625.60 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5628 | Vendor | 9/2/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6479 | A/P Invoice | 61,305.60 | Cathay Bank - Regular Checking | 150,625.60 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5628 | Vendor | 9/2/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 165012 | Payment Advice | (50,000.00) | Cathay Bank - Regular Checking | 150,625.60 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5649 | Vendor | 9/7/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6489 | A/P Invoice | 61,692.00 | Cathay Bank - Regular Checking | 101,692.00 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5649 | Vendor | 9/14/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6561 | A/P Invoice | 110.00 | Cathay Bank - Regular Checking | 113,177.98 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5649 | Vendor | 9/14/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6558 | A/P Invoice | 63,789.24 | Cathay Bank - Regular Checking | 113,177.98 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5649 | Vendor | 9/14/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6612 | A/P Invoice | 89,278.74 | Cathay Bank - Regular Checking | 113,177.98 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5649 | Vendor | 9/14/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 9141011057 | Outgoing Payment | (40,000.00) | Cathay Bank - Regular Checking | 113,177.98 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5700 | Vendor | 9/22/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | | Unknown | 90,831.84 | Cathay Bank - Regular Checking | 90,831.84 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |
| 5709 | Vendor | 9/27/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6575 | A/P Invoice | 60,831.84 | Cathay Bank - Regular Checking | 88,624.32 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD  TAIPEI TAIWAN |

# EXHIBIT 2

| 5709 | Vendor | 9/27/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6611 | A/P Invoice | 59,260.80 | Cathay Bank - Regular Checking | 88,624.32 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
|------|--------|-----------|--------|--------------------------------|------|-------------|-----------|-------------------------------|-----------|---------------|---------------------------------------------|
| 5709 | Vendor | 9/27/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 565 | A/P Credit Note | (132.00) | Cathay Bank - Regular Checking | 88,624.32 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5709 | Vendor | 9/27/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6626 | A/P Invoice | 59,495.52 | Cathay Bank - Regular Checking | 88,624.32 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5709 | Vendor | 9/27/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 168206 | Payment Advice | (90,831.84) | Cathay Bank - Regular Checking | 88,624.32 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5710 | Vendor | 9/29/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6698 | A/P Invoice | 64,862.22 | Cathay Bank - Regular Checking | 124,269.42 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5710 | Vendor | 9/29/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6723 | A/P Invoice | 59,407.20 | Cathay Bank - Regular Checking | 124,269.42 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5721 | Vendor | 10/5/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6634 | A/P Invoice | 51.60 | Cathay Bank - Regular Checking | 82,732.98 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5721 | Vendor | 10/5/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6633 | A/P Invoice | 81,700.98 | Cathay Bank - Regular Checking | 82,732.98 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5721 | Vendor | 10/5/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6638 | A/P Invoice | 980.40 | Cathay Bank - Regular Checking | 82,732.98 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5780 | Vendor | 10/22/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | Unknown | | 40,000.00 | Cathay Bank - Regular Checking | 40,000.00 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5793 | Vendor | 10/29/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6648 | A/P Invoice | 82,990.68 | Cathay Bank - Regular Checking | 43,160.68 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5793 | Vendor | 10/29/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6651 | A/P Invoice | 170.00 | Cathay Bank - Regular Checking | 43,160.68 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5793 | Vendor | 10/29/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 171918 | Payment Advice | (40,000.00) | Cathay Bank - Regular Checking | 43,160.68 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5820 | Vendor | 11/16/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6736 | A/P Invoice | 96,858.96 | Cathay Bank - Regular Checking | 96,858.96 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5876 | Vendor | 11/19/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | Unknown | | 20,000.00 | Cathay Bank - Regular Checking | 20,000.00 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5877 | Vendor | 11/23/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6738 | A/P Invoice | 122,219.76 | Cathay Bank - Regular Checking | 102,219.76 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5877 | Vendor | 11/23/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 174970 | Payment Advice | (20,000.00) | Cathay Bank - Regular Checking | 102,219.76 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5886 | Vendor | 12/1/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6846 | A/P Invoice | 46.08 | Cathay Bank - Regular Checking | 60,535.80 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5886 | Vendor | 12/1/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6845 | A/P Invoice | 60,489.72 | Cathay Bank - Regular Checking | 60,535.80 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5890 | Vendor | 12/6/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | Unknown | | 40,000.00 | Cathay Bank - Regular Checking | 40,000.00 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5892 | Vendor | 12/7/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6757 | A/P Invoice | 72,635.16 | Cathay Bank - Regular Checking | 32,579.00 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5892 | Vendor | 12/7/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 588 | A/P Credit Note | (56.16) | Cathay Bank - Regular Checking | 32,579.00 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5892 | Vendor | 12/7/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 176660 | Payment Advice | (40,000.00) | Cathay Bank - Regular Checking | 32,579.00 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5900 | Vendor | 12/9/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | Unknown | | 40,000.00 | Cathay Bank - Regular Checking | 40,000.00 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5901 | Vendor | 12/10/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6774 | A/P Invoice | 71,104.62 | Cathay Bank - Regular Checking | 31,104.62 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5901 | Vendor | 12/10/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 177095 | Payment Advice | (40,000.00) | Cathay Bank - Regular Checking | 31,104.62 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5906 | Vendor | 12/14/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6859 | A/P Invoice | 99,185.28 | Cathay Bank - Regular Checking | 100,313.56 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5906 | Vendor | 12/14/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6860 | A/P Invoice | 1,200.00 | Cathay Bank - Regular Checking | 100,313.56 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5906 | Vendor | 12/14/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 574 | A/P Credit Note | (71.72) | Cathay Bank - Regular Checking | 100,313.56 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5907 | Vendor | 12/17/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6966 | A/P Invoice | 64,770.00 | Cathay Bank - Regular Checking | 64,770.00 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5908 | Vendor | 12/21/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6828 | A/P Invoice | 58,059.00 | Cathay Bank - Regular Checking | 138,524.05 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5908 | Vendor | 12/21/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6976 | A/P Invoice | 80,465.05 | Cathay Bank - Regular Checking | 138,524.05 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5962 | Vendor | 12/29/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6879 | A/P Invoice | 58,944.00 | Cathay Bank - Regular Checking | 116,948.40 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 5962 | Vendor | 12/29/2010 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | 6961 | A/P Invoice | 58,004.40 | Cathay Bank - Regular Checking | 116,948.40 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |
| 6021 | Vendor | 1/24/2011 | V01451 | TRADE UNION INT'L (TAIWAN) LTD | Unknown | | 30,000.00 | US Bank - Checking | 30,000.00 | Bank Transfer | 5F-F, NO.58, SHING SHAN RD   TAIPEI TAIWAN |

# EXHIBIT 2

# EXHIBIT 3

## General Unsecured Claims
## Trade Union

| Trade Union - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| FRANCHISE TAX BOARD ATTN BANKRUPTCY UNIT BANKRUPTCY SECTION MS A340 PO BOX 2952 SACRAMENTO, CA 95812-2952 | Claim Filed | 9 | 3/18/2011 | $ 800.00 | $ .00 | $ 800.00 | $ .00 |
| CALIFORNIA EMPLOYMENT DEVELOPMENT DEPARTMENT BANKRUPTCY GROUP MIC 92E PO BOX 826880 SACRAMENTO, CA 94280-0001 | Notice Purposes | | | $ .00 | $ .00 | $ .00 | $ .00 |
| STATE BOARD OF EQUALIZATION ENVIRONMENTAL FEES DIVISION PO BOX 942879 SACRAMENTO, CA 94279-6001 | Notice Purposes | | | $ .00 | $ .00 | $ .00 | $ .00 |
| SAN BERNARDINO COUNTY TREASURER-TAX COLLECTOR 172 WEST THIRD STREET SAN BERNARDINO, CA 92415 | Notice Purposes | 16 | 5/10/2011 | $8,808.20 | $8,808.20 | $ .00 | $ .00 |
| WELLS FARGO FINANCIAL LEASING MANUFACTURER SERVICES GROUP P.O. BOX 7777 SAN FRANCISCO, CA 94120-7777 | Notice Purposes | | | $ .00 | $ .00 | $ .00 | $ .00 |
| WELLS FARGO BANK NA 300 TRI STATE INTL SUITE 400 LINCOLNSHIRE, IL 60069-4417 | Notice Purposes | | | $ .00 | $ .00 | $ .00 | $ .00 |
| MICHELIN NORTH AMERICA INC 1 PARKWAY S GREENVILLE, SC 29615-5022 | Notice Purposes | | | $ .00 | $ .00 | $ .00 | $ .00 |

**Exhibit 3, Page 1 (Trade Union Unsecured Creditors)**

| Trade Union - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| USBANCORP<br>1310 MADRID ST SUITE 104<br>MARSHALL, MN  56258-4006 | Notice Purposes | | | $    .00 | $    .00 | $    .00 | $    .00 |
| KEY EQUIPMENT FINANCE<br>PAYMENT PROCESSING<br>CLEVELAND, OH  44194-0796 | Notice Purposes | | | $    .00 | $    .00 | $    .00 | $    .00 |
| KEY EQUIPMENT FINANCE<br>601 OAKMONT LN SUITE 110<br>WESTMONT, IL  60559-5557 | Notice Purposes | | | $    .00 | $    .00 | $    .00 | $    .00 |
| A-CO TEMPORARY POWER<br>P.O. BOX 16843<br>NO.HOLLYWOOD, CA  91615-6843 | $  27.44 | | | | $    .00 | $    .00 | $  27.44 |
| ACCELLOS<br>P.O. BOX 673922<br>DETROIT, MI  48267-3922 | $ 617.50 | | | | $    .00 | $    .00 | $ 617.50 |
| ADP, INC.<br>PHOENIX, AZ  85062-8415 | $ 495.18 | | | | $    .00 | $    .00 | $ 495.18 |
| ADP, INC.<br>P.O. BOX 0500<br>CAROL STREAM, IL  60132-0500 | $ 124.20 | | | | $    .00 | $    .00 | $ 124.20 |

**Exhibit 3, Page 2 (Trade Union Unsecured Creditors)**

| Trade Union - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| AFFORDABLE INTERNET SERVICES<br>25655 LOUISA LANE<br>ROMOLAND, CA  92585 | $ 500.00 | | | | $   .00 | $   .00 | $ 500.00 |
| AMERICAN EXPRESS<br>BOX 0001<br>LOS ANGELES, CA  90096-0001 | $49,593.95 | 12 | 4/15/2011 | $69,799.28 | $   .00 | $   .00 | $69,799.28 |
| AMERICAN EXPRESS BANK FSB<br>C/O BECKET AND LEE LP<br>POB 3001<br>MALVERN, PA  19355-0701 | | | | | $   .00 | $   .00 | $   .00 |
| ANDERSON AIR CONDITIONING<br>P.O. BOX 95000-2330<br>PHILADELPHIA, PA  19195-2330 | $ 265.00 | See Claim No. 4 | | $   .00 | $   .00 | $   .00 | $   .00 |
| ANDERSON AIR CONDITIONING, LP C/O AMS<br>13300 MID ATLANTIC BLVD<br>LAUREL, MD  20708-1432 | | 4 | 2/28/2011 | $ 567.00 | $   .00 | $   .00 | $ 567.00 |
| AT&T MOBILITY<br>P.O. BOX 60017<br>LOS ANGELES, CA  90060-0017 | $ 169.81 | | | | $   .00 | $   .00 | $ 169.81 |
| AUTOWARE TECHNOLOGIES, LLC<br>103 AMAR PL.<br>PANAMA CITY BEACH, FL  32413 | $1,675.80 | | | | $   .00 | $   .00 | $1,675.80 |

**Exhibit 3, Page 3 (Trade Union Unsecured Creditors)**

| Trade Union - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| BROTHER MEZA'S PALLETS<br>P.O. BOX 310506<br>FONTANA, CA  92331 | $7,360.00 | | | | $   .00 | $   .00 | $7,360.00 |
| BULLET TRANSPORTATION SERVICES<br>P.O. BOX 809066<br>CHICAGO, IL  60680-9066 | $23,686.93 | | | | $   .00 | $   .00 | $23,686.93 |
| BULLET TRANSPORTATION SERVICES<br>4900 S PENNSYLVANIA AVE<br>CUDAHY, WI  53110 | | | | | $   .00 | $   .00 | $   .00 |
| BURRTEC WASTE INDUSTRIES INC.<br>PAYMENT PROCESSING CENTER<br>BUENA PARK, CA  90622-6520 | $ 578.10 | | | | $   .00 | $   .00 | $ 578.10 |
| CA STATE DISBURSEMENT UNIT<br>PO BOX 989067<br>WEST SACRAMENTO, CA  95798-9067 | $ 512.88 | | | | $   .00 | $   .00 | $ 512.88 |
| CENTURY COPY TECHNOLOGY<br>18301 E. VALLEY BLVD.<br>CITY OF INDUSTY, CA  91744 | $1,306.02 | | | | $   .00 | $   .00 | $   .00 |
| DACA 2010L, LP<br>1565 HOTEL CIRCLE SOUTH, SUITE 310<br>SAN DIEGO, CA  92108 | | | | | $   .00 | $   .00 | $1,306.02 |

**Exhibit 3, Page 4 (Trade Union Unsecured Creditors)**

| Trade Union - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| CF MANUFACTURING, INC.<br>11867 SHELDON STREET<br>SUN VALLEY, CA  91352 | $ 80.00 | | | | $   .00 | $   .00 | $ 80.00 |
| CITY OF MONTCLAIR<br>5111 BENITO ST./P.O. BOX 2308<br>MONTCLAIR, CA  91763 | $ 35.77 | | | | $   .00 | $   .00 | $ 35.77 |
| CLARK DISTRIBUTION SYSTEMS, INC<br>P.O. BOX 85095<br>CHICAGO, IL  60680-0851 | $6,025.41 | | | | $   .00 | $   .00 | $6,025.41 |
| CON-WAY FREIGHT<br>P.O. BOX 5160<br>PORTLAND, OR  97208-5160 | $ 645.34 | 2 | 2/23/2011 | $ 645.34 | $   .00 | $   .00 | $ 645.34 |
| CONTINENTAL AGENCY<br>1400 MONTEFINO AVE. SUITE 200<br>DIAMOND BAR, CA  91765 | $111,122.52 | 5 (Filed in Duck Case) | | $91,768.08 | $   .00 | $   .00 | $91,768.08 |
| COVERALL NORTH AMERICA, INC.<br>P.O. BOX 802825<br>CHICAGO, IL  60680 | $ 160.00 | 7 | 3/14/2011 | $ 160.00 | $   .00 | $   .00 | $ 160.00 |
| CREATIVE DOCUMENT SOLUTIONS<br>1629 MARION-WALDO ROAD<br>MARION, OH  43302 | $ 500.00 | 5 | 2/23/2011 | $ 500.00 | $   .00 | $   .00 | $ 500.00 |

**Exhibit 3, Page 5 (Trade Union Unsecured Creditors)**

| Trade Union - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| CROWN LIFT TRUCKS<br>P.O. BOX 641173<br>CINCINNATI, OH  45264-1173 | $1,785.00 | | | | $    .00 | $    .00 | $1,785.00 |
| DMV RENEWAL<br>P.O. BOX 942897<br>SACRAMENTO, CA  94297-0897 | $ 344.00 | | | | $    .00 | $    .00 | $ 344.00 |
| DUB PUBLISHING INC.<br>16815 JOHNSON DRIVE<br>CITY OF INDUSTRY, CA  91745-1819 | $2,625.00 | | | | $    .00 | $    .00 | $2,625.00 |
| ENVIROKLEEN<br>5420 W. MISSION BLVD<br>ONTARIO, CA  91762 | $ 396.54 | | | | $    .00 | $    .00 | $ 396.54 |
| EULER HERMES ACI<br>800 RED BROOK BLVD.<br>OWINGS MILLS, MD  21117 | $ 100.00 | | | | $    .00 | $    .00 | $ 100.00 |
| ALTO SYSTEMS, INC. DBA<br>ALTO FREIGHT MANAGEMENT<br>C/O EULER HERMES UMA<br>600 S. 7TH STREET<br>LOUISVILLE, KY  40203 | | 17 | 5/27/2011 | $15,389.43 | $    .00 | $    .00 | $15,389.43 |
| FEDEX FREIGHT INC<br>PO BOX 840<br>HARRISON, AR  72602-0840 | | 21 | 6/10/2011 | $9,985.25 | $    .00 | $    .00 | $9,985.25 |

**Exhibit 3, Page 6 (Trade Union Unsecured Creditors)**

| Trade Union - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| GLOBE GAS CORPORATION 5843 PARAMOUNT BLVD. LONG BEACH, CA  90805 | $ 64.81 | | | | $   .00 | $   .00 | $ 64.81 |
| GREENLAND LANDSCAPE & MAINTENANCE, INC. P.O. BOX 693 CHINO, CA  91708 | $1,140.00 | | | | $   .00 | $   .00 | $1,140.00 |
| IMAGE DESIGN INC. 6141 CLOVER COURT CHINO, CA  91710 | $ 435.00 | | | | $   .00 | $   .00 | $ 435.00 |
| JOE INTERRANTE 185 PROVIDENCE PLANTATION DR. ALPHARETTA, GA  30004 | $7,219.91 | | | | $   .00 | $   .00 | $7,219.91 |
| JOSEPH C. HIGDON 18814 GREENWAY OLATHE, KS  66062 | $5,000.00 | | | | $   .00 | $   .00 | $5,000.00 |
| KAISER FOUNDATION HEALTH PLAN FILE 5915 LOS ANGELES, CA  90074-5915 | $7,162.00 | | | | $   .00 | $   .00 | $7,162.00 |
| KDA PRODUCTS INC 15325 BLACKBURN AVENUE NORWALK, CA  90650 | $5,775.00 | | | | $   .00 | $   .00 | $5,775.00 |

**Exhibit 3, Page 7 (Trade Union Unsecured Creditors)**

| Trade Union - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| KODAI (U.S.A.) INC.<br>2440 S. HACIENDA BLVD<br>HACIENDA HEIGHT, CA  91745 | $5,450.00 | | | | $    .00 | $    .00 | $5,450.00 |
| L.A. MACHINERY MOVING INC<br>14901 DON JULIAN RD<br>CITY INDUSTRY, CA  91746 | $ 360.00 | | | | $    .00 | $    .00 | $ 360.00 |
| LSY TRUCKING<br>9420 MAPLE ST.<br>BELLFLOWER, CA  90706 | $4,500.00 | 18 | 6/6/2011 | $7,650.00 | $    .00 | $7,650.00 | $    .00 |
| MAILFINANCE<br>P.O. BOX 45840<br>SAN FRANCISCO, CA  94145-0840 | $ 156.57 | | | | $    .00 | $    .00 | $ 156.57 |
| MARIA VARGAS<br>1416 VIRGINIA AVENUE<br>ONTARIO, CA  91764 | $ 200.00 | | | | $    .00 | $    .00 | $ 200.00 |
| MARK BERGER SALES INC.<br>1631 ROCK RIVER<br>PLACENTIA, CA  92870 | $17,091.67 | | | | $    .00 | $    .00 | $17,091.67 |
| MEYERS PUBLISHING<br>799 CAMARILLO SPRINGS ROAD<br>CAMARILLO, CA  93012-8111 | $ 680.00 | | | | $    .00 | $    .00 | $ 680.00 |

**Exhibit 3, Page 8 (Trade Union Unsecured Creditors)**

| Trade Union - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| MONTE VISTA WATER DISTRICT 10575 CENTRAL AVENUE MONTCLAIR, CA  91763 | $ 842.35 | | | | $    .00 | $    .00 | $ 842.35 |
| MONTEREY LIGHTING SOLUTIONS, INC. 2148 POMONA BLVD. POMONA, CA  91768 | $7,772.79 | | | | $    .00 | $    .00 | $7,772.79 |
| MOUNTAIN VIEW PACKAGING, INC. 4773 BROOKS STREET UNIT G MONTCLAIR, CA  91763 | $3,567.60 | | | | $    .00 | $    .00 | $3,567.60 |
| NANTONG TRADE UNION ALUMINIUM ALLOY CO. LTD. WEIER ROAD QIDONG CITY, 226200  CHINA | $183,634.15 | | | | $    .00 | $    .00 | $183,634.15 |
| NEXEN TIRE 21073 PATHFINDER DIAMOND BAR, CA  91765 | $ 622.12 | | | | $    .00 | $    .00 | $ 622.12 |
| OLD DOMINION FREIGHT LINE INC 500 OLD DOMINION WAY THOMASVILLE, NC  27360 | $ 799.35 | 3 | 2/22/2011 | $3,097.83 | $    .00 | $    .00 | $3,097.83 |
| ONTRAC 274 WATTIS WAY S. SAN FRANCISCO, CA  94080 | $1,204.81 | | | | $    .00 | $    .00 | $1,204.81 |

**Exhibit 3, Page 9 (Trade Union Unsecured Creditors)**

| Trade Union - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| PACIFICARE OF CALIFORNIA DEPT NO. 1346 LOS ANGELES, CA 90088-1346 | $8,195.62 | | | | $ .00 | $ .00 | $8,195.62 |
| PARTNER'S DELIVERY INC. 1927 A HARBOR BLVD COSTA MESA, CA 92627 | $ 759.30 | | | | $ .00 | $ .00 | $ 759.30 |
| PERSONNEL CONCEPTS P.O. BOX 5750 CAROL STREAM, IL 60197-5750 | $ 322.33 | | | | $ .00 | $ .00 | $ 322.33 |
| PRINCIPAL FINANCIAL GROUP P.O. BOX 10372 DES MOINES, IA 50306-0372 | $2,089.93 | | | | $ .00 | $ .00 | $2,089.93 |
| QUARTZ LOGISTICS INC. 731 S. GARFIELD AVE. ALHAMBRA, CA 91801 | $75,590.00 | | | | $ .00 | $ .00 | $75,590.00 |
| RODOLFO RODRIGUEZ AGUILAR 8430 MISSION BLVD. RIVERSIDE, CA 92509 | $1,307.00 | | | | $ .00 | $ .00 | $1,307.00 |
| SHANGHAI BON VOYAGE INTERNATIONAL TRADING CO., LTD. 2F, NO.110, YAN'AN RD.(E) SHANGHAI, 200002 CHINA | $215,468.42 | | | | $ .00 | $ .00 | $215,468.42 |

**Exhibit 3, Page 10 (Trade Union Unsecured Creditors)**

| Trade Union - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| SHERIFF'S COURT SERVICES CENTRAL 157 W. 5TH STREET SAN BERNARDINO, CA 92415 | $ 332.30 | | | | $ .00 | $ .00 | $ 332.30 |
| SOUTHERN CALIFORNIA EDISON P.O. BOX 600 ROSEMEAD, CA 91771-0001 | $ .00 | | | | $ .00 | $ .00 | $ .00 |
| SOUTHERN CALIFORNIA EDISON P.O. BOX 300 ROSEMEAD, CA 91772-0001 | $ .00 | | | | $ .00 | $ .00 | $ .00 |
| SPRINT P.O. BOX 219100 KANSAS CITY, MO 64121-9100 | $1,178.07 | | | | $ .00 | $ .00 | $1,178.07 |
| SUMMIT LOGISTICS INT'L 780 NOGALES STREET, BUILDING D CITY OF INDUSTRY, CA 91748 | $60,573.20 | 11 | 3/30/2011 | $73,390.00 | $ .00 | $ .00 | $73,390.00 |
| SUMMIT LOGISTICS INT'L 800 FEDERAL BLVD CARTERET, NJ 07008 | | | | | $ .00 | $ .00 | $ .00 |
| TDW 1714 ANDERSON AVE. COMPTON, CA 90220 | $ 624.41 | | | | $ .00 | $ .00 | $ 624.41 |

**Exhibit 3, Page 11 (Trade Union Unsecured Creditors)**

| Trade Union - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| TELEPACIFIC COMMUNICATIONS P.O. BOX 526015 SACRAMENTO, CA  95852-6015 | $1,785.82 | | | | $   .00 | $   .00 | $1,785.82 |
| THE 3 AMIGOS 15406 E. ARROW HIGHWAY BALDWIN PARK, CA  91706 | $2,393.00 | | | | $   .00 | $   .00 | $2,393.00 |
| THE CHANG REVOCABLE TRUST C/O MEI LIEN CHANG, TRUSTEE 2819 CRYSTAL RIDGE ROAD DIAMOND BAR, CA  91765 | $16,039.34 | | | | $   .00 | $   .00 | $16,039.34 |
| THE CHANG REVOCABLE TRUST C/O WEN PIN CHANG, TRUSTEE 2819 CRYSTAL RIDGE ROAD DIAMOND BAR, CA  91765 | $23,333.33 | | | | $   .00 | $   .00 | $23,333.33 |
| THE GAS COMPANY P.O. BOX C MONTEREY PARK, CA  91756 | $   .00 | | | | $   .00 | $   .00 | $   .00 |
| TIRE RACK WHOLESALE 7101 VORDEN PARKWAY SOUTH BEND, IN  46628-8422 | $1,472.23 | | | | $   .00 | $   .00 | $1,472.23 |
| TRADE UNION INT L (TAIWAN) LTD 5F-5, NO.58, SHING SHAN RD. NEI HU DIST. TAIPEI, TAIWAN | $7,428,570.89 | | | | $   .00 | $   .00 | $7,428,570.89 |

**Exhibit 3, Page 12 (Trade Union Unsecured Creditors)**

| Trade Union - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| TRAVELERS<br>CL REMITTANCE CTR<br>HARTFORD, CT 06183-1008 | $17,334.93 | | | | $ .00 | $ .00 | $17,334.93 |
| TRIPLE A POOL SERVICE<br>1819 TINTAH DR.<br>DIAMOND BAR, CA 91765 | $ 165.00 | | | | $ .00 | $ .00 | $ 165.00 |
| ULINE<br>ATTN: ACCOUNTS RECEIVABLE<br>WAUKEGAN, IL 60085 | $1,021.59 | 1 | 2/14/2011 | $ 719.59 | $ .00 | $ 587.29 | $ 130.30 |
| UNITED SECURITY SYSTEMS INC<br>8757 LANYARD COURT, SUITE 100<br>RANCHO CUCAMONGA, CA 91730 | $ 177.00 | | | | $ .00 | $ .00 | $ 177.00 |
| UPS FREIGHT<br>28013 NETWORK PLACE<br>CHICAGO, IL 60673-1280 | $3,056.47 | | | | $ .00 | $ .00 | $3,056.47 |
| UNITED PARCEL SERVICE (FREIGHT)<br>C/O RECEIVABLE MANAGEMENT<br>SERVICES<br>PO BOX 4396<br>TIMONIUM, MD 21094 | | 10 | 3/25/2011 | $5,066.06 | $ .00 | $ .00 | $5,066.06 |
| UNITED PARCEL SERVICE<br>C/O RECEIVABLE MANAGEMENT<br>SERVICES<br>PO BOX 4396<br>TIMONIUM, MD 21094 | | 8 | 3/21/2011 | $2,464.62 | $ .00 | $ .00 | $2,464.62 |

**Exhibit 3, Page 13 (Trade Union Unsecured Creditors)**

| Trade Union - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| VERIZON CALIFORNIA<br>PO BOX 920041<br>DALLAS, TX  75392-0041 | $    .00 | | | | $    .00 | $    .00 | $    .00 |
| VERIZON<br>404 BROCK DRIVE<br>BLOOMINGTON, IL  61701 | | 15 | 5/9/2011 | $ 397.55 | $    .00 | $    .00 | $ 397.55 |
| VIDAL LANDA<br>12581 JANET LANE<br>GARDEN GROVE, CA  92840 | $ 195.00 | | | | $    .00 | $    .00 | $ 195.00 |
| WALNUT VALLEY WATER DISTRICT<br>271 S. BREA CANYON ROAD<br>WALNUT, CA  91788-0508 | $  93.14 | | | | $    .00 | $    .00 | $  93.14 |
| RETURNED MAIL | | | | | | | |
| OLD DOMINION FREIGHT LINE INC<br>FILE 030989<br>SAN FRANCISCO, CA  94160 | | | | | | | |
| VERIZON CALIFORNIA<br>P.O. BOX 30001<br>INGLEWOOD, CA  90313-0001 | | | | | | | |

**Exhibit 3, Page 14 (Trade Union Unsecured Creditors)**

| Trade Union - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| CITICORP LEASING INC<br>450 MAMARONECK AVE<br>HARRISON, NY  10528-2400 | Notice Purposes | | | | $    .00 | $    .00 | $    .00 |
| VERIZON CALIFORNIA<br>P.O. BOX 9688<br>MISSION HILLS, CA  91346 9688 | $    .00 | | | | | | |
| KEY EQUIPMENT FINANCE<br>3075 HIGHLAND PKWY FL UCC DEPT<br>DOWNERS GROVE, IL  60515-1288 | Notice Purposes | | | | | | |
| PAULINE M STEVENS ESQ<br>MARC B LEH ESQ<br>555 W FIFTH ST<br>LOS ANGELES, CA  90013-1024 | | | | | | | |
| HOME DEPOT<br>5450 WALNUT AVE.<br>CHINO, CA  91710 | $ 165.35 | | | | $    .00 | $    .00 | $ 165.00 |

**Exhibit 3, Page 15 (Trade Union Unsecured Creditors)**

# EXHIBIT 3

## General Unsecured Claims
## Duck House

| Duck House - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| INTERNAL REVENUE SERVICE<br>PO BOX 7346<br>PHILADELPHIA, PA  19101-7346 | $    .00 | | | | $    .00 | $    .00 | $    .00 |
| FRANCHISE TAX BOARD<br>ATTN BANKRUPTCY UNIT<br>BANKRUPTCY SECTION MS A340<br>PO BOX 2952<br>SACRAMENTO, CA  95812-2952 | $    .00 | 7 | 3/18/2011 | $ 800.00 | $    .00 | $ 800.00 | $    .00 |
| CALIFORNIA EMPLOYMENT DEVELOPMENT DEPARTMENT<br>BANKRUPTCY GROUP MIC 92E<br>PO BOX 826880<br>SACRAMENTO, CA  94280-0001 | $    .00 | | | | $    .00 | $    .00 | $    .00 |
| STATE BOARD OF EQUALIZATION<br>P.O. BOX 942879<br>SACRAMENTO, CA  94279-6001 | $    .00 | | | | $    .00 | $    .00 | $    .00 |
| SAN BERNARDINO COUNTY TREASURER-TAX COLLECTOR<br>172 WEST THIRD STREET<br>SAN BERNARDINO, CA  92415 | $    .00 | 12 | 5/10/2011 | $ 590.50 | $ 590.50 | $    .00 | $    .00 |
| FRIESING INVESTMENTS, INC., DBA GULF COAST SALES AND MARKETING<br>PO BOX 2767<br>ADDISON, TX  75001 | | 6 (filed in Trade Union) | 3/8/2011 | $82,831.50 | $82,831.50 | $    .00 | $    .00 |

**Exhibit 3, Page 1 (Duck House Unsecured Creditors)**

| Duck House - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| JOHN D. ELROD, ESQ. GREENBERG TRAURIG LLP ATTORNEYS FOR WILLIAM S. KAY, THE LIQUIDATING TRUSTEE FOR BFW LIQUIDATION LLC (FKA BRUNO'S SUPERMARKETS LLC) 3290 NORTHSIDE PARKWAY SUITE 400 ATLANTA, GA  30327 | | 14 (Trade Union Docket) | 4/20/2011 | $11,456.13 | $    .00 | $    .00 | $11,456.13 |
| FANZZ (JAZZ BASKETBALL INVESTORS, INC., DBA FANZZ) 301 WEST SOUTH TEMPLE SALT LAKE CITY, UT  84101 | | 10 | 4/25/2011 | $23,631.42 | $    .00 | $    .00 | $23,631.42 |
| A TO Z MARKETING VENTURES, LLC. 17 SIVER STREET SIDNEY, NY  13838 | $7,526.57 | | | | $    .00 | $    .00 | $7,526.57 |
| AL ARRANTS 116 COUNTRY OAKS DRIVE BRISTOL, TN  37620 | $ 180.90 | | | | $    .00 | $    .00 | $ 180.90 |
| BOB KUNICK ASSOC. INC. 12223 LEE HIGHWAY FAIRFAX, VA  22030-6341 | $3,274.81 | | | | $    .00 | $    .00 | $3,274.81 |
| BOTTOMLINE SALES P.O. BOX 74506 SAN CLEMENTE, CA  92673 | $ 25.20 | | | | $    .00 | $    .00 | $ 25.20 |

**Exhibit 3, Page 2 (Duck House Unsecured Creditors)**

| Duck House - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| BULLET TRANSPORTATION SERVICES<br>P.O. BOX 809066<br>CHICAGO, IL  60680-9066 | $15,464.45 | 3 | 2/25/2011 | $68,805.28 | $   .00 | $   .00 | $68,805.28 |
| BULLET TRANSPORTATION SERVICES<br>4900 S PENNSYLVANIA AVE<br>CUDAHY, WI  53110 | | | | | $   .00 | $   .00 | $   .00 |
| CADY'S HALLMARK SHOP<br>220 LIBERTY STREET<br>WARREN, PA  16365 | $   .00 | 1 | 2/14/2011 | $ 33.50 | $   .00 | $   .00 | $ 33.50 |
| CALIFORNIA CLUB<br>606 BLUE OAK COURT<br>EL DORADO HILLS, CA  95762 | $ 386.31 | | | | $   .00 | $   .00 | $ 386.31 |
| CONTINENTAL AGENCY<br>1400 MONTEFINO AVE. SUITE 200<br>DIAMOND BAR, CA  91765 | $12,723.08 | 4 | | $5,685.43 | $   .00 | $   .00 | $5,685.43 |
| CREATIVE DOCUMENT SOLUTIONS<br>1629 MARION-WALDO ROAD<br>MARION, OH  43302 | $ 513.57 | 2 | 2/23/2011 | $ 513.57 | $   .00 | $   .00 | $ 513.57 |
| DOUG STEWART<br>P.O. BOX 5016<br>ANDERSON, SC  29623 | $3,553.70 | | | | $   .00 | $   .00 | $3,553.70 |

**Exhibit 3, Page 3 (Duck House Unsecured Creditors)**

| Duck House - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| E.I.S. GROUP<br>614 ROGERS ROAD<br>VILLA HILLS, KY  41017 | $1,054.11 | | | | $    .00 | $    .00 | $    .00 |
| DACA 2010L LP<br>1565 HOTEL CIRCLE SOUTH SUITE 310<br>SAN DIEGO, CA  92108 | $    .00 | | | | $    .00 | $    .00 | $1,054.11 |
| FEDEX NATIONAL LTL<br>PO BOX 840<br>HARRISON, AR  72602-0840 | $    .00 | 6 | 3/17/2011 | $7,382.58 | $    .00 | $    .00 | $7,382.58 |
| FLORIDA SPORTS NETWORK<br>221 BLUE JUNIPER BLVD.<br>VENICE, FL  34292 | $6,909.14 | | | | $    .00 | $    .00 | $6,909.14 |
| FM TURNER<br>6325 COCHRAN ROAD, UNIT 5<br>SOLON, OH  44139 | $1,082.40 | | | | $    .00 | $    .00 | $1,082.40 |
| FOGLEMAN BROS., INC.<br>P.O. BOX 457<br>BURLINGTON, NC  27216 | $ 138.23 | | | | $    .00 | $    .00 | $ 138.23 |
| GARY GENE INGOLDSBY<br>342 REVOLUTION DRIVE<br>ST. PETERS, MO  63376 | $ 112.99 | | | | $    .00 | $    .00 | $ 112.99 |

**Exhibit 3, Page 4 (Duck House Unsecured Creditors)**

| Duck House - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| GIFT SOURCE, LLC<br>14040 HAYES STREET<br>OVERLAND PARK, KS  66221 | $ 316.45 | | | | $   .00 | $   .00 | $ 316.45 |
| HOLLEY SALES<br>12205 KIMBERLYN ROAD<br>OKLAHOMA CITY, OK  73162 | $4,636.65 | | | | $   .00 | $   .00 | $4,636.65 |
| INDIANA UNIVERSITY<br>P.O. BOX 6268<br>INDIANAPOLIS, IN  46206 | $ 295.58 | | | | $   .00 | $   .00 | $ 295.58 |
| INDIANA UNIVERSITY<br>400 EAST SEVENTH STREET<br>PO BOX 4040<br>BLOOMINGTON, IN  47402 | $   .00 | | | | | | |
| JEANNE D. ROSEN AKA JDR SALES<br>422 KINGS HIGHWAY<br>CARNEGIE, PA  15106 | $1,046.97 | 19 (Trade Union Docket) | 6/9/2011 | $1,046.97 | $   .00 | $   .00 | $1,046.97 |
| JERRY ELY SALES<br>5952 ROYAL LANE, SUITE 218A<br>DALLAS, TX  75230-9950 | $ 338.10 | | | | $   .00 | $   .00 | $ 338.10 |
| JIM & CANDY DAVID<br>P.O. BOX 548<br>ZIONSVILLE, IN  46077-0548 | $ 954.84 | | | | $   .00 | $   .00 | $ 954.84 |

**Exhibit 3, Page 5 (Duck House Unsecured Creditors)**

| Duck House - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| JOHN COACH NADELL<br>2521 REDSTART LANE<br>BIRMINGHAM, AL  35226 | $ 719.61 | | | | $    .00 | $    .00 | $ 719.61 |
| JOSEPH K. CLARK DBA ALL SEASONS MARKETING<br>237 SOUTH CURTIS RD SUITE 100<br>WEST ALLIS, WI  53214-1030 | $3,749.13 | | | | $    .00 | $    .00 | $3,749.13 |
| K.O. SALES, LLC<br>7521 NW 131ST<br>OKLAHOMA CITY, OK  73142 | $ 429.45 | | | | $    .00 | $    .00 | $ 429.45 |
| L & S SPORTS, INC.<br>P.O. BOX 530056<br>LIVONIA, MI  48153 | $1,484.50 | | | | $    .00 | $    .00 | $    .00 |
| DACA 2010L LP<br>1565 HOTEL CIRCLE SOUTH SUITE 310<br>SAN DIEGO, CA  92108 | $    .00 | | | | $    .00 | $    .00 | $1,484.50 |
| L.B. WOOD MARKETING, INC.<br>7121 FISH POND ROAD<br>WACO, TX  76710 | $7,415.14 | | | | $    .00 | $    .00 | $7,415.14 |
| LAW OFFICES OF ALLAN P. LEGUAY<br>650 TOWNE CENTER DR, SUITE 1400<br>COSTA MESA, CA  92626 | $    .00 | 13 | 6/1/2011 | $1,855.00 | $    .00 | $    .00 | $1,855.00 |

**Exhibit 3, Page 6 (Duck House Unsecured Creditors)**

| Duck House - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| LICENSING RESOURCE GROUP LLC<br>442 CENTURY LANE, SUITE 100<br>HOLLAND, MI 49423 | $1,873.71 | | | | $   .00 | $   .00 | $1,873.71 |
| LIUZHOU WANTEX TRADING CO., LTD.<br>NO.3, THE SECOND YANGHE INDUSTRIAL PARK<br>LIUZHOU, GX<br>CHINA | $ 30.60 | | | | $   .00 | $   .00 | $ 30.60 |
| LOGO AMERICA, LLC<br>22123 W. 83RD STREET.<br>SHAWNEE, KS 66227 | $3,056.27 | | | | $   .00 | $   .00 | $3,056.27 |
| LONG SALES GROUP<br>451 E. 58TH AVENUE #1669<br>DENVER, CO 80216 | $11,720.03 | | | | $   .00 | $   .00 | $11,720.03 |
| LOUD & ASSOCIATES, LLC<br>1319 SWAN DRIVE<br>ANNAPOLIS, MD 21409 | $ 945.44 | | | | $   .00 | $   .00 | $ 945.44 |
| MACKIE & ASSOCIATES<br>2100 NO. SEPULVEDA BLVD, SUITE 18<br>MANHATTAN BEACH, CA 90266 | $21,892.62 | 13 (Trade Docket) | | $21,892.62 | $   .00 | $   .00 | $21,892.62 |
| MAJIC TOUCH<br>230 SPRING STREET STE 1421<br>ATLANTA, GA 30303 | $ 554.61 | | | | $   .00 | $   .00 | $ 554.61 |

**Exhibit 3, Page 7 (Duck House Unsecured Creditors)**

| Duck House - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| MAJOR LEAGUE BASEBALL PROPERTIES 245 PARK AVENUE NEW YORK, NY  10167 | $    .00 | | | | | | |
| MARK WILLIAMS AND COMPANY 4940 BROOKSVIEW CIRCLE NEW ALBANY, OH  43054 | $1,706.10 | | | | $    .00 | $    .00 | $1,706.10 |
| MARKET PLACE GIFTS INC. 3710 COMMERCIAL AVENUE STE 7 NORTH BROOK, IL  60062 | $ 364.77 | | | | $    .00 | $    .00 | $ 364.77 |
| MEI LIEN CHANG 2819 CRYSTAL RIDGE ROAD DIAMOND BAR, CA  91765 | $10,000.00 | | | | $    .00 | $    .00 | $10,000.00 |
| MORRISON SALES 9 MONTROSE LANE MANCHESTER TOWNSHIP, NJ  8759 | $4,358.77 | | | | $    .00 | $    .00 | $4,358.77 |
| MICHIGAN STATE UNIVERSITY 216 MSU UNION MICHIGAN STATE UNIVERSITY EAST LANSING, MI  48824-1029 | $ 661.86 | | | | $    .00 | $    .00 | $ 661.86 |
| NANCY ANDERSEN 37 PATRIOT WAY PEMBROKE, MA  2359 | $2,069.18 | | | | $    .00 | $    .00 | $2,069.18 |

**Exhibit 3, Page 8 (Duck House Unsecured Creditors)**

| Duck House - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| NATIONAL SPORTS ASSOCIATES<br>9150 KILDARE<br>SKOKIE, IL  60076 | $ 440.89 | | | | $    .00 | $    .00 | $ 440.89 |
| NBA PROPERTIES, INC.<br>P.O. BOX 10602<br>NEWARK, NJ  07193 | $    .00 | | | | $    .00 | $    .00 | $    .00 |
| NFL PROPERTIES LLC-LICENSING GPO<br>P.O. BOX 27278<br>NEW YORK, NY  10087-7278 | $51,203.36 | | | | $    .00 | $    .00 | $51,203.36 |
| NORTHWEST REPS, INC.<br>10 VAN BUREN, SUITE C<br>EUGENE, OR  97402 | $ 45.00 | | | | $    .00 | $    .00 | $ 45.00 |
| OHIO STATE UNIVERSITY<br>DEPT. 1760<br>COLUMBUS, OH  43271-1760 | $3,744.56 | | | | $    .00 | $    .00 | $3,744.56 |
| OHIO STATE UNIVERSITY<br>1100 KINNEAR ROAD SUITE 210<br>COLUMBUS, OH  43212-1152 | $    .00 | | | | | | |
| P.T.L. SALES<br>P.O. BOX 6120<br>STUART, FL  34997 | $2,313.58 | | | | $    .00 | $    .00 | $2,313.58 |

**Exhibit 3, Page 9 (Duck House Unsecured Creditors)**

| Duck House - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| PARTNER'S DELIVERY, INC.<br>1927 A HARBOR BLVD, #151<br>COSTA MESA, CA  92627 | $ 655.00 | | | | $    .00 | $    .00 | $ 655.00 |
| PARTY COUNSEL-DAVID TUROCK<br>5 THORNBROOK LANE<br>SUFFERN, NY  10901 | $ 424.26 | | | | $    .00 | $    .00 | $ 424.26 |
| QUARTZ LOGISTICS INC.<br>731 S. GARFIELD AVE<br>ALHAMBRA, CA  91801 | $8,186.11 | | | | $    .00 | $    .00 | $8,186.11 |
| RICK SALESE<br>535 WOOD VALLEY TRACE<br>ROSWELL, GA  30076 | $ 781.07 | | | | $    .00 | $    .00 | $ 781.07 |
| RODOLFO RODRIGUEZ AGUILAR<br>8430 MISSION BLVD.<br>RIVERSIDE, CA  92509 | $1,023.00 | | | | $    .00 | $    .00 | $1,023.00 |
| RON GRUBBS<br>112 WONDER VALLEY ROAD<br>BRISTOL, TN  37620 | $ 258.76 | | | | $    .00 | $    .00 | $ 258.76 |
| SDJ, LLC<br>14176 HWY 87 N.<br>EDEN, NC  27288 | $9,280.82 | | | | $    .00 | $    .00 | $9,280.82 |

**Exhibit 3, Page 10 (Duck House Unsecured Creditors)**

| Duck House - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| SOUTH DAKOTA STATE UNIVERSITY ADMINISTRATION BLDG. 0234 BOX 2201 BROOKINGS, SD 57007-2398 | $ 2.55 | | | | $ .00 | $ .00 | $ 2.55 |
| SPLASH P.O. BOX 247 FACTORYVILLE,, PA 18419 | $ 304.82 | | | | $ .00 | $ .00 | $ 304.82 |
| SPRINT P O BOX 219100 KANSAS CITY, MO 64121-9100 | $ 218.81 | | | | $ .00 | $ .00 | $ 218.81 |
| DILIGENTSIA CAPITAL GROUP LLC C/O RECOVERY MANAGEMENT SYSTEMS CORPORATION 25 SE 2ND AVENUE SUITE 1120 MIAMI, FL 33131-1605 | | 11 | 4/28/2011 | $1,302.76 | $ .00 | $ .00 | $1,302.76 |
| SUMMIT LOGISTICS INT'L 780 NOGALES STREET, BUILDING D CITY OF INDUSTRY, CA 91748 | $12,816.80 | | | | $ .00 | $ .00 | $12,816.80 |
| SUPERMARKET REPRESENTATIVES 20 E. SUNRISE HIGHWAY, STE 300 VALLEY STREAM, NY 11581 | $1,086.00 | | | | $ .00 | $ .00 | $1,086.00 |
| TEAM COLORS SPORTS MARKETING & SALES P.O. BOX 93850 PASADENA, CA 91109 | $ 34.83 | | | | $ .00 | $ .00 | $ 34.83 |

**Exhibit 3, Page 11 (Duck House Unsecured Creditors)**

| Duck House - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| THE COLLEGIATE LICENSING CO<br>290 INTERSTATE NORTH, SUITE 200<br>ATLANTA, GA  30339 | $    .00 | | | | | | |
| TRADE UNION INT'L (TAIWAN) LTD<br>5F-F, NO.58, SHING SHAN RD<br>TAIPEI, | $656,365.34 | | | | $    .00 | $    .00 | $656,365.34 |
| TREASURES<br>7014 59TH ST, CT. W<br>UNIVERSITY PLACE, WA  98467 | $4,754.25 | 9 | 4/5/2011 | $4,754.25 | $    .00 | $4,754.25 | $    .00 |
| UNIVERSITY OF IOWA<br>210 KHF BLDG. 446<br>IOWA CITY, IA  52242 | $ 930.52 | | | | $    .00 | $    .00 | $ 930.52 |
| UNIVERSITY OF OREGON<br>720 E 13TH SUITE 303<br>5286 UNIVERSITY OF OREGON<br>EUGENE, OR  97403-5286 | $ 808.70 | | | | $    .00 | $    .00 | $ 808.70 |
| UPS FREIGHT<br>28013 NETWORK PLACE<br>CHICAGO, IL  60673-1280 | $ 169.09 | 8 | 3/25/2011 | $1,363.62 | $    .00 | $    .00 | $1,363.62 |
| UNITED PARCEL SERVICE (FREIGHT)<br>C/O RECEIVABLE MANAGEMENT<br>SERVICES<br>PO BOX 4396<br>TIMONIUM, MD  21094 | | | | | $    .00 | $    .00 | $    .00 |

**Exhibit 3, Page 12 (Duck House Unsecured Creditors)**

| Duck House - Creditors | Scheduled Unsecured Claim Amount | Claim No. | Date Claim Filed | Filed Claim Amount | Filed Claim Secured Amount | Filed Claim Priority Amount | Filed Claim Unsecured |
|---|---|---|---|---|---|---|---|
| WAL-MART STORES, INC.<br>C/O CHARLES B. HENDRICKS, ESQ<br>CAVAZOS HENDRICKS POIROT &<br>SMITHAM P.C.<br>FOUNDERS SQUARE<br>SUITE 570<br>900 JACKSON STREET<br>DALLAS, TX  75202-4425 | | 15 | 6/14/2011 | $    .00 | $    .00 | $    .00 | $    .00 |
| OSTROM'S & ASSOCIATES<br>10301 BREN ROAD WEST, SUITE 340<br>MINNETONKA, MN  55343 | $  25.31 | | | | $    .00 | $    .00 | $  25.31 |
| TRANSWORLD SYSTEMS, INC.<br>ATTN: TSI COMMERCIAL DIVISION<br>CHICAGO, IL  60673-1248 | $  39.13 | | | | $    .00 | $    .00 | $  39.13 |

**Exhibit 3, Page 13 (Duck House Unsecured Creditors)**

# EXHIBIT 4

# Bank Group Settlement Agreement

**NOTE TO THIS EXHIBIT:**

**The parties are working to finalize the final form of the Settlement Agreement and the ancillary Tenth Modification and Extension Agreement and Annex A thereto ("Loan Modification Agreement") attached hereto and intend to file the final form of the Settlement Agreement and ancillary Loan Modification Agreement prior to the Court hearing.**

# EXHIBIT 4, PAGE 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is entered into as of this ___ day of August, 2011, by and among TRADE UNION INTERNATIONAL, INC., a California corporation ("Trade Union"), and DUCK HOUSE, INC., a California corporation ("Duck House" and together with Trade Union, the "Debtors"), WEN PIN CHANG, an individual ("W. Chang"), MEI LIEN CHANG, an individual ("M. Chang"), and WEN PIN CHANG AND MEI LIEN CHANG as Trustees of the CHANG REVOCABLE TRUST u/t/a September 20, 1996 (the "Trust", and together with W. Chang and M. Chang, individually and collectively, the "Guarantor") on the one hand, and CATHAY BANK, a California banking corporation ("Cathay"), as Agent ("Agent") for itself and CHINATRUST CAPITAL CORPORATION, successor in interest to ChinaTrust Bank U.S.A. ("Chinatrust") as a Lender, (and together with Cathay, the "Lenders"), and Cathay as L/C Issuer ("L/C Issuer") on the other hand, with respect to the following facts:

## RECITALS

A.    Trade Union and Duck House are the makers of the following:  (i) a Line A Note in the original principal amount of $10,400,000.00 in favor of Cathay; (ii) a Line A Note in the original principal amount of $5,600,000.00 in favor of Chinatrust; (iii) a Line B Note in the original principal amount of $3,380,000.00 in favor of Cathay; (iv) a Line B Note in the principal amount of $1,820,000.00 in favor of Chinatrust (collectively, the "Notes"), which are secured by that certain Amended and Restated Security Agreement dated June 29, 2007 (as amended, the "Security Agreement") and by a Deed of Trust and Assignment of Rents and Leases dated January 15, 2002, executed by the Chang Revocable Trust u/t/a September 20, 1996 ("Trust") which was recorded on February 8, 2002 in the Official Records of San Bernardino County, California as Document No. 20020063955 (the "Montclair Deed of Trust").  The Notes evidence various loans made by Lenders to Debtors in the aggregate principal amount of $21,200,000.00 (collectively, the "Loans").  Agent and Debtors are also parties to an Amended and Restated Credit Agreement dated June 29, 2007 (as amended, the "Credit Agreement").  As used herein, "Loan Documents" shall have the meaning set forth in the Loan Modification Agreement (defined below).  As used herein, the term "Collateral" shall have the meaning set forth in the Credit Agreement and shall include any assets in which Borrower has granted Lenders a security interest pursuant to the Loan Modification Agreement or otherwise.

B.    On January 31, 2011 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code with the United States Bankruptcy Court for the Central District of California, Riverside Division (the "Bankruptcy Court").  The case number for Trade Union's case (the "Trade Union Case") is 6:11-bk-13071-DS; the case number for Duck House's case is 6:11-bk-13072-DS (the "Duck House Case", and together with the Trade Union Case, individually and collectively, the "Bankruptcy Cases").  The Bankruptcy Cases, among others, are being jointly administered under the lead case, Trade Union.  Since the filing of their petitions for relief, the Debtors have and are continuing to operate their business as debtors-in-possession under 11 U.S.C. §§ 1107 and 1108.

838287.7

## EXHIBIT 4, PAGE 2

C.     Trade Union, Duck House and Guarantor, on the one hand, and Agent, and Lenders on the other hand (collectively the "Parties"), hereby memorialize their settlement of any disputes arising out of or relating to the Debtors' use of cash collateral, the Loan Documents, and the treatment of Agent's claims under a Chapter 11 plan or plans of reorganization, in accordance with the terms and conditions set forth below.

NOW, THEREFORE, based on the mutual promises contained herein and for other good and valuable consideration, the receipt of which is acknowledged, the Parties agree as follows:

1.     <u>Recitals Acknowledged</u>.  The foregoing Recitals are true and correct to the best of the Parties' knowledge, and are hereby adopted by the Parties.

2.     <u>Loan Modification Agreement and Confirmation of Guaranty</u>.  Trade Union, Duck House, Guarantor, Agent and Lenders shall enter into a modification agreement substantially conforming to the "Tenth Modification and Extension Agreement" and Annex A thereto, attached as Exhibit "A" hereto (the "Loan Modification Agreement") and incorporated herein by this reference.

3.     <u>Bankruptcy Court Approval</u>.  The Parties agree that their obligations under this Settlement Agreement and the Loan Modification Agreement are subject to, and conditioned upon, entry of an order by the Bankruptcy Court (the "Approval Order") approving the terms of this Settlement Agreement, which the Debtors shall seek as soon as practicable following execution of this Settlement Agreement by the Parties.  For purposes of this Settlement Agreement, "<u>Effective Date</u>" shall  be defined as in the Loan Modification Agreement and be subject to the same requirement as to by when it shall occur or this Agreement may be terminated by Agent. Effective Date shall be the same as the term "Approval Date" as used herein. The provisions of this Settlement Agreement and those contained within the Loan Modification Agreement are intended by the Parties to be effective at all material times after the Approval Date, including during the pendency of the Bankruptcy Case and after the effective date of any plan of reorganization proposed by the Debtors and confirmed by the Bankruptcy Court ("Plan").

4.     <u>Consent to Restructure</u>.  Agent and Lenders have agreed to restructure the Outstanding Indebtedness and the Loan Documents (as defined in the Loan Modification Agreement).  Notwithstanding Agent's consents as set forth in this paragraph, such consents by Agent shall not and do not restrict Agent's rights under the Loan Modification Agreement, this Settlement Agreement, or applicable law in the event of any future defaults in payment or performance by Trade Union and/or Duck House under the Loan Documents as revised by the Loan Modification Agreement or hereunder.

5.     <u>Limited Mutual Releases</u> .

(a)     Upon the Effective Date, Borrower, each Guarantor, Agent, each Lender and L/C Issuer (for purposes of this Section 5, individually and collectively referred to herein as "<u>Releasor</u>"), and each of them, for themselves, and each Releasor's successors and assigns, and each of them, shall and do hereby forever relieve, release and discharge (i) Borrower and each Guarantor by Agent, each Lender and L/C Issuer, (ii) Agent, each Lender and L/C Issuer by

**EXHIBIT 4, PAGE 3**

Borrower and each Guarantor, and (iii) their respective successors, assigns, past and present attorneys, accountants, representatives, affiliates, parents, partners, officers, directors, employees and stockholders, jointly and severally, from (iv) any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees), damages, injuries, actions and causes of actions, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, based upon, arising out of, appertaining to, or in connection with any of the matters or facts alleged or set forth in the Recitals of this Agreement, the Recitals of the Loan Modification Agreement, the lending relationship between Agent and Lenders on the one hand, and Borrower and Guarantor, on the other hand, the Loans, the Loan Documents, the Bankruptcy Cases, the facts pertinent to this Agreement, and any and all real and personal property collateral, jointly and severally, and further including, without limitation, all claims relating to or arising out of the Allegations as that term is defined in the Loan Modification Agreement ("Released Claims"); provided, however, that the term Released Claims does not and shall not include any claim based on this Settlement Agreement or on any obligation arising under the Loan Documents or any order entered prior to the Effective Date in the Bankruptcy Cases.

(b)    As to the Released Claims, Releasor, and each of them, expressly waive any and all rights under section 1542 of the Civil Code of the State of California, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

(c)    As to the Released Claims, Releasor, and each of them, expressly waive and release any right or benefit which they have or may have under section 1542 of the Civil Code of the State of California, and any similar statute, code, law and/or regulation of the United States, or any state thereof, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein.  In connection with such waiver and relinquishment, Releasor, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true.  Nevertheless, it is the intention of Releasor, and each of them, through this Agreement, to fully, finally and forever release all such matters, and all claims relative thereto, which now exist, may exist, or heretofore have existed.  In furtherance of such intention, the releases herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

(d)    In entering into the release provided for in this Agreement, Releasor, and each of them, recognize that no facts or representations are ever absolutely certain; accordingly, they assume the risk of any mistake, and if they should subsequently discover that any understanding of the facts or of the law was incorrect, said party shall not be entitled to set aside this release by reason thereof, regardless of any mistake of fact or law.

838287.7

**EXHIBIT 3 4, PAGE 4**

(e)    Releasor, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not assigned or transferred, or purported to assign or transfer to any person or entity any claims or other matters herein released.  Releasor, each individually and jointly, shall and hereby do indemnify, defend and hold each party released hereby harmless from and against any claims, liabilities, actions, causes of action, demands, injuries, damages, costs, and expenses (including, but not limited to, attorneys' fees), based upon or arising in connection with any such prior assignment or transfer, or any such purported assignment or transfer, or any claims or other matters released herein.

1.     Consent to Treatment Under Chapter 11 Plan.

(a)    The Parties acknowledge that (i) this Settlement Agreement is entered into in contemplation of the proposal and confirmation of a Chapter 11 Plan by the Debtors; but (ii) confirmation of any such Plan is not a condition to the effectiveness of the settlement or of the modification to the Loan Documents.

(a)    The treatment of Agent, Lenders, and L/C Issuer under any Plan proposed by the Debtors shall be consistent with, and the Debtors shall not in any way seek to alter, modify, challenge or contradict, the terms of the Loan Documents, as modified by the Loan Modification Agreement herein, or this Settlement Agreement, including, without limitation, the releases contained herein.  With respect to the Loans, the entirety of Agent's, Lenders', and L/C Issuer's claims against the Debtors' estates shall comprise a single class of secured claims, and that class shall consist solely of Agent's, Lenders' and L/C Issuer's claims.  The class consisting of such secured claim against the Debtors' estates shall be deemed to be "impaired" under 11 U.S.C. § 1124.  Provided that the Plan complies with the terms hereof, (i) the Debtors shall use their collective best efforts to obtain confirmation of the Plan, (ii) Lenders will not object to such Plan, and (iii) Lenders will not support or participate in the formulation of any other plan.

(a)    Nothing herein shall be deemed to prohibit the proposal and confirmation of a joint or consolidated Plan.  In the event that such a Plan is proposed, the terms of the Plan shall contain provisions complying with both subparagraphs 6(b) and 6(c) hereof.

(a)    Nothing herein shall be deemed to require confirmation of a Plan as a condition to the effectiveness and enforceability of this Settlement Agreement or of the Loan Modification Agreement.

1.     Relief from Stay Prior to Plan Effective Date.  Notwithstanding anything to the contrary in the Loan Documents, as modified by the Loan Modification Agreement, the following shall apply after the Approval Date and prior to the effective date of any confirmed Plan:

(a)    If an Event of Default (as defined in the Loan Documents, the Loan Modification Agreement, herein, or in any agreement between or among the Parties with respect to an obligation secured by the Collateral) occurs prior to the effective date of the Plan where Trade Union and/or Duck House fail to perform an obligation under the Loan Documents, as modified by the Loan Modification Agreement or under any other agreement between or among

the Parties with respect to an obligation secured by the Collateral (a "Default"), Agent shall provide notice of such Default in writing (the "Notice of Default"), and deliver such notice to the Debtors and the Debtors' counsel at the addresses identified in this paragraph.

(b)     Trade Union and/or Duck House shall have five (5) business days from the date of delivery of the Notice of Default (the "Cure Period") to cure the Default identified in the Notice of Default. During such Cure Period, all sweeps of funds under the Loan Documents shall continue.

(c)     On the Effective Date, and under the entered Approval Order approving this Settlement Agreement, Agent and Lenders shall, and Borrower hereby stipulates that Agent and Lenders shall, be granted immediate relief from the automatic stay of 11 U.S.C. § 362 in the Bankruptcy Cases, effective as of the Approval Date for any Defaults in any obligation for the payment of money to Lenders ("Payment Default"). If any such Payment Default is not cured within the Cure Period, Agent and Lenders shall be entitled immediately upon expiration of the Cure Period to enforce all of their rights under the Loan Documents, the Loan Modification Agreement, hereunder, or applicable law, as against Debtors and property of Debtors' estates. The automatic stay of 11 U.S.C. §362 shall not apply to, and shall be deemed modified, amended, annulled, and terminated in the Bankruptcy Cases as to Payment Defaults to Agent and Lenders and with respect to Agent's and Lenders' enforcement of any and all rights and remedies granted to Agent and Lenders under the Loan Documents as modified by the Loan Modification Agreement, under this Settlement Agreement, and under applicable state and federal law, with respect to such Payment Defaults, including without limitation enforcement by Agent of any and all liens granted to Agent and Lenders to secure payment and performance of the obligations of Debtors under the Loan Documents as modified by the Loan Modification Agreement, all without further order of the Bankruptcy Court.

(d)     If any Default (other than a Payment Default) is susceptible to being cured by Trade Union and/or Duck House within the Cure Period but has not been cured prior to expiration of the Cure Period, or a Default (other than a Payment Default) is not capable of being cured, Agent shall be authorized to request entry of an order terminating or modifying the automatic stay, to which request the Debtors may object only on the grounds set forth below, as follows:

(i)     Agent shall file a *Motion for Relief from the Automatic Stay under 11 U.S.C. § 362* (the "Stay Motion") in accordance with Local Bankruptcy Rule 4001-1, except that the Stay Motion shall be filed and served not later than 14 calendar days before the hearing. The Debtors shall file and serve any opposition to the Stay Motion not later than 7 calendar days before the hearing.

(i)     The sole basis upon which the Bankruptcy Court may grant relief from stay is cause found by the Bankruptcy Court to exist under 11 U.S.C. § 362(d)(1) as a result of a material Default that was susceptible to being cured by the Debtors within the Cure Period but was not cured by the Debtors prior to expiration of the Cure Period. The Stay Motion shall be denied if the Debtors establish that: (a) no Default occurred; (b) the Default identified in the Notice of Default was timely cured; (c) the Default identified in the Notice of Default was not susceptible to being cured by the Debtors within the Cure Period, (d) the Default identified in the

Notice of Default was not a material default under applicable nonbankruptcy law; or (e)  Agent or Lenders failed to comply with any of their respective duties and obligations under this Settlement Agreement.

(i)    If the Bankruptcy Court finds that cause exists to grant relief from the automatic stay, the Bankruptcy Court shall terminate or modify the automatic stay as against Debtors and Debtors' estates, such that Agent shall be authorized to proceed under applicable nonbankruptcy law to enforce its remedies including without limitation to foreclose upon and obtain possession of the collateral.

(e)    Any Notice of Default to be delivered pursuant to this paragraph shall be served by personal delivery and facsimile as follows:

(i)    Debtors:    Trade Union International, Inc.
Duck House, Inc.
Wen Chang
No. 1 Topline Plaza
4651 State Street
Montclair, CA 92763
Facsimile no. 909-628-7580

(ii)    Debtors' counsel:    James C. Bastian, Jr.
Shulman Hodges & Bastian LLP
8105 Irvine Center Drive, Suite 600
Irvine, California 92618
Facsimile no. (949) 340-3000
Email: jbastian@shbllp.com

1.    Default.  In addition to any defaults under the Loan Documents as modified by the Loan Modification Agreement, if any of the following events (each an "Event of Default") occurs prior to the effective date of a Plan proposed by the Debtors, and the Debtors do not cure such Event of Default within the Cure Period (as defined in Section 7(b) above), Agent may do one or more of the following:  declare each of the Debtors in default, require Debtors to repay the entire debt immediately and without prior notice, and/or enforce any other remedy available under the Loan Documents as modified by the Loan Modification Agreement or under applicable law, and subject to Section 8 hereof.

(a)    Any order shall be entered in the Trade Union Case or the Duck House Case converting the Trade Union Case or the Duck House Case to a proceeding under any provision of the Bankruptcy Code other than Chapter 11.

(b)    Any of the Debtors or the Guarantor shall propose any plan of reorganization that seeks to vary, amend, modify, or change in any respect the terms, covenants, and conditions of the Loan Documents, as modified by the Loan Modification Agreement, or this Settlement Agreement, without the prior written consent of Agent.

**EXHIBIT 4, PAGE 7**

(c)    Any of the Debtors or Guarantor shall file or commence any proceeding in any court of competent jurisdiction to challenge the validity, priority, or extent of any lien granted to Lenders under the Loan Documents, as modified by the Loan Modification Agreement, or under this Settlement Agreement, including, without limitation, any adversary proceeding in the Bankruptcy Cases or with respect to the terms, covenants, and conditions contained in any proposed Plan of reorganization.

(d)    Either of the Debtors files in the Bankruptcy Cases any motion or contested proceeding that seeks to surcharge Agent or Lenders for any reason, or to "prime" any lien or the debt held by Lenders or Agent, or to provide any lien to any third party on collateral of Agent or Lenders with a senior lien priority, equal lien priority, or junior lien priority, which motion or proceeding is not dismissed within sixty (60) days; provided, however, that it shall not constitute an event of default if the Debtors file a motion seeking entry of an order or orders (i) authorizing the Debtor finance insurance premiums and grant to the premium finance lender a lien on unearned premiums or proceeds of such insurance to secure payment of only such premium financings, consistent with ordinary business terms, or (ii) authorizing the Debtors to purchase equipment or fixtures for the State Street property or such substitute therefor approved by Agent, in the ordinary course of business pursuant to a transaction in which the seller is afforded a properly created and perfected security interest in the equipment and/or fixtures purchased by the Debtors.

(e)    Any default occurs in any term or covenant contained in this Settlement Agreement.

1.    <u>Bankruptcy Case Administration</u>.

In addition to the other bankruptcy-related provisions contained herein, the following additional provisions shall apply to each of the Debtors.

(a)    <u>Preservation of Credit Bid Rights</u>.  All credit bidding rights of Agent, including, but not limited to, under 11 U.S.C. §363(k), shall be preserved at all times in addition to all other rights and remedies of Agent under the Loan Documents as modified by the Modification Agreement, this Settlement Agreement, and applicable state and/or federal law.

(b)    <u>No Surcharge Claim</u>.  No surcharge claim, including without limitation, under 11 U.S.C. §506(c), shall be asserted against Agent or Lenders by either of the Debtors.

(c)    <u>Post-Petition Financing Requests</u>.  Neither of the Debtors shall file any motion or contested proceeding that seeks the approval of the Bankruptcy Court for permission for either of the Debtors to obtain post-petition financing that would result in any liens on the Collateral that are either senior to, of equal priority with, or junior to the lien interests of Agent, including without limitation, seeking any financing under 11 U.S.C. §364, unless the same is to pay Agent in full as a condition to any such financing; provided, however, that nothing in this sub-paragraph shall (i) impair or prejudice the Debtors with respect to the waivers and consents by Agent as set forth in paragraph 4 above concerning use of cash collateral, (ii) preclude the Debtors from seeking authority to finance insurance premiums and grant to the premium finance lender a lien on unearned premiums or proceeds of such insurance consistent with ordinary

business terms, following written consent from Agent and Lenders, which shall not be
unreasonably withheld, or (iii) preclude the Debtors from seeking authority to purchase
equipment and/or fixtures in the ordinary course of business pursuant to a transaction in which
the seller is afforded a purchase money security interest in the equipment and/or fixtures sold,
following written consent from Agent and Lenders, which shall not be unreasonably withheld.

(d)     Chapter 11 Administrative Expense Claims of Professionals.  So long as
(i) Debtors remain in compliance with the Borrowing Base (as such term is defined in the Loan
Documents being amended concurrently herewith) and all other terms, covenants and conditions
of the Loan Documents, including, without limitation, Sections 4.2.6 and 4.2.7 of Annex A to the
Loan Modification Agreement and (ii) such payments are allowed by the Bankruptcy Court,
Debtors shall be permitted to use cash collateral to pay the allowed administrative expense
claims of professionals employed by the Debtors in their Chapter 11 cases which have not
otherwise been paid from any retainers paid to such professionals.

(e)     Cash Collateral Consents.  From and after the Effective Date, and on
condition that there are no uncured events of default hereunder, or under any of the Loan
Documents, the Debtors shall be permitted to continue to use the cash collateral of Lenders
pursuant to approved budgets through confirmation of the Plan, on the further condition that such
confirmation shall occur by no later than October 31, 2011.

(f)     No confirmation or plan injunction shall apply to Agent or Lenders in the
administration or enforcement of the Loan Documents.

1.     Successors and Assigns.  This Agreement shall be binding upon and inure to the
benefit of Agent, Lenders, L/C Issuer, Guarantors and the Debtors, and, as to their respective
successors and assigns, as may be limited or permitted by the transfer provisions of the Loan
Modification Agreement, provided, however, that neither Debtors nor Guarantors may assign
their interests in this Agreement without the prior written consent of Agent.

1.     Governing Law and Jurisdiction.  This Settlement Agreement shall be governed
by and construed in accordance with the laws of the State of California, without regard to choice
of law principles of the State of California.  The Bankruptcy Court shall retain exclusive
jurisdiction to resolve any and all disputes pertaining to this Settlement Agreement, including
without limitation the enforcement and interpretation of any of its terms, and the Parties agree to
submit to the jurisdiction of the Bankruptcy Court for the purpose of resolving such disputes.
Notwithstanding the foregoing, the Loan Documents shall be governed by and construed in
accordance with the choice of law provisions contained therein, and jurisdiction over disputes
arising under or related to the Loan Documents and not pertaining particularly to the terms of
this Settlement Agreement shall be as set forth therein.

1.     Further Assurances.  Each Party to this Settlement Agreement shall execute all
instruments and documents and take all actions as may be reasonably required, necessary or
convenient to effectuate this Settlement Agreement.

1.     Complete Agreement.  This Settlement Agreement and all exhibits attached
hereto contain the entire integrated agreement between the Parties with respect to the matters

838287.7

# EXHIBIT 4, PAGE 9

covered herein.  No variations, modifications or changes herein or hereof shall be binding upon any Party unless set forth in a writing duly executed by such Party.

1.      Modification.  This Settlement Agreement may be modified only by a writing executed by the Party to this Settlement Agreement against whom enforcement of such modification is sought.

1.      Rules Of Construction.  The Parties, including their counsel, have participated in the preparation of this Settlement Agreement, and this Settlement Agreement is the result of the joint efforts of the Parties.  This Settlement Agreement has been accepted and approved as to its final form by all Parties and upon the advice of their respective counsel.  Accordingly, any uncertainty or ambiguity existing in this Settlement Agreement shall not be interpreted against any Party as a result of the manner of the preparation of this Settlement Agreement.  Each Party to this Settlement Agreement agrees that any statute or rule of construction providing that ambiguities are to be resolved against the drafting Party shall not be employed in the interpretation of this Settlement Agreement and are hereby waived.

1.      Attorneys' Fees and Expenses.  Each Party's responsibility for attorneys' fees, court costs and related expenses by or on behalf of said Party in connection with this Settlement Agreement shall be as set forth in the Loan Modification Agreement, provided, however, that should legal action be necessary to enforce the terms of this Settlement Agreement, the party declared to be the prevailing party in such proceedings shall be entitled to recover from the non-prevailing party its reasonable attorneys' fees and costs incurred in enforcing this Settlement Agreement.

1.      Severability.  If any provision of this Settlement Agreement is disapproved by the Bankruptcy Court, such provision shall be fully severable; in such event, each Party shall have the option of approving or rejecting this Settlement Agreement as a result thereof.  In the event that any Party elects to accept the remainder of the Settlement Agreement after any provision has been so disapproved, the remaining provisions of this Settlement Agreement shall remain in full force and effect and shall not be affected by the disapproved provisions or by severance thereof from this Settlement Agreement.

3.      Counterparts.  Each Party may sign a facsimile copy of this Settlement Agreement, in counterparts, with the same effect as if each Party had signed an original of the same document, but this Settlement Agreement shall not be effective until each party for whom a signature block is provided below has executed and delivered a signature page. Within five (5) business days of the execution hereof, each party shall deliver to each other party a duplicate original signature page. The failure to make such deliveries shall not impair the enforceability hereof, but may be a ground for Agent to declare a default hereunder.

*[signatures appear on following pages]*

Dated:  August ___, 2011          TRADE UNION INTERNATIONAL, INC.
                                  a California corporation


                                  By: _____

                                  Its: _____



Dated:  August ___, 2011          DUCK HOUSE, INC.
                                  a California corporation


                                  By: _____

                                  Its: _____



Dated:  August ___, 2011          _____
                                  WEN PIN CHANG, an individual


Dated:  August ___, 2011          _____
                                  MEI LIEN CHANG, an individual


Dated:  August ___, 2011          _____
                                  WEN PIN CHANG, Trustee
                                  of The Chang Revocable Trust u/t/a September 20, 1996


Dated:  August ___, 2011          _____
                                  MEI LIEN CHANG, Trustee
                                  of The Chang Revocable Trust u/t/a September 20, 1996


                    [*signatures continue on following page*]


838287.7

# EXHIBIT 4, PAGE 11

Dated:  August ___, 2011           CATHAY BANK,
                                   a California banking corporation
                                   As Agent, Lender and L/C Issuer


                                   By:  _____
                                        Greg Badura
                                   Its:    Senior Vice President and Manager


                                   CHINATRUST CAPITAL CORPORATION,
                                   a Delaware corporation


                                   By:  _____
                                        Melvin O. Redford
                                   Its:    Executive Vice President


Approved as to form and content:

_____
James C. Bastian, Jr.
Attorney for Debtors and Guarantor


_____
Michael G. Fletcher
Attorney for Agent


_____
Gary Owen Caris
Attorney for Cathay Bank


_____
Barry Freeman
Attorney for Chinatrust


**EXHIBIT ¼, PAGE 12**

# EXHIBIT A

**EXHIBIT 4, PAGE 13**

## <u>TENTH MODIFICATION AND EXTENSION AGREEMENT</u>

This Tenth Modification and Extension Agreement ("<u>Agreement</u>") is made and entered into as of August ___, 2011, by and among TRADE UNION INTERNATIONAL INC., a California corporation ("<u>Trade Union</u>"), DUCK HOUSE, INC., a California corporation ("<u>Duck House</u>", and together with Trade Union, individually and collectively, the "<u>Borrower</u>"), WEN PIN CHANG, an individual ("<u>W. Chang</u>"), MEI LIEN CHANG, an individual ("<u>M. Chang</u>"), WEN PIN CHANG and MEI LIEN CHANG as Trustees of the CHANG REVOCABLE TRUST u/t/a September 20, 1996 (the "<u>Trust</u>", and together with W. Chang and M. Chang, individually and collectively, "<u>Guarantor</u>") on the one hand, and CATHAY BANK, a California banking corporation ("<u>Cathay</u>"), as a Lender and L/C Issuer, and as Agent ("<u>Agent</u>") for itself and CHINATRUST CAPITAL CORPORATION, a Delaware corporation, and successor in interest to ChinaTrust Bank (U.S.A.) ("<u>Chinatrust</u>"), as a Lender (together with Cathay, collectively the "<u>Lenders</u>"), on the other hand, with reference to the following facts:

### RECITALS

A.    Borrower, Agent and Lenders have entered into that certain Amended and Restated Credit Agreement dated June 29, 2007 (as amended from time to time, the "<u>Credit Agreement</u>"), pursuant to which Lenders agreed to make revolving loans, and issue or purchase letters of credit and acceptances, subject to certain sub-limits (collectively, the "<u>Original Revolving Commitment</u>").

B.    Pursuant to the Credit Agreement, and subject thereto, Borrower executed a Line A Note ("<u>Line A Note</u>") in the original maximum principal amount of $10,400,000.00 and a Line Note B in the original maximum principal amount of $3,380,000.00 (the "<u>Line B Note</u>") each in favor of Cathay (collectively, the "<u>Cathay Notes</u>"), and also executed a Line A Note in the original maximum principal amount of $5,600,000,00 and a Line B Note in the original maximum principal amount of $1,820,000.00 each in favor of Chinatrust (collectively the "<u>Chinatrust Notes</u>").   The Cathay Notes and the Chinatrust Notes are herein collectively, the "<u>Existing Notes</u>".

C.    The Obligations (as defined in the Credit Agreement) of Borrower to Lenders under the Credit Agreement are secured by, among other things, those items of property and other interests more particularly described in that certain Amended and Restated Security Agreement dated June 29, 2007 (the "<u>Security Agreement</u>"), including, without limitation, all of Borrower's present and future tangible and intangible personal property assets.

D.    In addition, the Obligations are secured by a second priority deed of trust on the real property and improvements thereon, commonly known as 4651 State Street, Montclair, California ("<u>Montclair Property</u>") and described in that certain Deed of Trust and Assignment of Rents and Leases dated January 15, 2002, executed by the Trust for the benefit of Cathay, and recorded on February 8, 2002, as Document No. 20020063955 in the Official Records of San Bernardino County, California (the "<u>Montclair Deed of Trust</u>");

E.    In order to induce Cathay to extend credit accommodations, Borrower, Guarantor, and each of them, executed and delivered to and in favor of Lenders, a Commercial Guaranty

838291.9

## EXHIBIT 4, PAGE 14

dated as of July 17, 2006 (as amended from time to time, hereafter referred to individually and collectively as the "<u>Original Guarantees</u>").

F.    The Guaranty of W. Chang and M. Chang is secured by a second priority deed of trust in the real property and improvements thereon commonly known as 2819 Crystal Ridge Drive, Diamond Bar, California ("<u>Crystal Ridge Property</u>") and described in that certain Deed of Trust dated January 10, 2003 executed by W. Chang and M. Chang, and recorded on January 27, 2003 as Document No. 03 0236445 in the Official Records of Los Angeles County, California ("<u>Crystal Ridge Deed of Trust</u>");

G.    On or about June 29, 2007, Guarantor executed and delivered to Agent an Amended and Restated Guaranty ("<u>Amended and Restated Guaranty</u>") which states that it augments the Original Guarantees.

H.    In connection with the Original Revolving Commitment, on or about July 28, 2008, Global Elite Company Overseas Limited, a company incorporated under the laws of the People's Republic of China ("<u>Global</u>"), Great Vision International Limited, a company incorporated under the laws of the People's Republic of China ("<u>Vision</u>") and Trade Union International Inc. Taipei, Taiwan, a corporation incorporated under the laws of Taiwan ("<u>International</u>") (collectively, the "<u>Subordinators</u>") each executed a Second Amended and Restated Subordination Agreement in favor of Lenders (collectively, the "<u>Subordination Agreements</u>").

I.    On or about November 14, 2007, Agent, Lenders and Borrower entered into that certain First Amendment to Amended and Restated Credit Agreement ("<u>First Amendment</u>");

J.    On or about May 14, 2008, Agent, Lenders and Borrower entered into that certain Waiver and Second Amendment to Amended and Restated Credit Agreement ("<u>Second Amendment</u>");

K.    On or about July 31, 2008, Agent, Lenders and Borrower entered into that certain Waiver and Third Amendment to Amended and Restated Credit Agreement ("<u>Third Amendment</u>") pursuant to which the Subordination Agreements were obtained;

L.    On or about October 31, 2008, Agent, Lenders and Borrower entered into that certain Fourth Amendment to Amended and Restated Credit Agreement ("<u>Fourth Amendment</u>");

M.    On or about June 2, 2009, Agent, Lenders and Borrower entered into that certain Fifth Amendment to Amended and Restated Credit Agreement ("<u>Fifth Amendment</u>");

N.    On or about July 31, 2009, Agent, Lenders and Borrower entered into that certain Sixth Amendment to Amended and Restated Credit Agreement ("<u>Sixth Amendment</u>");

O.    On or about December 31, 2009, Agent, Lenders and Borrower entered into that certain Waiver and Seventh Amendment to Amended and Restated Credit Agreement ("<u>Seventh Amendment</u>");

# EXHIBIT 4, PAGE 15

P.      On or about April 10, 2010, Agent, Lenders and Borrower entered into that certain Forbearance and Reservation of Rights Agreement ("Forbearance Agreement");

Q.      On or about May 11, 2010, Agent, Lenders and Borrower entered into that certain Extension of Forbearance Agreement ("First Extension");

R.      On or about June 30, 2010, Agent, Lenders and Borrower entered into that certain Eighth Amendment to Amended and Restated Credit Agreement ("Eighth Amendment") pursuant to which, among other things, Borrower and Agent executed a Cash Control Agreement requiring Borrower to establish lock boxes with Agent ("Cash Control Agreement");

S.      On or about August 31, 2010, Agent, Lenders and Borrower entered into that certain Ninth Amendment to Amended and Restated Credit Agreement ("Ninth Amendment");

T.      The Credit Agreement, Existing Notes, Security Agreement, Subordination Agreements, Original Guarantees, Amended and Restated Guaranty, Montclair Deed of Trust, Crystal Ridge Deed of Trust, First Amendment, Second Amendment, Third Amendment, Fourth Amendment, Fifth Amendment, Sixth Amendment, Seventh Amendment, Forbearance Agreement, First Extension, Eighth Amendment, Ninth Amendment and Cash Control Agreement, and any and all other agreements, instruments or documents executed or given to or in favor of Agent and/or Lenders in connection therewith (including, without limitation, after the effectiveness hereof, this Agreement), and all amendments, modifications, substitutions, renewals and extensions thereof shall at times hereinafter be referred to as the "Loan Documents".

U.      Borrower defaulted under the Credit Agreement and the other Loan Documents by virtue of, without limitation, each of the following (collectively, the "Existing Defaults"):

1.      Failing to pay the Obligations in full at maturity on September 30, 2010; and

2.      Instructing its customers to make payments of Accounts other than to the lockbox(es) as required under the Security Agreement and the Cash Control Agreement.

V.      On or about January 31, 2011, Borrower filed voluntary petitions in the U. S. Bankruptcy Court for the Central District of California, Riverside Division, the Honorable Deborah J. Salzman presiding (the "BK Court"), as Case No. 6:11-bk-13071-DS as to Trade Union, and Case No. 6:11-bk-13072-DS as to Duck House (collectively, the "BK Cases").

W.      Borrower and Guarantor have alleged various claims of lender liability and other theories of liability and have alleged that all or part of the Obligations may be unsecured or subordinated, including without limitation those claims as disclosed in section __ of the Disclosure Statement filed by Borrower in the BK Cases (the "Allegations"), which Allegations have been denied by Agent and Lenders.

X.      Notwithstanding the Existing Defaults, the BK Cases, and the Allegations, Borrower, Guarantor, Agent., L/C Issuer and Lenders have agreed to enter into a Settlement Agreement of even date herewith (the "Settlement Agreement") and in furtherance thereof, have

3

# EXHIBIT 4, PAGE 16

agreed to amend the Loan Documents as set forth below in this Agreement, subject to the terms, covenants, and conditions of this Agreement. The Settlement Agreement shall also be a Loan Document.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

AGREEMENT

1. <u>Definitions</u>. As used herein, the following terms shall have the following meanings:

"<u>Additional Loan Documents</u>" shall have the meaning set forth in Section 6 hereof.

"<u>Allegations</u>" shall have the meaning set forth in Recital W hereof.

"<u>Amended and Restated Guaranty</u>" shall have the meaning set forth in Recital G hereof.

"<u>Berendo Property</u>" shall have the meaning set forth in Section 8.a hereof.

"<u>BK Cases</u>" shall have the meaning set forth in Recital V hereof.

"<u>BK Compensation Amount</u>" shall have the meaning set forth in Section 8.c hereof.

"<u>BK Court</u>" shall have the meaning set forth in Recital V hereof.

"<u>Cash Control Agreement</u>" shall have the meaning set forth in Recital R hereof.

"<u>Cathay Notes</u>" shall have the meaning set forth in Recital B hereof.

"<u>Chinatrust Notes</u>" shall have the meaning set forth in Recital B hereof.

"<u>Credit Agreement</u>" shall have the meaning set forth in Recital A hereof.

"<u>Crystal Ridge Deed of Trust</u>" shall have the meaning set forth in Recital F hereof.

"<u>Crystal Ridge Property</u>" shall have the meaning set forth in Recital F hereof.

"<u>Eighth Amendment</u>" shall have the meaning set forth in Recital R hereof.

"<u>Effective Date</u>" shall mean the date that is fifteen (15) calendar days after the entry of the Order, assuming that all conditions precedent to this Agreement have been satisfied and that no appeal of the Order has been filed or lodged and no stay pending appeal of the Order shall have been granted during the fourteen (14) days following entry of the Order. The Effective Date shall occur by no later than August __, 2011, or this Agreement may be terminated by Agent.

"<u>Existing Defaults</u>" shall have the meaning set forth in Recital U hereof.

"<u>Existing Notes</u>" shall have the meaning set forth in Recital B hereof.

838291.9

4

# EXHIBIT 4, PAGE 17

"<u>Fifth Amendment</u>" shall have the meaning set forth in Recital M hereof.

"<u>First Amendment</u>" shall have the meaning set forth in Recital I hereof.

"<u>First Extension</u>" shall have the meaning set forth in Recital Q hereof.

"<u>Forbearance Agreement</u>" shall have the meaning set forth in Recital P hereof.

"<u>Foreign Affiliate</u>" shall have the meaning set forth in Section 5.b(4) hereof.

"<u>Fourth Amendment</u>" shall have the meaning set forth in Recital L hereof.

"<u>Identified Persons</u>" shall have the meaning set forth in Section 8.c hereof.

"<u>Indebtedness</u>" shall have the meaning set forth in Section 3 hereof.

"<u>Ju Rong Company</u>" shall have the meaning set forth in Section 5.b(4) hereof.

"<u>Ju Rong Land</u>" shall have the meaning set forth in Section 5.b(4) hereof.

"<u>Line A Note</u>" shall have the meaning set forth in Recital B hereof.

"<u>Line B Note</u>" shall have the meaning set forth in Recital B hereof.

"<u>Loan Documents</u>"  shall have the meaning set forth in Recital T hereof.

"<u>Montclair Deed of Trust</u>" shall have the meaning set forth in Recital D hereof.

"<u>Montclair Property</u>" shall have the meaning set forth in Recital D hereof.

"<u>Net Proceeds</u>" shall have the meaning set forth in Section 8.a hereof.

"<u>New Notes</u>" shall have the meaning set forth in Section 6.a hereof.

"<u>New Revolving Commitment</u>" shall have the meaning set forth in Section 5.a hereof.

"<u>New Revolving Note</u>" shall have the meaning set forth in Section 5.a  hereof.

"<u>New Secured Guaranties</u>" shall have the meaning set forth in Section 6.d hereof.

"<u>New Term Notes</u>" shall have the meaning set forth in Section 6.a hereof.

"<u>Ninth Amendment</u>" shall have the meaning set forth in Recital S hereof.

"<u>Obligations</u>"  shall have the meaning set forth in the Credit Agreement.

"<u>Order</u>" shall have the meaning set forth in Section 6.l hereof.

"<u>Original Guarantees</u>" shall have the meaning set forth in Recital E hereof.

# EXHIBIT 4, PAGE 18

"Original Revolving Commitment" shall have the meaning set forth in Recital A hereof.

"Other Obligations" shall have the meaning set forth in Section 11 hereof.

"Profitability Benchmark" shall have the meaning set forth in Section 8.c hereof.

"Second Amended and Restated Unsecured Guaranty" shall have the meaning set forth in Section 5.d hereof.

"Second Amendment" shall have the meaning set forth in Recital J hereof.

"Security Agreement" shall have meaning set forth in Recital C hereof.

"Settlement Agreement" shall have the meaning set forth in Recital X hereof.

"Seventh Amendment" shall have the meaning set forth in Recital O hereof.

"Sixth Amendment" shall have the meaning set forth in Recital N hereof.

"Subordination Agreements" shall have the meaning set forth in Recital H hereof.

"Subordinators" shall have the meaning set forth in Recital H hereof.

"Term Loan A" shall have the meaning set forth in Section 5.b(1) hereof.

"Term Loan B" shall have the meaning set forth in Section 5.b(2) hereof.

"Term Loan C" shall have the meaning set forth in Section 5.b(3) hereof.

"Term Note A" shall have the meaning set forth in Section 5.b(1) hereof.

"Term Note B" shall have the meaning set forth in Section 5.b(2) hereof.

"Term Note C" shall have the meaning set forth in Section 5.b(3) hereof.

"Third Amendment" shall have the meaning set forth in Recital K hereof.

2.    Recitals.  The foregoing Recitals are incorporated herein by this reference as are all exhibits and schedules, and the parties agree that the information set forth in the Recitals is true and correct.  Except as specified herein, all of the terms and conditions of the Credit Agreement and the other Loan Documents, and each of them, shall remain in full force and effect.  In the event of any conflict or inconsistency between the terms, conditions and provisions of this Agreement and the Loan Documents, the terms, conditions and provisions of this Agreement shall prevail.  Any capitalized term not defined herein shall have the meaning ascribed to it in the Credit Agreement.

3.    Acknowledgment.  Borrower and Guarantor, and each of them, acknowledge that as of July 15, 2011 the aggregate principal balance of Borrower's Obligations outstanding to Lenders under the Loan Documents is $11,292,462.27, plus accrued and unpaid interest, and

# EXHIBIT 4, PAGE 19

unreimbursed attorneys' fees, costs, and expenses, all as detailed on <u>Schedule One</u> annexed hereto and incorporated herein by this reference.  Interest, fees, costs, and expenses continue to accrue from and after July 15, 2011, until Lenders are paid in full.  The indebtedness specified in this Section 3, together with any additional principal, interest and other amounts that accrue or otherwise become owing from and after July 15, 2011, under the Loan Documents, shall at times hereinafter be referred to as the "<u>Indebtedness.</u>"

4.      <u>Reaffirmation of Loan Documents</u>.  This Agreement is, in part, a reaffirmation of the obligations of Borrower and Guarantor, and each of them, to Lenders under the Loan Documents and is not to be construed as a release or modification of any of the terms, conditions, warranties, waivers, or other rights set forth in any of the Loan Documents, except as expressly provided herein.  Borrower and Guarantor, and each of them, acknowledge, confirm, restate, and reaffirm all of the terms, covenants, and conditions of the Loan Documents. Borrower and Guarantor, and each of them, specifically acknowledge, admit, confirm and agree that Borrower is currently in default under the Loan Documents according to their terms.  Based on the terms and provisions hereof, and of the Settlement Agreement, on the Effective Date Borrower and Guarantor, and each of them, specifically acknowledge, admit, confirm, and agree that they do not have any valid offset or defense to the Indebtedness or to any of the other obligations evidenced by the Loan Documents, nor do they have any valid claim or claims against Agent or Lenders.  Therefore, Borrower and Guarantor, and each of them, acknowledge, admit, confirm, and agree that they do not have any legal right or theory on which to invoke or obtain legal or equitable relief, whether injunctive relief or otherwise, in order to abate, postpone, or terminate enforcement by Agent or Lenders of any of their  rights, interests, and remedies under Loan Documents, at law or in equity.   Borrower and Guarantor, and each of them, specifically, expressly and forever waive and relinquish any such right to legal or equitable relief to cause any such abatement, postponement or termination of enforcement proceedings. Borrower and Guarantors, and each of them, acknowledge, admit, confirm, and agree that Agent and Lenders have a legal right to exercise and enforce all of the rights and remedies of a creditor at law or in equity. Borrower and Guarantor agree and acknowledge that this Agreement and the Settlement Agreement are a consensual restructure of their respective pre-petition obligations owing to Agent and Lenders and that the pre-petition payments of principal and interest are being restructured in this Agreement and the Settlement Agreement.

5.      <u>Modification of Loan Documents</u>.

a.      <u>Revolving Commitment Reduction; Conversion to ABL</u>.  Effective upon the date of this Agreement, the aggregate maximum principal amount of Lenders' Original Revolving Commitment shall be reduced to Five Million and no/100 dollars ($5,000,000.00) ("<u>New Revolving Commitment</u>").   Effective upon the date of this Agreement, any and all advances under the New Revolving Commitment will be disbursed and otherwise administered in accordance with, and subject to, the terms of the Credit Agreement and the other Loan Documents, as the same are modified by this Agreement and Annex A hereto.  Borrower shall execute and deliver to Agent a new Revolving Note in the form of <u>Exhibit "A"</u> annexed hereto (the "<u>New Revolving Note</u>"), which shall be subject to, among other things, a borrowing base, and a sublimit of up to $1,000,00.00 for letters of credit and acceptances, all as set forth in Annex A.  The New Revolving Note shall amend, restate, supersede and replace the existing Line A Notes and Line B Notes issued by Borrower to the Lenders and shall have a maturity date

EXHIBIT 4, PAGE 20

of, and be due and payable in full on, the first day of the month following the third (3rd) anniversary date of the Effective Date.  The New Revolving Note shall per interest at a per annum rate equal to one and three-quarters percent (1.75%) over the Wall Street Journal Prime Rate but in no event shall the interest rate be less than five percent (5%) nor more than nine percent (9%) per annum.

      b.    <u>Conversion to Term Loans</u>.  The Indebtedness, less the New Revolving Commitment, shall, concurrently with the effectiveness of this Agreement, be converted to three (3) term loans, as follows:

      (1)    One Million Three Hundred Seventy Thousand and No/100 Dollars ($1,370,000.00) in principal of Indebtedness shall be converted to a new term loan ("<u>Term Loan A</u>") and shall be required to be repaid by Borrower in monthly payments of interest only, and in full on the first day of the month following the third (3rd) anniversary of the Effective Date.  Borrower shall execute and deliver to Agent for the benefit of Lenders, a Term Note A in the form of <u>Exhibit "B"</u> hereto to evidence Term Loan A ("<u>Term Note A</u>").  Term Note A shall bear interest at a fixed rate per annum equal to five percent (5.00%).

      (2)    One Million Six Hundred Twenty Thousand and No/100 Dollars ($1,620,000.00) in principal of Indebtedness shall be converted to second term loan ("<u>Term Loan B</u>"), and shall be required to be repaid by Borrower in monthly payments of interest only, and in full on the first day of the month following the third (3rd) anniversary of the Effective Date. Borrower shall execute and deliver to Agent for the benefit of Lenders a Term Note B in the form of <u>Exhibit "C"</u> hereto to evidence Term Loan B ("<u>Term Note B</u>").  Term Note B shall bear interest at a per annum rate equal to five percent (5.00%).

      (3)    Five Million Nine Hundred Thousand and no/100 Dollars ($5,900,000.00) in principal of Indebtedness shall be converted to a third term loan ("<u>Term Loan C</u>"), which shall be repaid by Borrower in accordance with the terms of a new term note, payable to Agent for the benefit of Lenders, in the form of <u>Exhibit "D"</u> hereto ("<u>Term Note C</u>").  Term Note C shall bear interest at a fixed rate equal to five percent per annum (5.00%), and provide for monthly payments of interest, plus a separate mandatory principal payment in the approximate amount of $1,500,000.00 on or before March 31, 2012 ("<u>Mandatory Term Note C Principal Reduction</u>"), conditioned upon Borrower's actual receipt of such payment from the purchaser ("<u>Nantong Purchaser</u>") under the Nantong Stock Purchase Agreement ("<u>Stock Purchase Agreement</u>"). The amount of the Mandatory Term Note C Principal Reduction payment is stated as being approximate in that it shall be based on the actual exchange rate for Chinese RMB to U.S. dollars in existence on the date of Borrower's receipt of the payment by the Nantong Purchaser of the Mandatory Term Note C Principal Reductions payment under the Nantong Stock Purchase Agreement. The requirement to make the Mandatory Term Note C Principal Reduction payment shall be in addition to any other payments referenced herein.  Term Note C shall mature on, and any unpaid amounts thereunder shall be all due and payable in full on,  the first day of the month following the third (3rd) anniversary of the Effective Date. Debtors shall file a motion to obtain BK Court approval of the Stock Purchase Agreement with relief requested consistent with the provisions of this Agreement, which motion may be heard by the BK Court on a shortened time basis, and shall not be opposed by Agent or Lenders so long as (i) this Agreement is approved concurrently therewith as a compromise and as post-petition financing and (ii) Agent and Lenders receive such executed pledge agreements and related documentation,

# EXHIBIT 4, PAGE 21

in form and substance satisfactory to Agent, Lenders and their respective counsel as Agent and Lenders may require.

(4)    All of the Indebtedness shall be secured by (x) the personal property described in the Security Agreement; and (y) a pledge of thirty percent (30%) of the issued and outstanding shares of Nantong Trade Union Aluminum Company, aka Mao Lien Aluminum, a _____, and Nantong Trade Union Chrome Plating Company, a _____ ("Foreign Affiliate"), documented in accordance with the laws of the State of California and the People's Republic of China and an assignment of all rights, title, and interest in the Stock Purchase Agreement between Trade Union and Ya Huey Kuo, which may be enforced directly by Agent in the event of any defaults thereunder; and (y) a pledge of one hundred percent (100%) of the issued and outstanding shares of Ju Rong Trade Union Auto Parts Co., Ltd., a _____ ("Ju Rong Company") and the approximately 20 acres of vacant land in Ju Rong, Jiang Su Province, China ("Ju Rong Land") owned by the Ju Rong Company, documented in accordance with the laws of the State of California and the People's Republic of China; provided, however, that Agent is satisfied with the value of such shares; and further subject to Agent obtaining, in its discretion, an opinion of reputable legal counsel licensed in the People's Republic of China as to the enforceability and validity of such pledge and liens and that all actions necessary for Agent to obtain a valid, perfected, and enforceable security interest in such shares have been taken.  Agent and Lenders may elect, in their sole discretion, to close the transactions contemplated by this Agreement and the Settlement Agreement without having obtained the stock pledges contemplated above due to delay, or any other reason;  provided, however, that Agent and Lenders may require the execution and delivery of such stock pledges as a post-closing condition subsequent to the effectiveness of this Agreement.  Lenders hereby acknowledge and agree that Lenders' delay and/or inability to perfect any lien on the real and personal property described in this Section 5.b(4) shall not constitute an Event of Default under this Agreement or the Loan Documents, provided Lenders' dinability to perfect is not caused by an act, or failure to act, on the part of Borrower and Guarantor, or either of them.

(5)    As an inducement to Agent and Lenders to enter into this Agreement, each Guarantor hereby (i) consents to this Agreement, Annex A hereto, and each and every term, covenant, and condition hereof or thereof and (ii) confirms that any and all obligations of Borrower to Guarantor, and each of them, shall remain subordinate and subject to, and of lesser priority than, any and all Indebtedness and any other obligations of Borrower to Lenders, as the same may be modified by this Agreement, Annex A hereto and/or any Additional Loan Documents (as herein defined).

c.    Restrictions on Investments.  Section 7.02 of the Credit Agreement is hereby amended in full to read as follows:

"7.02  Investments.  Make any Investments without the prior written consent of the Lenders."

d.    Amendment and Restatement of Existing Guaranties.  Each of the Original Guarantees, and the Amended and Restated Guaranty, executed by the Trust and by W. Chang and M. Chang, shall be amended and restated in their respective entireties, in the form of Exhibit "E" annexed hereto (the "Second Amended and Restated Unsecured Guaranty").  The

# EXHIBIT 4, PAGE 22

Second Amended and Restated Unsecured Guaranty shall be unsecured, and shall be in addition to, and not in lieu of, the New Secured Guaranties described in Section 6.d hereof.

      e.    <u>Modification of the Montclair Deed of Trust</u>.  The Montclair Deed of Trust is hereby modified as follows:

      1.    The description of the obligations secured by the Montclair Deed of Trust, appearing on page one of the Montclair Deed of Trust, is hereby amended in full to read as follows:

      "THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PERFORMANCE OF A GUARANTY DATED AUGUST __, 2011 FROM TRUSTOR TO LENDER AND DOES NOT DIRECTLY SECURE THE OBLIGATIONS DUE LENDER UNDER THE NOTE, AND (B) PERFORMANCE OF ALL OBLIGATIONS UNDER THE DEED OF TRUST.  THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:"

      2.    The definition of "Note" is hereby amended in full to read as follows:

      "Note.  The word 'Note' means that  certain Term Note A in the original principal amount of $1,370,000.00 and that certain Term Note B in the original principal amount of $1,620,000.00, each dated August __, 2011 and executed by Borrower, together with all renewals, extensions, modifications refinancings and substitutions of the Note."

      f.    <u>Modification of the Crystal Ridge Deed of Trust</u>.  The Crystal Ridge Deed of Trust is hereby modified as follows:

      1.    The description of the obligations secured by the Crystal Ridge Deed of Trust, appearing at the bottom of page one of the Crystal Ridge Deed of Trust is hereby amended by deleting clause (B) therefrom.

      2.    The definition of "Note" is hereby amended in full to read as follows:

      "Note.  The word 'Note' means that  certain Term Note A in the original principal amount of $1,370,000.00, and that certain Term Note B in the original principal amount of $1,620,000.00, each dated August __, 2011 and executed by Borrower, together with all renewals, extensions, modifications refinancings and substitutions of the Note."

      5.    <u>Conditions Precedent</u>.  Any and all obligations of Agent and Lenders hereunder are subject to the full and timely satisfaction of each of the following express and continuing conditions, to the satisfaction of Agent in the exercise of its sole and absolute opinion and judgment:

**EXHIBIT 4, PAGE 23**

a.      Borrower shall execute to and in favor of Agent the New Revolving Note, Term Note A, Term Note B and Term Note C, each in form and content identical to that attached hereto as <u>Exhibits "A"</u>, <u>"B"</u>, <u>"C"</u> and <u>"D"</u>, respectively, and deliver the same to Agent concurrently herewith (Term Note A, Term Note B and Term Note C are herein collectively the "<u>New Term Notes</u>", and the New Term Notes together with the New Revolving Note are herein collectively, the "<u>New Notes</u>").

b.      Borrower shall pay to Agent for the benefit of Lenders the sum of Two Million Four Hundred Twenty Seven Thousand and no/100 Dollars ($2,427,000.00) in immediately available good funds, which shall be applied to the Indebtedness, as determined by Lenders, in their sole discretion and judgment.

c.      Guarantor shall execute and deliver to Agent, for the benefit of Agent, L/C Issuer and Lenders, the Second Amended and Restated Unsecured Guaranty.

d.      Each Guarantor shall execute and deliver to Agent, for the benefit of Agent, L/C Issuer and Lenders, new guaranties of Term Note A and Term Note B, which guaranties shall be secured by the existing Montclair Deed of Trust and the Crystal Ridge Deed of Trust, respectively, as modified herein (the "<u>New Secured Guaranties</u>"). The New Secured Guaranties shall be in the form of <u>Exhibits "F-1"</u> and <u>"F-2"</u> annexed hereto.

e.      Pledge agreements pursuant to which the Guarantors shall pledge their interest in the entity described in Section 5 b(4) hereof, together with stock powers executed in blank, the original stock certificates (if in certificated form), and, in Agent's discretion, an opinion of legal counsel licensed to practice in California and an opinion of reputable legal counsel licensed in the People's Republic of China confirming that the pledges of such stock are valid and enforceable, and such other documents relating to the pledges as Agent, or Agent's counsel may require.

f.      Borrower shall furnish to Agent one or more agreements duly executed by the Subordinators, reaffirming the subordinate nature of the obligations of Borrower to such Subordinator, and evidencing such Subordinator's consent to the extension and modifications contained herein, which reaffirmation and consent shall be in form and content satisfactory to Agent, in its sole opinion and judgment.

g.      Borrower shall pay all interest accrued on the Loans (together with payments of outstanding principal, if applicable), pursuant to and in accordance with the Term Note A, Term Note B, Term Note C and the New Revolving Note.

h.      A Memorandum of Modification executed by the Trust with respect to the Montclair Property, in the form of <u>Exhibit "G"</u> annexed hereto, and a Memorandum of Modification executed by W. Chang and M. Chang with respect to the Crystal Ridge Property, in the form of <u>Exhibit "H"</u> annexed hereto, referencing the modifications to the Montclair Deed of Trust and the Crystal Ridge Deed of Trust, respectively, made in Sections 5. e and f hereof.

i.      At Borrower's or Guarantor's expense, such new policies or endorsements to Lenders' policy of title insurance insuring the lien(s) of the Montclair Deed of Trust, the Crystal Ridge Deed of Trust, which endorsements will provide, in substance, that the priority of

# EXHIBIT 4, PAGE 24

such Deeds of Trust are unaffected by this Agreement, and such other endorsements as Agent deems appropriate, in its sole and absolute opinion and judgment;

    j.  Borrower shall pay to Agent all of amounts owed under the provisions of Section 14.h(1), which amounts shall be added to the principal balance of Term Loan C and Term Note C;

    k.  Borrower and/or Guarantor shall, prior to the execution of this Agreement have provided Agent such resolutions and/or other authorizations of Borrower and/or Guarantor and/or their authorized officers, managers, members or partners, as applicable, evidencing approval and authorization of the transactions contemplated hereunder and the documents and instruments to be executed by Borrower in connection herewith, including, without limitation, (1) a Trust Certificate for the Trust, and (2) such documents and agreements to establish, maintain and administer the Dominion Account (as defined in Annex A) as Agent may require.

    l.  The United States Bankruptcy Court in the BK Cases shall have entered its order ("Order"), which Order shall be in a form and substance satisfactory to Agent and Lenders in the exercise of their sole opinion and judgment, approving this Agreement and the companion Settlement Agreement as compromises of controversies and as cash collateral agreements under 11 U.S.C. Section 363, and Federal Rules of Bankruptcy Procedure 4001 and 9019, and fourteen (14) days shall have elapsed since the entry of the Order without it being subject of a stay pending appeal.  Borrower shall immediately file their motions for approval of this Agreement and the Settlement Agreement and to modify the existing cash collateral orders.

    m.  In addition to the opinions described in Section 5.b (4), such opinion(s) of counsel as Agent may require, in form and substance reasonably satisfactory to Agent.

    n.  A reaffirmation of the Subordination Agreements referenced in Recital H.

    o.  Guarantor shall have delivered to Agent and Lenders: (i) current (i.e., no more than 6 months old) personal financial statements and (ii) signed federal income tax returns (including all schedules and attachments thereto) for the two (2) prior tax years.  If Guarantor has obtained an extension for filing either or both such tax years, Guarantor shall provide copies of such extension(s).

    p.  Borrower shall execute and deliver to Agent Annex A attached hereto and shall initial each page thereof.

The documents described in subsections a, c, d, e, f, h, k, n and p are herein the "Additional Loan Documents".  Upon the effectiveness of this Agreement, the Additional Loan Documents and the Loan Documents shall collectively be the "Loan Documents".

  6.  <u>Representations and Warranties</u>.  Borrower and Guarantor, and each of them, represent and warrant to Agent and Lenders, and acknowledge that Agent and Lenders are relying thereon, as follows:

    a.  This Agreement constitutes legal, valid, and binding obligations of Borrower and Guarantor, and each of them, to Lenders;

838291.9

12

b.      Except for the BK Cases, there are no actions, suits, or proceedings pending or, to the knowledge of Borrower or Guarantor, threatened against or affecting Borrower and Guarantor, in relation to their obligations to Lenders, or involving the validity or enforceability of this Agreement, the Loan Documents, the ability of any of them to perform their obligations to Lenders under the Loan Documents or this Agreement or the priority of any liens thereof, at law or in equity, or before or by any governmental entity;

c.      This Agreement and the releases contained herein are intended to be final and binding among the parties hereto, and Agent and Lenders may expressly rely on the finality of this Agreement as a substantial, material factor inducing that party's execution of this Agreement;

d.      Except as acknowledged by Borrower or Guarantor herein, no event has occurred or is continuing that constitutes a default of this Agreement or a further default under the Loan Documents or that would constitute a default but for the requirement that notice be given or time elapse, or both;

e.      Each Borrower is a California corporation, in good standing and duly organized and existing under the laws of the State of California.  Each person executing this Agreement and the documents and instruments executed in connection with the Agreement in a representative capacity has been duly authorized to execute said documents and instruments by all appropriate action and is empowered to do so;

f.      Agent's and Lenders' liens upon and security interests in all of the security for the obligations evidenced by the Loan Documents are valid, perfected and are not subject to avoidance, elimination or reduction in any manner whatsoever;

g.      All of the obligations under the Loan Documents were, are, and shall remain secured by all of the Borrower' personal property, which such liens are valid and perfected, including, without limitation, all such security interests as created, modified or amended herein or by any of the Additional Loan Documents; and

h.      The representations, warranties and agreements set forth herein shall be cumulative and in addition to any and all other representations, warranties and agreements which Borrower or Guarantor gives or causes to be given to Agent and Lenders, either now or hereafter.

7.      <u>Additional Covenants</u>.

a.      <u>Sale of Berendo Property</u>.  Guarantor agrees that by December 31, 2011, (i) Guarantor shall sell the real property located at 684 and 690 S. Berendo Street, Los Angeles, California (collectively, the "<u>Berendo Property</u>") and (ii) Guarantor shall pay over to Agent for the benefit of Lenders, the Net Proceeds of the sale of and hereby irrevocably assigns all Net Proceeds to Agent of the benefit of Lenders, to be applied to reduce the balance of Term Note C (in addition to any other payments to be made to reduce the amounts owed under such obligation).  As used herein, "<u>Net Proceeds</u>" shall mean the gross sales price less normal and customary closing costs including commissions, property taxes and deeds of trust to third party lenders existing as of the date of this Agreement (but in no event shall any commission be paid to the Guarantor or any affiliate or relative of any Guarantor).  Upon Agent's request, Guarantor

# EXHIBIT 4, PAGE 26

shall execute and deliver such instructions into any escrow opened in connection with the sale of the Berendo Property to ensure that the Net Proceeds shall be paid directly to Agent and such other documents as may be necessary to effectuate such payment to Agent.  The Net Proceeds shall be applied to the Indebtedness, as determined by Agent, in its sole discretion and judgment.

        b.      <u>Existing Financial Covenants</u>.  It is further agreed that the financial covenants contained in Section 6.12 of the Credit Agreement shall be of no force and effect.

        c.      <u>Salaries and Benefits</u>.  Borrower covenants and agrees that they and any and all affiliated companies and other entities shall not pay salaries (including benefits) or any other form of compensation, whether in the form of distributions, bonuses or otherwise, in excess of the amount of insider compensation previously approved by the BK Court (the "<u>BK Compensation Amount</u>") per annum in the aggregate for the following directors, shareholders, employees, officers and the members of their respective families: Guarantor (collectively, the "<u>Identified Persons</u>");  <u>provided</u>, <u>however</u>, that the annual compensation for Guarantors and their two (2) children employed by Borrower may be increased by the aggregate sum of $70,000.00 per fiscal year for the prior fiscal year, when and if the Borrower's net profit before taxes resulting from operations exceeds the sum of $150,000.000 on a fiscal year end basis, calculated in accordance with accrual accounting methods under GAAP ("<u>Profitability Benchmark</u>").  Agent and Lenders agree that following any year in which the Profitability Benchmark is achieved, Agent and Lenders will consider increasing the BK Compensation Amount, but any such increase shall be in Agent's and Lenders' sole and absolute discretion.  It is agreed that in calculating the Profitability Benchmark, only net profits before taxes that are derived from Borrower's operations may be included, and the proceeds of extraordinary events shall not be included.

        d.      <u>No Payment of Excess Compensation or Personal Expenses</u>.  Borrower covenants and agrees that no compensation in excess of the amount  set forth above shall be paid to the Identified Persons and further agrees and covenants that Borrower shall not pay or reimburse any personal or household expenses of any Identified Persons, including without limitation any amounts paid or loaned by Identified Persons previously with regard to the BK Cases.

        8.      <u>This Agreement One of the Loan Documents</u>.  From and after the Effective Date, this Agreement, the New Revolving Note, the New Term Notes, and any other documents and instruments executed in connection herewith shall each constitute one of the "Loan Documents."

        9.      <u>No Further Commitments; Assumption of Risks</u>.  Borrower and Guarantor, and each of them, agree and acknowledge that, except as expressly set forth herein,  Lenders have no obligation to advance, provide or loan any further or additional monies or credit to Borrower and Guarantor, or any of them, in excess of the amounts set forth in the New Term Notes and New Revolving Note, or to increase such amounts for any reason, or to extend the respective maturity dates thereof.  Borrower and Guarantor, and each of them, further agree and acknowledge that Lenders have no obligation to further extend the time for payment of any obligations owing to or arising in favor of Lenders by Borrower and Guarantor, and each of them, under the Loan Documents.  Borrower and Guarantor acknowledge and assume the risk that no further extensions, modifications, concessions or other indulgences will be made or granted by Agent or Lenders.

838291.9

14

**EXHIBIT 4, PAGE 27**

10.    <u>Cross-default</u>.

a.    Borrower and Guarantor each agree that the following shall be deemed an "<u>Event of Default</u>" under the Loan Documents, as amended hereby:

(i)    Failure of Borrower or Guarantor, or any of them, to pay when due any payment required to be paid pursuant to this Agreement, the Loan Documents, or the Additional Loan Documents or any other document or agreement between Agent or any Lender and Borrower or Guarantor, regardless of whether relating to the credit facilities described herein (collectively, the "<u>Other Obligations</u>");  and/or

(ii)    Any failure or default by Borrower or Guarantor, or any of them, in the performance of any term, condition, covenant, or agreement contained in this Agreement, the Loan Documents, any Additional Loan Document or the Other Obligations; and/or

(iii)    Any default under the Settlement Agreement.

b.    Upon the occurrence of any Event of Default, Borrower shall have five (5) business days from the date of a written notice by Agent to Borrower of the existence thereof to cure such Event of Default before Agent or Lenders exercise any rights or remedies; <u>provided, however</u>, that any and all sweeps and/or applications of funds from any all accounts shall continue to occur during such periods, and Agent and Lenders shall be under no obligation to advance any funds under the Revolving Loan during such periods in the event of any default in any obligation to make any payment.

c.    In addition to each and every other remedy available to Agent under Loan Documents and pursuant to applicable law, if an Event of Default exists, Agent may in its discretion do any one or more of the following from time to time:

(i)    declare any Obligations immediately due and payable, whereupon they shall be due and payable without diligence, presentment, demand, protest or notice of any kind, all of which are hereby waived by Borrowers to the fullest extent permitted by law;

(ii)    terminate, reduce, or condition any Commitment, and/or make any adjustment to the Borrowing Base; and

(iii)    require Borrower to Cash Collateralize LC Obligations and other Obligations that are contingent or not yet due and payable, and, if Borrower fails promptly to deposit such Cash Collateral, Agent may (but is not obligated to) advance the required Cash Collateral as Revolving Loans (whether or not an Overadvance exists or is created thereby, or the conditions in Section 3 are satisfied).

11.    <u>No Joint Venture, Management and Control</u>.  Notwithstanding any provision of this Agreement, any Additional Loan Documents, and/or of any of the Loan Documents:

a.    Lenders and Agent are not and shall not be construed to be a partner, joint venturer, alter ego, manager, controlling person or other business associate or participant of any kind of Borrower and Guarantor, or any of them, or any other person;

# EXHIBIT 4, PAGE 28

b.      Lenders and Agent shall not be deemed responsible to perform or participate in any acts, omissions, or decisions of Borrower and Guarantor, or any of them; and

c.      With respect to the Allegations, Borrower and Guarantor, and each of them, agree and acknowledge that any and all such claims arising from, in connection with or relating to the Allegations shall, in accordance with Section 13, be released upon the execution of this Agreement.

12.      Release of Lenders, Agent and L/C Issuer.  Borrower and Guarantor, and each of them, hereby confirm and reaffirm the releases set forth in Section 5 of the Settlement Agreement of even date herewith.

13.      Miscellaneous.

a.      This Agreement is not a novation, nor is it to be construed as a release or modification of any of the terms, conditions, warranties, waivers, or rights set forth in the Loan Documents, except as set forth herein.

b.      The execution and delivery by Borrower and Guarantor of this Agreement and the performance by Borrower and Guarantor of all of their obligations hereunder and thereunder have been duly authorized by all necessary action and do not and will not:

(1)      Require any consent or approval not heretofore obtained of any other person holding any interest or entitled to receive any interest issued or to be issued by Borrower, or otherwise (other than such approvals as are required by the Court in the BK Cases);

(2)      Result in or require the creation or imposition of any mortgage, deed of trust, pledge, lien, security interest, claim, charge, right of others or any encumbrance of any nature (other than under this Agreement or the Loan Documents) upon or with respect to any property now owned or leased or hereafter acquired by Borrower or Guarantor;

(3)      Violate any provision of any laws, or of any order, writ, judgment, injunction, decree, determination or award; and

(4)      Result in a breach of or constitute a default under, cause or permit the acceleration of any obligation owed under, or require any consent under any indenture or loan or credit agreement or any other agreement, lease or instrument to which Borrower or Guarantor are a party or by which any of their property is bound or affected.

c.      Borrower and Guarantor, and each of them, further represent and warrant as follows:

(1)      They have received independent legal advice from attorneys of each of their choice with respect to the advisability of executing this Agreement and prior to the execution of this Agreement by Borrower and Guarantor, their attorneys reviewed this Agreement and discussed the Agreement with them and have made all desired changes;

(2)    Except as expressly stated in this Agreement, neither the Lenders nor the Agent, nor any other person or entity, has made any statement or representation to Borrower or Guarantor regarding facts relied upon by any of them;

(3)    Borrower and Guarantor, and each of them, do not rely upon any statement, representation or promise of Lenders and/or Agent or any other person or entity in executing this Agreement except as expressly stated in this Agreement;

(4)    The terms of this Agreement are contractual and not a mere recital;

(5)    This Agreement has been carefully read by, the contents hereof are known and understood by, and it is signed freely by Borrower and Guarantor, and each of them; and

(6)    This Agreement and the releases contained herein are intended to be final and binding against Borrower and Guarantor, and each of them, and each of them acknowledge that Lenders and Agent are expressly relying on the finality of this Agreement as a substantial, material factor inducing Lenders' execution of this Agreement.  Borrower and Guarantor, and each of them, have the full right and authority to enter into this Agreement, and (i) the officer, agent or other representative executing this Agreement on behalf of Borrower has the full right and authority to fully commit and bind Borrower to this Agreement, and (ii) the officer, trustee, agent or other representative executing this Agreement on behalf of Guarantor has the full right and authority to fully commit and bind Guarantor to this Agreement.

d.    Survival of Warranties.  All agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement.

e.    Failure or Indulgence Not Waiver.  No failure or delay on the part of Agent and/or Lenders in the exercise of any right, power, or privilege hereunder or under the documents or instruments referred to herein shall operate as a waiver thereof, and no single or partial exercise of any such power, right, or privilege shall preclude a further exercise of any right, power, or privilege.

f.    Applicable Law.  This Agreement, any Additional Loan Documents, the Loan Documents and the rights and obligations of the parties hereto shall be governed by and construed in accordance with the laws of the State of California.  Borrower and Guarantor, and each of them, hereby submit to the jurisdiction of the courts of Los Angeles County, California, whether state or federal.

g.    Assignability.  This Agreement shall be binding upon and inure to the benefit of Lenders, Agent, L/C Issuer, Borrower and Guarantor and their respective successors and assigns, except that Borrower's and Guarantor's rights hereunder are not assignable without the prior written consent of Lenders, which consent Lenders may give or withhold in their sole and absolute opinion and judgment.

h.    Expenses and Fees.

# EXHIBIT 4, PAGE 30

       (1)     Borrower and Guarantor, and each of them, shall reimburse Agent, L/C Issuer and/or Lenders for any and all fees, costs and expenses incurred by Agent, L/C Issuer and/or Lenders, including, but not limited to attorneys' fees, in connection with the negotiation, preparation and administration of this Agreement and any Additional Loan Documents as hereinbefore provided for in this Agreement, by adding the amounts thereof to the principal balance of Term Loan C and Term Note C.

       (2)     In the event that Agent, L/C Issuer and/or Lenders employ attorneys to remedy, prevent, or obtain relief from a breach or default of this Agreement, any of the Additional Loan Documents, or any of the Loan Documents, arising out of a breach or default of this Agreement, any of the Additional Loan Documents, or any of the Loan Documents, or in connection with or contesting the validity of this Agreement, any of the Additional Loan Documents, any of the Loan Documents, any of the terms, covenants, provisions, and all conditions hereof or thereof, or any of the matters referred to herein or therein or in connection with any Bankruptcy or Judicial Action, Agent, L/C Issuer and/or Lenders shall be entitled to be reimbursed by Borrower and Guarantor for all of their attorneys' fees, whether or not suit is filed and including, without limitation, those incurred in each and every action, suit, or proceeding, including any and all appeals and petitions therefrom and all fees and costs incurred by Agent, L/C Issuer and/or Lenders.

       i.     <u>Modifications and Amendments</u>.  This Agreement may be modified or amended only by written agreement duly executed by the parties to this Agreement.

       j.     <u>Integration</u>.  This Agreement, the Loan Documents, and any Additional Loan Documents constitute a single, integrated written contract expressing the entire agreement of the parties hereto relative to the subject matter hereof.  No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any party hereto with respect to the subject matter hereof, except as specifically set forth in this Agreement and the Additional Loan Documents.

       k.     <u>Severability</u>.  If any provision of this Agreement is found to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Agreement, such provisions shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision never comprised a part of this Agreement; and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by severance from this Agreement.

       l.     <u>Acknowledgment of Waiver</u>.  The parties represent and warrant that all of the waivers, warranties, and promises set forth in this Agreement are made after an opportunity to consult with legal counsel of their choosing and with an understanding of their significance and consequence and that they are reasonable.

       m.     <u>Time of Essence</u>.  The parties hereto expressly acknowledge and agree that time is of the essence including, without limitation, all deadlines and time periods provided for under this Agreement.

# EXHIBIT 4, PAGE 31

n.   <u>Execution in Counterpart</u>.  This Agreement may be executed and delivered in two or more counterparts, each of which when so executed and delivered, shall be either an original, or a copy of the original signature transmitted via facsimile, and such counterparts together shall constitute but one and the same instrument and agreement, and the Agreement shall not be binding on any party until all parties have executed it.  Copies of the original signatures on this Agreement which are transmitted via facsimile shall have the same force and legal effect as original signatures, and a facsimile signature shall be accepted by all parties as an original signature.  Original signatures shall be provided following submission of fax signatures, but the failure to do so shall not impact on the effectiveness of this Agreement.

o.   <u>Conflict</u>.  To the extent that any term, provision or condition of the Credit Agreement, the New Notes, and/or any of the other Loan Documents conflict with this Agreement or the New Notes, the term, provision or condition of this Agreement and the New Notes shall control.

p.   <u>Notices</u>.  Any notice required to be given hereunder shall be given at the address set forth across from the signature of each party hereto.  Any notice given by U.S. mail shall be deemed given no earlier than five (5) business days after placed in the U.S. mail and properly addressed with postage fully prepaid; any notice given by messenger or hand delivery, upon delivery; and any notice by overnight mail service such as FedEx, upon delivery.  Each party to this Agreement agrees to keep every other party advised as to such party's current address.

14.   <u>WAIVER OF RIGHT TO TRIAL BY JURY; JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY</u>.  EACH PARTY TO THIS AGREEMENT HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION (1) ARISING UNDER THIS AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR (2) IN ANY WAY CONNECTED WITH, OR RELATED OR INCIDENTAL TO, THE DEALINGS OF THE PARTIES HERETO, OR ANY OF THEM, WITH RESPECT TO THIS AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY.  NOTWITHSTANDING THE FOREGOING TO THE CONTRARY, IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, EACH PARTY HERETO HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE.  PURSUANT TO SUCH JUDICIAL REFERENCE, THE PARTIES AGREE TO THE APPOINTMENT OF A SINGLE REFEREE, AND SHALL USE THEIR BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE.  IF THE PARTIES ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES

# EXHIBIT 4, PAGE 32

HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. EACH PARTY ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER AND THE AGREEMENTS CONTAINED HEREIN. THE PARTIES HERETO HEREBY AGREE THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH BOTH SIDES AGREEING TO THE SAME KNOWINGLY AND BEING AFFORDED THE OPPORTUNITY TO HAVE THEIR RESPECTIVE LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER. THE PARTIES INITIAL BELOW TO ACKNOWLEDGE THEIR UNDERSTANDING AND ACCEPTANCE OF THIS SECTION.


| _____ | _____ | _____ |
|:---:|:---:|:---:|
| Trade Union | Duck House | W. Chang |
| _____ | _____ | _____ |
| M. Chang | Trust | Agent |
| _____ | _____ | |
| Cathay as Lender and LC/Issuer | Chinatrust | |


*[Signature Page Follows]*

**EXHIBIT 4, PAGE 33**

**IN WITNESS WHEREOF**, the parties hereto have approved and executed this Agreement as of the date and year first written above.

**BORROWER:**

TRADE UNION INTERNATIONAL, INC.,          Address:    _____
a California  corporation                                      _____
                                                              _____
                                                  Attn: _____

By: _____
Name: _____          Telephone No.: _____
Its: _____          Facsimile No.: _____


DUCK HOUSE, INC.,                         Address:    _____
a California corporation                                      _____
                                                              _____
                                                  Attn: _____

By: _____
Name: _____          Telephone No.: _____
Its: _____          Facsimile No.: _____


**[Signatures continue on following pages]**

838291.9

21

**EXHIBIT 4, PAGE 34**

**GUARANTOR:**

_____          Address:    _____
                                                       _____
WEN PIN CHANG,                            Attn: _____
an individual                             Telephone No.: _____
                                          Facsimile No.: _____


_____          Address:    _____
                                                       _____
MEI LIEN CHANG,                           Attn: _____
an individual                             Telephone No.: _____
                                          Facsimile No.: _____


_____          Address:    _____
                                                       _____
WEN PING CHANG, Trustee                                _____
of the Chang Revocable Trust              Attn: _____
u/t/a September 20, 1996

                                          Telephone No.: _____
                                          Facsimile No.: _____


_____          Address:    _____
                                                       _____
MEI LIEN CHANG, Trustee                                _____
of the Chang Revocable Trust              Attn: _____
u/t/a September 20, 1996

                                          Telephone No.: _____
                                          Facsimile No.: _____


**[Signatures continue on following page]**


838291.9                           22

# EXHIBIT 4, PAGE 35

**LENDERS:**

CATHAY BANK,
a California banking corporation

Address:        9650 Flair Drive
                El Monte, CA  91731
Telephone No.:  (626) 279-3288
Facsimile No.:  (626) 279-3239

By: _____
        Gregory Badura
        Senior Vice President & Manager


CHINATRUST CAPITAL CORPORATION,
a Delaware corporation

Address:        _____
                _____
Telephone No.:  _____
Facsimile No.:  _____

By: _____
        Melvin O. Redford
        Executive Vice President


**AGENT AND L/C ISSUER**:

CATHAY BANK,
a California banking corporation

Address:        9650 Flair Drive
                El Monte, CA  91731
Telephone No.:  (626) 279-3288
Facsimile No.:  (626) 279-3239

By: _____
        Gregory Badura
        Senior Vice President


838291.9

23

**EXHIBIT 4, PAGE 36**

**DRAFT**
7/22/11

**EXHIBIT "A"**

NEW REVOLVING NOTE

[to be attached]

**DRAFT**

**7/22/11**

**EXHIBIT "B"**

TERM NOTE A

[to be attached]

**EXHIBIT 4, PAGE 38**

**DRAFT**

**7/22/11**

**EXHIBIT "C"**

TERM NOTE B

[to be attached]

**EXHIBIT 4, PAGE 39**

**DRAFT**

**7/22/11**

**EXHIBIT "D"**

TERM NOTE C

[to be attached]

838291.9

# EXHIBIT 4, PAGE 40

**DRAFT**

**7/22/11**

**EXHIBIT "E"**

SECOND AMENDED AND RESTATED UNSECURED GUARANTY

[to be attached]

838291.9

**EXHIBIT 4, PAGE 41**

**DRAFT**

**7/22/11**

**EXHIBIT "F-1"**

NEW SECURED GUARANTY

[to be attached]

838291.9

**EXHIBIT 4, PAGE 42**

**DRAFT**

**7/22/11**

**EXHIBIT "F-2"**

NEW SECURED GUARANTY

[to be attached]

# EXHIBIT 4, PAGE 43

**DRAFT**

**7/22/11**

**EXHIBIT "G"**

MEMORANDUM OF MODIFICATION (MONTCLAIR PROPERTY)

[to be attached]

838291.9

**EXHIBIT 4, PAGE 44**

**DRAFT**
**7/22/11**

**EXHIBIT "H"**

MEMORANDUM OF MODIFICATION (CRYSTAL RIDGE PROPERTY)

[to be attached]

838291.9

# EXHIBIT 4, PAGE 45

**DRAFT**

7/22/11

**SCHEDULE ONE**

INDEBTEDNESS

(calculated as of _____, 2011)

A.    TRADE UNION INTERNATIONAL INC.

| | |
|---|---|
| Principal | $_____ |
| Interest | $_____ |
| Late Charges | $_____ |
| Fees and Costs | $_____ |
| Legal Fees and Costs (Agent) | $_____ |
| Legal Fees and Costs (Cathay) | $_____ |
| Legal Fees and Costs (Chinatrust) | $_____ |

B.    DUCK HOUSE, INC.

| | |
|---|---|
| Principal | $_____ |
| Interest | $_____ |
| Late Charges | $_____ |
| Fees and Costs | $_____ |
| Legal Fees and Costs (Agent) | $_____ |
| Legal Fees and Costs (Cathay) | $_____ |
| Legal Fees and Costs (Chinatrust) | $_____ |

838291.9

**EXHIBIT 4, PAGE 46**

**ANNEX A**
**TO**
**TENTH MODIFICATION AND EXTENSION AGREEMENT**

From and after the Effective Date (as defined below), the terms and conditions of this Annex A shall be applicable to the Loans, Letters of Credit and Acceptances under the Existing Credit Agreement (as defined below).  To the extent that the terms hereof conflict with the Loan Documents (defined below), the terms of this Annex A shall control.

**SECTION 1.    DEFINITIONS; RULES OF CONSTRUCTION**

    **1.1.    Definitions**.  Any and all capitalized terms not defined herein shall have the meaning ascribed to them in the Tenth Modification and Extension Agreement and in the Existing Credit Agreement.  As used in this Annex A, the following terms have the meanings set forth below:

Account:  as defined in the UCC, including all rights to payment for goods sold or leased, or for services rendered.

Account Debtor:  a Person who is obligated under an Account, Chattel Paper (as defined in the UCC) or General Intangible (as defined in the UCC).

Accounts Formula Amount:  80% of the Value of Eligible Accounts.

Affiliate:  shall have the meaning set forth in the Existing Loan Agreement.

Agent:  CATHAY BANK, a California banking corporation, and its successors and assigns.

Availability:   the Borrowing Base minus the outstanding principal balance of all Revolving Loans, and the face amount of all Letters of Credit and Acceptances then outstanding.

BK Court:  shall have the meaning set forth in the Tenth Modification and Extension Agreement.

Borrower:   TRADE UNION INTERNATIONAL, INC., a California corporation, and DUCK HOUSE, INC., a California corporation.

Borrowing Base:  on any date of determination, an amount equal to the lesser of (a) the Revolving Commitment, minus the LC Reserve; or (b) the sum of the Accounts Formula Amount, plus the Inventory Amount.

Borrowing Base Certificate:  a certificate, in the form attached hereto as Exhibit "A", signed and certified by: the Chief Financial Officer(s) of the Borrower, or by W. Chang and M. Change in their respective capacities as corporate officers of the Borrower, by which such persons each certify the calculation of the Borrowing Base.

Cash Collateral:  cash, and any interest or other income earned thereon, that is delivered to Agent to Cash Collateralize any Obligations.

Cash Collateral Account:  a demand deposit, money market or other account maintained with Agent and subject to Agent's Liens.

838289.8                                      1                    **Borrower's Initials** _____

_____

# EXHIBIT 4, PAGE 47

Cash Collateralize:  the delivery of cash to Agent, as security for the payment of Obligations, in an amount equal to (a) with respect to LC Obligations, 105% of the aggregate LC Obligations, and (b) with respect to any inchoate, contingent or other Obligations, Agent's good faith and reasonable estimate of the amount due or to become due, including all fees and other amounts relating to such Obligations.  "Cash Collateralization" has a correlative meaning.

Collateral:  all Property described in any Loan Document as security for any Obligations, and all other Property that now or hereafter secures (or is intended to secure) any Obligations, and shall include, without limitation, all proceeds and products of any Collateral, further including, without limitation, all insurance proceeds of and recoveries under any policy of insurance covering any of the Collateral, including, without limitation, credit insurance with respect to any Account or the proceeds thereof.

Commitment Termination Date:  the earliest to occur of (a) the Revolving Termination Date; (b) the date on which Borrower terminates the Revolving Commitment pursuant to Section 2; or (c) the date on which the Revolving Commitment is terminated pursuant to Section 6 hereof.

Dollar or Dollars:  lawful money of the United States.

Dominion Account:  a special account established by Borrower at Agent, in which all operating proceeds are deposited, and over which Agent has exclusive control for withdrawal purposes.

Effective Date:   shall have the meaning set forth in the Tenth Modification and Extension Agreement.

Eligible Account:  an Account owing to Borrower that arises in the Ordinary Course of Business from the sale of goods, is payable in Dollars and is deemed by Agent, in its reasonable discretion, to be an Eligible Account.  Without limiting the foregoing, no Account shall be an Eligible Account if (a) it is unpaid for more than 90 days after the original due date, or more than 90 days after the original invoice date, provided, however, that for Trade Union only, during the months of January through June, it is unpaid for more than 120 days after the original invoice date; (b) 50% or more of the Accounts owing by the Account Debtor are not Eligible Accounts under the foregoing clause; (c) when aggregated with other Accounts owing by the Account Debtor, it exceeds 25% of the aggregate Eligible Accounts; (d) it does not conform with a covenant or representation herein; (e) it is owing by a creditor or supplier, or is otherwise subject to a potential offset, counterclaim, dispute, deduction, discount, recoupment, reserve, defense, chargeback, credit or allowance (but ineligibility shall be limited to the amount thereof); (f) an insolvency proceeding has been commenced by or against the Account Debtor; or the Account Debtor has failed, has suspended or ceased doing business, is liquidating, dissolving or winding up its affairs, or is not Solvent; (g) the Account Debtor is organized or has its principal offices or assets outside the United States or Canada; (h) it is owing by a Government Authority, unless the Account Debtor is the United States or any department, agency or instrumentality thereof and the Account has been assigned to Agent in compliance with the Assignment of Claims Act; (i) it is not subject to a duly perfected, first priority Lien in favor of Agent, or is subject to any other Lien; (j) the goods giving rise to it have not been delivered to and accepted by the Account Debtor, the services giving rise to it have not been accepted by the Account Debtor, or it otherwise does not represent a final sale; (k) it is evidenced by Chattel Paper or an Instrument of any kind, or has been reduced to judgment; (l) its payment has been extended, the Account Debtor has made a partial payment, or it arises from a sale on a cash-on-delivery basis; (m) it arises from a sale to an Affiliate, or from a sale on a bill-and-hold, guaranteed sale, sale-or-return, sale-on-approval, consignment, or other repurchase or return basis; (n) it represents a progress billing or retainage; (o) it includes a billing for interest, fees or late charges, but ineligibility shall be limited to the extent thereof; or (p) it arises from a retail sale to a person who is purchasing for personal, family or

# EXHIBIT 4, PAGE 48

household purposes. In calculating delinquent portions of Accounts under clauses (a) and (b), credit balances more than 90 days old will be excluded.

Eligible In-Transit Inventory: Inventory owned by Borrower that would be Eligible Inventory if it were not subject to a Document and in transit from a foreign location to a location of Borrower within the United States, and that Agent, in its reasonable discretion, deems to be Eligible In-Transit Inventory. Without limiting the foregoing, no Inventory shall be Eligible In-Transit Inventory unless it (a) is subject to a negotiable Document showing Agent (or, with the consent of Agent, Borrower) as consignee, which Document is in the possession of Agent or such other Person as Agent shall approve; (b) is fully insured in a manner satisfactory to Agent; (c) has been identified to the applicable sales contract and title has passed to Borrower; (d) is not sold by a vendor that has a right to reclaim, divert shipment of, repossess, stop delivery, claim any reservation of title or otherwise assert Lien rights against the Inventory, or with respect to whom Borrower is in default of any obligations; (e) is subject to purchase orders and other sale documentation satisfactory to Agent; (f) is shipped by a common carrier that is not affiliated with the vendor; and (g) is being handled by a customs broker, freight-forwarder or other handler that has delivered a lien waiver in form and substance satisfactory to Agent in Agent's sole discretion.

Eligible Inventory: Inventory owned by Borrower that Agent, in its reasonable discretion, deems to be Eligible Inventory. Without limiting the foregoing, no Inventory shall be Eligible Inventory unless it (a) is finished goods or raw materials, and not work-in-process, packaging or shipping materials, labels, samples, display items, bags, replacement parts or manufacturing supplies; (b) is not held on consignment, nor subject to any deposit or down payment; (c) is in new and saleable condition and is not damaged, defective, shopworn or otherwise unfit for sale; (d) is aged more than 365 days from the date received by Borrower, obsolete or unmerchantable, and does not constitute unsaleable, or returned, or repossessed goods; (e) meets all standards imposed by any Governmental Authority, and does not constitute hazardous materials under any environmental law or regulation; (f) conforms with the covenants and representations herein; (g) is subject to Agent's duly perfected, first priority Lien, and no other Lien; (h) is within the continental United States or Canada, is not in transit except between locations of Borrower, and is not consigned to any Person; (i) is not subject to any warehouse receipt or negotiable Document; (j) is not subject to any License or other arrangement that restricts Borrower's or Agent's right to dispose of such Inventory, unless Agent has received a legally sufficient Lien Waiver; and (k) is not located on leased premises or in the possession of a warehouseman, processor, repairman, mechanic, shipper, freight forwarder or other Person, unless the lessor or such Person has delivered a Lien Waiver or an appropriate rent and charges reserve has been established; and (l) is reflected in the details of a current perpetual inventory report.

Existing Credit Agreement means the Amended and Restated Credit Agreement dated as of June 29, 2007 between Borrower, Agent, and Lenders as amended to date, and as the same may hereafter be amended, supplemented and otherwise modified from time to time.

FLSA: the Fair Labor Standards Act of 1938, as amended from time to time.

GAAP: shall mean generally accepted accounting principles consistently applied.

Guarantor: individually and collectively, Wen Pin Chang, an individual ("W. Chang"), Mei Lien Chang, an individual ("M. Chang"), and Wen Pin Chang and Mei Lien Chang, as Trustees of The Chang Revocable Trust u/t/a September 20, 1996 ("Trust"), and each other Person who guarantees payment or performance of any Obligations.

Inventory Amount: 40% of the Value of Eligible Inventory.

Inventory Reserve:  reserves reasonably established by Agent to reflect factors that may negatively impact the Value of Inventory, including change in salability, obsolescence, seasonality, theft, shrinkage, imbalance, change in composition or mix, markdowns and vendor chargebacks.  Without limiting the generality of the foregoing, the Inventory Reserve shall include (i) an amount equal to all amounts attributable to landing and storage costs associated with Inventory, (ii) a three (3) month reserve for costs of the type described in clause (g) of the definition of Eligible In-Transit Inventory, and (iii) a three (3) month reserve for costs of the types referred to in clause (k) of the definition of Eligible Inventory.

LC Application:  an application by Borrower to Agent for issuance of a Letter of Credit, in form and substance reasonably satisfactory to L/C Issuer.

LC Conditions:  the following conditions necessary for issuance of a Letter of Credit:  (a) each of the conditions set forth in Section 3; (b) after giving effect to such issuance, total LC Obligations do not exceed the Letter of Credit Sublimit, no Overadvance exists and, if no Revolving Loans are outstanding, the LC Obligations do not exceed the Borrowing Base (without giving effect to the LC Reserve for purposes of this calculation); (c) the expiration date of such Letter of Credit is (i) no more than 120 days from issuance, in the case of documentary Letters of Credit, and (ii) prior to the Revolving Termination Date; (d) the Letter of Credit and payments thereunder are denominated in Dollars; and (e) the form of the proposed Letter of Credit is satisfactory to L/C Issuer in its discretion.

LC Documents:  all documents, instruments and agreements (including LC Requests and LC Applications) delivered by Borrower or any other Person to L/C Issuer in connection with issuance, amendment or renewal of, or payment under, any Letter of Credit.

LC Obligations:  the sum (without duplication) of (a) all amounts owing by Borrower for any drawings under Letters of Credit; (b) the stated amount of all outstanding Letters of Credit; (c) all fees and other amounts owing with respect to Letters of Credit; and (d) amounts owing in connection with Acceptances.

LC Request:  a request for issuance of a Letter of Credit, to be provided by Borrower, in form reasonably satisfactory to L/C Issuer.

LC Reserve:  the aggregate of all LC Obligations, other than those, if any, that have been Cash Collateralized.

Lender:  Individually and collectively, the Lenders set forth in the Existing Credit Agreement.

Letter of Credit:  any documentary letter of credit issued by L/C Issuer for the account of Borrower, or any indemnity, guarantee, exposure transmittal memorandum or similar form of credit support issued by L/C Issuer for the benefit of Borrower.

Letter of Credit Sublimit:  One Million and No/100 Dollars ($1,000,000.00), which may be used for Letters of Credit and Acceptances.

"License Rights" shall mean any rights under a license agreement held by Borrower pursuant to which Borrower is licensed to sell products in the United States that utilize certain specified names, trademarks, service marks, trade dress, copyrights, including word mark, logos, uniform designs, mascots, images, colors and color combinations, characters, symbols designs, likenesses and visual representations associated with and/or related to various professional sports agencies, such as (by way of example only) NFL Properties, LLC, Major League Baseball Properties, Inc. and NBA Properties, Inc.

"Licensor" shall mean any person or entity that has granted License Rights to Borrower with respect to the Collateral.

Lien:  any Person's interest in Property securing an obligation owed to, or a claim by, such Person, whether such interest is based on common law, statute or contract, including liens, security interests, pledges, hypothecations, statutory trusts, reservations, exceptions, encroachments, easements, rights-of-way, covenants, conditions, restrictions, leases, and other title exceptions and encumbrances affecting Property.

Lien Waiver:  an agreement, in a legally sufficient form and substance, by which (a) for any material Collateral located on leased premises, the lessor waives or subordinates any Lien it may have on the Collateral, and agrees to permit Agent to enter upon the premises and remove the Collateral or to use the premises to store or dispose of the Collateral; (b) for any Collateral held by a warehouseman, processor, shipper, customs broker or freight forwarder, such Person waives or subordinates any Lien it may have on the Collateral, agrees to hold any Documents in its possession relating to the Collateral as agent for Agent, and agrees to deliver the Collateral to Agent upon request; (c) for any Collateral held by a repairman, mechanic or bailee, such Person acknowledges Agent's Lien, waives or subordinates any Lien it may have on the Collateral, and agrees to deliver the Collateral to Agent upon request; and (d) for any Collateral subject to a Licensor's Intellectual Property rights or License Rights, the Licensor grants to Agent the right, vis-à-vis such Licensor, to enforce Agent's Liens with respect to the Collateral, including the right to dispose of or liquidate it with the benefit of the Intellectual Property, and without such Licensor's further approval or consent, whether or not a default exists under any applicable License Rights.

Loan:  a Revolving Loan or any Term Loan.

Loan Documents:  has the meaning set forth in the Tenth Modification and Extension Agreement to which this Annex A is attached and incorporated by reference therein.

Obligations:  all (a) principal of and premium, if any, on the Loans, (b) LC Obligations and other obligations of Obligors with respect to Letters of Credit, (c) interest, expenses, fees and other sums payable by Obligors under Loan Documents, (d) obligations of Obligors under any indemnity for any claims of any nature, (e) all costs, expenses or advances that Lenders and Agent may incur during a default or Event of Default, or during the pendency of an insolvency proceeding of an Obligor, and (f) all other debts, obligations and liabilities of any kind owing by any Obligor to Agent and Lenders, whether now existing or hereafter arising, whether evidenced by a note or other writing, whether allowed in any insolvency proceeding, whether arising from an extension of credit, issuance of a letter of credit, acceptance, loan, guaranty, indemnification or otherwise, and whether direct or indirect, absolute or contingent, due or to become due, primary or secondary, or joint or several.

Obligor:  Borrower, each Guarantor, and each other Person that is liable for payment of any Obligations or that has granted a Lien in favor of Agent and Lenders on its assets to secure any Obligations.

Ordinary Course of Business:  the ordinary course of business of Borrower, consistent with customary and usual industry practices and undertaken in good faith.

Payment Item:  each check, draft or other item of payment payable to Borrower, including those constituting proceeds of any Collateral.

Person:  any individual, corporation, limited liability company, partnership, joint venture, joint stock company, land trust, business trust, unincorporated organization, Governmental Authority or other entity.

Property:  any interest in any kind of property or asset, whether real, personal or mixed, or tangible or intangible.

Revolving Commitment:  Agent's and Lender's obligations, subject to the terms of this Annex A and the other Loan Documents, to make Revolving Loans and L/C Issuer's obligation to issue Letters of Credit and Acceptances in an amount up to Five Million and No/100 Dollars ($5,000,000.00) in the aggregate at any time outstanding.

Revolving Loan:  loans and advances outstanding under the Existing Credit Agreement and the other Loan Documents and converted to "Revolving Loans" pursuant to the Tenth Modification Agreement and all loans made pursuant to Section 2.1.

Revolving Termination Date:  means the third anniversary of the Effective Date.

Solvent:  as to any Person, such Person (a) owns Property whose fair salable value is greater than the amount required to pay all of its debts (including contingent, subordinated, unmatured and unliquidated liabilities); (b) owns Property whose present fair salable value (as defined below) is greater than the probable total liabilities (including contingent, subordinated, unmatured and unliquidated liabilities) of such Person as they become absolute and matured; (c) is able to pay all of its debts as they mature; (d) has capital that is not unreasonably small for its business and is sufficient to carry on its business and transactions and all business and transactions in which it is about to engage; (e) is not "insolvent" within the meaning of Section 101(32) of the Bankruptcy Code; and (f) has not incurred (by way of assumption or otherwise) any obligations or liabilities (contingent or otherwise) under any Loan Documents, or made any conveyance in connection therewith, with actual intent to hinder, delay or defraud either present or future creditors of such Person or any of its Affiliates.  "Fair salable value" means the amount that could be obtained for assets within a reasonable time, either through collection or through sale under ordinary selling conditions by a capable and diligent seller to an interested buyer who is willing (but under no compulsion) to purchase.

Term Loan:  means individually and collectively, Term Loan A, Term Loan B and Term Loan C.

Tenth Modification and Extension Agreement means the Tenth Modification and Extension Agreement ("Agreement") made and entered into as of August ___, 2011, by and among Borrower and Guarantors, on the one hand, and Agent, Lenders, and L/C Issuer on the other hand.

UCC:  the Uniform Commercial Code as in effect in the State of California or, when the laws of any other jurisdiction govern the perfection or enforcement of any Lien, the Uniform Commercial Code of such jurisdiction.

Value:  (a) for Inventory, its value determined on the basis of the lower of cost or market, calculated on a first-in, first-out basis, and excluding any portion of cost attributable to intercompany profit among Borrower and its affiliates; and (b) for an Account, its face amount, net of any returns, rebates, discounts (calculated on the shortest terms), credits, allowances or taxes (including sales, excise or other taxes) that have been or could be claimed by the Account Debtor or any other Person.

**1.2.     Uniform Commercial Code.**  As used herein, the following terms are defined in accordance with the UCC in effect in the State of California from time to time:  "Chattel Paper,"

# EXHIBIT 4, PAGE 52

"Commercial Tort Claim," "Deposit Account," "Document," "Equipment," "General Intangibles," "Goods," "Instrument," "Investment Property," "Letter-of-Credit Right" and "Supporting Obligation."

**1.3.** **Certain Matters of Construction**.  The terms "herein," "hereof," "hereunder" and other words of similar import refer to this Annex A as a whole and not to any particular section, paragraph or subdivision.  Any pronoun used shall be deemed to cover all genders.  In the computation of periods of time from a specified date to a later specified date, "from" means "from and including," and "to" and "until" each mean "to but excluding."  The terms "including" and "include" shall mean "including, without limitation" and, for purposes of each Loan Document, the parties agree that the rule of *ejusdem generis* shall not be applicable to limit any provision.  Section titles appear as a matter of convenience only and shall not affect the interpretation of any Loan Document.  All references to (a) laws or statutes include all related rules, regulations, interpretations, amendments and successor provisions; (b) any document, instrument or agreement include any amendments, waivers and other modifications, extensions or renewals (to the extent permitted by the Loan Documents); (c) any section means, unless the context otherwise requires, a section of this Annex A; (d) any exhibits or schedules mean, unless the context otherwise requires, exhibits and schedules attached hereto, which are hereby incorporated by reference; (e) any Person include successors and assigns; (f) time of day means time of day at Agent's notice address; or (g) discretion of Agent means its reasonable discretion.  All calculations of value, fundings of Loans, issuances of Letters of Credit and payments of Obligations shall be in Dollars and, unless the context otherwise requires, all determinations (including calculations of Borrowing Base and financial covenants) made from time to time under the Loan Documents shall be made in light of the circumstances existing at such time.  Borrowing Base calculations shall be consistent with usual and customary methods of valuation and calculation, and otherwise satisfactory to Agent (and not necessarily calculated in accordance with GAAP).  Borrower shall have the burden of establishing any alleged gross negligence, willful misconduct or lack of good faith by Agent and/or Lenders under any Loan Documents.  No provision of any Loan Documents shall be construed against any party by reason of such party having, or being deemed to have, drafted the provision.  Whenever the phrase "to the best of Borrowers' knowledge" or words of similar import are used in any Loan Documents, it means actual knowledge of Wen Chang or Mei Lien Chang, or knowledge that Wen Chang or Mei Lien Chang would have obtained if he or she had engaged in good faith and diligent performance of his or her duties, including reasonably specific inquiries of employees or agents and a good faith attempt to ascertain the matter to which such phrase relates.

## SECTION 2.   CREDIT FACILITIES

**2.1.** **Revolving Commitment**.

2.1.1.  <u>Revolving Loans</u>.   Lenders agree, on the terms set forth herein, to make Revolving Loans to Borrower from time to time through the Commitment Termination Date in an aggregate amount (together with all LC Obligations and Acceptances) at any time outstanding not to exceed the lesser of (i) the Revolving Commitment, and (ii) the Borrowing Base.  In no event shall the aggregate face amount of all outstanding Letters of Credit and Acceptances exceed the amount of the Letter of Credit Sublimit.  The Revolving Loans may be repaid and reborrowed as provided herein.  In no event shall Agent and/or Lenders have any obligation to honor a request for a Revolving Loan if the unpaid balance of Revolving Loans outstanding at such time (including the requested Loan) would exceed the Borrowing Base, except as provided in Section 2.1.4 hereof.

2.1.2.  <u>Use of Proceeds</u>.   The proceeds of Revolving Loans shall be used by Borrower solely (a) to satisfy existing Obligations; (b) to pay fees and transaction expenses associated with the Loan Documents; (c) to pay Obligations in accordance with this Annex A; and (d) for working capital and payment of Borrower's current operational expenses, payments due and owing under any confirmed Plan

of Reorganization in Borrower's bankruptcy case and other payments permitted under the Loan Documents as modified by or provided in Tenth Modification and Extension Agreement and the Settlement Agreement of even date herewith.  The proceeds shall not be used for any (e) portion of the long term debt obligations of Borrower that are not current obligations of Borrower; or (f) for any prepayments of obligations of Borrower or deposits; or (g) personal, family or household expenses or purposes of the officers, directors, employees and shareholders of Borrower, except for rent payment obligations owed by the Borrower to such persons, or for any advances or obligations owed by the Borrower to such persons or for payments authorized by Section 8.c of the Tenth Modification and Extension Agreement.

      2.1.3.   Termination of Revolving Commitment.   The Revolving Commitment shall terminate on the Commitment Termination Date, unless sooner terminated in accordance with this Annex A.  Upon at least 30 days prior written notice to Agent at any time, Borrower may, at its option, terminate the Revolving Commitment.  Any notice of termination given by Borrower shall be irrevocable.  On the Commitment Termination date, Borrower shall make payment in full, in cash, of all Obligations.

      2.1.4.   Overadvances.  If the sum of the aggregate Revolving Loans plus the aggregate LC Obligations exceeds the lesser of (i) Borrowing Base ("Overadvance") and (ii) the Revolving Commitment at any time, a principal amount of Revolving Loans equal to such excess amount shall be payable by Borrower. The amount of the Overadvance shall be paid by Borrower on demand by Agent after five (5) days written notice by Agent to Borrower, but all such Revolving Loans shall nevertheless constitute Obligations secured by the Collateral and entitled to all benefits of the Loan Documents.  Any funding or sufferance of an Overadvance is not required by Agent or Lenders, and shall not constitute a waiver of the Event of Default caused thereby.

    **2.2.**    **Manner of Borrowing and Funding Revolving Loans.**

      2.2.1.   Notice of Borrowing.

      (a)    Whenever Borrower desires funding of Revolving Loans, Borrower shall give Agent a written notice of borrowing ("Notice of Borrowing") and signed by the person or persons as set forth in the most recent corporate resolution and in a form reasonably acceptable to Agent.  Such notice must be received by Agent no later than 11:00 a.m. at least one (1) Business Day prior to the requested funding date.  Notices received after 11:00 a.m. shall be deemed received on the next Business Day.  Each Notice of Borrowing shall be irrevocable and shall specify (A) the amount of Revolving Loans requested, and (B) the requested funding date (which must be a Business Day).  Agent and Lender shall rely on notice given in the manner set forth herein.

      (b)    Unless payment is otherwise timely made by Borrower, the becoming due of any Obligations (including, without limitation, principal, interest, fees or other charges, LC Obligations or Cash Collateral) shall be deemed to be a request for Revolving Loans on the due date, in the amount of such Obligations.  The proceeds of such Revolving Loans shall be disbursed as direct payment of the relevant Obligation.  In addition, Agent may, at its option, charge such Obligations against any operating, investment or other account of Borrower maintained with Agent or any of its Affiliates.

      (c)    Borrower shall establish a Dominion Account with Agent and the presentation for payment of any check or other item of payment drawn on such account at a time when there are insufficient funds to cover it shall be deemed to be a request for Revolving Loans on the date of such presentation, in the amount of the check and items presented for payment.  The proceeds of such Revolving Loans may be disbursed directly to the Dominion Account or other appropriate account held at Agent.

8                    **Borrower's Initials _____**

# EXHIBIT 4, PAGE 54

2.2.2.    Fundings.  Subject to the terms of the Loan Documents, Agent shall fund each Revolving Loan on the applicable funding date and shall disburse the proceeds as directed by Borrower.

2.2.3.    Notices.  Borrower authorizes Agent to extend Revolving Loans and transfer funds to or on behalf of Borrower based on telephonic or e-mailed instructions.  Borrower shall confirm each such request by prompt delivery to Agent of a Notice of Borrowing, if applicable, but if it differs in any material respect from the action taken by Agent, the records of Agent shall govern.  Agent shall not have any liability for any loss suffered by Borrower as a result of Agent acting upon its understanding of telephonic or e-mailed instructions from a person believed in good faith to be a person authorized to give such instructions on Borrower's behalf.

**2.3.    Repayment of Revolving Loans.**  The Revolving Commitment shall be repaid in accordance with the terms and conditions of the Revolving Note executed or to be executed by Borrower concurrently herewith.

**2.4.    Letter of Credit Facility.**

2.4.1.    Issuance of Letters of Credit.  L/C Issuer agrees to issue Letters of Credit from time to time until 30 days prior to the Revolving Termination Date (or until the Commitment Termination Date, if earlier), on the terms set forth herein, including the following:

(a)    Borrower acknowledges that L/C Issuer's willingness to issue any Letter of Credit is conditioned upon its receipt of a LC Application with respect to the requested Letter of Credit, as well as such other instruments and agreements as L/C Issuer may customarily require for issuance of a letter of credit of similar type and amount.  Neither Agent nor L/C Issuer shall have any obligation to issue any Letter of Credit unless (i) it receives a LC Request and LC Application at least three Business Days prior to the requested date of issuance; and (ii) each LC Condition is satisfied.  L/C Issuer's obligation to issue any Acceptance shall be subject to its receipt of such documentation and fees in connection therewith as it may require.

(b)    Letters of Credit may be requested by Borrower only (i) to support obligations of such Borrower incurred in the Ordinary Course of Business; or (ii) for other purposes as Agent may approve from time to time in writing.  The renewal or extension of any Letter of Credit shall be treated as the issuance of a new Letter of Credit, except that delivery of a new LC Application shall be required at the discretion of L/C Issuer.

(c)    Borrower assumes all risks of the acts, omissions or misuses of any Letter of Credit by the beneficiary.  In connection with the issuance of any Letter of Credit, neither L/C Issuer nor Agent shall be responsible for the existence, character, quality, quantity, condition, packing, value or delivery of any goods purported to be represented by any Documents; any differences or variation in the character, quality, quantity, condition, packing, value or delivery of any goods from that expressed in any Documents; the form, validity, sufficiency, accuracy, genuineness or legal effect of any Documents or of any endorsements thereon; the time, place, manner or order in which shipment of goods is made; partial or incomplete shipment of, or failure to ship, any goods referred to in a Letter of Credit or Documents; any deviation from instructions, delay, default or fraud by any shipper or other Person in connection with any goods, shipment or delivery; any breach of contract between a shipper or vendor and Borrower; errors, omissions, interruptions or delays in transmission or delivery of any messages, by mail, cable, telegraph, telex, telecopy, e-mail, telephone or otherwise; errors in interpretation of technical terms; the misapplication by a beneficiary of any Letter of Credit or the proceeds thereof; or any consequences arising from causes beyond the control of L/C Issuer or Agent, including any act or omission of a

Governmental Authority. Agent and L/C Issuer shall be fully subrogated to the rights and remedies of each beneficiary whose claims against Borrower are discharged with proceeds of any Letter of Credit.

(d)    In connection with its administration of and enforcement of rights or remedies under any Letters of Credit or LC Documents, Agent and L/C Issuer shall be entitled to act, and shall be fully protected in acting, upon any certification, documentation or communication in whatever form believed by Agent or L/C Issuer, in good faith, to be genuine and correct and to have been signed, sent or made by a proper Person. Agent and L/C Issuer may consult with and employ legal counsel, accountants and other experts to advise it concerning its obligations, rights and remedies, and shall be entitled to act upon, and shall be fully protected in any action taken in good faith reliance upon, any advice given by such experts. Agent and L/C Issuer may employ agents and attorneys-in-fact in connection with any matter relating to Letters of Credit or LC Documents, and shall not be liable for the negligence or misconduct of agents and attorneys-in-fact selected with reasonable care.

2.4.2.    <u>Reimbursement</u>. If Agent or L/C Issuer honors any request for payment under a Letter of Credit, Borrower shall pay to Agent or L/C Issuer, on the same day ("<u>Reimbursement Date</u>"), the amount paid under such Letter of Credit, together with interest at the interest rate for Revolving Loans from the Reimbursement Date until payment by Borrower. The obligation of Borrower to reimburse L/C Issuer or Agent for any payment made under a Letter of Credit shall be absolute, unconditional, irrevocable, and joint and several, and shall be paid without regard to any lack of validity or enforceability of any Letter of Credit or the existence of any claim, setoff, defense or other right that Borrower may have at any time against the beneficiary. Whether or not Borrower submits a Notice of Borrowing, Borrower shall be deemed to have requested a funding of Revolving Loans in an amount necessary to pay all amounts due on any Reimbursement Date.

2.4.3.    <u>Cash Collateral</u>. If any LC Obligations, whether or not then due or payable, shall for any reason be outstanding at any time (a) that an Event of Default exists, (b) that Availability is less than zero, (c) after the Commitment Termination Date, or (d) within 20 Business Days prior to the Revolving Termination Date, then Borrower shall, at Agent's or L/C Issuer's request, Cash Collateralize the stated amount of all outstanding Letters of Credit and pay to Agent the amount of all other LC Obligations. If Borrower fails to provide Cash Collateral as required herein, Agent may advance, as Revolving Loans, the amount of the Cash Collateral required.

**2.5.**    <u>Collateral Monitoring</u>. Borrower shall furnish to Agent, with sufficient copies for each Lender, the following (which shall be in addition to any similar requirements in the Existing Credit Agreement, but shall not include requiring submission of duplicate reports), in form and substance satisfactory to Agent:

2.5.1.    <u>Financial Statements</u>. Monthly financial statements, and comparison to financial projections (including, without limitation, cash flow position and line borrowing projections), by no later than thirty (30) days after the end of each month, commencing with the month ending with the month of the Effective Date.

2.5.2.    <u>Agings</u>. Monthly detailed aging of Accounts by invoice date and a history of Inventory reflecting the original purchase date of each item of Inventory, together with a reconciliation to the general ledger and financial statements for each month, commencing with the month ending July 31, 2011.

**2.6.**    <u>Collateral Audits; Inventory Appraisals</u>. Borrower shall cooperate with, and pay the costs and expenses for (i) an audit of the Collateral, to be conducted every four (4) calendar months, commencing with the four calendar months ending November 30, 2011 and (ii) an annual appraisal of

Inventory by an appraiser acceptable to Agent, to be conducted no later than sixty (60) days from the date the Tenth Modification and Extension Agreement is executed and approved by the BK Court.

2.7.    Consultant.    Borrower shall continue to engage a turnaround consultant reasonably acceptable to Agent and Lenders. David Mulder of Tatum LLC is an acceptable turnaround consultant and he may not be replaced without Lender's advance written consent, which consent shall not be unreasonably withheld.

2.8.    Dominion Account.    Collected funds in the Dominion Account shall be swept daily by Agent and such amounts shall be applied by Agent to the New Revolving Commitment and New Revolving Note.

2.9.    Eligibility Variance.    Notwithstanding anything to the contrary contained herein or in the Loan Documents, Borrower, Agent, and Lender may, from time to time, agree to and approve in writing variances in the amounts of Eligible Accounts and/or Eligible Inventory.

## SECTION 3.    CONDITIONS PRECEDENT

3.1.    **Conditions Precedent to All Credit Extensions**.    Agent shall not be required to fund any Loans, L/C Issuer shall not be required to issue any Letters of Credit, or grant any other accommodation to or for the benefit of Borrower, unless the following conditions are satisfied:

(a)    No Default or Event of Default shall exist at the time of, or result from, such funding, issuance or grant, and no event has occurred, which upon the lapse of time, giving of notice, or both, would constitute an Event of Default;

(b)    The representations and warranties of each Obligor in the Loan Documents shall be true and correct on the date of, and upon giving effect to, such funding, issuance or grant (except for representations and warranties that expressly relate to an earlier date);

(c)    All conditions precedent in any other Loan Document shall be satisfied;

(d)    No event shall have occurred or circumstance exist that has or could reasonably be expected to have a Material Adverse Effect;

(e)    With respect to issuance of a Letter of Credit, the LC Conditions shall be satisfied; and

(f)    Such Loan or Letter of Credit is in conformity with the then applicable Borrowing Base.

Each request (or deemed request) by Borrower for funding of a Revolving Loan, issuance of a Letter of Credit or grant of an accommodation shall constitute a representation by Borrower that the foregoing conditions are satisfied on the date of such request and on the date of such funding, issuance or grant.  As an additional condition to any funding, issuance or grant, Agent shall have received such other information, documents, instruments and agreements as it deems appropriate in connection therewith.

3.2.    **Limited Waiver of Conditions Precedent.**    If Agent funds any Revolving Loans, or L/C Issuer issues any Letters of Credit or grants any other accommodation when any conditions precedent are not satisfied (regardless of whether the lack of satisfaction was known or unknown at the time), it shall not operate as a waiver of (a) the right of Agent or L/C Issuer to insist upon satisfaction of all conditions

precedent with respect to any subsequent funding, issuance or grant; nor (b) any Default or Event of Default due to such failure of conditions or otherwise.

## SECTION 4.    COLLATERAL ADMINISTRATION

**4.1.    <u>Borrowing Base Certificates</u>.**  By 11:00 a.m. (Los Angeles time) on Wednesday of each week, Borrower shall deliver to Agent a Borrowing Base Certificate in the form attached hereto as Exhibit A, or as Agent otherwise reasonably changes after submission of such new form to Borrower, and prepared as of the close of business of the last Business Day of the previous week, and at such other times as Agent may reasonably request.  All calculations of Availability in any Borrowing Base Certificate shall originally be made by Borrower and certified by a senior officer acceptable to Agent, provided that Agent may from time to time review and adjust any such calculation (a) to reflect Agent's reasonable estimate of declines in value of any Collateral; (b) to adjust advance rates to reflect changes in dilution, quality, mix and other factors affecting Collateral; and (c) to the extent the calculation is not made in accordance with this Annex A or does not accurately reflect any applicable reserve.  Each Borrowing Base Certificate shall include a copy of a detailed weekly inventory report and shall include weekly sales, debits, credits and adjustments and application of cash proceeds.

**4.2.    <u>Administration of Accounts</u>.**

**4.2.1.    <u>Records and Schedules of Accounts</u>.**  Borrower shall keep accurate and complete records of its Accounts in accordance with GAAP, including all payments and collections thereon, and shall submit to Agent, on such periodic basis as Agent may reasonably request, a sales and collections report, in form satisfactory to Agent.  Borrower shall also provide to Agent, on or before the 15th day of each month, a detailed aged trial balance of all Accounts as of the end of the preceding month, specifying each Account's Account Debtor name and address, amount, invoice date and due date, showing any discount, allowance, credit, authorized return or dispute, and including such proof of delivery, copies of invoices and invoice registers, copies of related documents, repayment histories, status reports and other information as Agent may reasonably request.  If Accounts in an aggregate face amount of $1,000 or more cease to be Eligible Accounts, Borrower shall notify Agent of such occurrence promptly (and in any event within one Business Day) after Borrower has knowledge thereof.

**4.2.2.    <u>Taxes</u>.**  If an Account of Borrower includes a charge for any taxes, Agent is authorized, in its discretion, to pay the amount thereof to the proper taxing authority for the account of Borrower and to charge Borrower therefor; <u>provided</u>, <u>however</u>, that Agent shall not be liable for any taxes that may be due from Borrower or with respect to any Collateral, and shall promptly provide Borrower with written notice of any such payment.

**4.2.3.    <u>Account Verification</u>.**  Whether or not a default or Event of Default exists, Agent shall have the right at any time, in the name of Agent, any designee of Agent or Borrower, to verify the validity, amount or any other matter relating to any Accounts of Borrower by mail, telephone or otherwise.  Borrower shall cooperate fully with Agent in an effort to facilitate and promptly conclude any such verification process.

**4.2.4.    <u>Maintenance of Dominion Account</u>.**  Borrower shall establish and maintain one or more Dominion Accounts with Agent pursuant to lockbox arrangements acceptable to Agent.  Borrower shall obtain an agreement (in form and substance satisfactory to Agent) for each Dominion Account, establishing Agent's control over and Lien in the lockbox or Dominion Account, requiring immediate deposit of all remittances received in the lockbox to a Dominion Account.  Agent does not assume any responsibility to Borrower for any lockbox arrangement or any Dominion Account, including any claim of accord and satisfaction or release with respect to any Payment Items.

# EXHIBIT 4, PAGE 58

4.2.5.  <u>Proceeds of Collateral</u>.  Borrower shall instruct in writing and otherwise take all reasonably necessary steps to ensure that all payments on Accounts or otherwise relating to Collateral are made directly to a Dominion Account (or a lockbox relating to a Dominion Account).  If Borrower or Subsidiary receives cash or Payment Items with respect to any Collateral, it shall hold same in trust for Agent and promptly (not later than the next Business Day) deposit same into a Dominion Account.

4.2.6.  <u>Separate Account</u>.  Borrower may maintain one (1) and only one additional account ("Separate Account") not maintained with Agent, which shall be established based under a three-party control agreement with the institution holding such account, and containing terms reasonably acceptable to Agent, granting to Agent the senior-most perfected security interest in such account, and requiring such institution to daily sweep the amounts that may be contained in any such account above the $300,000.00 amount as set forth below and wire transfer the proceeds daily to Agent; provided, however, that Borrower may maintain up to but no more than $300,000.00 in such Separate Account for use by Borrower in its ordinary and normal business operations only, subject to the restrictions and conditions herein as to the use of the proceeds of the Revolving Loan.

4.2.6.  <u>Intentionally Deleted.</u>

**4.3.**  **<u>Administration of Inventory</u>.**

4.3.1.  <u>Records and Reports of Inventory</u>.  Borrower shall keep accurate and complete records of its Inventory, including costs and daily withdrawals and additions, and shall submit to Agent inventory reports in form reasonably satisfactory to Agent, on such periodic basis as Agent may reasonably request, in addition to the weekly Borrowing Base Certificates.  Borrower shall conduct periodic cycle counts consistent with historical practices, and shall provide to Agent a report based on each such inventory and count promptly upon completion thereof, together with such supporting information as Agent may request.  Agent may participate in and observe each physical and/or cycle count at Agent's cost and expense.

4.3.2.  <u>Returns of Inventory</u>.  No Borrower shall return any Inventory to a supplier, vendor or other Person, whether for cash, credit or otherwise, unless (a) such return is in the Ordinary Course of Business; (b) no default, Event of Default or Overadvance exists or would result therefrom; (c) Agent is promptly notified if the aggregate value of all Inventory returned in any month exceeds 5% of the prior month's sales; provided, however, that Borrower shall provide Agent with reports on a periodic basis as reasonably requested by Agent identifying all returned inventory items then being held on hand by Borrower; and (d) any payment received by Borrower for a return is promptly remitted to Agent for application to the Obligations.

4.3.3.  <u>Acquisition, Sale and Maintenance</u>.  No Borrower shall acquire or accept any Inventory on consignment or approval, and shall take all steps to assure that all Inventory is produced in accordance with applicable Laws, including the FLSA.  Borrower shall not sell any Inventory on consignment or approval or any other basis under which the customer may return or require Borrower to repurchase such Inventory.  Borrower shall use, store and maintain all Inventory with reasonable care and caution, in accordance with applicable standards of any insurance and in conformity with all applicable laws, and shall make current rent payments (within applicable grace periods provided for in leases) at all locations where any Collateral is located.

**4.4.**  **<u>General Provisions</u>.**

4.4.1.  <u>Location of Collateral</u>.  All tangible items of Collateral, other than Inventory in transit, shall at all times be kept by Borrower at business locations located within the State of California

838289.8                                  13                         **Borrower's Initials _____**

and previously disclosed to (and approved by) Agent in writing. Borrower may not maintain inventory in any location as to which there is more than Two Hundred Thousand Dollars ($200,000.00) in inventory, based on Borrower's actual cost, and for which Agent has not received a fully executed landlord's waiver in form and substance reasonably acceptable to Agent.

        4.4.2.  <u>Protection of Collateral</u>.  All expenses of protecting, storing, warehousing, insuring, handling, maintaining and shipping any Collateral, all taxes payable with respect to any Collateral (including any sale thereof), and all other payments required to be made by Agent to any Person to realize upon any Collateral, shall be borne and paid by Borrower.  Agent shall not be liable or responsible in any way for the safekeeping of any Collateral, for any loss or damage thereto (except for reasonable care in its custody while Collateral is in Agent's actual possession), for any diminution in the value thereof, or for any act or default of any warehouseman, carrier, forwarding agency or other Person whatsoever, but the same shall be at Borrower's sole risk.

        4.4.3.  <u>Defense of Title to Collateral</u>.  Borrower shall at all times defend its title to Collateral and Agent's and Lenders' Liens therein against all Persons, claims and demands whatsoever, except Permitted Liens.

    **4.5.**    **Power of Attorney**.  Borrower hereby irrevocably constitutes and appoints Agent (and all Persons designated by Agent) as Borrower's true and lawful attorney (and agent-in-fact) for the purposes provided in this Section.  Agent, or Agent's designee, may, without notice and in either its or Borrower's name, but at the cost and expense of Borrower:

        (a)    Endorse Borrower's name on any Payment Item or other proceeds of Collateral (including proceeds of insurance) that come into Agent's possession or control; and

        (b)    During an Event of Default, (i) notify any Account Debtors of the assignment of their Accounts, demand and enforce payment of Accounts, by legal proceedings or otherwise, and generally exercise any rights and remedies with respect to Accounts; (ii) settle, adjust, modify, compromise, discharge or release any Accounts or other Collateral, or any legal proceedings brought to collect Accounts or Collateral; (iii) sell or assign any Accounts and other Collateral upon such terms, for such amounts and at such times as Agent deems advisable; (iv) take control, in any manner, of any proceeds of Collateral; (v) prepare, file and sign Borrower's name to a proof of claim or other document in a bankruptcy of an Account Debtor, or to any notice, assignment or satisfaction of Lien or similar document; (vi) receive, open and dispose of mail addressed to Borrower, and notify postal authorities to change the address for delivery thereof to such address as Agent may designate; (vii) endorse any Chattel Paper, Document, Instrument, invoice, freight bill, bill of lading, or similar document or agreement relating to any Accounts, Inventory or other Collateral; (viii) use Borrower's stationery and sign its name to verifications of Accounts and notices to Account Debtors; (ix) use the information recorded on or contained in any data processing equipment and computer hardware and software relating to any Collateral; (x) make and adjust claims under policies of insurance; (xi) take any action as may be necessary or appropriate to obtain payment under any letter of credit or banker's acceptance for which Borrower is a beneficiary; and (xii) take all other actions as Agent deems appropriate to fulfill Borrower's obligations under the Loan Documents.

**SECTION 5.    REPRESENTATIONS AND WARRANTIES**

    **5.1.    General Representations and Warranties.**  To induce Agent, Lenders and L/C Issuer to enter into this Annex A and to make available the Revolving Commitments, Term Loans, Letters of Credit and Acceptances, and in addition to the representations and warranties in the other Loan Documents, Borrower represents and warrants that:

    5.1.1.    Accounts.    Agent, Lenders and L/C Issuer may rely, in determining which Accounts are Eligible Accounts, on all statements and representations made by Borrower with respect thereto.  Borrower warrants, with respect to each Account at the time it is shown as an Eligible Account in a Borrowing Base Certificate, that:

    (a)    it is genuine and in all respects what it purports to be, and is not evidenced by a judgment;

    (b)    it arises out of a completed, *bona fide* sale and delivery of goods in the Ordinary Course of Business, and substantially in accordance with any purchase order, contract or other document relating thereto;

    (c)    it is for a sum certain, maturing as stated in the invoice covering such sale, a copy of which has been furnished or is available to Agent on request;

    (d)    it is not subject to any offset, Lien (other than Agent's or Lenders' Lien), deduction, defense, dispute, counterclaim or other adverse condition except as arising in the Ordinary Course of Business and disclosed to Agent; and it is absolutely owing by the Account Debtor, without contingency in any respect;

    (e)    no purchase order, agreement, document or applicable law restricts assignment of the Account to Agent and/or Lenders (regardless of whether, under the UCC, the restriction is ineffective), and the applicable Borrower is the sole payee or remittance party shown on the invoice;

    (f)    no extension, compromise, settlement, modification, credit, deduction or return has been authorized with respect to the Account, except discounts or allowances granted in the Ordinary Course of Business for prompt payment that are reflected on the face of the invoice related thereto and in the reports submitted to Agent hereunder; and

    (g)    to the best of Borrower's knowledge, (i) there are no facts or circumstances that are reasonably likely to impair the enforceability or collectibility of such Account; (ii) the Account Debtor had the capacity to contract when the Account arose, continues to meet the applicable Borrower's customary credit standards, is Solvent, is not contemplating or subject to an insolvency proceeding, and has not failed, or suspended or ceased doing business; and (iii) there are no proceedings or actions threatened or pending against any Account Debtor that could reasonably be expected to have a material adverse effect on the Account Debtor's financial condition.

**SECTION 6.    EVENTS OF DEFAULT; REMEDIES ON DEFAULT**

    **6.1.    Events of Default.**  For the avoidance of doubt, any material failure by Borrower to comply with each of its covenants, agreements, and other obligations under the terms of this Annex A shall constitute an Event of Default under the Existing Credit Agreement and the other Loan Documents in addition to any other Events of Default under any other Loan Document .

      **6.2.**    **<u>Remedies upon Default</u>.**  The remedies upon the occurrence of an Event of Default are as set forth in the Agreement.

# EXHIBIT 4, PAGE 62

**IN WITNESS WHEREOF**, the parties hereto have approved and executed this Annex A as of August _____, 2011.

**BORROWER:**

TRADE UNION INTERNATIONAL, INC.,        Address: _____
a California corporation                         _____
                                                 _____
                                                Attn: _____

By: _____
Name: _____        Telephone No.: _____
Its: _____        Facsimile No.: _____


DUCK HOUSE, INC.,                       Address: _____
a California corporation                         _____
                                                 _____
                                                Attn: _____

By: _____
Name: _____        Telephone No.: _____
Its: _____        Facsimile No.: _____


**GUARANTOR:**

                                        Address: _____
                                                 _____
_____                      _____
WEN PIN CHANG,                          Attn: _____
an individual
                                        Telephone No.: _____
                                        Facsimile No.: _____


                                        Address: _____
                                                 _____
_____                      _____
MEI LEIN CHANG,                         Attn: _____
an individual

                                        Telephone No.: _____
                                        Facsimile No.: _____


                                        Address: _____
                                                 _____
_____                      _____
Wen Ping Chang, Trustee
of the Chang Revocable Trust
u/t/a September 20, 1996


838289.8                        17              **Borrower's Initials _____**

                                                          _____

# EXHIBIT 4, PAGE 63

Telephone No.: _____
Facsimile No.: _____

_____                Address:        _____
Mei Lien Chang, Trustee                                     _____
of the Chang Revocable Trust                               _____
u/t/a September 20, 1996

Telephone No.: _____
Facsimile No.: _____

**AGENT and L/C ISSUER:**

CATHAY BANK                                Address:        9650 Flair Drive
                                                           El Monte, CA  91731

                                           Telephone No.:  (626) 279-3280
By: _____                Facsimile No.:  (626) 279-3239
Name:  Greg Badura
Its:     Senior Vice President

**LENDERS:**

CATHAY BANK                                Address:        9650 Flair Drive
                                                           El Monte, CA  91731

                                           Telephone No.:  (626) 279-3280
By: _____                Facsimile No.:  (626) 279-3239
Name:  Greg Badura
Its:     Senior Vice President

CHINATRUST CAPITAL CORPORATION,            Address:        _____
a Delaware corporation                                     _____
                                                           _____

By: _____                Telephone No.: _____
Name:  Melvin O. Redford                   Facsimile No.: _____
Its:     Executive Vice President

                                           Address:        9650 Flair Drive
                                                           El Monte, CA  91731

                                           Telephone No.:  (626) 279-3280
                                           Facsimile No.:  (626) 279-3239

## EXHIBIT "A"

**Form of Borrowing Base Certificate**

(to be attached)

# EXHIBIT 5

## Rule 2015.3 Report (Form 26) on:

**Nantong Trade Union Aluminum Company
Nantong Trade Union Chrome Plating Company
Ju Rong Trade Union Auto Parts Co., Ltd.**

B26 (Official Form 26) (12/08)

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

In re                                               Case No.: **6:11-bk-13071-DS**

**TRADE UNION INTERNATIONAL, INC.**    Chapter 11

                        Debtor.

## PERIODIC REPORT REGARDING VALUE, OPERATIONS AND PROFITABILITY OF ENTITIES IN WHICH THE ESTATE OF TRADE UNION INTERNATIONAL, INC. HOLDS A SUBSTANTIAL OR CONTROLLING INTEREST

This is the report as of **November 2010** on the value, operations and profitability of those entities in which the estate holds a substantial or controlling interest, as required by Bankruptcy Rule 2015.3. The estate of **Trade Union International, Inc., a California corporation** holds a substantial or controlling interest in the following entities:

| Name of Entity | Interest of the Estate | Tab No. [1] |
|---|---|---|
| Nantong Trade Union Aluminum Company | 100% shareholder | 1 |
| Nantong Trade Union Chrome Plating Company | 100% shareholder | Included in Tab 1 |
| Ju Rong Trade Union Auto Parts Co., Ltd. | 100% shareholder | Not Available |

This periodic report (the "Periodic Report") contains separate reports ("Entity Reports") on the value, operations, and profitability of each entity listed above.

Each Entity Report shall consist of three exhibits. **Exhibit A** contains a valuation estimate for the entity as of a date not more than two years prior to the date of this report. It also contains a description of the valuation method used. **Exhibit B** contains a balance sheet, a statement of income (loss), a statement of cash flows, and a statement of changes in shareholders' or partners' equity (deficit) for the period covered by the Entity Report, along with summarized footnotes. **Exhibit C** contains a description of the entity's business operations.

THIS REPORT MUST BE SIGNED BY A REPRESENTATIVE OF THE TRUSTEE OR DEBTOR IN POSSESSION.

The undersigned, having reviewed the above listing of entities in which the estate of [Debtor] holds a substantial or controlling interest, and being familiar with the Debtor's financial affairs, verifies under the penalty of perjury that the listing is complete, accurate and truthful to the best of his/her knowledge.

---

[1]    **Trade Union International, Inc, has only been provided with one combined report for the two entities Nantong Trade Union Aluminum Company and Nantong Trade Union Chrome Plating Company which are referred to herein as "Nantong Wheel Company". There are no financial reports from Ju Rong Trade Union Auto Parts Co., Ltd. to be attached to this Rule 2015.3 Report.**

# EXHIBIT 5, PAGE 1

B26 (Official Form 26) (12/08) – Cont.                                                    2

Date:  August 5, 2011              **TRADE UNION INTERNATIONAL, INC.**
                                   **a California corporation**

                                   _____
                                   Signature of Authorized Individual

                                   **Wen Pin Chang**
                                   _____
                                   Name of Authorized Individual

                                   **President**
                                   _____
                                   Title of Authorized Individual


# EXHIBIT 5, PAGE 2

**TAB 1**


**Nantong Wheel Company**
**Combined Form 26 Entity Report**


# EXHIBIT 5, PAGE 3

B26 (Official Form 26) (12/08) – Cont.                                                    4

## Exhibit A
## Valuation Estimate

[Provide a statement of the entity's value and the value of the estate's interest in the entity, including a description of the basis for the valuation, the date of the valuation and the valuation method used.  This valuation must be no more than two years old.  Indicate the source of this information.]

**Value for combined Nantong Wheel Company[2] is unknown because the Debtor is not certain it can realize any value on account of the stock interest in the companies due to their current financial condition and uncertainty regarding the laws of the People's Republic of China.  The Debtors have entered into a transaction to sell 70% of their ownership interest, subject to court approval.  This transaction is expected to result in receipt of approximately $1,500,000 as described immediately below.**

**Ju Rong Trade Union Auto Parts Co., Ltd. is the owner of the approximately 20 acres of raw land located in  Ju Rong Jiang Su  Province China.   The value of the land is unknown but was purchased originally for US$250,000.  Ju Rong Trade Union Auto Parts Co., Ltd. has an asset receivable of approximately $1,500,000 related to a loan it made to Nantong Wheel Company as part of an original contemplated development of the land to house Nantong Wheel Company's manufacturing plant.  Ultimately, it was determined to build the plant at another location; however, the loan was still due and owing.  It is expected that the loan will be repaid as part of a transaction where the Debtors will sell 70% of their stock in the Nantong Wheel Company.  Absent this transaction, it is difficult to determine what the actual value of the Debtor's ownership in Ju Rong Co. would be and is therefore unknown.**

---

[2]       **Nantong Trade Union Aluminum Company and Nantong Trade Union Chrome Plating Company referred to herein as "Nantong Wheel Company."**

# EXHIBIT 5, PAGE 4

B26 (Official Form 26) (12/08) – Cont.                                                                    5

**Exhibit B**

**Financial Statements**

 Nantong Trade Union Aluminum Company and Nantong Trade Union Chrome Plating
Company referred to herein as "Nantong Wheel Company."

There are no financial statements available for Ju Rong Trade Union Auto Parts Co., Ltd.

# EXHIBIT 5, PAGE 5

B26 (Official Form 26) (12/08) – Cont.                                                                6

**Exhibit B-1**
**Balance Sheet for Nantong Wheel Company**
**As of November 2010**

[Provide a balance sheet dated as of the end of the most recent six-month period of the current fiscal year and as of the end of the preceding fiscal year. Indicate the source of this information.]

**Note:  At this time, the Debtor has only been provided with a Balance Sheet as of November 2010 for Nantong Wheel Company.**

# EXHIBIT 5, PAGE 6

NANTONG TRADE UNION ALUMINIUM ALLOY CO., LTD.
(In k RMB )

## BALANCE SHEET,  NT TUI

| 单位: 南通贸联合金科技有限公司 | 项　目 | Dec-31,2009 | Nov-30,2010 |
|---|---|---|---|
| Items: | 项　目 | | |
| **Current Assets:** | **流动资产:** | | |
| Cash | 货币资金 | ¥6,173 | ¥3,809 |
| ST-Investment | 短期投资 | 400 | - |
| Notes Receivable | 应收票据 | 351 | - |
| Dividends Receivable | 应收股利 | - | - |
| Interest Receivable | 应收利息 | - | - |
| Accounts Receivable -(trade) | 应收帐款 | 33,060 | 68,585 |
| Other Receivable | 其他应收款 | 12,353 | 10,974 |
| Pre-paid | 预付帐款 | 987 | 4,284 |
| | 应收补贴款 | - | - |
| Inventory | 存货 | 31,193 | 22,841 |
| Direct Material | 原材料 | 5,167 | 5,380 |
| Work-In-Process | 在制品 | 892 | 325 |
| Inventorized Mfg, Cist | 生产成本 | 11,965 | 6,519 |
| Finished Goods | 产成品 | 13,169 | 10,616 |
| | | - | - |
| Defer Items | 待摊费用 | 638 | 638 |
| | 委托贷款 | - | - |
| | | - | - |
| | 其他流动资产 | - | - |
| **Total Current Assets:** | **流动资产合计** | 85,155 | 111,131 |
| **Long-Term Investments:** | **长期投资:** | | |
| | 长期股权投资 | - | - |
| | 长期债权投资 | - | - |
| | 减:长期投资减值准备 | - | - |
| | 长期投资合计 | - | - |
| **Fixed Assets:** | **固定资产:** | | |
| PP&E | 固定资产原价 | 168,048 | 171,499 |
| Accumulative depreciation | 减:累计折旧 | -66,455 | -82,094 |
| PP&E(net) | 固定资产净值 | 101,594 | 89,405 |
| | 减:固定资产减值准备 | - | - |
| Net PP&E | 固定资产净额 | 101,594 | 89,405 |
| | 工程物资 | - | - |
| Construction-in -progress | 在建工程 | 1,307 | 2,116 |
| | 固定资产清理 | - | - |
| Total Fixed Assets: | 固定资产合计 | 102,901 | 91,521 |
| **Intangible Assets:** | **无形资产及其他资产:** | - | - |
| Intangible (Land Use Right) | 无形资产 | 21,266 | 20,790 |
| | 减:无形资产减值准备 | - | - |
| | 未审核融资费用 | - | - |
| | 长期待摊费用 | - | - |
| | 其他长期资产 | - | - |
| | 待处理财产损益 | - | - |
| Total Intangible Assets: | | 21,266 | 20,790 |
| | 递延税项: | - | - |
| | 递延税款借项 | - | - |
| **TOTAL ASSETS** | **资产总计** | ¥209,322 | ¥223,441 |

| | 项　目 | Dec-31,2009 | Nov-30,2010 |
|---|---|---|---|
| Current Liability: | 流动负债: | | |
| ST-Bank Loan | 短期借款 | 79,264 | 73,477 |
| ST-Banker's Acceptance | 应付票据 | 6,790 | 9,703 |
| Accounts Payable (trade) | 应付帐款 | 22,058 | 35,999 |
| Advance/Deposit | 预收帐款 | 2 | 292 |
| Salary/Wages Payable | 应付工资 | 1,616 | 1,924 |
| VAT Tax Payable | 应交税金 | -1,525 | -1,406 |
| | 其他应交款 | | |
| Other Payables | 其他应付款 | 14,397 | 21,315 |
| Accured -others | 预提费用 | 541 | 3,639 |
| Total Current Liability: | 流动负债合计 | 123,143 | 144,943 |
| Total liability : | 负债合计 | 123,143 | 144,943 |
| | | - | - |
| Owner's Equity & Capital | 所有者权益(或股东权益): | - | - |
| Capital | 实收资本(或股本) | 130,934 | 130,934 |
| (Capital reduction) | 减:已归还投资 | - | - |
| Capital, net | 实收资本(或股本)净额 | 130,934 | 130,934 |
| LegalReserve | 资本公积 | 22,275 | 22,275 |
| Net income | 本年利润 | -12,088 | -7,681 |
| Retain Earnings | 未分配利润 | -67,029 | -67,029 |
| Total Owner's Equity | 股东权益总计 | 86,180 | 78,499 |
| **TOTAL LIABILITY & O.E.** | **负债和股东权益总计** | ¥209,322 | ¥223,441 |

Source: NANTONG TRADE UNION ALUMINIUM ALLOY CO., LTD.
Statutory Report

# EXHIBIT 5, PAGE 7

B26 (Official Form 26) (12/08) – Cont.                                                                    7

## Exhibit B-2
## Statement of Income (Loss) for Nantong Wheel Company ending November 2010

[Provide a statement of income (loss) for the following periods:

 (i) For the initial report:

      a.  the period between the end of the preceding fiscal year and the end of the most recent
          six-month period of the current fiscal year; and

      b.   the prior fiscal year.

 (ii) For subsequent reports, since the closing date of the last report.

 Indicate the source of this information.]


**Note:  At this time, the Debtor has only been provided with a Profit and Loss Statement as
of November 2010 for Nantong Wheel Company.**

# EXHIBIT 5, PAGE 8

# NANTONG P&L 損益表

As of Nov-2010

NANTONG TRADE UNION ALUMINIUM ALLOY CO., LTD.

(in k RMB)

单位：南通贸联铝合金科技有限公司

**EXHIBIT 5, PAGE 9**

| 项目 / ITEM (In Krmb) | ACTUAL 2009 Jan – Dec | % | ACTUAL 2010 Jan – Nov | % | ACTUAL Jan-2011 | ACTUAL Feb-2011 | ACTUAL Mar-2011 | ACTUAL Ap-2011 | ACTUAL May-2011 | ACTUAL Jun-2011 | ACTUAL Jly-2011 | ACTUAL Aug-2011 | ACTUAL Sept-2011 | ACTUAL Oct-2011 | ACTUAL Nov-2011 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 一 产品销售收入 SALES | ¥ 95,209 | 100.0% | ¥ 161,019 | 100.0% | ¥ 8,657 | ####### | ####### | ####### | ¥ 25,924 | ####### | ¥ 14,457 | ####### | ¥ 1,643 | ####### | ####### |
| PRICE ADJUSTMENT | | | | | | | | | | | | | | | |
| Export Sales | ¥ 89,506 | 94.0% | ¥ 156,580 | 97.2% | $8,175 | $13,615 | $18,238 | $17,504 | $25,506 | $11,775 | $14,130 | $9,834 | $1,356 | $14,531 | $21,915 |
| Domestic Sales | ¥ 5,703 | 6.0% | ¥ 4,439 | 2.8% | $482 | $545 | $550 | $500 | $417 | $511 | $327 | $238 | $286 | $57 | $526 |
| 减:主营业务成本 COST OF GOODS SOLD | 92,325 | 97.0% | 150,126 | 93.2% | 8,877 | 14,905 | 17,632 | 17,153 | 22,650 | 10,991 | 14,001 | 10,892 | 2,076 | 12,680 | 18,270 |
| 其中：直接材料 DIRECT MATERIAL | 43,278 | 45.5% | 86,371 | 53.6% | 4,611 | 8,024 | 10,368 | 10,799 | 14,398 | 6,417 | 7,573 | 5,579 | 1,054 | 6,714 | 10,833 |
| 直接人工 DIRECT LABOR | 10,037 | 10.5% | 13,921 | 8.6% | 822 | 1,455 | 1,656 | 1,441 | 1,771 | 1,076 | 1,256 | 1,207 | 202 | 1,234 | 1,800 |
| 制造费用 MFG. OVERHEAD | 39,010 | 41.0% | 49,834 | 30.9% | 3,444 | 5,425 | 5,608 | 4,913 | 6,481 | 3,498 | 5,171 | 4,105 | 820 | 4,732 | 5,637 |
| 二 主营业务利润 GROSS PROFIT | 2,884 | 3.0% | 10,893 | 6.8% | -220 | -745 | 1,157 | 850 | 3,274 | 1,295 | 456 | -820 | -433 | 1,907 | 4,171 |
| 加:其他业务利润 OTHER REVENUE | 227 | 0.2% | 430 | 0.3% | 10 | 10 | 34 | 21 | 69 | 26 | 13 | 8 | 15 | 205 | 20 |
| OPERATING EXPENSES(selling/export exp) | 1,953 | 2.1% | 2,492 | 1.5% | 75 | 224 | 97 | 397 | 206 | 266 | 371 | 372 | 133 | 272 | 79 |
| 减:营业费用 GENERAL & ADM | 8,463 | 8.9% | 9,566 | 5.9% | 608 | 693 | 677 | 642 | 748 | 728 | 827 | 1,741 | 1,198 | 715 | 989 |
| 财务费用 INTEREST & FOREX | 5,557 | 5.8% | 7,424 | 4.6% | 306 | 419 | 591 | 647 | 828 | 1,234 | 789 | 131 | 1,259 | 577 | 642 |
| 三 营业利润 OPERATING EARNINGS | -12,862 | -13.5% | -8,160 | -5.1% | -1,200 | -2,072 | -174 | -815 | 1,561 | -907 | -1,518 | -3,055 | -3,008 | 548 | 2,479 |
| 营业外收入 OTHER INCOME | 1,008 | 1.1% | 614 | 0.4% | 6 | 221 | 23 | 216 | 13 | 12 | 89 | 11 | 7 | 8 | 9 |
| 减:营业外支出 OTHER EXPENSE | 233 | 0.2% | 135 | 0.1% | 0 | 2 | 2 | 2 | 1 | 8 | 10 | 20 | 3 | 87 | - |
| 四 利润总额 EARNING BEFORE TAX | -12,088 | -12.7% | -7,681 | -4.8% | -1,193 | -1,852 | -153 | -602 | 1,573 | -902 | -1,439 | -3,065 | -3,005 | 469 | 2,488 |
| 减:所得税 TAX | - | 0.0% | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 五 利润净 EARNING AFTER TAX | -¥12,088 | ¥0 | -¥7,681 | ¥0 | -¥1,193 | -¥1,852 | -¥153 | -¥602 | ¥1,573 | -¥902 | -¥1,439 | -¥3,065 | -¥3,005 | ¥469 | ¥2,488 |

Source: NANTONG TRADE UNION ALUMINIUM ALLOY CO., LTD.
Statutory Report

B26 (Official Form 26) (12/08) – Cont.                                                    8

**Exhibit B-3**
**Statement of Cash Flows for Nantong Wheel Company**
**For the period ending: Not Applicable**


[Provide a statement of changes in cash flows for the following periods:

 (i) For the initial report:

      a. the period between the end of the preceding fiscal year and the end of the most recent
         six-month period of the current fiscal year; and

      b. the prior fiscal year.

 (ii) For subsequent reports, since the closing date of the last report.

 Indicate the source of this information.]


**Note:  At this time, the Debtor has not been provided with this information.**

# EXHIBIT 5, PAGE 10

B26 (Official Form 26) (12/08) – Cont.                                                    9

**Exhibit B-4**
**Statement of Changes in Shareholders'/Partners' Equity (Deficit) for**
**Nantong Wheel Company period ending: Not Applicable**

[Provide a statement of changes in shareholders'/partners equity (deficit) for the following
periods:

(i) For the initial report:

     a. the period between the end of the preceding fiscal year and the end of the most recent
     six-month period of the current fiscal year; and

     b. the prior fiscal year.

(ii) For subsequent reports, since the closing date of the last report.

Indicate the source of this information.]

**Note:  At this time, the Debtor has not been provided with this information.**

# EXHIBIT 5, PAGE 11

B26 (Official Form 26) (12/08) – Cont.                                                                                      10

## Exhibit C
## Description of Operations

[Describe the nature and extent of the estate's interest in the entity.

Describe the business conducted and intended to be conducted by the entity, focusing on the entity's dominant business segment(s).  Indicate the source of this information.]

**The Debtor is the 100% owner of the stock in the following entities.  The business of each entity is as follows:**

| Name of Entity | Description of Business |
| --- | --- |
| **Nantong Trade Union Aluminum Company** | **Manufacturer and supplier of aluminum alloy wheels.** |
| **Nantong Trade Union Chrome Plating Company** | **Manufacturer and supplier of polishing and chrome plating wheels.** |
| **Ju Rong Trade Union Auto Parts Co., Ltd.** | **Manufacturer and supplier of automotive supplies and parts.** |

# EXHIBIT 5, PAGE 12