James C. Bastian, Jr. - Bar No. 175415
**SHULMAN HODGES & BASTIAN LLP**
8105 Irvine Center Drive, Suite 600
Irvine, California 92618
Telephone:     (949) 340-3400
Facsimile:      (949) 340-3000
Email: jbastian@shbllp.com

Insolvency Counsel for the Debtors and
Debtors in Possession, Trade Union International, Inc. and
Duck House, Inc.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

| | |
|---|---|
| In re | Case No.  6:11-bk-13071-DS |
| **TRADE UNION INTERNATIONAL, INC., a California corporation,** | Chapter  11 |
| | Jointly Administered With |
| Debtor. | Case No.  6:11-bk-13072-DS |
| | **DEBTORS' FIRST AMENDED CHAPTER 11 REORGANIZATION PLAN** |
| In re | Plan Confirmation Hearing |
| **DUCK HOUSE, INC., a California corporation,** | [See Disclosure Statement for Voting and Objection Procedures] |
| | Date:     September 2, 2011 |
| Debtor. | Time:   10:00 A.M. |
| | Place:  Courtroom 304 |
| | United States Bankruptcy Court |
| | 3420 Twelfth Street |
| | Riverside, CA 92501 |

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

1

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

1

# TABLE OF CONTENTS

2

**Page**

3

I.      DEFINITIONS, INTERPRETATIONS, AND RULES OF CONSTRUCTION ...............4

4

    A.      Definitions ........................................................................................................4

5

    B.      Interpretations, Computation of Time and Governing Law...................................12

6

        1.      Undefined Terms ...................................................................................12

7

        2.      Rules of Interpretation ..........................................................................12

8

        3.      Computing Time Periods .......................................................................13

9

        4.      Notices and Delivery of Documents ......................................................13

10

II.     INTRODUCTION ........................................................................................................14

11

III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTEREST ...................15

12

    A.      Overview.........................................................................................................15

13

    B.      Unclassified Claims .........................................................................................16

14

        1.      Administrative Expenses .......................................................................16

15

        2.      Priority Tax Claims................................................................................18

16

    C.      Classified Claims ............................................................................................18

17

        1.      Classes of Secured Claims .....................................................................18

18

        2.      Classes of Priority Unsecured Claims.....................................................22

19

        3.      Class of General Unsecured Claims ........................................................22

20

        4.      Class of Interest Holders ........................................................................24

21

    D.      Means of Effectuating the Plan.........................................................................24

22

    E.      Post-Confirmation Management ........................................................................26

23

    F.      Employment and Compensation of Professionals ...............................................27

24

    G.      Post-Confirmation Estate Claims......................................................................27

25

        1.      Potential Claims Regarding Bank Group and its Allowed Secured
                Claim Amount (Resolved Under the Plan) ..............................................28

26

    H.      Objections to Claims........................................................................................29

27

    I.      Pending Disputed General Unsecured Claims as of the Date of
       Distribution .....................................................................................................30

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

4265-000/72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

J.      Unclaimed Distributions ......................................................................... 30

K.      Other Provisions of the Plan ................................................................. 31

    1.      Executory Contracts and Unexpired Leases ............................. 31

    2.      Rejections ................................................................................. 33

    3.      Changes In Rates Subject To Regulatory Commission Approval ............ 34

    4.      Retention of Jurisdiction ........................................................... 34

    5.      Injunction With Respect to Proceeds of Sale of Berendo Property .......... 36

IV.    EFFECT OF CONFIRMATION OF THE PLAN ............................................... 37

A.      Discharge .............................................................................................. 37

B.      Exculpation ........................................................................................... 37

C.      Revesting of Property in the Debtors .................................................... 38

D.      Conditions Precedent to Confirmation ................................................. 38

E.      Modification of the Plan ....................................................................... 39

F.      Post-Confirmation Status Reports ........................................................ 39

G.      Post-Confirmation Conversion/Dismissal ............................................ 39

H.      Substantial Consummation .................................................................... 40

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

4265-000/72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

## I.    DEFINITIONS, INTERPRETATIONS, AND RULES OF CONSTRUCTION

### A.    Definitions

1.    "<u>Administrative Claim</u>" means a Claim for costs and expenses of the administration of the bankruptcy case under Sections 503(b) or 507(b) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries, or commissions for services); (b) all Claims of professionals employed at the expense of the Estate; and (c) any fees or charges assessed against the Estate under 28 U.S.C. § 1930.

2.    "<u>Allowed Administrative Claim</u>" means an Administrative Claim allowed pursuant to Sections 503(b) or 507(b) of the Bankruptcy Code.

3.    "<u>Allowed Claim</u>" means a Claim: (a) with respect to which a Proof of Claim has not been filed but the Claim has been listed in the Schedules filed with the Bankruptcy Court by the Debtors and not listed as disputed, contingent, or unliquidated as to amount and as to which no objection is filed within the time period fixed by the Bankruptcy Court, or as to which any such objection has been determined by a Final Order; or (b) with respect to which a Proof of Claim has been filed within the time period fixed by the Bankruptcy Court, and as to which no objection is filed within the time period fixed by the Bankruptcy Court, or as to which any such objection has been determined by a Final Order.

4.    "<u>Allowed General Unsecured Claim</u>" means an unsecured Allowed Claim against the Debtors, however arising, not entitled to priority under Section 507(a) of the Bankruptcy Code, including, without limitation, an Allowed Claim based on the rejection of an executory contract or unexpired lease.

5.    "<u>Allowed Priority Claim</u>" means an Allowed Administrative Claim, Allowed Priority Tax Claim, or Allowed Priority Unsecured Claim.

6.    "<u>Allowed Priority Tax Claim</u>" means an Allowed Claim entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

4

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

7.    "<u>Allowed Priority Unsecured Claim</u>" means an Allowed Claim entitled to priority pursuant to Sections 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6)or 507(a)(7) of the Bankruptcy Code.

8.    "<u>Allowed Secured Claim</u>" means an Allowed Claim secured by a lien, security interest or other charge against property in which the Estates have an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the interest of the holder of such Allowed Secured Claim in the Estates' interest in such property, or to the extent of the amount subject to any setoff, as the case may be, excluding any and all non-pecuniary loss penalty claims (and related interest) as defined in Section 726(a)(4) of the Bankruptcy Code.

9.    "<u>Assume Licenses Order</u>" means that certain order entered on April 7, 2011 (docket number 86) authorizing Duck House to assume its various prepetition license agreements whereby Duck House is licensed to sell in the United States products which utilize certain specified names, trademarks, service marks, trade dress, copyrights, including word mark, logos, uniform designs, mascots, images, colors and color combinations, characters, symbols designs, likenesses and visual representations associated with and/or related to various professionals sports agencies such as NFL Properties, LLC, Major League Baseball Properties, Inc., NBA Properties Inc. and associated with various colleges and universities including an entities known as the License Resource Group and The Collegiate License Company.

10.    "<u>Avoidance Action</u>" means any action which is filed or which may be filed pursuant to the provisions of Sections 510, 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code, any actions based on applicable nonbankruptcy law that may be incorporated or brought under the foregoing sections of the Bankruptcy Code, or any other similar action or proceeding filed to recover property for or on behalf of the Estate or to avoid a lien or transfer.

11.    "<u>Bank Group</u>" means collectively Cathay Bank and China Trust Bank. Cathay Bank is the agent for the Bank Group

12.    "<u>Bank Group Loan Documents</u>" means the Amended and Restated Credit Agreement and Amended and Restated Security Agreement, by and among the Debtors and the

**SHULMAN HODGES &**
**BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

5

4265-000/72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

1   Cathay Bank as agent for the Bank Group each dated as of June 29, 2007, and all related security

2   agreements and loan documents, including the Line A Note dated as of June 29, 2007, in the

3   original amount of $10,400,000; Line A Note dated as of June 29, 2007 in the original amount of

4   $5,600,000; Line B Note dated as of June 29, 2007 in the original amount of $3,380,000; and the

5   Line B Note dated as of June 29, 2077 in the original amount of $1,820,000, as such Loan

6   Documents have been amended and modified, and all related documents, schedules and exhibits.

7        13.   "<u>Berendo Property</u>" means the undeveloped land located in Los Angeles,

8   California, zoned for a multi-unit residential development and commonly referred to as the

9   Berendo Property which is owned separately by the Changs.  Under the Settlement Agreement

10  with the Bank Group attached as **Exhibit 4 to the Disclosure Statement**, the Changs will be

11  contributing 100% of the net sale proceeds generated from the sale of the Berendo Property to

12  make Plan payments to the Bank Group.

13       14.   "<u>Ballot</u>" means the form distributed to each holder of a Claim that is entitled to

14  vote on the Plan and on which is to be indicated an acceptance or rejection of the Plan.

15       15.   "<u>Bankruptcy Code</u>" or "<u>Code</u>" means Title 11 of the United States Code, as now

16  in effect or hereafter amended.  All citations in the Plan to section numbers are to the Bankruptcy

17  Code unless otherwise expressly indicated.

18       16.   "<u>Bankruptcy Court</u>" or "<u>Court</u>" means the United States Bankruptcy Court for the

19  Central District of California, Riverside Division, which has jurisdiction over this bankruptcy

20  case and the Estate of the Debtor, or such successor court or tribunal as may hereafter be

21  confirmed or created by lawful authority with power to confirm reorganization plans under

22  Chapter 11 of the Bankruptcy Code and all applicable statutes, rules, and regulations pertaining

23  thereto.

24       17.   "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure and the

25  Local Bankruptcy Rules for use in the Bankruptcy Court, as now in effect or hereafter amended.

26       18.   "<u>Bar Date</u>" means the last date for filing Proofs of Claim other than

27  Administrative Claims or Claims based upon the rejection of any executory contracts or

28  unexpired leases.  The Bar Date for filing Proofs of Claim is June 14, 2011.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

6

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

19.    "Business Day" means any day other than a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

20.    "Cash" means cash and cash equivalents, including, but not limited to, checks or similar forms of payment or exchange.

21.    "Changs" means collectively the Debtors' shareholders Wen Pin Chang and Mei Lien Chang (each owning one-half of each corporate Debtor).  Mr. Chang is the president of both corporate Debtors and Mrs. Chang is the vice president of both corporate Debtors.

22.     "Claim" means: (a) a right to payment from the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

23.    "Claimant" means the holder of a Claim.

24.    "Class" means a grouping into which Claims which are substantially similar to other Claims have been classified pursuant to Article IV of the Plan.

25.    "Committee" means the Official Committee of Unsecured Creditors formed in this case by the UST.

26.    "Confirmation" means the entry of the Confirmation Order by the Bankruptcy Court.

27.    "Confirmation Date" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

28.    "Confirmation Hearing" means the hearing, including any continued or postponed session thereof, at which time the Bankruptcy Court will consider and determine whether to confirm the Plan.

29.    "Confirmation Order" means the order, as entered, of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

7

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

30.    "<u>Creditor</u>" means the holder of an Allowed Claim.

31.    "<u>Crystal Ridge Property</u>" means the Changs' personal residence located 2819 Crystal Ridge Road, Diamond Bar, California which is encumbered by a second deed of trust in favor of the Bank Group as additional collateral for the obligations owed by the Debtors to the Bank Group.

32.    "<u>Debtors</u>" means collectively Trade Union and Duck House, the Debtors and Debtors in possession in these jointly administered bankruptcy cases.

33.    "<u>Disallowed Claim</u>" means a Claim against the Debtors, which Claim is disallowed pursuant to an order of the Bankruptcy Court as to which fourteen calendar days have passed following entry of such order and no stay pending an appeal of such order is obtained during such period.

34.    "<u>Disbursing Agent</u>" means the person charged with making Distributions pursuant to the terms of the Plan.  The Debtors through their president, Wen Pin Chang, will serve as the Disbursing Agent under the Plan until such time as Mr. Chang is unable or unwilling to serve at which point the Reorganized Debtors will appoint a successor Disbursing Agent.

35.    "<u>Disclosure Statement</u>" means this Disclosure Statement (and all exhibits or schedules annexed thereto or referenced therein) which accompanies the Plan, as the Disclosure Statement may be amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

36.    "<u>Disputed Claim</u>" means any Claim: (a) listed on the Debtors' respective Schedules as unliquidated, disputed, or contingent; or (b) as to which the Debtors, or any other party in interest, has interposed a timely objection or request for estimation or subordination in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation or subordination has not been withdrawn or determined by a Final Order.  A Claim will be considered a Disputed Claim in its entirety if an objection is timely filed to any portion of such Claim.  A Creditor will not obtain any Distributions on account of its entire Claim even if only a portion of the Claim is a Disputed Claim.  See Sections IV. I. and J. of the Disclosure

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

8

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

Statement or Sections III.I. and J. of the Plan for the procedures regarding resolution of Disputed

Claims.

37.    "Disputed Claims Reserve Fund" means the fund created upon the Effective Date

consisting of funds available for Distribution on account of Disputed Claims.

38.    "Distribution" means the Cash which is required to be distributed under the Plan

to the holders of Allowed Claims.

39.    "Duck House" means Duck House, Inc. a California corporation, along with

Trade Union, the Debtors herein.

40.    "Effective Date" means the date not later than thirty days following the date upon

which the Confirmation Order becomes a Final Order; provided, however, that, if an appeal of

the Confirmation Order is timely filed, the Debtors may elect to cause the Plan to become

effective, notwithstanding the pendency of such appeal, so long as no stay of the Confirmation

Order is in effect, by filing with the Bankruptcy Court a notice of such election, in which event

the Plan will become effective as provided herein.

41.    "Estates" means the bankruptcy estates created under Section 541 of the

Bankruptcy Code in these jointly administered bankruptcy cases.

42.    "File," "Filed," or "Filing" means filed with the Bankruptcy Court having

jurisdiction over this bankruptcy case.

43.    "Final Distribution" means, for each Class, the last Distribution to be made to

holders of Allowed Claims in that Class.

44.    "Final Order" means an order or judgment of the Bankruptcy Court, or of any

court of competent jurisdiction where there is pending an action in which the Debtors are a party,

which has not been reversed, stayed, modified, or amended, and as to which: (a) the time to

appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which

no appeal, petition for certiorari, or other proceeding for reargument or rehearing shall then be

pending; or (b) any right to appeal, petition for certiorari, reargument, or rehearing shall have

been waived in writing in form and substance satisfactory to the Debtors; or (c) any appeal,

petition for certiorari, reargument or rehearing has been resolved by the highest court to which

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

9

4265-000/72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

1   the order or judgment was appealed timely or from which certiorari, reargument, or rehearing

2   was sought.

3       45.    "General Unsecured Claim" means an unsecured Claim against the Debtors that

4   is not entitled to priority under Section 507(a) of the Bankruptcy Code, including, without

5   limitation, a Claim based on the rejection of an executory contract or unexpired lease.

6       46.    "Nantong Wheel Company"  means collectively the following foreign companies

7   (1) Nantong Trade Union Aluminum Company (sometimes referred to as Mao Lien Aluminum)

8   and (2) Nantong Trade Union Chrome Plating Company.  Trade Union is the 100% owner of the

9   stock of two companies that comprise Nantong Wheel Company.  .

10      47.     "Net Avoidance Action Proceeds" means all of the Cash proceeds recovered

11  from Avoidance Actions, minus all costs of the Avoidance Actions and administrative expenses

12  of the Estate including, but not limited to, the fees and expenses of the Disbursing Agent and

13  Professionals employed by the Estates, income taxes and payments pursuant to the Plan to

14  creditors holding Allowed Administrative Claims, Allowed Priority Claims and/or Allowed

15  Secured Claims.

16      48.    "Petition Date" means January 31, 2011, the date on which the Debtors filed their

17  respective voluntary petitions under Chapter 11 of the Bankruptcy Code.

18      49.    "Plan" means the Debtors' Chapter 11 Plan, as the Plan may be amended,

19  modified, or supplemented from time to time in accordance with the Bankruptcy Code and

20  Bankruptcy Rules.

21      50.     "Post-Confirmation Estate Claims" means any and all claims and causes of action

22  which constitute property of the Estates including, but not limited to, any Avoidance Actions,

23  whether or not such claims or causes of action are the subject of litigation pending as of the

24  Effective Date.

25      51.   "Priority Claim" means an Administrative Claim, Priority Tax Claim, or Priority

26  Unsecured Claim.

27      52.    "Priority Tax Claim" means a Claim asserted to have priority under Section

28  507(a)(8) of the Bankruptcy Code.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

10

4265-000/72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

53. "<u>Priority Unsecured Claim</u>" means a Claim asserted to have priority under Sections 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of the Bankruptcy Code.

54. "<u>Professionals</u>" means professionals such as attorneys, consultants or accountants employed by the Disbursing Agent in this case after the confirmation of the Plan, including but not limited to, Shulman Hodges & Bastian LLP.

55. "<u>Proof of Claim</u>" means a statement under oath filed in this bankruptcy case by a Claimant in which the Claimant sets forth the amount claimed to be owed to it and sufficient detail to identify the basis for the Claim, in accordance with Federal Rule of Bankruptcy Procedure 3001.

56. "<u>Reorganized Debtors</u>" means the Debtors herein, on or after the Effective Date.

57. "<u>Schedules</u>" means the respective Schedules of Assets and Liabilities and Statement of Financial Affairs filed by each the Debtors, as amended, modified, or supplemented from time to time.

58. "<u>Secured Claim</u>" means a Claim secured by a lien, security interest or other charge against property in which the Estate has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the interest of the holder of such Secured Claim in the Estates' interest in such property, or to the extent of the amount subject to any setoff, as the case may be.

59. "<u>SHB Firm</u>" means Shulman Hodges & Bastian LLP, the Debtors insolvency counsel herein.

60. "<u>State Street Property</u>" means the real property located at #1 Topline Plaza, 4651 State Street, in Montclair, California. The State Street Property is where the Debtors' businesses are located and is owned separately by the Changs' family trust.

61. "<u>Trade Union</u>" means Trade Union International, Inc. a California corporation, along with Duck House, the Debtors herein.

62. "<u>Unclaimed Distribution</u>" means any Distribution which is unclaimed as a result of any of the following: (a) checks which have been returned as undeliverable without a proper

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

11

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

1  forwarding address; (b) checks which were not mailed or delivered because of the absence of a

2  proper address to which to mail or deliver the same; (c) checks which remain unnegotiated for a

3  period of ninety days after the date of issuance.

4      63.  "<u>UST</u>" means The Office of the United States Trustee.

5      64.  "<u>Voting Deadline</u>" means 5:00 p.m. (California time) on August 19, 2011, which is

6  the deadline for holders of impaired Claims to submit a Ballot.

7  **B.**    **<u>Interpretations, Computation of Time and Governing Law</u>**

8      **1.**    **<u>Undefined Terms</u>**

9      Any term used in the Disclosure Statement that is not defined in the Disclosure

10  Statement, either in Section II.A (Definitions) or elsewhere, but that is used in the Bankruptcy

11  Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or

12  the Bankruptcy Rules.

13      **2.**    **<u>Rules of Interpretation</u>**

14      For the purposes of the Disclosure Statement:

15      a.  Whenever, from the context, it is appropriate, each term, whether stated in the

16  singular or the plural, shall include both the singular and the plural.

17      b.  Any reference in the Plan to a contract, instrument, release or other agreement

18  or document being in a particular form or on particular terms and conditions means that such

19  document shall be substantially in such form or substantially on such terms and conditions.

20      c.  Any reference in the Plan to an existing document or Exhibit Filed or to be

21  Filed means such document or Exhibit, as it may have been or may be amended, modified, or

22  supplemented as of the Confirmation Date.

23      d.  Unless otherwise specified in a particular reference in the Plan, all references

24  in the Plan to Sections, Articles or Exhibits are references to Sections, Articles and Exhibits of or

25  to the Plan.

26      e.  Unless otherwise specified in a particular reference in the Plan, the words

27  "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan in its

28  entirety rather than only to a particular paragraph, subparagraph, or clause contained in the Plan.

**SHULMAN HODGES &**
**BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

12

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

f.   Captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.

g.   The provisions of the Plan will control over any description thereof contained in the Disclosure Statement.

h.   Any term used in the Plan that is not defined in the Plan, but that is used in the Bankruptcy Code or in the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules.  Without limiting the foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply hereto.  The definitions and rules of construction contained herein do not apply to the Disclosure Statement or to the exhibits to the Plan except to the extent expressly so stated in the Disclosure Statement or in each exhibit to the Plan.

i.   Except to the extent that federal law, including the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced for all purposes in accordance with, the laws of the State of California, without giving effect to any principles of conflict of laws thereof.

j.   All exhibits to the Plan are incorporated into the Plan and will be deemed to be included in the Plan, regardless of when they are filed.

**3.    Computing Time Periods**

In computing any period of time prescribed  or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**4.    Notices and Delivery of Documents**

All notices, correspondence, and other deliveries under this Disclosure Statement must be directed as follows:

| To the Debtors, Disbursing Agent, or Reorganized Debtors: | Trade Union International, Inc. Duck House, Inc., Attn:  Wen Pin Chang, President 4651 State Street Montclair, CA 91763 Telephone: 909-628-7500 Facsimile: 909-628-0382 |
|---|---|

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

13

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

| With a Copy to: | James. C. Bastian, Jr., Esq |
|---|---|
| | SHULMAN HODGES & BASTIAN LLP |
| | 8105 Irvine Center Drive, Suite 600 |
| | Irvine, California 92618 |
| | Telephone: 949-340-3400 |
| | Facsimile: 949-340-3000 |

## II.    **INTRODUCTION**

Trade Union International, Inc., a California corporation and Duck House, Inc., a California corporation, the Debtors[1] in these jointly administered bankruptcy cases, provide this Disclosure Statement to all of their Creditors and other parties in interest.    The Debtors commenced their respective bankruptcy cases by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code on January 31, 2011.    Trade Union and Duck House are each continuing in possession of their property, and operating and managing their respective business, as debtors-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108.    This document is the Chapter 11 Plan proposed by the Debtors (the Debtors may sometimes be referred to herein as the "Proponents" of the Plan).    Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the Court and which is provided to help you understand the Plan.

The Debtors' Plan is a reorganization plan.    The Debtors' cases are being jointly administered.    The Plan and Disclosure Statement do not represent an attempt by the Debtors to implement a substantive consolidation of the Debtors' assets and liabilities.    The restructuring to be effectuated through the Plan is designed to enable the Debtors to continue operations and afford them sufficient time to repay prepetition debts as detailed in the Plan. The Debtors will make payments under the Plan primarily from continued business operations.    The Plan may also be funded from Net Avoidance Action Proceeds, if any, and any proceeds derived from Post-Confirmation Estate Claims.    Payments to the Bank Group may also be funded from the sale of

---

[1] The definitions of the capitalized terms used in this Disclosure Statement are contained in Section II. of this Disclosure Statement.

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

14

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

1   assets that are not property of the Estates but which such property currently serve as collateral

2   under the Bank Group's Secured Claim.

3       The terms of the Plan are fully set forth in the Plan.  The following is an outline of the

4   Plan:

5       1.      Allowed Administrative Claims will be paid in full on the Effective Date unless

6   the holder of an Allowed Administrative Claim agrees to a different treatment.

7       2.      Allowed Priority Tax Claims will be paid in full within five years of the Petition

8   Date.

9       3.      Allowed Secured Claims are impaired under the Plan and are separately classified

10  in accordance with the Code.  Certain Secured Creditors shall have their debt obligations

11  modified with respect to repayment terms and interest rates as provided in the Plan and are

12  entitled to vote on the Plan.  Other Secured Creditors shall retain, unaltered, all of their legal,

13  equitable and contractual rights and consequently, shall be deemed to vote in favor of the Plan.

14  Creditors with Allowed Secured Claims should review the treatment section herein to see the

15  repayment terms for their specific debts.

16      4.      Allowed General Unsecured Claims are impaired under the Plan.  Depending on

17  the Creditor's election for treatment, Allowed General Unsecured Claims will be paid either (i)

18  20% of their Allowed Claim within thirty days of the Effective Date, or (ii) 50% of their

19  Allowed Claim  payable in annual installments of 10% each over a five year period from the

20  Effective Date, with the first 10% installment payment to be made within thirty days of the

21  Effective Date.

22  **III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTEREST**

23  **A.    Overview**

24      As required by the Bankruptcy Code, the Plan classifies Claims in various classes

25  according to their right to priority.  The Plan states whether each class of Claims is impaired or

26  unimpaired.  The Plan provides the treatment each class will receive.  With respect to each class,

27  the Debtors have not reviewed the proofs of claim, if any, filed by Creditors.  The Debtors

28  reserve the right to object to any of the filed Claims on any reasonable grounds.

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

15

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

## B.    Unclassified Claims

Certain types of Claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtors have not placed the following Claims in a class and the treatment of such claims is set forth below.

### 1.    Administrative Expenses

Administrative expenses are Claims for costs or expenses of administering the Debtors' Chapter 11 cases which are allowed under Code Section 507(a)(2).  The Code requires that all Administrative Claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

Except to the extent that the holder of a particular Allowed Administrative Claim agrees to a different treatment thereof, each Allowed Administrative Claim will be paid in full, in Cash, on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order.  Any holder of an Administrative Claim (including, without limitation, any governmental unit holding an Administrative Claim for post-petition taxes and/or interest and penalties related to such taxes) is required to file a request for payment of its Administrative Claim.  Requests for payment of Administrative Claims must be filed not later than thirty days after the Effective Date, and will be paid on or before the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order.  Any failure by the holder of an Administrative Claim to file a request for payment of its Administrative Claim within thirty days after the Effective Date will forever bar such holder of an Administrative Claim from asserting its Administrative Claim against the Estate.

The following chart lists all of Debtors' estimated Section 507(a)(2) Administrative Claims and their treatment under the Plan:

////

////

///

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

16

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

| Name | Total Estimated | Paid to Date | Total Estimated Required to Be Paid on the Effective Date | Treatment |
|------|-----------------|--------------|-----------------------------------------------------------|-----------|
| Shulman Hodges & Bastian LLP Insolvency counsel for the Debtors | $290,000 | $140,000 | $150,000.00 | In the event that there are unpaid fees and expenses that are allowed by the Court, unless otherwise agreed, the unpaid amounts shall be paid in full, in Cash, on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. |
| Tatum LLC, a division of SFN Professional Services, Reorganization Consultant for the Debtors | $80,000 | $60,000 | $20,000.00 | Paid in full on the Effective Date |
| J. Lan, CPA, Inc. Accountant for the Debtors | $37,000 | $.00 | $37,000 | In the event that there are unpaid fees and expenses that are allowed by the Court, unless otherwise agreed, the unpaid amounts shall be paid in full, in Cash, on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. |
| Winthrop Couchot PC proposed Attorneys for the Committee and Corporate Recovery Associates, proposed Financial Advisor to the Committee | $50,000 | $.00 | $50,000 | In the event that there are unpaid fees and expenses that are allowed by the Court, unless otherwise agreed, the unpaid amounts shall be paid in full, in Cash, on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. |
| Clerk, Bankruptcy Court Fees | $200 | $.00 | $200 | Paid in full on the Effective Date |
| Unpaid United States Trustee Fees | $500 | $.00 | $500 | The United States Trustee Quarterly Fees as of the Effective Date are estimated and will be paid in full to the extent they are due and owing on the Effective Date. |
| Total | $367,700 | $200,000 | $257,700 | |

The above amounts are estimated and the final amounts required to be paid may vary. Further, the Court must rule on all professional fees listed in the chart above before the fees will be owed.  For all fees except the Clerk's Office fees and the United States Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application.  Only the amount of fees allowed by the Court will be owed and required to be paid under the Plan.

The last day to file chapter 11 administrative claims (except for professional fees and expenses) is thirty days after the Effective Date.   Unless otherwise agreed,   allowed administrative expense claims will be paid on the later of the Effective Date or ten days after the entry of a non-appealable order allowing the administrative expense claim.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

17

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

2.    **Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).  Except to the extent that the holder of a particular Allowed Priority Tax Claim agrees to a different treatment thereof, the Code requires that each holder of an Allowed Priority Tax Claim receive on account of such Claim regular installment payments -

i.    of a total value, as of the Effective Date of the Plan, equal to the allowed amount of such Claim;

ii.    over a period ending not later than five years after the Petition Date under Section 301, 302 or 303; and

iii.    in a manner not less favorable than the most favored nonpriority Unsecured Claim provided for by the Plan (other than Cash payments made to a class of creditors under Section 1122(b)).

The Debtors have no Section 507(a)(8) Priority Tax Claims.  If it is determined that there are allowed Section 507(a)(8) Priority Tax Claims, such Allowed Priority Tax Claims will be paid in monthly installment payments such that they are paid in full within five years of the Petition Date, with payments to commence within thirty days of the Effective Date, will include annual interest at the January 31, 2011 published rate for one-year Treasury constant maturities of (.26%), and will be fully amortized in 48 equal payments.  Alternatively, the Allowed Claim amount may be paid in full on the Effective Date.

C.    **Classified Claims**

1.    **Classes of Secured Claims**

Secured Claims are Claims secured by liens on Estate property.  The following chart lists all classes containing Debtors' prepetition Secured Claims and their treatment under the Plan:

////

////

////

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

18

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

| Class No. | Description | Impaired (Y.N) | Treatment |
|---|---|---|---|
| 1-A | Secured Claim of the Bank Group Against both Debtors<br><br>Schedule Claim on Petition Date: $11,500,000<br><br>Nature of Lien and Collateral description:<br>Filing No. 067090643792 on 10/30/2006<br>Filing No. 9714260787 on 5/19/1997 and the latest continuation Filing No. 0771030454 on 2/13/2007covering substantially all assets of the Debtors.<br><br>Priority:<br>First<br><br>Insider of the Debtors:<br>No<br><br>Estimated Value of Collateral including Non-Estate Property:<br>$11,500,000<br><br>The Bank Group was provided with liens against the following non-Estate property owned by the Changs separately: State Street Property and the Crystal Ridge Property<br><br>The Claim of the Bank Group is disputed for the reasons set forth below in Section IV.H.1. | Yes<br><br>The Claimant in this class is entitled to vote on the Plan. | As of the Effective Date, the Reorganized Debtors' obligations to Bank Group under the Bank Group Loan Documents shall be modified such that the Bank Group Loan Documents will reflect the following terms:<br>Subject to Court approval under Federal Rule of Bankruptcy Procedure 9019 and Code Section 364, the Debtors and the Bank Group have reached an agreement for a new loan/financing structure which will provide, among other things for a new revolving line of credit capped at $5,000,000 (with the initial advance to be determined in accordance with the new financing agreements), and three term loans, Term A in the principal amount of $1,370,000, Term B in the amount of $1,620,000 and Term C in the amount of $5,900,000. The line of credit will bear interest at the floating rate of prime plus 1.75% with a floor of 5% and a cap of 9% and the term loans will each bear interest at the rate of 5% per annum and mature on the third anniversary of the date of a Final Order approving the settlement and financing. The settlement and financing agreement are reflected in three documents: Settlement and Release Agreement, the 10th Amended and Restated Loan Agreement and Annex. The Settlement Agreement is attached to the **Disclosure Statement as Exhibit 4** and the 10th Amended and Restated Loan Agreement and Annex are attached as Exhibit A to the Settlement Agreement. A hearing on the Debtors' motion to approve the settlement and new financing is scheduled to be heard concurrent with the Plan Confirmation hearing. The implementation of the Settlement Agreement and financing transaction contemplated thereby is NOT contingent in any way on confirmation or effectiveness of the Plan and may proceed even if the Plan is not confirmed.<br>Total payout: 100%<br>Treatment of lien: Creditor shall retain its first priority lien on the collateral until its Claim has been paid. |

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

| Class No. | Description | Impaired (Y.N) | Treatment |
|---|---|---|---|
| 1-B | Secured Claim of Wells Fargo Financial Leasing Manufacturer Services Group against Trade Union<br><br>Nature of Lien and Collateral description:<br>UCC-1 Filing related to leased forklifts<br><br>Fililng No. 107220526732, on 1/21/2010<br><br>3 - Crown Forklifts Rc5535-35 S/N-S 1a354979, 1a354978, 1a354977; 3 - Douglas 36 Volt Battries 18-125-15 S/N-S 090000815, 090000814, 080019392; 3 - Crown Chargers 390865-336-01 S/N-S 183086508102207, 183086508102222, 183086508081405<br><br>Filing No. 097215401312 on 11/27/2009<br><br>3 - Crown Reach Trucks Rd5725-30 With Batteries And Chargers S/N-S 1A353697, 1A353696, 1A353740<br><br>Priority:<br>First<br><br>Insider of the Debtors:<br>No<br><br>Schedule Claim on Petition Date: $.00<br>Trade Union is current on its payments under this lease. | No<br><br>The Claimant in this class is not entitled to vote on the Plan. | The underlying lease of this Claim shall be assumed by Trade Union on the Effective Date and arrearages, if any, will be paid in full on the Effective Date.  Trade Union is current on its payments related to this lease and it is estimated that there will be no arrearages due on this Claim.<br><br>Treatment of lien:  This Creditor shall retain its lien on the collateral in the same validity and priority as it held prior to the Petition Date until the Allowed Claim amount has been paid.<br><br>Payment:  This Creditor will receive payment on its Claim pursuant to the terms and conditions of the underlying lease documents between the Trade Union Debtor and the Creditor entered into prior to the Petition Date.  In no event shall the total payments received through the Plan exceed the amount of the Allowed Claim. |

**SHULMAN HODGES & BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

| Class No. | Description | Impaired (Y.N) | Treatment |
|---|---|---|---|
| 1-C | Secured Claim of Michelin North America Inc. against Trade Union<br><br>Nature of Lien and Collateral description:<br>Filing No. 107219291143 on 1/27/2010<br><br>Priority:<br>First<br><br>Insider of the Debtors:<br>No<br><br>Schedule Claim on Petition Date: $.00<br>Trade Union is current on its payments under this lease. | No<br><br>The Claimant in this class is not entitled to vote on the Plan. | The underlying lease of this Claim shall be assumed by Trade Union on the Effective Date and arrearages, if any, will be paid in full on the Effective Date. Trade Union is current on its payments related to this lease and it is estimated that there will be no arrearages due on this Claim.<br><br>Treatment of lien: This Creditor shall retain its lien on the collateral in the same validity and priority as it held prior to the Petition Date until the Allowed Claim amount has been paid.<br><br>Payment: This Creditor will receive payment on its Claim pursuant to the terms and conditions of the underlying lease documents between the Trade Union Debtor and the Creditor entered into prior to the Petition Date. In no event shall the total payments received through the Plan exceed the amount of the Allowed Claim. |
| 1-D | Secured Claim of USBancorp against Trade Union<br><br>Nature of Lien and Collateral description:<br>Filing No. 097214827838 on 11/19/2009<br><br>1 Hunter Balancer, Model #GSP972415 ; 1 Hunter Kit - Hunterpro P, Model #2021541 ; 1 Hunter Tire Changer, Model TC3710EW ; 1 Miscellaneous Shipments<br><br>Filing No. 097193421379 on 4/13/2009<br><br>GSP97245120-2154-1TC3710EN<br><br>Priority:<br>First<br><br>Insider of the Debtors:<br>No<br><br>Schedule Claim on Petition Date: $.00<br>Trade Union is current on its payments under this lease. | No<br><br>The Claimant in this class is not entitled to vote on the Plan. | The underlying lease of this Claim shall be assumed by Trade Union on the Effective Date and arrearages, if any, will be paid in full on the Effective Date. Trade Union is current on its payments related to this lease and it is estimated that there will be no arrearages due on this Claim.<br><br>Treatment of lien: This Creditor shall retain its lien on the collateral in the same validity and priority as it held prior to the Petition Date until the Allowed Claim amount has been paid.<br><br>Payment: This Creditor will receive payment on its Claim pursuant to the terms and conditions of the underlying lease documents between the Trade Union Debtor and the Creditor entered into prior to the Petition Date. In no event shall the total payments received through the Plan exceed the amount of the Allowed Claim. |

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

21

4265-000/72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

| Class No. | Description | Impaired (Y.N) | Treatment |
|---|---|---|---|
| 1-E | Secured Claim of Key Equipment Finance against Trade Union<br><br>Nature of Lien and Collateral description:<br>Filing No. 077111569522 on 4/26/2007<br><br>2005 Caterpillar NRR30P Forklift S/N# 2GL07481, 2004 Caterpillar NPV60 Forklift S/N# 2HL11503<br><br>Priority:<br>First<br><br>Insider of the Debtors:<br>No<br><br>Schedule Claim on Petition Date: $.00<br>Trade Union is current on its payments under this lease. | No<br><br>The Claimant in this class is not entitled to vote on the Plan. | The underlying lease of this Claim shall be assumed by Trade Union on the Effective Date and arrearages, if any, will be paid in full on the Effective Date.  Trade Union is current on its payments related to this lease and it is estimated that there will be no arrearages due on this Claim.<br><br>Treatment of lien: This Creditor shall retain its lien on the collateral in the same validity and priority as it held prior to the Petition Date until the Allowed Claim amount has been paid.<br><br>Payment: This Creditor will receive payment on its Claim pursuant to the terms and conditions of the underlying lease documents between the Trade Union Debtor and the Creditor entered into prior to the Petition Date.  In no event shall the total payments received through the Plan exceed the amount of the Allowed Claim. |

## 2.    Classes of Priority Unsecured Claims

Certain Priority Claims that are referred to in Code Sections 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), and 507(a)(7) are required to be placed in classes.  These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a Claim receive cash on the Effective Date equal to the allowed amount of such Claim.  However, a Class of unsecured Priority Claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such Claim.  There are no 507(a)(3), (a)(4), (a)(5), (a)(6) and (a)(7) unsecured Priority Claims.  Therefore, the Plan provides for no payments to holders of Allowed Priority Claims pursuant Sections 507(a)(3), (a)(4), (a)(5), (a)(6) and (a)(7) of the Bankruptcy Code.

## 3.    Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).  The following chart identifies the Plan's treatment of the classes of Claims containing all of Debtors' General Unsecured Claims.  **See Exhibit 3 to the Disclosure**

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

22

4265-000/72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

**Statement** for additional information about each General Unsecured Claim.  **Exhibit 3 to the Disclosure Statement** indicates General Unsecured Claims of approximately $8,370,833.63 against Trade Union and approximately $977,883.25 against Duck House for a total of approximately $9,348,716.88.  **Exhibit 3 to the Disclosure Statement** does not reflect payments that have been made on a certain Claims pursuant to prior Court orders in the case.  In addition, the sale of the Nantong Stock will impact the total of Unsecured Claims against the Estates.  Under the proposed sale of the Nantong Stock  described in Section III.D.1., of the Disclosure Statement, Unsecured Claims held by affiliates and/or insiders against the Estates totaling approximately $9,070,795 will be resolved.  If the sale of the Nantong Stock does not close for any reason and/or these insider or affiliate Claims are not resolved through such transaction such that they will not remain against the Debtors' Estates, such Claims will be subordinated to other Allowed General Unsecured Claims and shall not receive distributions as part of Class 2. Thus, under the Plan, the Unsecured Claims are estimated to be approximately $893,646 as follows: Unsecured Claims against Trade Union of approximately  $727,633 and unsecured claims of Duck House of approximately $166,013, for a total of approximately  $893,646.

| Class No. | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
|  |  |  |  |
| 2 | General Unsecured Claims | Yes<br><br>Impaired; claims in this class are entitled to vote on the Plan | Holders of Allowed General Unsecured Claims shall receive their pro rata share of $750,000 based on the amount of their Allowed Claim compared to the sums to be distributed,  payable as follows:<br><br>• Five annual payments each in the  amount of $150,000.<br>• The first annual payment to Class 2 shall be made on or before February 1, 2012<br>• The second annual payment to Class 2 shall be made on or before February 1, 2013<br>• The third annual payment to Class 2 shall be made on or before February 1, 2014<br>• The fourth annual payment to Class 2 shall be made on or before February 1, 2015<br>• The fifth annual payment to Class 2 shall be made on or before February 1, 2016 |

////

////

////

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

23

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

**4.** **Class of Interest Holders**

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the debtor. If the debtor is a corporation, entities holding preferred or common stock in the debtor are the interest holders. If the debtor is a partnership, the interest holders include both general and limited partners. If the debtor is an individual, the debtor is the interest holder. The following chart identifies the Plan's treatment of the class of Interest Holders:

| Class | Description | | Impaired | Treatment |
|---|---|---|---|---|
| 3 | Interest Holder<br><br>Wen Pin Chang<br>Mei Lien Chang | Percentage of Shares<br><br>50%<br>50% | No | The rights of Interest Holders are not modified by the Plan. The Existing Stock will remain in effect. Under the Settlement Agreement with the Bank Group attached to the **Disclosure Statement as Exhibit 1**, the Interest Holders are providing new value contribution under the Plan such they will be providing 100% of the net proceeds that are generated from the sale of their interest in the Berendo Property which shall be used to pay the Bank Group. The sale of the Berendo Property is estimated to generate from $400,000 to $500,000 in net sale proceeds to be paid to the Bank Group. As such, to the extent necessary, the Debtors assert that the Plan complies with the absolute priority rule under Code Section 1129(b)(2)(B)(ii)[2]. |

**Notwithstanding any other provision of the Plan, no payments or Distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent it becomes an Allowed Claim. Any Proof of Claim filed which differs from the Scheduled amount is deemed to be a Disputed Claim.**

**D.** **Means of Effectuating the Plan**

The Plan is a reorganization plan accomplished through the continuation of the Debtors' respective business operations. In other words, the Debtors anticipate that Plan payments to creditors will be derived from the business revenues and available cash from the revolving credit

---

[2]     Under 11 U.S.C. Section 1129(b)(2)(B), a plan is fair and equitable as to a class of unsecured claims if each holder of such class receives or retains property of a value, as of the effective date of the plan, equal to the allowed amount of such claim or that the holder of any junior claim or interest receive nothing under the plan. The latter requirement is referred to as the "absolute priority rule." See, Northern Pacific Railway Company v. Boyd, 22 S. Ct. 554 (1913). The absolute priority rule applies only in cases when a class of unsecured claims or equity interests is impaired and does not accept the Plan. In that event, the absolute priority rule does not apply to all classes of unsecured claims and equity interests, but only to the dissenting class and classes junior to the dissenting class.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

24

4265-000/72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

1  facility with the Bank Group under the Settlement Agreement with the Bank Group and as set

2  forth in the Debtors' projections attached to the **Disclosure Statement as Exhibit 1.**  The

3  Settlement Agreement and financing contemplated thereby, however, is not contingent upon the

4  confirmation or effectiveness of the Plan.  Payments to the Bank Group  may also be funded

5  from the Nantong Wheel Company transaction described above in Section III.D.1., from sale of

6  assets that are not property of the Estates, some of which such property currently serves as

7  collateral under the Bank Group's Secured Claim and from new value contribution by the

8  Changs whereby they will contribute 100% of the net sale proceeds generated from the sale of

9  the Berendo Property.

10        The Cash in the Estate as of the Confirmation Date and the Cash which will be obtained

11  by the Estate after the Confirmation Date will be distributed to Allowed Administrative Claims,

12  Allowed Priority Tax Claims, Allowed Secured Claims, and Allowed General Unsecured Claims

13  on account of their Allowed Claims amounts pursuant to the provisions of the Plan.

14        As discussed in the Disclosure Statement, the Debtors will be required to meet certain

15  obligations under the Plan with regard to payments due on or shortly after the Effective Date,

16  including Allowed Administrative Claims.  As set forth in the financial projections attached to

17  the **Disclosure Statement as Exhibit 1**, there will be sufficient funds available to make the

18  Effective Date payments.  The amount of Claims may be further reduced after Claims analysis

19  and objections are completed.  Therefore, the Debtors have sufficient resources to meet their

20  obligations based on its projected future income.

21        The Reorganized Debtors will have the right to pay any Allowed Claim of any Creditor at

22  any time on or after the Effective Date, without premium or penalty.  Thus,  if the Debtors'

23  operating projections improve, at the Debtors' sole discretion, Distributions under the Plan may

24  commence earlier than on the dates set forth in the Plan.

25        The Disbursing Agent will make all Distributions pursuant to the provisions of the Plan.

26

27

28

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

**E.**    **Post-Confirmation Management**

The Debtors will retain possession of their respective property and the management of their respective financial affairs after the confirmation of the Plan as the Reorganized Debtors under the following management:

| Name | Compensation |
|---|---|
| Wen Pin Chang<br>President | $4,294.81 each bi-weekly pay period plus medical insurance and reimbursements as incurred |
| Mei Lien Chang<br>Vice President | $1,872.31 for each bi-weekly pay period plus medical insurance and reimbursements as incurred |
| Gary Chang<br>Marketing Manager for Trade Union | $2,000 for each bi-weekly pay period plus medical insurance and reimbursements as incurred |
| Howard Chang<br>Sales Executive for Trade Union | $1,200 for each bi-weekly pay period plus medical insurance and reimbursements as incurred |

Under the Settlement Agreement with the Bank Group, the above compensation may be increased depending on the Debtors' financial performance as set forth therein.  The Debtors under the direction of Wen Pin Chang and Mei Lien Chang shall serve as the Disbursing Agent and shall have exclusive right to investigate and prosecute any and all claims of the Estate, including but not limited to any Avoidance Actions and any Post-Confirmation Estate Claims and shall have exclusive authority to oversee the Disbursement of the Cash in accordance with the Plan.   The Disbursing Agent is personally familiar with and is custodian of the records of the Debtors and will be able to perform the Disbursing Agent duties more efficiently and less expensively than any other parties in interest that do not have the knowledge and familiarity of the Debtors' financial records.

The Debtors as the Disbursing Agent shall serve without bond and shall receive no compensation for Disbursing Agent services except through the compensation noted above.

The Disbursing Agent shall exercise reasonable business judgment in determining whether to prosecute, settle or take action regarding any claims of the Estate, including but not limited to Avoidance Actions and the Post-Confirmation Estate Claims.  The Disbursing Agent

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

26

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

1   may compromise or settle any all claims of the Estate, including but not limited to Avoidance

2   Actions and Post-Confirmation Estate Claims without further notice, hearing or Court order.

3          The Disbursing Agent shall be responsible for all actions necessary to maintain and

4   maximize the affairs of the Reorganized Debtors.  The duties of the Disbursing Agent include

5   preparing and filing the post-confirmation status reports with the Office of the United States

6   Trustee and paying all post-confirmation quarterly fees of the Office of the United States Trustee

7   until the bankruptcy case is dismissed or a final decree has been entered, whichever occurs first.

8   **F.     Employment and Compensation of Professionals**

9          In carrying out the duties under the Plan, the Disbursing Agent shall use the services of

10  professionals deemed to be appropriate.  Except as set forth herein to the contrary, any

11  professional employed by the Debtors or the Disbursing Agent in this bankruptcy case after the

12  confirmation of the Plan seeking payment of its post-confirmation fees and costs will be entitled

13  to seek payment of such fees and costs without the need for any further order of the Bankruptcy

14  Court.

15  **G.     Post-Confirmation Estate Claims**

16         The right to enforce, litigate, collect, and settle, on behalf of the Estate (at the expense of

17  the Estate), any and all Claims and causes of action which constitute property of the Estate

18  including, but not limited to, any Avoidance Actions, whether or not such Claims or causes of

19  action are the subject of litigation pending as of the Effective Date (collectively, the "Post-

20  Confirmation Estate Claims"), shall be vested solely in the Disbursing Agent as of the Effective

21  Date.  From and after the Effective Date, the Disbursing Agent shall have the sole right to

22  enforce, file, prosecute, collect, or settle, any Post-Confirmation Estate Claims.  The Disbursing

23  Agent is personally familiar with and is custodian of the records of the Debtors as they pertain

24  Post-Confirmation Estate Claims and will be able to enforce, collect and settle the Post-

25  Confirmation Estate Claims more efficiently and less expensively than any other parties in

26  interest that do not have the knowledge and familiarity of the Debtors' financial records.

27         Any litigation based upon Post-Confirmation Estate Claims will be filed no later than two

28  years year after the Effective Date, or within any applicable limitations period, or within such

**SHULMAN HODGES &**
**BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

27

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

1   additional period of time as the Bankruptcy Court may allow upon motion of the Disbursing

2   Agent, after such notice as the Bankruptcy Court may deem appropriate.  In the event that

3   litigation based upon any Post-Confirmation Estate Claim is not timely commenced, such Post-

4   Confirmation Estate Claim will be deemed forever waived by the Estate and neither the Debtors,

5   Disbursing Agent nor any other party-in-interest will have the right to pursue the same; provided,

6   however, that any such Post-Confirmation Estate Claim, may be utilized as a defense against or

7   offset to any Claim or cause of action which may be brought against the Estates.

8   Notwithstanding the rights of the Disbursing Agent with respect to Post-Confirmation

9   Estate Claims, nothing in the Plan will require the Disbursing Agent to prosecute or litigate any

10  such matters, all of which may be decided by the Disbursing Agent in his sole discretion.

11  THE DEBTORS HAVE NOT FULLY REVIEWED WHETHER POST-

12  CONFIRMATION ESTATE CLAIMS EXIST, INCLUDING, WITHOUT LIMITATION,

13  WHETHER OR NOT THERE ARE ANY AVOIDANCE ACTIONS WHICH MAY BE

14  BROUGHT AFTER THE EFFECTIVE DATE.  THIS INVESTIGATION IS ON-GOING AND

15  WILL OCCUR IN LARGE PART AFTER THE EFFECTIVE DATE, AS A RESULT,

16  CREDITORS AND OTHER PARTIES-IN-INTEREST SHOULD BE, AND ARE PURSUANT

17  TO THE TERMS OF THE PLAN, SPECIFICALLY ADVISED THAT, NOTWITHSTANDING

18  THAT THE EXISTENCE OF ANY PARTICULAR POST-CONFIRMATION ESTATE

19  CLAIM MAY NOT BE LISTED, DISCLOSED, OR SET FORTH IN THE PLAN OR THE

20  DISCLOSURE STATEMENT, A POST-CONFIRMATION ESTATE CLAIM MAY BE

21  BROUGHT AGAINST ANY CLAIMANT AT ANY TIME, SUBJECT TO THE BAR DATE

22  LIMITATIONS SET FORTH IN THE PLAN.

23  **1.      Potential Claims Regarding Bank Group and its Allowed Secured Claim**

24  **Amount (Resolved Under the Plan)**

25  Debtors are investigating whether or not the Bank Group's claims are secured and to

26  what extent.  As such, the Debtors hereby reserve their right to challenge the validity, amount

27  and priority of any Secured Claim asserted by the Bank Group in these cases.

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

1      Debtors are also investigating whether or not the Bank Group is liable for, among other

2  things, exercising excess control over Debtors, Debtors' financial structure and affairs and for

3  directing Debtors and Debtors' principals to liquidate various assets to their great detriment

4  through the false promise of (1) extensions of the then existing loan maturity and terms and (2)

5  promises to work with Debtor to preserve its key business operations, while at all times intending

6  to force the liquidation of the Debtor's business.

7      Based on the foregoing, the Debtors may have claims against the Bank Group for

8  declaratory relief, accounting, lender liability, equitable subordination and other theories **which**

9  **will be resolved through the compromise and settlement described above in Class 1A.**

10 **H.**    **Objections to Claims**

11     The right to litigate, resolve, and settle objections to Claims (at the expense of the

12 Estates), whether or not the subject of litigation as of the Effective Date, will be vested solely in

13 the Disbursing Agent as of the Effective Date.  From and after the Effective Date, the Disbursing

14 Agent shall have the sole right to file, prosecute, litigate, and settle any objections to Claims,

15 whether or not any such objection is pending as of the Effective Date.  The Disbursing Agent is

16 personally familiar with and is custodian of the records of the Debtors as they pertain Claims and

17 will be able to litigate, resolve and settle objections to Claims more efficiently and less

18 expensively than any other parties in interest that do not have the knowledge and familiarity of

19 the Debtors' financial records.

20     Notwithstanding that the Disbursing Agent shall have the right to file, litigate, prosecute,

21 and settle objections to Claims on behalf of the Estate, nothing contained herein will be deemed

22 to obligate the Disbursing Agent to take any such actions, all of which will be determined in the

23 Disbursing Agent's sole discretion.

24     **Any Claims listed as Disputed in the Plan and Disclosure Statement and the**

25 **Exhibits attached thereto will be subject to claims objections proceedings.**  HOWEVER,

26 THE DEBTORS HAVE NOT FULLY REVIEWED THE CLAIMS OR DETERMINED

27 WHETHER OBJECTIONS TO CLAIMS EXIST.  THIS INVESTIGATION IS ONGOING

28 AND WILL OCCUR IN LARGE PART AFTER THE EFFECTIVE DATE.  CREDITORS

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

29

4265-000/72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

1   AND OTHER PARTIES-IN-INTEREST SHOULD BE, AND ARE PURSUANT TO THE

2   TERMS OF THE PLAN SPECIFICALLY ADVISED THAT, NOTWITHSTANDING THAT

3   THE EXISTENCE OF ANY PARTICULAR OBJECTION TO CLAIM MAY NOT BE

4   LISTED, DISCLOSED, OR SET FORTH IN THE PLAN OR DISCLOSURE STATEMENT,

5   AN OBJECTION TO CLAIM MAY BE BROUGHT AGAINST ANY CLAIMANT AFTER

6   THE EFFECTIVE DATE.

7   **I.    Pending Disputed General Unsecured Claims as of the Date of Distribution**

8          In the event that any objection to any General Unsecured Claim should be pending as of

9   the date on which a Distribution is owed to the holder of such General Unsecured Claim, no

10  Distribution will be made on account of such disputed General Unsecured Claim until such

11  Disputed Claim has been determined and allowed by a Final Order.  In the event that a Disputed

12  Claim is allowed by a Final Order, within five Business Days after such Disputed Claim is

13  allowed by such Final Order, such Allowed General Unsecured Claim will be paid to the extent

14  of the Distributions previously made on account of Allowed General Unsecured Claims in the

15  same Class.  Further Distributions, if any, on account of such Allowed General Unsecured Claim

16  will be paid directly to the holder of such Allowed General Unsecured Claim, in an aggregate

17  amount not to exceed the amount of the General Unsecured Claim allowed by the Final Order.

18  **J.    Unclaimed Distributions**

19         Distributions to holders of Allowed Claims will be made either:  (a) at the addresses set

20  forth in the Proof of Claim filed by the Creditor; or (b) at the address set forth in any written

21  notice of address change delivered to the Debtors or the Disbursing Agent after the date on

22  which any related Proof of Claim was filed; or (c) at the address reflected in the Schedules

23  relating to the applicable Allowed Claim if no Proof of Claim has been filed by the Creditor and

24  neither the Debtors nor the Reorganized Debtors have received a written notice of a change of

25  address.

26         The Disbursing Agent shall not be required to perform any investigation or inquiry as to

27  the proper address for such Creditor if the address stated in any Proof of Claim filed by the

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

30

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

Creditor, written notice of change of address filed by the Creditor, or in the Schedules is incorrect.

Any Unclaimed Distribution provided for under the Plan (which will include: (a) checks which have been returned as undeliverable without a proper forwarding address; (b) checks which were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same; or (c) checks which remain un-negotiated for a period of ninety days, will be retained and utilized by the Disbursing Agent.

Following the earlier to occur of: (a) two (2) years after a Distribution becomes an Unclaimed Distribution, or (b) ninety days after the making of the Final Distribution under the Plan (collectively, the "Unclaimed Distribution Holding Period"), such Unclaimed Distribution will become property of the Disbursement Fund, free and clear of any restrictions thereon, and the holders of Allowed Claims otherwise entitled to such Unclaimed Distributions will cease to be entitled thereto and their Claims based thereon will be deemed discharged, waived, and forever barred.

Pursuant to Bankruptcy Code Section 347, in the event that Unclaimed Distributions remaining in the Disbursement Fund after five years from the date of entry of the Confirmation Order are less than $5,000, such Unclaimed Distributions shall revert to the Disbursing Agent as compensation for the Disbursing Agent.  In the event that Unclaimed Distributions remaining in the Disbursement Fund after five years from the date of entry of the Confirmation Order are $5,001 or more, after payment of all costs of administration of the Plan including payment of Allowed Administrative Claims, Allowed Priority Claims and/or Allowed Secured Claims, such Unclaimed Distributions shall be distributed on a pro rata basis to Allowed General Unsecured Claims.

**K.** **Other Provisions of the Plan**

    **1.** **Executory Contracts and Unexpired Leases**

        **a.** **Assumptions – Trade Union**

The following are the unexpired leases and executory contracts that are to be <u>assumed</u> as obligations of the Trade Union Reorganized Debtor under the Plan:

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

31

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

| Name of Other Parties to Lease or Contract | Description of Lease or Contract |
|---|---|
| Wen Pin Chang and Mei Lien Chang | Lease for the Debtors' business premises located at 4651 State Street, Montclair, CA 91763<br>Five year lease ending January 31, 2013 |
| Wells Fargo Financial Leasing Manufacturer | 3 - Crown Forklifts Rc5535-35  S/N-S 1a354979, 1a354978, 1a354977; 3 - Douglas 36 Volt Battries 18-125-15  S/N-S 090000815, 090000814, 080019392; 3 - Crown Chargers 390865-336-01  S/N-S 183086508102207, 183086508102222, 183086508081405<br>Lease Expires on 1/21/2013<br><br>3 - Crown Reach Trucks Rd5725-30 With Batteries And Chargers  S/N-S 1A353697, 1A353696, 1A353740<br>Lease expires on 11/27/2012 |
| Key Equipment Finance | Lease for 2005 Caterpillar NRR30P Forklift S/N# 2GL07481, 2004 Caterpillar NPV60 Forklift S/N# 2HL11503 |

### b.    <u>Assumptions – Duck House</u>

Pursuant to the Assume Licenses Order, Duck House has assumed the various prepetition license agreements whereby Duck House is licensed to sell in the United States products which utilize certain specified names, trademarks, service marks, trade dress, copyrights, including word mark, logos, uniform designs, mascots, images, colors and color combinations, characters, symbols designs, likenesses and visual representations associated with and/or related to various professionals sports agencies such as NFL Properties, LLC, Major League Baseball Properties, Inc., NBA Properties Inc. and associated with various colleges and universities including an entity known as the License Resource Group.

The following are the additional unexpired leases and executory contracts that are to be <u>assumed</u> as obligations of the Duck House Reorganized Debtor under the Plan:

| Name of Other Parties to Lease or Contract | Description of Lease or Contract |
|---|---|
| Wen Pin Chang and Mei Lien Chang | Lease for the Debtors' business premises located at 4651 State Street, Montclair, CA 91763<br>Five year lease ending January 31, 2013 |

The assumption of the lease will serve the bests interests of the Estates and creditors.  If the Debtors rejected the lease, they would incur a substantial lease rejection damages claims and

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

32

incur costs to locate a new business premises and undertake such a move. The costs for such a move of the Debtors' business operations could be astronomical.    Furthermore, prior to the Petition Date, the monthly lease payment was reduced to reflect lower rental rates throughout the area.    As such, based on good business judgment, the Debtors believe that the lease should be assumed under the Plan.

### (1)    General Assumption Procedures

On the Effective Date, each of the unexpired leases and executory contracts listed above shall be assumed as obligations of the Reorganized Debtors.  The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each lease and contract listed above.  If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of  the Plan.

Any monetary defaults under each executory contract or unexpired lease to be assumed under the Plan will be satisfied, pursuant to Section 365 of the Bankruptcy Code, in either of the following ways: (1) by payment of the default amount in quarterly cash installments commencing on the Effective Date and continuing for one year; or (2) by payment of the default amount on such other terms as agreed to by the Reorganized Debtors and the non-debtor parties to such executory contract or unexpired lease.

In the event of a dispute regarding (i) the amount or timing of any cure payments, (ii) the ability of the Reorganized Debtors to provide adequate assurance of future performance under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption (or assumption and assignment) of the executory contract or unexpired lease to be assumed, the Reorganized Debtors will pay any undisputed cure amount when such payments otherwise are due under the Plan, and the disputed amounts will be paid following the entry of a Final Order resolving the dispute and approving assumption.

### 2.    Rejections

On the Confirmation Date, except for any executory contract or unexpired lease specifically assumed or rejected pursuant to a prior order of the Bankruptcy Court or assumed

**SHULMAN HODGES &**
**BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

33

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

pursuant to the Plan, each executory contract or unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms will be deemed rejected pursuant to Section 365 of the Bankruptcy Code.   Therefore, rejections include but are not limited to the following:  **None**

The order confirming the Plan shall constitute an Order approving the rejection of the lease or contract.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. <u>See</u> Section I.B.3. of the Disclosure Statement for the specific date.

THE  BAR  DATE  FOR  FILING  A  PROOF  OF  CLAIM  BASED  ON  A  CLAIM ARISING FROM THE REJECTION OF LEASE OR CONTRACT IS THIRTY DAYS FROM THE CONFIRMATION DATE.  Any Claim based on the rejection of a contract or lease will be barred if the proof of Claim is not timely filed, unless the Court later orders otherwise.

Proofs of Claim for any Claims arising by reason of any rejection of executory contracts or unexpired leases pursuant to the Plan shall be filed and served upon the Disbursing Agent and counsel for the Disbursing Agent within thirty days after the Confirmation Date.  In the event that any such Proof of Claim is not filed and served as set forth herein, such Claim will be deemed conclusively to be waived and will be forever barred in the Case, without further notice. Any Claim timely asserted hereunder arising out of the rejection of an executory contract or unexpired lease will be deemed to be a General Unsecured Claim under the Plan, but will not automatically become an Allowed Claim.

**3.**     <u>**Changes In Rates Subject To Regulatory Commission Approval**</u>

The Debtors are not subject to governmental regulatory commission approval of rates. The Debtors are not regulated by a governmental commission.

**4.**     <u>**Retention of Jurisdiction**</u>

Until this Plan has been fully consummated, the Bankruptcy Court shall retain jurisdiction to the extent provided by law, including, but not limited to, the following purposes:

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

34

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

1.      The classification, allowance, disallowance, or estimation of the Claim of any Claimant and the re-examination of Claims which have been allowed for the purposes of determining acceptance of the Plan at the time of the Confirmation Hearing and the determination of such objections as may be filed to Claims.  The failure by the Debtors to object to or to examine any Claim for the purpose of determining acceptance of this Plan shall not be deemed to be a waiver of the right of Debtors or the Disbursing Agent to object to or to re-examine the Claim, in whole or in part, at a later date.

2.      Except for as otherwise provided herein, the determination of all questions and disputes regarding title to the assets of Debtors, the Estates, or the Reorganized Debtors and the determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to any action pending as of the Confirmation Date, in which the Debtors or the Reorganized Debtors are a party.

3.      The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

4.      The resolution of any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving  the Debtors or the Reorganized Debtors that may be pending on the Effective Date.

5.      The modification of the Plan after confirmation pursuant to the Bankruptcy Code and the Bankruptcy Rules, or if in the best interests of the Estate and the Creditors, modification of this Plan even after the Plan has been substantially consummated.

6.      The enforcement and interpretation of the terms and conditions of the Plan or the Confirmation Order, and the determination of such matters, and the making of such orders consistent with the Plan as may be necessary or desirable to effectuate the provisions of the Plan.

7.      The determination, either before or after the closing of this bankruptcy case, of any Claims concerning state, local, and federal taxes pursuant to Section 346, 505, 525, or 1146 of the Bankruptcy Code or other applicable law, and the Debtors', Reorganized Debtors', or the

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

35

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

Estates' entitlement, if any, to tax attributes which may have been property of the Estates, either before or after the closing of these bankruptcy cases.

8.    The shortening or extending, for cause, of the time fixed for doing any act or thing under the Plan, on such notice, if any, as the Bankruptcy Court shall determine to be appropriate.

9.    The entry of any order, including, without limitation, any injunction, to enforce the title, rights, and powers of the Debtors or the Reorganized Debtors and such limitations, restrictions, terms, and conditions of such title, rights, and powers as the Bankruptcy Court may deem necessary.

10.    The determination of any disputes arising under or relating to any order entered by the Bankruptcy Court in the bankruptcy case.

11.    The determination of the validity, extent, or priority of any liens and security interests against property of Debtors, the Reorganized Debtors, or the Estates.

12.    The determination of all actions and proceedings which relate to pre-confirmation matters affecting the Debtors or the Estates whether such action or proceeding is brought before or after the Effective Date.

13.    The liquidation or allowance of any Claim as well as any objection or dispute concerning any Claim of the Estates.

14.    The determination of all questions and disputes regarding collection of assets of Debtors or the Estates as of the Confirmation Date.

15.    The entry of an order concluding and terminating the bankruptcy cases.

16.    Such other matters to the extent provided by law.

**5.    <u>Injunction With Respect to Proceeds of Sale of Berendo Property</u>**

As the pledge and delivery of the net proceeds of the sale of the Berendo Property by the Changs to the Bank Group under the settlement with the Bank Group and the financing described in Class 1-A above is critical to the payments to the Bank Group contemplated  herein and the new value contribution to be made by the Interest Holders described herein, the Plan shall

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

36

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

1  impose an injunction against any and all Creditors from seeking to attach the Changs' interest in

2  the Berendo Property or any proceeds to be received by the Changs from any sale.

3  <center>**IV.    EFFECT OF CONFIRMATION OF THE PLAN**</center>

4  **A.    Discharge**

5  To the extent specified in Bankruptcy Code Section 1141, the Debtors shall be discharged

6  of liability for payment of debts incurred before confirmation of the Plan.   However, the

7  discharge will not discharge any liability imposed by the Plan.

8  **B.    Exculpation**

9  Upon the occurrence of the Effective Date, the Debtors, the Reorganized Debtors, and

10  their agents and professionals (including counsel to the Debtors) shall be deemed to have no

11  liability for any act or omission in connection with, or arising out of, the pursuit of approval of

12  the Disclosure Statement, the solicitation of votes for confirmation of the Plan, for violation of

13  any applicable law, rule or regulation governing solicitation of acceptance or rejection of the

14  Plan or the offer, issuance, sale, or purchase of securities offered or sold under the Plan.   As of

15  the Effective Date, and without the necessity of any further act, the  holders of Claims against the

16  Debtors that receive a Distribution under the Plan (collectively the "Releasors") shall be deemed

17  to release and waive any and all Claims, liabilities, and causes of action, of any kind, nature or

18  description, whether matured or unmatured, contingent or absolute, liquidated or unliquidated,

19  relating to the Debtors or their Estates, that any of the Releasors had or through the Effective

20  Date against Debtors and their Estates (collectively the "Releasees") including, those arising

21  under the Bankruptcy Code and non-bankruptcy law, and any subordination, alter ego,

22  indemnification or contribution theories of recovery, and interest or other costs, penalties, legal,

23  accounting and other professional fees and expenses, and incidental, consequential and punitive

24  damages payable to third parties to the fullest extent permitted by applicable law.

25  Notwithstanding the foregoing, nothing herein shall release the Reorganized Debtors

26  from their duties under the Plan.

27

28

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

37

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

**C.       Revesting of Property in the Debtors**

Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the respective Estates in the respective Debtors subject to the Allowed Secured Claims of the Bank Group. After the Confirmation Date, the sale of any property owned by the Debtors shall not be subject to or require Court approval.

Except as set forth in the Plan and in the Bank Group settlement and financing documents attached as **Exhibit 4 to the Disclosure Statement** to the contrary, on the Effective Date, the property of the Estate will vest in the Reorganized Debtors, free and clear of any Claims, liens, encumbrances, or interests of Creditors, Interest Holders, parties-in-interest, and other entities.

From and after the Effective Date, the Reorganized Debtors may acquire, and dispose of property and settle and compromise claims without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than restrictions expressly imposed by the Plan, the Confirmation Order, and any document, agreement, or instrument delivered in connection therewith including those attached as **Exhibit 4 to the Disclosure Statement**.

Except as otherwise provided in the Plan or in the Confirmation Order, the rights afforded in the Plan and the treatment of all Claims in the Plan will be in exchange for and in complete satisfaction, discharge, and release of all Claims (including Administrative Claims and any interest accrued on any Claim from and after the Petition Date) against the Debtors and any of its assets and properties.

**D.       Conditions Precedent to Confirmation**

Unless otherwise waived by the Debtors, conditions to confirmation of the Plan include entry of the Confirmation Order in a form acceptable to the Debtors that provides for, among other things, the following:  (1) Approval of all transactions, agreements and documents to be effected pursuant to the Plan; (2) Authorization of the Debtors to execute all documents reasonably necessary to effectuate the transfers contemplated by the Plan; (3) Approval of the releases, injunctions, and exculpations granted in the Plan; (4) a finding that the Plan complies with all applicable provisions of the Code including that the Plan was proposed in good faith.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

38

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

### E.    Modification of the Plan

The Debtors may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or re-voting on the Plan.

The Debtors and/or the Disbursing Agent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated <u>and</u> (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Bankruptcy Court determines that a post-confirmation modification of the Plan is in the best interest of the Estate and the Creditors, even after substantial consummation of the Plan, then, notwithstanding the provisions of Section 1127(b) of the Bankruptcy Code, the Bankruptcy Court may authorize such modification of the Plan, after notice and a hearing, in such manner and under such conditions, as the Bankruptcy Court deems appropriate.

### F.    Post-Confirmation Status Reports

Within 120 days of the entry of the order confirming the Plan, the Disbursing Agent shall file a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured Creditors, and those parties who have requested special notice.  Further status reports shall be filed every 120 days and served on the same entities.

### G.    Post-Confirmation Conversion/Dismissal

A Creditor or party in interest may bring a motion to convert or dismiss the case under Section 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Bankruptcy Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 Estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate.  The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances.  The Court may revoke the order if the order of confirmation was procured by fraud and if a party

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

39

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

1    in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry

2    of the order of confirmation.

3    **H.**     **Substantial Consummation**

4        Upon the Effective Date and payment of the first Distribution to Allowed General

5    Unsecured Claims, the Plan will be deemed substantially consummated under Bankruptcy Code

6    sections 1101 and 1127(b).

7

8

9    Dated: August 4, 2011

10

11                 **TRADE UNION INTERNATIONAL, INC.,**
                     **a California corporation**

12                 **DUCK HOUSE, INC.,**
                     **a California corporation**

13

                /s/ Wen Pin Chang

14                 _____

15                 Wen Pin Chang, President

16

17    **SHULMAN HODGES & BASTIAN LLP**

18

19    /s/ James C. Bastian, Jr.

20    _____
     James. C. Bastian, Jr.
     Insolvency Counsel for

21    Trade Union International, Inc., and
     Duck House, Inc.,

22    the Debtors and Debtors in Possession

23

24

25

26

27

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

4265-000\72
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc

1 in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry

2 of the order of confirmation.

3 **H.**     <u>**Substantial Consummation**</u>

4       Upon the Effective Date and payment of the first Distribution to Allowed General

5 Unsecured Claims, the Plan will be deemed substantially consummated under Bankruptcy Code

6 sections 1101 and 1127(b).

7

8

9 Dated: August 4, 2011

10

11                   **TRADE UNION INTERNATIONAL, INC.,**
                  **a California corporation**

12                   **DUCK HOUSE, INC.,**
                  **a California corporation**

13

14                   /s/ Wen Pin Chang

15                   Wen Pin Chang, President

16

17 **SHULMAN HODGES & BASTIAN LLP**

18

19 /s/ James C. Bastian, Jr.

20 James. C. Bastian, Jr.
   Insolvency Counsel for

21 Trade Union International, Inc., and
   Duck House, Inc.,

22 the Debtors and Debtors in Possession

23

24

25

26

27

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

4265-000672
Z:\S-T\Trade Union International\Plan and DS\Plan First Amended - Trade and Duck Combined.doc