James C. Bastian, Jr. - Bar No. 175415
**SHULMAN HODGES & BASTIAN LLP**
8105 Irvine Center Drive, Suite 600
Irvine, California 92618
Telephone:     (949) 340-3400
Facsimile:      (949) 340-3000
Email: jbastian@shbllp.com

Insolvency Counsel for the Debtors and
Debtors in Possession, Trade Union International, Inc. and
Duck House, Inc.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

| | |
|---|---|
| In re | Case No.  6:11-bk-13071-DS |
| **TRADE UNION INTERNATIONAL, INC.,** **a California corporation,** | Chapter  11 |
| Debtor. | Jointly Administered With Case No.  6:11-bk-13072-DS |
| _____ | **MOTION BY DEBTORS AND DEBTORS IN POSSESSION FOR ORDER:** |
| In re | **(1)  APPROVING THE SALE OF CERTAIN ASSETS OF THE TRADE UNION ESTATE (STOCK) FREE AND CLEAR OF LIENS PURSUANT TO BANKRUPTCY CODE SECTION 363(b)(1) AND (f); AND** |
| **DUCK HOUSE, INC.,** **a California corporation,** | |
| Debtor. | **(2) GRANTING RELATED RELIEF** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF WEN PIN CHANG IN SUPPORT THEREOF** |
| | Date:   September 2, 2011 Time:   10:00 A.M. Place:  Courtroom 304 United States Bankruptcy Court 3420 Twelfth Street Riverside, California 92501 |

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

1

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc
4265-000\50

**Page 1**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 4

II.   SALE MOTION ............................................................................................... 7

    A.    Commencement of the Bankruptcy Case and Background Information ................ 7

    B.    Nantong Wheel Company and the China Land .......................................... 7

    C.    The Nantong Stock Purchase Offer ......................................................... 9

    D.    Sale Free and Clear of Liens and Encumbrances....................................... 11

III.  AUTHORITIES ............................................................................................. 12

    A.    Court May Authorize the Sale of Assets When There is a Good Faith
        Purchaser ......................................................................................... 12

        1.    Sound Business Purpose ............................................................. 13

        2.    The Sale Serves the Best Interests of the Estate and Creditors................ 15

        3.    Accurate and Reasonable Notice ................................................... 15

        4.    The Sale is Made In Good Faith .................................................... 16

IV.   THE SALE DOES NOT CONTRAVENE POLICY ............................................. 17

    A.    The Proposed Sale Should be Allowed Free and Clear of Liens .......................... 17

        **1.**    Section 363(f)(2) - Consent ....................................................... 18

        **2.**    Section 363(f)(4) – Bona Fide Dispute........................................... 18

    B.    The Court has Authority to Waive the Fourteen-Day Stay of Sale ..................... 20

V.    CONCLUSION .............................................................................................. 20

DECLARATION OF WEN PIN CHANG ..................................................................... 22

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc

4265-000\50

# TABLE OF AUTHORITIES

## CASES

In re Atwood,
   124 B.R. 402 (Bankr. S.D. Ga. 1991) ...................................................................... 19

In re Beker Indus. Corp.,
   63 B.R. 474, 477 (Bankr. S.D.N.Y. 1986) .............................................................. 18

In re Brethren Care of South Bend, Inc., 98 B.R. 927, 934 (Bankr. N.D. Ind.
   1989) ........................................................................................................................ 17

In re Crowthers McCall Pattner, Inc.,
   114 B.R. 877, 885 (Bankr. S.D.N.Y. 1990) ............................................................ 13

In re Institutional Creditors of Continental Airlines, Inc. v. Continental Airlines,
   Inc. (In re Continental Airlines, Inc.),  780 F.2d 1223, 1226 (5th Cir. 1986) ......... 13

In re Milford Group, Inc.,
   150 B.R. 904 (Bankr. M.D. Pa. 1992) ..................................................................... 19

In re Terrace Gardens Park Partnership,
   96 B.R. 707 (Bankr. W.D. Tex. 1989) ..................................................................... 18

In re WHET, Inc., 12 B.R. 743, 750 (Bankr. D. Mass. 1981) ...................................... 17

In re Wilde Horse Enterprises, Inc.,
   136 B.R. 830, 841 (Bankr. C.D. Cal. 1991).................................................... 12, 16

Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) ..... 13

## STATUTES

Bankruptcy Code Section 102(1)................................................................................. 16

Bankruptcy Code Section 363(b)................................................................................. 12

Bankruptcy Code Section 363(m)................................................................................ 17

Bankruptcy Code Section 541 ..................................................................................... 12

Federal Rule of Bankruptcy Procedure 2002.............................................................. 15

Federal Rule of Bankruptcy Procedure 2002(c)(1)..................................................... 15

Federal Rules of Bankruptcy Procedure 6004 ............................................................ 15

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc

4265-000\50

## I.    <u>INTRODUCTION</u>

**TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY JUDGE,  AND ALL INTERESTED PARTIES:**

Trade Union International, Inc., a California corporation ("Trade Union") and Duck House, Inc., a California corporation ("Duck House") (Trade Union and Duck House are collectively referred to herein as the "Debtors"), each a debtor and debtor in possession in these jointly administered bankruptcy cases, bring this Motion for Order: (1) Approving the Sale of Certain Assets of the Trade Union Estate (Stock) Free and Clear of Liens Pursuant to Bankruptcy Code Section 363(b)(1) and (f); and (2) Granting Related Relief ("Sale Motion").

By the Sale Motion, Trade Union seeks Court approval of a transaction which was reflected in documentation executed prior to the commencement of the Debtors' bankruptcy cases but which was not consummated.  A true and correct copy of the Chinese version of the Stock Transfer Framework Agreement ("Stock Purchase Agreement") is attached to the Declaration of Wen Pin Chang ("Chang Declaration") as **Exhibit 1**.  Attached as **Exhibit 2** to the Chang Declaration is the English translation of the Stock Purchase Agreement.

As set forth below, Trade Union is the 100% owner of the stock interests in the two foreign entities referred to herein collectively as Nantong Wheel Company[1].  Nantong Wheel Company is currently undergoing its own financial difficulties, which has had a negative impact on the value of Trade Union's stock interest.  Transactions between Trade Union and Nantong Wheel Company go through a trading company, Trade Union International, Inc. in Taiwan (TUI Taiwan).

Trade Union is also the owner of Ju Rong Trade Union Auto Parts Co., Ltd. (Ju Rong Co.) which owns certain vacant China Land consisting of approximately 20 acres located in Ju Rong, Jiang Su province China, which was acquired originally to be the location for the Nantong Wheel Company plant.  Trade Union capitalized Ju Rong Company with a 11.5 million RMB in cash for the project.  After the Chinese government in Nantong provided a more attractive agreement to build the plant at another location in Nantong, the Ju Rong Land and the 11.5

---

[1]    Capitalized terms are defined below.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc
4265-000\50

4

**Page 4**

million RMB were not needed for this purpose. Subsequently, Nantong Wheel Company borrowed approximately 11.5 million RMB (Chinese Yuan currency equal to approximately $1,766,024.76 based on exchange rate as of May 16, 2011 where 1 RMB/Chinese Yuan equals 0.1536 U.S. Dollar) from Ju Rong Company. As the Ju Rong Company and the Nantong Wheel Company were all under the Trade Union umbrella, and the cash transfer from the Ju Rong Company to the Nantong Wheel Company was not expected to be repaid (but it was registered in the Nantong and Trade Union books), Trade Union accounted for the 11.5 million RMB transaction as a reduction in the intercompany payable balances due from Trade Union to the Nantong Wheel Company through TUI Taiwan.

Under the Stock Purchase Agreement, Trade Union will sell 70% of its stock interest in the Nantong Wheel Company. Trade Union will retain 30% of its stock interest in Nantong Wheel Company. Furthermore, as Nantong Wheel Company is becoming a separately controlled entity, Trade Union negotiated for Nantong Wheel Company to repay the 11.5 million RMB loan from the Ju Rong Company (and thus to Trade Union).

Because of the separation of entities and the newly anticipated repayment of the loan, the books of Trade Union will be adjusted to split the current NET intercompany payable account from Trade Union to Nantong Wheel Company (through TUI Taiwan) of $7,612,205 into two components, consisting of (1) a receivable of approximately $1,458,590 (detailed below as the 11.5 million RMB loan less a subsequent payroll loan from the Buyer) from Ju Rong Company, which is the net amount Trade Union expects to collect to pay down its debt and which is described in detail below, and (2) a payable of approximately $9,070,795, which is approximately the full gross amount that Trade Union owes Nantong Wheel Company (through TUI Taiwan) without the loan/receivable offset from Ju Rong Company. The sum of the two balances net to the same total as the previous net intercompany payable account when the companies were all interrelated.

Under the Stock Purchase Agreement, (1) the Buyer will resolve or assume the debt of Nantong Wheel Company owed to certain Chinese banks, thereby easing cash flow difficulties and enhancing the value of the 30% stock interest in the company that will be retained by Trade

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

5

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc
4265-000\50

Page 5

1  Union, (2) all prepetition debts owed to Nantong Wheel Company by Trade Union (a gross total

2  of approximately  $9,070,795 as described above) will be resolved,  (3) the China Land be

3  retained by Trade Union through its Ju Rong Company subsidiary, and (4) a net cash benefit to

4  Trade Union is expected to be received in the amount approximately $1,458,890.  This amount is

5  computed as a repayment of the initial loan of 11.5 million RMB or approximately

6  $1,766,024.76, less $307,134 for a payroll loan made by the Buyer in November 2010 for a net

7  total of $1,458,890, based on the currency exchange rate as of May 16, 2011.  The net cash

8  benefit of this transaction  of approximately $1,458,890 will be used for regular business

9  operations and to fund obligations under the Debtors' reorganization plan.  Thus, through this

10  transaction, a substantial benefit for the Trade Union Estate and creditors will be generated.

11  　　　　Trade Union believes that the proposed consideration to be paid to the Trade Union

12  Estate is fair.  Nantong Wheel Company has its own financial difficulties which has had an

13  negative impact on the value of the Nantong Stock owned by Trade Union.  Without the

14  proposed transaction and cash infusion by the Buyer, the Nantong Stock may hold little or no

15  value for the Estate and creditors.  However, the proposed transaction will not only enhance the

16  value of the 30% Nantong Stock interest that will be retained by Trade Union, claims against the

17  Estate of Trade Union totaling approximately $9,070,795 (as described above) will be resolved,

18  Trade Union through its Ju Rong Company subsidiary will retain the China Land, and Trade

19  Union will receive a cash benefit of approximately $1,458,890 based on the approximate

20  currency exchange rate as of May 16, 2011 for the Chinese RMB/Yuan.  Therefore the sale

21  serves the best interest of Trade Union's bankruptcy estate ("Estate" and collectively with the

22  bankruptcy estate of Duck House, the "Estates") and creditors. Thus, based on good business

23  reasons, Court approval of the sale contemplated herein will serve the best interests of the Trade

24  Union Estate and creditors and must be granted so that Trade Union does not lose this favorable

25  business opportunity.

26  ////

27  ////

28

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

6

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc

4265-000\50

**Page 6**

## II.    SALE MOTION

In support of the Sale Motion, the Debtors respectfully represents as follows:

### A.    Commencement of the Bankruptcy Case and Background Information

The Debtors are each California corporations. Trade Union and Duck House are each owned one-half by Wen Pin Chang and one-half by Mei Lien Chang.    Mr. Chang is the president of both corporate Debtors.  Mrs. Chang is the vice president of both corporate Debtors.

Mr. Chang formed Trade Union in 1981 and officially incorporated it in 1984 in order to supply top quality aftermarket aluminum alloy wheels and wheel and truck accessories.  Trade Union's products are manufactured in Taiwan and China and are shipped to the United States for distribution to wholesalers and retailers.  Trade Union is known for product lines which include Verde Custom Wheels, Black Ice Alloys, and Topline Products.

Duck House was established in 1981 and officially incorporated in 1986.  Duck House specializes in designing products for sports enthusiasts.  In order to offer the most competitive prices, the products are manufactured in factories in China and in Taiwan and then distributed by Duck House in the United States.

The Debtors' corporate office is located in Montclair and this facility includes more than 100,000 square feet of warehouse space.  The workers of both Trade Union and Duck House are employed and paid by Trade Union.  Duck House reimburses Trade Union for payments allocated to Duck House.

The Debtors' assets are encumbered by liens in favor of a bank group consisting of Cathay Bank and China Trust Bank (collectively the "Bank Group").  **The Debtors do not believe that the Bank Group has a secured interest in the Nantong Stock that is the subject of this Sale Motion**.

### B.    Nantong Wheel Company and the China Land

Trade Union is the 100% owner of the stock interest ("Nantong Stock") in the following foreign companies (1) Nantong Trade Union Aluminum Company (sometimes referred to as Mao Lien Aluminum) and (2) Nantong Trade Union Chrome Plating Company (collectively "Nantong Wheel Company").

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc

4265-000\50

Nantong Wheel Company manufactures aluminum alloy wheels operating out of a modern factory which has a fully integrated production line, research and design, tooling, casting, CNC, polish, chrome, paint, package and warehouse logistics capabilities.

Nantong Wheel Company is currently undergoing its own financial difficulties, which has had a negative impact on the value of the Nantong Stock held by Trade Union.  Transactions between Trade Union and Nantong Wheel Company go through a trading company, Trade Union International, Inc. in Taiwan (TUI Taiwan).

Trade Union, through its Ju Rong Company, is also the owner of certain vacant land consisting of approximately 20 acres located in Ju Rong, Jiang Su province China ("China Land"), which was acquired originally to be the location for the Nantong Wheel Company plant. Trade Union also made a capital contribution to the Ju Rong Company of 11.5 million RMB. After the Chinese government provided a more attractive agreement to build the plant at another location in Nantong, the China Land and the 11.5 million RMB were not needed for this purpose. Subsequently, Nantong Wheel Company borrowed approximately 11.5 million RMB (Chinese Yuan currency equal to approximately $1,766,024.76 based on an approximate exchange rate as of May 16, 2011, where  1 Chinese Yuan equals 0.1536 U.S. Dollar) from the Ju Rong Company.

Trade Union collectively owes Nantong Wheel Company (mostly through TUI Taiwan) a net amount of $7,612,205 (an intercompany payable of $9,070,795 net of a receivable through Ju Rong Company of $1,458,590 described above) as follows:

| Debtor | Creditor | Claim Amount |
| --- | --- | --- |
| Trade Union | Nantong Trade Union Aluminum (merchandise payments) | $183,634 |
| Trade Union | Nantong Trade Union Aluminum through TUI Taiwan (merchandise payments, grossed up to exclude the Ju Rong Company receivable, split out below) | $8,887,151 |
| Nantong Wheel Company | Trade Union (through Ju Rong Company subsidiary) | ($1,458,590) |
| Total Net | | $7,612,205 |

8

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc

4265-000\50

Page 8

## C.    The Nantong Stock Purchase Offer

Prior to the Petition Date, Trade Union received an offer from a third party, Jiang Su Ya Huey Investment Company ("Buyer"), to purchase 70% of Trade Union's Nantong Stock, subject to the terms and conditions set forth in a certain Stock Purchase Agreement, a true and correct copy of which is attached as **Exhibit 1** to the Chang Declaration (the Chinese version). Attached as **Exhibit 2** is the English translation of the Stock Purchase Agreement.

A summary of the terms of the Stock Purchase Agreement is set forth below, but the summary is not meant to be a complete review of every provision of the Stock Purchase Agreement. The Stock Purchase Agreement itself is the legally binding documents Trade Union seeks approval of and, in the event of any inconsistency between the terms, provisions or effect of the Stock Purchase Agreement and the description of it in these pleadings, the Stock Purchase Agreement alone shall govern and not these pleadings or the descriptions herein.

The principal terms of the Stock Purchase Agreement are as follows:

•    Trade Union will sell 70% of its Nantong Stock interest to the Buyer. Trade Union will retain 30% of the Nantong Stock.

•    After signing the Stock Purchase Agreement, the Buyer shall take over management of Nantong Wheel Company and shall be responsible for losses and responsibilities of Nantong Wheel Company. The Buyer shall not take any action that will damage Trade Union's Nantong Stock interest.

•    Trade Union will receive 60 million RMB (Chinese Yuan currency worth approximately $9,214,042 based on an approximate exchange rate as of May 16, 2011 where 1 RMB/Chinese Yuan equals 0.1536  U.S. Dollar) in five installments of 12 million RMB each (approximately $1,842,808 for each payment based an exchange rate as of May 16, 2011); provided, however that such funds will not be paid unless it is agreed and ordered that Trade Union immediately pay to Nantong Wheel Company, from such installments, 60 million RMB. Nantong Wheel Company will use the funds  to clear and pay back loans that are owed by Nantong Wheel Company to Bank of China and Construction Bank. The turnover of the Nantong Stock purchase price funds by Trade Union to Nantong Wheel Company will be applied

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc
4265-000\50

towards payment of products sold by Nantong Wheel Company to Trade Union. Thus under this transaction, all prepetition debts owed to Nantong Wheel Company through TUI Taiwan as listed on the Trade Union's Bankruptcy Schedules will be resolved (a total net amount of approximately $7,612,205, and grossed up to exclude the Ju Rong Company receivable a gross amount of $9,070,795).

- After the five installments totaling 60 million RMB have been completed as set forth above, the Buyer as the manager of Nantong Wheel Company will cause 11.5 million RMB reduced by the repayment of a loan from the Buyer (approximately $1,766,024.76 less $307,134 for a payroll loan made by the Buyer in November 2010 for a net total of $1,458,890, based on approximate exchange rate as of May 16, 2011) to be paid on the loan made to Nantong Wheel Company from the Ju Rong Company.

- The Buyer agrees to lend money to Nantong Wheel Company as necessary for normal business operations.

- The Buyer has previously loaned 2 million RMB (approximately $307,134.74 based on currency exchange rate as of May 16, 2011) to Nantong Wheel Company to cover employee salaries in November 2010. Trade Union will be responsible for repaying the payroll loan from the repayment proceeds of the Ju Rong loan, with the net difference (approximately $1,458,890) to be paid to the Ju Rong Company subsidiary of Trade Union.

- The loan to the Nantong Wheel Company was made by Trade Union through the Ju Rong Company, and the agreement calls for the repayment to be to the Ju Rong Company. Trade Union is currently working with the Buyer and Chinese law to arrange for either a direct payment to Trade Union in the United States or a method of repatriating the funds to the US through the Ju Rong Company.

- In the event Trade Union does not repay the approximate $307,134 payroll loan from the Buyer, the Buyer can deduct the payroll loan amount from Trade Unions 30% Nantong Stock interest.

- The Buyer will negotiate with vendors of Nantong Wheel Company to resolve all accounts payable and set possible payment plans, thereby easing cash flow difficulties and

10

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc
4265-000\50

Page 10

1   enhancing the value of the 30% stock interest in the company that will be retained by Trade

2   Union.

3   • The Stock Purchase Agreement includes business cooperation provisions whereby

4   old products sold by Nantong Wheel Company to Trade Union shall be sold with prices in effect

5   as before the Stock Purchase Agreement. Trade Union shall pay for the amount of goods

6   shipped with two weeks after receipt of a Bill of Lading. Trade Union shall use Nantong Wheel

7   Company as their main purchase source vendor.

8   • Prior to the Stock Purchase Agreement, Trade Union had registered certain

9   intellectual property rights including copy rights and design patents, which belong to Trade

10  Union who has authorized Nantong Wheel Company to register such rights in China. Under the

11  Stock Purchase Agreement, such intellectual property rights may only be used by Nantong

12  Wheel Company in China and such rights cannot be transferred to a third party without the

13  consent of Trade Union.

14  • Prior to the effective date of the Stock Purchase Agreement, all loan documents

15  related to Nantong Wheel Company were signed by its legal representative Wen Pin Chang. All

16  responsibilities should belong to Nantong Wheel Company. If Nantong Wheel Company has

17  already returned the loan amount, the Buyer agrees to ask the Loan Party to provide documents

18  for proof that the loan has been paid.

19  • The parties agree to keep the Stock Purchase Agreement confidential and cannot

20  be disclosed to any unrelated third party, unless law requires otherwise.    Confidentiality

21  includes, but not limited to contents of the Stock Transfer and negotiations; Stock Purchase

22  Agreement contents and all terms and conditions thereof, and all related information regarding

23  the Stock Purchase Agreement.

24  **D.    Sale Free and Clear of Liens and Encumbrances**

25  The Debtors do not believe that there are any liens, encumbrances, claims and/or interests

26  (collectively, the "Liens and Encumbrances") impacting Trade Union's 100% shareholder

27  interest in Nantong Wheel Company. The Debtors do not believe that the Bank Group holds a

28  secured interest in shares of stock in Nantong Wheel Company owned by Trade Union.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc

4265-000\50

1  Nevertheless, out of an abundance of caution, the Debtors seek Court approval of the sale of the

2  Purchase Stock free and clear of any and all Liens and Encumbrances, with all such Liens and

3  Encumbrances upon the Nantong Stock, if any, to be unconditionally released, discharged and

4  terminated, and with any Liens and Encumbrances not satisfied through the sale to attach only to

5  the proceeds of the transaction with the same priority, validity, force and effect as they existed

6  with respect to the Trade Union's interest in Nantong Wheel Company before the closing of the

7  transaction pending further Court order or agreement with the parties.

8        The Debtors do not believe it is prudent or necessary to resolve the disputes with holders

9  of any disputed Liens and Encumbrances liens by Court order or judgment prior to the closing of

10  the transaction.  The disputed Liens and Encumbrances, if any, would be subject to a bona fide

11  dispute and the Bankruptcy Code provides for a means to sell free and clear of such interests.  If

12  the Debtors are forced to wait for resolution of the disputes, if any, the Debtors may lose the

13  opportunity to capitalize on the current interest from the Buyer and will have to expend further

14  funds to market the stock interests for sale, which will dilute the amount of funds available for

15  the Estate.   Furthermore, without the proposed transaction and cash infusion by the Buyer, the

16  Nantong Stock may hold little or no value for the Trade Union Estate and creditors.

17              **III.    AUTHORITIES**

18  **A.    Court May Authorize the Sale of Assets When There is a Good Faith Purchaser**

19        Pursuant to Bankruptcy Code Section 541, upon the commencement of a case under

20  Chapter 11, an estate is created which includes all legal and equitable interest of the debtor in

21  property at the commencement of the case.  The Debtors, after notice and hearing, may sell

22  property of the Estate.  Bankruptcy Code Section 363(b).  The standards to establish are that

23  there is a sound business purpose for the sale, that the sale is in the best interests of the estate,

24  i.e., the sale is for a fair and reasonable price, that there is accurate and reasonable notice to

25  creditors and that the sale is made in good faith.  In re Wilde Horse Enterprises, Inc., 136 B.R.

26  830, 841 (Bankr. C.D. Cal. 1991); In re Lionel Corp., 722 F.2d 1063, 1069 (2d Cir. 1983).

27  Business justification would include the need to close a sale to one of very few serious bidders

28  where an asset has been extensively shopped and a delay could jeopardize the transaction.  See,

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

12

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc

4265-000\50                                                          **Page 12**

e.g., In re Crowthers McCall Pattner, Inc., 114 B.R. 877, 885 (Bankr. S.D.N.Y. 1990) (extreme

difficulty finding a buyer justified merger when buyer found).    The proposed sale herein meets

the foregoing criteria.

### 1.  Sound Business Purpose

There must be some articulated business purpose for a proposed sale outside the ordinary

course of business.  Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19-20 (B.A.P. 9th Cir.

1988).  The standards for whether a sale is supported by a sound business purpose was set forth

in In re Institutional Creditors of Continental Airlines, Inc. v. Continental Airlines, Inc. (In re

Continental Airlines, Inc.),  780 F.2d 1223, 1226 (5th Cir. 1986), wherein the Fifth Circuit

stated:

> Whether the proffered business justification is sufficient depends
> on the case.  As the second Circuit held in Lionel, the bankruptcy
> judge should consider all salient factors pertaining to the
> proceeding and, accordingly, act to further the diverse interest of
> the debtor, creditors and equity holders, alike.  He might, for
> example, look to such relevant factors as the proportionate value of
> the asset to the estate as a whole, the amount of elapsed time since
> the filing, the likelihood that a plan of reorganization will be
> proposed and confirmed in the near future, the effect of the
> proposed disposition on future plans of reorganization, the
> proceeds to be obtained from the disposition vis-a-vis any
> appraisals of the property, which of the alternatives use, sale or
> lease proposal envisions and, most importantly perhaps, whether
> the assets is increasing or decreasing in value.  This list is not
> intended to be exclusive, but merely to provide guidance to the
> bankruptcy judge.

Id., citing Lionel Corp. 722 F.2d at 1071.

The standards set forth in Continental Airlines were adopted by the Ninth Circuit

Bankruptcy Appellate Panel.  Walter 83 B.R. at 19-20.

Here, the facts surrounding the sale of the Nantong Stock support the business decision

that the proposed sale is in the best interests of the Trade Union Estate and creditors.  Under the

Stock Purchase Agreement, (1) the Buyer will resolve or assume the debt of Nantong Wheel

Company owed to certain Chinese banks, thereby easing cash flow difficulties and enhancing

the value of the 30% stock interest in the company that will be retained by Trade Union, (2) all

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

13

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc

4265-000\50

Page 13

prepetition debts owed to Nantong Wheel Company (directly and through TUI Taiwan) by Trade Union a net total of approximately $7,612,205 (an intercompany payable of $9,070,795 net of a receivable through Ju Rong Company of $1,458,590 described above) will be resolved, (3) the China Land will be retained by Trade Union through Ju Rong Company, and (4) a net cash benefit to Trade Union is expected to be received in the amount approximately $1,458,890 (returning a loan from Ju Rong Company of $1,766,024, less $307,134 for a payroll loan made by the Buyer in November 2010), based on the approximate currency exchange rate as of May 16, 2011. The net cash benefit of this transaction of approximately $1,458,890 will be used for regular business operations and to fund obligations under the Debtors' reorganization plan. Thus, through this transaction, a substantial benefit for the Estate and creditors will be generated.

Trade Union believes that the proposed consideration to be paid to the Estate is fair. Nantong Wheel Company has its own financial difficulties which has had an negative impact on the value of the Nantong Stock owned by Trade Union. Without the proposed transaction and cash infusion by the Buyer, the Nantong Stock may hold little or no value for the Estates and creditors. However, the proposed transaction will not only enhance the value of the 30% Nantong Stock interest that will be retained by Trade Union, claims against the Estate of Trade Union totaling approximately $9,070,795 will be resolved, Trade Union will retain the China Land through Ju Rong Company, and Trade Union will receive a cash benefit of approximately $1,458,890, based on the approximate currency exchange rate as of May 16, 2011 for the Chinese RMB/Yuan. Therefore the proposed consideration is fair and the sale serves the best interest of the Estates and creditors.

Trade Union has determined that the best way to create and maximize a recovery for creditors is to sell a portion of its stock interest in Nantong Wheel Company and generate cash to pay creditors as well as other generate other significant benefits as set forth above (i.e., enhance the value of the Nantong Stock retained by Trade Union and return of the China Land free and clear of liens). Furthermore, if the Sale Motion is not approved, Trade Union may be unable to find another buyer for the Nantong Stock who would be willing to provide such benefits for stock interests in a foreign company located in China. Trade Union is concerned that if the Court

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc
4265-000\50

1    does not approve the sale, Trade Union will have no alternative but to conduct a "fire" sale of the

2    Nantong Stock at a much lower price than proposed by the Buyer.   However, through proposed

3    transaction, Trade Union will create a substantial benefit for creditors from the Nantong Stock as

4    well as enhance the value of the Nantong Stock that will be retained by Trade Union.

5         Thus, based on good business reasons, Court approval of the sale contemplated herein

6    will serve the best interests of the Trade Union Estate and its creditors and must be granted so

7    that Trade Union does not lose this favorable business opportunity.

8         **2.   The Sale Serves the Best Interests of the Estate and Creditors**

9         Trade Union believes that it would be in the best interests of the Estates and creditors to

10   sell the Nantong Stock as set forth above.  If the sale is approved, significant claims will be

11   reduced and significant cash will be generated to fund a plan of reorganization.  Trade Union

12   does not know of any benefits that may arise by delaying the sale.  In such event, the Estate

13   benefit from the Nantong Stock may be diminished as the current Buyer may be lost and Trade

14   Union may not be able to find another buyer willing to significant benefits for the stock in

15   foreign companies.  As such, through this Sale Motion, Trade Union will preserve a benefit for

16   creditors which may be diminished if the Sale Motion is not granted.

17        Thus, a business decision has been made that it is in the best interest of the creditors and

18   the Trade Union Estate that this Sale Motion be approved.

19        **3.   Accurate and Reasonable Notice**

20        It is expected that notice of this Sale Motion will satisfy the requirements for accurate

21   and reasonable notice and will be appropriate under the circumstances of this case

22        The notice requirements for sales outside the ordinary course are set forth in Federal

23   Rules of Bankruptcy Procedure ("FRBP") 6004 and 2002.  The notice must include the time and

24   place of any public sale, the terms and conditions of any private sale, the time fixed for filing on

25   objections and a general description of the property. Fed. R. Bankr. P. 2002(c)(1).

26        In compliance with FRBP 2002, Bankruptcy Code Section 102(1) and that certain Order

27   Fixing Manner of General Notice to Creditors and Parties in Interest of Related Chapter 11 Cases

28

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

15

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc

4265-000\50

**Page 15**

1    entered by the Court on February 10, 2011 (docket number 20), Trade Union shall provide notice

2    of the proposed sale to following parties (collectively the "Noticing Parties"):

3         • The Office of the United States Trustee.

4         • The Debtors and the Debtors' attorney.

5         • All secured creditors.

6         • The official committee of unsecured creditors, or if no committee of unsecured

7    creditors is appointed, the creditors holding the twenty largest general unsecured claims against

8    the Debtors.

9         • All parties who have properly served upon the Debtors and their attorney and filed

10   with the Court a request for special notice.

11       Notice of this Sale Motion will be served on the Noticing Parties and will include a

12   summary of the terms and conditions of the proposed sale, the time fixed for filing objections,

13   and a general description of the assets.  Trade Union submits that the notice requirements will

14   have been satisfied, thereby allowing creditors and parties in interest an opportunity to object to

15   the sale.  Hence, no further notice should be necessary.

16       **4.   <u>The Sale is Made In Good Faith</u>**

17       The proposed sale will be brought in good faith and will be negotiated on an "arms

18   length" basis.

19       The court, in <u>Wilde Horse Enterprises</u>, set forth the factors in considering whether a

20   transaction is in good faith.  The court stated:

21

22            'Good faith' encompasses fair value, and further speaks to the
          integrity of the transaction.  Typical 'bad faith' or misconduct,

23            would include collusion between the seller and buyer, or any
          attempt to take unfair advantage of other potential purchasers. . . .

24            And, with respect to making such determinations, the court and
          creditors must be provided with sufficient information to allow

25            them to take a position on the proposed sale.  (citations omitted)
     <u>Id</u>. at 842.

26

27       In the present case, the negotiation of the proposed transaction was an arms-length

28   transaction. The negotiations with the Buyer have resulted in an offer to sell the that will have

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc

4265-000\50

**Page 16**

1  benefit to the Trade Union Estate.  As set forth in the Notice and the Sale Motion, the creditors

2  will have been provided with sufficient notice of the sale.  Accordingly, the sale is in good faith

3  and should be approved.  Trade Union requests such a finding pursuant to Bankruptcy Code

4  Section 363(m).

## IV.    THE SALE DOES NOT CONTRAVENE POLICY

6      As early as 1981, a court held that:

> As to whether the sale by a trustee of all of the debtor's assets must
> take place in the context of a confirmed reorganization plan, the
> case law again is clear that there is nothing objectionable about a
> sale of all the assets outside of a Chapter 11 plan.

In re WHET, Inc., 12 B.R. 743, 750 (Bankr. D. Mass. 1981).

As a result of its financial condition, Trade Union believes the only option available is the

orderly sale of a portion of the Nantong Stock.  In essence, based on good business reasons,

including the economics of Trade Union's situation, it is in the best interest of the creditors of the

Estate that this Sale Motion be approved.

Accordingly, the sale does not conflict with underlying bankruptcy policy.  See, In re

Brethren Care of South Bend, Inc., 98 B.R. 927, 934 (Bankr. N.D. Ind. 1989) (certainty of future

for tenants was good business reason and only feasible plan was liquidation, so 363 sale

approved despite pending plan of reorganization).

## A.    The Proposed Sale Should be Allowed Free and Clear of Liens

Bankruptcy Code Section 363(f) allows a trustee to sell property of the bankruptcy estate

"free and clear of any interest in such property of an entity," if any one of the following five

conditions is met:

> (1)     applicable non-bankruptcy law permits a sale of
> such property free and clear of such interest;

> (2)     such entity consents;

> (3)     such interest is a lien and the price at which such
> property is to be sold is greater than the aggregate value of all liens
> on such property;

> (4)     such interest is in bona fide dispute; or

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

17

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc
4265-000\50

Page 17

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.

11 U.S.C. § 363(f).

Section 363(f) is written in the disjunctive and thus only one of the enumerated conditions needs to be satisfied for Court approval to be appropriate.

## 1.    Section 363(f)(2) - Consent

The sale of Nantong Stock is proper pursuant to Section 363(f)(2).  Secured creditors, if any, will have no objection to the sale under the terms set forth herein as their liens will either be paid or attach to the proceeds of the sale in the same validity and priority as prior to the sale pending agreement with the creditor or further Court order.  Trade Union desires to take advantage of a favorable purchase offer and capitalize on the interest in the Nantong Stock to effectuate the beneficial sale.

Courts have approved sales under Bankruptcy Code Section 363(f) even where the sale price did not exceed the value of the liens asserted on the property so long as the sale is for fair market value.  In re Terrace Gardens Park Partnership, 96 B.R. 707 (Bankr. W.D. Tex. 1989); In re Beker Indus. Corp., 63 B.R. 474, 477 (Bankr. S.D.N.Y. 1986).  In this case, as evidenced by the Chang Declaration, the proposed purchase price is for fair market value.

Thus, approval for the sale of the Nantong Stock free and clear of Liens and Encumbrances pursuant to Bankruptcy Code Section 363(f)(2) in the manner provided herein is appropriate.

## 2.    Section 363(f)(4) – Bona Fide Dispute

Trade Union is not aware of any Liens and Encumbrances impacting the Nantong Stock but out of an abundance of caution, seeks Court approval of the sale herein free and clear of any and all Liens and Encumbrances, with all such Liens and Encumbrances upon the Trade Union's interest in the Nantong Stock to be unconditionally released, discharged and terminated, and with any Liens and Encumbrances not satisfied through the sale to attach only to the proceeds of the transaction with the same priority, validity, force and effect as they existed with respect to the

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

18

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc
4265-000\50

Page 18

1    Nantong Stock interests before the closing of the transaction pending further Court order or

2    agreement with the parties.

3        Trade Union does not believe it is prudent or necessary to resolve the disputes with

4    holders of any disputed Liens and Encumbrances liens by Court order or judgment prior to the

5    closing of the sale.  The disputed Liens and Encumbrances, if any, would be subject to a bona

6    fide dispute and the Bankruptcy Code provides for a means to sell free and clear of such

7    interests.  If the Estate is forced to wait for resolution of the disputes, if any, Trade Union may

8    lose the opportunity to capitalize on the current interest from the Buyer and the Estate will have

9    to expend further funds to market the stock for sale, which will dilute the amount of funds

10   available for the Estates.

11       Any claim that holders of the disputed Liens and Encumbrances may have against the

12   Estate related to the Trade Union's the Nantong Stock, if any, are anticipated to be the subject of

13   bona fide disputes and therefore the sale may go forward free and clear of such claims pursuant

14   to Section 363(f)(4).  A bona fide dispute has been defined by In re Atwood, 124 B.R. 402

15   (Bankr. S.D. Ga. 1991) as a "genuine issue of material fact that bears upon the debtor's liability,

16   or meritorious contention as to the application of law to undisputed facts."  Id. at 407.  In re

17   Milford Group, Inc., 150 B.R. 904 (Bankr. M.D. Pa. 1992), the court stated it need not resolve a

18   bona fide dispute, but must determine whether the issues presented are genuine as to the

19   existence of a bona fide dispute.  In doing so, the Milford Court found that the debtor had met its

20   burden to establish cause for the Court to allow for the sale of the property, free and clear of

21   liens.

22       In the instant case, the proposed transaction for the sale of the Nantong Stock conforms

23   with the requirements of Section 363(f)(4) in that in the event that disputed Liens and

24   Encumbrances are discovered, Trade Union will supplement this Sale Motion and establish the

25   existence of bona fide disputes with the holders of any disputed Liens and Encumbrances.

26       The policy behind allowing property to be sold free and clear of disputed interests

27   provides that the disputes do not bog down the swift and orderly liquidation of assets for the

28   highest possible value.   In this case, more than any other, where the asset is subject to

**SHULMAN HODGES &**
**BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

19

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc

4265-000\50

**Page 19**

1  fluctuations in the world market, interest rates and other factors that impact the stock value, it is

2  absolutely essential for Trade Union to be able to quickly liquidate the Nantong Stock interests

3  for its maximum possible value.  By demonstrating the existence of the bona fide disputes,

4  section 363(f) allows the Nantong Stock to be sold free and clear of any Liens and

5  Encumbrances that are subject to a dispute so that at a minimum, proceeds can be generated for

6  distribution to parties. If every sale were subject to resolution of disputes that were in existence,

7  expense and time associated with litigation would significantly impact values  that could be

8  obtained by bankruptcy estates for the benefit of creditors. Resolution of the issues with regard to

9  the claims of the holders of disputed Liens and Encumbrances, if any, may likely take substantial

10  time, effort and expense by the parties.  That process should not hinder, delay or in any way

11  inhibit the Trade Union's efforts to maximize the value of its interest in the Nantong Stock.

12      Thus, approval for the sale of the Nantong Stock free and clear of any and all Liens and

13  Encumbrances pursuant to Bankruptcy Code Section 363(f)(4) in the manner provided herein is

14  appropriate.

15  **B.      The Court has Authority to Waive the Fourteen-Day Stay of Sale**

16      Federal Rule of Bankruptcy Procedure 6004(h) provides that "[a]n order authorizing the

17  use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days

18  after entry of the order, unless the Court orders otherwise."

19      Trade Union desires to close the sale on the sale transaction as soon as practicable after

20  entry of an order approving the transaction.  Accordingly, Trade Union requests that the Court in

21  the discretion provided it under Federal Rule of Bankruptcy Procedure 6004(h), waive the 14-

22  day stay of the order granting this Sale Motion and approving the sale.

23              **V.      CONCLUSION**

24      **WHEREFORE**, based upon the foregoing, Trade Union respectfully submits that good

25  cause exists for granting the Sale Motion and requests that the Court enter an order as follows:

26      1.      Authorizing Trade Union to sell 70% of the Nantong Stock to the Buyer pursuant

27  to the terms and conditions as set forth in the Stock Purchase Agreement.

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

20

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc

4265-000\50

**Page 20**

2.      Authorizing the sale of the Nantong Stock free and clear of any liens, encumbrances, claims and/or interests (collectively, the "Liens and Encumbrances") impacting the Nantong Stock, if any, with any Liens and Encumbrances with all such Liens and Encumbrances upon the Nantong Stock to be unconditionally released, discharged and terminated, and with any Liens and Encumbrances not satisfied through the sale to attach only to the proceeds of the transaction with the same priority, validity, force and effect as they existed with respect to the Nantong Stock before the closing of the transaction pending further Court order or agreement with the parties.

3.      Authorizing Trade Union to sign any and all documents convenient and necessary in pursuit of the sale as set forth above, including but not limited to any and all conveyances contemplated by the sale and the Stock Purchase Agreement.

4.      Waiving the ten day stay of order provided in Federal Rule of Bankruptcy Procedure 6004(h).

5.      And for such other and further relief as is just.

Dated: August 5, 2011                    Respectfully submitted,

                                         **SHULMAN HODGES & BASTIAN LLP**

                                         /s/ James C. Bastian, Jr.
                                         _____
                                         James. C. Bastian, Jr.
                                         Insolvency Counsel for
                                         Trade Union International, Inc., and
                                         Duck House, Inc.,
                                         the Debtors and Debtors in Possession

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc

4265-000\50

# DECLARATION

# DECLARATION OF WEN PIN CHANG

I, Wen Pin Chang, declare:

1.      I am the President of Trade Union International, Inc., a California corporation ("Trade Union"), and Duck House, Inc., a California corporation ("Duck House"), each a debtor and debtor in possession (collectively the "Debtors"), and am one of the persons responsible for the administration of the Debtors.  I have personal knowledge of the facts set forth herein and could, if called as a witness, competently testify thereto.  I am also personally familiar with, and am custodian of, the records of the Debtors as they pertain to the financial records set forth herein.  The records of the Debtors are made by employees or agents of the Debtors who report to me and who have a business duty to enter the records of the Debtors accurately and at or near the time of the event which they record.

2.      I make this Declaration in support of the Motion for Order: (1) Approving the Sale of Certain Assets of the Trade Union Estate (Stock) Free and Clear of Liens Pursuant to Bankruptcy Code Section 363(b)(1) and (f); and (2) Granting Related Relief ("Sale Motion").  Unless otherwise noted, capitalized terms herein have the meaning as set forth in the Sale Motion.

3.      The Debtors are each California corporations. Trade Union and Duck House are each owned one-half by myself and one-half by my wife, Mei Lien Chang.  I am the president of both corporate Debtors.  Mrs. Chang is the vice president of both corporate Debtors.

4.      I formed Trade Union in 1981 and officially incorporated it in 1984 in order to supply top quality aftermarket aluminum alloy wheels and wheel and truck accessories.  Trade Union's products are manufactured in Taiwan and China and are shipped to the United States for distribution to wholesalers and retailers.  Trade Union is known for product lines which include Verde Custom Wheels, Black Ice Alloys, and Topline Products.

5.      Duck House was established in 1981 and officially incorporated in 1986.  Duck House specializes in designing products for sports enthusiasts.  In order to offer the most competitive prices, the products are manufactured in factories in China and in Taiwan and then distributed by Duck House in the United States.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc

4265-000\50

6.      The Debtors' corporate office is located in Montclair and this facility includes more than 100,000 square feet of warehouse space.  The workers of both Trade Union and Duck House are employed and paid by Trade Union.  Duck House reimburses Trade Union for payments allocated to Duck House.

7.      The Debtors' assets are encumbered by liens in favor of a bank group consisting of Cathay Bank and China Trust Bank (collectively the "Bank Group").  **The Debtors do not believe that the Bank Group has a secured interest in the Nantong Stock that is the subject of the Sale Motion**.

8.      Trade Union is the 100% owner of the stock interest ("Nantong Stock") in the following foreign companies (1) Nantong Trade Union Aluminum Company (sometimes referred to as Mao Lien Aluminum) and (2) Nantong Trade Union Chrome Plating Company (collectively "Nantong Wheel Company").

9.      Nantong Wheel Company manufactures aluminum alloy wheels operating out of a modern factory which has a fully integrated production line, research and design, tooling, casting, CNC, polish, chrome, paint, package and warehouse logistics capabilities.

10.     Nantong Wheel Company is currently undergoing its own financial difficulties, which has had a negative impact on the value of the Nantong Stock held by Trade Union. Transactions between Trade Union and Nantong Wheel Company go through a trading company, Trade Union International, Inc. in Taiwan (TUI Taiwan).

11.     Trade Union, through its Ju Rong Company, is also the owner of certain vacant land consisting of approximately 20 acres located in Ju Rong, Jiang Su province China ("China Land"), which was acquired originally to be the location for the Nantong Wheel Company plant. Trade Union also made a capital contribution to the Ju Rong Company of 11.5 million RMB. After the Chinese government provided a more attractive agreement to build the plant at another location in Nantong, the China Land and the 11.5 million RMB were not needed for this purpose. Subsequently, Nantong Wheel Company borrowed approximately 11.5 million RMB (Chinese Yuan currency equal to approximately $1,766,024.76 based on an approximate exchange rate as

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

23

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc

4265-000\50

**Page 24**

of May 16, 2011, where   1 Chinese Yuan equals 0.1536 U.S. Dollar) from the Ju Rong Company.

12.    Trade Union collectively owes Nantong Wheel Company (mostly through TUI Taiwan) a net amount of $7,612,205 (an intercompany payable of $9,070,795 net of a receivable through Ju Rong Company of $1,458,590 described above) as follows:

| Debtor | Creditor | Claim Amount |
|---|---|---|
| Trade Union | Nantong Trade Union Aluminum (merchandise payments) | $183,634 |
| Trade Union | Nantong Trade Union Aluminum through TUI Taiwan (merchandise payments, grossed up to exclude the Ju Rong Company receivable, split out below) | $8,887,151 |
| Nantong Wheel Company | Trade Union (through Ju Rong Company subsidiary) | ($1,458,590) |
| Total Net | | $7,612,205 |

13.    Prior to the Petition Date, Trade Union received an offer from a third party, Jiang Su Ya Huey Investment Company ("Buyer"), to purchase 70% of Trade Union's Nantong Stock, subject to the terms and conditions set forth in a certain Stock Purchase Agreement, a true and correct copy of which is attached hereto as **Exhibit 1** (the Chinese version).  Attached hereto as **Exhibit 2** is the English translation of the Stock Purchase Agreement.

14.    A summary of the terms of the Stock Purchase Agreement is set forth below, but the summary is not meant to be a complete review of every provision of the Stock Purchase Agreement.  The Stock Purchase Agreement itself is the legally binding documents Trade Union seeks approval of and, in the event of any inconsistency between the terms, provisions or effect of the Stock Purchase Agreement and the description of it in these pleadings, the Stock Purchase Agreement alone shall govern and not these pleadings or the descriptions herein.  The principal terms of the Stock Purchase Agreement are as follows:

•    Trade Union will sell 70% of its Nantong Stock interest to the Buyer.  Trade Union will retain 30% of the Nantong Stock.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc

4265-000\50

1    •      After signing the Stock Purchase Agreement, the Buyer shall take over

2    management of Nantong Wheel Company and shall be responsible for losses and responsibilities

3    of Nantong Wheel Company.   The Buyer shall not take any action that will damage Trade

4    Union's Nantong Stock interest.

5    •      Trade Union will receive 60 million RMB (Chinese Yuan currency worth

6    approximately $9,214,042 based on an approximate exchange rate as of May 16, 2011 where 1

7    RMB/Chinese Yuan equals 0.1536  U.S. Dollar) in five installments of 12 million RMB each

8    (approximately $1,842,808 for each payment based an exchange rate as of May 16, 2011);

9    provided, however that such funds will not be paid unless it is agreed and ordered that Trade

10   Union immediately pay to Nantong Wheel Company, from such installments, 60 million RMB.

11   Nantong Wheel Company will use the funds  to clear and pay back loans that are owed by

12   Nantong Wheel Company to Bank of China and Construction Bank.   The turnover of the

13   Nantong Stock purchase price funds by Trade Union to Nantong Wheel Company will be applied

14   towards payment of products sold by Nantong Wheel Company to Trade Union.  Thus under this

15   transaction, all prepetition debts owed to Nantong Wheel Company through TUI Taiwan as listed

16   on the Trade Union's Bankruptcy Schedules will be resolved (a total net amount    of

17   approximately $7,612,205, and grossed up to exclude the Ju Rong Company receivable a gross

18   amount of $9,070,795).

19   •      After the five installments totaling 60 million RMB have been completed as set

20   forth above, the Buyer as the manager of Nantong Wheel Company will cause 11.5 million RMB

21   reduced by the repayment of a loan from the Buyer (approximately $1,766,024.76 less $307,134

22   for a payroll loan made by the Buyer in November 2010 for a net total of $1,458,890, based on

23   approximate exchange rate as of May 16, 2011) to be paid on the loan made to Nantong Wheel

24   Company from the Ju Rong Company.

25   •      The Buyer agrees to lend money to Nantong Wheel Company as necessary for

26   normal business operations.

27   •      The Buyer has previously loaned 2 million RMB (approximately $307,134.74

28   based on currency exchange rate as of May 16, 2011) to Nantong Wheel Company to cover

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

25

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc

4265-000\50

Page 26

1  employee salaries in November 2010.  Trade Union will be responsible for repaying the payroll

2  loan from the repayment proceeds of the Ju Rong loan, with the net difference (approximately

3  $1,458,890) to be paid to the Ju Rong Company subsidiary of Trade Union.

4  • The loan to the Nantong Wheel Company was made by Trade Union through the

5  Ju Rong Company, and the agreement calls for the repayment to be to the Ju Rong Company.

6  Trade Union is currently working with the Buyer and Chinese law to arrange for either a direct

7  payment to Trade Union in the United States or a method of repatriating the funds to the US

8  through the Ju Rong Company.

9  • In the event Trade Union does not repay the approximate $307,134 payroll loan

10  from the Buyer, the Buyer can deduct the payroll loan amount from Trade Unions 30% Nantong

11  Stock interest.

12  • The Buyer will negotiate with vendors of Nantong Wheel Company to resolve all

13  accounts payable and set possible payment plans, thereby easing cash flow difficulties and

14  enhancing  the value of the 30% stock interest in the company that will be retained by Trade

15  Union.

16  • The Stock Purchase Agreement includes business cooperation provisions whereby

17  old products sold by Nantong Wheel Company to Trade Union shall be sold with prices in effect

18  as before the Stock Purchase Agreement.  Trade Union shall pay for the amount of goods

19  shipped with two weeks after receipt of a Bill of Lading.  Trade Union shall use Nantong Wheel

20  Company as their main purchase source vendor.

21  • Prior to the Stock Purchase Agreement, Trade Union had registered certain

22  intellectual property rights including copy rights and design patents, which belong to Trade

23  Union who has authorized Nantong Wheel Company to register such rights in China.  Under the

24  Stock Purchase Agreement, such intellectual property rights may only be used by Nantong

25  Wheel Company in China and such rights cannot be transferred to a third party without the

26  consent of Trade Union.

27  • Prior to the effective date of the Stock Purchase Agreement, all loan documents

28  related to Nantong Wheel Company were signed by its legal representative Wen Pin Chang.  All

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

26

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc

4265-000\50

Page 27

1  responsibilities should belong to Nantong Wheel Company.  If Nantong Wheel Company has

2  already returned the loan amount, the Buyer agrees to ask the Loan Party to provide documents

3  for proof that the loan has been paid.

4  • The parties agree to keep the Stock Purchase Agreement confidential and cannot

5  be disclosed to any unrelated third party, unless law requires otherwise.    Confidentiality

6  includes, but not limited to contents of the Stock Transfer and negotiations; Stock Purchase

7  Agreement contents and all terms and conditions thereof, and all related information regarding

8  the Stock Purchase Agreement.

9  15. The Debtors do not believe that there are any liens, encumbrances, claims and/or

10  interests (collectively, the "Liens and Encumbrances") impacting Trade Union's 100%

11  shareholder interest in Nantong Wheel Company.  The Debtors do not believe that the Bank

12  Group holds a secured interest in shares of stock in Nantong Wheel Company owned by Trade

13  Union.  Nevertheless, out of an abundance of caution, the Debtors seek Court approval of the

14  sale of the Purchase Stock free and clear of any and all Liens and Encumbrances, with all such

15  Liens and Encumbrances upon the Nantong Stock, if any, to be unconditionally released,

16  discharged and terminated, and with any Liens and Encumbrances not satisfied through the sale

17  to attach only to the proceeds of the transaction with the same priority, validity, force and effect

18  as they existed with respect to the Trade Union's interest in Nantong Wheel Company before the

19  closing of the transaction pending further Court order or agreement with the parties.

20  16. The Debtors do not believe it is prudent or necessary to resolve the disputes with

21  holders of any disputed Liens and Encumbrances liens by Court order or judgment prior to the

22  closing of the transaction.  The disputed Liens and Encumbrances, if any, would be subject to a

23  bona fide dispute and the Bankruptcy Code provides for a means to sell free and clear of such

24  interests.  If the Debtors are forced to wait for resolution of the disputes, if any, the Debtors may

25  lose the opportunity to capitalize on the current interest from the Buyer and will have to expend

26  further funds to market the stock interests for sale, which will dilute the amount of funds

27  available for the Estate.   Furthermore, without the proposed transaction and cash infusion by the

28  Buyer, the Nantong Stock may hold little or no value for the Trade Union Estate and creditors.

27

**SHULMAN HODGES &**
**BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc

4265-000\50

**Page 28**

17.      The facts surrounding the sale of the Nantong Stock support the business decision that the proposed sale is in the best interests of the Trade Union Estate and creditors.  Under the Stock Purchase Agreement, (1) the Buyer will resolve or assume the debt of Nantong Wheel Company owed to certain Chinese banks, thereby easing cash flow difficulties and enhancing the value of the 30% stock interest in the company that will be retained by Trade Union, (2) all prepetition debts owed to Nantong Wheel Company (directly and through TUI Taiwan) by Trade Union  a net total of approximately $7,612,205 (an intercompany payable of $9,070,795 net of a receivable through Ju Rong Company of $1,458,590 described above)) will be resolved,  (3) the China Land will be retained by Trade Union through Ju Rong Company, and (4) a net cash benefit to Trade Union is expected to be received in the amount approximately $1,458,890 (returning a loan from Ju Rong Company of $1,766,024, less $307,134 for a payroll loan made by the Buyer in November 2010), based on the approximate currency exchange rate as of May 16, 2011.  The net cash benefit of this transaction of approximately $1,458,890 will be used for regular business operations and to fund obligations under the Debtors' reorganization plan.  Thus, through this transaction, a substantial benefit for the Estate and creditors will be generated.

18.      Trade Union believes that the proposed consideration to be paid to the Estate is fair.  Nantong Wheel Company has its own financial difficulties which has had an negative impact on the value of the Nantong Stock owned by Trade Union.  Without the proposed transaction and cash infusion by the Buyer, the Nantong Stock may hold little or no value for the Estates and creditors.  However, the proposed transaction will not only enhance the value of the 30% Nantong Stock interest that will be retained by Trade Union, claims against the Estate of Trade Union totaling approximately $9,070,795 will be resolved, Trade Union will retain the China Land through Ju Rong Company, and Trade Union will receive a cash benefit of approximately $1,458,890, based on the approximate currency exchange rate as of May 16, 2011 for the Chinese RMB/Yuan.  Therefore the proposed consideration is fair and the sale serves the best interest of the Estates and creditors.

19.      Trade Union has determined that the best way to create and maximize a recovery for creditors is to sell a portion of its stock interest in Nantong Wheel Company and generate

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Z:\S-T\Trade Union International\Pld\Sale Motion -Nantong Stock -Cln.doc
4265-000\50

1  cash to pay creditors as well as other generate other significant benefits as set forth above (i.e.,

2  enhance the value of the Nantong Stock retained by Trade Union and return of the China Land

3  free and clear of liens).  Furthermore, if the Sale Motion is not approved, Trade Union may be

4  unable to find another buyer for the Nantong Stock who would be willing to provide such

5  benefits for stock interests in a foreign company located in China.  Trade Union is concerned that

6  if the Court does not approve the sale, Trade Union will have no alternative but to conduct a

7  "fire" sale of the Nantong Stock at a much lower price than proposed by the Buyer.   However,

8  through proposed transaction, Trade Union will create a substantial benefit for creditors from the

9  Nantong Stock as well as enhance the value of the Nantong Stock that will be retained by Trade

10  Union.

11      20.    Thus, based on good business reasons, Court approval of the sale contemplated

12  herein will serve the best interests of the Trade Union Estate and its creditors and must be

13  granted so that Trade Union does not lose this favorable business opportunity.

14      I declare under penalty of perjury under the laws of the State of California that the

15  foregoing is true and correct.

16      Executed at Montclair, California on August 5, 2011.

17

18      Wen Pin Chang

19

20

21

22

23

24

25

26

27

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

29

Z:\S-T\Trade Union International\PId\Sale Motion -Nantong Stock -Cln.doc

4265-000\50

Page 30

# EXHIBIT 1

# Stock Purchase Agreement
# Chinese Version

# 南通贸联铝合金科技有限公司和南通贸联汽配电镀有限公司股权转让框架协议书

出让方：美国贸联实业有限公司（TRADE UNION INTERNATINAL INC.）（以下简称"甲方"）

法定代表人：张文彬

注册地：美国加利福尼亚州蒙特克莱尔市政府街 4651 号托普兰广场一号

电话：001-909-628-7500；传真：001-909-628-0328

受让方：江苏亚辉投资有限公司（以下简称"乙方"）

法定代表人：郭道喜

注册地：江苏昆山市花桥镇徐公济路 2 号 625 室

电话：86-0512-55253611；传真：86-0512-55253612

鉴于：

1. 甲方持有南通贸联铝合金科技有限公司（以下简称贸联铝合金）和南通贸联汽配电镀有限公司（上述两公司以下合称"南通贸联"）100%股权；

2. 甲方愿意出让南通贸联 70%的股权；

3. 乙方愿意以 6000 万人民币的价款收购甲方持有的南通贸联 70%股权。

4. 南通贸联应当给付甲方在中国大陆在南京设立的句容贸联 1150 万元（具体数额以财务报表为准）。

1



# EXHIBIT 1

5. 乙方同意并保证解决股权转让基准日之前南通贸联的所有债务问题，以确保南通贸联正常运转。同时，乙方同意并保证南通贸联在基准日之后的正常运营，并且不增加甲方的负担和责任。

经甲乙双方友好协商，于 2011 年 1 月 12 日达成如下协议：

## 一． 股权转让价款、标的和价款的支付

（一） 股权转让基准日

本次股权转让基准日以本框架协议生效之日为准。转让双方以基准日确定南通贸联的资产、债务，并确定股权转让价款。

（二） 股权转让标的

本次股权转让标的为南通贸联 70%的股权。

（三） 股权转让价款

本次股权转让价款为 6000 万元人民币。

（四） 股权转让价款支付方式

股权转让协议生效后，乙方应按如下进度分期支付股权转让款：

1. 股权转让工商变更登记完成后，乙方必须尽快取得对外付汇核准，并在 2011 年 1 月 24 日前向甲方指定的银行账户支付第一期股权转让款 1200 万元人民币。甲方收到该股权转让款后，必须于 5 个工作日内向南通贸联铝合金科技有限公司（以下简称"贸联铝合金"）支付货款的方式将 1200 万元汇入贸联铝合金的中国银行或中国建设银行在启东分行的账户，完成贸联铝合金相应应收账款的核销。

2. 甲方将第一期股权转让款以货款名义汇入贸联铝合金的中

2



# EXHIBIT 1

国银行或中国建设银行在启东分行账户后 5 个工作日内，乙方
向甲方支付第二期股权转让款 1200 万元人民币。甲方在收到第
二期股权转让款后 5 个工作日内，必须以向贸联铝合金支付货
款的方式将 1200 万元汇入贸联铝合金的中国银行或中国建设银
行在启东分行的账户，贸联铝合金相应应收账款的核销。

3. 甲方将第二期股权转让款以货款名义汇入贸联铝合金的中
国银行或中国建设银行启东分行账户后 5 个工作日内，乙方向
甲方支付第三期股权转让款 1200 万元人民币。甲方在收到第三
期股权转让款后 5 个工作日内，必须以向贸联铝合金支付货款
的方式将 1200 万元汇入贸联铝合金的中国银行或中国建设银行
在启东分行的账户，贸联铝合金相应应收账款的核销。

4. 甲方将第三期股权转让款以货款名义汇入贸联铝合金的中
国银行或中国建设银行在启东分行账户后 5 个工作日内，乙方
向甲方支付第四期股权转让款 1200 万元人民币。甲方在收到第
四期股权转让款后 5 个工作日内，必须以向贸联铝合金支付货
款的方式将 1200 万元汇入贸联铝合金的中国银行或中国建设银
行在启东分行的账户，贸联铝合金相应应收账款的核销。

5. 甲方将第四期股权转让款以货款名义汇入贸联铝合金的中
国银行或中国建设银行在启东分行账户后 5 个工作日内，乙
方向甲方支付第五期股权转让款 1200 万元人民币。甲方在收到
第五期股权转让款后 5 个工作日内，必须以向贸联铝合金支付
货款的方式将 1200 万元汇入贸联铝合金的中国银行或中国建设
银行在启东分行的账户，贸联铝合金相应应收账款的核销。

上述通过货款方式支付到贸联铝合金中国银行或中国建设银行
在启东分行的账户款项共计 6000 万元人民币，用作贸联铝合金的流

3



# EXHIBIT 1

动资金,用于偿还中国银行启东分行和中国建设银行启东分行的到期贷款、小额贷款公司贷款、向南京句容举借的款项以及支付贸联铝合金应付的供应商货款及其他应付款项等。

二．  乙方权利的行使

（一）  本框架协议协议签订后,乙方受甲方委托全面管理南通贸联,乙方受托管理权限包括：人事、财务、采购等与生产经营相关的所有管理权。在本框架协议签订后到乙方依法成为南通贸联的股东之前,乙方全面管理南通贸联产生的损失和责任,乙方同意由其承担。

（二）  乙方按照本框架协议第一条约定向甲方支付了 6000 万股权转让款之日起开始行使股东权利并履行股东义务。

（三）  在乙方受托管理期间,以及日后取得 70%股权权利后,乙方保证不损害甲方和南通贸联的任何利益。

三．  贸联公司流动资金问题

（一）  借款

为解决南通贸联急需的流动资金问题,乙方同意在本框架协议书签订后 第 2 个工作日开始,借款给南通贸联进行正常运营。

（二）  解决流动资金的保证

本框架协议书生效后,乙方保证自行处理贸联铝合金所需的全部营运资金问题（该资金作为乙方向南通贸联的借款）,并确保贸联铝合金正常经营和按时出货。

（三）  股权转让款支付证明

为保证乙方的履约能力,乙方须在签约前提供财力证明（银行存

4



# EXHIBIT 1

款或银行保函），以证明其有能力履行本框架协议以及股权转让协议，并保证南通贸联日后的正常营运。

（四） 借款的偿还

甲方收到股权转让款后，通过向贸联铝合金支付货款方式汇入贸联铝合金在中国银行或中国建设银行在启东分行账户的款项，向乙方偿还相应的借款（本条所述借款的偿还不包含本协议第五条所述借款，该条所述借款按照该条约定执行）。

四． 开工

（一） 公司员工

本框架协议书生效后，乙方同意立即召回南通贸联所有或部分原有员工，以确保南通贸联可以尽快开工。

甲方同意努力配合并协助乙方召回员工回南通贸联。

（二） 开工时间

乙方同意在春节前或春节后南通贸联立即开工营运，并保证南通贸联最迟于 2011 年 2 月 10 日以前顺利开工。

五． 员工薪水

乙方同意在本框架协议书签订之后 2011 年 1 月 13 日之前，向南通贸联垫资 200 万人民币，用于支付南通贸联员工 2010 年 11 月薪水。

该款项作为南通贸联向乙方的借款，由甲方负责偿还，但偿还金额以 200 万人民币为限。甲方保证在 2011 年 1 月 31 日之前向乙方归还，甲方还款资金路径：甲方将 200 万人民币打入南通贸联帐户，南通贸联将该款项归还给乙方。甲方同意如果其未按时偿还该笔款项，乙方将取得甲方在南通贸联相当于 200 万元人民币的股权份额（最多

5



# EXHIBIT 1

不超过甲方在南通贸联持有的 30%股份)。本框架协议书第十五条(违约责任)不适用于本条款。

甲乙双方同意该笔借款与上述 6000 万人民币的股权转让款无关。

**六．　小额贷款公司贷款的偿还**

乙方保证在本框架协议书签订之日起，二周内解决贸联铝合金向小额贷款公司的逾期借款 650 万人民币问题。

**七．　供应商应付账款的支付**

乙方同意在本框架协议书签订之后 5 个工作日内，确定供应商应付账款的支付方案，并与供应商协商解决其应付账款的支付。

**八．　南京句容的借款偿还**

根据本框架协议书第一条第四款，南通贸联完成 6000 万人民币的应收账款核销后 10 个工作日内，乙方同意并保证南通贸联归还给句容贸联 1150 万元（具体数额见财务）。（甲方有权从句容贸联帐户中指定一个帐户）。

**九．　甲方的保证义务**

甲方保证南通贸联固定资产、无形资产、流动资产等所有资产的清单、债务清单的真实性。

**十．　商业合作**

本框架协议签订后关于甲方与南通贸联交易应当遵循的几个原则：1、老产品继续按照协议签订之前的价格结算；2、甲方在收到提单复印件后 2 周内将该批货物的货款付清。3、南通贸联对除甲方之外的所有客户进行统一管理。4.甲方在中国境内采购轮毂，原则上以

6



# EXHIBIT 1

南通贸联为主要供应商。以上第 1、第 2 原则的执行期限为本协议签订后的六个月，六个月后各方另行协商。

**十一. 知识产权**

基准日之前，甲方登记的知识产权包括商标和外观设计专利以及 know-how，由甲方拥有但授权南通贸联在中国登记，只允许在中国境内使用，未经甲方书面同意，不得转让给任何第三方。

**十二. 对外责任**

南通贸联在基准日之前签署的各项贷款文件，均由南通贸联的法定代表人张文彬签署，但所有责任应由南通贸联承担。若在南通贸联已经向贷款人还清借款的情况下，乙方同意要求贷款人出具借款已还清的相关证明。

**十三. 保密义务**

甲乙双方同意，对本次股权转让事宜予以保密，不得以任何方式泄露给无关第三方，除非法律另有规定。

保密范围包括但不限于：股权转让谈判的内容；本框架协议书内容和股权转让协议的各项条款，以及与本次股权转让有关的其它信息。

**十四. 基准日之前的应收账款解决**

基准日之前的应收账款通过本框架协议约定的方式解决，未解决的金额部分由南通贸联自行承担。

**十五. 违约责任**

本框架协议书具有法律约束力，任何一方违反本框架协议书的约定，需向另一方支付违约金 1200 万人民币。

7



# EXHIBIT 1

## 十六. 送达与联系

本框架协议一方按照确定的地址向另一方送达的任何文件、信函必须用书面形式，且采用特快专递或直接送达的方式，如以特快专递的方式，在寄出后（以寄出的快递详情单为准，下同）第 6 个工作日且快递未被退回将被视为已送达对方，若在寄出后第 7 个工作日且邮件未被退回，视为已送达对方。如以直接送达的方式送达，则以另一方的签收视作已送达。任何一方地址变更或受托人的联系方式变更应及时通知对方，如未及时通知，以本合同确定的地址邮寄。

甲方有权指定受托人代收乙方发出的相关文件，当甲方的受托人确定后，应将受托人的联系方式告知乙方，以便乙方及时向甲方送达相关文件。



甲方确认的地址：　　　　　　　　　邮编：

联系人：　　　　　　　　　　　　　电话：

乙方确认的地址：　　　　　　　　　邮编：

联系人：　　　　　　　　　　　　　电话：

## 十七. 其它

（一）　本框架协议书自甲乙双方签字或盖章后生效。

（二）　本框架协议是签署正式股权转让协议的基础。甲乙双方同意：上述条款中规定的履约时间，如有合理理由，可以适当延期，但应提前告知对方。

（三）　因本框架协议书发生的争议，双方友好协商解决，如未能达成一致意见，双方均可向中国国际经济贸易仲裁委员会上

8



**EXHIBIT 1**

海分会申请仲裁。

（四）　本框架协议书签订后 <u>5 个工作日</u>内，甲乙双方应签订正式的股权转让协议。

（五）　本框架协议书一式两份，甲乙双方各持一份。

（六）　甲乙双方同意本框架协议书可以传真件方式签署，签字或盖章的传真件视同原件，与原件具有同等法律效力。


甲方：美国贸联实业有限公司（TRADE UNION INTERNATINAL INC.）

法定代表人：


乙方：江苏亚辉投资有限公司

授权签字人：

9

# EXHIBIT 1

# EXHIBIT 2

## Stock Purchase Agreement
## English Translation Version

# NANTONG TRADE UNION ALUMINUM COMPANY
## &
# NANTONG TRADE UNION CHROME PLATING COMPANY

## STOCK TRANSFER FRAMEWORK AGREEMENT

SELLING PARTY：Trade Union International, Inc. (Hereinafter called Party A.)

LEGAL REPRESENTATIVE:  Wen Pin Chang

REGISTRATION LOCATION:          No. 4651 State Street, #1 Topline Plaza,
                                Montclair, Ca. 91763, USA
TELEPHONE: 001-909-628-7500     FAX: 001-909-628-0382

BUYING PARTY:     Jiang Su Ya Huey Investment Company
                  (Hereinafter called party B.)

LEGAL REPRESENTATIVE:  Ya Huey Kuo

REGISTRATION LOCATION:          No 2 Room 625, Hsu Kun Chio Road,
                                Hua Chiao Township, Quan Shan City
                                Jiang Su Province, China

TELEPHONE:86-0512-5525-3611   FAX: 86-0512-5525-3612
Whereas:

1. Party A holds 100% stock share of Nantong Trade Union Aluminum Company (Hereinafter called Mao Lien Aluminum); and Nantong Trade Union Chrome Plating Company (Both Companies jointly callled Nantong Trade Union.)
2. Party A is willing to sell 70% of its stock rights.
3. Party B is willing to offer RMB $60,000,000 (RMB Sixty Million Yuan) as the buying price to purchase 70% of the Nantong stock.
4. Nantong Trade Union should pay Party A seperately for Ju Rong Trade Union for RMB Eleven Million Five Hundred Yuan, RMB$11,500,000.  (Specific amount should be based on Financial Report.)
5. Before Stock Transfer Agreement base date takes place, Party B agrees and promises to resolve all debts associated with Nantong Trade Union to ensure that Nantong Trade Union to have normal operation.  Meanwhile, Party B agrees and promises that after the base date, Nantong Trade Union shall have normal operation and does not increase the burden and responsibility of Party A.

Through friendly negotiation, on January 12, 2011, both Parties reached agreements listed below:

# EXHIBIT 2

**I: STOCK TRANSFER PRICE, SUBJECT, AND PAYMENT**

(1) STOCK TRANSFER BASE DATE:

Stock Transfer Base Date is based on this Framework effective date.  Selling Party and Buying Party shall use this base date to determine the assets, debts of Nantong Trade Union and to determine the stock transfer price.

(2) SUBJECT OF STOCK TRANSFER:
This stock transfer subject is 70% of Nantong Trade Union's total stock shares.

(3) PRICE OF STOCK TRANSFER:
This stock transfer price is RMB Sixty Million Yuan.

(4) PAYMENT METHODS OF STOCK TRANSFER:
After this stock transfer agreement becomes effective, Party B shall based on following time schedule to pay installment payments for the Stock Transfer Price:

1.  After completion of  Stock Transfer and  change of business registration, Party B shall expedite to receive permission to obtain foreign currency exchange certificate.  On and before **January 24, 2011**, Party B to wire the first installment of Stock Transfer amount of **RMB Twelve Million Yuan (RMB$12,000,000)** to the account designated by Party A.  After receipt of the Stock Transfer first installment payment, within 5 working days, Party A shall wire back the same amount to Nantong Trade Union Aluminum Company (Herein after called Mao Lien Aluminum) into either Bank of China, or Construction Bank account in Qi Dong Branch, as payment of products suppiled to Party A as Account Payable to finish Mao Lien Aluminum's accounts receivable write off process.

2.  After Party A finishes wire of the First Installment Account Payable into Mao Lien Aluminum's Bank of China or Construction Bank Qi Dong Branch, within **5 working days** , Party B shall make payment of the second installment of the Stock Transfer amount of **RMB Twelve Million Yuan (RMB$12,000,000).**  Party A shall wire the second Stock Transfer amount, within **5 working days**, using the payment of Account Payable to send to Bank of China or Construction Bank's Qi Dong Branch account, to finish Mao Lien Alumimum's accounts receivable write off process.

3.  After Party A finishes wire of the Second Installment Account Payable into Mao Lien Aluminum's Bank of China or Construction Bank Qi Dong Branch, within **5 working days** , Party B shall make payment of the second installment of the Stock Transfer amount of **RMB Twelve Million Yuan (RMB$12,000,000)**.  Party A shall wire the second Stock Transfer amount, within **5 working days**, using the payment of Account Payable to send to Bank of China or Construction Bank's Qi Dong Branch account, to fnish Mao Lien Alumimum's accounts receivable write off process.

# EXHIBIT 2

4. After Party A finishes wire of the Third Installment Account Payable into Mao Lien Aluminum's Bank of China or Construction Bank Qi Dong Branch, within **5 working days** , Party B shall make payment of the second installment of the Stock Transfer amount of **RMB Twelve Million Yuan** (RMB$12,000,000).  Party A shall wire the second Stock Transfer amount, within **5 working days**, using the payment of Account Payable to send to Bank of China or Construction Bank's Qi Dong Branch account, to finsh Mao Lien Alumimum's accounts receivable write off process.

5. After Party A finishes wire of the Fourth Installment Account Payable into Mao Lien Aluminum's Bank of China or Construction Bank Qi Dong Branch, within **5 working days** , Party B shall make payment of the second installment of the Stock Transfer amount of **RMB Twelve Million Yuan** (RMB$12,000,000).  Party A shall wire the second Stock Transfer amount, within **5 working days**, using the payment of Account Payable to send to Bank of China or Construction Bank's Qi Dong Branch account, to finsh Mao Lien Alumimum's accounts receivable write off process.

As mentioned above, through Accounts Payable to Mao Lien Aluminum's Bank of China or Construction Bank's Qi Dong Branch, total wire amount shall be RMB Sixty Million Yuan (RMB$60,000,000); this amount shall be used as the cash flow for Mao Lien Aluminum, to pay back the loan amount that is due to pay back from the Qi Dong Branch of Bank of China and Construction Bank.

## II: PARTY B'S EXERCISE OF RIGHTS

(1) After signing of this Framework of Agreement, Party B is authorized to have full management of Nantong Trade Union. Party B is authorized to have management rights to include: Personnel, Finance, Purchase etc that is related to production management.  During the time between signing this agreement, to the period of time that Party B becomes the legal stock holder, Party B is fully in charge of the losses and responsibilities of Nantong Trade Union., Party B is fully in charge of the losses and responsibilities of Nantong Trade Union.  Party B agrees to be responsible for the losses.

(2) According to the First clause of this agreement, from the date when Party B completed payment of RMB$60,000,000 to Party A, Party B starts to exercise rights as the stock holder, and to fulfill obligations as the stock holder.

(3) During the time when Party B is entrusted for management, and later after receive 70% of the stock right, Party B promises not to do any action that will damage the interest of Party A and Nantong Trade Union.

## III.: CASH FLOW LIQUIDITY PROBLEM WITH MAO LIEN

(1) LOANS:

# EXHIBIT 2

In  order to resolve the urgent needs of cash flow, from the Second Day, after signing this Framework Agreement, Party B agrees to lend money to Nantong Trade Union for normal operation.

(2) GUARANTEE TO SOLVE CASH FLOW LIQUIDATY:
After this Framework Agreement becomes effective, Party B guarantees to be responsible for all the cash flow that is needed for Mao Lien Aluminum (That amount can be treated as loan to Nantong Trade Union.)  to ensure that Mao Lien Aluminum for normal operation and on time shipmnet delivery.

(3) PROOF OF EVIDENCE ON PAYMENT OF STOCK TRANSFER:
In order to proof evidence of payment from Party B, before signing the agreement, Party B shall provide financial evidence (Bank Deposit or Bank letter of guarantee) as evidence to proof that Party B has financial ability to exercise this Framewrok Agreement and agreement of Stock Transfer, and to guarantee Nantong Trade Union's normal operation in the future.

(4) REPAYMENT OF LOANS:
After receiving the Stock Transfer payment, Party A wires Account Payable payment to the Qi Dong Branch of Bank of China, or Construction Bank to Mao Lien Aluminum, party A shall pay back related loans to Party B. (This section does not include repayment of the loan referred as #5 of the loan agreement, #5 loan loan shall be exercised in accordance with that agreement.)

**IV: BUSINESS START TO WORK**

1. COMPANY EMPLOYEES:
Immediately after this Framework Agreement is effective, Party B agrees to call back all Nantong Trade Union employees or part of the original employees to ensure that Nantong Trade Union can start operational work.

2. TIME TO START OPERATION:
Party B agress that Nantong Trade Uion should start to operate before Chinese New Year or right after Chinese New Year and to guarantee that at the lastest that Nantong Trade Union shall start to operate no later than February 10th, 2011.

# EXHIBIT 2

**V: EMPLOYEE SALARY**:

Party B agrees that after signing the Framework Agreement and before January 13, 2011, to lend RMB$2,000,000 to Nantong Trade Union to cover employee salary for November of 2010.

This shall be treated as Nantong Trade Union borrows money from Party B.   Party A shall be responsible to pay back to Party B.  Total pay back amount is limited to maximum of RMB $2,000,000.  Party A promises to pay back to Party B before January 31, 2011.  Party A return money method:  Party A to wire RMB $2,000,000 to Nantong Trade Union Account, Nantong Trade Union to return the wire funds back to Party B.  Party A agrees that if party A does not return the funds on time, Party B will obtain Party A's stock share that is equivalent to RMB$2,000,000 (Maximum share can not exceed Party A's 30% stock share in Nantong Trade Union.)  This Framework Agreement FIFTEEN (violation responsibilities) can not be applied to this clause.

Both Parties agree that this borrowed money is not in any way related to the above mentioned Stock Transfer of RMB Sixty Million Yuan (RMB$60,000,000).

**VI:  SMALL LOAN COMPANY – PAY BACK**:

Party B guarantees that upon siging this Framework Agreement, withint two weeks, to resolve the loan that Mao Lien Aluminum borrowed from Small Loan Company in the amount of RMB$6,500,000.

**VII: VENDORS ACCOUNTS PAYABLE PAYMENT**

Party B agrees that 5 days after signing this Framework Agreement, to confirm payment plans to pay vendors Accounts Payable amount.  Also to negotiate with vendors to resolve all accounts payable that should have been paid.

**VIII: PAYMENT THE LOAN TO NANJIN JURONG LAND**

According to the Party ONE, number 4, After 10 days that Nantong Trade Union finished RMB $60,000,000 Accounts Receivable write off process, Party B agrees and guarantees that Nantong Trade Union to return Nanjin JuRong land for amount of RMB eleven million five hundred Yuan (RMB$11,500,000)  (Party A has right to assign an account for Ju Rong Trade Union.)

**VX: PARTY A'S GUARANTEED OBILIGATION**

Party A guarantee that fixed assets, general assets, liqudate assets and all assets on the lists, and the debt lists are true.

# EXHIBIT 2

## X: BUSINESS COOPERATION:

After signing the Framework Agreement, Party A and Nantong Trade Union should follow several principals. 1. Old products shall be sold with old prices as before the Framework Agreement.  2. Two weeks after receipt of Bill of Lading, Party A will pay for the amount of the goods shipped.  3. All customers other than Party A, Nantong Trade Union shall be managed with same terms and conditions. 4. Party A shall use Nantong Trade Union as their main purchase source vendor. Above 1 and 2 are valid six month after signing the Agreement, after six month it can be re-negotiated.

## XI: INTELLECTUAL RIGHTS

Prior to the effective date, Party A has registered intellectual rights including copy rights and design patents and know how, those rights belong to Party A and has authorized Nantong Trade Union to register in China.  These rights can only be used in China.  Without consent from Party A in writing, these rights could not be transferred to any third party.

## XII: EXTERNAL RESPONSIBILITY

Prior to the effective date, all loan documents related to Nantong Trade Union were signed by its legal representative Wen Pin Chang.  All responsibilities should belong to Nantong Trade Union.  If Nantong Trade Union has already returned the loan amount, Party B agress to ask the Loan Party to provide documents to proof that the loan amount has been paid off.

## XIII. CONFIDENTIALLY

Both Party A & B agree to keep this Stock Transfer Framework Agreement in confidentiality.  It can not be disclosed to any unrelated third party, unless law requires otherwise.

Confidentiality includes, but not limited to contents of this Stock Transfer and negotiations; this Framework Agreement contents and all terms and conditions set forth in this agreement, and all related information regarding this Stock Transfer Agreement.

# EXHIBIT 2

## XIV. ACCOUNTS RECEIVABLE PRIOR TO THE EFFECTIVE DATE

All Accounts Receivables prior to the effective date shall be resolved based on this agreement.  All outstanding amount that is not resolved shall be the responsibility of Nantong Trade Union.

## XV. BREACH OF CONTRACT

This Framework is a legally binding agreement, either party violate the terms contained in this agreement is required to pay liquidated dames to the other for RMB 12 Million Yuan.

## XVI. PROOF OF DELIVERY AND CONTACTS

Based on the address listed in this Agreement, if any party wishes to deliver a document, or letter, written format is required and to use express mail for direct delivery, if express mail delivery is used, after the 6th day, if the mail is not returned, it is treated as the express mail has been delivered, if after the 7th day, the mail is not returned, it is considered being deliverd and received.  If return receipt is processed, the date appear on the return receipt as delivered and received.  Any party that has changed of address should notify the other party.  If not notified, the address listed on the Agreement shall be the delivery location.

Party A has rights to appoint an Agent to receive Party B's related documents. When the Agent is confirmed, Party A will inform the Agent's contact information so that Party B can deliver documents to Party A for related documents.

Party A Confirmed Address: No. 4651 State Street, #1 Topline Plaze,
Montclair, Ca. 91763, USA

Party A Contact Person:       Wen Pin Chang

Party B Confirmed Address: No 2 Room 625, Hsu Kun Chio Road,
Hua Chiao Township, Quan Shan City
Jiang Su Province, China

Party B Contact Person:       Ya Huey Kuo

## XVII. OTHER

1. This Framework Agreement is effective upon signing by both Party A and Party B with signature and seal.
2. This Framework Agreement is the basis for formal Stock Transfer.  Both Parties agree: the time to perform above terms, under reasonable grounds, may be extended, but, should notifiy other party in advance.

# EXHIBIT 2

3. If dispute occurs with this Framework Agreement, both party shall settle through friendly consultation to reach solutions.  If  consensus can not be made, both parties may apply to the China International Economic and Trade Arbitration Commission shanghai Branch for arbitration.

4. 5 Days after signing this Agreement, both parties should sign the formal Stock Transfer Agreement.

5. This Framework Agreement is made in duplicates, Party A and Party B both has one original copy.

6. Party A and Party B both agree that this Framewrok Agreement can be signed and tranmited via fax, signed and sealed fax documents are treated as orginals and has the same legal binding as the orignals.

# EXHIBIT 2

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate a NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: **8105 Irvine Center Drive, Suite 600, Irvine, CA 92618**.

A true and correct copy of the foregoing document described as **MOTION BY DEBTORS AND DEBTORS IN POSSESSION FOR ORDER: (1) APPROVING THE SALE OF CERTAIN ASSETS OF THE TRADE UNION ESTATE (STOCK) FREE AND CLEAR OF LIENS PURSUANT TO BANKRUPTCY CODE SECTION 363(b)(1) AND (f); AND (2) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF WEN PIN CHANG IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 5, 2011,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- **James C Bastian    jbastian@shbllp.com**
- **Michael G Fletcher    mfletcher@frandzel.com, efiling@frandzel.com;shom@frandzel.com**
- **Barry V Freeman    bvf@jmbm.com, bvf@jmbm.com**
- **Allan P Leguay    leguay@pacbell.net**
- **Elizabeth A Lossing    elizabeth.lossing@usdoj.gov**
- **Nicholas A Merkin    nmerkin@frandzel.com, efiling@frandzel.com;bwilson@frandzel.com**
- **Robert Opera    ropera@winthropcouchot.com**
- **Ramesh Singh    claims@recoverycorp.com**
- **James M Sullivan    jsullivan@mosessinger.com, ccaruso@mosessinger.com;dkick@mosessinger.com**
- **United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov**
- **Andrew F Whatnall    awhatnall@daca4.com**

    ❑  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served) - On **August 5, 2011,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

    ■  Service information continued on attached page

**III.   SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to Fed. R. Civ. P. 5 and/or controlling LBR, on **August 5, 2011,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**Judge's Copy - Via Messenger**
**U.S. Bankruptcy Court**
**Hon. Deborah J. Saltzman**
**Bin Outside Courtroom 304**
**3420 Twelfth Street**
**Riverside, CA 92501**

    ❑  Service information continued on attached page

¶
I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **August 5, 2011** | **Lorre Clapp** | **/s/ Lorre Clapp** |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                     **F 9013-3.1.PROOF.SERVICE**

Page 50

## U.S. MAIL SERVICE LIST – TRADE UNION INTERNATIONAL, INC.

**DEBTOR**
TRADE UNION INTERNATIONAL INC
4651 STATE STREET
MONTCLAIR, CA 91763

**INTERESTED PARTY**
OFFICE OF UNITED STATES TRUSTEE (RS)
3685 MAIN STREET SUITE 300
RIVERSIDE, CA 92501

**ATTORNEYS FOR CATHAY BANK**
MICHAEL G FLETCHER ESQ
NICHOLAS A. MERKIN ESQ
FRANDZEL ROBINS BLOOM & CSATO LC
6500 WILSHIRE BLVD
SEVENTEENTH FLOOR
LOS ANGELES, CA 90048-4920

**ATTORNEYS FOR CATHAY BANK**
GARY OWEN CARIS ESQ
MCKENNA LONG & ALDRIGE LLP
300 SOUTH GRAND AVE 14TH FLOOR
LOS ANGELES, CA 90071-3124

**ATTORNEYS FOR CHINATRUST BANK**
BARRY FREEMAN ESQ
JEFFER MANGELS BUTLER & MITCHEL LLP
1900 AVE OF THE STARS 7TH FLOOR
LOS ANGELES, CA 90067

**ATTORNEYS FOR THE COMMITTEE**
ROBERT OPERA ESQ
WINTHROP COUCHOT PC
660 NEWPORT CENTER DRIVE
FOURTH FLOOR
NEWPORT BEACH, CA 92660

**SCHEDULE E, NOTICE PURPOSES**
INTERNAL REVENUE SERVICE
PO BOX 7346
PHILADELPHIA, PA 19101-7346

**SCHEDULE E, NOTICE PURPOSES**
FRANCHISE TAX BOARD
ATTN BANKRUPTCY UNIT
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO, CA 95812-2952

**SCHEDULE E, NOTICE PURPOSES**
CALIFORNIA EMPLOYMENT DEVELOPMENT
DEPARTMENT
ATTN BANKRUPTCY UNIT
BANKRUPTCY GROUP MIC 92E
PO BOX 826880
SACRAMENTO, CA 94280-0001

**SCHEDULE E, NOTICE PURPOSES**
STATE BOARD OF EQUALIZATION
ATTN BANKRUPTCY
ENVIRONMENTAL FEES DIVISION PO
BOX 942879
SACRAMENTO, CA 94279-6001

**SCHEDULE E, NOTICE PURPOSES**
SAN BERNARDINO COUNTY TREASURER-
TAX COLLECTOR
ATTN BANKRUPTCY
172 WEST THIRD STREET
SAN BERNARDINO, CA 92415

**SCHEDULE D, NOTICE PURPOSES**
WELLS FARGO FINANCIAL LEASING
MANUFACTURER SERVICES GROUP
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 7777
SAN FRANCISCO, CA 94120-7777

**SCHEDULE D, NOTICE PURPOSES**
WELLS FARGO BANK NA
ATTN PRESIDENT OR MANAGING AGENT
300 TRI STATE INTL SUITE 400
LINCOLNSHIRE, IL 60069-4417

**SCHEDULE D, NOTICE PURPOSES**
MICHELIN NORTH AMERICA INC
ATTN PRESIDENT OR MANAGING AGENT
1 PARKWAY S
GREENVILLE, SC 29615-5022

**SCHEDULE D, NOTICE PURPOSES**
USBANCORP
ATTN PRESIDENT OR MANAGING AGENT
1310 MADRID ST SUITE 104
MARSHALL, MN 56258-4006

**SCHEDULE D, NOTICE PURPOSES**
KEY EQUIPMENT FINANCE
ATTN PRESIDENT OR MANAGING AGENT
PAYMENT PROCESSING
CLEVELAND, OH 44194-0796

**SCHEDULE D, NOTICE PURPOSES**
KEY EQUIPMENT FINANCE
ATTN PRESIDENT OR MANAGING AGENT
601 OAKMONT LN SUITE 110
WESTMONT, IL 60559-5557

**SCHEDULE D**
CATHAY BANK
ATTN DAVID L PRICE, VICE PRESIDENT
LOAN SYNDICATIONS
777 N BROADWAY
LOS ANGELES, CA 90012

**SCHEDULE D, ADDITIONAL NOTICE**
CATHAY BANK
ATTN GREGORY BADURA
ATTN SANDRA SHA KENYON, FIRST VICE
PRESIDENT
9650 FLAIR  DR, 3RD FLOOR
EL MONTE, CA 91731

**SCHEDULE D, NOTICE PURPOSES**
CHINATRUST BANK
ATTN MELVIN O.REDFORD, EXECUTIVE
VICE PRESIDENT
22939 HAWTHORNE BLVD
TORRANCE, CA 90505

**SCHEDULE F**
A-CO TEMPORARY POWER
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 16843
NO.HOLLYWOOD, CA 91615-6843

**SCHEDULE F**
ACCELLOS
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 673922
DETROIT, MI 48267-3922

**SCHEDULE F**
ADP, INC.
ATTN PRESIDENT OR MANAGING AGENT
PHOENIX, AZ 85062-8415

**SCHEDULE F**
ADP, INC.
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 0500
CAROL STREAM, IL 60132-0500

**SCHEDULE F**
AFFORDABLE INTERNET SERVICES
ATTN PRESIDENT OR MANAGING AGENT
25655 LOUISA LANE
ROMOLAND, CA 92585

**SCHEDULE F**
AMERICAN EXPRESS
BOX 0001
LOS ANGELES, CA 90096-0001

**PROOF OF CLAIM ADDRESS**
AMERICAN EXPRESS BANK FSB
C/O BECKET AND LEE LP
POB 3001
MALVERN, PA 19355-0701

**SCHEDULE F**
ANDERSON AIR CONDITIONING
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 95000-2330
PHILADELPHIA, PA 19195-2330

**SCHEDULE F**
 PROOF OF CLAIM ADDRESS
ANDERSON AIR CONDITIONING, LP C/O AMS
ATTN TODD A. BECK, VP AND GENERAL
COUNSEL
13300 MID ATLANTIC BLVD
LAUREL, MD 20708-1432

**SCHEDULE F**
AT&T MOBILITY
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 60017
LOS ANGELES, CA 90060-0017

**SCHEDULE F**
AUTOWARE TECHNOLOGIES, LLC
ATTN PRESIDENT OR MANAGING AGENT
103 AMAR PL.
PANAMA CITY BEACH, FL 32413

**SCHEDULE F/20 LARGEST**
BROTHER MEZA'S PALLETS
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 310506
FONTANA, CA 92331

**SCHEDULE F/20 LARGEST**
BULLET TRANSPORTATION SERVICES
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 809066
CHICAGO, IL 60680-9066

**COMMITTEE MEMBER**
BULLET TRANSPORTATION SERVICES
ATTN TERRY HANDELAND
4900 S PENNSYLVANIA AVE
CUDAHY, WI 53110

**SCHEDULE F**
BURRTEC WASTE INDUSTRIES INC.
ATTN PRESIDENT OR MANAGING AGENT
PAYMENT PROCESSING CENTER
BUENA PARK, CA 90622-6520

**SCHEDULE F**
CA STATE DISBURSEMENT UNIT
ATTN PRESIDENT OR MANAGING AGENT
PO BOX 989067
WEST SACRAMENTO, CA 95798-9067

**SCHEDULE F**
CENTURY COPY TECHNOLOGY
ATTN PRESIDENT OR MANAGING AGENT
18301 E. VALLEY BLVD.
CITY OF INDUSTY, CA 91744

**ASSIGNEE OF CLAIM OF CENTURY COPY
TECHNOLOGY**
DACA 2010L, LP
ATTN ANDREW WHATNALL
1565 HOTEL CIRCLE SOUTH, SUITE 310
SAN DIEGO, CA 92108

**SCHEDULE F**
CF MANUFACTURING, INC.
ATTN PRESIDENT OR MANAGING AGENT
11867 SHELDON STREET
SUN VALLEY, CA 91352

**SCHEDULE F**
CITY OF MONTCLAIR
ATTN PRESIDENT OR MANAGING AGENT
5111 BENITO ST./P.O. BOX 2308
MONTCLAIR, CA 91763

**SCHEDULE F/20 LARGEST**
CLARK DISTRIBUTION SYSTEMS, INC
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 85095
CHICAGO, IL 60680-0851

**SCHEDULE F**
CON-WAY FREIGHT
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 5160
PORTLAND, OR 97208-5160

**SCHEDULE F/20 LARGEST**
CONTINENTAL AGENCY
ATTN PRESIDENT OR MANAGING AGENT
1400 MONTEFINO AVE. SUITE 200
DIAMOND BAR, CA 91765

**SCHEDULE F**
COVERALL NORTH AMERICA, INC.
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 802825
CHICAGO, IL 60680

**SCHEDULE F**
CREATIVE DOCUMENT SOLUTIONS
ATTN PRESIDENT OR MANAGING AGENT
1629 MARION-WALDO ROAD
MARION, OH 43302

**SCHEDULE F**
CROWN LIFT TRUCKS
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 641173
CINCINNATI, OH 45264-1173

**SCHEDULE F**
DMV RENEWAL
ATTN ACCOUNTS RECEIVABLE
P.O. BOX 942897
SACRAMENTO, CA 94297-0897

**SCHEDULE F/20 LARGEST**
DUB PUBLISHING INC.
ATTN PRESIDENT OR MANAGING AGENT
16815 JOHNSON DRIVE
CITY OF INDUSTRY, CA 91745-1819

**SCHEDULE F**
ENVIROKLEEN
ATTN PRESIDENT OR MANAGING AGENT
5420 W. MISSION BLVD
ONTARIO, CA 91762

**SCHEDULE F**
EULER HERMES ACI
ATTN PRESIDENT OR MANAGING AGENT
800 RED BROOK BLVD.
OWINGS MILLS, MD 21117

**PROOF OF CLAIM ADDRESS**
ALTO SYSTEMS, INC. DBA
ALTO FREIGHT MANAGEMENT
C/O EULER HERMES UMA
WILLIAM A. GOHMANN, CORPORATE
AGENT
600 S. 7TH STREET
LOUISVILLE, KY 40203

**PROOF OF CLAIM ADDRESS**
FEDEX FREIGHT INC
ATTN CREDIT MANAGER/BANKRUPTCY
PO BOX 840
HARRISON, AR 72602-0840

**SCHEDULE F**
GLOBE GAS CORPORATION
ATTN PRESIDENT OR MANAGING AGENT
5843 PARAMOUNT BLVD.
LONG BEACH, CA 90805

**SCHEDULE F**
GREENLAND LANDSCAPE & MAINTENANCE,
INC.
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 693
CHINO, CA 91708

**SCHEDULE F**
IMAGE DESIGN INC.
ATTN PRESIDENT OR MANAGING AGENT
6141 CLOVER COURT
CHINO, CA 91710

**SCHEDULE F/20 LARGEST**
JOE INTERRANTE
185 PROVIDENCE PLANTATION DR.
ALPHARETTA, GA 30004

**SCHEDULE F/20 LARGEST**
JOSEPH C. HIGDON
18814 GREENWAY
OLATHE, KS 66062

**SCHEDULE F/20 LARGEST**
KAISER FOUNDATION HEALTH PLAN
ATTN PRESIDENT OR MANAGING AGENT
FILE 5915
LOS ANGELES, CA 90074-5915

**SCHEDULE F/20 LARGEST**
KDA PRODUCTS INC
ATTN PRESIDENT OR MANAGING AGENT
15325 BLACKBURN AVENUE
NORWALK, CA 90650

**SCHEDULE F/20 LARGEST**
KODAI (U.S.A.) INC.
ATTN PRESIDENT OR MANAGING AGENT
2440 S. HACIENDA BLVD
HACIENDA HEIGHT, CA 91745

**SCHEDULE F**
L.A. MACHINERY MOVING INC
ATTN PRESIDENT OR MANAGING AGENT
14901 DON JULIAN RD
CITY INDUSTRY, CA 91746

MARIA VARGAS
1416 VIRGINIA AVENUE
ONTARIO, CA 91764

**SCHEDULE F**
MONTE VISTA WATER DISTRICT
ATTN PRESIDENT OR MANAGING AGENT
10575 CENTRAL AVENUE
MONTCLAIR, CA 91763

**SCHEDULE F**
NANTONG TRADE UNION ALUMINIUM
ATTN PRESIDENT OR MANAGING AGENT
ALLOY CO. LTD. WEIER ROAD
QIDONG CITY, 226200  CHINA

**SCHEDULE F**
ONTRAC
ATTN PRESIDENT OR MANAGING AGENT
274 WATTIS WAY
S. SAN FRANCISCO, CA 94080

**SCHEDULE F**
PERSONNEL CONCEPTS
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 5750
CAROL STREAM, IL 60197-5750

**SCHEDULE F**
RODOLFO RODRIGUEZ AGUILAR
8430 MISSION BLVD.
RIVERSIDE, CA 92509

**SCHEDULE F**
SOUTHERN CALIFORNIA EDISON
ATTN BANKRUPTCY UNIT
P.O. BOX 600
ROSEMEAD, CA 91771-0001

**SCHEDULE F/20 LARGEST**
SUMMIT LOGISTICS INT'L
ATTN PRESIDENT OR MANAGING AGENT
780 NOGALES STREET, BUILDING D
CITY OF INDUSTRY, CA 91748

**SCHEDULE F**
TELEPACIFIC COMMUNICATIONS
P.O. BOX 526015
SACRAMENTO, CA 95852-6015

**SCHEDULE F**
THE CHANG REVOCABLE TRUST C/O
WEN PIN CHANG, TRUSTEE
2819 CRYSTAL RIDGE ROAD
DIAMOND BAR, CA 91765

**SCHEDULE F**
TRADE UNION INT L (TAIWAN) LTD
ATTN PRESIDENT OR MANAGING AGENT
5F-5, NO.58, SHING SHAN RD. NEI HU
DIST.
TAIPEI, TAIWAN

**SCHEDULE F/20 LARGEST**
LSY TRUCKING
ATTN PRESIDENT OR MANAGING AGENT
9420 MAPLE ST.
BELLFLOWER, CA 90706

**SCHEDULE F/20 LARGEST**
MARK BERGER SALES INC.
ATTN PRESIDENT OR MANAGING AGENT
1631 ROCK RIVER
PLACENTIA, CA 92870

**COMMITTEE MEMBER - SCHEDULE F/20 LARGEST**
MONTEREY LIGHTING SOLUTIONS, INC.
ATTN CLARK LONGHURST
2148 POMONA BLVD.
POMONA, CA 91768

**SCHEDULE F**
NEXEN TIRE
ATTN PRESIDENT OR MANAGING AGENT
21073 PATHFINDER
DIAMOND BAR, CA 91765

**SCHEDULE F/20 LARGEST**
PACIFICARE OF CALIFORNIA
ATTN PRESIDENT OR MANAGING AGENT
DEPT NO. 1346
LOS ANGELES, CA 90088-1346

**SCHEDULE F**
PRINCIPAL FINANCIAL GROUP
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 10372
DES MOINES, IA 50306-0372

**SCHEDULE F/20 LARGEST**
SHANGHAI BON VOYAGE INTERNATIONAL
TRADING CO., LTD.
ATTN PRESIDENT OR MANAGING AGENT
2F, NO.110, YAN'AN RD.(E)
SHANGHAI, 200002 CHINA

**SCHEDULE F**
SOUTHERN CALIFORNIA EDISON
ATTN BANKRUPTCY UNIT
P.O. BOX 300
ROSEMEAD, CA 91772-0001

**PROOF OF CLAIM ADDRESS**
SUMMIT LOGISTICS INT'L
ATTN PRESIDENT OR MANAGING AGENT
800 FEDERAL BLVD
CARTERET, NJ 07008

**SCHEDULE F**
THE 3 AMIGOS
ATTN PRESIDENT OR MANAGING AGENT
15406 E. ARROW HIGHWAY
BALDWIN PARK, CA 91706

**SCHEDULE F**
THE GAS COMPANY
ATTN BANKRUPTCY UNIT
P.O. BOX C
MONTEREY PARK, CA 91756

**SCHEDULE F/20 LARGEST**
TRAVELERS
ATTN PRESIDENT OR MANAGING AGENT
CL REMITTANCE CTR
HARTFORD, CT 06183-1008

**SCHEDULE F**
MAILFINANCE
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 45840
SAN FRANCISCO, CA 94145-0840

**SCHEDULE F**
MEYERS PUBLISHING
ATTN PRESIDENT OR MANAGING AGENT
799 CAMARILLO SPRINGS ROAD
CAMARILLO, CA 93012-8111

**SCHEDULE F/20 LARGEST**
MOUNTAIN VIEW PACKAGING, INC.
ATTN PRESIDENT OR MANAGING AGENT
4773 BROOKS STREET UNIT G
MONTCLAIR, CA 91763

**SCHEDULE F**
OLD DOMINION FREIGHT LINE INC
ATTN PRESIDENT OR MANAGING AGENT
500 OLD DOMINION WAY
THOMASVILLE, NC 27360

**SCHEDULE F**
PARTNER'S DELIVERY INC.
ATTN PRESIDENT OR MANAGING AGENT
1927 A HARBOR BLVD
COSTA MESA, CA 92627

**SCHEDULE F/20 LARGEST**
QUARTZ LOGISTICS INC.
ATTN PRESIDENT OR MANAGING AGENT
731 S. GARFIELD AVE.
ALHAMBRA, CA 91801

**SCHEDULE F**
SHERIFF'S COURT SERVICES CENTRAL
157 W. 5TH STREET
SAN BERNARDINO, CA 92415

**SCHEDULE F**
SPRINT
ATTN BANKRUPTCY UNIT
P.O. BOX 219100
KANSAS CITY, MO 64121-9100

**SCHEDULE F**
TDW
1714 ANDERSON AVE.
COMPTON, CA 90220

**SCHEDULE F**
THE CHANG REVOCABLE TRUST C/O MEI
LIEN CHANG, TRUSTEE
2819 CRYSTAL RIDGE ROAD
DIAMOND BAR, CA 91765

**SCHEDULE F**
TIRE RACK WHOLESALE
ATTN PRESIDENT OR MANAGING AGENT
7101 VORDEN PARKWAY
SOUTH BEND, IN 46628-8422

**SCHEDULE F**
TRIPLE A POOL SERVICE
ATTN PRESIDENT OR MANAGING AGENT
1819 TINTAH DR.
DIAMOND BAR, CA 91765

**SCHEDULE F**
ULINE
ATTN PRESIDENT OR MANAGING AGENT
ATTN: ACCOUNTS RECEIVABLE
WAUKEGAN, IL 60085

**PROOF OF CLAIM ADDRESS**
UNITED PARCEL SERVICE (FREIGHT)
C/O RECEIVABLE MANAGEMENT
SERVICES
PO BOX 4396
TIMONIUM, MD 21094

**PROOF OF CLAIM ADDRESS**
VERIZON
ATTN BANKRUPTCY UNIT
404 BROCK DRIVE
BLOOMINGTON, IL 61701

RETURNED MAIL

**RETURNED 3/2/11, UNDELIVERABLE**
**SCHEDULE D, NOTICE PURPOSES**
CITICORP LEASING INC
ATTN PRESIDENT OR MANAGING AGENT
450 MAMARONECK AVE
HARRISON, NY 10528-2400

**EMAIL RECEIVED 5/22/2011**
**REQUESTING TO BE REMOVED FROM**
**THE SERVICE LIST**
**ATTORNEYS FOR CATHAY BANK**
PAULINE M STEVENS ESQ
MARC B LEH ESQ
MORRISON & FOERSTER LLP
555 W FIFTH ST
LOS ANGELES, CA 90013-1024

**SCHEDULE F**
UNITED SECURITY SYSTEMS INC
ATTN PRESIDENT OR MANAGING AGENT
8757 LANYARD COURT, SUITE 100
RANCHO CUCAMONGA, CA 91730

**PROOF OF CLAIM ADDRESS**
UNITED PARCEL SERVICE
C/O RECEIVABLE MANAGEMENT SERVICES
PO BOX 4396
TIMONIUM, MD 21094

**SCHEDULE F**
VIDAL LANDA
ATTN PRESIDENT OR MANAGING AGENT
12581 JANET LANE
GARDEN GROVE, CA 92840

**SEE PROOF OF CLAIM ADDRESS**
**SCHEDULE F**
OLD DOMINION FREIGHT LINE INC
ATTN PRESIDENT OR MANAGING AGENT
FILE 030989
SAN FRANCISCO, CA 94160

**RETURNED 4/21/2011,SEE NEW ADDRESS**
**SCHEDULE F**
VERIZON CALIFORNIA
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 9688
MISSION HILLS, CA 91346 9688

**RETURNED, UNDELIVERABLE**
**SCHEDULE F**
HOME DEPOT
ATTN BANKRUPTCY UNIT
5450 WALNUT AVE.
CHINO, CA 91710

**SCHEDULE F/20 LARGEST**
UPS FREIGHT
ATTN PRESIDENT OR MANAGING AGENT
28013 NETWORK PLACE
CHICAGO, IL 60673-1280

**SCHEDULE F**
VERIZON CALIFORNIA
ATTN PRESIDENT OR MANAGING AGENT
PO BOX 920041
DALLAS, TX 75392-0041

**SCHEDULE F**
WALNUT VALLEY WATER DISTRICT
ATTN PRESIDENT OR MANAGING AGENT
271 S. BREA CANYON ROAD
WALNUT, CA 91788-0508

**RETURNED 2/22/11 AND 3/2/11,**
**UNDELIVERABLE; SEE PROOF OF CLAIM**
**ADDDRESS**
**SCHEDULE F**
VERIZON CALIFORNIA
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 30001
INGLEWOOD, CA 90313-0001

**RETURNED 5/16/2011, 5/31/2011, SEE NEW**
**ADDRESS**
**SCHEDULE D, NOTICE PURPOSES**
KEY EQUIPMENT FINANCE
ATTN PRESIDENT OR MANAGING AGENT
3075 HIGHLAND PKWY FL UCC DEPT
DOWNERS GROVE, IL 60515-1288

# U.S. MAIL SERVICE LIST – DUCK HOUSE, INC.

**DEBTOR**
DUCK HOUSE INC
4651 STATE STREET
MONTCLAIR, CA 91763

**ATTORNEYS FOR CATHAY BANK**
GARY OWEN CARIS ESQ
MCKENNA LONG & ALDRIGE LLP
300 SOUTH GRAND AVE 14TH FLOOR
LOS ANGELES, CA 90071-3124

**ATTORNEYS FOR THE COMMITTEE**
ROBERT OPERA, ESQ
WINTHROP COUCHOT PC
660 NEWPORT CENTER DRIVE
FOURTH FLOOR
NEWPORT BEACH, CA 92660

**INTERESTED PARTY**
OFFICE OF UNITED STATES TRUSTEE (RS)
3685 MAIN STREET SUITE 300
RIVERSIDE, CA 92501

**ATTORNEYS FOR CATHAY BANK**
PAULINE M. STEVENS, ESQ.
MARC B. LEH, ESQ.
MORRISON & FOERSTER LLP
555 W FIFTH ST
LOS ANGELES, CA 90013-1024

**RFSN**
JAMES D. ARONOWITZ, ASSOCIATE
GENERAL COUNSEL
IMG COLLEGE/THE COLLEGIATE LICENSING
COMPANY
290 INTERSTATE NORTH CIRCLE, SUITE 200
ATLANTA, GA 30339

**RFSN - ATTORNEYS FOR CATHAY BANK**
MICHAEL G. FLETCHER, ESQ.
NICHOLAS A. MERKIN, ESQ.
FRANDZEL ROBINS BLOOM & CSATO LC
6500 WILSHIRE BLVD
SEVENTEENTH FLOOR
LOS ANGELES, CA 90048-4920

**ATTORNEYS FOR CHINATRUST BANK**
BARRY FREEMAN, ESQ.
JEFFER MANGELS BUTLER & MITCHEL LLP
1900 AVE OF THE STARS 7TH FLOOR
LOS ANGELES, CA 90067

**RFSN**
NFL PROPERTIES LLC
ATTN MATTHEW MORGADO
280 PARK AVENUE
NEW YORK, NY 10017

**SCHEDULE E, NOTICE PURPOSES**
INTERNAL REVENUE SERVICE
PO BOX 7346
PHILADELPHIA, PA 19101-7346

**SCHEDULE E, NOTICE PURPOSES**
FRANCHISE TAX BOARD
ATTN BANKRUPTCY UNIT
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO, CA 95812-2952

**SCHEDULE E, NOTICE PURPOSES**
CALIFORNIA EMPLOYMENT DEVELOPMENT
DEPARTMENT
ATTN BANKRUPTCY UNIT
BANKRUPTCY GROUP MIC 92E
PO BOX 826880
SACRAMENTO, CA 94280-0001

**SCHEDULE E, NOTICE PURPOSES**
STATE BOARD OF EQUALIZATION
ATTN BANKRUPTCY
P.O. BOX 942879
SACRAMENTO, CA 94279-6001

**SCHEDULE E, NOTICE PURPOSES**
SAN BERNARDINO COUNTY TREASURER-
TAX COLLECTOR
ATTN BANKRUPTCY
172 WEST THIRD STREET
SAN BERNARDINO, CA 92415

**SCHEDULE D**
CATHAY BANK
ATTN DAVID L PRICE, VICE PRESIDENT
LOAN SYNDICATIONS
777 N BROADWAY
LOS ANGELES, CA 90012

**RFSN - SCHEDULE D, ADDITIONAL
NOTICE**
CATHAY BANK
ATTN GREGORY BADURA
ATTN SANDRA SHA KENYON, FIRST VICE
PRESIDENT
9650 FLAIR  DR
EL MONTE, CA 91731

**SCHEDULE D, NOTICE PURPOSES**
CHINATRUST BANK
ATTN MELVIN O. REDFORD, EXECUTIVE
VICE PRESIDENT
22939 HAWTHORNE BLVD
TORRANCE, CA 90505

**PROOF OF CLAIM**
FRIESING INVESTMENTS, INC., DBA
GULF COAST SALES AND MARKETING
ATTN PRESIDENT OR MANAGING AGENT
PO BOX 2767
ADDISON, TX 75001

**RFSN - ATTORNEYS FOR WILLIAM S.
KAY, THE LIQUIDATING TRUSTEE FOR
BFW LIQUIDATION LLC (FKA BRUNO'S
SUPERMARKETS LLC)**
JOHN D. ELROD, ESQ.
GREENBERG TRAURIG LLP
ATTORNEYS FOR WILLIAM S. KAY, THE
LIQUIDATING TRUSTEE FOR BFW
LIQUIDATION LLC (FKA BRUNO'S
SUPERMARKETS LLC)
3290 NORTHSIDE PARKWAY SUITE 400
ATLANTA, GA 30327

**PROOF OF CLAIM**
FANZZ
(JAZZ BASKETBALL INVESTORS, INC., DBA
FANZZ)
ATTN ROBERT D.TINGAY,GENERAL
COUNSEL
301 WEST SOUTH TEMPLE
SALT LAKE CITY, UT 84101

**SCHEDULE F/20 LARGEST**
A TO Z MARKETING VENTURES, LLC.
ATTN ANTHONY ZIENO
17 SIVER STREET
SIDNEY, NY 13838

**SCHEDULE F**
AL ARRANTS
116 COUNTRY OAKS DRIVE
BRISTOL, TN 37620

**SCHEDULE F/20 LARGEST**
BOB KUNICK ASSOC. INC.
ATTN BOB KUNICK
12223 LEE HIGHWAY
FAIRFAX, VA 22030-6341

**SCHEDULE F**
BOTTOMLINE SALES
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 74506
SAN CLEMENTE, CA 92673

**SCHEDULE F/20 LARGEST**
BULLET TRANSPORTATION SERVICES
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 809066
CHICAGO, IL 60680-9066

**COMMITTEE MEMBER - ADDITIONAL
NOTICE - PROOF OF CLAIM ADDRESS**
BULLET TRANSPORTATION SERVICES
ATTN TERRY HANDELAND, COLLECTIONS
MANAGER
4900 S PENNSYLVANIA AVE
CUDAHY, WI 53110

**CLAIM FILED**
CADY'S HALLMARK SHOP
220 LIBERTY STREET
WARREN, PA 16365

**SCHEDULE F**
CALIFORNIA CLUB
ATTN DARLENE VOGELS
606 BLUE OAK COURT
EL DORADO HILLS, CA 95762

**SCHEDULE F/20 LARGEST**
CONTINENTAL AGENCY
ATTN PRESIDENT OR MANAGING AGENT
1400 MONTEFINO AVE. SUITE 200
DIAMOND BAR, CA 91765

**SCHEDULE F/20 LARGEST**
CREATIVE DOCUMENT SOLUTIONS
ATTN PRESIDENT OR MANAGING AGENT
1629 MARION-WALDO ROAD
MARION, OH 43302

**SCHEDULE F/20 LARGEST**
DOUG STEWART
P.O. BOX 5016
ANDERSON, SC 29623

**SCHEDULE F**
E.I.S. GROUP
ATTN TIM DEATON
614 ROGERS ROAD
VILLA HILLS, KY 41017

**ASSIGNEE OF SCHEDULE F CLAIM OF
E.I.S. GROUP**
DACA 2010L LP
ANDREW WHATNALL
1565 HOTEL CIRCLE SOUTH SUITE 310
SAN DIEGO, CA 92108

**PROOF OF CLAIM FILED**
FEDEX NATIONAL LTL
PO BOX 840
HARRISON, AR 72602-0840

**SCHEDULE F/20 LARGEST**
FLORIDA SPORTS NETWORK
ATTN PRESIDENT OR MANAGING AGENT
221 BLUE JUNIPER BLVD.
VENICE, FL 34292

**SCHEDULE F**
FM TURNER
6325 COCHRAN ROAD, UNIT 5
SOLON, OH 44139

**SCHEDULE F**
FOGLEMAN BROS., INC.
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 457
BURLINGTON, NC 27216

**SCHEDULE F**
GARY GENE INGOLDSBY
342 REVOLUTION DRIVE
ST. PETERS, MO 63376

**SCHEDULE F**
GIFT SOURCE, LLC
ATTN LORI J. THOMSEN
14040 HAYES STREET
OVERLAND PARK, KS 66221

**SCHEDULE F/20 LARGEST**
HOLLEY SALES
ATTN SHANE HOLLEY
12205 KIMBERLYN ROAD
OKLAHOMA CITY, OK 73162

**SCHEDULE F**
JEANNE D. ROSEN AKA JDR SALES
422 KINGS HIGHWAY
CARNEGIE, PA 15106

**SCHEDULE F**
JOHN COACH NADELL
2521 REDSTART LANE
BIRMINGHAM, AL 35226

**SCHEDULE F**
L & S SPORTS, INC.
ATTN LARRY ZIENTARSKI
P.O. BOX 530056
LIVONIA, MI 48153

**PROOF OF CLAIM FILED**
LAW OFFICES OF ALLAN P. LEGUAY
ALLAN P. LEGUAY
650 TOWNE CENTER DR, SUITE 1400
COSTA MESA, CA 92626

**SCHEDULE F/20 LARGEST**
LOGO AMERICA, LLC
ATTN PRESIDENT OR MANAGING AGENT
22123 W. 83RD STREET.
SHAWNEE, KS 66227

**COMMITTEE MEMBER - SCHEDULE F**
MACKIE & ASSOCIATES
ATTN NORM MEIDL
2100 NO. SEPULVEDA BLVD, SUITE 18
MANHATTAN BEACH, CA 90266

**SCHEDULE F/20 LARGEST**
MARK WILLIAMS AND COMPANY
ATTN MARK WILLIAMS
4940 BROOKSVIEW CIRCLE
NEW ALBANY, OH 43054

**SCHEDULE F/20 LARGEST**
MORRISON SALES
MERRIL H. MORRISON
9 MONTROSE LANE
MANCHESTER TOWNSHIP, NJ 8759

**SCHEDULE F**
NATIONAL SPORTS ASSOCIATES
ATTN PRESIDENT OR MANAGING AGENT
9150 KILDARE
SKOKIE, IL 60076

**SCHEDULE F**
NORTHWEST REPS, INC.
ATTN PRESIDENT OR MANAGING AGENT
10 VAN BUREN, SUITE C
EUGENE, OR 97402

**SCHEDULE F/20 LARGEST**
P.T.L. SALES
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 6120
STUART, FL 34997

**SCHEDULE F**
INDIANA UNIVERSITY
IU LICENSING & TRADMARKS
P.O. BOX 6268
INDIANAPOLIS, IN 46206

**SCHEDULE F**
JERRY ELY SALES
5952 ROYAL LANE, SUITE 218A
DALLAS, TX 75230-9950

**SCHEDULE F/20 LARGEST**
JOSEPH K. CLARK DBA ALL SEASONS
MARKETING
237 SOUTH CURTIS RD SUITE 100
WEST ALLIS, WI 53214-1030

**ASSIGNEE OF SCHEDULE F CLAIM OF L &
S SPORTS, INC.**
DACA 2010L LP
ANDREW WHATNALL
1565 HOTEL CIRCLE SOUTH SUITE 310
SAN DIEGO, CA 92108

**SCHEDULE F/20 LARGEST**
LICENSING RESOURCE GROUP LLC
ATTN BETSY FLAMBOE
442 CENTURY LANE, SUITE 100
HOLLAND, MI 49423

**SCHEDULE F/20 LARGEST**
LONG SALES GROUP
ATTN PRESIDENT OR MANAGING AGENT
451 E. 58TH AVENUE #1669
DENVER, CO 80216

**SCHEDULE F**
MAJIC TOUCH
ATTN PRESIDENT OR MANAGING AGENT
230 SPRING STREET STE 1421
ATLANTA, GA 30303

**SCHEDULE F**
MARKET PLACE GIFTS INC.
ATTN PRESIDENT OR MANAGING AGENT
3710 COMMERCIAL AVENUE STE 7
NORTH BROOK, IL 60062

**SCHEDULE F**
MICHIGAN STATE UNIVERSITY
ATTN UNIVERSITY LICENSING PROGRAMS
216 MSU UNION
MICHIGAN STATE UNIVERSITY
EAST LANSING, MI 48824-1029

**SCHEDULE G, NOTICE PURPOSES**
NBA PROPERTIES, INC.
ATTN SALVATORE LAROCCA, EXECUTIVE
V.P.
P.O. BOX 10602
NEWARK, NJ 07193

**SCHEDULE F/20 LARGEST**
OHIO STATE UNIVERSITY
ATTN UNIVERSITY LICENSING PROGRAM
DEPT. 1760
COLUMBUS, OH 43271-1760

**SCHEDULE F/20 LARGEST**
PARTNER'S DELIVERY, INC.
ATTN PRESIDENT OR MANAGING AGENT
1927 A HARBOR BLVD, #151
COSTA MESA, CA 92627

INDIANA UNIVERSITY
IU LICENSING & TRADMARKS
400 EAST SEVENTH STREET
PO BOX 4040
BLOOMINGTON, IN 47402

**SCHEDULE F**
JIM & CANDY DAVID
P.O. BOX 548
ZIONSVILLE, IN 46077-0548

**SCHEDULE F**
K.O. SALES, LLC
ATTN SCOTT CONIGLIO
7521 NW 131ST
OKLAHOMA CITY, OK 73142

**SCHEDULE F/20 LARGEST**
L.B. WOOD MARKETING, INC.
ATTN PRESIDENT OR MANAGING AGENT
7121 FISH POND ROAD
WACO, TX 76710

**SCHEDULE F/20 LARGEST**
LIUZHOU WANTEX TRADING CO., LTD.
ATTN PRESIDENT OR MANAGING AGENT
NO.3, THE SECOND YANGHE INDUSTRIAL
PARK
LIUZHOU, GX
CHINA

**SCHEDULE F**
LOUD & ASSOCIATES, LLC
ATTN DAVID LOUD
1319 SWAN DRIVE
ANNAPOLIS, MD 21409

**SCHEDULE G, NOTICE PURPOSES**
MAJOR LEAGUE BASEBALL PROPERTIES
DAVE WEINBERG
245 PARK AVENUE
NEW YORK, NY 10167

**SCHEDULE F**
MEI LIEN CHANG
2819 CRYSTAL RIDGE ROAD
DIAMOND BAR, CA 91765

**SCHEDULE F/20 LARGEST**
NANCY ANDERSEN
37 PATRIOT WAY
PEMBROKE, MA 2359

**SCHEDULE F/20 LARGEST**
NFL PROPERTIES LLC-LICENSING GPO
ATTN PRESIDENT OR MANAGING AGENT
P.O. BOX 27278
NEW YORK, NY 10087-7278

**ADDITIONAL NOTICE**
OHIO STATE UNIVERSITY
ATTN UNIVERSITY LICENSING PROGRAM
1100 KINNEAR ROAD SUITE 210
COLUMBUS, OH 43212-1152

**SCHEDULE F**
PARTY COUNSEL-DAVID TUROCK
ATTN DAVID TUROCK
5 THORNBROOK LANE
SUFFERN, NY 10901

**Page 56**

**SCHEDULE F/20 LARGEST**
QUARTZ LOGISTICS INC.
ATTN PRESIDENT OR MANAGING AGENT
731 S. GARFIELD AVE
ALHAMBRA, CA 91801

**SCHEDULE F**
RON GRUBBS
112 WONDER VALLEY ROAD
BRISTOL, TN 37620

**SCHEDULE F**
SPLASH
ATTN KIM RYON
P.O. BOX 247
FACTORYVILLE,, PA 18419

**SCHEDULE F/20 LARGEST**
SUMMIT LOGISTICS INT'L
ATTN PRESIDENT OR MANAGING AGENT
780 NOGALES STREET, BUILDING D
CITY OF INDUSTRY, CA 91748

THE COLLEGIATE LICENSING CO
DAVE KIRKPATRICK
290 INTERSTATE NORTH, SUITE 200
ATLANTA, GA 30339

**SCHEDULE F**
UNIVERSITY OF IOWA
TRADEMARK LICENSING PROGRAM
210 KHF BLDG. 446
IOWA CITY, IA 52242

**PROOF OF CLAIM ADDRESS**
UNITED PARCEL SERVICE (FREIGHT)
C/O RECEIVABLE MANAGEMENT
SERVICES
PO BOX 4396
TIMONIUM, MD 21094

**2/4/11; PER MARY JANE EVANS AT
MINNEAPOLIS MART - CREDITOR HAS
NOT BEEN AT ADDRESS FOR 3+ YEARS
SCHEDULE F/20 LARGEST**
OSTROM'S & ASSOCIATES
ATTN PRESIDENT OR MANAGING AGENT
10301 BREN ROAD WEST, SUITE 340
MINNETONKA, MN 55343

**RETURNED 6/6/2011, UNDELIVERABLE
ADDITIONAL NOTICE**
NBA PROPERTIES, INC.
ATTN SALVATORE LAROCCA,
EXECUTIVE V.P.
645 PARK AVENUE
NEW YORK, NY 10017

**SCHEDULE F**
RICK SALESE
535 WOOD VALLEY TRACE
ROSWELL, GA 30076

**SCHEDULE F/20 LARGEST**
SDJ, LLC
ATTN PRESIDENT OR MANAGING AGENT
14176 HWY 87 N.
EDEN, NC 27288

**SCHEDULE F/20 LARGEST**
SPRINT
ATTN PRESIDENT OR MANAGING AGENT
P O BOX 219100
KANSAS CITY, MO 64121-9100

**SCHEDULE F**
SUPERMARKET REPRESENTATIVES
ATTN PRESIDENT OR MANAGING AGENT
20 E. SUNRISE HIGHWAY, STE 300
VALLEY STREAM, NY 11581

**SCHEDULE F**
TRADE UNION INT'L (TAIWAN) LTD
ATTN PRESIDENT OR MANAGING AGENT
5F-F, NO.58, SHING SHAN RD
TAIPEI,

**SCHEDULE F**
UNIVERSITY OF OREGON
OFFICE OF MARKETING AND BRAND
MANAGEMENT
720 E 13TH SUITE 303
5286 UNIVERSITY OF OREGON
EUGENE, OR 97403-5286

**PROOF OF CLAIM ADDRESS**
WAL-MART STORES, INC.
C/O CHARLES B. HENDRICKS, ESQ
CAVAZOS HENDRICKS POIROT & SMITHAM
P.C.
FOUNDERS SQUARE
SUITE 570
900 JACKSON STREET
DALLAS, TX 75202-4425

**2/23/11; NOT DELIVERABLE AS
ADDRESSED; INSUFFICIENT ADDRESS
SCHEDULE F/20 LARGEST**
TRANSWORLD SYSTEMS, INC.
ATTN PRESIDENT OR MANAGING AGENT
ATTN: TSI COMMERCIAL DIVISION
CHICAGO, IL 60673-1248

**SCHEDULE F/20 LARGEST**
RODOLFO RODRIGUEZ AGUILAR
8430 MISSION BLVD.
RIVERSIDE, CA 92509

SOUTH DAKOTA STATE UNIVERSITY
OFFICEOF LICENSING PROGRAMS
ADMINISTRATION BLDG. 0234
BOX 2201
BROOKINGS, SD 57007-2398

**CLAIM FILED - RELATED TO SPRINT
COMMERCIAL (XXX 8357)**
DILIGENTSIA CAPITAL GROUP LLC
C/O RECOVERY MANAGEMENT SYSTEMS
CORPORATION
RAMESH SINGH
25 SE 2ND AVENUE SUITE 1120
MIAMI, FL 33131-1605

**SCHEDULE F**
TEAM COLORS SPORTS MARKETING &
SALES
SCOTT DEROY
P.O. BOX 93850
PASADENA, CA 91109

**SCHEDULE F/20 LARGEST**
TREASURES
ATTN DAVE MACMILLAN
7014 59TH ST, CT. W
UNIVERSITY PLACE, WA 98467

**SCHEDULE F/20 LARGEST**
UPS FREIGHT
ATTN PRESIDENT OR MANAGING AGENT
28013 NETWORK PLACE
CHICAGO, IL 60673-1280

RETURNED MAIL

**SEE PROOF OF CLAIM ADDRESS (CLAIM
NO. 6**
FEDEX NATIONAL LTL
P.O. BOX 95001
LAKELAND, FL 33804-5001